# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

COLLINS & AIKMAN CORPORATION and COLLINS :
& AIKMAN PRODUCTS CO., as Debtors in Possession,

                                         :

                  Plaintiffs,

                                         :

         v.

                                         :

DAVID A. STOCKMAN, J. MICHAEL STEPP,
BRYCE M. KOTH, DAVID R. COSGROVE, PAUL C.  :
BARNABA, ROBERT KRAUSE, JOHN A. GALANTE,                  Civil Action No. 07-265-***
CHARLES E. BECKER, ELKIN B. MCCALLUM,
THOMAS E. EVANS, CYNTHIA HESS, DANIEL P.  :
TREDWELL, W. GERALD MCCONNELL, SAMUEL
VALENTI, III, HEARTLAND INDUSTRIAL               :
PARTNERS, L.P., HEARTLAND INDUSTRIAL
ASSOCIATES, L.L.C., PRICEWATERHOUSE-         :
COOPERS LLP and KPMG LLP,

                                         :

                  Defendants.

---

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT ELKIN B. MCCALLUM**

                                    Kenneth J. Nachbar (No. 2067)
                                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                    Chase Manhattan Centre, 18th Floor
                                    1201 North Market Street
                                    P.O. Box 1347
                                    Wilmington, DE 19899-1347
                                    302.658.9200
                                    knachbar@mnat.com
                                  *Counsel to Defendant Elkin B. McCallum*

*Of Counsel:*
Richard M. Strassberg
Jeffrey A. Simes
Laurie L. Levin
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, NY 10022
212.813.8800

Dated:  September 14, 2007

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

FACTUAL BACKGROUND ..............................................................................3

ARGUMENT .....................................................................................................8

    I.      PLAINTIFFS' FRAUD AND SECURITIES FRAUD CLAIMS ARE NEITHER VIABLE NOR PROPERLY PLED....................................................................................8

          A.    The Strict Pleading Requirements For Fraud..............................8

          B.    Plaintiffs Fail To Offer Factual Allegations Giving Rise To A "Strong Inference" Of Scienter..................................................10

          C.    The McCallum Transactions Are Immaterial As A Matter Of Law.........15

          D.    The Claims Against Mr. McCallum Must Be Dismissed For Lack Of Loss Causation....................................................................17

          E.    Plaintiffs' Claims Against Mr. McCallum Are Barred By The Statute Of Limitations...................................................................18

          F.    Plaintiffs Have Not Pled With Particularity Facts That Show That The Challenged Transactions Were Fraudulent.........................19

    II.     PLAINTIFFS' SECTION 14(A) AND RULE 14A-9 CLAIMS FAIL FOR THE SAME REASON AS THEIR FRAUD AND SECTION 10(B) CLAIMS. ......................................22

          A.    Plaintiffs' Obligation Under Section 14(a) And Rule 14a-9. ...................22

          B.    Plaintiffs Have Failed To Plead Their Section 14(a) Claims With The Requisite Particularity. .....................................................23

          C.    The Proxy Statements' Alleged Misrepresentations And/Or Omissions Are Immaterial As A Matter of Law..........................25

          D.    Plaintiffs' Section 14(a) Claims Are Barred By The Statute Of Limitations. .............................................................................26

    III.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS BECAUSE IT IS UNTIMELY AND THERE WAS NO ENRICHMENT. ..............................................................26

    IV.    PLAINTIFFS' FIDUCIARY DUTY ALLEGATIONS MUST BE DISMISSED. ....................28

          A.    Plaintiffs' Fiduciary Duty Allegations Fail To State A Claim. ................28

          B.    Plaintiffs' Fiduciary Duty Claim Is Untimely. .........................29

CONCLUSION ................................................................................................30

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Teva Pharms. USA, Inc.*,
  432 F. Supp. 2d 408 (D. Del. 2006) .................................................................................. 9

*Acito v. IMCERA Group, Inc.*,
  47 F.3d 47 (2$^d$ Cir. 1995) ............................................................................................... 13

*Albert v. Alex Brown Mgmt. Servs., Inc.*,
  No. Civ.A. 762-N, 2005 WL 1594085 (Del. Ch. June 29, 2005) ........................................... 28

*Aronson v. Lewis*,
  473 A.2d 805 (Del.1984) .................................................................................................. 29

*Baker v. MBNA Corp.*,
  C. A. No. 05-272 (GMS), 2007 WL 2009673 (D. Del. July 6, 2007) ...................................... 9

*Basic v. Levinson*,
  485 U.S. 224 (1988) ......................................................................................................... 25

*Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3$^d$ Cir. 2004) ..................................................................................... 22, 24

*Castellano v. Young & Rubicam, Inc.*,
  257 F.3d 171 (2$^d$ Cir. 2001) .......................................................................................... 18

*Dasho v. Susquehanna Corp.*,
  461 F.2d 11 (7th Cir. 1972), *cert. denied*, 408 U.S. 925 (1972) ............................... 23, 26

*Desimone v. Barrows*,
  924 A.2d 908 (Del. Ch. 2007) ........................................................................................... 29

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ......................................................................................................... 17

*Gen. Elec. Co. v. Cathcart*,
  980 F.2d 927 (3$^d$ Cir. 1992) ......................................................................................... 22

*Glassman v. Computervision Corp.*,
  90 F.3d 617 (1st Cir. 1996) ........................................................................................ 15

*Grobow v. Perot*,
  539 A.2d 180 (Del. 1988) ................................................................................................. 29

*Gruber v. Price Waterhouse,*
    697 F. Supp. 859 (E.D. Pa.1988) ...................................................................................19

*Guttman v. Huang,*
    823 A.2d 492 (Del. Ch. 2003) .....................................................................................13

*In re Advanta Corp. Sec. Litig.,*
    180 F.3d 525 (3<sup>d</sup> Cir. 1999) ......................................................................... *passim*

*In re Allied Capital Corp. Sec. Litig.,*
    No. 02 Civ. 3812 (GEL), 2003 WL 1964184 (S.D.N.Y. Apr. 25, 2003) ......................... 16-17

*In re Burlington Coat Factory Sec. Litig.,*
    114 F.3d 1410 (3<sup>d</sup> Cir. 1997) .............................................................................6, 9, 10

*In re Carter-Wallace, Inc. Sec. Litig.,*
    150 F.3d 153 (2<sup>d</sup> Cir. 1998) .................................................................................14

*In re DaimlerChrysler AG Sec. Litig.,*
    294 F. Supp. 2d 616 (D. Del. 2003) ...........................................................................17

*In re Duke Energy Corp. Sec. Litig.,*
    282 F. Supp. 2d 158 (S.D.N.Y. 2003), *aff'd*, 113 Fed. App'x 427, No. 03-9081, 2004
    WL 2580891 (2<sup>d</sup> Cir. Nov. 15, 2004) ...................................................................15

*In re Exxon Mobil Sec. Litig.,*
    -- F.3d --, No. 05-4571, 2007 WL 2410129 (3<sup>d</sup> Cir. Aug. 27, 2007)...................................26

*In re Gen. Motors Class E Stock Buyout Sec. Litig.,*
    694 F. Supp. 1119 (D. Del. 1988) ...............................................................................29

*In re Health Mgmt. Sys., Inc. Sec. Litig.,*
    No. 97 Civ. 1865 (HB), 1998 WL 283286 (S.D.N.Y. June 1, 1998)......................................12

*In re Intel Corp. Microprocessor Antitrust Litig.,*
    -- F. Supp. 2d --, No. MDL 05-1717 JJF, Civil Action No. 05-485-JJF, 2007 WL
    2028113 (D. Del. July 12, 2007)...................................................................................27

*In re JP Morgan Chase Sec. Litig.,*
    363 F. Supp. 2d 595 (S.D.N.Y. 2005)...........................................................................15

*In re N. Telecom Ltd. Sec. Litig.,*
    116 F. Supp. 2d 446 (S.D.N.Y. 2000)...........................................................................14

*In re NAHC, Inc. Sec. Litig.,*
    306 F.3d 1314  (3<sup>d</sup> Cir. 2002) ........................................................................ *passim*

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.,*
    311 F.3d 198 (3$^d$ Cir. 2002) ............................................................................ *passim*

*In re SHC, Inc.,*
    329 B.R. 438 (Bankr. D. Del. 2005) ...........................................................6, 7, 8

*In re Suprema Specialties, Inc. Sec. Litig.,*
    438 F.3d 256 (3$^d$ Cir. 2006) .................................................................................9

*In re Tyson Foods,*
    919 A.2d 563 (Del. Ch. 2007)..........................................................................28, 30

*In re Westinghouse Sec. Litig.,*
    90 F.3d 696 (3$^d$ Cir. 1996) ...............................................................................15

*Jackson Nat'l Life Ins. Co. v. Kennedy,*
    741 A.2d 377 (Del. Ch. 1999)........................................................................ 26-27

*Kahn v. Seaboard Corp.,*
    625 A.2d 269 (Del. Ch. 1993)..........................................................................28, 30

*Kalnit v. Eichler,*
    264 F.3d 131 (2d Cir. 2001)...............................................................................12

*Lewis v. Chrysler Corp.,*
    949 F.2d 644 (3$^d$ Cir. 1991) ...............................................................................24

*Mathews v. Kidder, Peabody & Co., Inc.,*
    260 F.3d 239 (3$^d$ Cir. 2001) ...............................................................................19

*MBIA Ins. Corp. v. Royal Indem. Co.,*
    221 F.R.D. 419 (D. Del. 2004) ...................................................................9, 22, 23

*Mele v. Fed. Reserve Bank of N.Y.,*
    359 F.3d 251 (3rd Cir. 2004) ...............................................................................6

*Morse v. Lower Merion Sch. Dist.,*
    132 F.3d 902 (3$^d$ Cir. 1997) ..........................................................................10, 20

*Parnes v. Gateway 2000, Inc.,*
    122 F.3d 539 (8th Cir. 1997) ...............................................................................15

*Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.,*
    998 F.2d 1192 (3$^d$ Cir. 1993) ................................................................................3

*PR Diamonds, Inc. v. Chandler,*
    364 F.3d 671 (6th Cir. 2004) ..........................................................................12, 13

*R.W. ex rel. Williams v. Del. Dept. of Educ.*,
  No. 05-662, 2007 WL 2213598 (D. Del. Aug. 2, 2007) ............................................3

*Royal Indem. Co. v. Pepper Hamilton LLP*,
  479 F. Supp. 2d 419 (D. Del. 2007) ...................................................................10

*Sandvik AB v. Advent Int'l Corp.*,
  83 F. Supp. 2d 442 (D. Del. 1999) .......................................................................9

*SEC v. Infinity Group Co.*,
  212 F.3d 180 (3d Cir. 2000) ..............................................................................10

*Seidel v. Lee*,
  954 F. Supp. 810 (D. Del. 1996) .........................................................................19

*Shaw v. Digital Equip. Corp.*,
  82 F.3d 1194 (1st Cir. 1996) ................................................................................6

*Stone v. Ritter*,
  911 A.2d 362 (Del. 2006) ...................................................................................13

*Teachers' Ret. Sys. of La. v. Hunter*,
  477 F.3d 162 (4th Cir. 2007) ....................................................................... *passim*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  127 S. Ct. 2499 (2007) .............................................................................. 10, 14-15

*Tinney v. Geneseo Commc'ns, Inc.*,
  -- F. Supp. 2d --, Civ. No. 03-1126-SLR, 2007 WL 2264052 (D. Del. Aug. 8, 2007) ..............6

*Total Care Physicians, P.A. v. O'Hara*,
  798 A.2d 1043 (Del. Super. 2001) ................................................................. 26-27

*Tracinda Corp. v. DaimlerChrysler AG*,
  197 F. Supp. 2d 42 (D. Del. 2002) .................................................................9, 19

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976) ..........................................................................................16

*Tse v. Ventana Med. Sys., Inc.*,
  123 F. Supp. 2d 213 (D. Del. 2000), *aff'd*, 297 F.3d 210 (3d Cir. 2002) ...........10, 17

*Williams v. Geier*,
  671 A.2d 1368 (Del. 1996) ..................................................................................29

STATUTES

10 Del. C. § 8106 ..................................................................................................... 28-29

15 U.S.C. § 78j(b) ("Section 10(b) of the Securities Exchange Act").............................. *passim*

15 U.S.C. § 78n(a) ("Section 14(a) of the Securities Exchange Act") .............................. *passim*

28 U.S.C. § 1658(b)...............................................................................................18, 26


## RULES

Rule 9(b) of the Federal Rules of Civil Procedure ................................................ *passim*

Rule 12(b) of the Federal Rules of Civil Procedure ........................................................3

## INTRODUCTION

For all its length and bluster, the 215-paragraph, 80-page Complaint says exceptionally little about Defendant Elkin B. McCallum, who sat on the Board of Directors of Collins & Aikman Corporation ("C&A") from September 2001 until May 2004. This is because the gravamen of the Complaint concerns the alleged actions of *other* Defendants, primarily in the time period *following* Mr. McCallum's resignation from C&A's Board. As far as can be discerned from the Complaint, Mr. McCallum is in this lawsuit primarily because he had the misfortune of having once sat on C&A's Board.

Mr. McCallum is mentioned by name only a handful of times in the Complaint in connection with four small transactions that took place in 2001 and 2002 in which Mr. McCallum sold certain assets and companies to C&A. Plaintiffs contend that C&A "overpaid" for these assets and then was paid back the overcharge by Mr. McCallum. These transactions were improper, the Complaint alleges, because C&A reported the proceeds as income, instead of as a loan. Notably, these transactions were approved by C&A's independent Directors and were cleared by the Company's Audit Committee. Furthermore, no allegation asserts that Mr. McCallum had any knowledge of or involvement in C&A's internal accounting for these transactions, which involved $14.9 million in revenue in a period in which C&A's overall revenue was $9.7 billion.

The first of Plaintiffs' theories against Mr. McCallum—fraud and securities fraud—fails for at least five independent reasons:

1) *Statute of limitations.* Plaintiffs knew of the McCallum transactions back in 2001 and 2002, and disclosed to the public that the company's Audit Committee was investigating the "potential accounting implication" of the transactions "between the Company and affiliates of Elkin McCallum" in 2003. Plaintiffs' attempt to file this suit some three to four years later is barred by the applicable statutes of limitations.

2)    *Lack of scienter.*  The garden-variety transactions in which Mr. McCallum is alleged to have participated could only become fraudulent, if at all, through their subsequent accounting treatment.  But Mr. McCallum is not alleged to have had any knowledge or involvement in C&A's accounting for these transactions. Plaintiffs have alleged no facts giving rise to the requisite "strong inference" that Mr. McCallum acted with fraudulent intent.

3)    *Lack of materiality.*  Plaintiffs contend that the transactions in which Mr. McCallum is alleged to have been involved brought C&A $14.9 million more in revenue than should have been recognized.  But C&A, a multi-billion dollar multi-national corporation, achieved revenues of $9.7 *billion* over that same time period—the $14.9 million represented a mere *0.15 of one percent* of C&A's total revenue.   The transactions at issue cannot truly be said to have had any measurable effect on C&A's financial position at all.

4)    *Lack of loss causation.*  Mr. McCallum's tiny transactions with C&A in 2001 and 2002 were so unimportant that when C&A disclosed they were being investigated in 2003, C&A's share price actually *increased*.  Plaintiffs do not explain how these transactions came back to cause harm years later in 2005.  There is no connection between the transactions and Plaintiffs' alleged losses.

5)    *Lack of false or misleading conduct.*  An investigation by C&A's Audit Committee, specifically referenced in the Complaint, examined each of the four transactions at issue and concluded that they were legitimate, in C&A's interests, and not subject to side deals or undisclosed rebates.  The Complaint's bare conclusion that C&A "overpaid" for assets from Mr. McCallum in exchange for rebates is rebutted by the Audit Committee Report and by C&A's public filings.

Plaintiffs' remaining claims are meritless.  The "unjust enrichment" claim is untimely and the allegations make clear there was no enrichment.   Plaintiffs concede that all "overpayments" were subsequently trued up.  There was no unjust enrichment of any kind, nor is Plaintiffs' claim timely in light of the three-year statute of limitations applicable here.

The fiduciary duty claims fail because they, too, are untimely under the applicable three-year statute of limitations—Mr. McCallum left the C&A Board on May 6, 2004 and the Complaint was filed on May 16, 2007—and because the transactions at issue were approved by the independent members of the Board of Directors.  The Complaint asserts no conduct by Mr. McCallum that constitutes a breach of his fiduciary duties.

2

Plaintiffs' inclusion of Mr. McCallum as a defendant is wholly inappropriate and is evidently premised on the hope that the Court will elect not to parse out what alleged conduct is specifically attributable to Mr. McCallum. The Complaint does not plead a viable cause of action against Mr. McCallum and thus the claims against him must be dismissed under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

### FACTUAL BACKGROUND

Mr. McCallum was the Chief Executive Officer and Chairman of Joan Fabrics, a supplier of automotive fabrics to C&A. Compl. ¶¶ 17, 49. Mr. McCallum joined the Board of Directors of C&A in September 2001 and served as a director until May 2004. *Id.* at ¶ 17. Mr. McCallum held no other position at C&A, and is not alleged to have had <u>any</u> involvement with or knowledge of the Company's accounting or financial decisions, processes, or systems.

***The Transactions at Issue***

Mr. McCallum is mentioned only as to four transactions in the 2001-2002 time frame:

(1)     <u>The 2001 Rebate</u>. The Complaint alleges that Mr. McCallum was asked by Defendant Michael Stepp "[i]n the fourth quarter of 2001" to provide a $3 million rebate to C&A. *Id.* at ¶ 49. Such rebates were common in the automotive industry as excess capacity among the major manufacturers caused them to pressure their suppliers for such payments. *See, e.g.*, C&A Form 10-K for the period ending December 31, 2002 ("2002 10-K") at 3 (attached as Exhibit A to the Declaration of Laurie L. Levin ("Levin Decl.")).[1] The Complaint alleges that this rebate was "falsely characterized on Collins & Aikman's financial statements" as a rebate

---

[1] The Court may consider C&A's public filings and related documents on this motion. *See, e.g., Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *R.W. ex rel. Williams v. Del. Dept. of Educ.*, No. 05-662, 2007 WL 2213598, at *3 (D. Del. Aug. 2, 2007) (holding that on a "motion to dismiss, the court is not limited to the pleadings, but may consider exhibits attached to the complaint, its opinions and orders in the case, matters of public record, items appearing in the case, such as, documents referenced or relied upon by [Plaintiff] in the complaint.").

although it should have been treated as a loan, since C&A repaid it by giving certain looms back to Mr. McCallum. Compl. ¶¶ 49, 51. The Complaint offers no allegation that this transaction was inherently improper or unlawful, nor does it contend that Mr. McCallum had any knowledge of or involvement in the manner in which C&A accounted for the transaction.

(2)    The SWL Sale. Plaintiffs allege that in March 2002, C&A purchased a company called Southwest Laminates ("SWL") from Mr. McCallum for $17 million. *Id.* at ¶¶ 51, 93. Plaintiffs assert, without explanation, that this sum was "at least $7 million more than the Company estimated it was worth." *Id.* at ¶ 51. The Complaint is silent as to who made (or agreed with) this estimate, or when, how, or on what basis it was made. Nor is there any allegation that Mr. McCallum ever saw, knew of, or agreed with this estimate. The Complaint offers no specifics as to who was involved in this transaction or what was discussed about it. Nor does the Complaint allege that Mr. McCallum had any knowledge of or involvement in C&A's accounting for or recognition of revenue from this transaction.

(3)    The Dutton Yarns Sale. Plaintiffs allege that "[d]uring 2002," C&A purchased a company called Dutton Yarns from Mr. McCallum for $4.2 million. *Id.* at ¶ 93. The Complaint asserts "Collins & Aikman improperly inflated the fair value of the $2 million business by $2.2 million, or 110%, and valued the transaction in its financial statements at $4.2 million." *Id.* The Complaint does not provide any details concerning who at C&A did this inflation/valuation, who was involved in the transaction, or why Plaintiffs believe that Dutton Yarns was worth less than what C&A paid. No facts are alleged to indicate that Mr. McCallum knew or understood that some unidentified person or persons at C&A felt that Dutton Yarns was worth less, nor is he alleged to have had any understanding as to how C&A was accounting for the transaction.

4

(4)    The Sale of Furniture Looms and Equipment.    Plaintiffs allege that at an unspecified time (but evidently "between 2001 and 2003"), C&A "overpaid" for certain looms and texturing machines it bought from Mr. McCallum's company, Joan Fabrics, and that the overcharge was subsequently paid back to C&A. *Id.* at ¶ 51.  Plaintiffs offer no factual basis for their estimate of the value of these assets, nor any allegations to suggest that Mr. McCallum knew of or was involved in C&A's internal accounting for the transaction.

The Complaint asserts that these four transactions caused "Collins & Aikman's financial results" to be "artificially inflated by at least $14.9 million between 2001 and 2003." *Id.* at ¶ 52. The Company's revenues for those three years, however, was $1.823 billion in 2001, $3.886 billion in 2002, and $3.984 billion in 2003, for a total of $9.693 billion. *See* C&A Form 10-K/A for the year ending December 1, 2001 ("2001 10-K/A") at F-39 (attached as Exhibit B to the Levin Decl.); 2002 10-K at F-42; C&A Form 10-K for the year ending December 1, 2003 ("2003 10-K") at F-51 (attached as Exhibit C to the Levin Decl.).  Thus, the total revenue derived from the allegedly improper transactions was approximately 0.15 of one percent of C&A's revenues.

The Complaint alleges no motive for "fraud."    In fact, Plaintiffs concede that Mr. McCallum paid back to C&A sums "in an equal amount" to the alleged overcharges to C&A. Compl. ¶ 95.  And although Mr. McCallum, through his company Joan Fabrics, was a significant shareholder of C&A at all relevant times (owning nearly 12.8 million shares of C&A stock, *see, e.g.,* C&A Schedule 13D, filed October 1, 2001 ("10/1/01 SC 13D") at 4 (attached as Exhibit D to the Levin Decl.)), he is not alleged to have sold any shares of C&A stock.

### The 2003-2004 Audit Committee Investigation

The Complaint specifically references an internal investigation conducted by the Audit Committee of C&A into the four C&A-McCallum transactions discussed above.  Compl. ¶ 142.

According to the Plaintiffs, this investigation was occasioned when "two former Collins & Aikman executives called into question the integrity of the Company's financial reporting" of the McCallum transactions. *Id.* Significantly, C&A informed the investing public of this investigation in an August 15, 2003 press release, which noted that the manner in which C&A had accounted for its transactions with Mr. McCallum was being scrutinized. *See* Press Release, Collins & Aikman Corporation, "Collins & Aikman Announces Second Quarter EPS of 13 Cents; Reduces Net Debt By $54 Million; Sets Restructuring Actions to Improve Results; Announces Audit Committee Inquiry" (August 15, 2003), http://www.collinsaikman.com/profile/news.asp?newsid=478&year=2003 (last visited September 12, 2007) (the "8/15/03 Press Release") (attached as Exhibit E to the Levin Decl.).

C&A's Audit Committee retained the law firm of Davis Polk & Wardwell and an accounting expert formerly of Ernst & Young to investigate these transactions and others on August 8, 2003. Audit Committee Report (the "Report") (attached as Exhibit F to the Levin Decl.) at 2.[2] Over a period of some seven months, the Committee interviewed twenty-three

---

[2] The Court may consider the Audit Committee Report on this motion to dismiss because it is "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Consequently, the document "may be considered without converting the motion to dismiss into one for summary judgment." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 206 (3d Cir. 2002) (internal quotations and citation omitted). Where, as here, "plaintiff has actual notice . . . and has relied upon these documents in framing the complaint," the rationale of not considering such documents is "dissipated." *In re Burlington*, 114 F.3d at 1426. This is particularly true in situations such as the current one, where plaintiff is seeking to buttress its claim by invoking the Audit Committee Report even though if the "statement were examined in the full context of the document, it would be clear that the statement [did not support the claim]." *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3rd Cir. 2004) (quoting *In re Burlington*, 114 F.3d at 1426); *see also Tinney v. Geneseo Commc'ns, Inc.*, -- F. Supp. 2d --, Civ. No. 03-1126-SLR, 2007 WL 2264052, at *7 n.16 (D. Del. Aug. 8, 2007) (considering a board resolution on a motion to dismiss where plaintiff "had actual notice of the resolution's contents"); *In re SHC, Inc.*, 329 B.R. 438, 442 (Bankr. D. Del. 2005) ("The Court may consider documents which are incorporated into the complaint or counterclaim, even if they contradict the

people, sometimes on several occasions.    *Id.* at 3, 17-18.    The Committee reviewed approximately thirty boxes of documents, over 35,000 computer files, and searched over 80,000 company e-mails. *Id.*

On March 8, 2004, the Audit Committee issued its 104-page Report, expressly finding that there was nothing improper or unlawful about these transactions; to the contrary, each transaction was found to have been legitimate, in C&A's interests, and not subject to side deals or undisclosed rebates. *See generally* Report.    The Committee found that "there were no undisclosed 'side deals'" and concluded that C&A had generally accounted for the transactions "in accordance with generally accepted accounting principles." *Id.* at 21.

The Committee found that the $3 million rebate in late 2001 was the product of detailed and arm's-length negotiations between C&A and Joan Fabrics:

> [t]he totality of the evidence examined by the Committee supports the conclusion that the rebates were fairly negotiated, served the legitimate business purpose of increasing the Company's margin, and were not conditioned upon any return of value to Mr. McCallum through any of the Company's subsequent transactions with Mr. McCallum.

*Id.* at 75; *see also id.* at 65-68.    The Committee further concluded that the accounting treatment that C&A gave to the rebates was appropriate. *Id.* at 75.

The Committee also reviewed C&A's acquisition of Southwest Laminates from Mr. McCallum.    It found that the acquisition was a legitimate business transaction that was expected to increase C&A's sales by $80 million and its EBITDA by $5 million. *Id.* at 77.    The transaction had been properly reviewed and approved by C&A's Board of Directors (with Mr.

---

allegations."). Because Plaintiff has chosen to invoke the Audit Committee Report in support of its claims in this case, the Court may properly examine that entire document on this motion.

7

McCallum abstaining). *Id.* The Committee rejected the notion that the price paid was excessive. *Id.* at 77-78.

The Committee also found no impropriety or overpayment in connection with the sale of Dutton Yarns by Mr. McCallum to C&A, which was approved by C&A's Board of Directors (again with Mr. McCallum abstaining). *Id.* at 83-84. C&A's disinterested Board members specifically authorized management to conclude a deal for Dutton Yarns at a price up to $5 million. *Id.* at 83. The Committee concluded that the price paid was appropriate and "was not consideration for the rebates or any other transaction with Mr. McCallum." *Id.* at 86. Noting that one appraisal had valued the Dutton Yarns equipment at a lower amount, the Committee found that Dutton Yarns was in fact more valuable to C&A than the appraisal suggested for a variety of reasons, including its going concern value, synergies and the value of vertically integrating into C&A, non-compete rights that accompanied the sale, and the costs C&A would likely have incurred had it sought to purchase such equipment from other sources. *Id.* at 84-86.

Finally, the Committee examined C&A's purchase of looms and equipment from Mr. McCallum in 2002 as part of the sale of a large business. While it found the documentation of that transaction confusing and incomplete (*id.* at 81), the Committee still found that the transaction "was appropriate, was motivated by legitimate business purposes, and was not designed to benefit Mr. McCallum at the Company's expense." *Id.* at 92. The Committee found no issues with the purchase price of the assets sold and noted that some of the consideration paid "was to secure a valuable supply agreement." *Id.* at 93.

ARGUMENT

I.    **PLAINTIFFS' FRAUD AND SECURITIES FRAUD CLAIMS ARE NEITHER VIABLE NOR PROPERLY PLED.**

    A.    **The Strict Pleading Requirements For Fraud.**

8

Because "fraud" is a serious accusation, special rules exist to protect defendants where fraud is alleged. Rule 9(b) of the Federal Rules of Civil Procedure demands that "the circumstances constituting fraud . . . shall be stated with particularity." This Rule serves to provide defendants "notice of the claims against them, provide[] an increased measure of protection for their reputations, and reduce[] the number of frivolous suits brought solely to extract settlements." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)).

Under settled Third Circuit law, Rule 9(b) requires Plaintiffs to plead all of the specifics—"the who, what, when, where, and how" of the alleged fraud—with particularity. *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999). Under Rule 9(b), "fraud allegations should be analyzed individually to determine whether each alleged incident of fraud has been pleaded with particularity." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 224 (3d Cir. 2002). Moreover, a plaintiff "cannot sue multiple defendants for fraud merely by alleging fraud with particularity as to one defendant." *Abbott Labs. v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408, 432 (D. Del. 2006) (quoting *Sandvik AB v. Advent Int'l Corp.*, 83 F. Supp. 2d 442, 448 (D. Del. 1999)). Instead, "a plaintiff is required to separately plead the fraudulent acts of each defendant to satisfy Rule 9(b)." *MBIA Ins. Corp. v. Royal Indem. Co.*, 221 F.R.D. 419, 421 (D. Del. 2004).[3]

Thus, to survive this motion to dismiss, the Complaint must offer detailed, particularized facts as to each element of the Section 10(b) claim asserted against Mr. McCallum, namely "(1) a misstatement or omission; (2) of a material fact; (3) with scienter; (4) in connection with the

---

[3] "The plaintiffs' blanket allegations against 'the defendants' and 'management' do not meet the particularity requirements of Rule 9(b) . . . ." *Baker v. MBNA Corp.*, C. A. No. 05-272 (GMS), 2007 WL 2009673, at *7 (D. Del. July 6, 2007).

purchase or sale of a security; (5) upon which the plaintiff reasonably relied; and (6) that reliance

was the proximate cause of plaintiff's injury." *Tracinda Corp. v. DaimlerChrysler AG*, 197 F.

Supp. 2d 42, 54 (D. Del. 2002).[4] Finally, "a court need not credit a complaint's 'bald assertions'

or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*,

132 F.3d 902, 906 (3[d] Cir. 1997) (quoting *Burlington*, 114 F.3d at 1429-30).

The Complaint offers only conclusions—not facts—against Mr. McCallum and thus the

claims against him must be dismissed.

### B.    Plaintiffs Fail To Offer Factual Allegations Giving Rise To A "Strong Inference" Of Scienter.

The "fraud" and "securities fraud" claims against Mr. McCallum must be dismissed

because Plaintiffs have pled no facts that give rise to the requisite "strong inference" that Mr.

McCallum acted with scienter—*i.e.*, that Mr. McCallum intended to defraud. *See Tse v. Ventana*

*Med. Sys., Inc.*, 123 F. Supp. 2d 213, 225 (D. Del. 2000) ("*Tse I*"), *aff'd*, 297 F.3d 210 (3[d] Cir.

2002) ("*Tse II*"). "To plead scienter, a plaintiff must allege facts 'establishing a motive and an

opportunity to commit fraud, or . . . set[] forth facts that constitute circumstantial evidence of

either reckless or conscious behavior.'" *Id.* (quoting *In re Advanta Corp.*, 180 F.3d at 534-35).

Recklessness is defined to mean "highly unreasonable (conduct), involving not merely simple, or

even inexcusable negligence, but an extreme departure from the standards of ordinary care, . . .

which presents a danger of misleading . . . that is either known to the defendant or is so obvious

---

[4] The elements of common law fraud under Delaware law are substantially identical. "Under Delaware law, the elements of common law fraud are: 1) a false representation, usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as the result of such reliance." *Royal Indem. Co. v. Pepper Hamilton LLP*, 479 F. Supp. 2d 419, 430 (D. Del. 2007).

that the actor must have been aware of it." *SEC v. Infinity Group Co.*, 212 F.3d 180, 192 (3$^d$ Cir. 2000) (citations omitted).[5]

Plaintiffs have not pled facts giving rise to *any* inference, much less a "strong inference," that Mr. McCallum acted with scienter, for at least three reasons. *First*, the allegations do not provide any facts to suggest that Mr. McCallum had any awareness of the accounting treatment accorded the transactions by C&A. *Second*, the allegations negate the notion that Mr. McCallum had any motive to engage in any alleged fraud. *Third*, the inferences on which Plaintiffs seek to rely are not at least as compelling as the opposing inferences (*i.e.*, that Mr. McCallum acted without scienter), which are more plausible and better supported by the allegations and documents referenced therein.

### 1.    Plaintiffs Have Not Alleged That Mr. McCallum Had Any Knowledge Of Improper Accounting By C&A.

Notably absent from the 80-page Complaint is a single allegation suggesting that Mr. McCallum had *any knowledge at all* about how C&A intended to or did account for the transactions that Plaintiffs allege constitute a "fraud." Without such an allegation, there is no basis to suppose that Mr. McCallum had any awareness of any improprieties, and thus the Complaint fails to plead scienter.

It is important to note that the transactions at issue here are not inherently unlawful. There is nothing wrong with giving a corporation a loan, or a rebate, or selling a company to

---

[5] Recently, the United States Supreme Court interpreted the phrase "strong inference" in the context of deciding how scienter must be pled under the Private Securities Litigation Reform Act. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007). The Court held that for an inference to qualify as "strong," it "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 2504-05. Moreover, "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Id.* at 2509. In other words, the Court must compare inferences both for and against scienter; if the inferences in favor of scienter created by the allegations of the Complaint are not stronger than the competing inferences that weigh against scienter, the Complaint must be dismissed.

another company. These transactions can only become suspect if they are accounted for or reported after the fact in an improper manner by the company. In other words, the "fraud" can only lie in the company's subsequent treatment of the transactions—not the transactions themselves, which are unremarkable and commonplace in the business world. The basis of the Complaint, therefore, is that that C&A did not accurately reflect the true nature of these transactions in C&A's financial statements.

But Mr. McCallum is not alleged to have played any role in C&A's accounting department, nor any role in the management or operations of that company. He is not alleged to have had any dealings with or awareness of the accounting system of C&A in any way, or to have known of any accounting decisions or entries made concerning these or any other transactions. Plaintiffs have not offered a single allegation to suggest that Mr. McCallum had any awareness of how C&A's accounting personnel were treating the transactions at issue. There is no basis to assume that Mr. McCallum believed these transactions were anything other than what they were—a series of ordinary sales and rebates negotiated at arm's length and approved by the disinterested members of the Board of Directors.

The most that can be said about Mr. McCallum is that he was once a member of the C&A Board of Directors. But courts invariably find that such mundane, universal circumstances do not give rise to a "strong inference" of scienter. *See, e.g., In re Advanta Corp.*, 180 F.3d at 539 (holding that in a suit against officers and directors alleging misleading disclosure of the company's earnings, plaintiffs "may not rest on a bare inference that a defendant 'must have had' knowledge of the facts") (citation omitted); *In re Health Mgmt. Sys., Inc. Sec. Litig.*, No. 97 Civ. 1865 (HB), 1998 WL 283286, at *6 (S.D.N.Y. June 1, 1998) ("[C]ourts have routinely rejected the attempt to plead scienter based on allegations that because of defendants' board membership

Case 1:07-cv-00265-SLR-LPS     Document 26     Filed 09/14/2007     Page 20 of 40


and/or their executive managerial positions, they had access to information concerning the company's adverse financial outlook.").[6] Outside directors are generally not presumed to have intimate knowledge of the accounting details of the company, and the allege that any accounting regularities automatically subject Mr. McCallum to claims of fraud would make a mockery of the notion of "fraud." *Guttman v. Huang*, 823 A.2d 492, 498 (Del. Ch. 2003) (dismissing a derivative complaint of insider trading where the company was "entirely devoid of particularized allegations of fact demonstrating that the outside directors had actual or constructive notice of the accounting improprieties" that existed at the company); *see also Stone v. Ritter*, 911 A.2d 362, 364-65 (Del. 2006).

The Complaint provides no facts that would give rise to any inference—much less a "strong inference"—that Mr. McCallum knew or believed that C&A was not properly accounting for the transactions in question. Plaintiffs' scienter allegations are wholly conclusory and inadequate to plead fraud.

### 2.    Mr. McCallum Had No Motive To Commit Fraud.

Plaintiffs make no effort to plead that Mr. McCallum had a motive to commit fraud, and their allegations prove that he did not. According to Plaintiffs, Mr. McCallum remitted all of the supposed "excess consideration" right back to C&A "in an equal amount" to what he received. Compl. ¶ 95. The alleged transactions thus conferred no windfall or special benefits to Mr. McCallum. Moreover, C&A's Audit Committee, which examined these issues carefully, found that these agreements, approved by the disinterested members of C&A's Board of Directors, were "appropriately negotiated, approved and disclosed . . . ." Report at 77-78.

---

[6] Such all-inclusive allegations concerning scienter "generally possessed by most corporate directors and officers" simply "do not suffice" to create a strong inference of scienter. *Kalnit v. Eichler*, 264 F.3d 131, 139 (2ᵈ Cir. 2001); *accord PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 688 (6ᵗʰ Cir. 2004) ("[F]raudulent intent cannot be inferred merely from the Individual Defendants' positions in the Company and alleged access to information.").

Motive is also refuted by the fact that Mr. McCallum, a significant holder of C&A stock through his company Joan Fabrics, is not alleged to have sold a single one of his nearly thirteen million C&A shares at any time during the relevant period. Thus, if Mr. McCallum really had committed a fraud, he would simply have been defrauding himself. *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2$^d$ Cir. 1995) ("that . . . defendants did not sell their shares during the relevant class period undermines plaintiffs' claim"); *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 691 (6th Cir. 2004) ("the absence of inside sales dulls allegations of fraudulent motive.").[7] Indeed, Mr. McCallum lost millions in the bankruptcy of C&A. The entire notion of "fraud" is misplaced here.

Mr. McCallum had nothing to gain from the alleged fraud and, because of his significant shareholdings in C&A, much to lose. Plaintiffs' allegations are squarely inconsistent with motive and thus the Complaint fails for lack of scienter.

### 3.     The More Compelling Inferences Negate Fraud.

The Supreme Court's directive in *Tellabs* provides yet another, independent reason for dismissing the Complaint for lack of scienter. The inferences that can be drawn from the facts that the Court may consider on this motion more plausibly point to the absence of fraudulent intent than its presence.

As the Audit Committee found, the transactions at issue were presented to the independent directors of C&A, who independently evaluated the proposed deals in accordance with their fiduciary duties to the corporation. Mr. McCallum could reasonably conclude that those directors had honored their duties, evaluated the proposed purchase prices, and decided that the prices requested were appropriate. In short, Mr. McCallum "had no sound reason to

---

[7] *See also In re N. Telecom Ltd. Sec. Litig.*, 116 F. Supp. 2d 446, 462 (S.D.N.Y. 2000) (finding that the actions of defendants who "held or increased their holdings" and thus experienced losses, were "inconsistent with an intent to defraud").

doubt the commercial viability" of the transactions and thus cannot be said to have acted fraudulently. *In re Carter-Wallace, Inc. Sec. Litig.*, 150 F.3d 153, 157 (2$^{d}$ Cir. 1998). The Complaint alleges nothing to the contrary.

Moreover, as noted above, the Audit Committee found evidence to show that each of the four transactions at issue was appropriate. Because Plaintiffs' "fraud" theory is significantly less logical and substantiated than the picture the evidence paints of non-fraudulent transactions, the logic of *Tellabs* compels dismissal.

### C.    The McCallum Transactions Are Immaterial As A Matter Of Law.

The four transactions that Mr. McCallum is alleged to have been involved in brought C&A a mere $14.9 million in revenue between 2001 and 2003. Compl. ¶ 52. Over the same period, C&A generated a whopping $9.693 billion in revenue from its global operations, with quarterly revenue ranging from a low of $482 million to a high well in excess of $1 billion. Thus, the challenged transactions represented a mere *0.15%* of C&A's revenue over the relevant period and are not alleged to have converted a loss into a profit. *See* 2001 10-K/A at F-39; 2002 10-K at F-42; 2003 10-K at F-51. The amounts of revenue at issue are well below those that courts have found to be immaterial as a matter of law. *See, e.g., In re Westinghouse Sec. Litig.*, 90 F.3d 696, 715 (3$^{d}$ Cir. 1996) (affirming dismissal based on immateriality of 1.2% overstatement of total assets despite 60% drop in stock price); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546-47 (8th Cir. 1997) (affirming dismissal where alleged overstatement of assets by 2% was immaterial as a matter of law); *Glassman v. Computervision Corp.*, 90 F.3d 617, 633 (1st Cir. 1996) (affirming denial of leave to amend complaint based on immateriality of omission concerning 3% to 9% of actual revenues); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 631 (S.D.N.Y. 2005) (granting dismissal because, *inter alia*, "[c]hanging the accounting

15

treatment of approximately 0.3% of JPM Chase's total assets from trades to loans would not have been material to investors").[8]

It is hard to imagine that any rational investor in a company with $4 billion in annual revenues would find $14.9 million particularly notable, much less dispositive. A change of so small a fraction of one percent of C&A's revenues would not be "viewed by the reasonable investor as having significantly altered the 'total mix' of information made available" and thus is immaterial as a matter of law. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3$^{\text{d}}$ Cir. 2002) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). Simply put, the notion that Mr. McCallum's tiny role here made any difference to any rational investor is not supported by the allegations of the Complaint.

The best proof of this is the reaction of the market itself to C&A's August 15, 2003 press release that included an announcement of an Audit Committee inquiry into each of the four McCallum transactions challenged by Plaintiffs. On the day the investigation was announced, C&A's stock was trading at $2.43 per share. *See* C&A stock price on August 15, 2003, August 22, 2003, and August 29, 2003, as reported by Morningstar, Inc. (attached as Exhibit G to the Levin Decl.). Following the disclosure, C&A's stock price *increased* to $2.85 per share within one week and by $3.07 per share within two weeks, even though the announcement clearly indicated that the investigation was examining the propriety of the accounting treatment of the transactions. This confirms that the market had determined that the transactions under investigation were not material to investors' decisions. *Id.*; *see, e.g., In re NAHC*, 306 F.3d at

---

[8] The court in *In re Duke Energy Corp. Sec. Litig.*, 282 F. Supp. 2d 158 (S.D.N.Y. 2003), *aff'd*, 113 Fed. App'x 427, No. 03-9081, 2004 WL 2580891 (2$^{\text{d}}$ Cir. Nov. 15, 2004), dismissed highly similar "round trip" allegations on the ground that they were immaterial as a matter of law. The Court held that "an inflation of $217 million in the Company's revenues for the relevant period amounts to about 0.3% of Duke Energy's total revenues for that period" and were "an immaterial percentage as a matter of law." *Id.* at 161. Here, an inflation of $14.9 million amounts to only 0.15% of C&A's total revenues and thus is immaterial as a matter of law.

1331 (affirming dismissal of complaint alleging securities fraud based on $13.4 million loss where "disclosure had no negative effect whatsoever on the price of [the issuer's] stock on or immediately following [the date of disclosure]"); *In re Allied Capital Corp. Sec. Litig.*, No. 02 Civ. 3812 (GEL), 2003 WL 1964184, at *5-6 (S.D.N.Y. Apr. 25, 2003) (finding no materiality where the company's stock price fell by 10% following public questions concerning its valuation methods because, *inter alia*, the stock price's subsequent recovery, "in the face of a general decline in the market, . . . indicates that investors quickly determined that the 'new' information was *not* material to their investment decisions") (emphasis in original).

**D.    The Claims Against Mr. McCallum Must Be Dismissed For Lack Of Loss Causation.**

Plaintiffs' claims against Mr. McCallum fail for a further, independent reason: failure to plead loss causation. To establish loss causation or "proximate cause" as the concept is referred to with respect to common law fraud, Plaintiffs "must show a 'legal link' between Defendants' alleged misrepresentations and [Plaintiffs'] alleged injury." *In re DaimlerChrysler AG Sec. Litig.*, 294 F. Supp. 2d 616, 626 (D. Del. 2003) (quoting *Tse II*, 297 F.3d at 217). It is not sufficient for Plaintiffs to argue that they purchased or sold securities at an artificially inflated price. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Instead, loss causation requires the plaintiff to point to some causal link between the alleged fraudulent conduct of Mr. McCallum and a concrete decline in the value of the plaintiff's stock. *Id.*

The Complaint fails to do this. Plaintiffs offer no allegations that Mr. McCallum himself, or the few, small transactions in which Mr. McCallum is actually alleged to have been involved, were in any way the cause of any losses suffered by Plaintiffs. There is no attempt to suggest how the modest $14.9 million C&A is alleged to have realized from its transactions with Mr. McCallum in 2001 and 2002 somehow snowballed into the collapse and bankruptcy of a $4

billion multi-national corporation in 2005. *See Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 186 (4th Cir. 2007) (affirming dismissal of a "roundtrip" fraud case for failure to allege loss causation "with sufficient specificity to enable the court to evaluate whether the necessary causal link exists").[9]

The market reaction to the disclosure that the McCallum transactions were being investigated is once again significant. The investigation was disclosed in 2003, and was immediately followed by an *increase* in the stock price. It makes no sense to suppose that Mr. McCallum's few transactions in 2001 and 2002 could have been the cause of Plaintiffs' alleged losses in 2005 when the investing public found them to be of no significance in 2003. It makes no sense to suppose that these transactions could have caused losses at all in 2005, years after the potential accounting problems were disclosed publicly. Plaintiffs' failure to connect the transactions at issue to their alleged injuries should result in the dismissal of their Complaint.

### E.    Plaintiffs' Claims Against Mr. McCallum Are Barred By The Statute Of Limitations.

Plaintiffs' claims must be dismissed for yet another, independent reason: they are barred by the applicable two-year statute of limitations. *See* 28 U.S.C. § 1658(b) (providing that securities law claims must be brought "not later than the earlier of— (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation").

As noted above, Mr. McCallum's brief cameo in this story took place between 2001 and 2002, when his four transactions with C&A were conducted. The last time period discussed in the Complaint in which Mr. McCallum is mentioned by name—the "first quarter of 2003," when

---

[9] The lapse of time alone between the 2001-2002 transactions and Plaintiff's alleged losses in 2005 further weighs against loss causation and demands clearer allegations to link Mr. McCallum's alleged conduct to Plaintiff's claimed injuries. *See Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 186 (2[d] Cir. 2001) (finding that loss causation inquiry requires an examination of "the lapse of time between the behavior complained of and the loss").

C&A received the last of the revenue from the McCallum transactions (Compl. ¶ 50)—predates the filing of the Complaint by more than four years. Since Plaintiffs—*i.e.*, C&A itself—cannot reasonably argue that they were unaware of these transactions, the Complaint is untimely.

Also significant here is the fact that the Company issued a press release on August 15, 2003—three years, nine months and one day prior to the May 16, 2007 filing of the Complaint— about the four transactions with Mr. McCallum. The press release specifically noted that the company's Audit Committee was investigating the "potential accounting implication" of transactions "between the Company and affiliates of Elkin McCallum." 8/15/03 Press Release at 3. C&A's press release makes clear that the Company had received allegations of impropriety from "former executives of the Company" and it notes that the Company's Audit Committee was retaining independent counsel to conduct an investigation. *Id.* Thus, more than three years ago, Plaintiffs knew the details concerning the transactions as well as the possibility that they were accounted for in an improper manner—precisely what is alleged here now.[10] Because Plaintiffs waited for approximately four years to raise the issues that now comprise their claims as to the McCallum-C&A transactions, Plaintiffs' claims are time barred.

---

[10] In the Third Circuit, the statute of limitations period is triggered by mere "inquiry notice" and "begins to run when the plaintiffs 'discovered or in the exercise of reasonable diligence should have discovered the basis for their claim' against the defendant." *In re NAHC*, 306 F.3d at 1325 (quoting *Gruber v. Price Waterhouse*, 697 F. Supp. 859, 863 (E.D. Pa. 1988)). As the Third Circuit has held, "[w]hether the plaintiffs, in the exercise of reasonable diligence, should have known of the basis for their claims depends on whether they had 'sufficient information of possible wrongdoing to place them on 'inquiry notice' or to excite 'storm warnings' of culpable activity.'" *Id.* Information made available to the investing public through press releases or public filings can constitute inquiry notice and trigger the limitations period. *Seidel v. Lee*, 954 F. Supp. 810, 817 (D. Del. 1996). Moreover, "a plaintiff need not be made aware of the entire alleged fraudulent scheme to be on inquiry notice." *Tracinda Corp.*, 197 F. Supp. 2d at 56; *see also Mathews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239, 252 (3d Cir. 2001) ("Plaintiffs need not be aware of the suspicious circumstances or understand their import. It is enough that a reasonable investor of ordinary intelligence would have discovered the information and recognized it as a storm warning."). While the corporation itself clearly had actual notice of the events at issue here, at a minimum, the August 15, 2003 press release was an unmistakable "storm warning" as to the propriety of the transactions and shows an awareness by the corporation at that time of the possibility of improper conduct.

**F.      Plaintiffs Have Not Pled With Particularity Facts That Show That The Challenged Transactions Were Fraudulent.**

Plaintiffs were obligated to allege with particularity false or misleading statements by Mr. McCallum.   Moreover, as to allegedly fraudulent "round trip" transactions, a complaint "must allege facts sufficient to support a reasonable belief that both legs of the round-tripping were a sham" or face dismissal.  *Teachers' Ret. Sys.*, 477 F.3d at 179.  The Complaint wholly fails to meet this standard.

Three of the challenged transactions—the SWL, Dutton Yarns, and the loom and equipment sales—depend critically on Plaintiffs' assertion that C&A paid too much and received the "overpayment" as a rebate which it then improperly recognized as income.   But the Complaint pleads no *facts* that this was the case, only the mere conclusion that it is so.  As to the furniture loom sale, for example, Plaintiffs offer only a single, unsupported opinion that the looms were "only worth approximately $2 million." Compl. ¶ 51.  This is not an allegation of particularized facts supporting fraud, but the mere conclusion of fraud, which should be disregarded on this motion to dismiss.  *See Morse*, 132 F.3d at 906.

The allegations concerning the Dutton Yarns transaction suffer from the same defect. That transaction is condemned by Plaintiffs with a cryptic conclusion that "Collins & Aikman improperly inflated the fair value of the $2 million business by $2.2 million . . . ." Compl. ¶ 93. All details concerning the basis for this conclusion are omitted, such as when the valuation was made, for what purpose, by whom, or how.   Similarly, Plaintiffs' assertion that the purchase price of SWL was "improperly inflated" by "at least $7 million" (*id.*) provides no details, such as who made the estimate, when, for what purpose, or how.   Rule 9(b) obligated Plaintiffs to specify in detail "the who, what, when, where, and how"—of the alleged fraud.  *In re Advanta*

*Corp.*, 180 F.3d at 534. Plaintiffs have entirely failed to meet this requirement and have offered no *facts* to support their mere conclusory assertions that the amounts paid were inappropriate.[11]

Crucially, the Complaint is inconsistent with the Audit Committee investigation that it incorporates by reference, thus mandating dismissal. The 104-page Report concludes that the transactions were legitimate, in C&A's interests, and not subject to side deals or undisclosed rebates. *See supra.* As to the SWL transaction, for example, the Committee noted that the purchase, approved by the independent members of C&A's Board, was expected to cause C&A's sales to increase by $80 million, and its EBITDA by $5 million. Report at 77. C&A's securities filings confirm that the acquisition of Southwest Laminates was, in fact, a boon for C&A: the Company's net sales increased in 2002 and "the 2002 acquisition of SWL drove this sales increase" in significant part. 2002 10-K at 21.[12]

Plaintiffs' conclusory allegations concerning the Dutton Yarns transaction similarly cannot be squared with the specific factual matter contained in the referenced documents. Plaintiffs offer the conclusory assertion that "Collins & Aikman improperly inflated the fair value of the $2 million business by $2.2 million" with no further specifics. Compl. ¶ 93. The Audit Committee Report explains why the $4.2 million purchase price was appropriate. Noting one lower appraisal amount for Dutton Yarns' equipment, the Committee observed several reasons why C&A's purchase price was appropriately higher. Among other things, C&A was purchasing, an "ongoing operation" worth more than the book value of its assets. Report at 84.

---

[11] The need for particularized allegations is especially acute where, as here, the notion of "fraud" hinges critically on the subjective and problematic question of valuation. *See Teachers' Ret. Sys.*, 477 F.3d at 181 ("A 'fair' acquisition price depends on a wide variety of factors, including market value, dividends, earning prospects, the nature of the enterprise, and any other facts . . . which throw any light on future prospects.") (internal quotations omitted).

[12] Moreover, the specific terms of the SWL transaction, including the purchase price, were publicly disclosed in C&A's securities filings. *See, e.g.*, C&A 10-Q/A for the period ending March 31, 2002 at 23 ("Q1 2002 10-Q/A") (attached as Exhibit H to the Levin Decl.) (noting sale of SWL to C&A by Mr. McCallum for $17 million in stock, cash, and debt).

C&A also received non-compete rights as part of the transaction and expected "synergies" between C&A and Dutton Yarns to make the company of particular value to C&A. *Id.* at 85. C&A had examined the possibility of acquiring similar assets elsewhere, and concluded that it would have incurred as much as $4 million in out-of-pocket and startup costs and would still face a potential lack of dependability in supply. *Id.* at 85-86. Thus, the C&A Board (minus Mr. McCallum, who recused himself) approved the Dutton Yarns purchase at a price of up to $5 million—substantially more than C&A actually negotiated and paid. *Id.* at 86. C&A's disclosures concerning Dutton Yarns confirm that C&A acquired more than merely the assets of that company. *See* 2002 10-K at 34 ("Dutton Yarns has agreed to provide the Company transition services through December 31, 2003.").

The Complaint is astonishingly devoid of any factual allegation that shows that Mr. McCallum misrepresented or omitted anything, or that he acted in an improper manner. The Complaint boils down to a mere allegation that certain transactions between Mr. McCallum and C&A were not accounted for properly. Not a single fact is alleged to suggest that Mr. McCallum committed any "fraud" of any kind. Plaintiffs utterly fail to satisfy and Rule 9(b) and thus the claims against Mr. McCallum must be dismissed.

## II.   PLAINTIFFS' SECTION 14(A) AND RULE 14A-9 CLAIMS FAIL FOR THE SAME REASON AS THEIR FRAUD AND SECTION 10(B) CLAIMS.

### A.   Plaintiffs' Obligation Under Section 14(a) And Rule 14a-9.

To prevail on their claim under § 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder, Plaintiffs must plead and prove that:

> (1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was 'an essential link in the accomplishment of the transaction.'

*In re NAHC*, 306 F.3d at 1329 (quoting *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 932 (3ᵈ Cir. 1992)).  Although it is not necessary to allege scienter as an element of § 14(a) claims, because such claims "sound in fraud," they are subject to the heightened pleading standards of Rule 9(b). *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 142, 143-44 (3ᵈ Cir. 2004); *see also In re Rockefeller Ctr. Props.*, 311 F.3d at 212 (holding that § 14(a) claims "require . . . well-pleaded allegations of fraudulent misrepresentations or omissions. . . .").  Most importantly, to satisfy Rule 9(b), Plaintiffs must "separately plead the fraudulent acts of each defendant." *MBIA Ins. Corp.*, 221 F.R.D. at 421.  In their improper attempt to group Mr. McCallum in with the other defendants, Plaintiffs fail utterly to fulfill this obligation.

**B.    Plaintiffs Have Failed To Plead Their Section 14(a) Claims With The Requisite Particularity.**

Plaintiffs base their § 14(a) claims on the issuance of three Proxy Statements—dated April 25, 2002, April 24, 2003, and September 30, 2004—alleging that they "violated Section 14(a) and Rule 14a-9 because they omitted material facts, including that Collins & Aikman's reported financial results were artificially inflated through a variety of improper accounting practices and the Company was then experiencing severe liquidity constraints." Compl. ¶ 160. As an initial matter, Plaintiffs' claim against Mr. McCallum as to the 2004 Proxy Statement fails because that Proxy Statement was issued *nearly five months after* Mr. McCallum left C&A's Board of Directors on May 6, 2004.  *Id.* at ¶ 17.  Regardless of whether Plaintiffs' allegations concerning the 2004 Proxy Statement are sufficient to state a claim against the other Defendants in this action, they are certainly insufficient to state a claim as to Mr. McCallum.  *See MBIA Ins. Corp.*, 221 F.R.D. at 421; *see also Dasho v. Susquehanna Corp.*, 461 F.2d 11, 33 (7ᵗʰ Cir. 1972) (holding that a former director cannot be held responsible for actions taken by the Board of Directors after his resignation), *cert. denied*, 408 U.S. 925 (1972).  Moreover, by Plaintiffs' own

account, the so-called "severe liquidity constraints" at the core of this claim are not alleged to have developed until "August 2004," again well after Mr. McCallum left the C&A Board. Compl. ¶ 60.

With respect to the 2002 and 2003 Proxy Statements, Plaintiffs have completely failed to present particularized allegations supporting their theory that these Proxy Statements "omitted material facts, including" the alleged "artificial inflation" of C&A's reported financial results "through a variety of improper accounting practices." Compl. ¶ 160. As described above, the Complaint provides no details whatsoever concerning the alleged "inflation." It is also surprisingly lacking in *any* description of the Proxy Statements themselves, and what about them was false or misleading; in fact, the Complaint does not point to even a single alleged "misrepresentation" anywhere in the Proxy Statements. This alone mandates dismissal. *See Lewis v. Chrysler Corp.*, 949 F.2d 644, 653 (3ᵈ Cir. 1991) (the plaintiff's "conclusory allegation of a § 14(a) violation does not state with particularity *exactly how the proxy materials were false and misleading*" and therefore warrants dismissal) (emphasis added). Plaintiffs' conclusory allegations as to the omission of "material facts" concerning "a variety of improper accounting practices" derives from a set of drastically insufficiently pled allegations and, in any event, fails to address the fact that the 2002 and 2003 Proxy Statements *disclose* the terms of the transactions involving Mr. McCallum that are challenged by Plaintiffs. *See* 2002 Proxy Statement (attached as Exhibit I to the Levin Decl.) at 11 and 2003 Proxy Statement (attached as Exhibit J to the Levin Decl.) at 11-12. Plaintiffs' attempts to "[c]obbl[e] together a litany of inadequate allegations does not render those allegations particularized in accordance with Rule 9(b) . . . ." *Cal. Pub. Employees' Ret. Sys.*, 394 F.3d at 155.

This is especially true with respect to Plaintiffs' inadequate attempt to establish the "essential link" element of Section 14(a) claims. Plaintiffs allege that "[t]he Proxy Statements were an essential link in the accomplishment of the continuation of Defendants' fraudulent scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation, and the Company's compensation policies." Compl. ¶ 162. Such blatant, conclusory mirroring of the statutory language does not create a cognizable claim. *In re Rockefeller Ctr. Props.*, 311 F.3d at 216 ("[L]egal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness."). Plaintiffs do not plead any *facts*—the "who, what, when, where, and how"—showing that the proxy solicitation caused the shareholders to vote as they did. *In re Advanta Corp.*, 180 F.3d at 534. The § 14(a) claim must therefore be dismissed.

### C.   The Proxy Statements' Alleged Misrepresentations And/Or Omissions Are Immaterial As A Matter of Law.

Exacerbating their failure to plead their § 14(a) claims with the requisite particularity required, Plaintiffs do not and cannot demonstrate that the alleged misrepresentations or omissions were material. A misrepresentation or omission is only material if "there is a substantial likelihood that it would have been viewed by the reasonable investor as having significantly altered the total mix of information available to the investor." *In re NAHC*, 306 F.3d at 1330 (quoting *Basic v. Levinson*, 485 U.S. 224, 231-32 (1988)). This is clearly not the case here. The terms of the challenged transactions alleged to have taken place during Mr. McCallum's tenure on the C&A Board were appropriately disclosed and, as noted above (p. 15, *supra*), involved only a tiny fraction of C&A's revenue during the relevant period. *See generally* Report; *see also* 2001 10-K/A at F-39; 2002 10-K at F-42; 2003 10-K at F-51. In addition, as described above, when the public was made aware that the company had launched an Audit

Committee inquiry into the propriety of the accounting treatment of the challenged transactions, the stock price *increased*. *See* Levin Decl., Exhibit G (C&A stock price on August 15, 2003, August 22, 2003, and August 29, 2003). The market had clearly determined that the transactions under investigation were not material to investors' decisions. *See, e.g., In re NAHC*, 306 F.3d at 1331. Plaintiffs' allegations in support of their § 14(a) claim are simply immaterial as a matter of law.

### D.    Plaintiffs' Section 14(a) Claims Are Barred By The Statute Of Limitations.

Plaintiffs' § 14(a) claims are also fatally defective because they are barred by the applicable statute of limitations. As was recently held by the Third Circuit, a plaintiff must bring § 14(a) claims not later than the earlier of one year after the discovery of the facts constituting the violation or three years after such violation. *See In re Exxon Mobil Sec. Litig.*, -- F.3d --, No. 05-4571, 2007 WL 2410129, at *8 (3$^d$ Cir. Aug. 27, 2007) (holding that the longer limitations periods under 28 U.S.C. § 1658(b), *i.e.*, the Sarbanes-Oxley Act, do not apply to § 14(a) claims).

Because Plaintiffs did not bring their § 14(a) claims within three years of the issuance of the 2002 and 2003 Proxy Statements (the limitations periods expired April 25, 2005 and April 24, 2006, respectively), their § 14(a) claims against Mr. McCallum are time-barred.[13]

### III.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS BECAUSE IT IS UNTIMELY AND THERE WAS NO ENRICHMENT.

Plaintiffs' unjust enrichment claim against Mr. McCallum is illogical and untenable in light of their own allegations. According to the Complaint, C&A overpaid for certain assets but

---

[13] Although the limitations period for the 2004 Proxy Statement does not expire until September 20, 2007, this is irrelevant as to Mr. McCallum, who was no longer on the C&A Board of Directors when the 2004 Proxy Statement was issued. *See Dasho*, 461 F.2d at 33 (former directors "not responsible for actions taken by other defendants or the board of directors after their respective resignations").

then received back the overpayments in the form of rebates. McCallum, far from pocketing these overpayments, would "reimburse C&A in an equal amount over time . . . ." Compl. ¶ 95. These transactions are alleged to have been "round-trips," meaning that the money did not stay with Mr. McCallum, but returned to C&A. In other words, Mr. McCallum was not unjustly enriched at all— by Plaintiffs' own admission he remitted any gains right back to C&A.

Under Delaware law, "[t]he elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1056 (Del. Super. 2001) (quoting *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999)).

The face of the Complaint demonstrates the absence of these elements as to the transactions in which Mr. McCallum is alleged to have participated. He wasn't enriched—he gave all "overpayments" back to C&A. C&A wasn't impoverished—it recouped its "overpayments" through alleged rebates from Mr. McCallum. This is not unjust enrichment. To the contrary, Plaintiffs' complaint about these transactions is not that they left C&A worse off or McCallum better off, but that C&A did not report them correctly after-the-fact.[14] That comes nowhere close to stating a claim of unjust enrichment against Mr. McCallum.

The unjust enrichment claim must be dismissed for another, independent reason— namely, that Mr. McCallum's transactions with C&A were circumscribed by written agreements. "Unjust enrichment only applies in circumstances in which the parties have not entered into an express contract." *In re Intel Corp. Microprocessor Antitrust Litig.*, -- F. Supp. 2d --, No. MDL

---

[14] Significantly, Plaintiffs do not and cannot argue that the transactions themselves were inappropriate or should not have been engaged in. Because there is nothing unlawful about the transactions themselves, the most that Plaintiffs can argue is that they were accounted for inaccurately. That is not unjust enrichment.

05-1717 JJF, Civil Action No. 05-485-JJF, 2007 WL 2028113, at *15 (D. Del. July 12, 2007).
Each of the transactions at issue was subject to agreement under a contract carefully negotiated
and reviewed by attorneys.[15]  Whatever rights C&A may have as against Mr. McCallum would
arise from these instruments, and not from a quasi-contract theory of recovery.

Finally, Plaintiffs' unjust enrichment claim as against Mr. McCallum is untimely.
Plaintiffs were obligated to bring their action within three years of when they were on inquiry
notice of a possible claim, which occurred either at the time of the transactions themselves (*i.e.*,
2001 or 2002) or, at the very latest, the August 15, 2003 press release which announced C&A's
investigation into these matters and their potential accounting implications.  *See* 10 Del. C.
§ 8106.[16]  Because Plaintiffs were on at least inquiry notice of the issues they now seek to raise
more than three years before they brought this lawsuit, their claims are barred by the statute of
limitations.  *See In re Tyson Foods*, 919 A.2d 563, 586-87 (Del. Ch. 2007) (dismissing fiduciary
duty claim as time-barred where brought more than three years after plaintiff was on inquiry
notice).

## IV.    PLAINTIFFS' FIDUCIARY DUTY ALLEGATIONS SHOULD BE DISMISSED.

### A.    Plaintiffs' Fiduciary Duty Allegations Fail To State A Claim.

As noted above, the Complaint makes clear that any "excessive consideration" obtained
by Mr. McCallum in connection with the few transactions as to which he is mentioned by name

---

[15] The Southwest Laminates transaction was memorialized in an Agreement and Plan of Merger
dated April 12, 2002.  The Dutton Yarns transaction was memorialized in an Asset Purchase
Agreement dated December 31, 2002.  The sale of the furniture looms was memorialized in a
Cooperation and Supply Agreement dated January 1, 2003.  All three transactions were disclosed
in C&A's public filings.  *See, e.g.*, 2003 10-K at 38.

[16] "A cause of action accrues under 10 Del. C. § 8106 at the time of the wrongful act, even if the
plaintiff is ignorant of the cause of action."  *Albert v. Alex Brown Mgmt. Servs., Inc.* No. Civ.A.
762-N, 2005 WL 1594085, at *13 (Del. Ch. June 29, 2005).  Nonetheless, some Delaware courts
have held that in the context of alleged self-dealing transactions, the limitations period may be
tolled via the "discovery rule" until the time plaintiff "knew or had reason to know the facts
alleged to give rise to the wrong."  *Kahn v. Seaboard Corp.*, 625 A.2d 269, 276 (Del. Ch. 1993).

was paid back to C&A in full. *See, e.g.,* Compl. ¶ 95. And no allegation indicates that Mr. McCallum knew of or was aware of the accounting treatment for these transactions. No reasonable understanding of a director's fiduciary duties under Delaware law would require directors to familiarize themselves with the accounting minutiae for any of the hundreds or thousands of tiny transactions a corporation may engage in. On the face of the Complaint, no breach of fiduciary duty is stated against Mr. McCallum.

Moreover, the internal investigation documents referred to in the Complaint and other Company documents of which Plaintiffs were aware when they prepared the Complaint make clear that these transactions were approved by the disinterested members of the C&A Board of Directors, with Mr. McCallum excluding himself from the relevant vote. *See, e.g.*, Report at 76, 84. Mr. McCallum and C&A submitted the transactions to the Board for review and the Board concluded that the transactions were in the best interest of the corporation; as a result, the business judgment rule plainly applies. *See Williams v. Geier*, 671 A.2d 1368, 1379 n.23 (Del. 1996) ("[A] transaction will be sheltered from shareholder challenge if approved by either a committee of independent directors, the shareholders, or the courts."); *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984). As Plaintiffs have not asserted particularized facts to overcome the presumption that the transactions were proper, Mr. McCallum is entitled to dismissal. *See In re General Motors Class E Stock Buyout Sec. Litig.*, 694 F. Supp. 1119, 1132 (D. Del. 1988) ("[I]n order to overcome the presumption of the business judgment rule, [the plaintiff] must allege with particularity facts which establish that the contested decision was not a product of valid business judgment") (citing *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988)); *Desimone v. Barrows*, 924 A.2d 908, 928 (Del. Ch. 2007) ("[A] complaint alleging breach of fiduciary duty must plead facts supporting an inference of breach, not simply a conclusion to that effect.").

### B.    Plaintiffs' Fiduciary Duty Claim Is Untimely.

Plaintiffs' fiduciary claims are time-barred as they were not asserted within the three-year statute of limitations applicable to fiduciary duty claims. *See* 10 Del. C. § 8106.  Mr. McCallum resigned his position as a director of C&A on May 6, 2004.  *See* Press Release, Collins & Aikman Corporation, "Collins & Aikman Announces First Quarter Financial Results and Record First Quarter Sales" (May 6, 2004), http://www.collinsaikman.com/profile/ news.asp?newsid=548&year=2004 (last visited September 10, 2007) (the "5/6/04 Press Release") (attached as Exhibit K to the Levin Decl.).  Plaintiffs filed this action on May 16, 2007—more than three years after the last date on which Mr. McCallum owed any fiduciary duty to C&A.  Plaintiffs' claim must be dismissed.

Nor can Plaintiffs assert that Mr. McCallum's conduct was not well known to them or to C&A's shareholders.  There can be no question, as noted above, that Plaintiffs were on inquiry notice of the actions that they now challenge no later than August 15, 2003—the date of the press release noting that certain former C&A executives had raised concerns about the "potential accounting implication" of the transactions "between the Company and affiliates of Elkin McCallum."  *See Kahn*, 625 A.2d at 276 (applying statute of limitations from the time plaintiff "knew or had reason to know the facts alleged to give rise to the wrong").  Plaintiffs were on inquiry notice of their purported more than three years before the filing of the Complaint and thus the fiduciary duty claim must be dismissed.  *See In re Tyson Foods*, 919 A.2d at 586-87.

### CONCLUSION

Plaintiffs have no viable claims against Mr. McCallum.  He is barely mentioned in the Complaint, and the four small, older transactions that mention him do not involve any improper conduct, "fraud" or impropriety of any kind.  Plaintiffs' untimely attempt to challenge these immaterial transactions is not supported by particularized factual allegations, but by conclusory

assertions contradicted by either the Complaint itself or the documents referenced therein. The claims against Mr. McCallum must be dismissed in their entirety, with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Kenneth J. Nachbar (No. 2067)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Tel.: 302.658.9200
Fax: 302.425.3013
Email: knachbar@mnat.com

*Of Counsel:*

Richard M. Strassberg
Jeffrey A. Simes
Laurie L. Levin
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, New York 10022
Tel.: 212.813.8800
Fax: 212.355.3333
Email: rstrassberg@goodwinprocter.com

September 14, 2007

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on September 14, 2007 I electronically filed the attached MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT ELKIN B. MCCALLUM with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Joseph A. Rosenthal
Carmella P. Keener
Rosenthal, Monhait & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899
(302) 656-4433
Jrosenthal@rmgglaw.com
ckeener@rmgglaw.com

Michael M. Maimone
Joseph B. Cicero
Edwards Angell Palmer & Dodge LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801
(302) 777-7770
Mmaimone@eapdlaw.com
jcicero@eapdlaw.com

Anne C. Foster
Robert J. Stearn, Jr.
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
foster@rlf.com
stearn@rlf.com

Peter B. Ladig
Stephen B. Brauerman
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000
pladig@bayardfirm.com
sbrauerman@bayardfirm.com

Thomas P. Preston
Blank Rome LLP
1201 North Market Street
Suite 800
Wilmington, DE 19801-4226
(302) 425-6400
Preston-t@blankrome.com

Thomas G. Macauley
Zucerman Spaeder LLP
919 Market Street, Suite 1705
P.O. Box 1028
Wilmington, DE 19899
(302) 427-0400
tmacauley@zuckerman.com

James L. Holzman
J. Clayton Athey
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE  19899
(302) 888-6500
jlholzman@prickett.com
jcathey@prickett.com

Robert S. Saunders
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE  19899
(302) 651-3000
rsaunders@skadden.com

Vernon R. Proctor
Proctor Heyman LLP
1116 West Street
Wilmington, DE  19801
(302) 472-7300
vproctor@proctorheyman.com

Kenneth J. Nachbar (#2067)
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
knachbar@mnat.com