IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

COLLINS & AIKMAN CORPORATION and          :
COLLINS & AIKMAN PRODUCTS CO.,            :
as Debtors in Possession,                 :
                                          :
                    Plaintiffs,           :
                                          :
          v.                              :        C.A. No. 07-265-***
                                          :
DAVID A. STOCKMAN, et al.,                :
                                          :
                    Defendants.           :

**OPENING BRIEF IN SUPPORT OF
DEFENDANT DAVID R. COSGROVE'S MOTION
TO DISMISS THE COMPLAINT**

PROCTOR HEYMAN LLP
Vernon R. Proctor (#1019)
1116 West Street
Wilmington, Delaware 19801
(302) 472-7300
vproctor@proctorheymann.com

ARNOLD & PORTER LLP
Craig A. Stewart
Ken L. Hashimoto
Monique A. Gaylor
399 Park Avenue
New York, New York 10022
(212) 715-1000

*Attorneys for Defendant
   David R. Cosgrove*

DATED:       September 14, 2007

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES .......................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

SUMMARY OF ARGUMENT ....................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 4

ARGUMENT .................................................................................................................. 7

I.      PLAINTIFFS FAIL TO SATISFY RULE 9(b) ................................................... 7

        A.      Rule 9(b) Applies To All Of Plaintiffs' Claims ................................... 8

        B.      Plaintiffs Fail To Plead Fraud With The Particularity Required By
                Rule 9(b) ............................................................................................ 10

        C.      Plaintiffs Fail To Distinguish Mr. Cosgrove's Conduct From That Of
                Other Defendants ............................................................................... 12

II.     PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF AGAINST
        MR. COSGROVE ............................................................................................. 13

        A.      The Complaint Fails To State A Claim For Violation Of
                Federal Securities Law ...................................................................... 13

                1.      Plaintiffs Fail To State A Claim For
                        Violation Of Section 14(a) ..................................................... 14

                2.      Plaintiffs Fail To Plead Scienter ........................................... 16

                3.      Plaintiffs Fail To Plead A Misrepresentation
                        by Mr. Cosgrove .................................................................... 19

                4.      Plaintiffs Fail To Plead Loss ................................................. 21

        B.      The Complaint Fails To State A Claim For Breach of Fiduciary Duty ... 24

                1.      Plaintiffs Fail To State A Claim For Breach Of
                        The Fiduciary Duty of Care ................................................... 24

        2.      Plaintiffs Fail To State A Claim For Breach Of
                The Fiduciary Duty of Loyalty ............................................... 26

                a.  Duty to Monitor...................................................... 27

                b.  Duty to Disclose..................................................... 27

    C.    The Complaint Fails To State A Claim For Common Law Fraud........... 29

        1.      Plaintiffs Fail To Allege A Misrepresentation ............................ 29

        2.      Plaintiffs Fail To Allege Damages............................................ 30

        3.      Plaintiffs Fail to Allege Reliance ............................................ 31

    D.    The Complaint Fails To State A Claim For Unjust Enrichment............. 32

CONCLUSION.......................................................................................................... 34

# TABLE OF AUTHORITIES

## CASES

*American Mobile Communs, Inc. v. Nationwide Cellular Serv., Inc.,*
    No. 91 Civ. 3587 (LBS), 1992 WL 232058 (S.D.N.Y. 1992) .......................................... 25

*Aronson v. Lewis,*
    473 A.2d 805 (Del. 1984) ................................................................................................ 25

*Baker v. MBNA Corp.,*
    No. 05 Civ. 272 (GMS), 2007 WL 2009673 (D. Del. July 6, 2007) ......................... 17, 19

*Bell Atlantic Corp. v. Twombly,*
    127 S. Ct. 1955 (2007).................................................................................................. 4, 32

*Buckley v. O'Hanlon,*
    No. 04 Civ. 955 (GMS), 2007 WL 956947 (D. Del. Mar. 23, 2007) .......................... 9, 24

*California Pub. Employees Ret. Sys. v. Chubb Corp.,*
    394 F.3d 126 (3d Cir. 2004)............................................................................................. 9

*Christidis v. First Pennsylvania Mortg. Trust,*
    717 F.2d 96 (3d Cir. 1983).......................................................................................... 7, 29

*Collins & Aikman Corp. v. Cosgrove,*
    Adv. Pro. No. 07-05697 (Bankr. E.D. Mich. May 17, 2007) ......................................... 32

*D. E. & J. Ltd. P'ship v. Conaway,*
    284 F. Supp. 2d 719 (E.D. Mich. 2003), *aff'd,* 133 Fed. Appx. 994 (6th Cir. 2005) ....... 20

*Dofflemyer v. W. F. Hall Printing Co.,*
    558 F. Supp. 372 (D. Del. 1983).................................................................................... 26

*Ernst & Ernst v. Hochfelder,*
    425 U.S. 185 (1976)....................................................................................................... 16

*Gaffin v. Teledyne, Inc.,*
    611 A.2d 467 (Del. 1992) .............................................................................................. 29

*Gen. Elec. Co. by Levit v. Cathcart,*
    980 F.2d 927 (3d Cir. 1992)..................................................................................... 13, 15

*Havens v. Attar,*
    1997 WL 55957 (Del. Ch.) ........................................................................................... 25

*Henneberry v. Sumitomo Corp. of America*,
    415 F. Supp. 2d 423 (S.D.N.Y. 2006)..................................................................... 24

*HSMY, Inc. v. Getty Petroleum Marketing, Inc.*,
    417 F. Supp. 2d 617 (D. Del. 2006)...................................................................... 30

*In re Advanta Corp. Sec. Litig.*,
    180 F.3d 525 (3d Cir. 1999)................................................................... 16, 17, 18

*In re Caremark Int'l, Inc. Derivative Litig.*,
    698 A.2d 959 (Del. Ch. 1996)............................................................................ 3, 27

*In re CitX Corp., Inc.*,
    448 F.3d 672 (3d Cir. 2006)................................................................................ 21, 31

*In re Digital Island Sec. Litig.*,
    223 F. Supp. 2d 546 (D. Del. 2002),
    *aff'd, In re Digital Island Sec. Litig.*, 357 F.3d 322 (3d Cir. 2004)............... 16, 17, 19, 20

*In re Exxon Mobil Sec. Litig.*,
    __ F.3d. __, 2007 WL 2410129 (3d Cir. Aug. 27, 2007) ................................ 14

*In re Fruehauf Trailer Corp.*,
    250 B.R. 168 (D. Del. 2000)............................................................................. 9

*In re IAC/Interactive Corp. Sec. Litig.*,
    478 F. Supp. 2d 574 (S.D.N.Y. 2007).................................................................. 4

*In re Limited, Inc. Shareholders Litig.*,
    No. Civ. A. 17148-NC, 2002 WL 537692, (Del. Ch. Mar. 27, 2002) ............................ 25

*In re Luxottica Group S.p.A., Sec. Litig.*,
    293 F. Supp. 2d 224 (E.D.N.Y. 2003) ................................................................ 24

*In re Parmalat Sec. Litig.*,
    __ F. Supp. 2d __, 2007 WL 2263893 (S.D.N.Y. Aug. 8, 2007) .................. 21-22, 31, 33

*In re Rockefeller Center Properties, Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002)................................................................. *passim*

*In re Student Fin. Corp.*,
    No. 02 AP 6803 (LK), 2004 WL 609329 (D. Del. Mar. 23, 2004) ............................ 8, 32

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006)............................................................................ 18

*In re Teleglobe Communs. Corp.*,
    493 F.3d 345 (3d Cir. 2007)........................................................ 21

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)........................................................ 16

*Klein v. Gen'l Nutrition Cos., Inc.*,
    186 F.3d 338 (3d Cir. 1999)........................................................ 8, 12

*Lewis v. Ward*,
    2003 WL 22461894 (Del. Ch. 2003), *aff'd*, 852 A.2d 896 (Del. 2004) ........................ 25

*Makor Issues & Rights, Ltd. v. Tellabs,*
    *Inc.*, 437 F.3d 588 (7th Cir. 2006),*vacated on other grounds,*
    *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    __ U.S. ___, 127 S. Ct. 2499 (2007)........................................... 16, 20

*Malone v. Brincat*,
    722 A.2d 5 (Del. 1998) ............................................................ 28

*MBIA v. Royal Indem. Co.*,
    221 F.R.D. 419 (D. Del. 2004) ................................................... 12, 13

*McCabe v. Ernst & Young*,
    494 F.3d 418 (3d Cir. 2007)....................................................... 13

*Metro Commun. Corp. BVI v. Advanced MobileComm Techs., Inc.*,
    854 A.2d 121 (Del. Ch. 2004) ..................................................... 28

*Off'l Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*,
    267 F.3d 340 (3d Cir. 2001)....................................................... 23

*Pennsylvania Employee Benefit Trust Fund v. Zeneca, Inc.*,
    2005 WL 2993937 (D. Del. 2005) ................................................. 32, 34

*Rahl v. Bande*,
    328 B.R. 387 (S.D.N.Y. 2005)...................................................... 25

*Ramapo Land Co., Inc. v. Consolidated Rail Corp.*,
    918 F. Supp. 123 (S.D.N.Y. 1996) ................................................. 9

*Red Mountain Holdings, Ltd. v. Stout Partnership*,
    2001 WL 34368400 (D. Del. 2001) ................................................. 29

*Scone Inv., L.P. v. Am. Third Market Corp.*,
    No. 97 Civ. 3802 (SAS), 1998 WL 205338 (S.D.N.Y. Apr. 28, 1998)............... 12

*Shapiro v. UJB Fin. Corp.,*
    964 F.2d 272 (3d Cir. 1992) ..................................................................... 8

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,*
    365 F.3d 353 (5th Cir. 2004) ............................................................. 19, 20

*Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark, Inc.,*
    964 F. Supp. 783, 804-05 (S.D.N.Y. 1997),
    *rev'd in part on other grounds sub nom.*
    *Strougo v. Bassini,* 282 F.3d 162 (2d Cir. 2002)) ........................................ 25

*Stone ex rel. AmSouth Bancorporation v. Ritter,*
    911 A.2d 362 (Del. 2006) ................................................................. 24, 27

*Total Care Physicians, P.A. v. O'Hara,*
    798 A.2d 1043 (Del. Super. Ct. 2001) ..................................................... 32

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.,*
    906 A.2d 168 (Del. Ch. 2006),
    *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billet,* 2007 WL 2317768 (Del.) .............. 21, 22

*Weiner v. Quaker Oats Co.,*
    129 F.3d 310 (3d Cir. 1997) .................................................................. 16

*Werner v. Miller Tech. Mgmt., L.P.,*
    831 A.2d 318 (Del. Ch. 2003) ............................................................ 25-26

*York Linings v. Roach,*
    1999 WL 608850 (Del. Ch. 1999) ........................................................... 25

## STATUTES AND RULES

10 Del. C. § 8106 ........................................................................... 26

11 U.S.C. § 108(a) ........................................................................ 14, 26

15 U.S.C. § 78u-4 ....................................................................... *passim*

Fed. R. Civ. P. 8(a) ................................................................... 1, 3, 32

Fed. R. Civ. P. 9(b) ..................................................................... *passim*

Fed R. Civ. P. 12(b)(6) .................................................................. 1, 10

Securities Exchange Act of 1934 § 10(b) ............................................. *passim*

Securities Exchange Act of 1934 § 14(a) ............................................. *passim*

## Preliminary Statement

Defendant David R. Cosgrove respectfully submits this opening brief in support of his motion to dismiss the Complaint pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4 *et seq.*, and Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## NATURE AND STAGE OF THE PROCEEDINGS

On May 16, 2007, Plaintiffs commenced this action by filing the Complaint against certain of their directors, officers, employees and shareholders, as well as certain of their auditors. The Complaint alleges violations of sections 10(b) and 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and state common law claims for fraud, breach of fiduciary duty and unjust enrichment.

## SUMMARY OF ARGUMENT

As regards Mr. Cosgrove, the Complaint in this action alleges that an undifferentiated group of 20 defendants, including Mr. Cosgrove, participated in a scheme to inflate Collins & Aikman Corporation's ("C&A" or the "Company") earnings by improperly recognizing revenue from rebates that had been offered by C&A's suppliers. According to the Complaint, as a result of this improper accounting, C&A reported overstated operating income in quarterly and annual reports with the SEC, in statements to investors, and in offering memoranda for various debt notes issuances. Plaintiffs complain that issuance of the debt notes caused C&A to incur additional debt that it could not service and repay, further deepening the Company's insolvency. Plaintiffs allege -- without supplying the requisite specifics -- that inaccurate proxy statements for the years 2002 through 2004 harmed them.

1. The Complaint should be dismissed because it fails to satisfy the heightened pleading requirements of the PSLRA and Rule 9(b) of the Federal Rules of Civil Procedure. Because all of Plaintiffs' claims against Mr. Cosgrove are derived from allegations of fraud, they are controlled by heightened pleading requirements; yet Plaintiffs' generalized pleading fails to allege with sufficient particularity the circumstances and specifics of this alleged fraud. In the same vein, Plaintiffs have completely failed to distinguish -- as Plaintiffs must -- Mr. Cosgrove's conduct from that of his co-defendants, and mention Mr. Cosgrove by name only in the case caption and in a single sentence describing his employment history.

2. Plaintiffs fail to state a claim for violations of federal securities laws because it fails to adequately allege the elements of such a claim. In particular, Plaintiffs' section 14(a) claim fails because Plaintiffs have not pleaded a causal connection between the issuance of proxy statements and the sale of the debt notes at issue. Moreover, with respect to proxy statements sent on April 25, 2002, the statute of limitations bars Plaintiffs' 14(a) claim. With regard to Plaintiffs' 10(b) claim, Plaintiffs' exclusive reliance on allegations of conduct by groups of "Defendants" is too generalized to establish scienter with the particularity required by the PSLRA, and Plaintiffs have not alleged any facts supporting an inference of scienter - such as a motive and opportunity to commit fraud. Moreover, because Plaintiffs rely entirely on group pleading and plead no conduct by Mr. Cosgrove in particular, the Complaint fails to allege that Mr. Cosgrove made any misrepresentations that would support a federal securities law claim. Finally, Plaintiffs plead only the issuance of debt and a deepening of C&A's insolvency as damages, but these are not cognizable losses that can support a federal securities law claim.

3.    Plaintiffs fail to state a claim for breach of fiduciary duty.  Having failed to allege any facts concerning Mr. Cosgrove's intent, Plaintiffs cannot hope to establish that Mr. Cosgrove was grossly negligent in the exercise of his duties, and therefore cannot survive a motion to dismiss a claim of breach of the fiduciary duty of care.  Although Plaintiffs make oblique reference to the duties of disclosure and duty to monitor, neither of these are pleaded sufficiently to survive dismissal.  The duty to monitor claim fails because Plaintiffs plead no facts concerning the presence or absence of systems or controls, and none that Mr. Cosgrove "disabled himself from being informed of risks."  *In re Caremark Int'l, Inc. Deriv. Litig.*, 698 A.2d 959, 970 (Del. Ch. 1996).  The duty to disclose claim fails because Plaintiffs have not pleaded in any way the level of scienter required for such a claim.

4.    Plaintiffs' state common law fraud claims suffer a similar fate as the federal securities law fraud claims, because Plaintiffs have not pleaded facts sufficient - even under Rule 8, much less Rule 9(b)'s heightened pleading requirements - to allege a misrepresentation, damages, or reliance.

5.    Having failed to plead any enrichment of Mr. Cosgrove, any "impoverishment" of Plaintiffs, and any relation between whatever enrichment and impoverishment is imagined, Plaintiffs fail entirely to plead a claim of unjust enrichment.

In view of the foregoing, and as more fully set forth below, the Complaint should be dismissed.

## STATEMENT OF FACTS

According to the Complaint,[1] Mr. Cosgrove worked for C&A serving as its "Vice President of Finance from February to August 2002, Vice President for Financial Planning and Analysis from August 2002 until October 2004 and Corporate Controller until May 2005." (Compl. ¶ 12; D.I. 1.)[2]  Collins & Aikman "was engaged in the design, manufacture and supply of automotive interior parts" which it sold to automakers "such as GM, Ford, Chrysler and others." (*Id.* ¶ 36.)  Sometime at the end of 2001, C&A and other auto parts manufacturers and their automaker clientele "were coming under increasing competitive threats and adverse business conditions." (*Id.* ¶ 38.)  "By early 2002," these pressures were "dramatically depressing the Company's financial results." (*Id.* ¶ 39.)  Plaintiffs allege that in response to these pressures, "from the fourth quarter of 2001 to the time of the Company's bankruptcy filing" (*id.* ¶ 40), "Defendants concealed the [Company's] true financial ... condition [and] embark[ed] on a fraudulent accounting scheme which hastened the demise of the Company and left it unable to right itself" (*id.* ¶ 39).

---

[1] The Complaint's well-pleaded allegations are assumed as true solely for the purposes of this motion. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1975 (2007).  Mr. Cosgrove does not concede their truth.  Further, "courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint [and] legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness."  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

[2] While the allegations are assumed to be true solely for the purposes of this motion, to the extent Plaintiffs intend to create the impression that Mr. Cosgrove's employment with C&A was terminated after the company declared bankruptcy in May 2005, Plaintiffs' allegations are inaccurate and require correction. *See, e.g., In re IAC/Interactive Corp. Sec. Litig.*, 478 F. Supp. 2d 574, 585 (S.D.N.Y. 2007) (courts should not "accept allegations that are contradicted or undermined ... by written materials properly before the court").  As C&A's public filings with the bankruptcy court clearly show, Mr. Cosgrove continued to work with C&A for months beyond May 2005. (*See, e.g.*, Decl. of Vernon R. Proctor dated September 14, 2007 ("Proctor Decl."), Ex. B, Collins & Aikman Corporation Monthly Operating Report, *In re Collins & Aikman Corp.*, No. 05-55927, Dkt. No. 1207 (Bankr. E.D. Mich. Sept. 20, 2007).)

The Complaint alleges three such discrete "schemes." First, Plaintiffs allege that the Company "engaged in a series of fraudulent 'round-trip' transactions ... designed to enable Collins & Aikman to ... artificially inflate its reported financial results." (*Id.* ¶¶ 48-52.) Plaintiffs do not allege any conduct on Mr. Cosgrove's part in connection with the round-trip transaction "scheme." Second, Plaintiffs also allege a scheme to defraud an entity that "factored certain of Collins & Aikman's receivables" whereby C&A "improperly and fraudulently includ[ed] tens of millions of dollars of receivables" allegedly ineligible for inclusion in the factoring arrangement. (*Id.* ¶¶ 63-64.) Plaintiffs also do not allege any conduct on Mr. Cosgrove's part in connection with the receivables scheme.

Third, Plaintiffs allege that Mr. Cosgrove, as a member of an undifferentiated group of 20 defendants, "caused Collins & Aikman to inflate its earnings by improperly recognizing rebates offered by its suppliers." (*See id.* ¶¶ 54-55.) In this regard, Plaintiffs allege that C&A would immediately recognize rebates offered based on future business as if they were offered based on past business, and would also recognize rebates awarded based on future contingent events before such events occurred. (*See id.* ¶ 55.) Because "Defendants" allegedly "understood" that such recognition violated GAAP, they "arranged for the Company's suppliers to provide the Company with 'side-letters' which falsely represented the terms of their rebate arrangements." (*Id.* ¶ 98.) Additionally, Plaintiffs allege that certain rebates recognized by C&A were not rebates at all, but represented payments made by capital equipment vendors of the difference between the actual market value of the equipment and the artificially inflated price the Company paid for that equipment. (*See id.* ¶ 55.)

Nowhere in these summary allegations does the Complaint identify Mr. Cosgrove by name as having been connected with any specifically enumerated rebate, side-letter, or

supplier or vendor alleged to have "aided and abetted Defendants in their scheme." (*Id.* ¶¶ 56-57.) Neither does the Complaint allege that Mr. Cosgrove's roles within the Company put him in a position likely to involve interactions with suppliers and vendors, such as C&A's Purchasing Department. Glaringly absent are allegations that would support a motive for Mr. Cosgrove to engage in fraud. For instance, the Complaint does not allege that Mr. Cosgrove owned any C&A stock, let alone that he sold any during the relevant period.

Because C&A's financial results were allegedly artificially inflated due to these "schemes," Plaintiffs allege that Mr. Cosgrove, again solely as a member of an undifferentiated group of up to 20 defendants, "caused Collins & Aikman to file false and misleading quarterly and annual reports with the SEC and to issue materially false and misleading statements to investors." (*Id.* ¶ 75.) The Complaint also alleges that Mr. Cosgrove, along with the 14 other "Director and Officer Defendants," "participated in the issuance and/or review of false and/or misleading statements, including the preparation of false and/or misleading press releases, SEC filings and reports to Collins & Aikman shareholders and/or creditors." (*Id.* ¶ 27.) However, the Complaint does not allege any document or report that Mr. Cosgrove specifically reviewed or participated in issuing, let alone the details of such review or participation.

Of particular importance, Plaintiffs allege that the offering memorandum for C&A's August 2004 issuance of 12.875% Senior Subordinated Notes due 2012 ("the Notes") was materially false and misleading because it contained the allegedly fraudulently inflated financial statements. (*Id.* ¶ 76.) Plaintiffs allege that "[u]sing the materially false and misleading offering memorandum, Defendants caused Collins & Aikman to sell and issue ... $415 million in [the Notes], thereby causing it to incur additional debt that it could not service and repay and which further deepened the Company's insolvency." (*Id.*)

Plaintiffs also allege that C&A's proxy statements for the years 2002 through 2004 were false and misleading because "they omitted material facts." (*Id.* ¶160.) Specifically, these proxy statements failed to tell shareholders that "Collins & Aikman's reported financial results were artificially inflated through a variety of improper accounting practices." (*Id.*) Plaintiffs allege no specific harm caused by these proxy statements, only that C&A "was damaged as a result." (*Id.* ¶ 163.)

The balance and vast majority of Plaintiffs' allegations concern the alleged culpability of C&A's auditors. Beyond two paragraphs describing alleged conduct by "Defendants" with respect to the purported rebate scheme (*see id.* ¶¶ 98-99), Plaintiffs do not allege Mr. Cosgrove is connected in any way with any of the other alleged accounting improprieties forming the substance of their allegations against the auditors.

Based solely on these spare and factually unsupported allegations, Plaintiffs claim that Mr. Cosgrove violated sections 10(b) and 14(a) of the Exchange Act (*see* Compl. ¶¶ 153-163; D.I. 1), breached his fiduciary duty to Plaintiffs (*see id.* ¶¶ 164-67), was unjustly enriched (*see id.* ¶¶ 168-70), and committed fraud (*see id.* ¶¶ 171-76). Because Plaintiffs have failed to properly allege they are entitled to relief for any of their claims, their Complaint should be dismissed as to Mr. Cosgrove.

## ARGUMENT

## I.    PLAINTIFFS FAIL TO SATISFY RULE 9(b)

The Complaint should be dismissed for failure to meet the heightened pleading burden for fraud mandated by Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Fed. R. Civ. P. 9(b); *see also Christidis v. First Pennsylvania Mortgage Trust,*

717 F.2d 96, 99 (3d Cir. 1983) (Rule 9(b) "applies not only to fraud actions under federal statutes, but to fraud claims based on state law").  In order to provide a defendant with fair notice of the claims against him, Rule 9(b)'s heightened pleading standard for fraud requires Plaintiffs to plead:

> (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage.

*Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284 (3d Cir. 1992); *see also In re Rockefeller Ctr. Props.*, 311 F.3d at 216.  Under Rule 9(b), plaintiffs must plead "all the essential factual background [such as] the who, what, when, where and how of the events at issue." *Rockefeller Ctr. Props.*, 311 F.3d at 216 (internal quotation marks omitted).  Rule 9(b)'s particularity standard further requires plaintiffs to specifically "identify the source of the allegedly fraudulent misrepresentations." *Id.*; *see also Klein v. Gen. Nutrition Cos.*, 186 F.3d 338, 345 (3d Cir. 1999) (Rule 9(b) "requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements"); *In re Student Fin. Corp.*, No. 02 AP 6803 (LK), 2004 WL 609329, at *2 (D. Del. Mar. 23, 2004) (Rule 9(b) not satisfied where plaintiff failed to "identify the speaker" of the alleged misrepresentations).

### A.    Rule 9(b) Applies To All Of Plaintiffs' Claims

As a preliminary matter, because Rule 9(b)'s heightened pleading standard applies to "*all* averments of fraud," Fed. R. Civ. P. 9(b) (emphasis added), courts look at the specific conduct alleged - rather than simply a claim's elements - to determine whether the rule applies. *See, e.g., Shapiro*, 964 F.2d at 288.  Where "claims are grounded in fraud," Rule 9(b) applies, even though "neither fraud nor mistake is a necessary element of [the] cause of action."

*Id.* Thus, where the supporting allegations are of fraud, courts require plaintiffs to carry Rule

9(b)'s heavy pleading burden in claims for violations of Exchange Act section 14(a), *see*

*California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 145 n.9 (3d Cir. 2004),

claims for breaches of fiduciary duty, *see Buckley v. O'Hanlon*, No. 04 Civ. 955 (GMS), 2007

WL 956947, at *5 (D. Del. Mar. 23, 2007), and claims for unjust enrichment, *cf. In re Fruehauf*

*Trailer Corp.*, 250 B.R. 168, 197 n.30 (D. Del. 2000); *see also Ramapo Land Co. v.*

*Consolidated Rail Corp.*, 918 F. Supp. 123, 128 (S.D.N.Y. 1996) (Rule 9(b)'s particularity

requirements apply where "only alleged basis" for a claim of unjust enrichment is fraud).

      All of the conduct and each of the claims alleged by Plaintiffs sound in fraud. In

introducing its allegations, the Complaint announces: "The conduct of the Director and Officer

Defendants complained of herein involves fraudulent misconduct - a knowing, intentional and

culpable violation of their obligations as officers/directors of Collins & Aikman and the absence

of good faith on their part for their duties to the Company, its shareholders and its creditors."

(Compl. ¶ 24.) The factual allegations of the Complaint concern "a variety of fraudulent

schemes," that included allegedly "fraudulent 'round-trip' transactions" and a "fraudulent rebate

accounting scheme." (*Id.* ¶¶ 40, 48, 99; D.I. 1.) Finally, Plaintiffs' claims for relief again

reiterate the Complaint's exclusive reliance on a theory of fraud. The basis for their Exchange

Act section 14(a) claim is that the alleged misleading proxy statements "were an essential link in

the accomplishment of the continuation of Defendants' fraudulent scheme," (*id.* ¶ 162); the

breach of fiduciary duty claim is founded on the "various accounting schemes as set forth" in the

Complaint, (*id.* ¶ 165); the unjust enrichment claim concerns "false and misleading statements,

… press releases and documents filed with the SEC," (*id.* ¶ 169); and of course, the section 10(b)

and common law fraud claims are susceptible to the application of Rule 9(b). Therefore, for all

of their claims against Mr. Cosgrove, the Plaintiffs must satisfy Rule 9(b)'s heightened pleading requirements. Because Plaintiffs have failed to plead any of their claims with the requisite particularity, the Complaint should be dismissed under both Rules 9(b) and 12(b)(6).

**B.     Plaintiffs Fail To Plead Fraud With The Particularity Required By Rule 9(b)**

Not counting the caption, Mr. Cosgrove's name appears once in the Complaint: in a paragraph identifying Mr. Cosgrove as one of 14 "Director and Officer Defendants," and setting forth Mr. Cosgrove's employment history. (Compl. ¶ 12.) By hunting through the Complaint for instances of "Director and Officer Defendants" and "Defendants," it can be discerned that Plaintiffs' claims against Mr. Cosgrove are limited to his alleged (but not particularly described) participation in the purported "Rebate Scheme" (Compl. ¶¶ 53-58, 98-99; D.I. 1) that allegedly caused C&A to make false and misleading statements regarding its financial condition in its SEC filings and to investors (*id.* ¶¶ 75-77). In none of these allegations are any facts pled particularizing the "essential factual background ... of the events at issue." *Rockefeller Ctr.Props.*, 311 F.3d at 217 (internal quotation marks omitted).

Plaintiffs fail to identify "who" engaged in the conduct alleged against Mr. Cosgrove, other than by reference to undifferentiated groups of defendants. (*See* Compl. ¶¶ 24-27, 40, 55-57, 66, 75-77, 91-92, 98-99, 120, 126, 152-58, 161-62, 164-78; D.I. 1.) The "what" and the "how" of the purported fraud is pled at such a high level of generalization that it gives Mr. Cosgrove no notice of the fraudulent conduct in which he is alleged to have engaged. (*See, e.g.*, *id.* ¶ 55 ("Defendants" "pulled forward" rebates and "had" suppliers provide allegedly false side letters).) For example, while Plaintiffs allege two separate methods by which "Defendants" improperly recognized supplier rebates, Plaintiffs fail to allege which method was applied to any of the rebates they list. (*See id.* ¶56.) Plaintiffs plead "when" only with respect to the calendar

quarters in which "some of the improperly accounted for rebates" were recognized. (*Id.*) Yet Plaintiffs fail even to approximate when the fraudulent conduct underlying the improper recognition of these enumerated rebates occurred. There is no indication of when communications leading up to the provision of the allegedly false side letters took place, let alone when these alleged letters were dated, or when the rebates should have been recognized. Plaintiffs have utterly failed to support their allegations of "false side-letters," do not bother to identify which of the listed rebates were the subject of an allegedly false side letter, and do not identify which of the listed rebates were "pulled forward." Plaintiffs' failure to adequately allege these facts is particularly egregious, considering their unique advantage concerning documents bearing on the facts of the case.

The balance of the remaining allegations against Mr. Cosgrove fare no better. Plaintiffs' only allegations of Mr. Cosgrove's conduct with respect to documents alleged to contain false and misleading information are that "[e]ach of the officer and director defendants participated in the issuance and/or review of false and/or misleading statements, including the preparation of false and/or misleading press releases, SEC filings and reports to Collins & Aikman shareholders and/or creditors" (*id.* ¶ 27), and that "Defendants caused Collins & Aikman" to make misrepresentations in SEC filings and to investors (*id.* ¶¶ 75-77). The Complaint contains no more particular allegations of "who" did "what" and "how."

Plaintiffs' insufficiently particular allegations fail to satisfy Rule 9(b)'s heavy pleading burden for fraud, and the Complaint should be dismissed in its entirety as to Mr. Cosgrove.

**C.    Plaintiffs Fail To Distinguish Mr. Cosgrove's Conduct From That Of Other Defendants**

"Courts are especially vigilant in applying Rule 9(b) where a complaint is made against multiple defendants." *Scone Inv., L.P. v. American Third Market Corp.*, No. 97 Civ. 3802 (SAS), 1998 WL 205338, at *4 (S.D.N.Y. Apr. 28, 1998). Rule 9(b) requires plaintiffs "to separately plead the fraudulent acts of each defendant." *MBIA v. Royal Indem. Co.*, 221 F.R.D. 419, 421 (D. Del. 2004) ("Collective allegations of fraud against a group of defendants generally do not satisfy Rule 9(b) because the Rule is intended to ensure that each defendant has adequate notice of the charges against it, thereby permitting each defendant to mount a defense and not just deny that they did anything wrong."). Although Rule 9(b) does not impose "a *per se* rule" against group pleading, group allegations will satisfy the rule only when such allegations are "sufficiently particularized." *Id.*

Plaintiffs indiscriminately group Mr. Cosgrove with other defendants in blanket references without sufficiently detailing the precise acts that any one of them, let alone Mr. Cosgrove himself, allegedly performed. Particularly fatal is Plaintiffs' failure to identify Mr. Cosgrove as the speaker of any of the alleged misstatements. *See Klein*, 186 F.3d at 344. As noted, Mr. Cosgrove's name appears only in the caption and in the one-sentence allegation describing his employment history with C&A. (*See* Compl. ¶ 12; D.I. 1.) The remaining allegations are made against Mr. Cosgrove as a member of either the group of 14 "Director and Officer Defendants" (*see id.* ¶¶ 24-27, 91-92, 98-99, 152-58, 161, 164-78), or the larger group of 20 "Defendants" (*see id.* ¶¶ 40, 55-57, 66, 75-77, 120, 126, 162.) As noted above, these allegations are not sufficiently particularized to satisfy the requirements of Rule 9(b). The additional failure "to separately plead the [allegedly] fraudulent acts" of Mr. Cosgrove deprives him of "adequate notice of the charges against" him and prevents him from "mount[ing] a

defense." *MBIA*, 221 F.R.D. at 421. Since this pleading defect taints all of Plaintiffs' claims, the Complaint should be dismissed against Mr. Cosgrove in its entirety.

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF AGAINST MR. COSGROVE

### A. The Complaint Fails To State A Claim For Violation Of Federal Securities Law

Plaintiffs allege violations of sections 10(b) and 14(a) of the Exchange Act against Mr. Cosgrove. To state a claim for a violation of section 10(b), Plaintiffs must allege: (1) a material misrepresentation; (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) upon which Plaintiffs relied; and (5) that caused the Plaintiffs' loss. *See McCabe v. Ernst & Young*, 494 F.3d 418, 424 (3d Cir. 2007). To survive a motion to dismiss for failure to adequately plead a violation of section 14(a), Plaintiffs must allege "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself... was 'an essential link in the accomplishment of the transaction.'" *Gen. Elec. Co. ex rel. Levit v. Cathcart*, 980 F.2d 927, 932 (3d Cir. 1992).

Plaintiffs fail to allege key elements for both of their federal securities law claims. Plaintiffs' section 10(b) claim should be dismissed because Plaintiffs have failed adequately to allege that Mr. Cosgrove acted with scienter. Plaintiffs' claim for a violation of section 14(a) must be dismissed because, to the extent it is not time-barred, Plaintiffs fail adequately to plead that the allegedly fraudulent proxy statements were an "essential link" to any alleged harm. Both claims should also be dismissed on the additional grounds that Plaintiffs fail to allege that Mr. Cosgrove made a misrepresentation and that Plaintiffs suffered any compensable harm.

1.      *Plaintiffs Fail To State A Claim For Violation Of Section 14(a)*

As an initial matter, one of Plaintiffs' Exchange Act section 14(a) claims is time-

barred.  Section 14(a) claims are subject to "a one-year statute of limitations and a three-year

statute of repose."  *In re Exxon Mobil Sec. Litig.*, __ F.3d __, __, 2007 WL 2410129, at *4-8 (3d

Cir. Aug. 27, 2007).  Section 108(a) of the Bankruptcy Code extends limitations periods

provided by non-bankruptcy law to two years after the bankruptcy petition has been filed, where

such limitations periods have not already expired before the petition was filed.  *See* 11 U.S.C.

§ 108(a).  Plaintiffs alleges that C&A's "2002-2004 Proxy Statements violated Section 14(a)."

(Compl. ¶ 160; D.I. 1.)  To the extent Plaintiffs' section 14(a) claim is based on any proxy

statement for which the section 14(a) limitation period had expired by May 17, 2005 (the date

upon which C&A filed for bankruptcy; *see id.* ¶ 6), the claim is time-barred.  C&A's proxy

statement for 2002 was issued on April 25, 2002 and its three-year period of repose ended on

April 25, 2005.  (*See* Proctor Decl., Ex. C, Collins & Aikman Corp. SEC Form Schedule 14A for

2002.)  Thus, if Plaintiffs' section 14(a) claims are based on this proxy statement, they should be

dismissed as time-barred.

Even ignoring the applicable limitations period, Plaintiffs' section 14(a) claims

fail because Plaintiffs have not pleaded transaction causation, i.e., that the misleading proxy

statements were an essential link in the transaction that caused Plaintiffs harm.  Plaintiffs include

a rote recitation of the claims' elements (*see* Compl. ¶ 162; D.I. 1), but fail to plead any facts

linking the non-time-barred proxy statements to the sale of the Notes in August 2004 (*see id.* ¶

76), which allegedly deepened C&A's insolvency.[3]  Plaintiffs allege that the proxy statements

"were an essential link in the accomplishment of the continuation of Defendants' fraudulent

---

[3] The sale of the Notes is the only harm alleged by Plaintiffs with regard to this claim.

scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policies." (*Id.*) Nowhere do Plaintiffs allege that C&A's executive compensation, or its broader compensation policies, caused the company any harm. Thus, Plaintiffs' causal connection between the allegedly false proxy statements and the alleged deepening insolvency is that, had shareholders known the alleged "truth" about C&A's accounting practices and liquidity situation, they would have voted the directors out of office. "[T]his is precisely the sort of claim that courts have repeatedly found insufficient to satisfy [14(a)'s] transaction causation requirement." *Gen. Elec.*, 980 F.2d at 933. Merely because allegedly false proxy statements "permit[] directors to win re-election [that] *indirectly* lead[s] to financial loss [does] not create a sufficient nexus with the alleged monetary loss." *Id.*

Further, no possible causal connection between the alleged harm of the August 2004 sale of the Notes and C&A's 2004 proxy statement can exist. C&A's 2004 proxy statement was issued on September 30, 2004 (Proctor Decl., Ex. D, Collins & Aikman Corp. SEC Form Schedule 14A for 2004), a month *after* the sale of the Notes that allegedly injured C&A by deepening its insolvency. Plaintiffs have not and cannot explain how shareholders, upon receiving "revelations of the truth" on September 30, 2004, would have "immediately thwarted" alleged harm that occurred a month before. (Compl. ¶ 162; D.I. 1.) Because Plaintiffs have not alleged any causal link between the allegedly misleading statements contained in the only non-time-barred proxy statements and their alleged injury, Plaintiffs' section 14(a) claims should be dismissed.

2.      *Plaintiffs Fail To Plead Scienter*

The Public Securities Litigation Reform Act ("PSLRA"), enacted in 1995,

mandates a stringent pleading standard for claims of securities fraud, requiring plaintiffs to,

"with respect to each act or omission alleged to violate this chapter, state with particularity facts

giving rise to a strong inference that the defendant acted with the required state of mind." 15

U.S.C. § 78u-4(b)(2). Failure to plead "with the requisite particularity" deprives plaintiffs of the

"benefit [of] inferences flowing from vague or unspecific allegations." *Rockefeller Ctr. Props.*,

311 F.3d at 224; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2511

(2007) (stating "omissions and ambiguities count against inferring scienter"). A complaint that

does not meet the PSLRA's stringent pleading requirement must be dismissed. *See In re*

*Advanta Corp. Sec. Litig.*, 180 F.3d 525, 531 (3d Cir. 1999).

The "required state of mind" for a violation of section 10(b) is scienter, defined as

a "mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v.*

*Hochfelder*, 425 U.S. 185, 193 n.12 (1976). Under the PSLRA, "scienter may be alleged by

stating with particularity facts giving rise to a strong inference of conscious wrongdoing, such as

intentional fraud or other deliberate illegal behavior." *Advanta*, 180 F.3d at 535. Scienter may

also be pled "by alleging facts 'establishing a motive and an opportunity to commit fraud, or by

setting forth facts that constitute circumstantial evidence of either reckless or conscious

behavior.'" *Id.* at 534-35 (quoting *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 318 n.8 (3d

Cir.1997)). Allegations of motive sufficient to withstand a motion to dismiss entail "'concrete

and personal benefits to the individual defendants resulting from the fraud' that would not be

shared generally by corporate directors and officers." *In re Digital Island Sec. Litig.*, 223 F.

Supp. 2d 546, 554 (D. Del. 2002) (quoting *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001));

*see also In re Digital Island Sec. Litig.*, 357 F.3d 322, 331 (3d Cir. 2004).  Recklessness under

the PSLRA is not "merely simple, or even inexcusable negligence, but an extreme departure

from the standards of ordinary care, … which presents a danger of misleading buyers or sellers

that is either known to the defendant or is so obvious that the actor must have been aware of it."

*Advanta*, 180 F.3d at 539-40 (internal quotation marks omitted).

       The Complaint fails to allege any facts supporting any of these bases for pleading

scienter.  There are no allegations, either specifically against Mr. Cosgrove or against the

undifferentiated group of "Defendants," of deliberate or consciously illegal behavior.  Likewise,

the Complaint is completely devoid of any factual allegations supporting any type of inference,

let alone a strong one, that Mr. Cosgrove had a motive to commit fraud.  Plaintiffs do not allege

that Mr. Cosgrove held C&A stock, let alone that he sold such stock "in a way that was unusual

in scope and timing."  *Baker v. MBNA Corp.*, No. 05 Civ. 272 (GMS), 2007 WL 2009673, at *7

(D. Del. July 6, 2007) (finding allegations that defendant sold "nearly two-thirds of his stock

holdings during the Class Period ... sufficient to create the requisite inference of scienter").  Even

the minimal allegations of motive typically considered by courts and held to be insufficient are

absent here:  Plaintiffs do not allege that Mr. Cosgrove engaged in the purported fraud in order to

retain the benefit of the position he held with C&A.  *See, e.g.*, *Digital Island*, 223 F. Supp. 2d at

555.  Neither do Plaintiffs plead specific facts supporting the requisite strong inference that Mr.

Cosgrove had an opportunity to commit the alleged fraud:  Plaintiffs merely list the positions Mr.

Cosgrove held with C&A and the dates he held those positions.  (Compl. ¶ 12; D.I. 1.)  Plaintiffs

do not allege any facts supporting an inference that those positions afforded Mr. Cosgrove any

opportunity to commit the alleged fraud.

Without factual allegations regarding Mr. Cosgrove's alleged conduct, Plaintiffs likewise fail to plead recklessness. Plaintiffs make blanket allegations about "Defendants" engaging in the purported "Rebate Scheme" which itself is described in highly generalized terms limited to three paragraphs. (*See id.* ¶¶ 55, 98-99.) Because Plaintiffs fail to associate Mr. Cosgrove by name with a single instance of allegedly fraudulent conduct, it is impossible to determine what Plaintiffs allege Mr. Cosgrove himself did, let alone what Mr. Cosgrove might have known, about the purported Rebate Scheme. Allegations of Mr. Cosgrove's positions with C&A are insufficient, as scienter "may not rest on a bare inference that a defendant must have had knowledge of the facts or must have known of the fraud given his or her position in the company." *In re Suprema Specialties, Inc. Sec. Litg.*, 438 F.3d 256, 282 (3d. Cir. 2006) (internal quotation marks omitted). To the extent that the Court can find that allegations regarding the alleged conduct or knowledge of any other Director and Officer Defendants raise any inference of "an extreme departure from the standards of ordinary care, [presenting] a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it," such knowledge cannot be imputed to Mr. Cosgrove. *Advanta*, 180 F.3d at 539 ("Generalized imputations of knowledge do not suffice, regardless of the defendants' positions within the company.") (internal quotation marks omitted).

Additionally, Plaintiffs' allegation that the group of Director and Officer Defendants (a group consisting of 14 persons including Mr. Cosgrove), "participated in the issuance and/or review of false and/or misleading statements, including the preparation of false and/or misleading press releases, SEC filings and reports to Collins & Aikman shareholders and/or creditors" (Compl. ¶ 27; D.I. 1), is insufficient to plead that Mr. Cosgrove himself was so

reckless with regard to the risk of such statements being misleading as to raise the requisite strong inference that he acted with scienter.

Plaintiffs' failure to plead with any level of particularity denies them the benefit of any favorable inferences. *See Rockefeller Ctr. Props.*, 311 F.3d at 224. To the extent Plaintiffs nonetheless attempt to rely on an inference that Mr. Cosgrove had access to information underlying the allegedly misleading statements, "an inference of access is not sufficient to meet the 'strong inference' requirement for pleading scienter under the PSLRA." *Baker*, 2007 WL 2009673 at *7.

Accordingly, Plaintiffs have not pled any facts supporting any basis upon which scienter may be found and the Complaint should be dismissed.

### 3.    *Plaintiffs Fail To Plead A Misrepresentation By Mr. Cosgrove*

The Complaint fails to allege that Mr. Cosgrove made *any* misrepresentation of material fact, let alone one that caused injury to Plaintiffs. With the exception of a description of his employment history with C&A (Compl. ¶ 12; D.I. 1), all of Plaintiffs' allegations regarding Mr. Cosgrove are made against him as a member of a group of undifferentiated "Defendants." (*See, e.g., id.* ¶¶ 24-27, 53-58, 75-77.). Thus, Plaintiffs rely exclusively on the so-called "group pleading doctrine" in their allegations of Mr. Cosgrove's conduct. "[T]he 'group pleading' doctrine in its broadest form allows unattributed statements to be charged to one or more individual defendants based solely on their corporate titles." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 363 (5th Cir. 2004). The doctrine presumes that "a company's statements or omissions [are] the collective work of those individuals with direct involvement in the everyday business of the company." *Digital Island*, 223 F. Supp. 2d at 553 (internal quotation marks omitted).

19

Because the doctrine permits a plaintiff to avoid alleging "*any* facts demonstrating an individual [insider] defendant's participation in the particular communication containing the misstatement," *Southland*, 365 F.3d at 363 (emphasis added), it violates the PSLRA's requirement "that the complaint state with particularity facts giving rise to a strong inference that *the defendant* acted with the requisite state of mind," *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 602 (7th Cir. 2006) (internal quotation marks omitted), *vacated on other grounds, Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007). Additionally, because group pleading allows a private plaintiff to state a claim for violation of section 10(b) without having to demonstrate that any specific defendant ever made a misstatement, the doctrine "run[s] afoul" of the proscription on private actions for aiding and abetting securities fraud. *D. E. & J. Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 730 (E.D. Mich. 2003) (holding that group pleading is at odds with a primary liability standard requiring "that a defendant *must actually make* a false or misleading statement"), *aff'd*, 133 Fed. Appx. 994 (6th Cir. 2005).

The only two circuit courts of appeals to address the issue have each held that the group pleading doctrine was no longer viable after the enactment of the PSLRA. *See Makor*, 437 F.3d at 602-03; *Southland*, 365 F.3d at 365. While the Court of Appeals for the Third Circuit has not yet spoken on this issue, one court in this district directly confronted with the question ruled that group pleading violated the PSLRA's heightened pleading requirements. *See Digital Island*, 223 F. Supp. 2d at 553. Thus, even were the Court to conclude that the Complaint adequately alleges fraudulent misrepresentations in C&A's "press releases, SEC filings and reports to Collins & Aikman shareholders and/or creditors" (Compl. ¶ 27; D.I. 1), the PSLRA does not permit their attribution to Mr. Cosgrove based on the group pleading doctrine. Without such attribution, Plaintiffs have failed to allege that Mr. Cosgrove himself made any misrepresentation

and the Plaintiffs' claims for violation of Exchange Act sections 10(b) and 14(a) must be dismissed as to him.

### 4.    Plaintiffs Fail To Plead Loss

Plaintiffs' federal securities law claims should also be dismissed for failure to allege a loss.[4]  Plaintiffs' theory of loss underlying their section 10(b) claim is that the 12.875% notes that C&A issued, allegedly in reliance on "Defendants' materially false and misleading statements ... deepened the Company's insolvency."[5]  (Compl. ¶ 156; D.I. 1.)  Plaintiffs' invocation of the term "deepening insolvency" aside, what Plaintiffs have not alleged is that they suffered any detriment.

The Court of Appeals for the Third Circuit has "never held that [deepening insolvency] was a valid theory of damages for an independent cause of action."  *In re CitX Corp., Inc.*, 448 F.3d 672, 677 (3d Cir. 2006).  Further, research has not revealed any federal case accepting deepening insolvency as a damages theory for violations of sections 10(b) or 14(a).  However, whether or not courts recognize deepening insolvency as a damages theory "ultimately is beside the point [when] plaintiffs have failed adequately to allege" injury.  *In re*

---

[4] Indeed, Plaintiffs' state law causes of action must also be dismissed for failure to allege harm to the extent they base their loss allegations on a theory of deepening insolvency.  *See, e.g., Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 205 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Trust v. Billet*, 2007 WL 2317768 (Del. Aug. 14, 2007) (Table); *see also In re Teleglobe Communs. Corp.*, 493 F.3d 345, 385 n.36 (3d Cir. 2007) ("In *Trenwick*, the Vice Chancellor put to rest the notion that there is such a thing as a cause of action for so-called 'deepening insolvency' in Delaware law.  This effectively prevents extending our holding ... that the cause of action exists in Pennsylvania, to Delaware cases (and supersedes those few Delaware District and Bankruptcy Court cases that have done so)." (internal citation omitted)).

[5] Plaintiffs' Exchange Act section 14(a) claim apparently rests on the theory that had the relevant proxy statements revealed the alleged "truth," shareholders "would have immediately thwarted a continuation of [the] endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policies."  However, nowhere does the Complaint detail how any of these circumstances harmed C&A.  To the extent such harm is predicated on Plaintiffs' allegations of deepening insolvency, Plaintiffs' section 14(a) claim must also fail for the reasons set forth in this subsection.

*Parmalat Sec. Litig.*, __ F. Supp. 2d __, 2007 WL 2263893, at *9 (S.D.N.Y. Aug. 8, 2007). As an initial matter, "the mere act of incurring debt when a company is already insolvent [does not] necessarily deepen[] the company's insolvency" unless the company in some way does not receive the full proceeds of the debt. *Id.*

> When, for example, a company borrows cash and receives the full amount of the loan, it receives an asset that directly offsets the newly incurred liability on its balance sheet. ... The difference between [its] assets and liabilities therefore remains the same. Its ability to pay its debts as they become due is no worse; indeed, it may be better.
>
> * * *
>
> [A] company's insolvency is not deepened simply by the incurrence of new debt where the company suffers no loss on the loan transaction. The insolvency is deepened when, for example, the proceeds of the loan are squandered or assets otherwise looted. It is at that point that the gap between liabilities and assets widens and the ability to service outstanding debt is impaired.

*Id.* at *9-10 (internal citations and footnotes omitted).

Plaintiffs do not allege that Mr. Cosgrove or the other defendants embezzled or misappropriated the proceeds from the sale of the Notes. Neither do Plaintiffs allege that the purported fraud induced C&A to accept less than fair value for the Notes.[6] Plaintiffs allege only that "C&A sold securities and used the proceeds to prop up and sustain a business that was hemorrhaging cash." (Compl. ¶ 156; D.I. 1.) What Plaintiffs do not allege is how that business decision injured C&A. *Cf. Trenwick*, 906 A.2d at 205 (a strategy to increase a corporation's value pursued by a board "acting with due diligence and good faith" that "results in continued

---

[6] Indeed, plaintiffs in an action brought on behalf of a class of persons who purchased the Notes allege that the same fraudulent conduct underlying the instant action caused those putative class members to purchase the Notes "at artificially inflated prices." (Proctor Decl., Ex. E, Amended Class Action Complaint, *Mainstay High Yield Corporate Bond Fund v. Heartland Indus. Partners, L.P.*, No. 07 Civ. 10542 (AJT/SDP), Dkt. No. 13, ¶ 230 (E.D. Mich. May 4, 2007).)

insolvency and an even more insolvent entity does not in itself give rise to a cause of action[; i]n such a scenario the directors are protected by the business judgment rule").

In *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340 (3d Cir. 2001), the court laid out three scenarios where "fraudulent and concealed incurrence of debt can damage" the value of a corporation, thereby causing it harm. *Id.* at 349. First, "to the extent that bankruptcy is not already a certainty, the incurrence of debt can force an insolvent corporation into bankruptcy, thus inflicting legal and administrative costs on the corporation." *Id.* at 349-50. Second, such debt "can undermine a corporation's relationships with its customers, suppliers, and employees ... shak[ing] the confidence of parties dealing with the corporation, calling into question its ability to perform, thereby damaging the corporation's assets." *Id.* at 350. Third, "prolonging an insolvent corporation's life through bad debt may simply cause the dissipation of corporate assets." *Id.*

Plaintiffs have not alleged any facts to support the injury scenarios described in *Lafferty*. Plaintiffs do not allege that C&A's bankruptcy was not already a foregone conclusion when it issued the Notes. Neither do Plaintiffs allege that the issuance of the Notes impaired C&A's operational abilities. Plaintiffs have also not alleged that C&A's assets were dissipated because the Notes were issued.

In short, Plaintiffs fail to articulate any injury they suffered due to the Notes' issuance. Accordingly, the Court should dismiss the Complaint.

**B.    The Complaint Fails To State A Claim For Breach Of Fiduciary Duty**

Plaintiffs allege that Mr. Cosgrove owed C&A fiduciary "duties of loyalty, good faith and care." (Compl. ¶ 165; D.I. 1.)[7] Delaware law does not recognize a duty of good faith as one of the fiduciary duties imposed on officers and directors. *See Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362 (Del. 2006). In *Stone*, the Delaware Supreme Court held that a director owes a corporation and its stockholders only two fiduciary duties: the duty of care and the duty of loyalty. *Id.* at 370 ("[T]he obligation to act in good faith does not establish an independent fiduciary duty that stands on the same footing as the duties of care and loyalty.") Consequently, as a matter of law, Mr. Cosgrove owed no fiduciary duty of "good faith" to C&A. Plaintiffs' remaining allegations concerning Mr. Cosgrove's fiduciary obligations fare little better.

1.    *Plaintiffs Fail To State A Claim For Breach Of The Fiduciary Duty of Care*

As they are firmly rooted in allegations of fraudulent conduct, Plaintiffs' claims of a breach of fiduciary duty are subjected to the heightened pleading requirements of Rule 9(b). *E.g., Buckley*, 2007 WL 956947 at *5; *Henneberry v. Sumitomo Corp. of America*, 415 F. Supp. 2d 423, 454-55 (S.D.N.Y. 2006) (breach of fiduciary duty claims must meet particularity requirements of Rule 9(b) where breach is premised on the defendant's fraudulent conduct); *In re Luxottica Group S.p.A., Sec. Litig.*, 293 F. Supp. 2d 224, 238 (E.D.N.Y. 2003) (Rule 9(b) applied where allegations of breach of fiduciary duty premised on defendant's alleged attempt "'to induce action or inaction on the part of the investors by means of falsehoods or material

---

[7] While paragraph 165 of the Complaint alleges that Mr. Cosgrove owed fiduciary duties to "the Company," paragraph 166 alleges that Mr. Cosgrove breached a duty to "the Company and the creditors of the Company." To the extent Plaintiffs attempt to assert claims held by creditors, the Complaint contains no allegations concerning the point at which Mr. Cosgrove owed a duty to the creditors of Collins & Aikman.

omissions,'") (quoting *Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark, Inc.*, 964 F.

Supp. 783, 804-05 (S.D.N.Y.1997), *rev'd in part on other grounds sub nom.*, *Strougo v. Bassini*,

282 F.3d 162 (2d Cir. 2002)); *American Mobile Communs., Inc. v. Nationwide Cellular Serv.,*

*Inc.*, No. 91 Civ. 3587 (LBS), 1992 WL 232058, at *6 (S.D.N.Y. 1992) (a "claim of breach of

fiduciary duty is subject to the particularity requirements of Rule 9(b) [if] it relies heavily on

allegations of fraudulent conduct"); *see also Rahl v. Bande*, 328 B.R. 387, 412 (S.D.N.Y.2005)

(citing cases that support the proposition that Rule 9(b) pleading standard applies to breach of

fiduciary claims when the breach is premised on a defendant's fraudulent conduct); *see also*

*Lewis v. Ward*, No. Civ. A. 15255, 2003 WL 22461894, at *4 (Del. Ch. Oct. 29, 2003), *aff'd*,

852 A.2d 896 (Del. 2004); *York Linings v. Roach*, No. 16622-NC, 1999 WL 608850, at *2-3

(Del. Ch. Jul. 28, 1999).

      By this standard, and by any standard of pleading, Plaintiffs have failed to state a

claim for relief against Mr. Cosgrove for breach of the fiduciary duty of care.  Under Delaware

law, "[t]he standard of care applicable to the fiduciary duty of care is gross negligence." *Havens*

*v. Attar*, No. 15134, 1997 WL 55957, at *11 (Del. Ch. Jan. 30, 1997) (citing *Aronson v. Lewis*,

473 A.2d 805, 812 (Del. 1984)).  Plaintiffs fail to allege that Mr. Cosgrove performed any of his

duties as an officer of C&A in a grossly negligent manner.  Indeed, Plaintiffs do not identify any

actionable conduct specifically attributable to Mr. Cosgrove in his official capacity.  For that

reason alone, Plaintiffs' duty of care claim must be dismissed. *In re Limited, Inc. Shareholders*

*Litig.*, No. Civ. A. 17148-NC, 2002 WL 537692, *10 (Del. Ch. Mar. 27, 2002) (citation omitted)

(dismissing duty of care claim where operative complaint did "not allege gross negligence or the

insufficiency of the information upon which the Board based its decision."); *Werner v. Miller*

*Tech. Mgmt*, L.P., 831 A.2d 318, 331 n. 51 (Del. Ch. 2003) ("To state a claim for a breach of the duty of care, the plaintiff must allege more than simple negligence.").[8]

     2.     *Plaintiffs Fail To State A Claim For Breach Of The Fiduciary Duty Of Loyalty*

     The Complaint claims that by "orchestrating, encouraging or utilizing" the various alleged accounting schemes that "materially misstated the financial condition of the Company," Mr. Cosgrove allegedly breached his duty of loyalty. (Compl. ¶ 166; D.I. 1.) However, Plaintiffs have failed to plead sufficient facts to state a claim for a breach of fiduciary duty founded on a theory of fraud.

     By pleading facts against 20 "Defendants" and 14 "Officer and Director Defendants," Plaintiffs obscure any notion of who made the allegedly "material misstatements," when they were made, and to whom. Mr. Cosgrove - and this Court - is left to speculate concerning what possible role he may have had in the alleged "scheme," and how such misstatements relate to the duties, if any, he may have had to C&A. Moreover, nowhere do Plaintiffs allege that Mr. Cosgrove was involved in self-dealing or embezzlement, that he abused confidential information, that he acquired adverse rights or titles, that he engaged in a competing business, or that he had a conflict of interest. The Complaint is also devoid of any indication that Mr. Cosgrove received any benefit from the alleged fraud.

     Instead, the Complaint lists numerous "responsibilities" and "duties" that were allegedly required of the Director and Officer Defendants, (Compl. ¶¶ 26-27; D.I. 1.), and states

---

[8]    In addition, a three year statute of limitations applies to breach of fiduciary duty claims in Delaware. *See* 10 *Del. C.* § 8106; *Dofflemyer v. W. F. Hall Printing Co.*, 558 F. Supp. 372, 379 (D. Del. 1983) (applying Delaware law). As noted above, section 108(a) of the Bankruptcy Code extends limitations periods provided by non-bankruptcy law to two years after the bankruptcy petition has been filed, where such limitations periods have not already expired before the petition was filed. *See* 11 U.S.C. § 108(a). Thus, to the extent Plaintiffs' breach of fiduciary duty claim is based on conduct prior to May 16, 2002, the claim is time-barred.

in sweeping terms in the "Claim for Relief" that Mr. Cosgrove has breached fiduciary duties. (Compl. ¶¶ 166; D.I. 1.)  Read broadly, these responsibilities can be assembled into two groups that loosely resemble two duties related to the duty of loyalty - the duty to monitor and the duty to disclose.  As pleaded, the Complaint fails to state a claim for breach of any such duties.

### a.    Duty To Monitor

In Paragraph 26 of the Complaint, Plaintiffs set forth a laundry list of employment responsibilities that appear to relate to a duty to monitor corporate operations, as recognized in *Caremark*, 698 A.2d at 970.  However, the Complaint is wholly devoid of any of allegations that would support a claim for breach of such a duty by Mr. Cosgrove.  *See Stone*, 911 A.2d at 370 ("*Caremark* articulates the necessary conditions predicate for director oversight liability:  (a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention.  In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations.").  The Complaint does not allege any facts concerning the presence or lack of systems or controls, and it similarly fails to allege that Mr. Cosgrove "disabled" himself from being informed of any risks.  Moreover, Plaintiffs nowhere plead that Mr. Cosgrove knew he was not discharging fiduciary obligations.  Thus, to the extent Plaintiffs attempt to found their claim of a breach of the fiduciary duty of loyalty on the duty to monitor, the claim fails.

### b.    Duty To Disclose

Plaintiffs also make reference to the Director and Officer Defendants' duties to disclose non-public, "material and adverse information."  (Compl. ¶ 27; D.I. 1.)  To the extent

Plaintiffs, by these allegations, attempt to articulate a claim against Mr. Cosgrove for breach of some common law disclosure duty, the claim cannot survive dismissal. In *Malone v. Brincat*, 722 A.2d 5 (Del. 1998), the Delaware Supreme Court clearly distinguished disclosure claims against corporate directors based upon requests for stockholder action, such as votes or tender offers, from claims based upon disclosures of business information that are not made in conjunction with such a request for action. As to the former, Delaware courts apply materiality standards like those under section 14(a) of the Exchange Act, without requiring a plaintiff to prove reliance. *See id.* at 11-12.

However, a higher standard applies to the latter situation, where a board of directors is accused of "deliberately misinforming shareholders about the business of the corporation, either directly or by a public statement." *Id.* at 14. In *Metro Communication Corp. BVI v. Advanced MobileComm Technologies, Inc.*, 854 A.2d 121, 157 (Del. Ch. 2004), the Delaware Court of Chancery, construing *Malone*, stated that the Delaware Supreme Court there "set a very high bar for plaintiffs seeking to prove a claim" relating to disclosures made outside the context of a "discretionary vote or tender decision." The court continued that the "level of proof" was higher than "the level of scienter required for common law fraud." *Id.* at 158. In this case, Plaintiffs have not even attempted to ascribe to Mr. Cosgrove any particular disclosure or omission in any of the several C&A proxy statements they identified. Nor do they plead reliance by the Plaintiffs or identify any specific misleading information that Mr. Cosgrove gave to C&A's board of directors for inclusion in a proxy statement. Given the general, protean nature of the Complaint in this regard, to the extent it purports to state a claim for breach of a duty of disclosure, it too must be dismissed.

Accordingly, Plaintiffs' claim for breach of fiduciary duty should be dismissed.

**C.      The Complaint Fails To State A Claim For Common Law Fraud**

Under Delaware law, the elements of common law fraud are: "(1) a false representation of material fact; (2) the knowledge or belief that the representation was false, or made with reckless indifference to the truth; (3) an intent to induce another party to act or refrain from acting; (4) the parties' action or inaction taken in justifiable reliance on the representation; and (5) damage to the other party as a result of the representation." *Red Mountain Holdings, Ltd. v. Stout P'ship*, No. 00 Civ. 190-JJF, 2001 WL 34368400, at *3 (D. Del. Mar. 30, 2001); *see also Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992). Plaintiffs must allege sufficient facts to meet the heightened pleading requirements of Rule 9(b). Fed. R. Civ. P. Rule 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."); *Christidis*, 717 F.2d at 99 (Rule 9(b) "applies not only to fraud actions under federal statutes, but to fraud claims based on state law"); *Red Mountain Holdings*, 2001 WL 34368400 at *3. Because Plaintiffs fail to adequately plead misrepresentation, damages and reliance, their common law fraud claim is insufficiently pleaded to survive dismissal.

*1.      Plaintiffs Fail To Allege A Misrepresentation*

Plaintiffs' common law fraud claim suffers the same failure to plead a misrepresentation as their federal securities law claims. (*See supra* § II.A.3.) Plaintiffs have not attributed a single statement to Mr. Cosgrove: indeed, the Complaint fails to mention any conduct specifically by Mr. Cosgrove. Instead, as noted above, the Complaint generally alleges conduct by the 20 "Defendants," or by the 14 "Director and Officer Defendants." Plaintiffs claim that the "Defendants" caused C&A to "file and disseminate to its shareholders materially false and misleading Proxy Statements" over a span of three years, but fail to identify which statements -- or even which Proxy Statements -- were false. (Compl. ¶ 77; D.I. 1.) Having

"failed to plead the circumstances surrounding a specific misrepresentation made to them and the particular harm suffered by them as a result," or facts concerning what alleged misrepresentations were made to Plaintiffs by Mr. Cosgrove, Plaintiffs' common law fraud claim against Mr. Cosgrove must be dismissed. *HSMY, Inc. v. Getty Petroleum Mktg, Inc.*, 417 F. Supp. 2d 617, 624 (D. Del. 2006) (internal citations omitted).

        2.     *Plaintiffs Fail To Allege Damages*

        Plaintiffs' allegations of damages are similarly insufficient. With regard to the common law fraud claims, Plaintiffs allege that C&A was damaged "in that it was denied the opportunity to continue as a going concern and its value as a business enterprise significantly decreased," and that it "incurred unnecessary operating expenses and suffered deepening insolvency." (Compl. ¶ 176; D.I. 1.) These harms are highly speculative, and in some cases are contradicted by the facts alleged in the Complaint.

        First, if anything, the rebate scheme alleged would have had the effect of *prolonging* C&A's survival as a going concern, by allowing the Company immediately to receive cash to which it should have only been entitled later; thus mitigating the alleged "liquidity crisis." Second, as more fully set forth above, Plaintiffs have not explained how the issuance of debt securities had any net effect on the Company's financial position and, as argued above, "deepening insolvency" is not itself a cognizable harm for which courts permit recovery. (*See supra* at § II.A.4.)

        Third, as alleged in the Complaint, the supposed schemes had no real effect on C&A's operating expenses. (Compl. ¶ 91; D.I. 1.) The real "adverse impacts" on the Company's operating results were "high business integration costs" and the fact that the Company was "being squeezed between OEM cost-reduction mandates and raw material price

increases." (*Id.* ¶ 116.)  As alleged, the rebate scheme set forth in the Complaint resulted in the understating of - but no real effect upon - operating expenses. (*Id.* ¶ 100.)

Finally, as more fully set forth above (*supra* § II.A.IV), Plaintiffs' theory of damages - that they suffered a "deepening insolvency" as a result of Mr. Cosgrove's conduct - cannot support their state law cause of action. *Cf. CitX*, 448 F.3d at 677.  And even if it could, the mere assumption of additional debt, in the form of issuance of notes, is not a "harm" upon which a cause of action can be founded. *Parmalat*, 2007 WL 2263893 at *9.

### 3.     *Plaintiffs Fail To Allege Reliance*

Accepting the allegations of the Complaint as true, the links in the causal chain of Plaintiffs' theory of reliance are stretched too far to support a theory of fraud.  The links are alleged as follows:  First, Mr. Cosgrove allegedly made "misrepresentations of material facts to Collins & Aikman's Board of Directors and Audit Committee relating to the true financial condition of the Company." (*Id.* ¶ 172.)  Second, C&A allegedly justifiably relied upon these representations by "electing and appointing" Mr. Cosgrove. (*Id.* ¶ 175.)  Third, as a result of electing and appointing Mr. Cosgrove, C&A was "denied the opportunity to continue as a going concern and its value as a business enterprise significantly decreased," and "C&A incurred unnecessary operating expenses and suffered deepening insolvency." (*Id.* ¶ 176.)

As noted above, Plaintiffs have not specified what material misstatements concerning the Company's financial position Mr. Cosgrove made to the Board of Directors and the Audit Committee.  There is also no explanation or indication of why the Board's decision to "elect and appoint" Mr. Cosgrove was affected by the alleged misrepresentations, or of how the Board's decision was affected.  For example, the facts alleged are entirely consistent with the

view that, even had Mr. Cosgrove *not* made the unspecified misrepresentations to the Board, the Board would nonetheless have continued to employ Mr. Cosgrove.

The Complaint further provides no explanation for how the Board's decision to "elect and appoint" Mr. Cosgrove resulted in financial harm to the Company, and it is implausible to infer such harms from Mr. Cosgrove's employment at C&A. As a matter of law, Mr. Cosgrove's individual decisions are insulated by the business judgment rule. More importantly, as set forth above, the harms alleged bear no relation to the scheme with which Mr. Cosgrove was allegedly involved.

Without factual support for its strained theory of reliance, the Complaint leaves the Court to speculate on how Plaintiffs intend to support an implausible set of facts. Accordingly, the Complaint fails to meet even the notice-pleading standards of Rule 8(a),[9] and entirely fails the heightened particularity requirements of Rule 9(b).

### D.      The Complaint Fails To State A Claim For Unjust Enrichment

"The elements of unjust enrichment are (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Student Fin.*, 2004 WL 609329 at *7 (quoting *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1056 (Del. Super. Ct. 2001)); *see also Pennsylvania Employee Benefit Trust Fund v. Zeneca, Inc.*, No. 05 Civ. 075-SLR, 2005 WL 2993937, at *5 (D. Del. 2005), *aff'd*, __ F.3d __, 2007 WL 2376312 (3d Cir. Aug. 17, 2007).

---

[9] Under Federal Rule of Civil Procedure 8(a), a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1964-65. Rule 8(a)(2)'s "threshold requirement" is that "the 'plain statement' possess enough heft to 'sho[w]' that the pleader is entitled to relief.'" *Id.* at 1966 (alteration in original). To cross this threshold, mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient. *Id.* at 1965.

As pleaded, Plaintiffs' claim for "unjust enrichment" is wholly inadequate to survive dismissal.[10] The Complaint alleges that Mr. Cosgrove "personally benefited by engaging in the conduct" it describes. (Compl. ¶ 169; D.I. 1.) Yet apart from the legal conclusion stated in the claim for relief, the Complaint is barren of any indication of how Mr. Cosgrove received any benefit from the alleged schemes. With regard to C&A's "impoverishment," the Complaint alleges only that C&A was caused to "pay inflated prices for goods, services and corporate acquisitions" (id.), and that C&A's borrowings were increased "to a level far in excess of its ability to pay" (id.). However, even if these could be considered "impoverishment,"[11] the Complaint in no way relates these to enrichment of Mr. Cosgrove. Finally, Plaintiffs do not even bother to allege the absence of justification or of a remedy at law for the purported unjust enrichment.

As it is founded upon allegations of materially false and misleading statements, press releases, and documents (id.), Plaintiffs' unjust enrichment claim must meet the heightened pleading requirements of Rule 9(b), and the complete absence of facts supporting the elements of the claim requires dismissal. Even measured against the notice pleading standards of Rule 8, Plaintiffs' failure to plead a relationship between impoverishment and enrichment, as well as the absence of a justification for any transfer from Plaintiffs to Mr. Cosgrove (or even that such a

---

[10] Further, to the extent Plaintiffs may argue that Mr. Cosgrove was unjustly enriched by the salary C&A paid to him and that Mr. Cosgrove is "obligated to disgorge" this salary, its claim is largely duplicative of the preference action filed by Plaintiffs against Mr. Cosgrove in Plaintiffs' bankruptcy case. (See Proctor Decl., Ex. F, First Amended Complaint to: (I) Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 544, 547, 548 and 550; and (II) Disallow Claims Pursuant to 11 U.S.C. § 502(d), *Collins & Aikman Corp. v. Cosgrove*, Adv. Pro. No. 07-05697 (SWR), Dkt. No. 3 (Bankr. E.D. Mich. May 17, 2007).)

[11] As stated above (*supra* § II.A.IV), a loan cannot fairly be considered "impoverishment," since in exchange for the debt, C&A would have received the loan proceeds. *Cf. Parmalat*, 2007 WL 2263893 at *9.

transfer occurred), are fatal to their unjust enrichment claim. *Pennsylvania Employee Benefit Trust Fund*, 2005 WL 2993937 at *5.

Accordingly, the claim must be dismissed.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety as to Mr. Cosgrove.

PROCTOR HEYMAN LLP

Vernon R. Proctor (# 1019)
Email: vproctor@proctorheyman.com
1116 West Street
Wilmington, Delaware 19801
(302) 472-7300
Attorneys for Defendant David R. Cosgrove

OF COUNSEL:

ARNOLD & PORTER LLP
Craig A. Stewart
Ken L. Hashimoto
Monique A. Gaylor
399 Park Avenue
New York, New York 10022-4690
(212) 715-1147

DATED:       September 14, 2007