## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COLLINS & AIKMAN CORPORATION and COLLINS & AIKMAN PRODUCTS CO., as Debtors in Possession,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID A. STOCKMAN, J. MICHAEL STEPP, BRYCE M. KOTH, DAVID R. COSGROVE, PAUL C. BARNABA, ROBERT A. KRAUSE, JOHN A. GALANTE, CHARLES E. BECKER, ELKIN B. MCCALLUM, THOMAS E. EVANS, CYNTHIA HESS, DANIEL P. TREDWELL, W. GERALD MCCONNELL, SAMUEL VALENTI, III, HEARTLAND INDUSTRIAL PARTNERS, L.P., HEARTLAND INDUSTRIAL ASSOCIATES, L.L.C., HEARTLAND INDUSTRIAL GROUP, L.L.C., PRICEWATERHOUSECOOPERS LLP, and KPMG LLP,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )    C.A. No. 07-265-\*\*\* |

## MEMORANDUM OF LAW OF J. MICHAEL STEPP
## IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT

OF COUNSEL:

Gandolfo V. DiBlasi
Karen Patton Seymour
Stacey R. Friedman
David E. Swarts
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel: (212) 558-4000

Dated: September 14, 2007

Richard L. Horwitz (2246)
Peter J. Walsh, Jr. (2437)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
Fax: (302) 658-1192
rhorwitz@potteranderson.com
pwalsh@potteranderson.com

*Attorneys for Defendant J. Michael Stepp*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... iv

NATURE AND STAGE OF THE PROCEEDINGS .................................................1

SUMMARY OF ARGUMENT ..............................................................................1

THE ALLEGATIONS OF THE COMPLAINT........................................................5

    A.    C&A and the Defendants.................................................................5

    B.    The Alleged "Fraudulent Accounting" ...........................................7

        1.    The Alleged McCallum Rebate .................................................8

        2.    There Are No Specific Allegations of Mr. Stepp's Involvement in the Supplier Rebates at Issue .........................................................8

        3.    There Are No Specific Allegations of Mr. Stepp's Involvement With Certain SEC Filings and Company Disclosures ...................9

    C.    Plaintiffs' "Scienter" Allegations .................................................10

    D.    Plaintiffs' "Loss Causation" Allegations .......................................11

    E.    Plaintiffs' Breach of Fiduciary Duty Allegations ..........................11

    F.    The Unjust Enrichment Allegations..............................................12

    G.    The Complaint's Fraud Allegations...............................................12

ARGUMENT.....................................................................................................12

I.    THE COMPLAINT FAILS TO PLEAD A SUSTAINABLE SECTION 10(b) CLAIM AGAINST MR. STEPP. .................................................................12

    A.    Plaintiffs' Section 10(b) Claim Fails for Lack of Particularity..............13

        1.    The Complaint Does Not Plead Any Actionable Misstatement or Omission by Mr. Stepp. ...........................................................13

            a.    Plaintiffs Have No Claim for Fraud Based on the McCallum Rebates...........................................................13

            b.    The Lack of Allegations of Involvement by Mr. Stepp in Other Rebates Precludes a Fraud Claim. ........................14

        c.    Allegedly Incorrect Financial Statements Do Not Establish
              Fraud. ....................................................................................15

    2.    The Remainder of the Complaint Is Dedicated to Alleged
          Misstatements (Not Attributed to Mr. Stepp) That Are Not
          Actionable. .....................................................................................15

B.    The Complaint Does Not Adequately Plead Scienter. ...........................................16

    1.    The Complaint Fails to Establish Motive. ..................................17

    2.    The "Generic" Scienter Allegations in the Complaint Fail to
          Establish Recklessness. ...............................................................18

C.    The Complaint Should Be Dismissed for Failure to Adequately Plead Loss
      Causation. ..............................................................................................................19

    1.    C&A Did Not Suffer an Economic Loss in Connection With Its
          Purchase or Sale of Securities. ...................................................20

    2.    Plaintiff's "Loss" Was Not Proximately Caused by the Alleged
          Fraud. ..........................................................................................24

II.    THE COMPLAINT FAILS TO STATE A SECTION 14(a) CLAIM .............................28

A.    The Complaint Fails to Meet the Heightened Pleading Requirements of the
      PSLRA. ..................................................................................................................29

B.    Plaintiffs Fail to Plead Causation. .........................................................................29

III.    THE COMPLAINT FAILS TO STATE ANY STATE LAW CLAIMS .........................31

A.    Breach of Fiduciary Duty (Third Claim) ...............................................................32

    1.    Mr. Stepp is Exempt from Claims for Breach of the Duty of Care. ..........32

    2.    The Complaint Fails to State a Claim Under Any Exception to the
          Exculpatory Provision. .................................................................33

        a.    The Complaint Fails to State a Claim for Breach of the
              Duty of Loyalty. ..............................................................33

        b.    Conclusory Allegations of Intentional Misconduct or the
              Absence of Good Faith are Legally Insufficient. ............36

B.    Unjust Enrichment (Fourth Claim) .........................................................................36

C.    Fraud (Fifth Claim) ................................................................................................37

1.    The Complaint Fails to Plead With Particularity Any
      Misrepresentations or Knowledge by Mr. Stepp. ......................................37

2.    No Allegation is Made That Alleged Misrepresentations Were
      Intended to Induce C&A to Act or Refrain From Acting. ..........................38

3.    C&A Through the Board of Directors Could Not Have Justifiably
      Relied on the Alleged Misrepresentations by Its Directors. ......................38

CONCLUSION..............................................................................................................39

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Abrams* v. *Baker Hughes Inc.,*
   292 F.3d 424 (5th Cir. 2002) ............................................................................................18

*In re Advanta Corp. Sec. Litig.,*
   180 F.3d 525 (3d Cir. 1999) ..................................................................................... *passim*

*In re Alpharma Inc. Sec. Litig.,*
   372 F.3d 137 (3d Cir. 2004) ............................................................................................19

*Arnold* v. *Soc'y for Sav. Bancorp, Inc.,*
   650 A.2d 1270 (Del. 1994) .............................................................................................32

*In re ATI Techs., Inc. Sec. Litig.,*
   216 F. Supp. 2d 418 (E.D. Pa. 2002) .............................................................................18

*In re Baxter Int'l, Inc. S'holders Litig.,*
   654 A.2d 1268 (Del. Ch. 1995) ......................................................................................33

*Berckeley Inv. Group, Ltd.* v. *Colkitt,*
   455 F.3d 195 (3d Cir. 2006) .....................................................................................19, 24

*In re Bio-Tech. Gen. Corp. Sec. Litig.,*
   380 F. Supp. 2d 574 (D.N.J. 2005) .................................................................................15

*Bloor* v. *Carro, Spanbock, Londin, Rodman & Fass,*
   754 F.2d 57 (2d Cir. 1985) .............................................................................................22

*Bond Opportunity Fund* v. *Unilab Corp.,*
   No. 99 Civ. 11074 (JSM), 2003 WL 21058251 (S.D.N.Y. May 9, 2003) ................................15

*Borough of W. Miflin* v. *Lancaster,*
   45 F.3d 780 (3d Cir. 1995) .............................................................................................31

*Bondiett* v. *Novell, Inc.,*
   No. 97-4054, 1998 WL 166243 (10th Cir. Apr. 7, 1998) .........................................................30

*In re Burlington Coat Factory Sec. Litig.,*
   114 F.3d 1410 (3d Cir. 1997) .........................................................................................18

*Cal. Pub. Employees' Ret. Sys.* v. *Chubb Corp.,*
   394 F.3d 126 (3d Cir. 2004) .....................................................................................19, 29

- iv -

*In re Caremark Int'l Inc. Derivative Litig.*,
    698 A.2d 959 (Del. Ch. 1996)..........................................................................................35

*Ciro, Inc.* v. *Gold*,
    816 F. Supp. 253 (D. Del. 1993)....................................................................................16

*In re CitX Corp., Inc.*,
    448 F.3d 672 (3d Cir. 2006)...........................................................................................23

*Cohen* v. *Colvin*,
    266 F. Supp. 677 (S.D.N.Y. 1967) ................................................................................22

*In re Comshare Inc. Sec. Litig.*,
    183 F.3d 542 (6th Cir. 1999) .........................................................................................19

*CTS Corp.* v. *Dynamics Corp. of Am.*,
    481 U.S. 69 (1987).........................................................................................................32

*In re DaimlerChrysler AG Sec. Litig.*,
    294 F. Supp. 2d 616 (D. Del. 2003)..............................................................................31

*In re Digital Island Sec. Litig.*,
    223 F. Supp. 2d 546 (D. Del. 2002)........................................................................16, 17

*Dura Pharm., Inc.* v. *Broudo*,
    544 U.S. 336 (2005).......................................................................................................19

*Ernst & Ernst* v. *Hochfelder*,
    425 U.S. 185 (1976).......................................................................................................17

*In re Exxon Mobil Corp. Sec. Litig.*,
    387 F. Supp. 2d 407 (D.N.J. 2005) ...............................................................................19

*Fidel* v. *Farley*,
    392 F.3d 220 (6th Cir. 2004) .........................................................................................19

*Gen. Elec. Co. ex rel. Levit* v. *Cathcart*,
    980 F.2d 927 (3d Cir. 1992)...........................................................................................28

*In re Gen. Motors Class E Stock Buyout Sec. Litig.*,
    694 F. Supp. 1119 (D. Del. 1988)..................................................................................32

*In re Great Atl. & Pac. Tea Co. Inc. Sec. Litig.*,
    103 Fed. Appx. 465 (3d Cir. 2004) ...............................................................................18

*GSC Partners CDO Fund* v. *Washington*,
  368 F.3d 228 (3d Cir. 2004)............................................................................17, 18

*Guttman* v. *Huang*,
  823 A.2d 492 (Del. Ch. 2003)..................................................................................35

*Halle & Stieglitz, Filor, Bullard Inc.* v. *Empress Int'l, Ltd.*,
  442 F. Supp. 217 (D. Del. 1977)............................................................................30

*Hoover* v. *Allen*,
  241 F. Supp. 213 (S.D.N.Y. 1965) ........................................................................21

*Huddleston* v. *Herman & MacLean*,
  640 F.2d 534 (5th Cir. 1981) .................................................................................19

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
  277 F.3d 658 (3d Cir. 2002)...................................................................................17

*Initio, Inc.* v. *Hesse*,
  474 F. Supp. 312 (D. Del. 1979).............................................................................22

*In re Investors Funding Corp. of N.Y. Sec. Litig.*,
  523 F. Supp. 533 (S.D.N.Y. 1980) .........................................................................22

*In re JPMorgan Chase Sec. Litig.*,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005)....................................................................29

*Jackson Nat'l Life Ins. Co.* v. *Kennedy*,
  741 A.2d 377 (Del. Ch. 1999).................................................................................34

*Kalnet* v. *Eichler*,
  264 F.3d 131 (2d Cir. 2001)...................................................................................18

*Klein* v. *Autek Corp.*,
  147 F. App'x 270 (3d Cir. 2005) ......................................................................13, 18

*Levy* v. *Johnson*,
  No. 76 Civ. 1178, 1977 WL 931 (S.D.N.Y. Feb. 15, 1977)....................................30

*Limmer* v. *Gen. Tel. & Elec. Corp.*,
  No. 76 Civ. 1494, 1977 WL 1029 (S.D.N.Y. Mar. 21, 1977) .................................31

*Malone* v. *Brincat*,
  722 A.2d 5 (Del. 1998) ...........................................................................................34

*Marbury Mgmt., Inc.* v. *Kohn*,
  629 F.2d 705 (2d Cir. 1980)................................................................20

*McCabe* v. *Ernst & Young, LLP*,
  --- F.3d ----, No. 06-1318, 2007 WL 2301916 (3d Cir. July 23, 2007) ....................19, 20, 28

*In re Merck & Co. Sec. Litig.*,
  432 F.3d 261 (3d Cir. 2005)................................................................10

*MetCap Sec. LLC* v. *Pearl Senior Care, Inc.*,
  C.A. No. 2129-VCN, 2007 WL 1498989 (Del. Ch. May 16, 2007)........................36

*Metro Commc'n Corp. BVI* v. *Advanced Mobilecomm Techs. Inc.*,
  854 A.2d 121 (Del. Ch. 2004)................................................................34, 38

*Mills* v. *Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970)................................................................28

*Morgens Waterfall Holdings, LLC* v. *Donaldson, Lufkin & Jenrette Sec. Corp.*,
  198 F.R.D. 608 (S.D.N.Y. 2001) ................................................................14

*In re NAHC, Inc. Sec. Litig.*,
  306 F.3d 1314 (3d Cir. 2002)................................................................29

*Newton* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001)................................................................20

*Oran* v. *Stafford*,
  226 F.3d 275 (3d Cir. 2000)................................................................10

*In re Parmalat Sec. Litig.*,
  06 Civ. 0383, 2007 U.S. Dist. LEXIS 58881 (S.D.N.Y. Aug. 8, 2007) ....................24

*Pepsico, Inc.* v. *W.R. Grace & Co.*,
  307 F. Supp. 713 (S.D.N.Y. 1969) ................................................................21

*Polakoff* v. *Del. Steeplechase & Race Ass'n*,
  254 F. Supp. 574 (D. Del. 1966)................................................................22

*Polar Int'l Brokerage Corp.* v. *Reeve*,
  108 F. Supp. 2d 225 (S.D.N.Y. 2000)................................................................14

*Robbins* v. *Banner Indus.*,
  285 F. Supp. 758 (S.D.N.Y. 1966) ................................................................31

*Robyn Meredith, Inc.* v. *Levy,*
    440 F. Supp. 2d 378 (D.N.J. 2006) ..........................................................................31

*Rochelle* v. *Marine Midland Grace Trust Co. of N.Y.,*
    535 F.2d 523 (9th Cir. 1976) ..........................................................................22, 23

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.,*
    311 F.3d 198 (3d Cir. 2002)..........................................................................13, 15, 35

*Santa Fe Indus., Inc.* v. *Green,*
    430 U.S. 462 (1977)..........................................................................16

*Semerenko* v. *Cendant Corp.,*
    223 F.3d 165 (3d Cir. 2000)..........................................................................20

*Schock* v. *Nash,*
    732 A.2d 217 (Del. 1999) ..........................................................................37

*Shapiro* v. *UJB Fin. Corp.,*
    964 F.2d 272 (3d Cir. 1992)..........................................................................16

*S. Cross Overseas Agencies, Inc.* v. *Wah Kwong Shipping Group Ltd.,*
    181 F.3d 410 (3d Cir. 1999)..........................................................................10

*Stanford Trading Co.* v. *V.R.I. Distrib. Corp.,*
    No. Civ. A. 3:98-CV-0591L, 2003 WL 21662828 (N.D. Tex. July 14, 2003)..........................5

*Stone* v. *Ritter,*
    911 A.2d 362 (Del. 2006) ..........................................................................35, 36

*Suez Equity Investors, L.P.* v. *Toronto-Dominion Bank,*
    250 F.3d 87 (2d Cir. 2001)..........................................................................24

*Taylor* v. *Hall,*
    No. 2:02 cv 240, 2006 WL 1793603 (N.D. Ind. June 28, 2006) ..........................5

*In re Teleglobe Commc'ns Corp.,*
    493 F.3d 345 (3d Cir. 2007)..........................................................................23

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.,*
    127 S. Ct. 2499 (2007)..........................................................................4, 10, 17, 18

*Tracinda Corp.* v. *DaimlerChrysler AG,*
    197 F. Supp. 2d 42 (D. Del. 2002)..........................................................................17

*Trenwick Am. Lit. Trust* v. *Ernst & Young, L.L.P.*,
906 A.2d 168 (Del. Ch. 2006),
*aff'd sub nom. Trenwick Am. Litig. Trust* v. *Billet*,
No. 495, 2006, 2007 WL 2317768 (3d Cir. Aug. 14, 2007)..................................23, 37, 38, 39

*In re Tyson Foods, Inc. Sec. Litig.*,
C.A. No. 01-425-SLR, 2004 WL 1396269 (D. Del. June 17, 2004) ........................................9

*In re Walt Disney Co. Derivative Litig.*,
825 A.2d 275 (Del. Ch. 2003)...............................................................................................35

*In re Westinghouse Sec. Litig.*,
90 F.3d 696 (3d Cir. 1996)....................................................................................................12

*In re Wheelabrator Techs. Inc. S'holders Litig.*,
C.A. No. 11496, 1992 WL 212595 (Del. Ch. Sept. 1, 1992)....................................................33

*York Linings* v. *Roach*,
No. 16622-NC, 1999 WL 608850 (Del. Ch. July 28, 1999)....................................................36

*Zirn* v. *VLI Corp.*,
681 A.2d 1050 (Del. 1996) ...................................................................................................34

## STATUTES AND RULES

Section 10(b) of the Securities Exchange Act of 1934,
15 U.S.C. § 78j(b)........................................................................................................ *passim*

Section 14(a) of the Securities Exchange Act of 1934,
15 U.S.C. § 78n(a) ...................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995,
15 U.S.C. § 78u-4 *et seq.* ........................................................................................... *passim*

Securities Litigation Uniform Standards Act of 1998,
15 U.S.C. § 78bb.................................................................................................................32

28 U.S.C. § 1367(c)(3) (2007).............................................................................................31

8 Del. C. § 102(b)(7) (2007).......................................................................................32, 33, 34

Rule 10b-5, 17 C.F.R. § 240.10b-5.......................................................................................12

Fed. R. Civ. P. 9(b) ...................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 36

**MISCELLANEOUS**

W. Page Keeton, *et al.*, *Prosser & Keeton on the Law of Torts*
§ 110 (5th ed. 1984)...........................................................................................................28

Defendant J. Michael Stepp respectfully submits this memorandum of law in support of his Motion to Dismiss the Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq.* (the "PSLRA").

## NATURE AND STAGE OF THE PROCEEDINGS

This action was commenced with the filing of the Complaint on May 16, 2007, by Collins & Aikman Corporation ("C&A" or the "Company"), *et al.*, as debtors in possession against certain major shareholders of C&A; former directors, officers, or employees of C&A; and two of its outside auditors; alleging violations of Sections 10(b) and 14(a) of the Securities Exchange Act of 1934 and various state laws.

## SUMMARY OF ARGUMENT

C&A is a parts supplier in the highly competitive automotive industry. That industry has been pressured over the last several years by declining demand. Parts suppliers, like C&A, have responded to the downturn in demand by, among other things, implementing cost cutting measures, including seeking rebates from their suppliers of the kind that are at the center of this litigation. This industry downturn and price cutting have led to major losses in the auto industry and, ultimately, forced C&A and at least seven of its peer firms into bankruptcy. Against this backdrop, C&A, as debtors in possession, filed this action alleging "fraudulent accounting" and asserting claims against fourteen former directors, officers, or employees of C&A; Heartland, the private equity firm that tried to turn C&A around; and two of the outside auditors of C&A. At issue in this motion is whether the claims against Mr. Stepp, who was, for a time, the Chief Financial Officer ("CFO") of C&A and affiliated with Heartland, can be maintained.

The Complaint, as against Mr. Stepp, should be dismissed in its entirety. Mr. Stepp is alleged to have violated Sections 10(b) and 14(a) of the Securities Exchange Act of 1934 and various state laws, but Plaintiffs have failed to come forward with specific, factual allegations—which are required here—to support these claims. This is an ineffective attempt by Plaintiffs to convert a lengthy investigation by the SEC and the Department of Justice into civil claims against Mr. Stepp and others. Despite having the benefit of the government's extensive investigatory work—which lasted more than eighteen months and involved the collection of millions of pages of documents and the testimony of numerous witnesses—Plaintiffs have little to say about Mr. Stepp. The 215-paragraph Complaint does not describe a single document or cite to any witnesses to support the allegation that Mr. Stepp knew or should have known of the existence of the alleged "accounting fraud." Indeed, Mr. Stepp is only mentioned by name in five paragraphs, two of which merely state his background.

The general allegations against Mr. Stepp simply observe that he was associated with Heartland and was the CFO of C&A for a period of time, and then conclude that he "knew or should have known" about the "accounting fraud." Such conclusory statements—anchored only to Mr. Stepp's senior executive title—have routinely been found insufficient to support the fraud claims at issue here.

The specific allegations (stripped of inflammatory characterizations) amount to the assertion that Mr. Stepp was involved in one rebate given to C&A by Elkin McCallum. The alleged value of this rebate is $3 million. (C&A's revenues during the time period covered by the Complaint were more than $11.3 *billion*.) Plaintiffs do not allege that this rebate (or any other rebate) was facially inappropriate. To the contrary, Plaintiffs concede that the rebates at

issue are "generally" and legitimately provided in the automotive industry. The "fraud" in the Complaint arises from the manner in which C&A allegedly accounted for these rebates.

Nowhere in the Complaint, however, are there non-conclusory allegations establishing Mr. Stepp's involvement in the accounting for the *de minimis* rebate at issue here (which amounted to less than .03 percent of C&A's revenues during the relevant period). Indeed, the Complaint contains no factual allegations establishing that Mr. Stepp was involved in discussions concerning the challenged accounting at all. Said differently, Plaintiffs studiously ignore that there are no particular facts showing that Mr. Stepp "knew or should have known" how C&A's accounting professionals recorded this (or any other) facially *bona fide* rebate, let alone that they were (allegedly) accounted for improperly. This omission is fatal to Plaintiffs' claims. Accordingly, Mr. Stepp respectfully requests that the Court dismiss the claims asserted against him on five grounds:

*First*, the Complaint should be dismissed in its entirety because it does not meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the PSLRA. With five immaterial exceptions, the paragraphs in the Complaint wholly fail to mention Mr. Stepp. Many paragraphs use inflammatory characterizations, attempting to put a bad odor on transactions that are facially legitimate. Other paragraphs allege only vague conclusions, without identifying Mr. Stepp's involvement, if any, in the alleged activities. These allegations are no more than mere allegations of corporate mismanagement. Such generalized pleading is fatal to Plaintiffs' claims.

*Second*, the claims fail for the additional reason that Plaintiffs' allegations of scienter are legally insufficient. To survive a motion to dismiss in the Third Circuit, the Complaint must allege facts that establish a strong inference of conscious misbehavior or

- 3 -

recklessness. The Supreme Court recently held in *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, that the "strong inference" standard requires that the "inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." 127 S. Ct. 2499, 2504-05 (2007). Mr. Stepp's alleged motive to commit "fraud" was his general desire to keep his job, along with the fact that he owned (but did not sell during the relevant period) C&A stock. These generic motives possessed by many corporate executives are, as a matter of law, insufficient to establish scienter in this Circuit.

      *Third*, the Complaint fails to adequately plead loss causation because it does not allege the requisite causal connection between the alleged misconduct and a subsequent loss in value of the securities. Plaintiffs' conclusory allegations that C&A "suffered damages in connection with the sale of its securities" without further explanation, and vague references to "deepening insolvency" without even a showing that C&A was actually insolvent at the time, are not sufficient to sustain a claim. Moreover, Plaintiffs' concession that C&A's losses were substantially affected by the market-wide collapse of the U.S. auto industry means that loss causation could never be credibly pleaded in this case.

      *Fourth*, the Complaint's attempt to assert a claim of Section 14(a) fails because Plaintiffs have not pleaded any actionable misstatement, and have failed to plead causation or the "essential link" between the allegedly misleading proxy statements and C&A's alleged loss.

      *Fifth*, each of the Complaint's state law claims must be rejected. The breach of fiduciary duty of care claim fails because C&A's incorporation papers include an exculpatory clause barring breach of fiduciary duty claims against its directors. Furthermore, the Complaint does not adequately allege any exception to the exculpatory clause, including a breach of the

duty of loyalty, or intentional misconduct or absence of good faith. The Complaint also fails to plead unjust enrichment because it provides no facts demonstrating that Mr. Stepp was enriched or a connection between a purported enrichment and C&A's loss. Finally, the common law fraud claim fails for many of the reasons set forth above (lack of a material misstatement, scienter, and reliance) and for the additional reason that it is nonsensical to infer that C&A's board was misled by itself.

**THE ALLEGATIONS OF THE COMPLAINT**

Over 215 paragraphs, Plaintiffs intertwine pages of boilerplate and conclusory allegations with 15 paragraphs referencing C&A's public disclosures, and 29 paragraphs drawn from the indictment[1] or the SEC complaint. Although long on repetition of the work of others, the Complaint is short on substance with respect to Mr. Stepp.

**A.    C&A and the Defendants**

Plaintiffs allege that fourteen individuals and five entities engaged in "fraudulent accounting" and concealed negative information about C&A between the fourth quarter of 2001 and May 17, 2005 (the "Relevant Period"). (Compl. ¶¶ 39-40, 75.)

**The Company:** C&A is in the highly competitive business of supplying components, such as interior systems, trim pieces, and convertible roof systems, to major automobile manufacturers such as Ford, GM, and Chrysler. (Compl. ¶¶ 5, 36, 38.) As early as 2001, C&A's business began to suffer as it was squeezed by car manufacturers to lower prices,

---

[1]    It should be noted that the mere existence of criminal indictments does not establish civil liability. *See Taylor* v. *Hall*, No. 2:02 cv 240, 2006 WL 1793603, at *4 (N.D. Ind. June 28, 2006) (refusing to consider a criminal indictment on motion for summary judgment); *Stanford Trading Co.* v. *V.R.I. Distrib. Corp.*, No. Civ. A. 3:98-CV-0591L, 2003 WL 21662828, at *3 (N.D. Tex. July 14, 2003) ("A criminal indictment is only an accusatory document and is proof of nothing.").

while simultaneously the costs of its primary raw materials (plastic and steel) escalated. (Compl. ¶¶ 37-38.) These pressures continued until May 2005, when C&A was forced to seek Chapter 11 bankruptcy protection. (Compl. ¶¶ 39-41.) There is no allegation in the Complaint that C&A's declining stock price and bankruptcy were caused by anything other than the well-known downturn of the domestic automotive industry that also led to at least seven of C&A's closest competitors seeking bankruptcy protection.

**Heartland:** Defendants Heartland Industrial Partners, L.P., Heartland Industrial Associates, L.L.C., and Heartland Industrial Group, L.L.C. (collectively, "Heartland") is a private equity group that invested in, and tried to salvage, C&A. (Compl. ¶¶ 28-30, 37.) Heartland allegedly owned a controlling interest in C&A. (Compl. ¶ 31.)

**Auditor Defendants:** The Complaint also names as defendants PriceWaterhouseCoopers LLP ("PwC") and KPMG LLP ("KPMG") (collectively "Auditor Defendants"). (Compl. ¶¶ 34-35.) PwC reviewed C&A's financial statements for the years 2001 and 2002, while KPMG reviewed C&A's financial statements for the years 2002 and 2003. (Compl. ¶¶ 34-35.)

**Individual Defendants:** The Complaint also names as defendants fourteen former directors, officers or employees of C&A: David A. Stockman, J. Michael Stepp, Bryce M. Koth, David R. Cosgrove, Paul C. Barnaba, Robert A. Krause, John A. Galante, Charles E. Becker, Elkin B. McCallum, Thomas E. Evans, Cynthia Hess, Daniel P. Tredwell, W. Gerald McConnell, and Samuel Valenti, III (the "Individual Defendants"). (Compl ¶¶ 9-22.)

**J. Michael Stepp:** Mr. Stepp was C&A's Vice President and Chief Financial Officer from January 2002 until he retired in October 2004; a director and Vice Chairman of C&A's Board of Directors; and a Senior Managing Director of Heartland. (Compl. ¶¶ 10, 31.)

Plaintiffs do not allege that Mr. Stepp has any professional training in accounting (he does not). Nor does the Complaint allege that Mr. Stepp had direct responsibility for C&A's technical accounting generally or for the "rebates" that are central to the claims against Mr. Stepp. The Complaint also does not allege that Mr. Stepp sold any C&A stock during the relevant period (he did not).

### B.    The Alleged "Fraudulent Accounting"

The Complaint alleges that Defendant "embark[ed] on a fraudulent accounting scheme . . . designed to artificially inflate the Company's reported financial results." (Compl. ¶ 39-40.) Nearly all of the allegations about the accounting "scheme" do not mention Mr. Stepp at all (Compl. ¶¶ 39-40, 50, 52-53, 55-60, 63-71, 75-102, 104-06, 109-10, 113, 115-34, 137-40, 142-44, 146, 148-49, 150-52) or are devoted to events that occurred after Mr. Stepp retired from C&A on October 13, 2004 (Compl. ¶¶ 57, 62-74, 103-05, 108, 138-39).

The handful of paragraphs that do mention Mr. Stepp concern the accounting treatment of rebates that C&A sought from Elkin McCallum, the owner of Joan Fabrics, and specifically the rebate in the fourth quarter of 2001. (Compl. ¶¶ 48-49, 51.) Plaintiffs concede that such "rebates" were "generally provid[ed]" in the "automotive industry." (Compl. ¶ 54.) Indeed, Plaintiffs acknowledge that "[u]nder GAAP, rebates should be recorded as reductions in cost." (Compl. ¶ 54.) Thus, the allegations show that there was nothing *per se* unlawful about the "rebates" with which Mr. Stepp was allegedly involved.

According to the Complaint, the "fraud" arises from the manner in which C&A accounted for these "rebates." (Compl. ¶ 52.) Although there are vague allegations regarding Mr. Stepp's involvement with one *de minimis* rebate (the McCallum rebate) and general allegations about other allegedly improper rebates, the Complaint is bereft of factual allegations

about Mr. Stepp's involvement with the alleged improper accounting and SEC reporting upon which this Complaint is founded.

### 1.    The Alleged McCallum Rebate

The Complaint alleges that, on several occasions, C&A obtained rebates from Mr. McCallum and later "repaid" these rebates. (Compl. ¶¶ 48-52.) Mr. Stepp was allegedly directly involved with only one of the McCallum rebates, valued at approximately $3 million. (Compl. ¶ 49.) Mr. Stepp is alleged to have asked Mr. McCallum for the rebate, that it was agreed "that the Company would repay the $3 million . . . in the future," and that Mr. Stepp and others repaid the rebates through a series of transactions. (Compl. ¶¶ 49, 50.) The Complaint does not allege that there was anything facially improper about this McCallum transaction, which it describes as "a short term loan." (Compl. ¶ 49.)

The terms of the McCallum rebate at issue were allegedly agreed to "[i]n the fourth quarter of 2001." (Compl. ¶ 49.)   In 2001, Mr. Stepp was not an employee of C&A. (*See* Compl. ¶ 10.)   Moreover, the Complaint is silent on the one critical issue in this accounting fraud case—there are no factual allegations establishing who was responsible for the accounting treatment of the McCallum transaction.

### 2.    There Are No Specific Allegations of Mr. Stepp's Involvement in the Supplier Rebates at Issue.

Plaintiffs also allege that C&A improperly accounted for 22 other supplier rebates. (Comp. ¶¶ 53-58.) Plaintiffs concede that rebates such as these were common in the automotive industry and, as noted above, there was nothing *prima facie* improper about the rebates, which, "[u]nder GAAP, . . . should be recorded as reductions in cost." (Compl. ¶ 54.) Importantly, Mr. Stepp is not alleged to have any connection to the supplier rebates at issue in the Complaint.

In an effort to convert the rebates into evidence of fraud, the Complaint makes

vague references to "side letters" used with certain of the rebates. (Compl. ¶¶ 55, 98-99, 126-29,

131.) Although vague and inflammatory labels like "side letters" may add color to the

Complaint, they do not add factual content. Plaintiffs are vague about what precisely these

letters allegedly said, and do not allege who wrote them or to whom they were addressed.

Stripped down, the allegation is merely that some rebates were memorialized in more than one

contractual document. There is, of course, an extensive, complex, and unsettled body of

accounting principles that must be interpreted when accounting for rebates, including rebates that

are memorialized in a series of agreements. But nowhere in the Complaint is it alleged that Mr.

Stepp had direct responsibility for determining how such technical accounting rules should be

applied to the "rebates" at issue. It is not alleged that he had the necessary advanced accounting

training to undertake such an analysis (he did not). Nor is it alleged that Mr. Stepp was directly

involved in providing or discussing these letters with the internal or external auditors.

### 3. There Are No Specific Allegations of Mr. Stepp's Involvement With Certain SEC Filings and Company Disclosures.

Plaintiffs also allege that the "accounting practices" described in the Complaint

rendered certain public disclosures, certain financial statements filed with the SEC, and certain

proxy statements of C&A inaccurate.[2] (Compl. ¶¶ 27, 60, 75-77, 154.) But there are no

---

[2]    The Complaint contains a litany of conclusory and vague allegations about C&A's business practices, including allegations concerning misapplication of vendor rebates and expenses, early billing of receivables, understaffing of certain projects, use of second-hand equipment in its Hermosillo plant, quality problems, and entering into unprofitable contracts with customers and suppliers. (Compl. ¶¶ 103-06, 108-10, 117-18, 136-39.) Because these allegations do not concern (or even mention) Mr. Stepp, they are irrelevant for the purposes of this motion. *See In re Tyson Foods, Inc. Sec. Litig.*, C.A. No. 01-425-SLR, 2004 WL 1396269, at *8 (D. Del. June 17, 2004).

allegations in the Complaint concerning Mr. Stepp's role in the preparation of these disclosures and filings or how he should have known that they were allegedly inaccurate.

### C.    Plaintiffs' "Scienter" Allegations

The Complaint does not contain factual allegations that establish Mr. Stepp had scienter (*e.g.*, motive or knowledge). Plaintiffs do not allege any motive by Mr. Stepp, only making a vague comment that the revelation of the alleged "fraudulent scheme" would have effected the continuation of "the executive officers' compensation." (Compl. ¶ 162.) Moreover, nowhere does the Complaint allege that Mr. Stepp sold any stock during the relevant period (he did not) or actually benefited from the alleged accounting errors. Instead, for the most part, Plaintiffs conclude, without any supporting factual allegations, that Mr. Stepp acted with scienter because he "knew or should have known" of the alleged fraud. (Compl. ¶¶ 24, 154, 161, 173-74.) Such conclusory allegations are especially unpersuasive where, as here, the magnitude of the alleged misconduct is *de minimis*. (The "rebate" in which Mr. Stepp was allegedly involved had a value of $3 million—less than 0.03 percent of C&A's revenue during the Relevant Period.)[3]

---

[3]    *See* Compl. ¶ 49; C&A SEC Form 10-Q, filed Nov. 14, 2001, at I-2 and C&A SEC Form 10-K/A, filed June 7, 2002, at F-3 ($482.2 million in revenues in fourth quarter 2001); C&A SEC Form 10-K, filed Mar. 26, 2003, at 20 ($3.9 billion in revenues in 2002); C&A SEC Form 10-K, filed Mar. 17, 2004, at 18 ($4.0 billion in revenues in 2003); C&A SEC Form 10-Q, filed Nov. 9, 2004, at 1 ($3.0 billion in revenues in first three quarters of 2004) (attached as Exhibits A through E to the Declaration of Stacey R. Friedman, executed September 13, 2007). On a motion to dismiss, the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," *Tellabs*, 127 S. Ct. at 2509, such as public documents filed with the SEC, public quotations of stock prices, and filings in bankruptcy proceedings, *see In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 264 n.3 (3d Cir. 2005) (taking judicial notice of stock prices); *Oran* v. *Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (taking judicial notice of SEC filings); *S. Cross Overseas Agencies, Inc.* v. *Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (taking judicial notice of other judicial proceedings).

D.    **Plaintiffs' "Loss Causation" Allegations**

In an attempt to plead loss causation, Plaintiffs allege that C&A "suffered damages in connection with its sale of securities." (Compl. ¶ 157.) Whatever this oblique statement means, it fails to provide, as it must, any specific allegations describing a connection between C&A's loss (whatever that was) and the subject matter of the alleged fraud. Likewise, Plaintiffs' vague references about "deepening insolvency" (Compl. ¶¶ 40, 60, 72, 76, 149, 156, 167, 176) add nothing because they do not provide any facts linking this theory to C&A's alleged loss or even demonstrate that C&A was even insolvent at the time. Rather, Plaintiffs make the fatal concession that C&A's losses were caused by a non-actionable, intervening event—C&A's bankruptcy filing (Compl. ¶¶ 38-39, 41), which was the result of a general collapse of the domestic automotive parts supply industry.

E.    **Plaintiffs' Breach of Fiduciary Duty Allegations**

Without identifying any particular Defendant, Plaintiffs attempt to assert against the "Director and Officer Defendants" a claim that they breached their fiduciary duties. (Compl. ¶ 164.) The Plaintiffs allege that the Individual Defendants owed fiduciary duties of loyalty, good faith and care to C&A. (Compl. ¶ 165.) In particular, Plaintiffs allege that the Individual Defendants had "a duty to promptly and accurately disseminate truthful information with respect to the Company's operations and financial condition" (Compl. ¶ 25) and "were obligated to disclose material adverse information regarding [C&A]" (Compl. ¶ 27). Plaintiffs also allege that the Individual Defendants were "required . . . to exercise reasonable and prudent supervision over management, policies, practices and controls of the business and financial affairs of [C&A]." (Compl. ¶ 26.) But Plaintiffs do not specify how those duties were allegedly breached. All the Complaint states, in the most conclusory fashion, is that "the conduct of the Director and Officer Defendants . . . involves fraudulent misconduct" (Compl. ¶ 24) and that they "breached

- 11 -

their duties . . . by orchestrating, encouraging or utilizing various accounting schemes . . . which materially misstated the financial condition of the Company." (Compl. ¶ 166.)

### F.     The Unjust Enrichment Allegations

Plaintiffs make the bald assertion that "the Director and Officer Defendants . . . personally benefited by engaging in conduct described above" (Compl. ¶ 169), but do not provide any facts suggesting how Mr. Stepp was enriched by the alleged conduct.

### G.     The Complaint's Fraud Allegations

The Complaint attempts to contrive, through cursory and nonsensical allegations, a claim that the Individual Defendants defrauded the Company by making "intentional, reckless, grossly negligent or mistaken" misrepresentations to themselves, which they in turn relied on in electing and appointing themselves, leading to the Company's bankruptcy. (Compl. ¶¶ 172-73, 175).

### ARGUMENT

## I.     THE COMPLAINT FAILS TO PLEAD A SUSTAINABLE SECTION 10(b) CLAIM AGAINST MR. STEPP

"To state a securities fraud claim under section 10(b) and rule 10b-5, a private plaintiff must plead the following elements: '(1) that the defendant made a misrepresentation or omission of (2) a material (3) fact; (4) that the defendant acted with knowledge or recklessness and (5) that the plaintiff reasonably relied on the misrepresentation or omission and (6) consequently suffered damage.'" *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 537 (3d Cir. 1999) (quoting *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 710 (3d Cir. 1996)).  Claims asserted under Section 10(b) must comply with the heightened pleading requirements of the PSLRA and Rule 9(b). *See id.* at 530-31.

A.    **Plaintiffs' Section 10(b) Claim Fails for Lack of Particularity.**

Under Rule 9(b), "[a] plaintiff alleging securities fraud must plead 'the who,

what, when, where, and how' of each specific false representation." *Klein* v. *Autek Corp.*, 147 F.

App'x 270, 274 (3d Cir. 2005) (quoting *Advanta*, 180 F.3d at 534); *see also* Fed. R. Civ. P. 9(b).

In addition, the PSLRA mandates that a complaint must "specify each statement alleged to have

been misleading, the reason or reasons why the statement is misleading, and, if an allegation

regarding the statement or omission is made on information and belief, the complaint shall state

with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

Accordingly, "fraud allegations should be analyzed individually to determine whether each

alleged incident of fraud has been pleaded with particularity." *In re Rockefeller Ctr. Props., Inc.*

*Sec. Litig.*, 311 F.3d 198, 224 (3d Cir. 2002) ("[U]nless plaintiffs in securities fraud actions

allege facts supporting their contentions of fraud with the requisite particularity mandated by

Rule 9(b) and the [PSLRA], they may not benefit from inferences flowing from vague or

unspecific allegations . . . .").

1.    **The Complaint Does Not Plead Any Actionable Misstatement or Omission by Mr. Stepp.**

a.    **Plaintiffs Have No Claim for Fraud Based on the McCallum Rebates.**

With regard to the McCallum rebates (Compl. ¶¶ 48-52), the Complaint lacks the

requisite particularity. Plaintiffs merely conclude that Mr. Stepp and others repaid the

McCallum rebates (Compl. ¶ 51) without explaining how exactly this was accomplished or what

Mr. Stepp's alleged involvement was with the particularity that would convert such an act into

evidence of fraud. Said differently, these allegations are insufficient because they fail to identify

a fraudulent statement or omission by Mr. Stepp. *See Rockefeller*, 311 F.3d at 217.

The remaining allegation is that Mr. Stepp asked Mr. McCallum for a $3 million rebate that would be refunded in the future. (Compl. ¶ 49.) As discussed above (*see, supra*, at 8), this transaction was apparently negotiated by others "in the fourth quarter of 2001," when Mr. Stepp was not employed by C&A. The Complaint contains no allegation that Mr. Stepp made any false statement affecting or omission regarding—or was even directly involved with—the alleged improper accounting for this (or any other) rebate. Without such particularity, such vague allegations cannot sustain claims based on alleged accounting fraud. *See id.*

> **b.    The Lack of Allegations of Involvement by Mr. Stepp in Other Rebates Precludes a Fraud Claim.**

The Complaint also alleges that C&A improperly accounted for at least 22 supplier rebates. (Comp. ¶¶ 53-58.) As discussed above, Plaintiffs concede that such rebates were common in the automotive industry and, "[u]nder GAAP, . . . should be recorded as reductions in cost." (Compl. ¶ 54.) Nonetheless, Plaintiffs conclude that C&A fraudulently accounted for these rebates. With respect to Mr. Stepp, Plaintiffs' conclusion is not supported by the requisite factual allegations because Mr. Stepp is not alleged to have *any* connection with supplier rebates at issue.

In an effort to convert the rebates into evidence of fraud, the Complaint vaguely references "side letters" purportedly used in connection with certain of the rebates. (Compl. ¶¶ 55, 98-99, 126-29, 131.) Vague and inflammatory labels like "side letters" do not amount to particularized pleading. *See Polar Int'l Brokerage Corp.* v. *Reeve*, 108 F. Supp. 2d 225, 241 & n.26 (S.D.N.Y. 2000) (noting that "subjective characterizations" and "hyperbole" are insufficient to sustain a fraud claim); *Morgens Waterfall Holdings, LLC* v. *Donaldson, Lufkin & Jenrette Sec. Corp.*, 198 F.R.D. 608, 610 (S.D.N.Y. 2001) (dismissing complaint for including, among other things, "much irrelevancy and inflammatory material"). Because the Complaint does not

allege what these letters said, who wrote them or to whom they were addressed, these allegations

cannot sustain a fraud claim. *See Rockefeller*, 311 F.3d at 217. Moreover, these alleged letters

are clearly irrelevant as to Mr. Stepp, who is *not* alleged to have been involved in how C&A

technically accounted for these transactions or in providing or discussing these letters with the

internal or external auditors. *See, supra*, at 9.

### c.    Allegedly Incorrect Financial Statements Do Not Establish Fraud.

Plaintiffs' broad assertion that the allegedly improper accounting rendered the

financial statements of C&A inaccurate likewise does not give rise to a claim against Mr. Stepp.

Where, as here, the Complaint does not explain what Mr. Stepp knew concerning these

financials, how he could have known that they were (allegedly) incorrect, or exactly what his

involvement was in preparing the information contained in them—no securities fraud claim can

lie. (*See* Section I.B.2., *infra*.)

### 2.    The Remainder of the Complaint Is Dedicated to Alleged Misstatements (Not Attributed to Mr. Stepp) That Are Not Actionable.

Because the allegations against Mr. Stepp are insufficient, the Complaint should

be dismissed in its entirety. Plaintiffs' remaining generic allegations aimed at all of the

Defendants or other Defendants cannot sustain a claim.

**Group Pleading:** A Section 10(b) claim against Mr. Stepp cannot be sustained

on the back of allegations attributed to "defendants" generally. Such general allegations—called

group pleading—are insufficient to sustain a Section 10(b) claim.[4] *See In re Bio-Tech. Gen.*

---

[4]    Plaintiff's Section 14(a) claim (*see* Section II, *infra*) likewise cannot be sustained on the basis of group pleading. *See Bond Opportunity Fund* v. *Unilab Corp.*, No. 99 Civ. 11074 (JSM), 2003 WL 21058251, at *4 (S.D.N.Y. May 9, 2003) (emphasis added) (holding that plaintiff may not impute knowledge to "individual defendants" in stating a Section 14(a) claim).

*Corp. Sec. Litig.*, 380 F. Supp. 2d 574, 584 (D.N.J. 2005) ("The Third Circuit has not expressly

determined whether group pleading has survived enactment of the PSLRA. Nevertheless, the

prevailing authority within this District counsels that group pleading has been abolished.")

(collecting cases); *see also In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 553 (D. Del.

2002) ("Although the Third Circuit has not addressed the applicability of group pleading under

the PSLRA, numerous district courts within this Circuit have held that the PSLRA has

effectively abolished the group pleading doctrine.") (collecting cases).  Here, Plaintiffs do not

attribute any misstatements to Mr. Stepp, but rather impermissibly lump all Defendants together.

**Allegations of Corporate Mismanagement:**  The remainder of Plaintiffs'

allegations amount to nothing more than an assertion that C&A was mismanaged because of

alleged misapplication of vendor rebates and expenses, early billing of receivables, understaffing

of certain projects, use of second-hand equipment in its Hermosillo plant, quality problems, and

entering into unprofitable contracts with customers and suppliers.  (Compl. ¶¶ 103-06, 108-10,

117-18, 136-39.)  The Supreme Court long ago held that such assertions of corporate

mismanagement do not give rise to a violation of Section 10(b), even when a plaintiff alleges the

mismanagement was not properly disclosed.  *See Santa Fe Indus., Inc.* v. *Green*, 430 U.S. 462,

479-80 (1977).  Relying on *Santa Fe*, courts in this Circuit have dismissed mismanagement

claims as not actionable under Section 10(b).  *See, e.g., Advanta*, 180 F.3d at 537; *Shapiro* v.

*UJB Fin. Corp.*, 964 F.2d 272, 283 (3d Cir. 1992); *Ciro, Inc.* v. *Gold*, 816 F. Supp. 253, 263-64

(D. Del. 1993).

## B.    The Complaint Does Not Adequately Plead Scienter.

Under the PSLRA, a plaintiff is also obligated to "state with particularity facts

giving rise to a strong inference that the defendant acted with the required state of mind."  15

U.S.C. § 78u-4(b)(2); *see also Advanta*, 180 F.3d at 535.  For purposes of a Section 10(b) action,

the required state of mind is "an intent to deceive, manipulate or defraud." *In re Ikon Office Solutions, Inc., Sec. Litig.*, 277 F.3d 658, 667 (3d Cir. 2002) (quoting *Ernst & Ernst* v. *Hochfelder*, 425 U.S. 185, 193 n.12 (1976)). The United States Supreme Court recently clarified that the strong inference of scienter "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 127 S. Ct. at 2504-05.

To satisfy the scienter pleading requirements in the Third Circuit, a plaintiff must allege with particularity that the defendant had "motive and an opportunity to commit fraud," or that defendant's alleged misdeeds were the result of "reckless or conscious behavior." *Advanta*, 180 F.3d at 534-35. Recklessness is "an extreme departure from the standards of ordinary care." *Id.* at 535 (quotation marks and citation omitted). Recklessness constitutes scienter when "the culpability attaching to such reckless conduct closely approaches that which attaches to conscious deception." *Digital Island*, 357 F.3d at 332 (citations omitted.)

### 1.    The Complaint Fails to Establish Motive.

The Complaint does not allege that Mr. Stepp was motivated by potential profits from sales of C&A stock during the relevant period (he did not sell any C&A stock during that time). The only potential motive allegation in the Complaint, although hopelessly vague, is that the alleged "fraudulent scheme" permitted C&A's executive officers to continue to receive their compensation. (Compl. ¶ 162.) In addition to not naming a particular motive of Mr. Stepp, these allegations are, as a matter of law, not sufficient to establish scienter. *See GSC Partners CDO Fund* v. *Washington*, 368 F.3d 228, 237 (3d Cir. 2004); *see also Advanta*, 180 F.3d at 535 ("[C]atch-all allegations that defendants stood to benefit from wrongdoing and had the opportunity to implement a fraudulent scheme" are not sufficient.); *Tracinda Corp.* v. *DaimlerChrysler AG*, 197 F. Supp. 2d 42, 84 (D. Del. 2002) ("[A]lleging facts that lead to a

- 17 -

strained and tenuous inference of motive is insufficient to satisfy Rule 9(b) and the PSLRA.")
(quotation marks and citation omitted).

It is well-settled that allegations that corporate officers were motivated to keep
their compensation are not sufficient to plead scienter. "[M]otives that are generally possessed
by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete
and personal benefit to the individual defendants resulting from this fraud." *GSC Partners*, 368
F.3d at 237 (quoting *Kalnet v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001)). "[G]eneral claims that
officials sought to inflate the price of common stock to 'protect, perpetuate and enhance their
executive positions' alleges a motive generic to all corporate officials, and fails to explain *why*
the officials would enhance their reputations and careers by a temporary artificial inflation in
stock price." *In re ATI Techs., Inc. Sec. Litig.*, 216 F. Supp. 2d 418, 440 (E.D. Pa. 2002)
(emphasis in original) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1423
n.12 (3d Cir.1997)).

### 2. The "Generic" Scienter Allegations in the Complaint Fail to Establish Recklessness.

Plaintiffs attempt to obscure the lack of scienter allegations specific to Mr. Stepp
under a scattershot collection of generic allegations that are, as a matter of law, insufficient to
establish the requisite "cogent" and "compelling" inference of scienter. *Tellabs*, 127 S. Ct. at
2510.

- Plaintiffs' conclusory allegations that Defendants "knew or should have known" about the alleged fraud (Compl. ¶ 174; *see also id.* ¶¶ 24, 154, 161, 174) have repeatedly been found insufficient to establish scienter in the Third Circuit. *See Klein,* 147 Fed. Appx. 277-78 ("[I]t is not enough for plaintiffs to merely allege that defendants 'knew' their statements were fraudulent, or that defendants 'must have known' their statements were false.") (quoting *GSC Partners,* 368 F.3d at 239); *In re Great Atl. & Pac. Tea Co. Inc. Sec. Litig.,* 103 Fed. Appx. 465, 469 (3d Cir. 2004) (same); *Advanta,* 180 F.3d 525 at 539 (same). Such conclusory allegations are particularly ineffective where, as here, the amounts at issue are *de minimis. See Abrams* v. *Baker Hughes Inc.,*

- 18 -

292 F.3d 424, 432 (5th Cir. 2002) (holding that a division's accounting troubles, which resulted in a $32 million restatement, could not be imputed to the executives).

- Plaintiffs' allegations that C&A disregarded certain unprofitable contracts and the condition of the industry, and thereby failed to write down certain assets earlier than it did (Compl. ¶¶ 103-10), is classic "fraud by hindsight" pleading, a technique that has been "long rejected" by the Third Circuit. *Cal. Pub. Employees' Ret. Sys.* v. *Chubb Corp.*, 394 F.3d 126, 158 (3d Cir. 2004); *see also Fidel* v. *Farley*, 392 F.3d 220, 231 (6th Cir. 2004) ("[M]ere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud.") (quoting *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999)).

- Plaintiffs' argument that C&A failed to follow GAAP in certain areas and, from this, an inference can be made establishing scienter (Compl. ¶¶ 92, 98-99, 120) also fails. It is well-settled that allegations of GAAP violations alone do not establish the requisite strong circumstantial evidence of recklessness. "[V]iolations of GAAP, without more, do not constitute circumstantial evidence of recklessness." *ATI*, 216 F. Supp. 2d at 438 (citing *Burlington*, 114 F.3d at 1421-22); *see also In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 150 (3d Cir. 2004) (complaint that failed to allege how defendants were involved in GAAP violations did not state a claim for securities fraud); *In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 430 (D.N.J. 2005) (claim that offered no details of CEO's involvement in company's decision not to record certain asset impairments but rather "merely stat[ed] that [the CEO], as part of [the company's] management, must have known about the alleged fraud because he 'was responsible for the reliability of [the company's] system of internal controls and the accuracy of its financial statements'" was "exactly the kind of conclusory allegation prohibited by the PSLRA mandate").

C.    **The Complaint Should Be Dismissed for Failure to Adequately Plead Loss Causation.**

To recover damages under Section 10(b), a plaintiff must adequately plead loss causation. *See Dura Pharm., Inc.* v. *Broudo*, 544 U.S. 336, 338 (2005); *Berckeley Inv. Group, Ltd.* v. *Colkitt*, 455 F.3d 195, 222-23 (3d Cir. 2006). To plead loss causation, a plaintiff must demonstrate an economic loss *and* "that the untruth was in some reasonably direct, or proximate, way responsible for his loss." *McCabe* v. *Ernst & Young, LLP*, --- F.3d ----, No. 06-1318, 2007 WL 2301916, at *8 (3d Cir. July 23, 2007) (quoting *Huddleston* v. *Herman & MacLean*, 640

F.2d 534, 549 (5th Cir. 1981)); *see also Newton* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,*

259 F.3d 154, 177 (3d Cir. 2001) ("If economic loss is evident, then plaintiff must prove a

'sufficient causal nexus between the loss and the alleged [nondisclosure].'") (alteration in

original) (quoting *Semerenko* v. *Cendant Corp.*, 223 F.3d 165, 184 (3d Cir. 2000)). "[T]he

injury averred must proceed directly from the wrong alleged and must not be attributable to some

supervening cause." *McCabe*, 2007 WL 2301916, at *10 (Meskill, J., dissenting) (quoting

*Marbury Mgmt., Inc.* v. *Kohn*, 629 F.2d 705, 716-17 (2d Cir. 1980)). The loss causation

requirement is crucial, so that the party "allegedly responsible for the misrepresentation or

omission does not become an insurer against all the risks associated with that investment." *Id.* at

*5 n.3; *see also Dura*, 544 U.S. at 347-48.   The Complaint does not demonstrate economic loss

by C&A or loss causation.

        1.     **C&A Did Not Suffer an Economic Loss in Connection With Its Purchase or Sale of Securities.**

      As a primary matter, the Section 10(b) claim fails because C&A suffered no

economic loss in connection with the purchase or sale of its own securities.  The Complaint

alleges that the "issuance of securities deepened the Company's insolvency and it would not

have been able to issue the securities had Director and Officer Defendants not engaged in the

fraudulent scheme." (Compl. ¶ 156.)  Apparently, Plaintiffs' theory is that C&A would not have

been able to incur certain debt if "the true financial results of operations and condition of the

Company" had been disclosed and Defendants had not "embark[ed] on a fraudulent accounting

scheme." (Compl. ¶ 39.)

      But Plaintiffs do not allege that C&A was a net purchaser of its own securities

during the time period in which Plaintiffs allege that C&A's financial results were fraudulently

inflated, nor do Plaintiffs allege that C&A incurred an economic loss as a direct result of any

purchase or sale transaction, either by purchasing securities at an inflated price or selling them at

a depressed price. Indeed, the only purchase or sale of securities alleged in the Complaint is the

August 2004 note offering, pursuant to which C&A "sold approximately $415 million in

12.875% Senior Subordinated Notes due 2012."[5] (Compl. ¶ 60.) In that transaction, the

Complaint alleges that the "offering materials used to sell the notes presented materially false

and misleading financial results for the Company as they included financial results that were

artificially inflated . . . ." (*Id.*) That is, C&A obtained more money in that transaction than it

would have absent the alleged fraud.

Assuming, *arguendo*, that this allegation is true, then C&A was not defrauded in

the August 2004 note offering, but benefited by it, *i.e.*, it allegedly sold securities at an inflated

price. Courts have held that in such circumstances, the corporation has no cause of action under

Section 10(b) because it has not suffered an economic loss.

> Because, however, the Company purchased, rather than sold, at the
> fraudulently depressed price, the sellers and not the Company were
> the "victims" of the alleged fraud. Indeed, the immediate effect of
> the Company's purchasing at a price below value was to benefit,
> rather than injure, the Company.
>
> Consequently, the Company has no cause of action under section
> 10(b) predicated solely upon its purchase of its stock at a
> fraudulently lowered price.

*Hoover* v. *Allen*, 241 F. Supp. 213, 227 (S.D.N.Y. 1965); *see also Pepsico, Inc.* v. *W.R. Grace &*

*Co.*, 307 F. Supp. 713, 721 (S.D.N.Y. 1969) ("A claim under 10(b) must relate to fraud on the

---

[5]    While it does not appear from the Complaint that Plaintiffs are alleging that either C&A's
December 2004 factoring agreement with General Electric Capital Corporation (Compl. ¶ 63) or
the April 2005 financing C&A obtained from Credit Suisse First Boston Corporation (Compl.
¶ 70) were purchases or sales of securities, these transactions are irrelevant as to Mr. Stepp as he
was no longer employed by C&A at that time. In any event, the same analysis that applies to the
August 2004 note offering, *i.e.*, that C&A suffered no economic loss in connection with that
transaction, would apply to these transactions as well. (*See, infra*, at 21-23.)

plaintiff.'"); *Cohen* v. *Colvin*, 266 F. Supp. 677, 683 (S.D.N.Y. 1967) (dismissing 10(b) action

where "all indications point to the fact that rather than sustaining damages, the corporation

benefited from the actions of the defendants"); *Polakoff* v. *Del. Steeplechase & Race Ass'n*, 254

F. Supp. 574, 580 (D. Del. 1966) ("[T]he prime prerequisite" for a 10(b) action brought on

behalf of the corporation is "injury to the corporation.").

   Indeed, in a case involving allegations strikingly similar to those here, the Ninth

Circuit dismissed Section 10(b) claims brought against officers and directors by the

reorganization trustee of a corporation that had issued debentures based on financial statements

that allegedly misrepresented its financial condition. *See Rochelle* v. *Marine Midland Grace*

*Trust Co. of N.Y.*, 535 F.2d 523, 527-29 (9th Cir. 1976). As here, the corporation suffered no

loss from its issuance of securities, but plaintiff alleged that the corporation "was nevertheless a

loser because the issuance of debentures was part of a larger deceptive scheme by which the

defendants created a façade of corporate health when, in fact, [the company's] business was

suffering from monetary pernicious anemia." *Id.* at 528. The court rejected that argument,

reasoning that the corporation

> lost nothing in its capacity as an investor on the issuance of its
> debentures. It received full value for the securities; that the
> directors later frittered away the funds on losing . . . ventures does
> not mean that [the company] suffered a loss compensable under the
> federal securities fraud laws. The nexus between the securities
> transaction and the alleged losses due to mismanagement is too
> attenuated in this case to use as a predicate for Section 10(b)
> liability.

*Id.* at 529. Other courts considering similar allegations have agreed. *See Bloor* v. *Carro,*

*Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61-62 (2d Cir. 1985); *In re Investors Funding*

*Corp. of N.Y. Sec. Litig.*, 523 F. Supp. 533, 537-40 (S.D.N.Y. 1980); *Initio, Inc.* v. *Hesse*, 474 F.

Supp. 312, 320 (D. Del. 1979). Here, because C&A "lost nothing in its capacity as an investor on the issuance" of its securities, it has no claim under Section 10(b). *Rochelle*, 535 F.2d at 529.

In attempt to mask their failure to allege an economic loss by C&A in its issuance of securities, Plaintiffs allege in conclusory fashion that the "issuance of the securities deepened the Company's insolvency" (Compl. ¶ 156) and that "the August Senior Note Offering further deepened the insolvency of the Company by providing it with funds it would rapidly lose and be unable to repay due to huge hidden operating losses it already had incurred and was continuing to incur" (Compl. ¶ 60). But these allegations do nothing to resuscitate Plaintiffs' claim.

To begin, a search of federal case law revealed no case where deepening insolvency was accepted as a theory of damages for Section 10(b) or 14(a) claims, as attempted here.[6] Furthermore, a theory of damages based on "deepening insolvency" assumes by its terms that the corporation was insolvent at the time the defendant took the action that allegedly deepened that insolvency. Here Plaintiffs allege no facts that demonstrate that C&A was actually insolvent at the time of the securities transaction at issue. So it follows that the transaction at issue could not have "deepened" C&A's insolvency. Nor do Plaintiffs allege that C&A suffered a loss on any of the transactions alleged in the Complaint. As the United States District Court for the Southern District of New York recently held, "a company's insolvency is not deepened simply by the incurrence of new debt where the company suffers no loss on the

---

[6]     The Third Circuit has stated: "[W]e never held that [deepening insolvency] was a valid theory of damages for an independent cause of action." *In re CitX Corp., Inc.*, 448 F.3d 672, 677 (3d Cir. 2006). The Third Circuit also recently confirmed that no separate cause of action for deepening insolvency exists under Delaware law, and that the few Delaware District and Bankruptcy Court cases recognizing such a cause of action had been superseded. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 385 n.36 (3d Cir. 2007) (citing *Trenwick Am. Lit. Trust* v. *Ernst & Young, L.L.P.*, 906 A.2d 168, 205 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Trust* v. *Billet*, No. 495, 2006, 2007 WL 2317768 (3d Cir. Aug. 14, 2007)).

loan transaction." *In re Parmalat Sec. Litig.*, 06 Civ. 0383, 3109, 2007 U.S. Dist. LEXIS 58881, at *33 (S.D.N.Y. Aug. 8, 2007).

### 2.    Plaintiffs' "Loss" Was Not Proximately Caused by the Alleged Fraud.

Plaintiffs' claims fail for the additional reason that any loss C&A allegedly suffered was not proximately caused by the alleged fraud. Plaintiffs attempt to establish loss causation by merely alleging that C&A "suffered damages in connection with its sale of securities." (Compl. ¶ 157.) But this allegation is insufficient to establish the necessary "causal nexus" between C&A's alleged "damages"—its "deepening insolvency"—and the alleged fraud.

Assuming, *arguendo*, that Plaintiffs have alleged a theory of transaction or "but-for" causation, *i.e.*, that but for the alleged fraudulent accounting scheme which allegedly resulted in artificially-inflated financial results, C&A would not have been able to incur as much debt as it did (Compl. ¶¶ 40-41, 59-60, 70-72, 156), and that but for that debt it would not have become insolvent, Plaintiffs have still failed to plead loss or proximate causation in anything other than the most conclusory terms. While but-for causation in the context of Section 10(b) has been held to satisfy the reliance requirement, it is well-established in the Third Circuit that a Section 10(b) plaintiff must also meet the "more exacting standard" of loss causation, that is, proximate cause. *Berckeley*, 455 F.3d at 222. "[T]he loss causation inquiry typically examines how directly the subject of the fraudulent statement caused the loss, and whether the resulting loss was a foreseeable outcome of the fraudulent statement." *Id.* (quoting *Suez Equity Investors, L.P.* v. *Toronto-Dominion Bank*, 250 F.3d 87, 96 (2d Cir. 2001)). Furthermore, "the loss causation element requires the plaintiff to prove 'that it was the very facts about which the defendant lied which caused its injuries.'" *Id.* (citation omitted) (collecting cases).

Plaintiffs here do not allege that "the very facts about which" defendants allegedly lied caused any injury to C&A. Rather, the Complaint merely states, in the most conclusory

fashion, that the alleged accounting fraud enabled Defendants to make a business decision—the August 2004 note offering and the incurrence of additional debt—with which Plaintiffs, in hindsight, now disagree. This lack of a causal connection between the alleged fraud and a loss by C&A is fatal to Plaintiffs' Section 10(b) claim.

      Moreover, Plaintiffs concede that C&A's demise was the result of a supervening cause—the declining economic conditions in the domestic automotive parts supply industry. (*See* Compl. ¶¶ 38-39, 59.) During the Relevant Period, stock prices of automotive companies were driven down by the combined effects of an economic recession, increasing oil prices, and lagging consumer confidence. (*See* C&A 2003 SEC Form 10-K at 2-4, 19-20, Friedman Decl. Exh. D.) Car sales by the "Big Three" auto manufacturers—GM, Ford and Chrysler—declined precipitously while the costs of key raw materials increased significantly. (*See id.*) As the economic repercussions of these events filtered down through the automotive supply chain, C&A warned investors about the seriousness of these problems.[7] As the graphs below demonstrate, the stock prices of C&A and certain of its publicly traded peer firms (*e.g.*, Dana Corp., Delphi Corp., Tower Automotive, Inc., and Intermet Corp.) all tracked downward because of these worsening conditions.[8]

---

[7]     For example, in its 2003 10-K, C&A discussed "the material impact of general economic conditions in North America and within our industry specifically, [including] the increasingly difficult customer and competitive environment." (*See* Friedman Decl. Exh. D at 19.) Furthermore, C&A also disclosed that (a) "the [production] of the Big 3 OEM's were down 5.7% in 2003 versus 2002," (b) the OEMs were seeking "price decreases . . . in the 2% to 4% range," (c) "pressures may increase if overall economic and industry conditions do not improve," and (d) C&A was experiencing price increases in "resin and nylon feedstocks . . . related to recent short run spikes in the oil market . . . [and a] near tripling of global steel prices." (*See id.* at 19-20.)

[8]     Lists of the closing stock prices of each of these companies for the relevant periods are attached as Exhibits F through J to the Friedman Declaration.











Ultimately, C&A, like many other auto suppliers (*e.g.*, Dana Corp., Delphi Corp.,

Meridian Automotive Systems, Inc., Tower Automotive, Inc., Oxford Automotive, Inc., Intermet

Corp., and Citation Corp.) succumbed to these pressures and sought bankruptcy protection. *See,*

*e.g., In re Dana Corp.*, No. 06-10354 (BRL) (Bankr. S.D.N.Y., filed Mar. 3, 2006); *In re Delphi*

*Corp.*, No. 05-44481 (RDD) (Bankr. S.D.N.Y., filed Oct. 8, 2005); *In re Meridian Auto. Sys.,*

*Inc.*, No. 05-11169 (MFW) (Bankr. D. Del., filed Apr. 26, 2005); *In re Tower Auto., Inc.*, No.

05-10578 (ALG) (Bankr. S.D.N.Y., filed Feb. 2, 2005); *In re Oxford Auto., Inc.*, No. 04-74377

(SWR) (Bankr. E.D. Mich., filed Dec. 7, 2004); *In re Intermet Corp.*, No. 04-67597 (MBM)

- 27 -

(Bankr. E.D. Mich., filed Sept. 29, 2004); *In re Citation Corp.*, No. 04-08130-TOM11 (Bankr.
N.D. Ala., filed Sept. 18, 2004).

It is undisputed that the economic conditions that led to industry-wide
bankruptcies also led to declines in C&A's stock price. Plaintiffs have failed to establish that
C&A's loss was caused by anything other than this general industry downturn. Indeed, Plaintiffs
admit that the loss was substantially affected by C&A's bankruptcy filing (Compl. ¶¶ 38-39, 41),
which was the result of a general collapse of the domestic automotive parts supply industry.
These facts and admissions leave Plaintiffs without the required nexus between the alleged loss
incurred and misrepresentations alleged. As the Third Circuit stated in *McCabe*,

> if false statements are made in connection with the sale of
> corporate stock, losses due to a subsequent decline in the market,
> or insolvency of the corporation brought about by business
> conditions or other factors in no way relate[d] to the
> representations will not afford any basis for recovery.

2007 U.S. App. LEXIS 17467 at *8 (quoting W. Page Keeton, *et al.*, *Prosser & Keeton on the
Law of Torts* § 110 (5th ed. 1984)).

## II.    THE COMPLAINT FAILS TO STATE A SECTION 14(a) CLAIM

To state a claim under Section 14(a), a plaintiff must allege that "(1) a proxy
statement contained a material misrepresentation or omission which (2) caused the plaintiff
injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation
materials, was 'an essential link in the accomplishment of the transaction.'" *Gen. Elec. Co. ex
rel. Levit* v. *Cathcart*, 980 F.2d 927, 932 (3d Cir. 1992) (quoting *Mills* v. *Elec. Auto-Lite Co.*,
396 U.S. 375, 385 (1970)). Because Plaintiffs fail to plead their Section 14(a) claim with
particularity as required by the PSLRA, and fail to plead causation, this claim must be dismissed.

- 28 -

A.    **The Complaint Fails to Meet the Heightened Pleading Requirements of the PSLRA.**

Plaintiffs' election to base the Section 14(a) claims on allegations of fraud comes with the requirement that they meet the heightened pleading standards of the PLSRA. *See, e.g., Chubb*, 394 F.3d at 144-145 (*citing In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1329 (3d Cir. 2002)); *In re JPMorgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 636 (S.D.N.Y. 2005). Here, Plaintiffs' Section 14(a) claim clearly sounds in fraud given that it "incorporate[s] by reference and reallage[s] each" fraud allegation in the Complaint and is expressly based on alleged "omitted material facts" and "false and misleading" statements that allegedly perpetuated a "fraudulent scheme." (Compl. ¶¶ 158, 160-62.)  Therefore, Plaintiffs must, as required in the Third Circuit, "state with particularity all facts on which that belief [that a statement is misleading] is formed" and "provid[e] sufficient documentary evidence and/or a sufficient description of the personal sources of the plaintiff's beliefs." *Chubb*, 394 F.3d at 144, 147.  For all the same reasons Plaintiffs' Section 10(b) claim fails to plead an actionable misstatement or omission by Mr. Stepp (*see* Section I.A.1., *supra*), they have likewise failed to plead a Section 14(a) claim.

B.    **Plaintiffs Fail to Plead Causation.**

In order to plead causation, Plaintiffs must allege that the specific transaction for which authorization was sought via the proxy directly caused their alleged pecuniary injury. *See Cathcart*, 980 F.2d at 933.  Here, the Complaint merely alleges that misleading proxy statements permitted Defendants to continue in their positions and, because of the alleged fraud, C&A "was damaged as a result." (Compl. ¶¶ 162-63.)  Plaintiffs have failed to allege any transaction for which authorization was sought via the proxy statements that caused an injury.  The Complaint

also lacks the "essential link" between the allegedly misleading proxy materials and C&A's alleged loss.

Instead of pleading the requisite link, Plaintiffs challenge a "particular defect in the solicitation materials," *i.e.*, that they didn't reveal that C&A's financials were allegedly incorrect and that C&A was experiencing liquidity issues, which is insufficient to establish causation. As the Third Circuit held in *Cathcart*, "this is precisely the sort of claim that courts have repeatedly found insufficient to satisfy the transaction causation requirement." 980 F.2d at 933. In affirming the district court's dismissal of the Section 14(a) claim, the Third Circuit explained that:

> [T]he mere fact that omissions in proxy materials, by permitting directors to win re-election, *indirectly* lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss. Rather, damages are recoverable under Section 14(a) only when the votes for a specific corporate transaction requiring shareholder authorization, such as a corporate merger, are obtained by a false proxy statement, and that transaction was the direct cause of the pecuniary injury for which recovery is sought.
>
> Thus, the appellees' re-election as directors did not create any cognizable harm because the shareholders' votes did not authorize the transactions that caused the losses.

*Cathcart*, 980 F.2d at 933 (listing cases); *see also Halle & Stieglitz, Filor, Bullard Inc.* v. *Empress Int'l, Ltd.*, 442 F. Supp. 217, 223 (D. Del. 1977) (dismissing Section 14(a) claims where "the only corporate action sought to be authorized was the election of . . . directors . . . and no authorization was sought from the shareholders to approve" the transaction that allegedly caused the loss); *accord, e.g., Bondiett* v. *Novell, Inc.*, No. 97-4054, 1998 WL 166243, at *3 (10th Cir. Apr. 7, 1998) (collecting cases); *Levy* v. *Johnson*, No. 76 Civ. 1178, 1977 WL 931, at *2 (S.D.N.Y. Feb. 15, 1977) (holding that "Plaintiff's argument, that 'but for' the proxy violations the defendant directors would not have been re-elected and could not have subsequently

authorized the alleged improper payments, does not meet the transaction causation standard");

*Limmer* v. *Gen. Tel. & Elec. Corp.*, No. 76 Civ. 1494, 1977 WL 1029, at *2 (S.D.N.Y. Mar. 21,

1977) (rejecting "the notion that every election of corporate directors, if unattended by proxy-

statement confessionals of mismanagement past and contemplated, carries with it the seeds of an

action for damages premised on Section 14(a)"); *Robbins* v. *Banner Indus.*, 285 F. Supp. 758,

762 (S.D.N.Y. 1966) (holding that failure to reveal fraud in a proxy statement is not a basis for a

Section 14(a) claim).

For these reasons and those demonstrated in Section I.C., *supra*, Plaintiffs have

failed to show the requisite causal nexus between the alleged misrepresentations and Plaintiffs'

alleged injury. *See In re DaimlerChrysler AG Sec. Litig.*, 294 F. Supp. 2d 616, 626 (D. Del.

2003).[9]

## III. THE COMPLAINT FAILS TO STATE ANY STATE LAW CLAIMS

Plaintiffs also allege state law claims for breach of fiduciary duty, unjust

enrichment and fraud. [10] Because C&A is incorporated in the State of Delaware (Compl. ¶ 5),

---

[9]    As demonstrated in the Memorandum of Law in Support of Motion to Dismiss by Daniel P. Tredwell, W. Gerald McConnell and Samuel Velenti, III (the "Tredwell Brief"), and the Memorandum of Law in Support of Defendant David R. Cosgrove's Motion to Dismiss the Complaint (the "Cosgrove Brief"), Plaintiffs' Section 14(a) claim is also barred, at least in part, by the applicable statute of limitations. This and all other arguments contained in the Tredwell Brief and the Cosgrove Brief are hereby incorporated by reference.

[10]    Because, as demonstrated above, Plaintiffs' federal claims should be dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state claims and dismiss them as well. *See* 28 U.S.C. § 1367(c)(3) (2007); *Borough of W. Miflin* v. *Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."); *Robyn Meredith, Inc.* v. *Levy*, 440 F. Supp. 2d 378, 387 (D.N.J. 2006) ("[T]he Court is mindful of the well-settled guidance from the Third Circuit that where . . . the federal claims are dismissed, the Court . . . ordinarily should refrain from exercising pendant jurisdiction in the absence of extraordinary circumstances.").

Delaware law applies to these claims. *See In re Gen. Motors Class E Stock Buyout Sec. Litig.*,
694 F. Supp. 1119, 1131 (D. Del. 1988) (citing *CTS Corp.* v. *Dynamics Corp. of Am.*, 481 U.S.
69, 107 (1987)). For the reasons set forth below, each of these claims should be dismissed.[11]

### A.   Breach of Fiduciary Duty (Third Claim)

Delaware recognizes two fiduciary duties: the duty of care and the duty of
loyalty. No claim can be brought against Mr. Stepp for breach of the duty of care because
C&A's Restated Certificate of Incorporation protects him from such claims. And Plaintiffs have
failed to plead any claim for breach of the duty of loyalty.

### 1.   Mr. Stepp is Exempt from Claims for Breach of the Duty of Care.

Delaware corporate law permits a corporation in its incorporation papers to
provide an exculpatory provision that exempts its directors from liability for breach of fiduciary
duty of care claims. 8 Del. C. § 102(b)(7) (2007).[12] In *Arnold* v. *Soc'y for Sav. Bancorp, Inc.*,
the Delaware Supreme Court held that a company's certificate of incorporation—which provided
that no director could be liable for breach of fiduciary duty, except for breach of the duty of
loyalty, for bad-faith acts or omissions, or for acts involving intentional misconduct—"shield[ed]
the individual defendants from personal liability." 650 A.2d 1270, 1273, 1286 (Del. 1994)
(rejecting breach of fiduciary duty claims based on alleged omissions or misrepresentations in

---

[11]    Also, as demonstrated in the Tredwell Brief, Plaintiffs state law claims must be dismissed
pursuant to the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. § 78bb
("SLUSA").

[12]    Section 102(b) states that "the certificate of incorporation may . . . contain . . . [a]
provision eliminating or limiting the personal liability of a director to the corporation or its
stockholders for monetary damages for breach of fiduciary duty as a director, provided that such
provision shall not eliminate or limit the liability of a director: (i) For any breach of the director's
duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith
or which involve intentional misconduct or a knowing violation of law." § 102(b)(7).

the company's proxy statements). C&A's Restated Certificate of Incorporation, adopted

pursuant to Section 102(b), expressly exempts the directors from such liability. (Restated

Certificate of Incorporation of Collins & Aikman Corporation, Article Eighth (Friedman Decl.

Exh. K.))[13] This is fatal to Plaintiffs' claim of breach of fiduciary duty of care as to Mr. Stepp.

> ### 2. The Complaint Fails to State a Claim Under Any Exception to the Exculpatory Provision.

While Section 102(b) expressly permits a corporation to provide an exculpatory

clause for breach of fiduciary duty of care claims, it also provides four exceptions: "(i) [f]or any

breach of the director's duty of loyalty to the corporation or its shareholders; (ii) for acts or

omissions not in good faith or which involve intentional misconduct or a knowing violation of

the law; (iii) under § 174 of this title [for unlawful dividend payments or stock purchases]; or (iv)

for any transaction from which the director derived an improper personal benefit." § 102(b)(7).

Plaintiffs make no attempt to plead exceptions under subsections (iii) or (iv). Plaintiffs' attempts

to plead either a breach of a duty of loyalty or intentional misconduct fail as matter of law.

> ### a. The Complaint Fails to State a Claim for Breach of the Duty of Loyalty.

Plaintiffs have attempted to plead a breach of the duty of loyalty by alleging (1) a

failure to disclose and (2) a failure of oversight. (Compl. ¶¶ 25-27, 77.) As shown below, the

vague allegations of the Complaint are insufficient to sustain such claims.

---

[13]    This Court may take judicial notice on this motion to dismiss of provisions of C&A's Restated Certificate of Incorporation. *See, e.g., In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995); *In re Wheelabrator Techs. Inc. S'holders Litig.*, C.A. No. 11496, 1992 WL 212595, at *11-12 (Del. Ch. Sept. 1, 1992).

**Alleged Failure to Disclose:** With allegations of a failure to disclose, the duty implicated depends on the context of the allegedly omitted disclosures.[14] Only outside of the proxy context, where no shareholder decision is being sought, is a duty of loyalty implicated, although the pleading requirements in that situation are even more stringent than the Rule 9(b) requirements for common law fraud. *See Metro Commc'n*, 854 A.2d at 158. A breach of the duty of loyalty may be stated where "one . . . pleads that directors deliberately omitted information from a communication with . . . stockholders under circumstances that suggest an intent to mislead the stockholders." *See Jackson Nat'l Life Ins. Co.* v. *Kennedy*, 741 A.2d 377, 389 (Del. Ch. 1999). In this context, Plaintiffs must show that directors "*knowingly* disseminate[d] false information." *Metro Commc'n*, 854 A.2d at 157-58 (citing *Malone* v. *Brincat*, 722 A.2d 5, 9 (Del. 1998)) (emphasis added). "This level of proof is similar to, but even more stringent than, the level of scienter required for common law fraud." *Id.* at 157-58. While the Complaint attempts to allege a "fail[ure] to disclose" (Compl. ¶ 77), it does not allege that Mr. Stepp (or any other Individual Defendant) "knowingly" or "deliberately" disseminated false information with "intent to mislead the stockholders." *Jackson*, 741 A.2d at 389. At most, the Complaint alleges that, because of their positions and access to information, the Individual Defendants "knew of . . . [C&A's] operations and finances, as well as accounting practices,"

---

[14]    Where shareholders are being asked to make a discretionary decision (*i.e.*, the proxy context), a failure to disclose implicates a duty of care. *See Zirn* v. *VLI Corp.*, 681 A.2d 1050, 1062 (Del. 1996). Here, Plaintiffs allege, among other things, that "Defendants caused Collins & Aikman to file and disseminate to its shareholders materially false and misleading Proxy Statements which failed to disclose that the Company was reporting financial results that were artificially inflated by . . . improper accounting practices." (Compl. ¶ 77.) Because the alleged failure to disclose is in the proxy context, it only implicates the duty of care and therefore falls within the ambit of the protection of Section 102(b)(7) and is not actionable. *See, e.g., Metro Commc'n Corp. BVI* v. *Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121,156-57 (Del. Ch. 2004); *Zirn*, 681 A.2d at 1062.

"knew the true facts . . . regarding [C&A's] business and finances had not been disclosed and were being concealed," and "participated in the issuance and/or review of false and/or misleading statements." (Compl. ¶ 27.) For the same reasons stated above (*see, supra,* at 18-19), these bald assertions do not meet the heightened pleading standard of Rule 9(b), much less the even higher pleading standard applicable here. *See Rockefeller,* 311 F.3d at 215-16.

**Alleged Failure of Oversight:** Plaintiffs also allege that the Individual Defendants were "required . . . to exercise reasonable and prudent supervision over management, policies, practices and controls of the business and financial affairs of Collins & Aikman." (Compl. ¶ 26.) Plaintiffs' claims, known in Delaware as "*Caremark* claims," are "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l Inc. Derivative Litig.,* 698 A.2d 959, 967 (Del. Ch. 1996). In *Stone* v. *Ritter,* the Delaware Supreme Court held that, in order to hold directors liable for failure of oversight, a plaintiff must plead that "(a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." 911 A.2d 362, 370 (Del. 2006). "In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations," *i.e.,* "demonstrating a conscious disregard for their responsibilities." *Id.; see also In re Walt Disney Co. Derivative Litig.,* 825 A.2d 275, 289 (Del. Ch. 2003) (plaintiffs must show that the directors "consciously and intentionally disregarded their responsibilities, adopting a 'we don't care about the risks' attitude"); *Guttman* v. *Huang,* 823 A.2d 492, 507 (Del. Ch. 2003) (plaintiffs must plead specific facts showing, for example, "that the company lacked an audit committee" or "had an audit committee that met only

sporadically and devoted patently inadequate time to its work"). Under this standard, a "bad outcome" cannot be equated with "bad faith." *Stone*, at 373. Indeed, the Delaware Supreme Court explained, the "test of liability—lack of good faith as evidenced by a sustained or systematic failure of a director to exercise reasonable oversight—is quite high." *Id.* at 372. As demonstrated in Section I.B., *supra*, the Complaint falls far short of this standard and, therefore, the breach of the duty of loyalty exception to the exculpatory clause does not apply.

### b.    Conclusory Allegations of Intentional Misconduct or the Absence of Good Faith are Legally Insufficient.

Plaintiffs' allegation that "[t]he conduct of the Director and Officer Defendants . . . involves fraudulent misconduct—a knowing, intentional and culpable violation of their obligations as officers/directors of Collins & Aikman and [an] absence of good faith on their part" (Compl. ¶ 24) is grounded on allegations of fraud and, as such, must meet the heightened pleading requirement of Rule 9(b) to survive a motion to dismiss. *See York Linings* v. *Roach*, No. 16622-NC, 1999 WL 608850, at *3 (Del. Ch. July 28, 1999) (dismissing portion of breach of fiduciary duty claim for failure "to allege the essential elements of fraud with the particularity necessary to survive a Rule 12(b)(6) motion to dismiss"). For the reasons stated in Section III.C., *infra*, the Complaint fails to plead the essential elements of fraud with particularity. Therefore, the "intentional misconduct" or "bad faith" exception to the exculpatory clause does not apply.

### B.    Unjust Enrichment (Fourth Claim)

To state a claim of unjust enrichment, a complaint must allege "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *MetCap Sec. LLC* v. *Pearl Senior Care, Inc.*, C.A. No. 2129-VCN, 2007 WL 1498989, at *5 (Del. Ch. May 16, 2007)

- 36 -

(citing *Schock* v. *Nash*, 732 A.2d 217, 232 (Del. 1999)). Mere conclusory allegations of benefit will not suffice to state a claim. *Id.* at *6, n.50 (dismissing claims of unjust enrichment against defendants for whom no non-conclusory facts were alleged suggesting how any of them benefited).

The Complaint alleges that the Individual Defendants and Heartland "benefited by engaging in the conduct described above" (Compl. ¶ 169), but does not explain how they benefited, *i.e.*, how they were enriched. It follows that, having failed to show enrichment, Plaintiffs have not shown, because they cannot show, a relationship between an enrichment and an impoverishment. These failings are fatal to Plaintiffs' claim for unjust enrichment.

## C.    Fraud (Fifth Claim)

The elements of the common law fraud claim, which are virtually identical to the elements for a Section 10(b) action, include "(1) the defendants falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendants knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendants intended to induce the plaintiff to act or refrain from acting; [and] (4) the plaintiff acted in justifiable reliance on the representation . . . ." *Trenwick*, 906 A.2d at 207. Here, Plaintiffs' allegations fail to satisfy all four of these requirements.

### 1.    The Complaint Fails to Plead With Particularity Any Misrepresentations or Knowledge by Mr. Stepp.

As with Section 10(b) claims, common law fraud claims must be pleaded with particularity, including the allegations of material misrepresentations or omissions and knowledge. *See id.* at 207-08.

- As discussed in section I.A.1., *supra*, the complaint fails to identify any actionable misstatement or omission by Mr. Stepp. The cursory allegation that "[f]rom 2001 to May 2005, the Director and Officer Defendants made misrepresentations of material facts to Collins & Aikman's Board of Directors

and Audit Committee relating to the true financial condition of Collins & Aikman" (Compl. ¶ 172) does not come close to meeting the particularity requirement for a fraud claim. *See Advanta*, 180 F.3d at 534; *Trenwick*, 906 A.2d at 207-208. Furthermore, allegations of misrepresentations by "Director and Officer Defendants" without identifying the person making the representation fails to provide the requisite particularity. *See Metro*, 854 A.2d at 146 n.48 (stating that "oblique references to false statements made by 'each defendant' will not serve to attribute misrepresentations to all the defendants in the action").

- The Complaint also fails to plead with particularity that Mr. Stepp knew the alleged statements were false or was recklessness as to their truth. As demonstrated in section I.B., *supra*, the Complaint lacks any such specific scienter allegations as to Mr. Stepp. The allegation that "[t]he conduct of the Director and Officer Defendants, whether intentional, reckless, grossly negligent or mistaken, constituted fraud" (Compl. ¶ 173), is merely conclusory and fails to plead intentional or reckless behavior. (*See* section I.B.2., *supra*.) And allegations of negligence or mistake will not suffice to state a claim for fraud. *See Metro*, 854 A.2d at 143 (stating that the pleading scienter for fraud requires acting either "knowingly, intentionally or with reckless indifference to the truth").

### 2. No Allegation is Made That Alleged Misrepresentations Were Intended to Induce C&A to Act or Refrain From Acting.

A claim of common law fraud must include particularized allegations sufficient to demonstrate that "the defendants intended to induce the plaintiff to act or refrain from acting." *Trenwick*, 906 A.2d at 207. The Complaint contains no such allegations.

### 3. C&A Through the Board of Directors Could Not Have Justifiably Relied on the Alleged Misrepresentations by Its Directors.

Plaintiffs' fraud claim also fails for lack of allegations of justifiable reliance. Here, Plaintiffs allege both that C&A through its board relied on alleged (unspecified) misrepresentations and that the directors were aware of the actual state of affairs (Compl. ¶¶ 27, 175). In *Trenwick*, the litigation trust of bankrupt Trenwick America made this precise argument, which was rejected by Vice Chancellor Strine.

The Trenwick America litigation trust alleged that the directors had committed fraud on Trenwick America by concealing and misstating, among other things, its true financial

- 38 -

condition. *Id.* at 186-87, 209.  The trust further alleged, as a necessary element of a fraud claim,

that Trenwick America relied to its detriment on these alleged misstatements and omissions.  *Id.*

In holding that the complaint failed to state a fraud claim, Vice Chancellor Strine reasoned that,

because "Trenwick America's board of directors knew the true facts about all the issues said to

have been represented," the alleged reliance "ma[de] no sense" when the company "would not

have been relying to its detriment on the fraudulent statement[s] because its [directors] were

aware of the actual state of affairs." *Id.* at 211-12.   The same allegations have been made here

and, for the same reasons, are insufficient to sustain a claim for fraud.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety as to

Mr. Stepp with prejudice.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: */s/ Richard L. Horwitz*

Gandolfo V. DiBlasi            Richard L. Horwitz (2246)
Karen Patton Seymour       Peter J. Walsh, Jr. (2437)
Stacey R. Friedman          Hercules Plaza, 6th Floor
David E. Swarts              1313 N. Market Street
SULLIVAN & CROMWELL LLP   Wilmington, Delaware  19801
125 Broad Street             Tel:  (302) 984-6000
New York, New York  10004     Fax:  (302) 658-1192
Tel:  (212) 558-4000         rhorwitz@potteranderson.com
                         pwalsh@potteranderson.com

Dated:  September 14, 2007

*Attorneys for Defendant J. Michael Stepp*

818997 / 33280

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on September 14, 2007, the attached document

was electronically filed with the Clerk of the Court using CM/ECF which will send notification

to the registered attorney(s) of record that the document has been filed and is available for

viewing and downloading.

Joseph A. Rosenthal
Carmella P. Kenner
Rosenthal, Monhait & Goddess, P.A.
919 N. Market Street, Suite 1401
Wilmington, DE  19899

Thomas P. Preston
Blank Rome LLP
1201 North Market Street, Suite 800
Wilmington, DE  19801-4226

Thomas G. Macauley
Zuckerman Spaeder LLP
919 Market Street, Suite 1705
P. O. Box 1028
Wilmington, DE  19899

Andrew Auchincloss Lundgren
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391

Michael J. Maimone
Joseph Benedict Cicero
Edwards Angell Palmer & Dodge LLP
919 North Market Street, Suite 1500
Wilmington, DE  19801

Peter B. Ladig
Stephen B. Brauerman
The Bayard Firm
222 Delaware Avenue, Suite 900
P. O. Box 25130
Wilmington, DE  19899

Vernon R. Proctor
Proctor Heyman LLP
1116 West Street
Wilmington, DE  19801

James L. Holzman
J. Clayton Athey
Stephen L. Ascher
Prickett, Jones & Elliott, P.A.
1310 King Street
P. O. Box 1328
Wilmington, DE  19899

Anne Churchill Foster
Robert J. Stearn, Jr.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE  19899

I further certify that on September 14, 2007, I have Federal Expressed the documents to the following person(s):

Samuel H. Rudman
Lerach Coughlin Stoia Geller Rudman &
    Robbins LLP
58 South Service Road, Suite 200
Melville, NY 11747

Joseph O. Click
Blank Rome, LLP
600 New Hampshire Ave., N.W.
Washington, DC 20037

Carl S. Kravitz
Zuckerman Spaeder LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036

Stephen L. Ascher
Jenner & Block LLP
919 Third Avenue, 37th Floor
New York, NY 10022

Joseph De Simone
Mayer Brown LLP
1675 Broadway
New York, NY 10019

Jonathan Lerner
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

Seth L. Friedman,
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022

Andrew Weissman
Wilmer Cutler Pickering Hale and
    Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, DC 20006

Craig A. Stewart
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022

Michael Shapiro
Carter Ledyard & Milburn LLP
2 Wall Street
New York, NY 10005

Richard M. Strassberg
Goodwin Proctor LLP
599 Lexington Avenue
New York, NY 10022

Lynn Brimer
Strobl & Sharp, P.C.
300 East Long Lake Road, Suite 200
Bloomfield Hills, MI 48304

Thomas G. Rafferty
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019

By:  */s/ Richard L. Horwitz*
Richard L. Horwitz (#2246)
Peter J. Walsh (#2437)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
pwalsh@potteranderson.com

818858 / 33280

3