UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COLLINS & AIKMAN CORPORATION and COLLINS & AIKMAN PRODUCTS CO., as Debtors in Possession,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID A. STOCKMAN, J. MICHAEL STEPP, BRYCE M. KOTH, DAVID R. COSGROVE, PAUL C. BARNABA, ROBERT A. KRAUSE, JOHN A. GALANTE, CHARLES E. BECKER, ELKIN B. MCCALLUM, THOMAS E. EVANS, CYNTHIA HESS, DANIEL P. TREDWELL, W. GERALD MCCONNELL, SAMUEL VALENTI, III, HEARTLAND INDUSTRIAL PARTNERS, L.P., HEARTLAND INDUSTRIAL ASSOCIATES, L.L.C., HEARTLAND INDUSTRIAL GROUP, L.L.C., PRICEWATERHOUSECOOPERS LLP and KPMG LLP,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 07cv265-*** |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DANIEL P. TREDWELL, W. GERALD McCONNELL AND SAMUEL VALENTI, III**

Robert S. Saunders (Bar I.D. No. 3027)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
Tel: (302) 651-3000
Fax:  (302) 651-3001

Of counsel:
Jonathan J. Lerner
Lea Haber Kuck
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ......................................................................1

SUMMARY OF THE ARGUMENT ...........................................................................................2

STATEMENT OF FACTS ...........................................................................................................6

    A.      The Parties ..........................................................................................................6

    B.      The Alleged Accounting Improprieties at C&A .................................................8

ARGUMENT ............................................................................................................................10

I. THE COMPLAINT VIOLATES RULES 8 AND 9 ................................................................10

    A.      The Complaint Does Not Provide the Outside Directors With Fair Notice
           of C&A's Claims as Required by Rule 8 ............................................................10

    B.      The Complaint Does Not Plead Any Claims With Particularity as
           Required by Rule 9(b) ........................................................................................13

II. THE COMPLAINT  FAILS TO STATE A CLAIM UNDER SECTION 10(b) ......................16

    A.      The PSLRA's Pleading Requirements Are Stingent ...........................................16

    B.      C&A Does Not Allege that the Outside Directors Actually Made Any
           Misrepresentations ............................................................................................17

    C.      C&A Fails to Plead Any Facts From Which a Strong Inference of Scienter
           Can Be Drawn .....................................................................................................18

    D.      C&A Has Not Pled Reliance ................................................................................21

    E.      C&A Has Not Pled Economic Loss or Loss Causation .......................................22

III. THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 14(a) ......................24

    A.      The Section 14(a) Claim Is Not Pled With Particularity .......................................24

    B.      C&A Has Not Pled and Cannot Plead an Essential Link Between the
           Proxy Statements and Any Alleged Injury ...........................................................25

    C.      C&A Does Not Have Standing to Pursue a 14(a) Claim .......................................26

i

       D.     Portions of Plaintiffs' 14(a) Claim Are Barred by the Statute of Limitations........27

IV. ALL OF THE STATE LAW CLAIMS MUST BE DISMISSED UNDER SLUSA ..............27

V. THE COMPLAINT FAILS TO STATE A CLAIM FOR FRAUD ........................................29

VI. THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY
     DUTY ..................................................................................................................................31

VII. THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT ..........34

CONCLUSION................................................................................................................................36

# TABLE OF CITATIONS

## CASES

**Page**

7547 Corp. v. Parker & Parsley Development Partners, L.P.,
   38 F.3d 211 (5th Cir. 1994) .........................................................................26

In re Advanta Corp. Securities Litigation,
   180 F.3d 525 (3d Cir. 1999).......................................................18, 19, 20, 21

In re Alpharma Inc. Securities Litigation, 372 F.3d 137 (3d Cir. 2004) .....................20, 21

Aronson v. Lewis, 473 A.2d 805 (Del. 1984).......................................................32

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007)...............................6, 10

Bloor v. Carro, Spanbock, Londin, Rodmin & Fass, 754 F.2d 57 (2d Cir. 1985).............22

Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502 (7th Cir. 2007) .........................13

Brehm v. Eisner, 746 A.2d 244 (Del. 2000) .............................................................32, 34

Brug v. Enstar Group, Inc., 755 F. Supp. 1247 (D. Del. 1991) .......................17, 29, 30, 31

California Public Employees' Retirement System v. Chubb Corp.,
   394 F.3d 126 (3d Cir. 2004)....................................................................13, 14

In re Caremark International Inc. Derivative Litigation,
   698 A.2d 959 (Del. Ch. 1996)......................................................................12

Christensen v. WMA Consumer Services, Inc.,
   No. Civ. A. 03-1545, 2003 WL 22174240 (E.D. La. Sept. 5, 2003) ...........................15

In re CitX Corp., 448 F.3d 672 (3d Cir. 2006) ...............................................................23

Communications Workers of America Plan for Employees Pensions & Death
   Benefits v. CSK Automobile Corp.,
   No. CV06-1503-PHX-DGC, 2007 WL 951968 (D. Ariz. Mar. 28, 2007) .................18

Conley v. Gibson, 355 U.S. 41 (1957).............................................................10

Continuing Creditors' Committee of Star Telecommunications Inc. v. Edgecomb,
   385 F. Supp. 2d 449 (D. Del. 2004)...........................................31, 32, 33, 34

Copland v. Grumet, 88 F. Supp. 2d 326 (D.N.J. 1999) .....................................................18

Diceon Electrics, Inc. v. Calvary Partners, L.P., 772 F. Supp. 859 (D. Del. 1991)...........26

Donovan v. ABC-NACO Inc.,
    No. 02 Civ. 1951, 2002 WL 1553259 (N.D. Ill. July 15, 2002) ……………........15

Dura Pharm., Inc. v. Broudo, 544 U.S. 336 (2005) ......................................................11, 22

Egleston v. Heartland Industrial Partners, L.P. et al.,
    No. 2:06-cv-13555 (E.D. Mich.)..................................................................................3

Elnora Kirtley & Hempel (USA), Inc. v. Wadekar,
    No. 05-5383 (JAG), 2006 WL 2482939 (D.N.J. Aug. 25, 2006) ...............................14

Ernst & Ernst v. Hochfelder, 425 U.S. 185 (1976)............................................................18

In re Exxon Mobil Corp. Securities Litigation,
    __ F.3d __, No. 05-4571, 2007 WL 2410129 (3d Cir. Aug. 27, 2007) .......................27

Fink v. Weill, No. 02 Civ. 10250 (LTS)(RLE),
    2005 WL 2298224 (S.D.N.Y. Sept. 19, 2005)............................................................25

Frota v. Prudential-Bache Securities, Inc., 639 F. Supp. 1186 (S.D.N.Y. 1986) ..............13

GSC Partners CDO Fund v. Washington, 368 F.3d 228 (3d Cir. 2004)......................16, 20

General Electric Co. v. Cathcart, 980 F.2d 927 (3d Cir. 1992) .........................................25

Glassman v. Computervision Corp., 90 F.3d 617 (1st Cir. 1996) ......................................15

Gurfein v. Ameritrade, Inc., 411 F. Supp. 2d 416 (S.D.N.Y. 2006)...................................15

Guttman v. Huang, 823 A.2d 492 (Del. Ch. 2003).......................................................32, 33

Kennilworth Partners L.P. v. Cendant Corp., 59 F. Supp. 2d 417 (D.N.J. 1999)..............15

LaSala v. Bordier et CIE, 452 F. Supp. 2d 575 (D.N.J. 2006) ....................................28, 29

Lane v. Capital Acquisitions & Management Co.,
    No. 04-60602, 2006 WL 4590705 (S.D. Fla. Apr. 14, 2006) .....................................12

Malpiede v. Townson, 780 A.2d 1075 (Del. 2001) .....................................................33, 34

Medina v. Bauer,
    No. 02 Civ. 8837 (DC), 2004 WL 136636 (S.D.N.Y. Jan. 27, 2004)..........................12

iv

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71 (2006) ......................29

MetCap Sec. LLC v. Pearl Senior Care, Inc.,
    No. Civ.A.2129-VCN, 2007 WL 1498989 (Del. Ch. May 16, 2007).........................34

NACCO Industrial, Inc. v. Applica Inc.,
    No. 1:06-CV-3002, 2006 WL 3762090 (N.D. Ohio Dec. 20, 2006) .........................24

In re NAHC, Inc. Securities Litigation, 306 F.3d 1314 (3d Cir. 2002) .......................24, 25

Pacific Electric Wire & Cable Co. v. Set Top International, Inc.,
    No. 03 Civ. 9623 (JFK), 2005 WL 578916 (S.D.N.Y. Mar. 11, 2005) .......................14

In re Providian Finance Corp. ERISA Litigation,
    No. C 01-05027 CRB, 2002 WL 31785044 (N.D. Cal. Nov. 14, 2002).......................12

Roberto's Fruit Market, Inc. v. Schaffer, 13 F. Supp. 2d 390 (E.D.N.Y. 1998) ...............11

Rochelle v. Marine Midland Grace Trust Co. of N.Y. v. Young,
    535 F.2d 523 (9th Cir. 1976) ..............................................................................22

In re Rockefeller Center Properties, Inc. Securities Litigation,
    311 F.3d 198 (3d Cir. 2002)...................................................................6, 16, 17

Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294 (3d Cir. 2005).......................28, 29

Saint-Val v. Domino's Pizza, LLC,
    No. 06-4273(SDW), 2007 WL 2049120 (D.N.J. July 12, 2007)................................11

Salomon Brothers Municipal Partners Fund, Inc. v. Thornton,
    410 F. Supp. 2d 330 (S.D.N.Y. 2006)....................................................................26

Scattergood v. Perelman, 945 F.2d 618 (3d Cir. 1991) ......................................................26

Schock v. Nash, 732 A.2d 217 (Del. 1999) .........................................................................34

Shapiro v. Cantor, 123 F.3d 717 (2d Cir. 1997) .................................................................18

Shurkin v. Golden State Vintners, Inc.,
    No. C 04-3434, 2005 WL 1926620 (N.D. Cal. Aug. 10, 2005)..................................33

Simons v. Cogan, 549 A.2d 300 (Del. 1988).......................................................................29

Stone v. Ritter, 911 A.2d 362 (Del. 2006)...........................................................................31

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499 (2007) ..............................19

Thouret v. Hudner, No. 95 Civ. 1793, 1996 WL 38824 (S.D.N.Y. Feb. 1, 1996) ...........26

Trenwick America Litigation Trust v. Ernst & Young, L.L.P.,
    906 A.2d 168 (Del. Ch. 2006).................................................................................. passim

In re Tyson Foods, Inc. Secs. Litig., 155 Fed. App'x 53,  56 (3d Cir. 2005) ...........17, 18

U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383 (3d Cir. 2002)...................................24

United States ex rel. Garst v. Lockheed-Martin Corp.,
    328 F.3d 374 (7th Cir. 2003) ................................................................................10, 11

Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083 (1991)..............................24, 25, 26

Virginia M. Damon Trust v. North Country Finance Corp.,
    325 F. Supp. 2d 817 (W.D. Mich. 2004) ................................................................27

Vladimir v. Deloitte & Touche LLP,
    No. 95 Civ. 10319 (RPP), 1997 WL 151330 (S.D.N.Y. Mar. 31, 1997).....................15

In re Walt Disney Co. Derivative Litigation, 907 A.2d 693 (Del. Ch. 2005)..............32, 34

Westinghouse Electric Corp. v. Franklin, 993 F.2d 349 (3d Cir. 1993)...........................27

**STATUTES**

15 U.S.C. § 78bb(f)(1) ...............................................................................................1, 27

15 U.S.C. § 78bb(f)(5)…………………………………......................................…………....28

15 U.S.C. § 78u-4(b)(1) .....................................................................................16, 17, 25

15 U.S.C. § 78u-4(b)(2) ...........................................................................................19, 25

15 U.S.C. § 78bb(f)(5)(B) .............................................................................................28

Fed. R. Civ. P. 8.................................................................................................. passim

Fed. R. Civ. P. 9(b) ............................................................................................. passim

**MISCELLANEOUS**

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §
  1363 (3d ed. 2004)................................................................................................6

Defendants Daniel P. Tredwell, W. Gerald McConnell and Samuel Valenti, III (collectively, the "Outside Directors") respectfully submit this memorandum of law in support of their motion, pursuant to Rules 8, 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, 15 U.S.C. § 78u-4(b)(1)-(2) (enacted as part of the Private Securities Litigation Reform Act of 1995 ("PSLRA")), and 15 U.S.C. § 78bb(f)(1) (enacted as part of the Securities Litigation Uniform Standards Act ("SLUSA")), to dismiss all claims for relief alleged against them in the Complaint with prejudice.

## NATURE AND STAGE OF THE PROCEEDINGS

This is an action brought by Collins & Aikman Corporation (together, with Collins & Aikman Products Co., "C&A" or the "Company"), a bankrupt entity, against its former officers, directors, outside accountants, and one of its significant stockholders. Painting with a broad brush and asserting a hodgepodge of contradictory theories, C&A contends that it made misstatements over a period of three years for which it seeks to hold the defendants liable.

Despite their disparate relationships with the Company, the Complaint entirely fails to distinguish among the nineteen defendants. Each of the Outside Directors is mentioned by name in only two paragraphs – once in a paragraph reciting the individual's name and the dates he held his position as a C&A director (Compl. ¶¶ 20-22), and once in a paragraph alleging that the individuals are all Senior Managing Directors of Heartland Industrial Partners, L.P. ("Heartland LP") (id. ¶ 28). Although they are cavalierly lumped into a broad group labeled "Director and Officer Defendants," none of the Outside Directors ever served as an officer of C&A or was ever an employee of C&A. Ignoring the fundamental legal differences between the responsibilities of members of C&A's management and its outside directors, the Complaint asserts claims of securities fraud, breach of fiduciary duty, unjust enrichment, and common law

fraud against the Outside Directors without any supporting factual allegations connecting them to the alleged wrongdoing.

C&A's discredited pleading tactic of using the terms "Defendants" and "Director and Officer Defendants" throughout the Complaint, instead of apprising each defendant of what it is that he is alleged to have done wrong, and the vague and contradictory nature of its allegations, are especially inexcusable in this case. Unlike a typical plaintiff, C&A has had years to investigate its claims and limitless access to C&A documents and personnel. Indeed, an extensive year-long investigation into the very issues raised in the Complaint was conducted by the audit committee of C&A's board of directors in cooperation with the United States Securities and Exchange Commission ("SEC"). Standing alone, the failure to plead specific allegations of actionable conduct by the Outside Directors warrants summary dismissal of the Complaint.

Because the Complaint fails to satisfy the applicable pleading standards or, for the reasons set forth below, to plead even the most basic elements of the claims asserted against the Outside Directors, it must be dismissed.

## SUMMARY OF THE ARGUMENT

1.     Despite C&A's unfettered access to documents and witnesses relevant to its claims, the Complaint fails to satisfy the applicable pleading standards and simultaneously violates both Rules 8 and 9 of the Federal Rules of Civil Procedure:

(a)     The generic references to "Defendants" and "Director and Officer Defendants" in the Complaint do not give the Outside Directors notice of the claims against them or of what each of them is alleged to have done wrong. Such ambiguous pleading fails to satisfy the pleading requirements of Rule 8.

(b)     At the same time, Rule 9(b) requires all averments of fraud to be pled with particularity. Here, although each of the claims asserted against the Outside Directors

2

sounds in fraud, C&A has not pled any specifics regarding their participation in the alleged fraud, thus failing to satisfy the pleading requirements of Rule 9(b).

> (c) Because the plaintiffs here are the companies at which the alleged misconduct occurred, and as a result, have access to all of the facts relevant to the claims, the pleading requirements of the Federal Rules of Civil Procedure and, with respect to the Section 10(b) claim, the PSLRA should be applied with particular vigor.

> 2. For its novel claim under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), C&A attempts to recover for its creditors unspecified damages for misrepresentations it made to its stockholders, who have filed their own separate lawsuit against many of the same defendants.[1] The allegations of the Complaint simply do not make out the elements of a Section 10(b) claim at all, let alone with the exacting specificity required by the PSLRA:

> (a) C&A does not identify any allegedly false statements made by the Outside Directors.

> (b) C&A does not plead facts giving rise to a strong inference of scienter because it fails to plead any facts whatsoever supporting its conclusory allegation that the Outside Directors knew that C&A's statements were false.

> (c) C&A does not plead sufficiently that it relied on any allegedly false statement made by the Outside Directors. Indeed, C&A alleges that the Director and Officer Defendants – and therefore C&A itself – were aware of the "true facts" behind the alleged misrepresentations.

---

[1] See Egleston v. Heartland Industrial Partners, L.P. et al., No. 2:06-cv-13555 (E.D. Mich.).

(d)    C&A has not alleged adequately any economic loss attributable to the Outside Directors, much less a causal connection between any misrepresentation to its stockholders and any loss to C&A. Indeed, although the relief C&A seeks from the Outside Directors is return of "remuneration" paid to them by C&A, the Outside Directors received no compensation at all from C&A.

3.    Likewise, C&A does not plead a claim under Section 14(a) of the Exchange Act based on misrepresentations it allegedly made in its own proxy statements:

(a)    C&A fails to plead an "essential link" between the proxy statements at issue and the alleged injury. As a matter of law, C&A's allegations that misstatements in the proxy statements caused certain individuals to be elected as directors, which then led to the perpetration of the alleged fraud, are too attenuated to establish an essential link and, in any event, because non-defendant stockholders held less than 50% of C&A's outstanding stock, any such statements could have had no effect on the outcome of the votes pursuant to the proxy statements.

(b)    C&A does not have standing to bring a claim pursuant to Section 14(a) because it seeks to recover on behalf of individuals and entities who were not entitled to vote based on C&A's proxy statements.

(c)    The claims relating to C&A's 2002 proxy statement – which was filed more than three years before C&A filed for bankruptcy protection – are barred by the statute of limitations.

4.    SLUSA preempts all of C&A's state law claims because the Complaint, asserted on behalf of all of C&A's creditors, purports to allege misrepresentations or omissions in connection with the purchase or sale of securities.

4

5.      Even if the state law claims could survive SLUSA – and they cannot – C&A has not pled facts making out the basic elements of these claims.  The common law fraud claim asserted against the Outside Directors fails for the same reasons as the Section 10(b) claim.  Indeed, C&A's allegations are illogical and contend that C&A's directors and officers made misrepresentations to themselves and then relied upon their own misrepresentations.  Moreover, C&A makes no attempt to plead scienter and, indeed, essentially concedes it cannot plead scienter by alleging that the defendants' actions may have been "mistaken."  (See Compl. ¶ 173.)

6.      C&A's breach of fiduciary duty claim fails because the Complaint does not sufficiently allege how the Outside Directors breached their fiduciary duties:

(a)      With respect to the duty of loyalty, C&A does not allege any transaction that could form the basis for such a claim, let alone that the Outside Directors were interested or lacked independence in approving such a transaction.

(b)      C&A does not allege that the Outside Directors acted with gross negligence during any decisionmaking process; nor does C&A identify any excessively one-sided exchanges sufficient to base its claim on a breach of duty of care or corporate waste theory.  In any event, the exculpation clause in C&A's certificate of incorporation bars C&A from proceeding on these theories.

7.      Finally, the unjust enrichment claim against the Outside Directors fails because C&A has not alleged the existence of any enrichment by the Outside Directors, unjust or otherwise.

5

## STATEMENT OF FACTS[2]

A.     **The Parties**

1.     **Plaintiffs**

Collins & Aikman Corporation and Collins & Aikman Products Co. purport to bring this action as debtors-in-possession. According to the Complaint, any recovery in this action will be "for the benefit of the creditors of [C&A's] estates." (Compl. ¶ 7.) Indeed, following confirmation of C&A's plan of reorganization, C&A admittedly intends to assign the claims asserted in the Complaint to a Litigation Trust Administrator. (Id.) According to the Complaint, C&A's Plan of Reorganization, which has already been confirmed, requires the transfer of all claims to the litigation trust. (See id.) The Plan of Reorganization is expected to become effective shortly and the claims will be transferred at that time.

Prior to its bankruptcy, C&A "was engaged in the design, manufacture and supply of automotive interior components." (Id. ¶ 36.) C&A's products were sold to original equipment manufacturers such as General Motors, Ford and Chrysler. (Id.) Following a precipitous decline in the financial condition of the automotive sector generally, C&A filed for protection under Chapter 11 of the Bankruptcy Code on May 17, 2005. (Id. ¶ 74.)

---

[2]     While the well-pled factual allegations of the Complaint are taken as true solely for the purpose of this motion, the Third Circuit has held "that courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint. Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness." In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (citation omitted). See also Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1967-69 (2007); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363 (3d ed. 2004) ("Unsupported conclusions of law can be disregarded. . . . The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading.").

2.    **The Defendants**

(a)    **C&A's Former Officers**

C&A names as defendants nineteen individuals and entities which had various relationships with C&A. Nine of the defendants are individuals who were officers of C&A at various points in time, including David Stockman, C&A's former Chief Executive Officer and Chairman of the Board from 2002 to 2005 (id. ¶ 9); J. Michael Stepp, C&A's former Chief Financial Officer and Vice President (id. ¶ 10); Bryce Koth, another former C&A Chief Financial Officer and a Vice President (id. ¶ 11); John Galante, C&A's former Treasurer (id. ¶ 15); Charles E. Becker, who served briefly as C&A's interim CEO (id. ¶ 16); Thomas E. Evans, C&A's former President and CEO from April 1999 to August 2002 (id. ¶ 18); David Cosgrove, who held various positions in C&A's finance department (id. ¶ 12); Paul Barnaba, who held various purchasing positions (id. ¶ 13); and Robert Krause, a former Vice President and Treasurer and Senior Vice President, Finance and Administration (id. ¶ 14).

(b)    **C&A's Auditors**

C&A also asserts a variety of claims against both PricewaterhouseCoopers LLP and KPMG LLP, which served as C&A's auditors at different times.

(c)    **C&A's Outside Directors**

C&A also names as defendants five individuals who served only as outside directors of C&A. Defendants Daniel Tredwell and W. Gerald McConnell served as directors of C&A from February 2001 until May 10, 2006. (Id. ¶¶ 20-21.) Samuel Valenti served as a director from February 2001 until September 30, 2004. (Id. ¶ 22.) These individuals held no management positions at C&A and did not serve on C&A's audit committee. The Complaint contains no factual allegations concerning these individuals specifically, other than the dates of

their board service and that all are Senior Managing Directors of Heartland LP, which is alleged
to have been a significant C&A stockholder. (Id. ¶ 28.)

### 3.    Heartland

Finally, C&A names as a defendant Heartland LP, which it alleges is a $1 billion
private equity firm which invested in C&A, and its two affiliated entities. (Id. ¶¶ 28-29.)
According to the Complaint, at least 30% of Heartland LP's total investments were in C&A (by
the Complaint's allegations, $300 million). (Id. ¶ 28.) There are no allegations that any
Heartland entity ever sold any of its C&A stock.

## B.    The Alleged Accounting Improprieties at C&A

### 1.    Accounting in Connection with C&A's Acquisitions

In 2001, C&A grew its operations through a series of acquisitions that C&A, in
hindsight, apparently considers unwise. (See id. ¶¶ 44-47.) While C&A does not appear to
contend that these acquisitions were improper in and of themselves, it alleges that certain
unspecified persons engaged in accounting improprieties in connection with some of these
transactions. (Id. ¶¶ 48-52.) In particular, C&A asserts that unspecified persons improperly
recorded certain rebates and overpaid for certain machinery. (Id.) Not surprisingly, there are no
allegations that the Outside Directors were in any way involved in determining how the rebates
should be recorded or what C&A should pay for the machinery. The allegations concern events
and actions that occurred at a level far below that at which a board of directors would have been
involved.

### 2.    C&A's Accounting for Rebates

C&A devotes much of the Complaint to an alleged "scheme" at C&A involving
rebates the Company received from suppliers for purchases. (See id. ¶¶ 53-58, 98-99.)
According to C&A, commencing in early 2002, certain rebates were prematurely recognized and,

as a result, C&A's "financial results were artificially inflated." (<u>Id.</u>) Whether or not such a scheme existed, the Complaint contains no factual allegations indicating that the Outside Directors had any involvement in it.

### 3.    C&A's Receivables Facility

C&A also contends that someone other than the Outside Directors improperly inflated the amount of receivables on which financing from a lender was based. (<u>Id.</u> ¶¶ 63-64) Once again, the Complaint contains no factual allegations suggesting that the Outside Directors had any involvement in this alleged wrongdoing, nor does it provide any reason to believe that the board of directors would have had any involvement in determining which receivables were included in the borrowing base of the accounts receivable facility.

### 4.    C&A's Public Statements

Finally, C&A alleges that a bevy of its "press releases, SEC filings and reports to [C&A] shareholders and/or creditors," "quarterly and annual reports with the SEC," "statements to investors," "financial statements," and "proxy statements" were misleading as a result of the alleged improprieties. (<u>Id.</u> ¶¶ 27, 49, 50, 60, 65-71, 75-77.) The Complaint does not plead any facts, much less specific facts, suggesting any involvement by the Outside Directors in making the alleged misstatements or demonstrating that the Outside Directors knew any such misstatements had been made.

9

**ARGUMENT**

## I.     THE COMPLAINT VIOLATES RULES 8 AND 9.

The Complaint is governed by the pleading standards of both Rules 8 and 9 of the

Federal Rules of Civil Procedure.[3]  Rule 8 requires that a complaint set forth "a short and plain

statement of the claim showing that the pleader is entitled to relief," and that "[e]ach averment of

a pleading . . . be simple, concise, and direct."  Fed. R. Civ. P. 8(a)(2), 8(e)(1).  Rule 9(b)

requires that complaints sounding in fraud be pled with particularity.  Courts have recognized

that "[t]hese rules are not in conflict" and it is possible to violate them simultaneously.  United

States ex rel. Garst v. Lockheed-Martin Corp., 328 F.3d 374, 376 (7th Cir. 2003).  Where, as

here, the complaint "is so sprawling as to be essentially incomprehensible (a Rule 8 problem)

and . . . despite the bloat it lacks details outlining fraud (a Rule 9 shortcoming)," it should be

dismissed under both rules.  Id.

### A.     The Complaint Does Not Provide the Outside Directors
### With Fair Notice of C&A's Claims as Required by Rule 8.

In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court

elaborated on the pleading requirements of Rule 8, holding that "a plaintiff's obligation to

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do."  Id. at 1964-65 (citation

omitted).  At a minimum, "[f]actual allegations must be enough to raise a right to relief above the

speculative level."  Id. at 1965.[4]  In the end, the "'short and plain statement' must provide the

---

[3]     C&A's claims under the Exchange Act are also governed by a third set of pleading rules found in the PSLRA.
See infra pp. 16-17.

[4]     In tightening the pleading standard, the Supreme Court specifically overruled the holding of Conley v. Gibson,
355 U.S. 41, 45-46 (1957), oft-quoted by plaintiffs, that "a complaint should not be dismissed for failure to state
a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which
would entitle to him to relief."  The Supreme Court concluded that the passage was "an incomplete, negative
*(cont'd)*

defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"
Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005) (citation omitted).

Complaints that are unduly lengthy or confusing are deficient under Rule 8(a). In
the words of the Seventh Circuit: "Rule 8(a) requires parties to make their pleadings
straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket
of mud." Lockheed-Martin Corp., 328 F.3d at 378. See also Saint-Val v. Domino's Pizza, LLC,
No. 06-4273(SDW), 2007 WL 2049120, at *1 (D.N.J. July 12, 2007) (dismissing complaint
where it "is so confusing that Defendant is not given fair notice of what claims it faces");
Roberto's Fruit Market, Inc. v. Schaffer, 13 F. Supp. 2d 390, 394-96 (E.D.N.Y. 1998).

Here, the Complaint is indeed a "bucket of mud," filled with "labels and
conclusions [and] formulaic recitation[s] of the elements" of the purported causes of action.
C&A has sued nineteen individuals and entities with vastly different relationships to C&A and
then lumped them together and subjected them to a variety of vague, contradictory and
incomprehensible theories. The Complaint makes no attempt to apprise each of the Outside
Directors of what C&A contends was his individual role in the alleged wrongdoing.

The Outside Directors are each mentioned by name in only two paragraphs – once
in a paragraph reciting the individual's name and the dates he held his position as a director (see
Compl. ¶¶ 20-22), and once in a paragraph stating that the individuals are all Senior Managing
Directors of Heartland LP (id. ¶ 28). The remainder of the Complaint refers only to
"Defendants" or "Director and Officer Defendants" generically, or to specific defendants other
than the Outside Directors, and does nothing to apprise the Outside Directors of what they are

---

*(cont'd from previous page)*
gloss on an accepted pleading standard" and that it "has earned its retirement." See Twombly, 127 S. Ct. at
1969.

personally alleged to have done wrong.  (See, e.g., id. ¶¶ 40, 53, 55, 57, 66, 75-77, 91, 98, 99,

126, 154-156, 161, 162.)  The lumping of all defendants together and the failure to provide facts

distinguishing their conduct warrants dismissal for violation of Rule 8.  See Lane v. Capital

Acquisitions & Mgmt. Co., No. 04-60602, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006)

(dismissing complaint where it "fails to differentiate among the defendants, alleging instead

violations by a collective 'defendant'" because "the individual defendants cannot determine from

the face of the Complaint which acts or omissions the Plaintiffs seek to hold each of them liable")

(citing Atuahene v. City of Hartford, 10 Fed. App'x 33, 34 (2d Cir. 2001)).[5]

      The need to distinguish among defendants is particularly acute here because, as

the Delaware Court of Chancery has observed, outside directors have very different functions,

roles and responsibilities than officers and inside directors involved in the day-to-day

management of the company:

> Legally, the board itself will be required only to authorize the most significant
> corporate acts or transactions: mergers, changes in capital structure, fundamental
> changes in business, appointment and compensation of the CEO, etc. . . .
> [O]rdinary business decisions that are made by officers and employees deeper in
> the interior of the organization can, however, vitally affect the welfare of the
> corporation and its ability to achieve its various strategic and financial goals.

In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959, 968 (Del. Ch. 1996).

      The Complaint purports to allege five claims against the Outside Directors but

pleads no facts linking them to the alleged wrongdoing.  There are no allegations that the Outside

---

[5]  See also Medina v. Bauer, No. 02 Civ. 8837 (DC), 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004)
(dismissing claims against defendants lumped together for failure to give adequate notice of wrongdoing to
defendants); In re Providian Fin. Corp. ERISA Litig., No. C 01-05027 CRB, 2002 WL 31785044, at *1 (N.D.
Cal. Nov. 14, 2002) ("Here, plaintiffs have lumped the various classes of defendants into an undifferentiated
mass and alleged that all of them violated all of the asserted fiduciary duties.  The resulting cause of action is so
general that it fails to put the various defendants on notice of the allegations against them.").

Directors, as non-management defendants, had or would have had anything to do with the

wrongdoing that appears central to the Complaint, including:

- The alleged creation of "round trip" transactions between C&A and one of its suppliers (see Compl. ¶¶ 48-52);

- The alleged improper accounting recognition of rebate transactions and the creation of "side letters" improperly attributing rebates to certain accounting periods (see id. ¶¶ 53-58, 98-99); and

- The inclusion of allegedly improper receivables in the borrowing base pursuant to C&A's accounts receivable facility (see id. ¶¶ 63, 64).

Similarly, the Complaint identifies no misrepresentations made by any of the Outside Directors

and sets forth no facts demonstrating why these particular individuals would have had any reason

to know that public statements made by C&A were false.  (See id. ¶¶ 27, 49, 50, 60, 65-71, 75-

77.)  In short, the Complaint fails to satisfy the pleading standards set forth in Rule 8(a) and

should be dismissed for this reason alone.

## B.    The Complaint Does Not Plead Any Claims With Particularity as Required by Rule 9(b).

Because the entire Complaint sounds in fraud, it is also subject to the heightened

pleading standards of Rule 9(b).  "Rule 9(b) extends to all averments of fraud or mistake,

whatever may be the theory of legal duty – statutory, common law, tort, contractual, or

fiduciary."  Frota v. Prudential-Bache Sec., Inc., 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986); see

also Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502, 507 (7th Cir. 2007) ("A claim that

'sounds in fraud' – in other words, one that is premised upon a course of fraudulent conduct – can

implicate Rule 9(b)'s heightened pleading requirements."); Cal. Pub. Employees' Ret. Sys. v.

Chubb Corp., 394 F.3d 126, 163-64 (3d Cir. 2004) (applying Rule 9(b) to claims pursuant to

Section 11 of the Securities Act where the claim "sounded in fraud").

13

C&A makes clear early in the Complaint that its claims are grounded in allegedly fraudulent conduct. At the outset, the Complaint alleges that "[t]he conduct of the Director and Officer Defendants complained of herein involves fraudulent misconduct" (Compl. ¶ 24), and conclusory allegations of fraud then permeate the Complaint beyond the Section 10(b) and fraud claims. With respect to the other claims asserted against the Outside Directors:

- The Section 14(a) claim is founded on the alleged omission of "material facts" (id. ¶ 160), and C&A alleges that its proxy statements were "an essential link in the accomplishment of the continuation of Defendants' fraudulent scheme" (id. ¶ 162). Where, as here, the Section 14(a) claim unquestionably "sounds in fraud," it is subject to Rule 9(b). See Chubb Corp., 394 F.3d at 163 (Section 14(a) claims "are subject to heightened particularity requirements when plaintiffs nonetheless elect to ground them in fraud.").

- The breach of fiduciary duty claim alleges that the "Director and Officer Defendants" breached fiduciary duties by "orchestrating, encouraging or utilizing various accounting schemes as set forth herein which materially misstated the financial condition of the Company." (Compl. ¶ 166; see also id. ¶ 24 (citing "fraudulent misconduct" as basis for breach of fiduciary duty claim).)  Because this claim is grounded in allegedly fraudulent conduct, it too is subject to Rule 9(b). See Pac. Elec. Wire & Cable Co. v. Set Top Int'l, Inc., No. 03 Civ. 9623 (JFK), 2005 WL 578916, at *15 (S.D.N.Y. Mar. 11, 2005) (breach of fiduciary duty claims that sound in fraud "must meet the heightened pleading standard of Rule 9(b).").

- Finally, the unjust enrichment claim alleges that the "Director and Officer Defendants . . . personally benefited by . . . causing Collins & Aikman to pay inflated prices for goods, services and corporate acquisitions; violating the federal securities laws; making false and misleading statements; and causing the Company to file materially false and misleading press releases and documents." (Compl. ¶ 169.)  Such allegations "sound in fraud" and are subject to Rule 9(b)'s pleading standards. See Elnora Kirtley & Hempel (USA), Inc. v. Wadekar, No. 05-5383 (JAG), 2006 WL 2482939, at *2-3 (D.N.J. Aug. 25, 2006) (Rule 9(b) applies to unjust enrichment claim where the claim rests "on the theory that Defendants were unjustly enriched by their fraud.").

Each of C&A's claims should thus be evaluated under the exacting standards of Rule 9(b).

In this case, the strictures of Rule 9(b) should be applied with special vigor, because all the information C&A would have needed to plead specific facts (if such specific facts existed) was available as a result of the years of investigation into the issues underlying the Complaint and C&A's unlimited access to information relevant to its claims, including the results

14

of an internal investigation by its own audit committee. Unlike a typical case by an "outsider", C&A had complete access to all the facts. That it still failed to plead a proper complaint shows that those facts must favor the defendants.

At a minimum, C&A certainly must plead what role each defendant played in the alleged scheme. Even without all the information available to C&A, it is well established that complaints that lump defendants together fail to satisfy the heightened pleading requirements of Rule 9(b) and the PSLRA as well as Rule 8. See, e.g., Gurfein v. Ameritrade, Inc., 411 F. Supp. 2d 416, 426-27 (S.D.N.Y. 2006); Christensen v. WMA Consumer Servs., Inc., No. Civ. A. 03-1545, 2003 WL 22174240, at *3 (E.D. La. Sept. 5, 2003); Donovan v. ABC-NACO Inc., No. 02 Civ. 1951, 2002 WL 1553259, at *4-5 (N.D. Ill. July 15, 2002); Kennilworth Partners L.P. v. Cendant Corp., 59 F. Supp. 2d 417, 430 (D.N.J. 1999).

C&A also has failed to plead the "circumstances constituting fraud" by the Outside Directors with particularity. Here, there can be no excuse for the factual pleading deficiencies in the Complaint and it should be dismissed. See Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P., 906 A.2d 168, 211 (Del. Ch. 2006) ("The Litigation Trust has had far more access to information than the typical plaintiff, having access to voluminous documents during the bankruptcy proceedings, for more than a year before it filed its complaint. Thus, it was better positioned than most fraud plaintiffs to meet the standards of Rule 9(b)."), aff'd, 2007 WL 2317768 (Del. Aug. 14, 2007) (Table); Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir. 1996) (holding that in a case with extensive discovery, the court will "thus look more closely at the factual allegations to see if they support the legal conclusions pled"); Vladimir v. Deloitte & Touche LLP, No. 95 Civ. 10319 (RPP), 1997 WL 151330, at *2 (S.D.N.Y. Mar. 31, 1997).

## II.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 10(b).

### A.    The PSLRA's Pleading Requirements Are Stringent.

To state a claim under Section 10(b) of the Exchange Act, a plaintiff must allege

the defendant "(1) made a misstatement or omission of material fact (2) with scienter (3) in

connection with the purchase or the sale of a security (4) upon which the plaintiffs reasonably

relied and (5) the plaintiffs' reliance was the proximate cause of their injury." GSC Partners

CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004). Not only must a plaintiff plead the

elements of a Section 10(b) claim with the particularity required by Rule 9(b) as in any fraud

case, but a plaintiff must also meet the heightened pleading standard set forth in the PSLRA,

which "extends" Rule 9(b) and "imposes another layer of factual particularity to allegations of

securities fraud." In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 217, 218 (3d Cir.

2002); see also id. at 224 ("Rule 9(b) and the [PSLRA] impose independent, threshold pleading

requirements that, if not met, support dismissal apart from Rule 12(b)(6).").

As the Third Circuit has held, "[i]f a complaint fails to comply with the PSLRA's

pleading requirements, dismissal is mandatory." GSC Partners, 368 F.3d at 237. The PSLRA

imposes two distinctive pleading requirements on plaintiffs. First, it provides that where, as here,

a complaint "alleges that the defendant . . . made an untrue statement of a material fact," the

complaint must "specify each statement alleged to have been misleading [and] the reason or

reasons why the statement is misleading. . . . " 15 U.S.C. § 78u-4(b)(1) (emphasis added); see

also Rockefeller, 311 F.3d at 217, 218 (The PSLRA "requires plaintiffs to set forth the details of

allegedly fraudulent statements or omissions, including who was involved, where the events took

place, when the events took place, and why any statements were misleading."). Second, in any

case where, as here, the plaintiff must show that the defendant "acted with a particular state of

mind," the complaint must, "with respect to each act or omission" alleged to constitute a

16

violation, "state with particularity facts giving rise to a strong inference that the defendant acted

with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added).

   Far from pleading each of these elements with particularity, the Complaint offers

only conclusory and boilerplate allegations, which are insufficient as a matter of law. See

Rockefeller, 311 F.3d at 224 n.19 ("'[U]nder the [PSLRA], we disregard 'catch-all' or 'blanket'

assertions that do not live up to the particularity requirements of the statute.'" (citation omitted)).

Dismissal of the Section 10(b) claim is thus mandatory.

  **B.**  **C&A Does Not Allege that the Outside Directors**
      **Actually Made Any Misrepresentations.**

   C&A does not identify any false or misleading statement actually made by any of

the Outside Directors.  Instead, C&A only alleges that the Outside Directors (along with all other

Director and Officer Defendants) "caused" C&A to issue and "participated in the issuance and/or

review of false and/or misleading statements." (Compl. ¶¶ 27, 75-77, 154.)  The Complaint does

not identify with any particularity what these "false and/or misleading statements" by C&A were,

but rather refers to an undifferentiated mass of "press releases, SEC filings and reports to [C&A]

shareholders and/or creditors," "quarterly and annual reports with the SEC," "statements to

investors," "financial statements," and "proxy statements" issued over a period of more than

three years. (Id. ¶¶ 27, 75-77.)  The Complaint simply ignores the PSLRA's explicit requirement

that plaintiffs "specify each statement alleged to have been misleading," 15 U.S.C. § 78u-4(b)(1)

(emphasis added); see also Brug v. Enstar Group, Inc., 755 F. Supp. 1247, 1254 (D. Del. 1991).

   A number of courts, including those in this Circuit, have adopted a "bright line

test" which "requires that [a] defendant actually make the offending statement himself" to be

subject to liability under Section 10(b). In re Tyson Foods, Inc. Secs. Litig., 155 Fed. App'x 53,

56 (3d Cir. 2005) (discussing tests applied by various courts); see also Copland v. Grumet, 88 F.

Supp. 2d 326, 332-34 (D.N.J. 1999) ("allegations of 'assisting in,' 'participating in,' 'complicity in' and similar synonyms" fail to state a claim for primary liability under Section 10(b) (quoting Shapiro v. Cantor, 123 F.3d 717, 720-21 (2d Cir. 1997)). Other courts "permit[] a finding of liability where the defendant had a significant role in drafting or preparing the statement[]." Tyson, 155 Fed. App'x at 56. Even where the "substantial participation" test applies, however, the Complaint must allege specific facts describing the defendant's involvement. See, e.g., Commc'ns Workers of Am. Plan for Employees Pensions & Death Benefits v. CSK Auto Corp., No. CV06-1503-PHX-DGC, 2007 WL 951968, at *3 (D. Ariz. Mar. 28, 2007) (dismissing Section 10(b) claim where complaint failed to explain officer's involvement or participation in conference calls in which misrepresentations were allegedly made and relied on "vague and repetitive allegations that 'defendants . . . reiterated the financial results'" (alteration in original) (citation omitted)). The Third Circuit has not yet chosen between these tests, but it has held that when neither test is met, dismissal is warranted. See Tyson, 155 Fed. App'x at 56-57. Here, C&A has not alleged the Outside Directors made any statements nor has it alleged facts showing they substantially participated in making them.

### C.    C&A Fails to Plead Any Facts From Which a Strong Inference of Scienter Can Be Drawn.

C&A has utterly failed to plead any facts -- let alone with the particularity required by the PSLRA -- that would support an inference that the Outside Directors took any action with scienter, i.e., "intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976). A plaintiff must plead scienter by alleging facts "'establishing a motive and an opportunity to commit fraud, or by setting forth facts that constitute circumstantial evidence of either reckless or conscious behavior.'" In re Advanta Corp. Sec. Litig., 180 F.3d

18

525, 534-35 (3d Cir. 1999) (citation omitted).[6] The PSLRA requires a plaintiff to plead facts giving rise to a strong inference of scienter with respect to each statement alleged to violate Section 10(b). See 15 U.S.C. § 78u-4(b)(2).

The Supreme Court recently held that "an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2504-05 (2007). "To determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." Id. at 2510. Ultimately, a "complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id.

C&A makes only two conclusory allegations concerning scienter against the Outside Directors as a group: (1) that because of their position and access to "confidential and proprietary information," "each of the Director and Officer Defendants knew that the true facts specified herein regarding [C&A's] business and finances had not been disclosed . . . and were being concealed" (Compl. ¶ 27); and (2) that the "Director and Officer Defendants . . . knew . . . or deliberately disregarded" that statements issued by C&A were misleading (id. ¶ 154). Under controlling Third Circuit law, these conclusory allegations fall well short of the requirements for pleading scienter.

---

[6] While the Third Circuit has held that scienter may be shown either through knowledge or recklessness, Advanta, 180 F.3d at 534-35, the Supreme Court has specifically left open the question of whether and when recklessness maybe sufficient, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2507 n.3 (2007).

The Third Circuit has made clear that C&A cannot rest on the Outside Directors' positions at C&A:

> [A]llegations that a securities-fraud defendant, because of his position within the company, "must have known" a statement was false or misleading are "precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny." Generalized imputations of knowledge do not suffice, regardless of the defendants' positions within the company.

Advanta, 180 F.3d at 539 (second alteration in original) (citation omitted); see also In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 149 (3d Cir. 2004). The Third Circuit has also repeatedly held that "general allegations that defendants knew or recklessly disregarded the false nature of the statements at issue are insufficient" to plead scienter. Alpharma, 372 F.3d at 149; accord GSC Partners, 368 F.3d at 239.[7] Rather, plaintiffs "must support their allegations [of scienter] with the essential factual background that would accompany 'the first paragraph of any newspaper story – that is, the 'who, what, when, where and how' of the events at issue." GSC Partners, 368 F.3d at 239 (citation omitted); accord Advanta, 180 F.3d at 534-35.

In In re Alpharma Inc. Securities Litigation, plaintiffs attempted to demonstrate recklessness by alleging that defendants had violated GAAP and the company's internal policies in connection with questionable accounting practices that had been uncovered in a division of the company. 372 F.3d at 149. The Third Circuit held that such allegations, which failed to allege that the individual defendants were involved in any way with the accounting violations and "rest[ed] primarily upon the premise that the individual defendants [were] liable simply by virtue

---

[7]    Conscious misbehavior "may be alleged by stating with particularity facts giving rise to a strong inference of conscious wrongdoing, such as intentional fraud or other deliberate illegal behavior." Advanta, 180 F.3d at 535. Allegations of recklessness involve "'not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" Id. at 535, 539 (citation omitted).

20

of the positions they hold within the company," were insufficient to state a claim under Section 10(b). Id. at 149-50. The Third Circuit's holding in Alpharma mandates dismissal of the Section 10(b) claim here, where the Complaint is devoid of allegations that the Outside Directors were involved with the alleged accounting irregularities and seeks to impose liability based solely on their positions at C&A.[8]

### D.    C&A Has Not Pled Reliance.

With respect to the obligatory reliance element of the Section 10(b) claim, the Complaint offers only the single conclusory assertion that C&A "sold securities in reliance on Director and Officer Defendants' materially false and misleading statements." (Compl. ¶ 156.) Leaving aside for the moment that C&A has not pled any misrepresentations were made to it – as opposed to by it – its preposterous theory of reliance fails as a matter of law.

The allegation that C&A relied on the Director and Officer Defendants' alleged misrepresentations simply "makes no sense because the complaint alleges that those who controlled [C&A] knew the statements were inaccurate." See Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P., 906 A.2d 168, 211-12 (Del. Ch. 2006), aff'd, 2007 WL 2317768 (Del. Aug. 14, 2007) (Table). As the Delaware Court of Chancery recently explained in rejecting a similar claim brought by the litigation trust of a bankrupt company:

> By [plaintiff's] own admission, [the company's] board of directors knew the true facts about all the issues said to have been misrepresented. As a result, [the company] – as an entity – did not rely to its detriment on any of the misstatements,

---

[8]    C&A has not even attempted to plead that the Outside Directors had motive and opportunity to participate in the alleged fraudulent accounting scheme. In the Third Circuit, allegations of motive and opportunity must be "supported by facts stated 'with particularity' and must give rise to a 'strong inference' of scienter." Advanta, 180 F.3d at 535 (citation omitted). Indeed, "[p]ermitting blanket assertions of motive and opportunity to serve as a basis for liability under the Exchange Act would undermine the more rigorous pleading standard Congress has established. After the [PSLRA], catch-all allegations that defendants stood to benefit from wrongdoing and had the opportunity to implement a fraudulent scheme are no longer sufficient, because they do not state facts with particularity or give rise to a strong inference of scienter." Id.

despite the cursory statement in the complaint that the 'plaintiff' relied on the false statements to its detriment.

* * *

[T]he claim that the disclosing company made misrepresentations is not a fraud claim, it is a claim related to the original wrongdoing. The misdisclosure might have relevance for the vitality of the underlying claim – such as by defeating an argument that a stockholder vote cleansed any breach of fiduciary duty or by tolling a statute of limitations – but it would not give rise to a separate claim for fraud. The reason is simple, the entity would not have been relying to its detriment on the fraudulent statement because its controllers were aware of the actual state of affairs. For this reason, our law has treated claims by stockholders that corporate disclosures in connection with a stockholder vote or tender were materially misleading as direct claims belonging to the stockholders who were asked to vote or tender.

Id. at 211-12 (footnotes and citations omitted). Given C&A's claim that the Director and Officer Defendants – and therefore, C&A – "knew . . . the true facts" (Compl. ¶¶ 27, 154), C&A cannot, as a matter of law, plead that it acted in reliance on any misrepresentations by the Director and Officer Defendants.

### E.    C&A Has Not Pled Economic Loss or Loss Causation.

Finally, C&A fails to plead facts showing it was injured by selling securities to others, much less showing "a causal connection between the material misrepresentation and the loss," as it must to survive this motion. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342 (2005) (citation omitted). C&A cannot premise its claim on its alleged sale of securities to others at an artificially inflated price. (See, e.g., Compl. ¶ 76.) Selling securities to others at an inflated price does not result in an injury to the seller and is not cognizable under the securities laws. See Rochelle v. Marine Midland Grace Trust Co. v. Young, 535 F.2d 523, 529 (9th Cir. 1976) (plaintiff company cannot bring a 10(b) claim when it "lost nothing in its capacity as an investor"); see also Bloor v. Carro, Spanbock, Londin, Rodmin & Fass, 754 F.2d 57, 62 (2d Cir. 1985).

22

While C&A makes liberal use of the term "deepening insolvency" throughout the Complaint (see Compl. ¶¶ 40, 76, 149, 156, 167, 176, 190-91), it makes no effort to tie "deepening insolvency" to any of the relief requested (see Compl. Prayer for Relief). Deepening insolvency is a controversial theory that has been defined as "'an injury to [a debtor's] corporate property from the fraudulent expansion of corporate debt and prolongation of corporate life.'" In re CitX Corp., 448 F.3d 672, 677 (3d Cir. 2006) (alteration in original) (citation omitted). The Third Circuit has questioned the extension of the "deepening insolvency" theory and has held that the cases discussing deepening insolvency "should not be interpreted to create a novel theory of damages for an independent cause of action like malpractice," id., and the Delaware courts have rejected deepening insolvency as an independent cause of action, see Trenwick, 906 A.2d at 204-07. Regardless of whether such a theory is cognizable, the Complaint does not plead facts sufficient to conclude that C&A was insolvent at any given point in time or that the alleged fraudulent conduct extended C&A's corporate existence beyond the point of insolvency.[9]

As relief from the so-called "Director and Officer Defendants," C&A seeks repayment of "all salaries and the value of other remuneration of any kind paid to them" and "restitution . . . for all sums of money and other things of value by which they were unjustly enriched." (Compl. Prayer for Relief.) C&A does not make any attempt to tie such remuneration to the sale of any securities nor is there a logical nexus. In any case, the Outside Directors did not receive any salaries, fees, stock options, or anything of value from C&A, as

---

[9] Indeed, the Complaint is internally inconsistent as to the consequences of the alleged wrongdoing. In one paragraph, C&A alleges that the purported "fraudulent accounting scheme . . . hastened the demise of the Company and left it unable to right itself" (Compl. ¶ 39), yet in the very next paragraph, C&A alleges that the purported scheme was "designed to artificially inflate the Company's reported financial results, avoid triggering debt covenants and enable [C&A] to borrow additional funds, thereby deepening its insolvency" (id. ¶ 40). In other words, C&A cannot decide whether the purported scheme caused the Company's untimely demise or whether it artificially prolonged the life of the Company.

disclosed in the proxy statements cited by C&A throughout the Complaint. (Declaration of

Robert S. Saunders dated Sept. 14, 2007 ("Saunders Decl."), Ex. A, Relevant Excerpts from

Form DEF 14A, 2004 Proxy Statement filed September 30, 2004, at 7.)[10] Thus, there is nothing

for C&A to recover from the Outside Directors and the Complaint should be dismissed as to

these individuals.

## III.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 14(a).

In yet another novel claim, C&A seeks to recover under Section 14(a) of the

Exchange Act for allegedly false proxy statements it issued to its stockholders, not for the benefit

of its stockholders (those who were allegedly deceived), but instead for its creditors (who did not

have a right to vote based on the proxy statements). This claim is defective as a matter of law for

a multitude of reasons.

### A.    The Section 14(a) Claim Is Not Pled With Particularity.

To establish a violation of Section 14(a), a plaintiff must demonstrate that (1) the

proxy statements contained false or misleading statements with respect to a material fact, or

omitted to state a material fact necessary to make the statements not misleading; (2) the

misstatement caused the plaintiff's injury; and (3) the proxy solicitation itself was an "'essential

link'" in accomplishing the proposed corporate transaction. See In re NAHC, Inc. Sec. Litig.,

306 F.3d 1314, 1329 (3d Cir. 2002) (citation omitted); NACCO Indus., Inc. v. Applica Inc., No.

1:06-CV-3002, 2006 WL 3762090, at *7 (N.D. Ohio Dec. 20, 2006) (citation omitted); see also

Va. Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1100-01 (1991).

---

[10]   A court may consider documents integral to the complaint, even if not attached to the complaint, without
converting a motion to dismiss into a motion for summary judgment, see U.S. Express Lines, Ltd. v. Higgins,
281 F.3d 383, 388 (3d Cir. 2002), and may take judicial notice of public disclosure documents filed with SEC,
see In re NAHC, Inc. Secs. Litig., 306 F.3d 1314, 1331 (3d Cir. 2002).

As discussed above, because the Section 14(a) claim sounds in fraud, it is subject to the heightened pleading requirements of Rule 9(b). In addition, the claim is subject to the PSLRA's requirement that a complaint must plead with specificity the falsity of statements made in the proxy statement. See 15 U.S.C. § 78u-4(b)(1); see also NAHC, 306 F.3d at 1328. Here, C&A has not pled with specificity what statements within the proxy statements were allegedly false and why the statements were false. Indeed, the sum of C&A's allegations in this regard is that the proxy statements failed to disclose "that the Company was reporting financial results which were artificially inflated by the improper accounting practices detailed herein." (Compl. ¶ 77.) This failure alone warrants dismissal of the Section 14(a) claim.

**B.     C&A Has Not Pled and Cannot Plead an Essential Link Between the Proxy Statements and Any Alleged Injury.**

To pursue a Section 14(a) claim, a plaintiff must also allege that the proxy solicitation was an "essential link" in the transaction at issue. See Virginia Bankshares, 501 U.S. at 1100; Gen. Elec. Co. v. Cathcart, 980 F.2d 927, 933 (3d Cir. 1992). C&A contends that the proxy statements led to election of the directors and endorsement of the Company's compensation policies, and because the directors continued to be elected by stockholders, they were able to continue the allegedly fraudulent scheme which, in turn, allegedly caused unspecified damage to C&A. (See Compl. ¶¶ 77, 162.) This attenuated causation argument has been squarely rejected by the Third Circuit. See General Electric Co., 980 F.2d at 933 ("[T]he mere fact that omissions in proxy materials, by permitting directors to win re-election, indirectly lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss."); see also Fink v. Weill, No. 02 Civ. 10250 (LTS)(RLE), 2005 WL 2298224, at *5 (S.D.N.Y. Sept. 19, 2005) (Section 14(a) claim "fails because the wrongs flowing from the allegedly false and misleading disclosure are improper governance and injury resulting from the

undisclosed transactions, rather than from any particular action taken by shareholders on the basis of the proxy statements.").[11]

### C.     C&A Does Not Have Standing to Pursue a 14(a) Claim.

Section 14(a) does not explicitly create a private right of action, and claims may only be brought in those limited contexts where courts have inferred such a right. See Virginia Bankshares, 501 U.S. at 1104 (limiting private right under Section 14(a) to situations where comparable right already exists). The Supreme Court has noted that Section 14(a) was intended to protect "investors from misinformation that rendered them unwitting agents of self-inflicted damage." Id. at 1103. Only stockholders who have a voting interest have standing to assert a private right of action for damages pursuant to Section 14(a), and courts have limited attempts by other plaintiffs to extend the implied right of action. See 7547 Corp. v. Parker & Parsley Dev. Partners, L.P., 38 F.3d 211, 230 (5th Cir. 1994) ("[W]e believe that it goes too far to allow persons not even entitled to vote to assert a claim under [Section 14(a)]."); Salomon Bros. Mun. Partners Fund, Inc. v. Thornton, 410 F. Supp. 2d 330, 334 (S.D.N.Y. 2006) (questioning whether issuer has standing under Section 14(a)); Diceon Elecs., Inc. v. Calvary Partners, L.P., 772 F. Supp. 859, 866-67 (D. Del. 1991) (issuer lacks standing to sue under Section 14(a) for damages caused by fraudulent proxy solicitation). Neither C&A nor C&A's creditors were stockholders or entitled to vote based on any of the allegedly misleading proxy statements. As such, Section

---

[11]     In addition, the Supreme Court in Virginia Bankshares stressed that a claimant must posit a theory of causation which links the misrepresentation to "the votes legally required to authorize the action proposed." Virginia Bankshares, Inc., 501 U.S. at 1102; see also Scattergood v. Perelman, 945 F.2d 618, 625-26 (3d Cir. 1991); Thouret v. Hudner, No. 95 Civ. 1793, 1996 WL 38824, at *2 (S.D.N.Y. Feb. 1, 1996) ("[W]here minority shareholders' votes [are] not necessary to the passage of a proposal, they [have] no private right of action under § 14(a)."). Here, among the nineteen individuals and entities named as defendants, C&A has brought claims against the majority of its stockholders. As a result, no votes other than those of the defendants in this action were necessary to effectuate the elections about which plaintiffs complain. As a result, the Section 14(a) claim cannot survive a motion to dismiss.

14(a) does not afford these parties a private right of action for damages and the Section 14(a)

claim must be dismissed.

> **D.    Portions of Plaintiffs' 14(a) Claim Are Barred by the Statute of Limitations.**

The statute of limitations for claims under Section 14(a) is one year from the date

of discovery, but no more than three years from the date the proxy statement was issued.  <u>See</u>

<u>Westinghouse Elec. Corp. v. Franklin</u>, 993 F.2d 349, 353 (3d Cir. 1993).[12]  C&A purports to

assert claims based on its 2002 proxy statement which was filed on April 25, 2002; C&A filed

for bankruptcy on May 17, 2005.  (Compl. ¶¶ 6, 160.)  As a result, the statute of limitations for a

Section 14(a) claim based on the 2002 proxy statement expired, at the latest, on April 25, 2005 –

before C&A filed for bankruptcy protection.  Accordingly, C&A may not maintain a Section

14(a) claim against the Outside Directors based on the 2002 proxy statement.

## IV.    ALL OF THE STATE LAW CLAIMS MUST BE DISMISSED UNDER SLUSA.

C&A's state law claims for fraud, breach of fiduciary duty, and unjust enrichment

are preempted by SLUSA, which provides:

> No covered class action based upon the statutory or common law of any State or
> subdivision thereof may be maintained in any State or Federal court by any
> private party alleging – (A) a misrepresentation or omission of a material fact in
> connection with the purchase or sale of a covered security; or (B) that the
> defendant used or employed any manipulative or deceptive device or contrivance
> in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1).

"Covered class actions" are those in which damages are sought on behalf of more

than fifty individuals or on a representative basis on behalf of named plaintiffs and other

---

[12]    The statute of limitations for an action pursuant to Section 14(a) was not extended by the Sarbanes-Oxley Act and remains at one year from discovery or three years from issuance.  See In re Exxon Mobil Corp. Sec. Litig., __ F.3d __, No. 05-4571, 2007 WL 2410129, at *6-8 (3d Cir. Aug. 27, 2007); Virginia M. Damon Trust v. North Country Fin. Corp., 325 F. Supp. 2d 817, 822-24 (W.D. Mich. 2004).

similarly situated individuals. <u>See</u> 15 U.S.C. § 78bb(f)(5)(B). The Complaint makes plain that

C&A is seeking damages on behalf of more than fifty individuals:

> Under the Plan, on the date the Plan is consummated, all claims and causes of
> action of Plaintiffs and their debtor subsidiaries against third parties, whether then
> pending or available to be brought in the future, are to be assigned to a litigation
> trust administered by a Litigation Trust Administrator for the benefit of the
> creditors of the Plaintiffs' estates.

(Compl. ¶ 7.) Thus, this action is not being prosecuted for C&A's benefit, but instead is being

brought for the benefit of C&A's numerous creditors. As such, this action falls within the

definition of "a covered class action" and is within the purview of SLUSA. <u>See</u> <u>LaSala v.</u>

<u>Bordier et CIE</u>, 452 F. Supp. 2d 575, 582-84 (D.N.J. 2006).

Although it fails to plead securities fraud with the requisite particularity, C&A

purports to allege claims based on misrepresentations or omissions made in connection with

some unspecified sale of securities. (<u>See</u> Compl. ¶¶ 156, 157.) "Where, as here, allegations of a

material misrepresentation serve as the factual predicate of a state law claim, the

misrepresentation prong is satisfied under SLUSA." <u>Rowinski v. Salomon Smith Barney Inc.</u>,

398 F.3d 294, 300 (3d Cir. 2005). <u>See also</u> <u>id.</u> at 305 (affirming dismissal of breach of contract

claim as preempted by SLUSA). All of the state law claims are based on alleged, albeit

unspecified, misrepresentations:

- "The Director and Officer Defendants breached their duties of loyalty, good faith and
  care . . . by orchestrating, encouraging or utilizing various accounting schemes . . . which
  materially misstated the financial condition of the Company." (Compl. ¶ 166.)

- The Director and Officer Defendants were unjustly enriched by "making false and
  misleading statements[] and causing the Company to file materially false and misleading
  [documents]." (<u>Id.</u> ¶ 169.)

- "[T]he Director and Officer Defendants made misrepresentations of material facts,"
  which "constituted fraud." (<u>Id.</u> ¶¶ 172-73.)

28

"[T]he question is not whether a plaintiff pleads or omits certain key words or legal theories, but rather whether a reasonable reading of the complaint evidences allegations of 'a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security.'" Rowinski, 398 F.3d at 304 (citation omitted). Here, a "reasonable reading" of the Complaint calls for preemption of the state law claims under SLUSA. See id. at 304-05; LaSala, 452 F. Supp. 2d at 585. The Court need not undertake a claim-by-claim review of the causes of action asserted in the Complaint to dismiss all claims asserted against the Outside Directors because "[t]he Third Circuit has indicated that SLUSA preempts actions, not claims." LaSala, 452 F. Supp. 2d at 588 (citing Rowinski, 398 F.3d at 305).[13]

## V.    THE COMPLAINT FAILS TO STATE A CLAIM FOR FRAUD.

"The standards for proving fraud claims under federal securities law and under Delaware state law are similar. . . .  To prove a claim of fraud under Delaware law, the plaintiffs must establish that the defendants:  (1) with intent to deceive, (2) made false statements (3) of material fact (4) upon which plaintiffs relied (5) reasonably (6) and to their detriment." Brug v. Enstar Group, Inc., 755 F. Supp. 1247, 1252-53 (D. Del. 1991) (citing Simons v. Cogan, 549 A.2d 300, 304 (Del. 1988)).  Rule 9(b) requires plaintiffs to plead their fraud claim with particularity by providing "sufficient factual detail regarding the circumstances of the alleged fraud to place the defendants on notice of the precise misconduct charged." Brug, 755 F. Supp. at 1253.

---

[13]    It is of no moment that C&A has not stated a viable Section 10(b) or Section 14(a) claim, thereby leaving C&A without a remedy should SLUSA apply to preempt its state law claims.  The Supreme Court has recognized that SLUSA is to be interpreted broadly and that state law claims alleging misrepresentations or omissions in connection with the purchase or sale of a security must be preempted by SLUSA, even when federal law provides no remedy.  See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 74 (2006); see also LaSala, 452 F. Supp. 2d at 585 (applying SLUSA to preempt state law claim notwithstanding plaintiffs' inability to bring claim under federal law).

C&A's fraud allegations against the Outside Directors do not even make sense.

First, the Complaint alleges that the Outside Directors made misrepresentations to themselves. (See Compl. ¶ 172 ("the Director and Officer Defendants made misrepresentations of material facts to [C&A's] Board of Directors and Audit Committee").)  Similarly illogical are plaintiffs' allegations that the Outside Directors relied on their own purported misrepresentations. (Compl. ¶¶ 174, 175 ("[C&A], through its Board of Directors and Audit Committee," relied on misrepresentations made by the Director and Officer Defendants).)

Moreover, the Complaint fails to plead with particularity that:  (1) the Outside Directors made any false statements, see supra pp. 17-18, (2) upon which C&A relied, see supra pp. 21-22, (3) to C&A's detriment, see supra pp. 22-24.  Instead, C&A's allegations

> are precisely the sort of unspecific, broad-brush generalities that Rule 9(b) is intended to preclude from serving as a basis for a fraud claim.  Notably absent from the complaint are particularized allegations identifying what aspects of [the companies'] financial statements were tainted by improper accounting practices, when those financial statements were made public, and the circumstances that suggest that any inaccuracies were intentional, rather than good faith mistakes.

Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P., 906 A.2d 168, 208 (Del. Ch. 2006) (dismissing litigation trust's fraud claim against directors of bankrupt companies under identical Delaware Chancery Rule 9(b), aff'd, 2007 WL 2317768 (Del. Aug. 14, 2007) (Table).

While Rule 9(b) permits intent to be averred generally, the Complaint fails to meet even this standard.  Far from pleading facts demonstrating intent, C&A actually pleads the opposite: "The conduct of the Director and Officer Defendants, whether intentional, reckless, grossly negligent or mistaken, constituted fraud." (Compl. ¶ 173 (emphasis added).)  Of course, if the Outside Directors' conduct was merely "mistaken," it cannot, as a matter of law, constitute fraud.  Such "general allegations do not claim that the defendants were actually aware of any

30

falsity of or incompleteness in the challenged statements" and are insufficient to plead intent. Brug, 755 F. Supp. at 1255.

## VI.    THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY.

C&A's breach of fiduciary duty claim against the Outside Directors also has no merit. Taking a kitchen-sink approach, C&A contends in conclusory fashion that the Outside Directors breached their "duties of good faith, care and loyalty" to the Company and its creditors,[14] as well as committed "corporate waste." (Compl. ¶¶ 166-67.) Without offering a single allegation about what exactly the Outside Directors did, C&A simply asserts that the "Director and Officer Defendants" breached their fiduciary duties "by orchestrating, encouraging or utilizing various accounting schemes as set forth herein which materially misstated the financial condition of the Company." (Id. ¶ 166; see also id. ¶ 167.) Because the Complaint is bereft of allegations that the Outside Directors were in any way involved in the alleged "accounting schemes," C&A has not met its burden under Rule 8, let alone Rule 9(b), to sufficiently plead a claim for breach of fiduciary duty.

Moreover, to state a claim for breach of the duty of loyalty or good faith[15] against the Outside Directors, C&A must "plead facts demonstrating that a majority of a board that

---

[14]    To the extent that the Litigation Trust or C&A itself purports to assert a breach of duty to creditors, its claim must be dismissed for two reasons. First, the Litigation Trust lacks standing to bring direct claims on behalf of its creditors. See Trenwick, 906 A.2d at 189-91. Second, the Outside Directors owed no duties to creditors prior to insolvency and the Complaint contains no factual allegations demonstrating that C&A was insolvent at any point prior to its bankruptcy filing. See id. at 195, 202 ("If a plaintiff seeks to state a claim premised on the notion that a corporation was insolvent and that the directors of the corporation were therefore obligated to consider the corporation's creditors, as an object of their fiduciary beneficenece, the plaintiff must plead facts supporting an inference that the corporation was in fact insolvent at the relevant time.").

[15]    The duty of good faith and the duty of loyalty are identical. See Edgecomb, 385 F. Supp. 2d at 460 n.9; see also Stone v. Ritter, 911 A.2d 362, 370 (Del. 2006) ("[T]he obligation to act in good faith does not establish an independent fiduciary duty that stands on the same footing as the duties of care and loyalty. Only the latter two duties, where violated, may directly result in liability, whereas a failure to act in good faith may do so, but indirectly.").

31

approved the transaction in dispute was interested and/or lacked independence.'" <u>Continuing</u> <u>Creditors' Comm. of Star Telecomms. Inc. v. Edgecomb</u>, 385 F. Supp. 2d 449, 460 (D. Del. 2004) (citation omitted; emphasis in original). C&A does not identify any transaction that could serve as the basis for its duty of loyalty claim and fails to allege that any director was interested or lacked independence, much less a majority of the board that approved the unidentified transaction.[16]

As to the duty of care, C&A has not alleged facts beyond the bare allegation that the Outside Directors (along with the other Director and Officer Defendants) breached their duty by some unspecified involvement in an allegedly fraudulent accounting scheme. (Compl. ¶¶ 24, 166-67.) The Complaint does not sufficiently plead that the Outside Directors "failed to meet even the level of due care that is the litmus test for liability, absent an exculpatory charter provision – gross negligence." <u>Guttman v. Huang</u>, 823 A.2d 492, 507 n.39 (Del. Ch. 2003). To state a claim, C&A must allege that "the informational component of the directors' decisionmaking process, <u>measured by concepts of gross negligence</u>, included consideration of all material information reasonably available." <u>Brehm v. Eisner</u>, 746 A.2d 244, 259 (Del. 2000) (emphasis in original).[17]

In cases such as this involving allegations of accounting improprieties, pleading gross negligence "requires the articulation of facts that suggest a <u>wide</u> disparity between the

---

[16]   "To show that a director was interested, it is usually necessary to show that the director was on both sides of a transaction or received a benefit not received by the shareholders." <u>Edgecomb</u>, 385 F. Supp. 2d at 460; <u>see also</u> <u>Aronson v. Lewis</u>, 473 A.2d 805, 812 (Del. 1984), <u>overruled on other grounds</u>, <u>Brehm v. Eisner</u>, 746 A.2d 244 (Del. 2000). C&A does not allege that any Outside Director was on both sides of a transaction or received any benefit not received by C&A's stockholders.

[17]   In this context, "gross negligence has been defined as a '"reckless indifference to or a deliberate disregard of the whole body of stockholders" or actions which are "without the bounds of reason."'" <u>In re Walt Disney Co.</u> <u>Derivative Litig.</u>, 907 A.2d 693, 750 (Del. Ch. 2005) (citations omitted), <u>aff'd</u>, 906 A.2d 27 (Del. 2006). As a result, "duty of care violations are rarely found." <u>Id.</u>

process the directors used to ensure the integrity of the company's financial statements and that which would have been rational." Guttman, 823 A.2d at 507 n.39 (emphasis in original). Here, the Complaint makes a handful of conclusory allegations about misinformation disseminated by C&A concerning its financial health. (Compl. ¶¶ 27, 75-77.) However, nowhere does C&A even mention the process by which those statements were made, much less that the Outside Directors were grossly negligent in engaging in that process.

In any case, C&A's duty of care claim fails as a matter of law because the exculpation clause in C&A's Certificate of Incorporation immunizes the Company's directors from liability arising from breaches of the duty of care. See Edgecomb, 385 F. Supp. 2d at 462-63; see also Malpiede v. Townson, 780 A.2d 1075, 1093-96 (Del. 2001). Specifically, the Certificate of Incorporation provides:

> To the fullest extent that the General Corporation Law of the State of Delaware as it exists on the date hereof or as it may hereafter be amended permits the limitation or elimination of the liability of directors, no director of the Corporation shall be liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director. No amendment to or repeal of this Article EIGHTH shall apply to or have any effect on the liability or alleged liability of any director of the Corporation for or with respect to any acts or omissions of such director occurring prior to such amendment or repeal.

(Saunders Decl., Ex. B, Restated Cert. of Inc. of C&A at 25-26.)[18] Thus, even if C&A could state a duty of care claim, it would be "unavailing because defendants have brought forth the Section 102(b)(7) charter provision that bars such claims. This is the end of the case." Malpiede, 780 A.2d at 1094-95.

---

[18] This Court may take judicial notice of C&A's Certificate of Incorporation. See Shurkin v. Golden State Vintners, Inc., No. C 04-3434, 2005 WL 1926620, at *6 (N.D. Cal. Aug. 10, 2005) ("[D]istrict courts routinely take judicial notice of public documents such as certificates of incorporation or organization filed with the secretary of state.").

The exculpatory clause in C&A's Certificate of Incorporation also serves to shield the Outside Directors from C&A's cursory allegation of corporate waste. See Edgecomb, 385 F. Supp. 2d at 465. In any case, the Complaint in no way meets Delaware's "stringent" standard for pleading corporate waste: "'an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration.'" Edgecomb, 385 F. Supp. 2d at 464 (citation omitted).[19] Indeed, "[c]orporate waste is very rarely found in Delaware courts because the applicable test imposes such an onerous burden upon a plaintiff." In re Walt Disney Co. Derivative Litig., 907 A.2d 693, 748-49 (Del. Ch. 2005), aff'd, 906 A.2d 27 (Del. 2006); see also id. ("[W]aste is a rare, 'unconscionable case[] where directors irrationally squander or give away corporate assets.'") (citation omitted; alteration in original); accord Edgecomb, 385 F. Supp. 2d at 464. Here, C&A fails to identify any exchange, much less one for which C&A did not receive adequate consideration.

## VII.    THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.

"'Unjust enrichment is defined as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."'" Schock v. Nash, 732 A.2d 217, 232 (Del. 1999) (citation omitted). Courts look to several factors in determining whether a plaintiff has pled a claim for unjust enrichment: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." MetCap Sec. LLC v. Pearl Senior Care, Inc., No. Civ.A.2129-VCN, 2007 WL 1498989, at *5 (Del. Ch. May 16, 2007).

---

[19]    See also Brehm v. Eisner, 746 A.2d 244, 263 (Del. 2000) ("[A] waste entails an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might

(cont'd)

34

Here, plaintiffs' unjust enrichment claim fails for the simple reason that C&A has not alleged any enrichment, unjust or otherwise, received by the Outside Directors. These individuals received nothing from C&A – they did not receive compensation for their services as directors; they did not sell any assets to C&A; and they did not engage personally in any transactions with C&A. The Complaint makes no allegations to the contrary.

---

*(cont'd from previous page)*

be willing to trade. Most often the claim is associated with a transfer of corporate assets that serves no corporate purpose; or for which no consideration at all is received. Such a transfer is in effect a gift.").

**CONCLUSION**

For all the foregoing reasons, the Outside Directors respectfully request that all claims alleged against them in the Complaint be dismissed with prejudice.

Dated:  September 14, 2007

Jonathan J. Lerner
Lea Haber Kuck
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Tel: (212) 735-3000

Robert S. Saunders (Bar I.D. No. 3027)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
Tel: (302) 651-3000

Attorneys for Daniel P. Tredwell,
W. Gerald McConnell and
Samuel Valenti, III

36