UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COLLINS & AIKMAN CORPORATION and COLLINS & AIKMAN PRODUCTS CO., as Debtors in Possession, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| DAVID A. STOCKMAN, J. MICHAEL STEPP, BRYCE M. KOTH, DAVID R. COSGROVE, PAUL C. BARNABA, ROBERT A. KRAUSE, JOHN A. GALANTE, CHARLES E. BECKER ELKIN B. MCCALLUM, THOMAS E. EVANS, CYNTHIA HESS, DANIEL P. TREDWELL, W. GERALD MCCONNELL, SAMUEL VALENTI, III, HEARTLAND INDUSTRIAL PARTNERS, L.P., HEARTLAND INDUSTRIAL ASSOCIATES, L.L.C., HEARTLAND INDUSTRIAL GROUP, L.L.C., PRICEWATERHOUSECOOPERS LLP and KPMG LLP, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 07cv265-*** |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY HEARTLAND INDUSTRIAL PARTNERS, L.P., HEARTLAND INDUSTRIAL ASSOCIATES, L.L.C. AND HEARTLAND INDUSTRIAL GROUP, L.L.C.**

Robert S. Saunders (Bar I.D. No. 3027)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
Tel: (302) 651-3000
Fax: (302) 651-3001

Of counsel:
Jonathan J. Lerner
Lea Haber Kuck
SKADDEN, ARPS, SLATE MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036

TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ..................................................1

SUMMARY OF THE ARGUMENT ...................................................................2

STATEMENT OF FACTS ...............................................................................4

     A.    The Parties .......................................................................4

          1.    Plaintiffs........................................................................4

          2.    The Defendants ..............................................................5

     B.    Heartland's Relationship With C&A.......................................5

          1.    Heartland Invests in C&A...................................................5

          2.    The Services Agreement ....................................................6

     C.    The Complaint ..................................................................8

     D.    Other Actions Brought By C&A Against Heartland Seeking the Same
          Relief...............................................................................9

ARGUMENT ............................................................................................10

I.    THE COMPLAINT VIOLATES RULES 8 AND 9...............................10

     A.    The Complaint Violates Rule 8...........................................10

     B.    The Complaint Also Violates Rule 9(b) ..................................13

II.   SLUSA Requires Dismissal of All Claims Asserted Against Heartland...............14

III.  C&A Has Not Stated a Claim For Breach of Fiduciary Duty By Heartland .........15

IV.  C&A Has Not Stated a Claim for Breach of Contract ...........................................17

V.   The Unjust Enrichment Claim is Foreclosed by the Existence
     of the Services Agreement ....................................................................21

VI.  Portions of the Complaint Are Barred by the Statute of Limitations ...................22

CONCLUSION..........................................................................................23

i

## TABLE OF CITATIONS

### CASES

ADCOR Industrial, Inc. v. Crown-Simplimatic Inc., (In re Crown-Simplimatic Inc.), 299 B.R. 319 (Bankr. D. Del. 2003)...................................................................21

American National Theater & Academy v. Am. National Theater Inc., No. 05 Civ. 4535 (JGK), 2006 U.S. Dist. LEXIS 69420 (S.D.N.Y. Sept. 27, 2006).......................18

Ari & Co. v. Regent International Corp., 273 F. Supp. 2d 518 (S.D.N.Y. 2003)..............20

Aronson v. Lewis, 473 A.2d 805 (Del. 1984)....................................................................16

Atuahene v. City of Hartford, 10 Fed. App'x 33, 34 (2d Cir. 2001)..................................12

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007).........................................4, 10, 11

Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502 (7th Cir. 2007) ........................13

California Public Employees' Retirement System v. Chubb Corp., 394 F.3d 126 (3d Cir. 2004)...............................................................................13

Christensen v. WMA Consumer Services, Inc., No. Civ.A. 03-1545, 2003 WL 22174240 (E.D. La. Sept. 5, 2003) ...........................12

Citron v. Steego Corp., No. 10171, 1988 WL 94738 (Del. Ch. 1988) ..............................16

Conley v. Gibson, 355 U.S. 41 (1957)...............................................................................10

Crane Co. v. Coltec Industrial Inc., 171 F.3d 733 (2d Cir. 1999) ....................................20

Donovan v. ABC-NACO Inc., No. 02 Civ. 1951, 2002 WL 1553259 (N.D. Ill. July 15, 2002) ...................................13

Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005) ............................................11

Fitzgerald v. Hudson National Golf Club, 783 N.Y.S.2d 615 (App. Div. 2004) ..............20

Frota v. Prudential-Bache Securities, Inc., 639 F. Supp. 1186 (S.D.N.Y. 1986) ..............13

Glassman v. Computervision Corp., 90 F.3d 617 (1st Cir. 1996) ......................................14

In re Global Crossing, Ltd. Securities Litigation, No. 02 Civ. 910(GEL), 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005).........................17

Goldman v. Metropolitan Life Insurance Co., 841 N.E.2d 742 (N.Y. 2005) ....................21

Gurfein v. Ameritrade, Inc., 411 F. Supp. 2d 416 (S.D.N.Y. 2006) .................................12

Ivanhoe Partners v. Newmont Mining Corp., 535 A.2d 1334 (Del. 1987).........................16

Kennilworth Partners L.P. v. Cendant Corp., 59 F. Supp. 2d 417 (D.N.J. 1999)..............12

Kirtley v. Wadekar, No. 05-5383(JAG),
    2006 WL 2482939 (D.N.J. Aug. 25, 2006) ..................................................13

LaSala v. Bordier et Cie, 452 F. Supp. 2d 575 (D.N.J. 2006) ...........................................15

Lane v. Capital Acquisitions & Management Co.,
    No. 04-60602 CIV, 2006 WL 4590705 (S.D. Fla. Apr. 14, 2006) ...............................12

Medina v. Bauer, No. 02 Civ. 8837(DC), 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004)
    ........................................................................................................................12

Metcap Sec. LLC v. Pearl Senior Care, Inc.,
    No. Civ.A. 2129-VCN, 2007 WL 1498989 (Del. Ch. May 16, 2007).........................21

Northgate Motors, Inc. v. General Motors Corp.,
    111 F. Supp. 2d 1071 (E.D. Wis. 2000)........................................................................18

Pacific Electric Wire & Cable Co. v. Set Top International Inc.,
    No. 03 Civ. 9623(JFK), 2005 WL 578916 (S.D.N.Y. Mar. 11, 2005) ......................13

Palese v. Delaware State Lottery Office,
    No. Civ.A. 1546-N, 2006 WL 1875915 (Del. Ch. June 29, 2006) .............................21

In re Providian Finance Corp. ERISA Litigation,
    No. C 01-05027 CRB, 2002 WL 31785044 (N.D. Cal. Nov. 14, 2002).....................12

Ramon v. Budget Rent-a-Car Sys., Inc.,
    No. 06-1905 (WJM), 2007 WL 604795 (D.N.J. Feb. 20, 2007)....................................7

Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481 (2d Cir. 1999).............18

Roberto's Fruit Market, Inc. v. Schaffer, 13 F. Supp. 2d 390 (E.D.N.Y. 1998) ................11

In re Rockefeller Ctr. Properties, Inc. Securities Litigation,
    311 F.3d 198 (3d Cir. 2002)............................................................................................4

Rossdeutscher v. Viacom, Inc., 768 A.2d 8 (Del. 2001) ...................................................21

Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294 (3d Cir. 2005)............................15

Saint-Val v. Domino's Pizza, LLC,
    No. 06-4273(SDW), 2007 WL 2049120 (D.N.J. July 12, 2007).................................11

Schock v. Nash, 732 A.2d 217 (Del. 1999) ...................................................................21

In re Sea-land Corp. Shareholders Litigation,
    No. 8453, 1987 WL 11283 (Del. Ch. May 22, 1987)............................................15, 16

Slamow v. Delcol, 571 N.Y.S.2d 335 (App. Div. 1991), ...................................................18

Texas Liquids Holdings, LLC v. Key Bank National Association,
    No. 05 CV 5070(KMW), 2007 WL 950136 (S.D.N.Y. Mar. 27, 2007)......................17

Toner v. Allstate Insurance Co., 821 F. Supp. 276 (D. Del. 1993)....................................13

Trenwick America Litigation Trust v. Ernst & Young, L.L.P.,
    906 A.2d 168 (Del. Ch. 2006)..................................................................................14

U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383 (3d Cir. 2002)......................................6

United States ex rel. Garst v. Lockheed-Martin Corp,
    328 F.3d 374 (7th Cir. 2003) .............................................................................11, 12

Vladimir v. Deloitte & Touche LLP,
    No. 95 Civ. 10319 (RPP), 1997 WL 151330 (S.D.N.Y. Mar. 31, 1997)....................14

Warburton v. Foxtons, Inc.,
    No. 04-2474(FLW), 2005 WL 1398512 (D.N.J. June 13, 2005)..................................7

In re Western National Corp. Shareholders Litigation,
    No. 15927, 2000 WL 710192 (Del. Ch. May 22, 2000)...........................................16

Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490 (S.D.N.Y. 2002)...........................18, 20

**STATUTES**

11 U.S.C. § 547..................................................................................................................9

15 U.S.C. § 78bb(f)(1) .....................................................................................................14

Del. Code Ann. Tit. 10, § 8106 (1999).............................................................................22

Fed. R. Civ. P. 8.........................................................................................................1, 10

Fed. R. Civ. P. 9(b) .........................................................................................................10

**MISCELLANEOUS**

5C Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> §
   1363 (3d ed. 2004) ...................................................................................................4

12B William Meade Fletcher, <u>Fletcher Cyclopedia of the Law of Private
   Corporations</u> § 5811 (2000) ...........................................................................16

Defendants Heartland Industrial Partners, L.P. ("Heartland LP"), Heartland Industrial Associates, L.L.C. ("Heartland LLC"), and Heartland Industrial Group, L.L.C. ("Heartland Industrial") (collectively, "Heartland"), respectfully submit this memorandum of law in support of their motion, pursuant to Rules 8, 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C.S. § 78bb(f)(1), to dismiss all claims for relief alleged against them in the Complaint by plaintiffs Collins & Aikman Corp. and Collins & Aikman Products Co. (together "C&A").

## NATURE AND STAGE OF THE PROCEEDINGS

Heartland is a private equity firm that had a large equity investment in C&A and lost the entire value of its $350 million investment after C&A filed for bankruptcy. Although Heartland never sold a single share of C&A stock and incurred losses of several hundred million dollars, C&A contends that Heartland was involved in alleged wrongdoing that included misrepresenting C&A's financial condition to C&A's investors -- in essence, alleging that Heartland was involved in a scheme to defraud itself.

It appears that the claims against Heartland are based on the facts that (i) C&A paid Heartland for advisory services under a routine "Services Agreement;" and (ii) Heartland was a substantial stockholder of C&A (albeit not a majority stockholder at any relevant time). These unremarkable facts are insufficient to support the claims for fiduciary duty, breach of contract and unjust enrichment C&A attempts to plead against Heartland.

It bears emphasis that this is the third separate litigation filed by C&A against Heartland seeking the recovery of fees it paid Heartland under the Services Agreement, the other two cases having been filed in C&A's bankruptcy proceeding. Here, C&A has included Heartland in a blunderbuss complaint that names myriad other defendants, including fourteen former officers,

employees or directors of C&A and C&A's outside auditors. Even though C&A's independent

audit committee, in cooperation with the Securities and Exchange Commission ("SEC"),

conducted an extensive investigation into the issues that form the basis of its claims and C&A has

had unlimited access to information relevant to its claims, C&A's allegations against Heartland are

conclusory, vague and devoid of any facts -- much less specific facts. Indeed, C&A attempts to

plead its twelve claims by merely making conclusory allegations concerning the "Defendants"

generally -- even though the "Defendants" include nineteen different individuals and entities with

widely disparate relationships with C&A -- without alleging any specific facts about anything

Heartland supposedly did. This falls well short of the applicable pleading requirements because it

gives Heartland no notice of what it is alleged to have done wrong.

   For the reasons set forth in detail below, C&A fails to satisfy the pleading standards

of both Rule 8(a) and 9(b) of the Federal Rules of Civil Procedure and fails to allege any

cognizable claim against Heartland. Accordingly, the Complaint should be dismissed.

### SUMMARY OF THE ARGUMENT

  1. Despite C&A's extensive access to documents and witnesses, the Complaint fails to

satisfy the applicable pleading standards:

    (a) The Complaint's attempt to lump Heartland with other defendants by

invoking catch-all and perfunctory references to "Defendants" gives Heartland no notice of the

claims alleged against each of the Heartland entities and fails to apprise any of them of what it is

alleged to have done wrong. Such ambiguous pleading violates Rule 8.

    (b) The predicate of each of the claims asserted against Heartland

appears to be fraud and thus these claims must be pled in accordance with Rule 9(b), which

requires that all averments of fraud be pled with particularity. C&A has failed to plead any of the

specifics required by Rule 9(b) against Heartland.

(c)    There is no reason to relax the pleading requirements. Indeed, the pleading requirements of the Federal Rules of Civil Procedure should be applied with vigor here because C&A has access to all of the facts pertaining to its alleged claims (which a typical plaintiff would not).

2.    SLUSA preempts state law claims asserted in "covered class action[s]" that involve the purchase and sale of securities. This case falls within the definition of a "covered class action" because it will be administered by a litigation trust for the benefit of C&A's numerous creditors. It also involves the purchase and sale of securities because C&A has asserted claims under the federal securities laws against the individual defendants. C&A's state law claims are thus preempted by SLUSA.

3.    Even assuming C&A could pursue the state law claims, which it cannot, it has not pled the basic elements of those claims against Heartland. The breach of fiduciary duty claim fails because C&A does not allege any facts showing any fiduciary duty was owed by Heartland to C&A or what actions by Heartland constituted the alleged breach.

4.    Although C&A asserts in a perfunctory claim that Heartland owed C&A contractual duties pursuant to the Services Agreement, the specific obligations C&A attempts to impose on Heartland are not found anywhere in the contract and thus cannot form the basis for a breach of contract claim. As a matter of law, C&A cannot salvage its contract claim by invoking an implied covenant of "good faith and fair dealing" because such a covenant does not impose new obligations that are not found in the contract.

5.    Finally, the unjust enrichment claim fails because C&A has not alleged the existence of any enrichment to Heartland outside of what it was paid pursuant to the terms of the

3

Services Agreement.  Because that contract sets forth the parties' obligations, C&A may not rely on a quasi-contractual theory of recovery.

## STATEMENT OF FACTS[1]

### A.    The Parties

#### 1.    Plaintiffs

Collins & Aikman Corporation and Collins & Aikman Products Co. purport to bring this action as debtors-in-possession.  According to the Complaint, any recovery in this action will be "for the benefit of the creditors of [C&A's] estates." (Compl. ¶ 7.)  Indeed, following confirmation of C&A's plan of reorganization, C&A admittedly intends to assign the claims asserted in the Complaint to a Litigation Trust Administrator.  (Id.)  According to the Complaint, C&A's Plan of Reorganization, which has already been confirmed, requires the transfer of all claims to the litigation trust.  (See id. ¶ 36.)  The Plan of Reorganization is expected to become effective shortly and the claims will be transferred at that time.

Prior to its bankruptcy, C&A "was engaged in the design, manufacture and supply of automotive interior components." (Id.)  C&A's products were sold to original equipment manufacturers such as General Motors, Ford and Chrysler.  (Id. ¶ 36.)  Following a precipitous decline in the financial condition of the automotive sector generally, C&A filed for protection under Chapter 11 of the Bankruptcy Code on May 17, 2005.  (Id. ¶ 74.)

---

[1]    While the well-pled factual allegations of the Complaint are taken as true solely for the purpose of this motion, the Third Circuit has held "that courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint.  Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness." In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (citation omitted); see also Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1967-69 (2007); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363 (3d ed. 2004) ("Unsupported conclusions of law can be disregarded. . . .  The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading.").

### 2.    The Defendants

Heartland LP is alleged to be a $1 billion private equity firm which invested in C&A. (Compl. ¶ 28.) According to the Complaint, at least 30% of Heartland LP's total investments were in C&A (by the Complaint's allegations, $300 million). (Id.) The Complaint also names as defendants Heartland LLC, the general partner of Heartland LP, and Heartland Industrial, though it contains no allegations whatsoever concerning Heartland Industrial's relationship with C&A. (Id. ¶¶ 29, 30.) The Complaint makes no effort to differentiate among the different Heartland defendants.

Significantly, there are no allegations that any Heartland entity ever sold any C&A stock. On the contrary, Heartland was purchasing stock during the time that C&A alleges that C&A was misleading its shareholders, as reflected in the filings with the SEC relied on in the Complaint.[2] As C&A's allegations demonstrate, Heartland lost an enormous amount of money after C&A filed for protection under the Bankruptcy Code.

### B.    Heartland's Relationship With C&A

### 1.    Heartland Invests in C&A

In February 2001, Heartland made a large equity investment in C&A. In connection with that transaction, Heartland obtained the right to appoint a majority of C&A's board of directors. (Compl. ¶ 31.) Beginning on September 29, 2004, however, a majority of C&A's board of directors was independent and unaffiliated with Heartland. (See Declaration of Robert S. Saunders ("Saunders Decl.") Ex. A, C&A SEC Form 8-K, Sept. 30, 2004.) Heartland did not at any time obtain the right or the obligation to designate any individuals in C&A's management.

Heartland LLC (and the Heartland defendants collectively) owned less than 50% of C&A's outstanding stock at all times except for a brief period of time during 2001.[3]

### 2.     The Services Agreement

Heartland entered into a Services Agreement with C&A in 2001.  (Id. ¶ 43.)  Such agreements are common in situations where a private equity firm has made an investment in a company because the private equity firm brings with it certain expertise that a manufacturing company, such as C&A, does not otherwise have.  The Services Agreement was entered into as part of the original transaction in which Heartland made its investment in C&A.  The terms of the Services Agreement, and specifically the fees to be paid by C&A to Heartland, were heavily negotiated by C&A prior to the time Heartland made its investment.  Indeed, C&A appointed a special committee of disinterested directors to negotiate and approve the transaction with Heartland.  This committee negotiated the terms of the Services Agreement and obtained concessions from Heartland.  (See Saunders Decl., Ex. B, Relevant Excerpts From Proxy Statement Form DEF 14A, filed Feb. 13, 2001.)  Each of the subsequent amendments to the Services Agreement was likewise approved by C&A's disinterested and independent directors.  (See Saunders Decl., Ex. C, Relevant Excerpts From C&A Form 10-Q at 12.)

Contrary to C&A's conclusory allegation that the Services Agreement gave "Heartland contractual control and dominion over the Company's affairs" (Compl. ¶ 43), the Services Agreement delineates a discrete set of services to be provided by Heartland that in no way

---

[2]     A court may consider documents integral to the complaint (even if not attached to the complaint) without converting a motion to dismiss into a motion for summary judgment. See U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).

[3]     The Complaint alleges that Heartland LLC beneficially owned "at least 59.7%" of C&A's stock in 2001 and, by January 1, 2005, owned 41% of C&A's stock.  (Compl. ¶ 29.)  Heartland's percentage ownership declined because of dilution resulting from certain transactions, not because Heartland sold any of its C&A shares.

give Heartland "control" over C&A.[4]   The Services Agreement was designed to allow C&A to

take advantage of Heartland's expertise and, in exchange, to compensate Heartland for the services

it performed for the company:

> Heartland hereby agrees that, during the term of this Agreement, it shall render to
> the Company . . . advisory and consulting services in relation to the affairs and
> strategic direction of the Company and its subsidiaries, including, without
> limitation, (i) advice with respect to general developments in the automotive
> industry and the manner in which those developments may impact the Company; (ii)
> advice on market developments concerning the purchase and sale of automotive
> suppliers in its market area and other automotive industry entities identified by the
> Company and the manner in which those developments may impact the Company;
> (iii) advice on the Company's financial plans, strategic plans, and alternatives after
> review of such plans and alternatives with management of the Company; and (iv)
> advice in other business and financial areas as may be reasonably requested by the
> Company and which are within the expertise of Heartland.

(Saunders Decl., Ex. D., Services Agreement ¶ 2.)

Similarly, C&A's conclusory assertions that "Heartland thereby exercised

supervision and oversight of every aspect of the Company's affairs" and that the "Company

reasonably relied upon Heartland to ensure that the Company's affairs were properly and lawfully

conducted" (Compl. ¶ 178), are contrary to the Services Agreement, which actually provides the

opposite:

> The Company shall furnish or cause to be furnished to Heartland such
> information as Heartland reasonably believes appropriate to its advisory services
> hereunder and to the ownership by affiliates of Heartland of equity interests of the
> Company (all such information so furnished being the "Information").  The
> Company recognizes and confirms that Heartland (i) will use and rely primarily on
> the Information and on information available from generally recognized public
> sources in performing the services contemplated by this Agreement without having
> independently verified the same, (ii) does not assume responsibility for the
> accuracy or completeness of the Information and such other information and (iii) is
> entitled to rely upon the Information without independent verification.

---

[4]   A court need not accept as true allegations in a complaint that are contradicted by the documents on which the
complaint is based.  See Ramon v. Budget Rent-a-Car Sys., Inc., No. 06-1905 (WJM), 2007 WL 604795, at *2
(D.N.J. Feb. 20, 2007) ("[T]o the extent that Plaintiff's allegations are contradicted by [the] documents upon
which Plaintiff's claims are based, the Court need not accept such allegations as true."); Warburton v. Foxtons,
Inc., No. 04-2474(FLW), 2005 WL 1398512, at *4 (D.N.J. June 13, 2005).

(Saunders Decl., Ex. D., ¶ 6.)  On its face, the contract between Heartland and C&A specifically provided that Heartland had the right to rely on C&A's financial statements -- not the other way around as C&A alleges.

To be sure, C&A paid Heartland for its services.  (Compl. ¶ 33.)  But, as discussed above, all of the fees which were paid under the Services Agreement were approved by C&A's disinterested directors.  (See Saunders Decl., Exs. B, C.)  Pursuant to the terms of the Services Agreement, fully disclosed in C&A's SEC filings, Heartland was to receive quarterly payments as well as transaction fees based on the size of any transactions that were completed with Heartland's assistance.  The fees paid to Heartland pursuant to the Services Agreement, which were also fully disclosed to the public, amounted to only a small fraction of the total amount of money Heartland had invested in C&A -- and pale in comparison to the equity investment lost by Heartland after C&A filed for bankruptcy.

## C.    The Complaint

C&A alleges that in 2001, with Heartland's advice, it undertook efforts to expand its business and acquired three corporations: Becker Group, L.L.C., Joan Automotive Fabrics and a division of Textron Automotive.  (Compl. ¶¶ 42-47.)  To be sure, C&A further alleges that Heartland was paid fees in connection with certain of these transactions, but it does not allege that Heartland failed to perform any of the services for which it was paid.  (See id.)  Instead, in hindsight, C&A appears to complain that the transactions were imprudent because of various market conditions.  (See id. ¶ 38.)  C&A does not appear to base any of its claims on the transactions themselves, but instead appears to argue that accounting for certain future transactions relating to these businesses was improper.  But Heartland was not responsible for determining how C&A would account for the transactions, and C&A does not and cannot allege that it was.  On the

contrary, Heartland had the contractual right to rely on C&A's financial statements in performing any services under the Services Agreement.

The balance of the Complaint provides no information whatsoever concerning what Heartland supposedly did wrong. C&A alleges that: (i) its own accounting for certain rebates was incorrect (id. ¶¶ 53-58); (ii) that C&A submitted inappropriate receivables to an accounts receivable facility (id. ¶¶ 63-64); and (iii) certain financial information C&A disclosed to the public was incorrect (id. ¶¶ 67-77). Not surprisingly, there are absolutely no allegations that Heartland (i) played any role in determining how C&A should account for rebates or anything else; (ii) had anything to do with determining what receivables C&A should submit to the accounts receivable facility; or (iii) was involved in any way in preparing the numbers included in C&A's financial statements. Of course, the Services Agreement does not contemplate that Heartland would play any role in these challenged activities.

**D.    Other Actions Brought By C&A Against Heartland Seeking the Same Relief**

This is only one of three cases filed within the space of three days by C&A against Heartland seeking to recover fees allegedly paid by C&A. In this action, filed on May 16, 2007, C&A asks the Court to direct Heartland "to make restitution to Plaintiffs for all compensation, profits and other things of value by which they were unjustly enriched as a result of the wrongs they committed." (Compl. Prayer for Relief.)

In the first action, filed on May 14, 2007, C&A seeks to avoid certain fees allegedly paid to Heartland LP as preferential transfers pursuant to 11 U.S.C. §§ 547 and 550. See Collins & Aikman Corp. v. Heartland Indus. Partners, L.P., (In re Collins & Aikman Corp.), Case No. 05-55927 (SWR), Adv. Pro. No. 07-05592 (SWR) (Bankr. E.D. Mich.). This complaint appears to seek the return of fees allegedly paid to Heartland within one year of C&A's bankruptcy filing.

9

In the second action, filed on May 15, 2007, C&A asserts several counts of fraudulent transfer and preference against Heartland LP, Heartland LLC and Heartland Industrial. See Collins & Aikman Corp. v. Heartland Industrial Partners, L.P., et al., (In re Collins & Aikman Corp.), Case No. 05-55927 (SWR), Adv. Pro. No. 07-05650 (SWR) (Bankr. E.D. Mich.). This complaint appears to seek the return of certain fees paid to Heartland as far back as 2001, including those fees sought in the first action.

Thus, C&A is vexatiously prosecuting three different cases in two different forums against one or more of the Heartland defendants seeking duplicative relief.

## ARGUMENT

### I.    The COMPLAINT VIOLATES RULES 8 AND 9.

The Complaint is subject to both Rules 8 and 9 of the Federal Rules of Civil Procedure. Rule 8 requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," and that "[e]ach averment of a pleading . . . be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), 8(e)(1). Rule 9(b) requires that complaints sounding in fraud be pled with particularity. Fed. R. Civ. P. 9(b).

### A.    The Complaint Violates Rule 8.

The Supreme Court recently elaborated on the pleading requirements of Rule 8, holding that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted). At a minimum, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.[5] In the end, the "'short and plain statement' must provide the defendants with

---

[5]    In tightening the pleading standard, the Supreme Court specifically overruled the holding of Conley v. Gibson, 355 U.S. 41, 45-46 (1957), oft-quoted by plaintiffs, that "a complaint should not be dismissed for failure to state a

'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" <u>Dura Pharm., Inc.</u> <u>v. Broudo</u>, 544 U.S. 336, 346 (2005) (citation omitted).

Complaints that are unduly lengthy or confusing are deficient under Rule 8(a). In the words of the Seventh Circuit: "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." <u>United States ex rel. Garst v. Lockheed-Martin Corp</u>, 328 F.3d 374, 378 (7th Cir. 2003); <u>see</u> <u>also</u> <u>Saint-Val v. Domino's Pizza, LLC</u>, No. 06-4273(SDW), 2007 WL 2049120, at *1 (D.N.J. July 12, 2007) (dismissing complaint where it "is so confusing that Defendant is not given fair notice of what claims it faces."); <u>Roberto's Fruit Market, Inc. v. Schaffer</u>, 13 F. Supp. 2d 390, 394-96 (E.D.N.Y. 1998).

Here, despite 80 pages and 215 paragraphs, the Complaint does not apprise Heartland of what it allegedly did wrong. The only allegations that relate to Heartland's conduct are so vague that they do not come close to satisfying the requirements of Rule 8. (<u>See</u> Compl. ¶¶ 165, 169, 179.) These conclusory allegations, which the Court need not accept as true, merely allege that Heartland breached some duties, and refer the reader to the hundreds of paragraphs and dozens of pages "above" to attempt to decipher what Heartland is actually alleged to have done wrong. Of course, when the reader looks "above," there are no references to any alleged conduct by Heartland, merely to the alleged conduct of "Defendants" as a group. Although Heartland is mentioned several times in the early paragraphs of the Complaint which provide factual background, the portions of the Complaint supposedly describing the wrongdoing do not mention Heartland, referring only to defendants other than Heartland or to "Defendants" collectively. (<u>See,</u>

claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle to him to relief." The Supreme Court concluded that the passage was "an incomplete, negative gloss on an accepted pleading standard" and that it "has earned its retirement." <u>See</u> <u>Twombly</u>, 127 S. Ct. at 1969.

e.g., id. ¶¶ 40, 53, 55, 57, 66, 75, 76, 77, 98, 126.)  Accordingly, the Complaint does not apprise Heartland of what role, if any, it is alleged to have played.  Neither the Court nor Heartland has an obligation "to fish a gold coin from a bucket of mud," Lockheed-Martin, 328 F.3d at 378, even if there were a gold coin, which here there is not.

        The lumping of defendants together for pleading purposes does not provide notice of the claims asserted against each defendant, and courts regularly dismiss complaints pursuant to Rule 8 where the plaintiff has engaged in this pleading tactic.  See Lane v. Capital Acquisitions & Mgmt. Co., No. 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) (dismissing complaint where it "fails to differentiate among the defendants, alleging instead violations by a collective 'defendant'" because "the individual defendants cannot determine from the face of the Complaint which acts or omissions the Plaintiffs seek to hold each of them liable" (citing Atuahene v. City of Hartford, 10 Fed. App'x 33, 34 (2d Cir. 2001)); see also Medina v. Bauer, No. 02 Civ. 8837(DC), 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004); In re Providian Fin. Corp. ERISA Litig., No. C 01-05027 CRB, 2002 WL 31785044, at *1 (N.D. Cal. Nov. 14, 2002) ("Here, plaintiffs have lumped the various classes of defendants into an undifferentiated mass and alleged that all of them violated all of the asserted fiduciary duties.  The resulting cause of action is so general that it fails to put the various defendants on notice of the allegations against them.").  Complaints that lump together defendants also fail to satisfy the heightened pleading requirement set forth in Rule 9(b) which, as discussed infra, also applies to C&A's claims.  See, e.g., Gurfein v. Ameritrade, Inc., 411 F. Supp. 2d 416, 426-27 (S.D.N.Y. 2006); Christensen v. WMA Consumer Servs., Inc., No. Civ.A. 03-1545, 2003 WL 22174240, at *3 (E.D. La. Sept. 5, 2003); Donovan v. ABC-NACO Inc., No. 02 C 1951, 2002 WL 1553259, at *4-5 (N.D. Ill. July 15, 2002); Kennilworth Partners L.P. v. Cendant Corp., 59 F. Supp. 2d 417, 430 (D.N.J. 1999).

**B.      The Complaint Also Violates Rule 9(b).**

Because the entire Complaint sounds in fraud, it must meet the heightened pleading standards of Rule 9(b). "Rule 9(b) extends to all averments of fraud or mistake, whatever may be the theory of legal duty -- statutory, common law, tort, contractual, or fiduciary." Frota v. Prudential-Bache Sec., Inc., 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986); see also Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502, 507 (7th Cir. 2007) ("A claim that 'sounds in fraud' -- in other words, one that is premised upon a course of fraudulent conduct -- can implicate Rule 9(b)'s heightened pleading requirements."); California Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 163-64 (3d Cir. 2004) (applying Rule 9(b) to claims pursuant to Section 11 of the 1933 Act where the claim "sounded in fraud.").

Each cause of action that is asserted against Heartland clearly rests on an "averment[] of fraud" (see Compl. ¶¶ 165, 169, 179) that requires C&A to plead the "circumstances constituting fraud" with particularity. See Kirtley v. Wadekar, No. 05-5383(JAG), 2006 WL 2482939, at *2-3 (D.N.J. Aug. 25, 2006) (Rule 9(b) applied to unjust enrichment claim where the claim rested "on the theory that Defendants were unjustly enriched by their fraud"); Pac. Elec. Wire & Cable Co. v. Set Top Int'l Inc., No. 03 Civ. 9623(JFK), 2005 WL 578916, at *15 (S.D.N.Y. Mar. 11, 2005) (breach of fiduciary duty claims that sound in fraud "must meet the heightened pleading standard of Rule 9(b)"); Toner v. Allstate Ins. Co., 821 F. Supp. 276, 283-85 (D. Del. 1993) (applying Rule 9(b) to claim that defendant breached the implied covenant of good faith and fair dealing where claim sounded in fraud). C&A has not met this obligation. Indeed, as discussed above, C&A has not even provided Heartland with notice of what it is alleged to have done wrong, let alone pled supporting facts with particularity.

13

In this case, where C&A has unlimited access to the facts on which the Complaint is based, there is simply no excuse for the pleading deficiencies that abound in the Complaint. See Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P., 906 A.2d 168, 211 (Del. Ch. 2006) ("The Litigation Trust has had far more access to information that the typical plaintiff, having access to voluminous documents during the bankruptcy proceedings, for more than a year before it filed its complaint. Thus, it was better positioned than most fraud plaintiffs to meet the standards of Rule 9(b)."), aff'd, 2007 WL 2317768 (Del. Aug. 14, 2007) (Table); Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir. 1996) (holding that in a case with extensive discovery the court will "thus look more closely at the factual allegations to see if they support the legal conclusions pled"); Vladimir v. Deloitte & Touche LLP, No. 95 Civ. 10319 (RPP), 1997 WL 151330, at *2 (S.D.N.Y. Mar. 31, 1997). C&A obviously knows the facts and, if they supported its claims, presumably it would have alleged them.

## II.    SLUSA REQUIRES DISMISSAL OF ALL CLAIMS ASSERTED AGAINST HEARTLAND.

As explained in more detail in the memorandum of law in support of the motion to dismiss by Defendants Daniel P. Tredwell, W. Gerald McConnell and Samuel Valenti, III, which Heartland incorporates by reference in relevant part (pp. 27-29), the state law claims advanced by C&A are preempted by SLUSA. 15 U.S.C. § 78bb(f)(1). Stated simply, SLUSA preempts state law claims alleging (i) a misrepresentation, brought by (ii) a covered class action, (iii) "in connection with the purchase or sale of a covered security." Id.

Here, each of the criteria for SLUSA preemption is met and the state law claims should be dismissed. Indeed, there are no federal claims asserted against Heartland and the federal question on which C&A bases this Court's subject matter jurisdiction is the federal securities laws. (See Compl. ¶ 2.) As a result, all claims asserted against Heartland should be dismissed pursuant

14

to SLUSA.  See Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294, 300 (3d Cir. 2005)

("Where, as here, allegations of a material misrepresentation serve as the factual predicate of a

state law claim, the misrepresentation prong is satisfied under SLUSA."); LaSala v. Bordier et Cie,

452 F. Supp. 2d 575, 583-84 (D.N.J. 2006) (action brought by trust created in bankruptcy for

purposes of litigation was a "covered class action").

## III.    C&A HAS NOT STATED A CLAIM FOR
BREACH OF FIDUCIARY DUTY BY HEARTLAND.

The basis for C&A's breach of fiduciary duty claim against Heartland is impossible

to discern from the Complaint.  In a single sentence in its Third Claim for Relief, C&A

conclusorily alleges that Heartland breached a fiduciary duty owed to C&A by "causing,

permitting, enabling, acquiescing and aiding and abetting the fraudulent scheme detailed herein."

These conclusory, internally inconsistent assertions are not supported by any factual allegations

describing how Heartland is alleged to have participated or assisted in the alleged wrongdoing.

C&A also contends Heartland had a duty "not to take actions to benefit itself to the detriment of the

Company" (Compl. ¶ 165), but it pleads no facts suggesting that Heartland ever did that.  This

omission is hardly surprising, as Heartland lost its investment of more than $300 million because

of C&A's bankruptcy.

Further, C&A failed to plead facts establishing that Heartland owed a fiduciary

duty to C&A.  C&A contends that Heartland owed a duty to C&A as its "controlling shareholder

and by virtue of its designation of a majority of [C&A's] directors."  (Id. ¶ 165.)  As a matter of law,

absent majority shareholding (which Heartland did not have) or evidence of actual control (which

C&A does not allege) a stockholder does not have a fiduciary duty to the corporation.  See Ivanhoe

Partners v. Newmont Mining Corp., 535 A.2d 1334, 1344 (Del. 1987); In re Sea-land Corp.

S'holders Litig., No. 8453, 1987 WL 11283, at *4-6 (Del. Ch. May 22, 1987) (dismissing claim

predicated on fiduciary duty owed where "the complaint admits that [corporate defendant] was not a majority (51%) stockholder," and plaintiffs admit that the individual defendant "did not control day-to-day affairs of Sea-Land"); 12B William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 5811 (2000) ("There must be some evidence demonstrating control, however, since the presumption is against it." (footnotes omitted)). Here, the Heartland Defendants (collectively and independently) owned less than 50% of C&A's outstanding stock (except for a brief period of time during 2001 following Heartland's initial purchase). Thus, C&A can only state a claim against Heartland for breach of a fiduciary duty to C&A if it can plead specific facts to overcome the presumption Heartland did not have "control" of the corporation.

C&A's conclusory allegations concerning Heartland's stock ownership and right to nominate a majority of directors are insufficient to plead the "actual control" required to impose a fiduciary duty on a non-majority stockholder. See, e.g., Citron v. Steego Corp., No. 10171, 1988 WL 94738, *6-*7 (Del. Ch. 1988) ("[I]t is the actual exercise of such control, not the simple potential for control, that creates the special duty."); Sea-Land, 1987 WL 11283, at *4-5 (dismissing "conclusory allegations concerning [39.5% shareholder's] stock control" as insufficient to bestow fiduciary status). As the Delaware Supreme Court has made clear, "[t]he shorthand shibboleth of 'dominated and controlled directors' is insufficient." Aronson v. Lewis, 473 A.2d 805, 816 (Del. 1984), overruled in part on other grounds, Brehm v. Eisner, 746 A.2d 244 (Del. 2000). Indeed, "[d]irectors must be nominated and elected to the board in one fashion or another. The fact that a company's executive chairman or a large shareholder played some role in the nomination process should not, without additional evidence, automatically foreclose a director's potential independence." In re Western National Corp. S'holders Litig., No. 15927, 2000 WL 710192, at *15 (Del. Ch. May 22, 2000); see also Sea-Land, 1987 WL 11283, at *5 (even if

16

stockholder "had caused its nominees to be elected to the . . . board . . . that fact, without more, does not establish actual domination or control"). Similarly, "the mere fact that [the directors at issue] held high positions with [defendants], and were appointed to the . . . board by [defendants], cannot, standing alone, establish that they acted as agents, or acted under the control, of [defendants]." In re Global Crossing, Ltd. Sec. Litig., No. 02 Civ. 910(GEL), 2005 WL 1907005, at *3-4 (S.D.N.Y. Aug. 8, 2005). Finally, although C&A also alleges that Heartland "controlled" C&A by virtue of the Services Agreement, those allegations are belied by the agreement itself. See supra 6-8.

For all of these reasons, C&A's fiduciary duty claim fails as a matter of law.

## IV.    C&A HAS NOT STATED A CLAIM FOR BREACH OF CONTRACT.

C&A's breach of contract claim appears to be founded on the Services Agreement (see Compl. ¶ 178), which is governed by New York law (see Saunders Decl., Ex. D ¶ 9(d)). "To state a claim for breach of contract, New York law requires that a plaintiff allege: (1) the existence of an agreement between the plaintiff and defendant; (2) due performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages resulting from the breach." Texas Liquids Holdings, LLC v. Key Bank Nat'l Ass'n, No. 05 CV 5070(KMW), 2007 WL 950136, at *2 (S.D.N.Y. Mar. 27, 2007).

As an initial matter, C&A makes no attempt to plead which Heartland entities may be held liable for a breach of the Services Agreement, although three legally distinct entities are named in the Complaint (Heartland LP, Heartland LLC and Heartland Industrial). Of these entities, Heartland LP is the only one alleged to have been a party to the Services Agreement. (See Compl. ¶ 43.) Thus, with respect to Heartland LLC and Heartland Industrial, C&A has failed to plead the first element of a breach of contract claim.

17

The Complaint also does not allege how the Services Agreement was breached, thereby failing to satisfy the third element of a breach of contract claim. The Complaint points to no provision of the Services Agreement that was breached and offers only sweeping general conclusions about Heartland's alleged contractual duties that do not withstand even the most basic scrutiny. The failure to identify the contractual provisions allegedly breached makes the claim deficient and dismissal appropriate. See Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490, 496 (S.D.N.Y. 2002), aff'd, 65 Fed. App'x 736 (2d Cir. 2003); Am. National Theater & Academy v. Am. National Theater Inc., No. 05 Civ. 4535 (JGK), 2006 U.S. Dist. LEXIS 69420, at *10-11 (S.D.N.Y. Sept. 27, 2006).

Rather than referring to any specific provision of the contract, C&A purports to rely on obligations that are nowhere found in the Services Agreement. However, "[i]f a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999); see also Slamow v. Delcol, 571 N.Y.S.2d 335, 336 (App. Div. 1991) ("A court may not rewrite into a contract conditions the parties did not insert by adding or excising terms under the guise of construction."), aff'd 594 N.E.2d 918 (N.Y. 1992). Although a complaint's allegations are generally accepted as true, where the terms of a contract are inconsistent with a complaint's allegations, the terms of the contract prevail. See Northgate Motors, Inc. v. General Motors Corp., 111 F. Supp. 2d 1071, 1081 (E.D. Wis. 2000).

Here, C&A conjures up the following general obligations, each of which is absent from the contract and contradicted by the express terms of the contract:

18

- "Plaintiffs and Heartland L.P. entered into the Heartland Services Agreement thereby giving Heartland contractual control and domination over the Company's affairs" (Compl. ¶ 43);

- "Heartland . . . exercised supervision and oversight of every aspect of the Company's affairs" (id. ¶ 178); and

- "The Company reasonably relied upon Heartland to ensure that the Company's affairs were properly and lawfully conducted" (id.).

The Services Agreement states only that Heartland is to provide "advisory and consulting services in relation to the affairs and strategic direction of the Company" and certain ancillary services including those "reasonably requested by the Company." [6] (Saunders Decl., Ex. D, ¶ 2). Although C&A's claims are based on allegations of fraudulent accounting, accounting is not something that Heartland took any responsibility for in the Services Agreement. (See id.) Nowhere does the Services Agreement give Heartland any control over C&A's operations or accounting functions.

Indeed, as noted above, far from "exercis[ing] supervision and oversight of every aspect of the Company's affairs" (Compl. ¶ 178), Heartland expressly disclaimed any responsibility for the accuracy of C&A's information in the Services Agreement:

> The Company shall furnish or cause to be furnished to Heartland such information as Heartland reasonably believes appropriate to its advisory services hereunder and to the ownership by affiliates of Heartland of equity interests of the Company (all such information so furnished being the "Information"). The Company recognizes and confirms that Heartland (i) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (ii) does not assume responsibility for the accuracy or completeness of the Information and such other information and (iii) is entitled to rely upon the Information without independent verification.

---

[6]  The Services Agreement also contains an integration clause: "This Agreement shall constitute the entire agreement between the parties with respect to the subject matter hereof, and shall supersede all previous oral and written (and all contemporaneous oral) negotiations, commitments, agreements and understandings relating hereto." (Saunders Decl., Ex. D, ¶ 9(c).) Thus, plaintiffs may not go outside the bounds of the Services Agreement in search of a legal obligation on the part of Heartland to undertake the duties alleged in the Complaint.

(Saunders Decl., Ex. D., ¶ 6 (emphasis added).)  As a result, to the extent there is a claim to be had, the claim would be one by Heartland against C&A for providing Heartland with inaccurate information under the Services Agreement.

On its face, the Services Agreement cannot possibly be read as providing that Heartland would run C&A and police its "affairs" to ensure C&A was acting "properly and lawfully." (Compl. ¶ 178.)  Because the allegations of a breach are inconsistent with the terms of the Services Agreement, the claim should be dismissed.  See Wolff, 210 F. Supp. 2d at 494-96; Crane Co. v. Coltec Indus. Inc., 171 F.3d 733, 737-79 (2d Cir. 1999) (affirming dismissal of breach of contract claims where obligations sought to be imposed by plaintiff were not supported by the unambiguous terms of the contract).

C&A also attempts to fall back on the implied duty of good faith and fair dealing. C&A's attempt to invoke this implied duty in an effort to impose expansive obligations on Heartland, making Heartland the guarantor of C&A's financial information and the insurer that C&A's "affairs were properly and lawfully conducted" (Compl. ¶ 178), tortures the implied duty of good faith and fair dealing far beyond recognition.  The purpose of the implied covenant of good faith and fair dealing is "to further an agreement by protecting a promise against 'breach of the reasonable expectations and inferences otherwise derived from the agreement.'"  Ari & Co. v. Regent Int'l Corp., 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003) (citation omitted).  In view of this, "New York law is clear that the implied covenant cannot be used to create independent obligations beyond the contract." Id. at 523; see also Wolff, 210 F. Supp. 2d at 497 ("[T]he obligation of good faith does not create obligations that go beyond those intended and stated in the language of the contract."); Fitzgerald v. Hudson Nat'l Golf Club, 783 N.Y.S.2d 615, 616-17 (App. Div. 2004) (affirming dismissal of claim of breach of implied duty of good faith and fair dealing where

20

"plaintiff was seeking to imply an obligation of the defendants which was inconsistent with the terms of the contract").

C&A may not use the implied covenant of good faith and fair dealing to impose on Heartland -- after the fact -- far-reaching and onerous obligations that are nowhere found in the Services Agreement.  Because the Services Agreement simply does not support C&A's contentions that Heartland was the guarantor and insurer of all of its actions and financial statements, the breach of contract claim must be dismissed.

**V.     THE UNJUST ENRICHMENT CLAIM IS FORECLOSED
        BY THE EXISTENCE OF THE SERVICES AGREEMENT.**

"'Unjust enrichment is defined as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."'" Schock v. Nash, 732 A.2d 217, 232 (Del. 1999) (citations omitted).  Under both Delaware and New York law, an unjust enrichment claim may not be maintained where there is a legally enforceable contract governing the relationship between the parties.  See Goldman v. Metro Life Ins. Co., 841 N.E.2d 742, 46-47 (N.Y. 2005); Rossdeutscher v. Viacom, Inc., 768 A.2d 8, 23-24 (Del. 2001) (applying New York law); ADCOR Indus., Inc. v. Crown-Simplimatic Inc. (In re Crown-Simplimatic Inc.), 299 B.R. 319, 327 (Bankr. D. Del. 2003) (dismissing unjust enrichment claim where there was a binding contract that "adequately addresses each party's rights and duties"); Metcap Sec. LLC v. Pearl Senior Care, Inc., No. Civ.A. 2129-VCN, 2007 WL 1498989, at *5 (Del. Ch. May 16, 2007) ("In short, if there is a contract between the complaining party and the party alleged to have been enriched unjustly, then the contract remains 'the measure of [the] plaintiff's right.'"); Palese v. Delaware State Lottery Office, No. Civ.A. 1546-N, 2006 WL 1875915, at *5 (Del. Ch. June 29, 2006), aff'd mem., 913 A.2d 570 (Del. 2006).

21

The only benefit Heartland is alleged to have received from C&A is the receipt of service fees pursuant to the Services Agreement that was entered into (and fully disclosed) before Heartland completed its acquisition of C&A securities. (See Compl. ¶¶ 32-33.) The unjust enrichment claim is thus defective as a matter of law and must be dismissed.

## VI.     PORTIONS OF THE COMPLAINT ARE BARRED BY THE STATUTE OF LIMITATIONS.

Although the bounds of C&A's claims are unclear, the Complaint contains allegations concerning events as far back as 2001. (See, e.g. Compl. ¶¶ 37, 40, 42, 44, 46-50.) In Delaware, the statute of limitations for the claims asserted by C&A against Heartland is three years from accrual. See Del. Code Ann. Tit. 10, § 8106 (1999). As a result, to the extent that any of the causes of action are premised on claims that accrued more than three years before C&A filed for bankruptcy, they should be dismissed.

22

## CONCLUSION

For all the foregoing reasons, Heartland respectfully requests that all claims alleged against it in the Complaint be dismissed with prejudice.

Dated: September 14, 2007

Jonathan J. Lerner
Lea Haber Kuck
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Tel:  (212) 735-3000
Fax:  (212) 735-2000

Robert S. Saunders (Bar I.D. No. 3027)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
Tel: (302) 651-3000
Fax:  (302) 651-3001

Attorneys for Heartland Industrial Partners, L.P.,  Heartland Industrial Associates, L.L.C. and Heartland Industrial Group, L.L.C.

23

732880-New York Server 1A - MSW