**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

COLLINS & AIKMAN CORPORATION, et al.,  )
                                     )
          Plaintiffs,           )      C.A. No. 07-265 ***
                                     )
         v.                    )
                                     )
DAVID A. STOCKMAN, et al.,         )
                                     )
          Defendants.       )

---

**OPENING BRIEF IN SUPPORT OF**
**DEFENDANT KPMG LLP'S MOTION TO DISMISS**

                                         EDWARDS ANGELL PALMER & DODGE LLP
                                         Michael J. Maimone (#3592)
                                         Paul D. Brown (#3903)
                                         919 North Market Street, 15th Floor
                                         Wilmington, DE  19801
OF COUNSEL:                       (302) 777-7770
                                           mmaimone@eapdlaw.com
Christopher Harris
Seth L. Friedman
Latham & Watkins LLP
885 Third Avenue
New York, NY  10022
(212) 906-1200

September 14, 2007

**TABLE OF CONTENTS**

                                                                                      PAGE

TABLE OF AUTHORITIES...............................................................................iv

I.      INTRODUCTION ................................................................................1

II.     NATURE AND STAGE OF PROCEEDINGS................................................2

III.    SUMMARY OF ARGUMENT ................................................................2

IV.     BACKGROUND ................................................................................3

        A.    FACTUAL ALLEGATIONS .........................................................3
        B.    THE ROLE OF PLAINTIFFS AND KPMG IN PLAINTIFFS'
              FINANCIAL REPORTING.........................................................6
              1.   MANAGEMENT PREPARES FINANCIAL STATEMENTS
                   AND AUDITORS AUDIT THEM............................................6
              2.   GAAS IS CLEAR THAT AUDITORS ARE NOT EXPECTED
                   TO UNCOVER COLLUSIVE FRAUD BEING COMMITTED
                   AND CONCEALED BY MANAGEMENT ...............................7

V.      ARGUMENT ....................................................................................8

        A.    MOTION TO DISMISS STANDARD ...............................................8
        B.    MICHIGAN LAW GOVERNS THE CLAIMS AGAINST KPMG........................8
        C.    MICHIGAN'S WRONGFUL CONDUCT RULE BARS ALL OF
              PLAINTIFFS' CLAIMS...........................................................10
              1.   PLAINTIFFS' ALLEGATIONS SATISFY ALL OF THE
                   ELEMENTS OF MICHIGAN'S WRONGFUL CONDUCT RULE........10
              2.   RECENT MICHIGAN AND OTHER PRECEDENT HOLDS
                   THAT THE WRONGFUL CONDUCT RULE BARS A
                   BANKRUPT COMPANY'S CLAIMS FOR ALLEGED
                   MALPRACTICE AGAINST ITS FORMER AUDITORS........................12
        D.    PLAINTIFFS CANNOT ESTABLISH CAUSATION OR DAMAGES ............14
              1.   PLAINTIFFS DO NOT ALLEGE HOW KPMG'S AUDIT
                   PROXIMATELY CAUSED THE HARM SUFFERED BY C&A...........15
              2.   PLAINTIFFS' "DEEPENING INSOLVENCY" THEORY OF
                   DAMAGES FAILS AS A MATTER OF LAW...........................17
                   A.   MICHIGAN HAS NOT ADOPTED AND WOULD
                        LIKELY REJECT THE THEORY OF DEEPENING
                        INSOLVENCY.........................................................17
                   B.   EVEN IF MICHIGAN ACCEPTED THE DOCTRINE OF
                        DEEPENING INSOLVENCY, IT WOULD NOT APPLY
                        HERE.................................................................19
        E.    PLAINTIFFS' NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW........20
              1.   ALLEGED FAILURE TO CONSIDER RED FLAGS............................21

　　　2.　　ALLEGED FAILURE TO EXAMINE RELATED PARTY
　　　　　TRANSACTIONS................................................................22
　　　3.　　ALLEGED FAILURE TO IDENTIFY INTERNAL CONTROL
　　　　　PROBLEMS ....................................................................22
　　　4.　　ALLEGED FAILURE TO ASSESS C&A'S ABILITY TO
　　　　　CONTINUE AS A GOING CONCERN...................................23
　　　5.　　ALLEGED FAILURE TO UNCOVER "FALSE SIDE LETTERS" .......23
　F.　　PLAINTIFFS' FRAUD CLAIM MUST BE DISMISSED FOR FAILURE
　　　TO COMPLY WITH RULE 9(B)'S PLEADING REQUIREMENTS.................24
　　　1.　　PLAINTIFFS HAVE FAILED TO PLEAD THAT KPMG'S 2003
　　　　　AUDIT OPINION WAS A MATERIAL FALSE STATEMENT...........25
　　　2.　　THE COMPLAINT FAILS TO ALLEGE WITH
　　　　　PARTICULARITY THAT KPMG ACTED WITH SCIENTER .............26
　　　　　A.　　THE STANDARD FOR PLEADING AUDITOR
　　　　　　　SCIENTER IS UNUSUALLY DEMANDING .............................26
　　　　　B.　　PLAINTIFFS' SOLE MOTIVE ALLEGATION, ABOUT
　　　　　　　FEES, CANNOT RAISE AN INFERENCE OF
　　　　　　　SCIENTER .....................................................................27
　　　　　C.　　BOILERPLATE ALLEGATIONS OF GAAS
　　　　　　　VIOLATIONS DO NOT ESTABLISH A SHOWING OF
　　　　　　　KNOWLEDGE OR RECKLESSNESS .......................................27
　　　　　D.　　PLAINTIFFS' GENERALIZED ALLEGATIONS THAT
　　　　　　　KPMG HAD ACCESS TO C&A ARE INSUFFICIENT
　　　　　　　TO PLEAD SCIENTER.......................................................28
　　　　　E.　　PLAINTIFFS' ALLEGATIONS OF RED FLAGS ARE
　　　　　　　INSUFFICIENT TO RAISE AN INFERENCE OF
　　　　　　　SCIENTER .....................................................................28
　　　　　　　(1)　　PLAINTIFFS' "RED FLAGS" ARE NOT PLED
　　　　　　　　　WITH SPECIFICITY, AND LACK FACTUAL
　　　　　　　　　SUPPORT........................................................29
　　　　　　　(2)　　KPMG HAD NO ACTUAL KNOWLEDGE OF
　　　　　　　　　THESE SO-CALLED RED FLAGS ..................................29
　　　　　　　(3)　　PLAINTIFFS DO NOT ALLEGE GAAS
　　　　　　　　　FAILURES, I.E. THAT THE RED FLAGS
　　　　　　　　　REQUIRED AUDIT PROCEDURES KPMG DID
　　　　　　　　　NOT PERFORM .................................................30
　　　　　F.　　PLAINTIFFS' ALLEGATIONS THAT KPMG DID NOT
　　　　　　　UNCOVER PLAINTIFFS' FRAUD DOES NOT MEAN
　　　　　　　THAT KPMG ACTED RECKLESSLY .......................................30
　　　　　G.　　PLAINTIFFS CANNOT ESTABLISH THAT KPMG'S
　　　　　　　AUDIT AMOUNTED TO "NO AUDIT AT ALL" OR
　　　　　　　THAT "NO REASONABLE ACCOUNTANT" WOULD
　　　　　　　HAVE REACHED THE SAME RESULT ...................................32
　　　3.　　PLAINTIFFS HAVE FAILED TO PLEAD RELIANCE.......................33
　G.　　PLAINTIFFS HAVE FAILED ADEQUATELY TO PLEAD AN AIDING
　　　AND ABETTING CLAIM AGAINST KPMG...................................................34

H.   PLAINTIFFS HAVE NOT ADEQUATELY PLED A BREACH OF
     CONTRACT CLAIM AGAINST KPMG............................................................35
     1.   THE BREACH OF CONTRACT CLAIM FAILS BECAUSE IT
          IS DUPLICATIVE OF PLAINTIFFS' NEGLIGENCE CLAIM .............36
     2.   EVEN IF PLAINTIFFS COULD PURSUE A BREACH OF
          CONTRACT CLAIM, THEY HAVE FAILED PROPERLY TO
          ALLEGE ONE HERE ..............................................................................37

VI.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED IN FAVOR OF
      ARBITRATION .............................................................................................37

VII.  CONCLUSION ...............................................................................................38

# TABLE OF AUTHORITIES

**CASES**                                         **PAGE(S)**

*AUSA Life Insurance Co. v. Ernst & Young,*
119 F. Supp. 2d 394 (S.D.N.Y. 2000) ...................................................................... 17

*In re Amcast Industrial Corp.,*
365 B.R. 91 (Bankr. S.D. Ohio 2007) .............................................................. 17, 18

*Askanase v. Fatjo,*
828 F. Supp. 465 (S.D. Tex. 1993) .......................................................................... 36

*In re Avado Brands, Inc.,*
358 B.R. 868 (Bankr. N.D. Tex. 2006) ................................................................... 18

*Baena v. KPMG LLP,*
389 F. Supp. 2d 112 (D. Mass. 2005),
*aff'd,* 453 F.3d 1 (1st Cir. 2006). .............................................................. 11, 13, 14

*Baker v. Arbor Drugs, Inc.,*
544 N.W.2d 727 (Mich. Ct. App. 1996) .................................................................. 24

*Battenfeld of America Holding Co., Inc. v. Baird, Kurtz & Dobson,*
60 F. Supp. 2d 1189 (D. Kan. 1999) ...................................................................... 36

*Begier v. Price Waterhouse,*
1992 WL 236175 (E.D. Pa. Sept. 14, 1992) ........................................................... 37

*Bell Atlantic Corp. v. Twombly,*
127 S. Ct. 1955 (2007) ....................................................................................... 8, 33

*Broderick v. PricewaterhouseCoopers LLP,*
169 Fed. Appx. 496 (9th Cir. 2004) ........................................................................ 28

*Brownell v. Garber,*
503 N.W.2d 81 (Mich. Ct. App. 1993) .................................................................... 37

*In re Burlington Coat Factory Securities Litigation,*
114 F.3d 1410 (3d Cir. 1997) .............................................................................. 8, 29

*Cambridge Biotech Corp. v. Deloitte & Touche,*
1997 WL 42516 (Mass. Super Ct. Jan. 28, 1997) ................................................... 21

*In re Cardinal Health Inc. Securities Litigation,*
426 F. Supp. 2d 688 (S.D. Ohio 2006) ........................................................ 21, 25, 30

*Cenco Inc. v. Seidman & Seidman,*
    686 F.2d 449 (7th Cir. 1982) ...................................................................34

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
    511 U.S. 164 (1994) ...............................................................................25

*Chase Bank of Texas v. Grant Thornton L.L.P.,*
    2003 WL 21350362 (Mich. Ct. App. June 10, 2003) ...............................24, 34, 35, 36

*Churella v. Pioneer St. Mutual. Insurance Co.,*
    671 N.W.2d 125 (Mich. Ct. App. 2003) ......................................................33

*In re CitX Corp., Inc.,*
    448 F.3d 672 (3d Cir. 2006) ................................................................17, 20

*Coleman v. Gurwin,*
    503 N.W.2d 435 (Mich. 1993) ..................................................................20

*Conley v. Gibson,*
    355 U.S. 41 (1957) ...................................................................................8

*D.D. Hamilton Textiles, Inc. v. Estate of Mate,*
    269 A.D.2d 214 (N.Y. App. Div. 1st Dep't 2000) ........................................21

*D.E. & J. Ltd. Partnership v. Conaway,*
    284 F. Supp. 2d 719 (E.D. Mich. 2003),
    *aff'd,* 133 Fed. Appx. 994 (6th Cir. 2005) ...........................................25, 28

*Decker v. Massey-Ferguson, Ltd.,*
    681 F.2d 111 (2d Cir. 1982) ....................................................................31

*Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.,*
    454 F.3d 1168 (10th Cir. 2006) ................................................................25

*Dileo v. Ernst & Young,*
    901 F.2d 624 (7th Cir. 1990) ...................................................................24

*Dodge v. Ford Motor Co.,*
    170 N.W. 668 (Mich. 1919) .....................................................................19

*In re Dublin Securities,*
    133 F.3d 377 (6th Cir. 1997) ...................................................................14

*Dunn v. Lederele Laboratories,*
    328 N.W.2d 576 (Mich. Ct. App. 1982)......................................................17

*Estate of Goldman v. Nat'l Bank of Detroit,*
    601 N.W.2d 126 (Mich. Ct. App. 1999) ..................................................................... 35

*Evans v. Pearson Enter., Inc.,*
    434 F.3d 839 (6th Cir. 2006) ................................................................................. 34

*Ferris, Baker Watts, Inc. v. Ernst & Young, LLP,*
    395 F.3d 851 (8th Cir. 2005) ................................................................................. 26

*Fidel v. Farley,*
    392 F.3d 220 (6th Cir. 2005) ................................................................................. 30

*Flamm v. Scherer,*
    198 N.W.2d 702 (Mich. Ct. App. 1972) .................................................................. 37

*Frye v. City of Detroit,*
    239 N.W. 886 (Mich. 1932) .................................................................................... 16

*Glazier v. Lee,*
    429 N.W.2d 857 (Mich. Ct. App. 1998) .................................................................. 11

*Grassmueck v. American Shorthorn Ass'n,*
    402 F.3d 833 (8th Cir. 2005) ................................................................................. 14

*Green Tree Fin. Corp.- Ala. v. Randolph,*
    531 U.S. 79 (2000) ................................................................................................ 37

*Hand v. Dayton-Hudson,*
    775 F.2d 757 (6th Cir. 1985) ................................................................................. 14

*In re Ikon Office Solutions, Inc.,*
    277 F.3d 658 (3d Cir. 2002) ......................................................................... 7, 26, 32

*In re Integrated Resources Real Estate Ltd. Partnerships Securities Litigation,*
    815 F. Supp. 620 (S.D.N.Y. 1993) .......................................................................... 23

*In re James River Coal Co.,*
    360 B.R. 139 (Bankr. E.D. Va. 2007) ..................................................................... 18

*Johnson v. Metabolife International, Inc.,*
    2002 WL 32494514 (N.D. Tex. Oct. 23, 2002) ....................................................... 24

*Kalnit v. Eichler,,*
    264 F.3d 131 (2d Cir. 2001) .................................................................................. 27

*Kennilworth Partners L.P. v. Cendant Corp.*,
    59 F. Supp. 2d 417 (D.N.J. 1999)..............................................................28

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
    313 U.S. 487 (1941) ....................................................................................8

*Kloian v. Schwartz*,
    725 N.W.2d 671 (Mich. Ct. App. 2006).....................................................21

*Krieger v. Gast*,
    2000 WL 288442 (W.D. Mich. Jan. 21, 2000)...........................................35

*LaMothe v. Automobile Club Insurance Association*,
    543 N.W.2d 42 (Mich. Ct. App. 1995)........................................................28

*In re Livent Securities Litigation*,
    78 F. Supp. 2d 194 (S.D.N.Y. 1999) ...................................................29, 31

*In re Marsh & McLennan Cos. Inc., Securities Litigation*,
    2006 WL 2057194 (S.D.N.Y. July 20, 2006).............................................26

*MCA Financial Corp. v. Grant Thornton, L.L.P.*,
    687 N.W.2d 850 (Mich. Ct. App. 2004)...............................................*passim*

*McIntyre v. Lyon*,
    37 N.W.2d 903 (Mich. 1949) .....................................................................34

*McLean v. Alexander*,
    599 F.2d 1190 (3d Cir. 1979) .....................................................................26

*Monroe v. Hughes*,
    31 F.3d 772 (9th Cir. 1994) .......................................................................20

*Nisselson v. Lernout*,
    469 F.3d 143 (1st Cir. 2006),
    *cert. denied*, 127 S. Ct. 2131 (2007)..........................................................11

*Novi v. Robert Adell Children's Funded Trust*,
    701 N.W.2d 144 (Mich. 2005) .....................................................14, 24, 25

*Official Comm. of Unsecured Creditors of Allegheny Health, Educ. & Res.
    Found. v. Pricewaterhouse Coopers, LLP*,
    2007 U.S. Dist. LEXIS 3331(W.D. Pa. Jan. 17, 2007) ...............................34

*Official Comm. of Unsecured Creditors of Color Tile v. Coopers & Lybrand LLP*
    322 F.3d 147 (2d Cir. 2003) ......................................................................14

*Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards,*
    437 F.3d 1145 (11th Cir. 2006),
    *cert. denied,* 127 S. Ct. 45, (U.S. 2006) .................................................14

*Official Comm. of Unsecured Creditors of Corell Steel v. Fishbein & Co., P.C.,*
    1992 WL 196768 (E.D. Pa. Aug. 10, 1992) ..............................................36

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.,*
    267 F.3d 340 (3d Cir. 2001) ......................................................................11

*Orzel v Scott Drug Co.,*
    537 N.W.2d 208 (Mich. 1995) ...........................................................1, 10

*In re Parmalat Sec. Litigation,*
    __ F. Supp. 2d__, 2007 WL 2263893 (S.D.N.Y. Aug. 8, 2007) .....................16, 19, 20

*Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.,*
    998 F.2d 1192 (3d Cir. 1993) .......................................................................6

*Pew v. Cardarelli,*
    No. 03-742, 2005 U.S. Dist. LEXIS 40018 (N.D.N.Y. Mar. 17, 2005), *aff'd,*
    164 Fed. Appx. 31 (2d Cir. N.Y. 2006).......................................................23

*Pilot Industrial, Inc. v. Grant Thornton, LLP,*
    2006 WL 2033996 (Mich. Ct. App. July 20, 2006)....................................20

*PR Diamonds, Inc. v. Chandler,*
    364 F.3d 671 (6th Cir. 2004) .....................................................................28

*Prentis Family Foundation, Inc. v. Barbara Ann Karmanos Cancer Institute,*
    698 N.W.2d 900 (Mich. Ct. App. 2005).....................................................18

*In re Refco, Inc. Securities Litigation,*
    2007 WL 1280649 (S.D.N.Y. Apr. 30, 2007) ...........................................30

*Robins v. Garg,*
    __ N.W.2d __, 2007 WL 2164870 (Mich. Ct. App. July 26, 2007)............15

*In re Rockefeller Ctr. Properties Securities Litigation,*
    311 F.3d 198 (3d Cir. 2002) ...........................................................................

*Rose v. National Auction Group,*
    646 N.W.2d 455 (Mich. 2002) ..................................................................18

*In re Royal Ahold N.V. Securities & ERISA Litigation*,
   351 F. Supp. 2d 334 (D. Md. 2004)...............................................................28, 31, 32

*Scalici v. Bank One, NA*,
   2005 WL 2291732 (Mich. Ct. App. Sept. 20, 2005) ...................................................11

*Sender v. Buchanan (In re Hedged-Investment Associates)*,
   84 F.3d 1281 (10th Cir. 1996) ......................................................................................14

*Seus v. John Nuveen & Co., Inc.*,
   146 F.3d 175 (3d Cir. 1998) .........................................................................................37

*Shivers v. McMartin, Wasek & Assoc., Inc.*,
   2005 WL 1959480 (Mich. Ct. App. Aug. 16, 2005) ...................................................33

*Skinner v. Square D Co.*,
   516 N.W.2d 475 (Mich. 1994) ...............................................................................14, 15

*In re Spear & Jackson Securities Litigation*,
   399 F. Supp. 2d 1350 (S.D. Fla. 2005)........................................................................28

*In re Stone & Webster, Inc. Securities Litigation*,
   414 F.3d 187 (1st Cir. 2005).........................................................................................25

*In re Suprema Specialties, Inc. Securities Litigation*,
   438 F.3d 256 (3d Cir. 2006) .........................................................................................27

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   127 S. Ct. 2499 (2007)..............................................................................................6, 26

*Travelers Indemnity Co. v. Lake*,
   594 A.2d 38 (Del. 1991).................................................................................................9

*Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*,
   906 A.2d 168 (Del. Ch. 2006),
   *aff'd*, 2007 Del. LEXIS 357 (Del. Aug. 14, 2007) ......................................................18

*Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP*,
   475 F.3d 824 (7th Cir. 2007) .......................................................................................27

*United States v. Arthur Young & Co.*,
   465 U.S. 805 (1984) ......................................................................................................20

*In re Williams Securities Litigation*,
   __ F. Supp. 2d__, 2007 WL 2007987 (N.D. Okla. July 6, 2007)................................23

*Wojcik v. William J Mcnish & Mcnish's Sporting Goods & Trophies Inc.,*
  2006 WL 2061499 (Mich. Ct. App. July 25, 2006) .................................................. 19

*In re WorldCom, Inc. Securities Litigation,*
  352 F. Supp. 2d 472 (S.D.N.Y. 2005) ...................................................................... 31

*In re Worlds of Wonder Securities Litigation,*
  35 F.3d 1407 (9th Cir. 1994) .................................................................................. 26

*Yadlosky v. Grant Thornton L.L.P.,*
  120 F. Supp. 2d 622 (E.D. Mich. 2000) ....................................................... 24, 26, 27

*Zucker v. Sasaki,*
  963 F. Supp. 301 (S.D.N.Y. 1997) .......................................................................... 27

Statutes

  15 U.S.C. § 78ff (2006) ......................................................................................... 12

Rules

  Fed. R. Civ. P. 8(a) ............................................................................................... 24

  Fed. R. Civ. P. 9(b) ........................................................................................*passim*

  Fed. R. Civ. P. 12(b)(6) ......................................................................................... 11

<u>Miscellaneous</u>

Codification of Statements on Auditing Standards ("AU") §§ 110.01-110.03 ............... 6, 7

Codification of Statements on Auditing Standards ("AU") § 230 ...................................... 8

Codification of Statements on Auditing Standards ("AU") § 230.12 ................................. 8

Codification of Statements on Auditing Standards ("AU") § 315 ...................................22

Codification of Statements on Auditing Standards ("AU") § 316 .......................... 8, 21, 29

Codification of Statements on Auditing Standards ("AU") §§ 316.09-316.12 ............ 8, 22

Codification of Statements on Auditing Standards ("AU") §§ 316.85 ...........................29

Codification of Statements on Auditing Standards ("AU") § 326 ...................................23

Restatement of Conflicts (Second) § 11 (1971) ..................................................................9

Restatement of Conflicts (Second) §§ 145, 148, 188 (1971) .............................................9

<u>Other Materials</u>

*S.E.C. v. Collins & Aikman Corp.*,
    No. 07 Civ 2419 (March 26, 2007) ............................................................5, 6, 30, 36

*United States v. Stockman*,
    No. 07 Civ. 0220 (March 21, 2007) .................................................5, 6, 12, 30, 32, 36

## I.    INTRODUCTION

"When a plaintiff's action is based, in whole or in part, on his own illegal conduct, a fundamental common-law maxim [known as the wrongful conduct rule] generally applies to bar the plaintiff's claim." *MCA Fin. Corp v. Grant Thornton, L.L.P.*, 687 N.W.2d 850, 853 (Mich. Ct. App. 2004) (quoting *Orzel v Scott Drug Co.*, 537 N.W.2d 208, 212 (Mich. 1995)).  This case is simply a transparent effort by the debtors, Collins & Aikman Corp. and Collins & Aikman Products Co. (collectively "C&A"), to profit from their own accounting fraud – a fraud that was designed to deceive, among others, C&A's independent auditor KPMG LLP ("KPMG").  In the binding case of *MCA Financial Corp.*, the Michigan Court of Appeals held that the wrongful conduct rule of Michigan (the governing law for the claims against KPMG) bars a debtor or its trustee from bringing any claims against its auditor relating to the company's fraud.

Furthermore, all of Plaintiffs' claims also fail because Plaintiffs fail to plead how KPMG's supposed misconduct was the proximate cause of their alleged injury, given that Plaintiffs' own actions, before and after KPMG's 2003 audit, admittedly caused the alleged injury.  And Plaintiffs' only damage allegation against KPMG, the theory of "deepening insolvency," has not been adopted by Michigan courts, or by any court in these circumstances, where Plaintiffs have failed to allege facts demonstrating that continued existence harmed C&A.

Beyond these flaws which infect all of the claims, each claim suffers additional defects.  The negligence claim fails because Plaintiffs' conclusory allegations that KPMG violated Generally Accepted Auditing Standards ("GAAS") do not allege that GAAS required KPMG to do more, much less tie any failures to material misstatements in the 2003 financial statements.

Even more spectacular is Plaintiffs' attempt to twist their specious negligence allegations into a fraud claim.  Plaintiffs argue that KPMG *defrauded C&A* by recklessly not catching and

informing Plaintiffs <u>of their own fraud</u>. Plaintiffs cannot establish that they reasonably relied on KPMG's audit opinion when they knew the truth, and when they knew that KPMG's opinion was based on incomplete information due to their own active concealment. Plaintiffs' theory is particularly ironic given that <u>KPMG</u> uncovered the fraud, required management to explain and investigate, and refused to proceed with the 2004 audit. In addition, Plaintiffs cannot establish with empty recitations of supposed GAAP and GAAS violations that KPMG's 2003 audit opinion – its only alleged "statement" – was false, much less that KPMG acted with scienter.

Plaintiffs' claim for aiding and abetting management's breach of fiduciary duty fails because Plaintiffs have not (and cannot) allege that KPMG knew of Plaintiffs' fraud.

Plaintiffs' breach of contract claim fails because a claim against an auditor for failing to perform an audit properly sounds in negligence rather than contract, and because any failure here was caused by Plaintiffs' own breach in failing to provide accurate information to KPMG.

## II.     NATURE AND STAGE OF PROCEEDINGS

On May 17, 2007, Plaintiffs filed this action against former C&A officers, directors, Heartland Industrial Partners, L.P. and related entities, and C&A's outside auditors, PricewaterhouseCoopers ("PWC") and KPMG. In lieu of answering, KPMG now moves to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## III.     SUMMARY OF ARGUMENT

1.     Michigan law governs Plaintiffs' claims against KPMG.

2.     The "wrongful conduct" rule, or "*in pari delicto*," bars all of Plaintiffs' claims against KPMG because Plaintiffs stand at least in equal fault; Plaintiffs' wrongful conduct proximately caused the alleged harm; and Plaintiffs' conduct is prohibited by criminal statutes.

3.     Plaintiffs fail to show how any alleged error by KPMG caused Plaintiffs' loss given that Plaintiffs' own management caused the various accounting errors and hid those errors

2

from its auditors. And Plaintiffs' sole damage theory, that KPMG's conduct deepened C&A's insolvency, has not been recognized by Michigan courts and has been rejected by most jurisdictions that have recently considered it.

      4.      Plaintiffs' claim of negligence fails to identify any GAAS violation.

      5.      Plaintiffs' claim for fraud fails to allege with particularity facts showing that KPMG made materially false statements, that it did so intentionally or recklessly, or that Plaintiffs relied on those statements in any way.

      6.      Plaintiffs' aiding and abetting claim fails to allege with particularity facts demonstrating that KPMG had knowledge of management's breaches of fiduciary duty.

      7.      Plaintiffs' breach of contract claim is duplicative of its malpractice claim and fails because of Plaintiffs' own breach.

      8.      Finally, Plaintiffs claims against KPMG should be dismissed in favor of binding arbitration as agreed to by the parties pursuant to the terms of their agreement.

## IV.    BACKGROUND

### A.    FACTUAL ALLEGATIONS

Plaintiffs represent the estate in bankruptcy and an affiliated entity of C&A, a manufacturer and supplier of automobile components. Compl. ¶¶ 5-8 (D.I. 1). In early 2001, C&A was acquired by Heartland, which in turn was managed by defendant Stockman. Compl. ¶¶ 28-29, 37. Plaintiffs allege that C&A then went on a takeover spree, acquiring a number of companies in 2001. Compl. ¶¶ 44-47.

Plaintiffs allege that Stockman, now in control of a highly-leveraged and much-expanded C&A, faced considerable pressure to increase revenues and income. His response was to enter into a series of fraudulent transactions to improve the appearance of C&A's financial statements. Compl. ¶ 40. Beginning in 2001 (shortly after the acquisition of Joan Fabrics), Stockman,

Michael Stepp (C&A's Chief Financial Officer) and Elkin McCallum (a board member of C&A and principal of Joan Fabrics) allegedly negotiated and entered into several false transactions, in which "round trip" payments were made between Joan Fabrics and C&A and recorded as rebate payments for prior purchases, thus improperly inflating C&A's quarterly income. Compl. ¶¶ 49-58. Furthermore, during 2002, C&A purchased at inflated prices certain business lines and other assets from defendant McCallum, who then repaid the overpayments as a series of unearned "supplier rebates" to C&A. Compl. ¶¶ 93-95. Plaintiffs further allege that, in the second quarter of 2002, Stockman and his associates also began to recognize improperly, or "pull forward," rebates from other suppliers. Compl. ¶ 56. In 2004, Plaintiffs expanded their improper rebate recognition practices to certain capital expenditures as well. Compl. ¶ 57. The alleged purpose of these various acts was artificially to improve C&A's financial statements in order to satisfy its debt covenants, and enable it to take on additional debt. Compl. ¶¶ 56-61.

Plaintiffs allege that these various fraudulent transactions were undertaken by C&A's senior management, including: (1) CEO Stockman; (2) CFO Stepp; (3) Director McCallum; (4) David R. Cosgrove, C&A's Vice President of Finance; (5) Paul C. Barnaba, Director of Financial Analysis for purchasing; (6) Robert A. Krause, Vice President and Treasurer; (7) John A. Galante, Director of Strategic Planning; and at least six other directors and officers – all of whom are named as defendants in this case, either for allegedly participating in the fraud or knowing of its existence and allowing it to continue. Compl. ¶¶ 10-27. Further, Plaintiffs allege that this fraud was approved by Heartland, which allegedly controlled C&A "through its share ownership of the Company and by designating a majority of the members of the Company's Board." Compl. ¶ 31. Plaintiffs assert claims against the individual defendants and Heartland

4

for violations of federal securities laws, breaches of fiduciary duty, fraud, and unjust enrichment, and against Heartland for breach of contract. Compl. ¶¶ 153-180.

PwC was C&A's auditor for fiscal years 2001 and 2002. Compl. ¶ 34. KPMG was C&A's auditor for fiscal year 2003 and part of fiscal year 2004, as provided in KPMG's 2003 and 2004 engagement letters. Compl. ¶ 35; Affidavit of Paul D. Brown In Support of Motions ("Brown Aff."), Exs. 1 and 2. Plaintiffs' allegations against KPMG and PwC (Compl. ¶¶ 78-82) are virtually identical as are the claims asserted for fraud, negligence/malpractice, breach of contract, and aiding and abetting the officers' breach of their fiduciary duties. Compl. ¶¶ 181-215. KPMG's only alleged false statement is its 2003 audit opinion, which stated: "In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of Collins & Aikman Corporation and subsidiaries as of December 31, 2003 . . ." Compl. ¶ 86.[1]

Plaintiffs allege that management misled the auditors by creating false "side letters" with suppliers attributing the rebates to past purchases, and other false and misleading documents. Compl. ¶¶ 55, 126-27. Management presented these false documents to the auditors "as 'proof' that C&A properly recorded the rebates in their accounting record." Compl. ¶ 127.

It was KPMG that first uncovered the fraud. As noted by the United States Attorney in its criminal actions against C&A management, in its audit work KPMG uncovered the rebate errors and brought them to C&A's audit committee. *See* Indictment, *United States v. Stockman*, No. 07 Cr. 0220, ¶ 62 (Mar. 21, 2007) (the "DOJ Indictment"), Brown Aff. Ex. 3; Complaint, *S.E.C. v. Collins & Aikman Corp.*, No. 07 Civ. 2419, ¶ 54 (Mar. 26, 2007) (the "SEC

---

[1]    The Complaint does not allege that KPMG failed to comply with professional standards governing KPMG's reviews of C&A's quarterly financial statements.

Complaint"), Brown Aff. Ex. 4.[2]  Soon thereafter, on March 17, 2005, C&A announced it was

delaying the issuance of its fiscal 2004 financial results to review its internal rebate policies; it

subsequently retained independent counsel to investigate the issue.  Compl. ¶¶ 65-66; 69.

Approximately two months later, the Board of Directors removed Stockman and on May 17,

2005, C&A filed for bankruptcy protection under Chapter 11.  Compl. ¶ 6.

> **B.     THE ROLE OF PLAINTIFFS AND KPMG IN PLAINTIFFS' FINANCIAL REPORTING**
>
> > **1.     MANAGEMENT PREPARES FINANCIAL STATEMENTS AND AUDITORS AUDIT THEM**

A fundamental premise of financial reporting is that the company's management – not

the auditor – is responsible for the company's financial statements:

> The financial statements are management's responsibility.  The
> auditor's responsibility is to express an opinion on the financial
> statements.  Management is responsible for adopting sound
> accounting policies and for establishing and maintaining internal
> control that will, among other things, record, process, summarize,
> and report transactions (as well as events and conditions)
> consistent with management's assertions embodied in the financial
> statements.

Codification of Statements on Auditing Standards ("AU") § 110.03 ("Responsibilities and

Functions of the Independent Auditor").[3]

---

[2]     Plaintiffs' Complaint incorporates various public documents, such as the SEC Complaint and the DOJ Indictment, and the Company's SEC filings.  The Court is entitled to consider these documents, and public documents not cited by Plaintiffs but embraced by their allegations, on a motion to dismiss.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct 2499, 2509 (2007).  Additionally, a court "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  If this motion is converted to one for summary judgment, KPMG requests the right to supplement the record.

[3]     The auditing literature cited throughout this brief was the governing literature in place at all relevant times.

While management prepares financial statements, the auditor only opines on whether those financial statements "fairly present[], in all material respects," the company's financial position in accordance with "Generally Accepted Accounting Principles" or "GAAP." *See In re Ikon Office Solutions, Inc.*, 277 F.3d 658, 669 (3d Cir. 2002) (purpose of audit is to express opinion on "client's accounts and financial statements"); AU § 110.01. The issuance of an unqualified or "clean" audit opinion by an auditor "does not guarantee that a client's accounts and financial statements are correct" but rather "certifies only that [the auditor] exercised appropriate, not flawless, levels of care and judgment" in conducting the audit. AU § 110.01.

### 2. GAAS IS CLEAR THAT AUDITORS ARE NOT EXPECTED TO UNCOVER COLLUSIVE FRAUD BEING COMMITTED AND CONCEALED BY MANAGEMENT

GAAS recognizes that auditors are not expected to uncover fraud that management has hidden from them:

> [T]he auditor has a responsibility to plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether caused by fraud or error. *However, absolute assurance is not attainable and thus even a properly planned and performed audit may not detect a material misstatement resulting from fraud.*

AU § 316.12 ("Consideration of Fraud in a Financial Statement Audit") (emphasis added).

Likewise, it states:

> Because of the nature of audit evidence and the characteristics of fraud, the auditor is able to obtain reasonable, but *not absolute assurance* that material misstatements are detected.

AU § 110.02 (emphasis added).

The standards recognize that fraud is particularly hard to detect where the company and an outside third party create false documentation, or withhold documentation, such that an auditor does not know the true terms of an agreement. GAAS recognizes in multiple places that

7

it is virtually impossible for auditors to detect such hidden terms. AU § 230 ("Due Professional

Care in the Performance of Work"), for example, provides:

> Because of the characteristics of fraud, a properly and planned and
> performed audit may not detect a material misstatement . . . For
> example, auditing procedures may be ineffective for detecting an
> intentional misstatement that is concealed through collusion among
> personnel within the entity and third parties or among management
> or employees of the entity. *Collusion may cause the auditor who*
> *has properly performed the audit to conclude that evidence*
> *provided is persuasive when it is, in fact, false . . . Furthermore, an*
> *auditor may not discover the existence of a modification of*
> *documentation through a side agreement that management or a*
> *third party has not disclosed.*

AU § 230.12 (emphasis added); *see also* AU § 316.09 ("In addition, an auditor may not discover

the existence of a modification of documentation through a side agreement that management or a

third party has not disclosed.")

## V.    ARGUMENT

### A.    MOTION TO DISMISS STANDARD

To survive a motion to dismiss, a plaintiff cannot simply make "bald" assertions of the

existence of each element of a claim. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410,

1429 (3d Cir. 1997). A complaint "requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do [.]" *Bell Atlantic Corp. v. Twombly,*

127 S. Ct. 1955, 1965 (2007) (citing *Conley v. Gibson,* 355 U.S. 41, 47 (1957). Instead,

"[f]actual allegations must be enough to raise a right to relief *above the speculative level*" and

must "state a claim to relief that is *plausible* on its face." *Id.* at 1965, 1974 (emphasis added).

Fraud-based claims are subject to a further heightened pleading standard. (*See* Section V.D.1.)

### B.    MICHIGAN LAW GOVERNS THE CLAIMS AGAINST KPMG

As Plaintiffs' claims against KPMG arise under state law, Delaware's choice-of-law

principles apply. *See Klaxon v. Stentor Elec. Co.,* 313 U.S. 487, 496 (1941). Delaware follows

the Second Restatement of Conflicts, which sets out different choice-of-law tests based on the underlying claim. *See Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991).

The choice of law for negligence/professional malpractice claims depends on: (1) the location where Plaintiffs' injury occurred, (2) the state where the conduct giving rise to the injury occurred, (3) the domiciles and residence of the parties,[4] and (4) the place where the relationship between the parties is centered. Restatement of Conflicts (Second) § 145 (1971).

Similarly, for fraud claims, "[w]hen the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties." *Id.* § 148.

For a breach of contract claim, the court looks to the law of the state with the greatest connection to the contract; "if the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied." *Id.* § 188.

Here, all factors point to the application of Michigan law. The place of contracting and negotiation was Michigan: the 2003 and 2004 Agreements were sent from KPMG's office in Detroit, Michigan to C&A's headquarters in Troy, Michigan. *See* 2003 Agreement at 1, 2004 Agreement at 1. The location of the alleged injury to C&A is Michigan, the principal place of business of C&A. *See id.* The allegedly injurious conduct – KPMG's audit – took place in Michigan: the KPMG audit team was located in Michigan, was "frequently present" at C&A's headquarters and financial offices in Michigan, conducted its reviews and performed its audit in

---

[4]     The "domiciles and residences" of the parties are of less relevance to corporate actors. *See* Restatement of Conflicts (Second) § 11, comment (l) ("No useful purpose, however, is served by assigning a domicil to a corporation"). However, to the extent such factors are relevant, the relevant states are Michigan (C&A's principal place of business), and Delaware (C&A's state of incorporation); KPMG, as a partnership, is a "resident" of each state in which one of its partners resides.

9

Michigan, and issued the audit opinion letter there.  Compl. ¶ 35; *see also* 2004 Annual Report,

Collins & Aikman Corp., Brown Aff. Ex. 5, at F-1.  The alleged false representation – KPMG's

audit opinion – was made in Michigan, where the opinion was issued, and received in Michigan,

where C&A (to whom the opinion was addressed) is based.  Any action in reliance on the

opinion took place in Michigan, where C&A is based.  Finally, the relationship between the

parties is centered in Michigan:  the engagement contract was negotiated and executed in

Michigan, and addressed between parties in Michigan; the allegedly negligent audit was

performed in Michigan; the interactions between the parties (and their representatives) occurred

in Michigan; and the ostensible injury occurred in Michigan.  Therefore, Michigan law governs

all of Plaintiffs' claims against KPMG.

### C.    MICHIGAN'S WRONGFUL CONDUCT RULE BARS ALL OF PLAINTIFFS' CLAIMS

Plaintiffs' claims against KPMG, reduced to their essence, assert that KPMG is liable to

Plaintiffs for failing to detect various frauds Plaintiffs perpetrated and structured to avoid

KPMG's detection.  As such, these claims are barred by the wrongful conduct rule (known in

other jurisdictions as the doctrine of *in pari delicto*).

### 1.    PLAINTIFFS' ALLEGATIONS SATISFY ALL OF THE ELEMENTS OF MICHIGAN'S WRONGFUL CONDUCT RULE

Michigan's wrongful conduct rule holds that "[a]s between parties *in pari delicto*, that is

equally in the wrong, the law will not lend itself to afford relief to one as against the other, but

will leave them as it finds them."  *Orzel,* 537 N.W.2d at 212-13.  The *Orzel* court set out the

three factors that trigger the wrongful conduct rule:  (1) the plaintiff and defendant stand at least

in equal fault, (2) the plaintiff's illegal conduct is a proximate cause of the injury, and (3) the

nature of plaintiff's wrongful conduct is prohibited under a criminal or penal statute.  *See id.* at

214-17.  If these three factors are present, Michigan courts will grant the equivalent of a motion

to dismiss. *See Glazier v. Lee*, 429 N.W.2d 857, 860 (Mich. Ct. App. 1998); *Scalici v. Bank One*, NA, No. 254632, 2005 WL 2291732, at *2 (Mich. Ct. App. Sept. 20, 2005) ("[W]here a complaint shows on its face that relief is barred by an affirmative defense, the trial court may dismiss the complaint for failing to state a claim on which relief can be granted . . .Consequently, the trial court could properly consider whether the wrongful conduct rule barred plaintiffs' claims when ruling on defendants' motions for summary disposition under MCR 2.116(C)(8)."); *MCA Fin. Corp.*, 687 N.W.2d at 852-53.[5]

Plaintiffs' allegations satisfy each of these elements. As a matter of law the bad conduct of C&A's management is attributed to Plaintiffs. *See MCA Fin. Corp.*, 687 N.W.2d at 858. And the fault resulting from this bad conduct far exceeds any alleged fault of KPMG. Plaintiffs, through Stockman and the other officers, created and perpetrated the fraud that is the center of the Complaint. Even taking the allegations of the Complaint as true, KPMG merely failed to detect Plaintiffs' fraud. Moreover, KPMG failed to detect Plaintiffs' wrongdoing because Plaintiff intentionally concealed the fraud from KPMG. *See* Compl. ¶ 127. At a minimum, Plaintiffs stand in equal fault.

Second, Plaintiffs' fraud was a proximate cause (indeed, the direct cause) of the alleged injury. The damage theory Plaintiffs have articulated against KPMG is "deepening insolvency." But it was Plaintiffs' conduct that caused any increased losses (*see* Compl. ¶ 40), and it was Plaintiffs' decision not to file for bankruptcy earlier. Thus, Plaintiffs' own wrongful conduct was <u>at least</u> a proximate cause of any deepened insolvency.

---

[5]     Federal courts will similarly grant a motion to dismiss pursuant to Rule 12(b)(6) on the ground of *in pari delicto*. *See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 360 (3d Cir. 2001); *see also Nisselson v. Lernout*, 469 F.3d 143, 158 (1st Cir. 2006); *cert. denied,* 127 S. Ct. 2131 (U.S. 2007), *Baena v. KPMG LLP*, 453 F.3d 1, 6 (1st Cir. 2006).

Finally, Plaintiffs' allegedly wrongful acts violated numerous federal criminal laws. The United States Attorney's Office recently unsealed an eight-count indictment against Stockman, Stepp, Cosgrove and Barnaba, alleging securities fraud, wire fraud, bank fraud, obstruction of agency proceedings, and criminal conspiracy. *See generally* DOJ Indictment. The penalties for willful securities fraud alone could result in a sentence of up to 20 years and fines up to $5 million. *See* 15 U.S.C. § 78ff (2006). Moreover, Plaintiffs' allegations against the individual defendants, which are binding on Plaintiffs in connection with a motion to dismiss, are clear-cut evidence of criminal conduct.

2. **RECENT MICHIGAN AND OTHER PRECEDENT HOLDS THAT THE WRONGFUL CONDUCT RULE BARS A BANKRUPT COMPANY'S CLAIMS FOR ALLEGED MALPRACTICE AGAINST ITS FORMER AUDITORS**

The Michigan Court of Appeals recently applied the "wrongful conduct" rule to bar claims against an auditor in *MCA Financial Corp.*, a case closely analogous to the present one. In *MCA*, a mortgage bank had sold and marketed fraudulent investment products to customers in violation of state and federal law. *See* 687 N.W.2d at 852. Management attempted to conceal the fraud but eventually failed; the company entered bankruptcy soon after the fraud came to light, securities fraud enforcement actions were brought against management. *See id.* While in bankruptcy, the debtor, through its liquidating agent, brought suit against its auditors for failing to detect fraudulent transactions and accounting irregularities. *See id.* The court held that management's conduct was properly imputed to the company under Michigan law, noting that actions of management to inflate the company's financial statements in order to keep it solvent are not adverse to the company's interest and thus do not trigger the "adverse interest" exception to common-law principles of agency. *See id.* at 858. The court further held that the wrongful conduct rule barred plaintiffs' claims against its auditor – both those alleging an omission

(failing to detect management's fraud) and those alleging an affirmative act (certifying the company's financial statements as proper). *Id.* at 854-55 ("Because plaintiffs cannot show that the wrongdoing occurred at defendants' urging or affirmative advice, plaintiffs stand *in pari delicto* with defendants. In short, to prevail, plaintiffs would have to show more than that defendants turned a blind eye to plaintiffs' wrongdoing, but that . . . the scheme originated with defendants rather than with plaintiffs.") Finally, the court held that the debtor was not entitled even to *commence* an action to benefit its allegedly defrauded investors – if such an action existed at all, it could only be raised by the defrauded investors directly. *See id.* at 856.

This case is controlling precedent, on point, and requires dismissal of all claims against KPMG. Management – including the dominating majority shareholder and nearly all of the officers and directors – conducted the alleged fraud. Compl. ¶¶ 24-27. The fraud was undertaken to prop up C&A's financial statements and enable it to borrow additional funds – therefore, management's conduct is properly imputed to C&A. Compl. ¶¶ 59-64. And under the principles of Michigan's wrongful conduct rule, C&A stands in at least equal fault to its auditors. The wrongful conduct rule thus bars all of Plaintiffs' claims against KPMG.

Courts in other jurisdictions have similarly applied the doctrine of *in pari delicto* to bar claims brought by a bankrupt debtor, or a trustee in bankruptcy, against its former auditors. For instance, in *Baena v. KPMG LLP*, 389 F. Supp. 2d 112, 114 (D. Mass. 2005), *aff'd,* 453 F.3d 1 (1st Cir. 2006), the trustee of a post-confirmation litigation trust asserted claims against the debtor's former auditor, KPMG, including claims for professional malpractice, aiding and abetting management's breach of fiduciary duty, and state unfair trade practices laws. Plaintiffs alleged that KPMG's audit opinions allowed the company to take on additional debt that the company was unable to repay. *See id.* The trial court dismissed the claims under *in pari delicto*,

13

holding that "the Breaching Managers controlled the corporation, perpetrated the fraud, and, in the words of the Complaint, 'caused' the $340 million of additional debt to be incurred. As such, the corporation cannot sustain a claim against Defendants arising out of its own misdeeds." *Id.* at 120. The First Circuit affirmed because, "assuming fraudulent financial statements [existed], senior L&H management were, on the trustee's own version of events, the primary wrongdoers." *Baena*, 453 F.3d at 7. The current allegations are fundamentally the same.

Numerous other courts have also applied *in pari delicto* to bar claims by a bankrupt entity against its former auditors, counsel or business partners for failing to detect management's own fraud. *See, e.g., Official Comm. of Unsecured Creditors of Color Tile v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158-66 (2d Cir. 2003) (*in pari delicto* bars claims of breach of fiduciary duty against former auditors); *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1150-52 (11th Cir. 2006), *cert. denied,* 127 S. Ct. 45 (2006) (same for trustee's RICO claims against former partners); *Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 837 (8th Cir. 2005) (same for trustee's negligence claims against industry organization); *Terlecky v. Hurd (In re Dublin Secs.)*, 133 F.3d 377, 381 (6th Cir. 1997) (same for claims of negligence, breach of fiduciary duty, negligent misrepresentation, recklessness, and common law fraud against former lawyers); *Sender v. Buchanan (In re Hedged-Inv. Assoc's)*, 84 F.3d 1281, 1285 (10th Cir. 1996) (same for trustee's claims against former partner under state partnership act).

### D.    PLAINTIFFS CANNOT ESTABLISH CAUSATION OR DAMAGES

For each claim, Plaintiffs must both allege with sufficient specificity how KPMG's 2003 audit work or opinion proximately caused their injury, and allege cognizable damages. *See Hand v. Dayton-Hudson,* 775 F.2d 757, 759 (6th Cir. 1985) (applying Michigan law); *Novi v. Robert Adell Children's Funded Trust*, 701 N.W.2d 144, 152 n.8 (Mich. 2005). Under Michigan law, "proximate cause" requires a showing of both "cause in fact" *and* "legal cause." *Skinner v.*

14

*Square D Co.,* 516 N.W.2d 475, 479 (Mich. 1994). "Cause in fact" requires that the injury "could not have occurred without, (or 'but for') that act or omission." *Robins v. Garg,* ___ N.W.2d ___, 2007 WL 2164870 (Mich. Ct. App. July 26, 2007).[6] "Legal cause" further requires that such injury was foreseeable. *Skinner,* 516 N.W.2d at 479. Plaintiffs' claims must be dismissed for failing to allege that KPMG's conduct proximately caused any injury. Plaintiffs also fail to allege a valid damage theory against KPMG.

### 1.    PLAINTIFFS DO NOT ALLEGE HOW KPMG'S AUDIT PROXIMATELY CAUSED THE HARM SUFFERED BY C&A

Plaintiffs' allegations demonstrate that their own business actions – fraudulent and otherwise – caused the Company's downfall. The second paragraph of the "substantive allegations" section of the Complaint makes this abundantly clear: "By the end of 2001, Collins & Aikman had announced and/or completed three major acquisitions which dramatically increased the size of the Company. This acquisition spree positioned the Company for disaster." Compl. ¶ 37. The Complaint is rife with similar allegations that pin the Company's eventual insolvency on Plaintiffs' poor, and sometimes fraudulent, business decision-making:

- "[D]uring the time that Defendant Stockman and his confederates ran the Company, Collins & Aikman's debt load had dramatically increased from approximately $884 million as of December 30, 2000 to approximately $1.6 billion as of December 31, 2004." (Compl. ¶ 60.)

- "In short, Defendant Stockman and others acting at his direction engaged in a pattern of fraudulent conduct with respect to GECC that, when discovered, caused great harm to the Company, its relations with GECC – a major lender to the Company, and its reputations in the business community." (*Id.* ¶ 64.)

- "Based, in material part, on these misrepresentations [by Defendant Stockman and others acting at his direction] Credit Suisse First Boston Corporation agreed to lend Collins & Aikman an additional $75 million in financing . . . Because the

---

[6]    Unreported decisions cited herein are collected in the Compendium of Unreported Decisions cited in the Opening Brief in Support of Defendant KPMG LLP's Motion to Dismiss, which is filed contemporaneously herewith.

> Company was hemorrhaging cash and losing money at a furious pace, this
> particular $75 million borrowing further deepened the insolvency of the
> Company." (*Id.* ¶¶ 70-72.)

An auditor's conduct cannot be the proximate cause of an injury caused by management's

decisions.

This reality – that the actions of Plaintiffs and not KPMG caused C&A's injury – is made

clear by the fact that the vast majority of the alleged wrongdoing occurred either <u>before</u> or <u>after</u>

KPMG's 2003 audit work. For instance, Plaintiffs allege that in 2001 – <u>two years prior to</u>

<u>KPMG's retention</u> – "Defendants employed a variety of fraudulent schemes designed to

artificially inflate the Company's reported financial results, avoid triggering debt covenants and

enable Collins & Aikman to borrow additional funds, thereby deepening its insolvency." Compl.

¶ 40. *See also id.* ¶ 91 (alleging misconduct by Director and Officer Defendants that led to

C&A's "deepening insolvency" in the fourth quarter of 2001); *id.* ¶¶ 55-56 (alleging the same in

2002). KPMG can not be liable for damages resulting from actions taken before its

involvement. *See Frye v. City of Detroit*, 256 Mich. 466, 470 (1932) ("defendant . . . cannot be

held to have its negligence relate back and encompass the precedent negligence of, and injuries

inflicted by, an independent tort-feasor").

Moreover, Plaintiffs allege that the proximate cause of the injury was actions that

occurred <u>after</u> KPMG's alleged misconduct, and do not allege that these developments were

foreseeable by KPMG. *See, e.g.,* Compl. ¶¶ 63-64 (alleging misdeeds by Stockman in

connection with GECC transaction, which occurred in December 2004 and early 2005 – nine

months after KPMG had completed its 2003 audit); *see also id.* ¶¶ 66-71 (listing other

misstatements made by management in 2005 to forestall C&A's filing for bankruptcy). Even if

proximate cause was otherwise pled (which it is not), these unforeseeable post-audit actions

break the alleged connection between KPMG's issuance of the 2003 audit opinion and the

alleged damage. *See In re Parmalat Sec. Litig.,* __ F. Supp. 2d __, 2007 WL 2263893, at *19

(S.D.N.Y. Aug. 8, 2007) (holding plaintiff had not sufficiently alleged proximate cause where

the only alleged reckless conduct occurred two years after key audit reports were issued); *see*

*also Dunn v. Lederele Labs.,* 328 N.W.2d 576, 582 (Mich. Ct. App. 1982) ("unforeseeable

intervening forces destroy causation and negate liability"); *AUSA Life Ins. Co. v. Ernst &*

*Young,* 119 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) (rejecting fraud claims because "plaintiffs'

loss on their investments in [the company's] notes was not a foreseeable result of E&Y's

complicity in [the company's] misrepresentations but of post-audit developments that could not

have been anticipated"), *aff'd,* 39 Fed. Appx. 667 (2d Cir. 2002).

### 2.    PLAINTIFFS' "DEEPENING INSOLVENCY" THEORY OF DAMAGES FAILS AS A MATTER OF LAW

Plaintiffs' only damage theory against KPMG, that KPMG's actions prolonged the life of

C&A causing a "deepening insolvency," *see* Compl. ¶¶ 60, 149, 191, fails for two reasons.

### a.    MICHIGAN HAS NOT ADOPTED AND WOULD LIKELY REJECT THE THEORY OF DEEPENING INSOLVENCY

No reported cases in Michigan apply a "deepening insolvency" theory of damages. *See*

*MCA Fin. Corp.,* 687 N.W.2d at 858 (recognizing that other courts have considered deepening

insolvency theory but citing no Michigan cases and not reaching the merits of the theory).[7]

Recently, courts from other jurisdictions have rejected the deepening insolvency theory;

the theory is not favored. *See In re Amcast Indus. Corp.,* 365 B.R. 91, 118 (Bankr. S.D. Ohio

2007) ("The tide has turned and courts are increasingly reluctant to recognize deepening

insolvency as a legitimate claim" and predicting that Ohio courts would reject the theory); *see*

*also In re CitX Corp., Inc.,* 448 F.3d 672, 678 (3d Cir. 2006) (rejecting deepening insolvency as

---

[7]    KPMG has performed a diligent search of Michigan case law and has not found any cases other than *MCA Fin. Corp.* that consider the deepening insolvency theory.

17

a theory of damages); *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.,* 906 A.2d 168, 205 (Del. Ch. 2006), *aff'd,* 2007 Del. LEXIS 357 (Del. Aug. 14, 2007) (rejecting deepening insolvency because to recognize it would "fundamentally transform Delaware law"); *In re James River Coal Co.,* 360 B.R. 139, 179 (Bankr. E.D. Va. 2007) (citing *Trenwick* and recognizing deepening insolvency "would fundamentally transform Virginia law"); *In re Avado Brands, Inc.,* 358 B.R. 868, 887 (Bankr. D. Tex. 2006) (predicting that the Georgia Supreme Court would reject deepening insolvency as a cause of action). Because the deepening insolvency theory similarly conflicts with Michigan law in several ways, it is likely that Michigan courts also would reject the doctrine.

First, courts reject deepening insolvency because other long-established doctrines, such as breach of fiduciary duty, provide adequate remedies for the wrongs that deepening insolvency purports to address. *See Amcast,* 365 B.R. at 117-19 ("[A]t its best the deepening insolvency theory is redundant . . . ."). Michigan recognizes breach of fiduciary duty as a claim and thus there is no need to apply the doctrine. *See e.g., Rose v. Nat'l Auction Group,* 646 N.W.2d 455, 469 (Mich. 2002) (utilizing a breach of fiduciary duty cause of action); *Prentis Family Found., Inc. v. Barbara Ann Karmanos Cancer Inst.,* 698 N.W.2d 900, 908 (Mich. Ct. App. 2005).

Second, courts have rejected deepening insolvency because it contradicts the business judgment rule. *See Amcast,* 365 B.R. at 118 ("[Deepening insolvency] destroys the fundamental principles of corporate responsibility and the protections of the business judgment rule"); *Trenwick,* 906 A.2d at 205 ("If the board of an insolvent corporation… pursues a business strategy that it believes will increase the corporation's value…it does not become a guarantor of

that strategy's success.").[8]  Michigan has long embraced the business judgment rule which states that "courts are reluctant to interfere with the discretion vested in the directors and officers of a corporation to manage its affairs." *Wojcik v. William J Mcnish & Mcnish's Sporting Goods & Trophies Inc.*, No. 267005, 2006 WL 2061499, at *3 (Mich. Ct. App. July 25, 2006); *see also Dodge v. Ford Motor Co.*, 170 N.W. 668, 684 (Mich. 1919).  Michigan thus would likely reject the deepening insolvency rule for the same reasons other courts have.

**b.    EVEN IF MICHIGAN ACCEPTED THE DOCTRINE OF DEEPENING INSOLVENCY, IT WOULD NOT APPLY HERE.**

Those non-Michigan courts that have recognized deepening insolvency have limited its application to circumstances that are not present here.  Plaintiffs' theory appears to be that in August 2004, the Company sold $415 million in notes which "further deepened the insolvency of the Company by providing it with funds it would rapidly lose and be unable to repay due to the huge hidden operating losses it already had incurred and was continuing to incur."  Compl. ¶ 60. Despite the additional funds, C&A continued to suffer operating losses and eventually entered bankruptcy. *See id.* ¶¶ 62, 71-74.

None of these allegations show "deepening insolvency."  In *In re Parmalat Sec. Litig.*, a recent case analyzing the doctrine in depth, the court recognized that incurrence of new debt does not deepen a company's insolvency, as Plaintiffs claim here.  Rather,

> The point is that a company's insolvency is not deepened simply by the incurrence of new debt where the company suffers no loss on the loan transaction.  The insolvency is deepened when, for example, the proceeds of the loan are squandered or assets otherwise are looted.  It is at that point that the gap between liabilities and assets widens and the ability to service outstanding debt is impaired.

---

[8]    Since a claim for deepening insolvency cannot be raised against directors and officers, *a fortiori* it cannot survive against professionals advising those directors and officers.

19

*In re Parmalat,* at *10; *see also In re CitX*, 448 F.3d at 677 (auditor's opinion allowing CitX to raise funds "lessened CitX's insolvency" rather than deepening it).

As for any theory that KPMG's audit of C&A's 2003 financial statements caused the dissipation of corporate assets by causing C&A to delay its bankruptcy filing, Plaintiffs have failed to allege facts demonstrating that C&A was injured because it delayed filing. First, Plaintiffs fail to allege that an earlier filing would have been viable. *See In re Parmalat*, at *10-12. Second, even if Plaintiffs had alleged that reorganization and continued operation of the Company would have been a viable option had bankruptcy occurred earlier, such an allegation would be purely speculative. *See id.* at *11 (noting that Plaintiffs' theory would require "fact finder to speculate not only as to whether Parmalat USA would have filed for bankruptcy sooner but also as to whether the trustees would have sought reorganization as opposed to liquidation, and whether a plan for reorganization would have been approved"). Such an allegation could not survive a motion to dismiss. *See id.* at *11 ("Plaintiffs have not supplied factual allegations sufficient to raise a right to relief above the speculative level.").

### E.    PLAINTIFFS' NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW

Plaintiffs fail to allege that KPMG breached a duty, as required for negligence. *See Pilot Indus., Inc. v. Grant Thornton, LLP*, No. 258689, 2006 WL 2033996, at *1 (Mich. Ct. App. July 20, 2006) (per curiam); *Coleman v. Gurwin*, 503 N.W.2d 435, 436-37 (Mich. 1993). An auditor who complied with GAAS has not breached a duty and therefore has not committed negligence. *See Pilot Indus., Inc.*, 2006 WL 2033996, at *1 (("Accountants, like physicians and lawyers, owe a duty to perform their services with that degree of skill and competence reasonably expected of persons in their profession in the community."); *see also United States v. Arthur Young & Co.*, 465 U.S. 805, 811 (1984); *Monroe v. Hughes*, 31 F.3d 772, 774 (9th Cir. 1994).

Merely reciting GAAS provisions and then making conclusory assertions that those provisions have been violated is not enough. *See Cambridge Biotech Corp. v. Deloitte & Touche,* No. 96-1480-A, 1997 WL 42516, at *4 (Mass. Super. Ct. Jan. 28, 1997) (dismissing negligence claim because "Plaintiff fails to specify facts concerning defendant's alleged negligent acts or omissions, specific GAAS violations, and what facts [auditor] knew or should have known concerning plaintiff"); *D.D. Hamilton Textiles, Inc. v. Estate of Mate,* 269 A.D.2d 214, 215 (N.Y.A.D. 1st Dep't 2000); *cf. Kloian v. Schwartz,* 725 N.W.2d 671, 677 (Mich. Ct. App. 2006) (conclusory allegations are insufficient to state a cause of action for legal malpractice). For the most part, this is exactly what Plaintiffs have done. *See* Compl. ¶ 122 (listing a number of general GAAS provisions but failing to allege that KPMG violated them or how KPMG violated them); ¶ 143 (alleging that KPMG violated various Standards, Standards of Reporting, and Standards of Field Work, without alleging how or why). Indeed, many of Plaintiffs' allegations are so boilerplate that they impermissibly conflate PWC and KPMG. *See, e.g.,* Compl. ¶¶ 78, 81-83, 87, 89, 96, 97, 100, 110, 113, 121-138, 140-144, 149-152.

Plaintiffs' few attempts to formulate more specific allegations of GAAS violations fail for a variety of reasons, including that most do not relate to the alleged improper rebates, which is the only alleged material error in the 2003 financial statements.

### 1.    ALLEGED FAILURE TO CONSIDER RED FLAGS

Plaintiffs' allegation that KPMG violated AU § 316 by issuing its 2003 audit opinion despite the presence of numerous "red flags" fails for three reasons. Compl. ¶¶ 131-32. First, Plaintiffs allege no facts to support their bald conclusion that "all of [these risk factors] were present at Collins & Aikman." Compl. ¶ 132. In fact, the listed "red flags" are copied verbatim from AU § 316. A mere recitation of red flags does not constitute a GAAS violation. *See In re Cardinal Health*, 426 F. Supp. 2d at 777-78 (rejecting allegation that financial statements "were

21

riddled with red flags" when Plaintiffs failed to allege "who, where, when, or how E&Y actually violated" GAAS standards). Second, Plaintiffs fail to allege that these supposed red flags were known, or should have been known, by KPMG. Third, and critically, they fail to allege that the red flags required KPMG to perform some audit step it did not perform, i.e. that the audit did not comply with GAAS. *See* AU §§ 316.09-316.12.

### 2.   ALLEGED FAILURE TO EXAMINE RELATED PARTY TRANSACTIONS

Plaintiffs' allegation that KPMG failed to "determine the values Collins & Aikman ascribed to entities that it purchased from Defendant McCallum in its financial statements," Compl. ¶ 142, confuses PWC and KPMG. First, the transaction occurred in 2002 – the year before KPMG's audit – and Plaintiffs fail to explain how C&A's accounting for it could have been affected by KPMG's audit of the 2003 financial statements. Second, even if the 2002 transaction were relevant to the 2003 audit, Plaintiffs do not identify any GAAS provision requiring an auditor to "determine the value[]" related to transactions with Defendant McCallum.

### 3.   ALLEGED FAILURE TO IDENTIFY INTERNAL CONTROL PROBLEMS

Plaintiffs' allegation that KPMG failed adequately to audit internal controls also confuses KPMG and PWC. First, Plaintiffs cite to AU § 315 that requires a "newly retained auditor to communicate with the predecessor auditor," and assert that Arthur Andersen knew of control problems. Compl. ¶ 136. But Plaintiffs forget that PWC, not Arthur Andersen, was KPMG's predecessor auditor. In addition, Plaintiffs do not allege that KPMG knew of any specific internal control problems, or that any specific earlier problems still existed during KPMG's year-end 2003 audit.

### 4.    ALLEGED FAILURE TO ASSESS C&A'S ABILITY TO CONTINUE AS A GOING CONCERN

Plaintiffs claim that KPMG failed to perform certain tests of C&A's ability to continue as a going concern, but do not actually allege a GAAS violation, *i.e.*, that KPMG was <u>required</u> to perform the stated tests. Compl. ¶ 147 (alleging only that KPMG "could" have conducted a "balance sheet test," "reasonable capital test," or a "cash flow test"). Moreover, as a matter of law there is no GAAS violation where the company, like C&A, continued as a going concern for more than twelve months from the financial statement date. *See In re Williams Sec. Litig.*, ___ F. Supp. 2d ___, 2007 WL 2007987, at *80 (N.D. Okla. July 7, 2007) (no violation of professional standards for failing to include a going concern qualification when company continued as a going concern over one year after the financial statement date); *Pew v. Cardarelli*, No. 03-742, 2005 U.S. Dist. LEXIS 40018, at *27 (N.D.N.Y. Mar. 17, 2005), *aff'd*, 164 Fed. Appx. 31 (2d Cir. N.Y. 2006) (same); *In re Integrated Resources Real Est., Ltd.*, 815 F. Supp. 620, 670 (S.D.N.Y. 1993) (same).

### 5.    ALLEGED FAILURE TO UNCOVER "FALSE SIDE LETTERS"

After alleging that C&A "routinely arranged for third parties to create 'false side-letters' which were provided to PwC and KPMG as 'proof' that the Company properly recorded the rebates in its accounting records," Compl. ¶ 126, Plaintiffs allege that PwC and KPMG should have examined C&A's original supplier agreements instead. Compl. ¶ 128. The allegation fails for several reasons. First, side letters – often referred to as "side agreements" or "amendments" – are commonplace in business (and Plaintiffs do not allege otherwise). Plaintiffs point to nothing in GAAS – because there is nothing – indicating that the existence of a side letter is a "red flag." Indeed, GAAS recognizes that contractual terms can be legitimately documented in purchase orders and accompanying letters. *See, e.g.*, AU § 326 ("Evidential Matter"). Second,

and critically, Plaintiffs do not allege – because they cannot – that GAAS <u>required</u> the auditors to examine the supplier arrangements.

Plaintiffs' negligence claim fails because Plaintiffs have failed to allege any breach of professional duty, much less one related to the only alleged material 2003 GAAP error, the improper rebates. *See Baker v. Arbor Drugs, Inc.,* 544 N.W.2d 727, 730 (Mich. Ct. App. 1996).

### F.    PLAINTIFFS' FRAUD CLAIM MUST BE DISMISSED FOR FAILURE TO COMPLY WITH RULE 9(B)'S PLEADING REQUIREMENTS

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated *with particularity*." Fed. R. Civ. P. 9(b) (emphasis added). "Rule 9(b) imposes a more onerous standard for pleading fraud, one which is significantly more difficult to satisfy than the usual standard of Fed. R. Civ. P. 8(a)." *Johnson v. Metabolife Int'l, Inc.*, No. 01 Civ. 2082, 2002 WL 32494514, at *3 (N.D. Tex. Oct. 23, 2002).

Michigan courts have looked to federal case law in articulating the pleading standard for state law fraud. *See, e.g, Yadlosky v. Grant Thornton L.L.P.,* 120 F. Supp. 2d 622, 635 (E.D. Mich. 2000); *Chase Bank of Texas v. Grant Thornton L.L.P.,* No. 236237, 2003 WL 21350362, at *2 (Mich. Ct. App. June 10, 2003) (citing *Dileo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990), for the proposition that standards for fraud under the federal rules were the same as those under Michigan law). These cases reveal that Plaintiffs have failed to plead any of the elements of a fraud claim with particularity:

> (1) that the charged party made a material representation; (2) that it was false; (3) that when he or she made it he or she knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he or she made it with the intention that it should be acted upon by the other party; (5) that the other party acted in reliance upon it; and (6) that the other party thereby suffered injury.

*Novi*, 701 N.W.2d at 152 n. 8.

24

### 1.    PLAINTIFFS HAVE FAILED TO PLEAD THAT KPMG'S 2003 AUDIT OPINION WAS A MATERIAL FALSE STATEMENT

KPMG's <u>only</u> allegedly false statement is its 2003 audit opinion. Thus, Plaintiffs must allege <u>with particularity</u> that KPMG knew or was reckless in not knowing that the 2003 audit opinion was false. *See Novi*, 701 N.W.2d at 152 n. 8; *see also Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 191 (1994). Pleading a GAAP violation, without a related GAAS violation, is not enough because the auditor's <u>opinion</u> that the financial statements conform with GAAP is truthful if the auditor has a reasonable basis for that opinion through performing a GAAS audit. *See Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.,* 454 F.3d 1168, 1176 (10th Cir. 2006) (investors' allegations that GAAP violations rendered auditor's opinion materially false or misleading fails to support fraud claim).

As discussed in Section V.2.E. *infra*, Plaintiffs' allegations of GAAS violations are conclusory, directly contradicted by the alleged facts and professional standards, and/or not related to the alleged improper rebates. As a result, these allegations can not possibly satisfy the heightened pleading standards of Section 9(b). *D.E. & J L.P. v. Conaway*, 284 F. Supp. 2d 719, 741 (E.D. Mich. 2003) ("All that Plaintiffs have done here is recite a list of general GAAS requirements and then assert, without any factual support, that because Kmart's financials were allegedly incorrect, PwC 'must have' violated those requirements"). Such bald allegations – that lack any detail of <u>how</u> KPMG violated GAAS and <u>what</u> procedures should have been performed under GAAS – are insufficient to demonstrate a false statement as a matter of law. *See In re Cardinal Health,* 426 F. Supp. 2d at 778 ("…Plaintiffs have done no more than list these GAAS standards, failing to specify, who, where, when, or how E&Y actually violated them"); *see also In re Stone & Webster, Inc., Secs. Litig.*, 414 F.3d 187, 214 (1st Cir. 2005).

## 2.    THE COMPLAINT FAILS TO ALLEGE WITH PARTICULARITY THAT KPMG ACTED WITH SCIENTER

A plaintiff must also plead scienter, i.e. that "defendants' statements were made knowingly and falsely or in reckless disregard for their truth." *Yadlosky,* 120 F. Supp. 2d at 635 (requiring showing of scienter for Michigan common law fraud claim). Plaintiffs must allege facts that give rise to a "strong inference of scienter" – *i.e.,* an "intent to deceive, manipulate, or defraud" – with respect to each defendant and for each material misrepresentation or omission alleged. *Tellabs,* 127 S. Ct. at 2507, 2510 (citation omitted).

### a.    THE STANDARD FOR PLEADING AUDITOR SCIENTER IS UNUSUALLY DEMANDING

The standard for pleading scienter against an auditor is particularly "demanding." *In re Marsh & McLennan Cos. Inc., Sec. Litig.,* No. MDL. No. 1744, 04-Civ-8144, 2006 WL 2057194, at *30 (S.D.N.Y. July 20, 2006). Plaintiffs must allege facts demonstrating "shoddy accounting practices [that] amount at best to a '*pretended audit*,' or of grounds supporting a representation 'so flimsy as to lead to the conclusion that there was no genuine belief back of it.'" *McLean v. Alexander*, 599 F.2d 1190, 1198 (3d Cir. 1979) (internal citations omitted) (emphasis added). To establish scienter, "[t]he plaintiff must prove that . . . the accounting judgments which were made were such that *no reasonable accountant* would have made the same decisions if confronted with the same facts.'" *In re Ikon Office Solutions, Inc.*, 277 F.3d 658, 669 (3d Cir. 2002) (citing *In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1426 (9th Cir. 1994)) (emphasis added). In other words, Plaintiffs must allege facts demonstrating that KPMG's audit amounted to "*no audit at all*." *Ferris, Baker Watts, Inc. v. Ernst & Young, LLP,* 395 F.3d 851, 855 (8th Cir. 2005) (internal citations omitted) (emphasis added). Plaintiffs have not come close to alleging facts that support such a conclusion.

**b.    PLAINTIFFS' SOLE MOTIVE ALLEGATION, ABOUT FEES, CANNOT RAISE AN INFERENCE OF SCIENTER**

Plaintiffs' only attempt to allege motive, that KPMG received fees, *see* Compl. ¶ 82, is utterly "insufficient to support a strong inference of scienter as a matter of law." *Yadlosky,* 120 F. Supp. 2d at 630; *see also Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP,* 475 F.3d 824, 841 (7th Cir. 2007) ("Typically, an accountant's interest in fees, standing alone, will not suffice to establish fraudulent intent."); *Zucker v. Sasaki*, 963 F. Supp. 301, 308 (S.D.N.Y. 1997) ("[M]ere receipt of compensation and the maintenance of a profitable business relationship for auditing services does not constitute a sufficient motive for purposes of pleading scienter.")

Because they cannot allege any motive to commit fraud, Plaintiffs essentially must argue that KPMG acted irrationally in committing fraud, and thus Plaintiffs must make an even stronger showing that KPMG acted recklessly. *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (without motive, proof of intent must be "correspondingly greater").

**c.    BOILERPLATE ALLEGATIONS OF GAAS VIOLATIONS DO NOT ESTABLISH A SHOWING OF KNOWLEDGE OR RECKLESSNESS**

Plaintiffs' allegations of GAAS violations, which fail even to state a negligence claim (*see supra* at Section V.2.E.), come nowhere close to alleging with the requisite particularity that KPMG acted with the extreme recklessness required for scienter.  The overwhelming majority of Plaintiffs' scienter allegations against KPMG consist of boilerplate recitations of various GAAS standards and conclusory assertions that KPMG "knowingly" or "recklessly" violated them.  *See* Compl. ¶¶ 96-97, 100, 106, 113-135, 143-148, 185.  Such allegations are insufficient to prove scienter under Rule 9(b) or Michigan state law.  *See In re Suprema Specialties, Inc. Sec. Litig.,* 438 F.3d 256, 280 (3d Cir. 2006) ("It is insufficient . . . for a plaintiff to cite GAAS standards without an explanation of how the defendant knowingly or recklessly violated those standards.");

*PR Diamonds, Inc. v. Chandler,* 364 F.3d 671, 694 (6th Cir. 2004); *Broderick v.*

*PricewaterhouseCoopers LLP*, 169 Fed. Appx. 496, 499 (9th Cir. 2006); *In re Spear & Jackson*

*Secs. Litig.*, 399 F. Supp. 2d 1350, 1363, (S.D. Fla. 2005); *see also LaMothe v. Auto Club Ins.*

*Ass'n*, 543 N.W.2d 42, 46 (Mich. Ct. App. 1995) (generalized allegations are insufficient to state

a fraud claim).

> **d.    PLAINTIFFS' GENERALIZED ALLEGATIONS THAT KPMG HAD ACCESS TO C&A ARE INSUFFICIENT TO PLEAD SCIENTER**

Lacking specific allegations of fraudulent intent, Plaintiffs generically suggest that

KPMG personnel knew or should have known about potentially false statements because they

had "access" to C&A's financial statements and confidential financial and business information,

were "frequently present" at C&A's corporate headquarters, and had an "intimate knowledge" of

C&A's business. Compl. ¶¶ 35, 81. These allegations are insufficient as a matter of law to plead

scienter. An auditor merely being "privy" to confidential or material information cannot

establish scienter. *See Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417, 429

(D.N.J. 1999) (if allegations that auditor was present at company and had access to company's

information "were sufficient to plead scienter, it might make every auditor liable in cases of

securities fraud"); *PR Diamonds, Inc*, 364 F.3d at 696 (auditors' presence at corporate

headquarters, and access to financial information, "are not enough to raise a strong inference of

scienter because such allegations are insufficiently concrete to support such an inference"); *In re*

*Royal Ahold N.V. Secs. & ERISA Litig.*, 351 F. Supp. 2d 334, 391 (D. Md. 2004); *D.E. & J L.P.*,

284 F. Supp. 2d at 740 ("Conclusory allegations of access to unspecified 'internal records' are

insufficient to support a claim of 'knowledge' or 'reckless disregard' on the part of an auditor.")

> **e.    PLAINTIFFS' ALLEGATIONS OF RED FLAGS ARE INSUFFICIENT TO RAISE AN INFERENCE OF SCIENTER**

Plaintiffs allege that KPMG violated AU § 316 by issuing its opinion despite the presence of numerous "red flags." Compl. ¶¶ 131-32. Plaintiffs then further allege – again in a conclusory manner – that the presence of these risk factors (which itself is a conclusory allegation) means that KPMG's audit violated GAAS. Such vague statements are insufficient to show scienter.

### (1)    PLAINTIFFS' "RED FLAGS" ARE NOT PLED WITH SPECIFICITY, AND LACK FACTUAL SUPPORT

Each of the alleged "red flags" is copied from AU § 316 verbatim (*compare* AU § 316.85 *with* Compl. ¶ 132) and none of them are supported with any specificity by Plaintiffs' factual allegations. For example, the Complaint contains no particularized allegations that C&A suffered from a high degree of turnover of senior management; that there was friction between auditors and employees; that management had not implemented sufficient controls to detect fraud generally; or that C&A was facing "declining margins" and "declining customer demand" during KPMG's audit. To simply state in conclusory fashion that such red flags existed fails to satisfy Rule 9(b). *See In re Burlington Coat Factory*, 114 F.3d at 1418.

### (2)    KPMG HAD NO ACTUAL KNOWLEDGE OF THESE SO-CALLED RED FLAGS

Second, the Complaint contains no particularized allegation that KPMG <u>knew</u> of these red flags. *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 218 (S.D.N.Y. 1999) ("Even if [the auditor] should have done more to attempt to uncover and disclose the alleged fraud, without factual allegations tending to establish knowledge of those practices on [the auditor's] part, an auditor's failure to do more is legally insufficient.") (internal citations omitted). Indeed, these so-called red flags indiscriminately cover the period from 2001 until 2005, even though KPMG's sole audit opinion was issued in early 2004. As an example, nothing in the Complaint indicates

29

that KPMG knew of C&A's alleged insolvency until Plaintiffs' extensive cover-up fell apart in mid-2005. And C&A's eventual bankruptcy filing (over a year later) does not establish that KPMG knew of the alleged "imminent bankruptcy" during its audit. *See Fidel v. Farley*, 392 F.3d 220, 232 (6th Cir. 2004). Similarly, the existence of related-party or otherwise "complex" transactions is insufficient to support a claim of recklessness where (as was the case here) the true nature of fraudulent or self-dealing transactions was <u>unknown</u> to the auditors. *See* Compl. ¶ 126; *see also In re Refco, Inc. Secs. Litig.*, No. 05 Civ. 8626, 2007 WL 1280649, at *38 (S.D.N.Y. Apr. 30, 2007). Plaintiffs fail to allege that KPMG had direct knowledge of C&A's fraudulent dealings.

### (3)     PLAINTIFFS DO NOT ALLEGE GAAS FAILURES, I.E. THAT THE RED FLAGS REQUIRED AUDIT PROCEDURES KPMG DID NOT PERFORM

Finally, Plaintiffs must allege not only facts that demonstrate the existence and knowledge of red flags – they must also allege with specificity that the circumstances underlying such red flags were so egregious as to require additional audit procedures that the auditor recklessly failed to implement. *See Fidel*, 392 F.3d at 230; *In re Cardinal Health,* 426 F. Supp. 2d at 765-66. Even if KPMG had been aware of any red flags, there are <u>no</u> particularized allegations that these red flags required KPMG to perform <u>different or additional</u> procedures, and if so, what those procedures would have been. Unless the audit work itself was deficient, the presence of risk factors (which is of course beyond the control of the auditor) is not even a GAAS violation, much less an act of recklessness. *See Fidel*, 392 F.3d at 230.

### f.     PLAINTIFFS' ALLEGATIONS THAT KPMG DID NOT UNCOVER PLAINTIFFS' FRAUD DOES NOT MEAN THAT KPMG ACTED RECKLESSLY

Plaintiffs allege that KPMG was reckless in not detecting Plaintiffs' collusive fraud. But Plaintiffs allege that they "routinely arrange[d] for third parties to create 'false side-letters'

which were provided to PwC and KPMG as 'proof' that the Company properly recorded the rebates in its accounting records." Compl. ¶ 126; *see also* DOJ Indictment ¶ 42. These false side letters "were intended to mislead KPMG and . . . KPMG did in fact rely on some of the false documents." SEC Complaint ¶ 42; *see also* DOJ Indictment ¶ 98. Thus, Plaintiffs' allegations demonstrate, as do the SEC Complaint and the DOJ Indictment, that KPMG was deliberately misled by Plaintiffs' collusive fraud.

This is critical because under GAAS an auditor is not expected to catch such collusive, concealed fraud. *See* Section IV.B.2., *supra.* Thus, a failure to catch management fraud is not even a GAAS violation, much less a sign of a "reckless" audit, as case law confirms. In *In re Livent Sec. Litig.*, the plaintiffs' complaint and an SEC complaint "alleges that Livent's insiders went to considerable lengths to conceal the truth of [certain] transactions from D&T" by, among other things, "actively concealing the side letters from the auditors . . .." 78 F. Supp. 2d at 217. The court held that failure to catch such fraud was insufficient to show scienter: "Even if [the auditor] should have done more to attempt to uncover and disclose the alleged fraud, without factual allegations tending to establish knowledge of those practices on [the auditor's] part, an auditor's failure to do more is legally insufficient." *Id.* at 218 (internal citations and quotation marks omitted); *see also In re Royal Ahold,* 351 F. Supp. 2d at 392 ("where . . . the magnitude of the fraud was accompanied by the thoroughness of its concealment, scienter will not be inferred on the part of the auditor") (internal citation and quotation marks omitted); *In re Worldcom, Inc. Sec. Litig.,* 352 F. Supp. 2d 472, 495 (S.D.N.Y. 2005) (*quoting Decker v. Massey Ferguson, Ltd.*, 681 F.2d 111, 120 (2d Cir. 1982)) ("When records of a company's financial impropriety are 'hidden from its auditor,' an auditor is not held responsible simply because the auditor 'lent its imprimatur' to the company's financial statement.").

g.    **PLAINTIFFS CANNOT ESTABLISH THAT KPMG'S AUDIT AMOUNTED TO "NO AUDIT AT ALL" OR THAT "NO REASONABLE ACCOUNTANT" WOULD HAVE REACHED THE SAME RESULT**

Plaintiffs do not even attempt to establish that KPMG's work amounted to "no audit at all" as required to show scienter. Notably, Plaintiffs only criticize audit work in the areas where they committed fraud. Plaintiffs do not criticize the many other areas of C&A's financial statements which KPMG audited. And it is undisputed that KPMG engaged in extensive audit work throughout its engagement. *See* Comp. ¶ 35; DOJ Indictment ¶ 14. In fact, Plaintiffs' allegation that management actively concealed the fraud from KPMG indicates that KPMG was performing independent audit work, or there would have been no need for the artifice. *See In re Royal Ahold*, 351 F. Supp. 2d at 390. Moreover, when KPMG became concerned about potential accounting irregularities, it informed C&A that it could not proceed with its audit until the investigation was complete – evidencing its independence and compliance with GAAS standards. *See, e.g.,* C&A 2003 10-Q for the 3rd Quarter, Brown Aff. Ex. 6, at 2 ("The Company has been advised by its independent auditors, KPMG LLP, that they will be unable to complete their SAS 100 review of the Company's quarterly results prior to completion of the Audit Committee's inquiry and their review of the results of that inquiry"). Plaintiffs nowhere allege (because they cannot) facts demonstrating that KPMG's audit was so deficient that it amounted to "no audit at all."

Moreover, Plaintiffs cannot establish that "no reasonable accountant" would have made an allegedly reckless decision when, in their Complaint, they allege that PWC and KPMG – two auditors – made the same decision. *See, e.g.,* Compl. ¶ 128-29 (alleging that both PWC and KPMG failed properly to consider false side agreements); *see also In re IKON Office Solutions,*

*Inc. Sec. Litig.,* 277 F.3d 658, 669 (3d Cir. 2002) (that auditor and successor auditor reached

same decision "is highly probative" and "undermines any suggestion of recklessness").

### 3. PLAINTIFFS HAVE FAILED TO PLEAD RELIANCE.

Plaintiffs also utterly fail to allege with particularity facts demonstrating that C&A relied

on KPMG's opinion. The Complaint contains only three suggestions of reliance on KPMG:

- First, that "[t]he Company and its Board of Directors, including its Audit Committee, in hiring an experienced, independent auditor, justifiably relied upon KPMG's misrepresentations." Compl. ¶ 189.

- Second, that "[a]s a direct and proximate result of reliance on KPMG's misrepresentations, Collins & Aikman suffered damage and injury in that it was denied the opportunity to continue as a going concern and its value as a business enterprise significantly decreased." Compl. ¶ 191.

- And finally, that "KPMG knew or reasonably should have known that Collins & Aikman, through its Board of Directors and Audit Committee, would rely upon such publicly disseminated statements." Compl ¶ 197.

Such conclusory allegations are insufficient to survive a motion to dismiss. *See Shivers*

*v. McMartin, Wasek & Assoc., Inc.*, No. 251569, 2005 WL 1959480, at *2 (Mich. Ct. App. Aug.

16, 2005) (rejecting plaintiff's fraud claim where "he did not support this assertion with any

factual allegations of reliance or damages"); *Churella v. Pioneer St. Mut. Ins. Co.,* 671 N.W.2d

125, 132 (Mich. Ct. App. 2003) ("conclusory statements, unsupported by factual allegations, are

insufficient to state a cause of action").

Moreover, as a matter of law it is not "plausible" that Plaintiffs reasonably relied on

KPMG's 2003 audit opinion. *Twombly,* 127 S. Ct. at 1965. First, Plaintiffs concede that they

knew the <u>truth</u> about the fraud, including that C&A's financial statements were erroneous.

Plaintiffs allege that nearly all of the officers and directors were aware of the fraud, and in any

event management's knowledge is imputed to Plaintiffs. It is not plausible that Plaintiffs relied

on KPMG's opinion (that C&A's financial statements materially complied with GAAP) when

Plaintiffs admittedly knew the opposite. *See Cenco Inc., v. Seidman & Seidman*, 686 F.2d 449, 454 (7th Cir. 1982) ("a participant in a fraud cannot also be a victim entitled to recover damages, for he cannot have relied on the truth of the fraudulent representations, and such reliance is an essential element in a case of fraud."); *Official Comm. Of Unsecured Creditors v. Allegheny Health, Educ. & Res. Found.*, No. 00 Civ. 0684, 2007 WL 141059, at *8 (W.D. Pa. Jan 17, 2007). As the Michigan Supreme Court has held, "knowledge of the falsity of representations is inconsistent with reliance thereon." *McIntyre v. Lyon*, 37 N.W.2d 903, 906 (Mich. 1949).

Second, Plaintiffs admittedly withheld information about the fraud from KPMG. It is thus not plausible that Plaintiffs reasonably relied on an audit opinion that they knew was based on incomplete information. Given this situation, these empty and generic statements of "reliance" are patently insufficient under Rule 9(b). *See Evans v. Pearson Enters., Inc.,* 434 F.3d 839, 852-53 (6th Cir. 2006) ("Conclusory statements of reliance are not sufficient to explain with particularity how [plaintiff] detrimentally relied on the alleged fraud" under Michigan law).

In sum, Plaintiffs' claim for fraud is nothing more than an effort to dress up a malpractice claim – itself without support in fact or law – as a separate tort. Michigan courts do not favor such tactics, and dismiss claims that are, in substance, equivalent to a claim of accounting malpractice. *See Chase Bank of Texas,* at *2 ("If a [plaintiff] attempts to characterize a malpractice claim as a fraud or other type of claim, a court will look through the labels placed on the claim and will make its determination on the basis of the substance and not the form."), *leave to appeal denied*, 673 N.W.2d 754 (Mich. 2003).

## G. PLAINTIFFS HAVE FAILED ADEQUATELY TO PLEAD AN AIDING AND ABETTING CLAIM AGAINST KPMG

In addition to being barred by the wrongful conduct rule, and lack of proximate cause or damages, Plaintiffs' aiding and abetting claim fails to allege facts demonstrating actual

knowledge of Plaintiffs' fraud, an even higher standard than the recklessness required for fraud. *See Estate of Goldman v. Nat'l Bank of Detroit*, 601 N.W.2d 126, 129 (Mich. Ct. App. 1999).

As noted above, Plaintiffs fail to plead adequately even that KPMG acted recklessly. *See* Section V.F.2., *supra*. Plaintiffs certainly do not adequately allege that KPMG knew of Plaintiffs' fraud. Plaintiffs fail to allege any facts to support their single, conclusory allegation, Compl. ¶ 214, that KPMG knew of Plaintiffs' fraud. *See Krieger v. Gast,* No. 4:99-CV-86, 2000 WL 288442, *12 (W.D. Mich. Jan. 21, 2000) (aiding and abetting breach of fiduciary duty claim dismissed "because those claims require at least some degree of knowing participation, which is not supported by the allegations in the complaint."). Indeed, the Complaint concedes the exact opposite, that management intentionally hid the fraud from KPMG.

In addition, even if Plaintiffs adequately alleged that KPMG knew of management's actions, Plaintiffs fail to allege that KPMG knew that management's actions constituted a breach of fiduciary duty, which alone is fatal to Plaintiffs' claim. *See Chase Bank of Texas*, 2003 WL 21350362, at *4 ("the alleged abettor is required to have the same degree of scienter as the person committing the actual fraud").

Finally, as with Plaintiffs' claim for fraud, their claim for aiding and abetting is properly a claim of accounting malpractice, and may be dismissed on that ground alone. *See id.* at *2.

## H.     PLAINTIFFS HAVE NOT ADEQUATELY PLED A BREACH OF CONTRACT CLAIM AGAINST KPMG

Beyond being barred by the wrongful conduct rule and lack of proximate cause or damages, the breach of contract claim[9] fails because it is duplicative, because Plaintiffs have not alleged a breach, and because any breach would have been precipitated by Plaintiffs' breach.

---

[9]     Plaintiffs erroneously allege that the years in question were 2001 and 2002.

1.    **THE BREACH OF CONTRACT CLAIM FAILS BECAUSE IT IS DUPLICATIVE OF PLAINTIFFS' NEGLIGENCE CLAIM**

As with Plaintiffs' claims for fraud and aiding and abetting, their breach of contract claim is simply a restatement of its claim for malpractice, and should be dismissed on that ground alone. *See Chase Bank of Texas*, 2003 WL 21350362, at *2; *see also Askanase v. Fatjo*, 828 F. Supp. 465, 469 (S.D. Tex 1993) (dismissing Plaintiffs' breach of contract claim where claim "is nothing more than a claim for breach of a professional's duty, thinly disguised as a contract claim"). That is because an accountant's duty to perform in accordance with GAAS arises out of law, not by contract. *See Battenfeld of Am. Holding Co., Inc. v. Baird, Kurtz & Dobson,* 60 F. Supp. 2d 1189, 1206 (D. Kan. 1999) (dismissing breach of contract claim and rejecting plaintiff's claim that engagement letters expressly providing to conduct audits in accordance with GAAS imposed a contractual duty separate and apart from any duty imposed by law); *see also Official Comm. of Unsecured Creditors of Corell Steel v. Fishbein & Co., P.C.,* No. 91 Civ. 4919, 1992 WL 196768, at *5-6 (E.D. Pa. Aug. 10, 1992) (accountant's duty to act in accordance GAAS arises by law, regardless of contract terms). Plaintiffs' breach of contract must be dismissed as a thinly-veiled attempt at repleading Plaintiffs' negligence claim.[10]

---

[10]    Although Plaintiffs allege that KPMG failed to report fraud to C&A's Audit Committee, *see* Compl. ¶¶ 206, 207, such a conclusory assertion is contrary to the public record and not plausible. KPMG *did* contact C&A when it had concerns, both in 2003 and 2005. *See* DOJ Indictment ¶ 62; *see also* SEC Complaint. ¶ 54; C&A 2003 10-Q for the 3rd Quarter, Brown Aff. Ex. 6, at 2 ("The Company has been advised by its independent auditors, KPMG LLP, that they will be unable to complete their SAS 100 review of the Company's quarterly results prior to completion of the Audit Committee's inquiry and their review of the results of that inquiry.")  Moreover, Plaintiffs have failed to allege that KPMG's contractual duties under the service agreements differ from the professional standards required of auditors. Accordingly, there is no "special contract" by which KPMG agreed to perform beyond what is required to satisfy the relevant professional standards. *See Brownell v. Garber*, 503 N.W.2d 81, 84 (Mich. Ct. App. 1993).

>    2.    **EVEN IF PLAINTIFFS COULD PURSUE A BREACH OF
>           CONTRACT CLAIM, THEY HAVE FAILED PROPERLY TO
>           ALLEGE ONE HERE**

Moreover, KPMG did not breach the contracts, which expressly set forth that KPMG cannot certify that C&A's financial statements will be free from material misstatements caused by fraud, as allegedly occurred here. *See* 2003 Agreement at 2; 2004 Agreement at 2.

In addition, any breach was caused by Plaintiffs' own breach in failing to provide accurate information to the auditors. The engagement letters required management to provide all relevant materials and cooperate with KPMG. 2003 Agreement at 3; 2004 Agreement at 7. According to Plaintiffs' own allegations, Plaintiffs failed to do so. Therefore, the breach of contract claim fails as a matter of law. *See Flamm v. Scherer,* 198 N.W.2d 702, 706 (Mich. Ct. App. 1972); *see also Begier v. Price Waterhouse,* No. 87-6096, 1992 WL 236175, at *4 (E.D. Pa. Sept. 14, 1992) (rejecting breach of contract claim where plaintiff had presented "false and misleading financial information" to auditor defendant).

## VI.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED IN FAVOR OF ARBITRATION

Finally, as set out in KPMG's Motion to Stay, Plaintiffs' claims against KPMG are subject to arbitration under the parties' arbitration agreement. While the Federal Arbitration Act provides solely for a stay pending arbitration, the Third Circuit has held that the court may dismiss an action in its entirety where all claims are subject to arbitration. *See Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 179 (3d Cir. 1998), overruled on other grounds, *Green Tree Fin. Corp.- Ala. v. Randolph*, 531 U.S. 79 (2000)). Therefore, dismissal of any remaining claims against KPMG in favor of arbitration is proper.

## VII.    CONCLUSION

For the reasons stated above, KPMG respectfully requests that the Court dismiss

Plaintiffs' claims with prejudice.

EDWARDS ANGELL PALMER & DODGE LLP

*/s/ Michael J. Maimone*

_____

Michael J. Maimone (#3592)
Paul D. Brown (#3903)
919 North Market Street, 15th Floor
Wilmington, DE  19801
(302) 777-7770
mmaimone@eapdlaw.com

OF COUNSEL:

Christopher Harris
Seth L. Friedman
Latham & Watkins LLP
885 Third Avenue
New York, NY  10022
(212) 906-1200

September 14, 2007

## CERTIFICATE OF SERVICE

I, Michael J. Maimone, Esquire, hereby certify that on September 14, 2007, I

caused to be electronically filed a true and correct copy of the foregoing document with the Clerk

of the Court using CM/ECF, which will send notification that such filing is available for

reviewing and downloading to the following counsel of record:

> Joseph A. Rosenthal, Esquire.
> Carmella P. Keener
> Rosenthal, Monhait & Goddess, P.A.
> 919 N. Market Street
> P.O. Box 1070
> Wilmington, DE 19899

I further certify that on September 14, 2007, I caused a copy of the foregoing

document to be served on the following non-registered participants in the manner indicated:

### BY EMAIL

> Samuel H. Rudman
> srudman@csgrr.com
> David A. Rosenfeld
> drosenfeld@csgrr.com
> Coughlin Stoia Geller Rudman & Robbins LLP
> 58 South Service Road, Suite 200
> Melville, NY 11747

> /s/ Michael J. Maimone
> Michael J. Maimone (#3592)
> Paul D. Brown (#3903)
> Edwards Angell Palmer & Dodge LLP
> Wilmington, DE 19801
> (302) 777-7770
> mmaimone@eapdlaw.com