UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

COLLINS & AIKMAN CORPORATIONS and COLLINS & AIKMAN PRODUCTS CO., as Debtors in Possession,

Plaintiffs,

vs.

DAVID A. STOCKMAN, J. MICHAEL STEPP, BRYCE M. KOTH, DAVID R. COSGROVE, PAUL C. BARNABA, ROBERT A. KRAUSE, JOHN A. GALANTE, CHARLES E. BECKER, ELKIN B. MCCALLUM, THOMAS E. EVANS, CYNTHIA HESS, DANIEL P. TREDWELL, W. GERALD MCCONNELL, SAMUEL VALENTI, III, HEARTLAND INDUSTRIAL PARTNERS, L.P., HEARTLAND INDUSTRIAL ASSOCIATES, L.L.C., HEARTLAND INDUSTRIAL GROUP, L.L.C., PRICEWATERHOUSECOOPERS LLP and KPMG LLP,

Defendants.

Civil Action No. 07-265 (***)

**JURY TRIAL DEMANDED**

**AFFIRMATION OF STEPHEN L. ASCHER**

STEPHEN L. ASCHER, being an attorney duly admitted to practice law in the State of New York, affirms under penalty of perjury that:

1. I am a partner at Jenner & Block LLP, attorneys for defendant Charles E. Becker ("Becker") in the above-captioned matter. I submit this Affirmation and the accompanying Memorandum of Law in support of Becker's Motion to Dismiss the Complaint in the above-captioned matter.

2.    Attached to this Affirmation are true and correct copies of the documents cited in

the accompanying Memorandum of Law (or the relevant portions of those documents), as

follows:

| | |
|---|---|
| Exhibit 1 | Collins & Aikman Corp. Restated Certificate of Incorporation (filed Jul. 13, 1994) (relevant portions) |
| Exhibit 2 | Collins & Aikman Corp. Forms S-4 filed on Jan. 28, 2005(CA Form S-4); Collins & Aikman Corp. Forms 8-K filed on Mar. 12, 2004 ("CA Mar. 2004 Form 8-K")  Collins & Aikman Corp. Forms 14_A filed on Apr. 20, 2001, Apr.25, 2002, and Apr. 24, 2003. ("CA 2001-2003 Form 14-A") (relevant portions) |
| Exhibit 3 | Collins & Aikman Corp. Form 8-K filed on Mar. 21, 2001 ("CA Mar. 2001 Form 8-K ") (relevant portions) |
| Exhibit 4 | Collins & Aikman Corp. Form 8-K filed on Jul. 3, 2001 ("CA Jul. 2001 Form 8-K ") (relevant portions) |
| Exhibit 5 | Collins & Aikman Form 10-K, filed Mar. 26, 2003 ("CA 2003 Form 10-K") (relevant portions) |

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct and that this declaration was executed in New York, NY on

September 14, 2007.

Dated: September 14, 2007
      New York, New York

                                           Stephen L. Ascher
                                           JENNER & BLOCK LLP
                                         919 Third Avenue
                                         37th Floor
                                         New York, New York 10022-3908
                                         P: (212) 891-1600
                                         F: (212) 891-1699
                                         Email: sascher@jenner.com

# Exhibit 1

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 08:45 AM 07/13/1994
944128068 - 2173156

RESTATED CERTIFICATE OF INCORPORATION

of

COLLINS & AIKMAN CORPORATION

Under Section 245 of the General Corporation Law of the State of Delaware

This Restated Certificate of Incorporation of Collins & Aikman Corporation (originally incorporated under the name WCI Holdings Corporation) amends and restates such corporation's Certificate of Incorporation, as amended, which was originally filed with the Secretary of State of the State of Delaware on September 21, 1988, and was duly adopted in the manner and by the vote prescribed by Section 242, in accordance with the provisions of Section 245 and Section 228 of the General Corporation Law of the State of Delaware.

FIRST: The name of the Corporation is Collins & Aikman Corporation (the "Corporation").

SECOND: The address of the registered office of the Corporation in the State of Delaware is 32 Loockerman Square, Suite L-100, in the City of Dover, County of Kent. The name of the registered agent at such registered office is The Prentice-Hall Corporation System, Inc.

THIRD: The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

FOURTH: The total number of shares of stock which the Corporation shall have authority to issue is 166,000,000, consisting of:

(a) 150,000,000 shares of Common Stock, par value $0.01 per share, which shall be designated "Common Stock". Each share of Common Stock shall be entitled to one vote per share; and

(b) 16,000,000 shares of Preferred Stock, par value $0.01 per share ("Preferred Stock"). The Board of Directors of the Corporation is hereby expressly authorized to provide for the issuance of shares of Preferred Stock in one or more series, by resolution or resolutions and by

not less than a majority of the entire Board, and the power of stockholders to call a special meeting is specifically denied. No business shall be transacted and no corporate action shall be taken at a special meeting of stockholders other than that stated in the notice of such meeting.

SEVENTH: (a) In addition to any requirements of law and any other provision of this Restated Certificate of Incorporation or any resolution or resolutions of the Board of Directors adopted pursuant to Article FOURTH of this Restated Certificate of Incorporation (and notwithstanding the fact that a lesser percentage may be specified by law, this Restated Certificate of Incorporation or any such resolution or resolutions), a Business Combination (as hereinafter defined) shall require the affirmative vote of the holders of 66-2/3% or more of the combined voting power of the then outstanding shares of Voting Stock, voting together as a single class.

(b) For the purposes of this Article SEVENTH, "Business Combination" shall mean:

(1) any merger or consolidation of the Corporation (whether or not the Corporation is the surviving corporation);

(2) any sale, lease, exchange, mortgage, pledge, transfer or other disposition (in one transaction or a series of related transactions) of all or substantially all the assets of the Corporation;

(3) the adoption of any plan or proposal for the liquidation, dissolution, spinoff, splitup, splitoff, or winding up of the affairs of the Corporation (whether voluntary or involuntary); or

(4) any agreement, contract or other arrangement providing for any of the transactions described in this definition of Business Combination.

EIGHTH: To the fullest extent that the General Corporation Law of the State of Delaware as it exists on the date hereof or as it may hereafter be amended permits the limitation or elimination of the liability of directors, no director of the Corporation shall be liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director. No amendment to or repeal of this Article EIGHTH shall apply to or have any effect on the liability or alleged liability of any director of the

Corporation for or with respect to any acts or omissions of such director occurring prior to such amendment or repeal.

NINTH: The Corporation reserves the right at any time and from time to time to amend, alter or repeal any provision contained in this Restated Certificate of Incorporation, in the manner now or hereafter prescribed by law. In addition to any requirements of law and any other provision of this Restated Certificate of Incorporation or any resolution or resolutions of the Board of Directors adopted pursuant to Article FOURTH of this Restated Certificate of Incorporation (and notwithstanding the fact that a lesser percentage may be specified by law, this Restated Certificate of Incorporation or any such resolution or resolutions), the affirmative vote of the holders of 66-2/3% or more of the combined voting power of the then outstanding shares of Voting Stock, voting together as a single class, shall be required to adopt, amend, alter or repeal any provision of this Restated Certificate of Incorporation.

IN WITNESS WHEREOF, the Corporation has caused this Restated Certificate of Incorporation to be signed in the name and on behalf of the Corporation, and attested to, by the duly elected officers of the Corporation as indicated below this 13th day of July , 1994.

COLLINS & AIKMAN CORPORATION

by [signature]
Name: Paul W Meeks
Title: VP / Treasurer

Attest:

[signature]
Name: Elizabeth Philipp
Title: Secretary

# Exhibit 2

S-4 1 file001.htm FORM S-4

**As filed with the Securities and Exchange Commission on January 27, 2005**

**Registration No. 333-**

**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

# FORM S-4

**REGISTRATION STATEMENT**
**UNDER**
**THE SECURITIES ACT OF 1933**

# COLLINS & AIKMAN PRODUCTS CO.

(Exact name of registrant as specified in its charter)

| **Delaware** | **3590** | **13-0588910** |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (Primary Standard IndustrialClassification Code Number) | (I.R.S. Employer Identification Number) |

**See Table of Additional Registrants**

**250 Stephenson Highway**
**Troy, Michigan 48083**
**(248) 824-2500**
(Address, including zip code, and telephone number, including area code, of registrant's principal executive offices)

**Jay Knoll**
**General Counsel**
**Collins & Aikman Products Co.**
**250 Stephenson Highway**
**Troy, Michigan 48083**
**(248) 824-2500**

Copies to:
**Jonathan A. Schaffzin, Esq.**
**Cahill Gordon & Reindel LLP**
**80 Pine Street**
**New York, New York 10005**
**(212) 701-3000**

**Approximate date of commencement of proposed sale of the securities to the public:** As soon as practicable after this Registration Statement becomes effective.

If the securities being registered on this Form are being offered in connection with the formation of a holding company and there is compliance with General Instruction G, check the following box. ☐

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

**CALCULATION OF REGISTRATION FEE**

| Title of Each Class of Securities to Be Registered | Amount to Be Registered | Proposed Maximum Offering Price Per Note | Proposed Maximum Aggregate Offering Price(1) | Amount of Registration Fee(1) |
|---|---|---|---|---|
| 12 7/8% Senior Subordinated Notes due 2012 of Collins & Aikman Products Co. | $415,000,000 | 96.416% | $400,126,400 | $47,094.88 |
| Guarantees related to the 12 7/8% Senior Subordinated Notes due 2012 of Collins & Aikman Products Co.(2) | N/A | N/A | N/A | N/A |

(1) Estimated solely for the purpose of calculating the registration fee in accordance with Rule 457(f)(2) under the Securities Act.

(2) Pursuant to Rule 457(n) under the Securities Act of 1933, no registration fee is required with respect to the Guarantees.

The Registrants hereby amend this registration statement on the date or dates as may be necessary to delay its effective date until the Registrants shall file a further amendment which specifically states that this registration statement shall become effective in accordance with Section 8(a) of the Securities Act of 1933, as amended, or until this registration statement shall become effective on such date the Commission, acting pursuant to said Section 8(a), may determine.

---

**TABLE OF ADDITIONAL REGISTRANTS**

| Name of Additional Registrant* | State or Other Jurisdiction of Incorporation or Formation | Primary Standard Industrial Classification Code Number | I.R.S. Employee Identification Number |
|---|---|---|---|
| Collins & Aikman Corporation | Delaware | 2273 | 13-3489233 |
| Collins & Aikman Accessory Mats, Inc. | Delaware | 3069 | 34-1532472 |
| Collins & Aikman Automotive Mats, LLC | Delaware | 3069 | * |
| Collins & Aikman Asset Services, Inc. | Delaware | 6719 | 95-4225459 |
| Collins & Aikman Automotive Exteriors, Inc. | Delaware | 3714 | 05-0471352 |

The members of the Company's Audit Committee are Robert C. Clark, the former Dean of the Harvard Law School, Marshall A. Cohen, counsel at Cassels Brock and Blackwell, a Canadian law firm, and former Senator Warren B. Rudman. The accounting expert who advised the Audit Committee is Alex Arcady, a retired partner from Ernst & Young LLP, who spent the last ten years of his career in that firm's national office.

***Other Commitments***

As of December 31, 2003, the Company's continuing operations had approximately $30.3 million in outstanding capital expenditure commitments. The majority of the leased properties of the Company's previously divested businesses have been assigned to third parties. Although releases have been obtained from the lessors of certain properties, Products remains contingently liable under most of the leases. Products' future liability for these leases, in management's opinion, based on the facts presently known to it, will not have a material effect on the Company's consolidated financial condition, future results of operations or cash flows.

In November 2002, the FASB issued FIN 45, "Guarantor's Accounting and Disclosure Requirements for Guarantees, Including Indirect Guarantees of Indebtedness of Others." FIN 45 requires a guarantor to recognize, at the inception of a qualified guarantee, a liability for the fair value of the obligation undertaken in issuing the guarantee. In conjunction with divestitures and other transactions, the Company has provided indemnifications relating to legal and environmental issues, including product liability. The Company does not believe that any pending or threatened litigation or claims related to any such retained liabilities of discontinued operations are likely to result in any material loss.

-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGj1WyK3XmZv3dTINen
TWSM7vrzLADbmYQaionwg5sDW3P6oaM5D3tdezXMm7z1T+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
TSBxjCruwWAsOkHs7DHlGTyL3lzEa7OIufxZ+RxI+GG44hMFDAXW6sGK0xKmFQi0
c+17kCdU2lAkDMgssZhn7w==

<SEC-DOCUMENT>0000950124-04-000871.txt : 20040312
<SEC-HEADER>0000950124-04-000871.hdr.sgml : 20040312
<ACCEPTANCE-DATETIME>20040312151450
ACCESSION NUMBER: 0000950124-04-000871
CONFORMED SUBMISSION TYPE: 8-K
PUBLIC DOCUMENT COUNT: 2
CONFORMED PERIOD OF REPORT: 20040312
ITEM INFORMATION: Regulation FD Disclosure
FILED AS OF DATE: 20040312

FILER:

COMPANY DATA:
COMPANY CONFORMED NAME: COLLINS & AIKMAN CORP
CENTRAL INDEX KEY: 0000846815
STANDARD INDUSTRIAL CLASSIFICATION: MOTOR VEHICLE PARTS & ACCESSORIES [3714]
IRS NUMBER: 133489233
STATE OF INCORPORATION: DE
FISCAL YEAR END: 1231

FILING VALUES:
FORM TYPE: 8-K
SEC ACT: 1934 Act
SEC FILE NUMBER: 001-10218
FILM NUMBER: 04665897

BUSINESS ADDRESS:
STREET 1: 250 STEPHENSON HWY
CITY: TROY
STATE: MI
ZIP: 48083
BUSINESS PHONE: 2488242500

MAIL ADDRESS:
STREET 1: 250 STEPHENSON HWY
CITY: TROY
STATE: MI
ZIP: 48083

FORMER COMPANY:
FORMER CONFORMED NAME: COLLINS & AIKMAN HOLDINGS CORP/DE
DATE OF NAME CHANGE: 19930914

FORMER COMPANY:
FORMER CONFORMED NAME: COLLINS & AIKMAN HOLDINGS CORP
DATE OF NAME CHANGE: 19930114

FORMER COMPANY:
FORMER CONFORMED NAME: WCI HOLDINGS CORP
DATE OF NAME CHANGE: 19920703
</SEC-HEADER>
<DOCUMENT>
<TYPE>8-K
<SEQUENCE>1
<FILENAME>k83764e8vk.txt
<DESCRIPTION>CURRENT REPORT DATED 03/12/04
<TEXT>
<PAGE>

SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

FORM 8-K

Current Report

Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934

March 12, 2004
Date of Report (Date of earliest event reported)

COLLINS & AIKMAN CORPORATION
(Exact name of registrant as specified in its charter)

| Delaware | 1-10218 | 13-3489233 |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (Commission file number) | (I.R.S. Employer Identification No.) |

250 Stephenson Highway,

Troy, Michigan 48083
(Address of principal executive offices (zip code)

(248) 824-2500
(Registrant's telephone number, including area code)

None.
(Former name or former address, if changed since last report)

<PAGE>

ITEM 9. REGULATION FD DISCLOSURE
The attached exhibit of Other Financial Information is furnished under Form 8-K Item 9 and Item 12 (Results of Operations and Financial Condition). The information is not filed for purposes of the Securities Exchange Act of 1934 and is not deemed incorporated by reference by any general statements incorporating by reference this report or future filings into any filings under the Securities Act of 1933 or the Securities Exchange Act of 1934, except to the extent Collins & Aikman specifically incorporates the information by reference.

EXHIBITS.

The following exhibits are filed herewith:

| Exhibit No. | Description |
|---|---|
| (99.1) | Collins & Aikman 4th Quarter 2003 Earnings Release |

<PAGE>

SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

Dated: March 12, 2004

COLLINS & AIKMAN CORPORATION

By: /s/ J. Michael Stepp
------------------------------

Name: J. Michael Stepp
Title: Vice Chairman and Chief Financial Officer
(Principal Financial Officer)

<PAGE>

EXHIBIT INDEX

| Exhibit No. | Description |
|---|---|
| (99.1) | Collins & Aikman 4th Quarter 2003 Earnings Release |

</TEXT>
</DOCUMENT>
<DOCUMENT>
<TYPE>EX-99.1
<SEQUENCE>3
<FILENAME>k83764exv99w1.txt
<DESCRIPTION>4TH QUARTER 2003 EARNINGS RELEASE
<TEXT>
<PAGE>

EXHIBIT 99.1

FOR IMMEDIATE RELEASE
MARCH 11. 2004

COLLINS & AIKMAN ANNOUNCES RECORD SALES AND FOURTH QUARTER FINANCIAL RESULTS

TROY, MICH. -- Collins & Aikman Corporation (C&A) (NYSE:CKC) today reported results for fourth quarter and year ended December 31, 2003. The company reported record fourth quarter 2003 net sales of $1.013 billion compared to $963 million in the fourth quarter of 2002, a 5% increase which mainly reflects sales from companies acquired in January 2003 along with improved currency impact. The company reported a loss of 14 cents per share from continuing operations in the fourth quarter of 2003, which included after-tax charges for restructuring and long-lived asset impairments of $16.7 million (or 20 cents per share). In the comparable 2002 quarter, the company had a loss of 4 cents per share, which included after-tax charges for restructuring and long-lived asset impairments of $13.0 million (or 16 cents per share).

Commenting on the company's fourth quarter operating results, David A. Stockman, C&A Chairman and CEO, stated, "We are pleased with the solid improvement in EBITDA performance, excluding restructuring and impairment charges. For the second consecutive quarter our results were up significantly from the prior year on a comparable basis. Additionally, the restructuring program that began in the third quarter is resulting in significant fixed cost savings as indicated by our year-over-year decline in selling, general and administrative expenses."

The fourth quarter 2003 pre-tax restructuring charge of $13.8 million included costs associated with the previously announced third quarter restructuring actions that would reduce the company's salaried workforce by almost 800 or 15%. This restructuring initiative and related actions are expected to reduce the company's fixed-cost structure by $80 million per year.

For the full-year 2003, the company reported sales of $3.98 billion compared to $3.89 billion for 2002. The company also reported a net loss available to common shareholders from continuing operations of $59.1 million or 71 cents per share, which included $49.9 million (or 60 cents per share) of after-tax charges for restructuring and long-lived asset impairments. For the comparable 2002 period, the net loss available to common shareholders from continuing operations was $87.6 million or $1.15 per share, which included after-tax charges for restructuring and long-lived asset impairments of $40.9 million (or 53 cents per share).

<PAGE>

C&A's net debt, including outstandings under an off-balance sheet accounts receivable facility, was $1.346 billion at December 31, 2003.

Net Business Wins and Other Accomplishments

During the fourth quarter 2003, Collins & Aikman continued to achieve solid marketing progress by adding $200 million of annual newly booked business, bringing the year-to-date total to over $900 million in annualized revenues incepting with model year 2005. These figures are net of business being transitioned to other suppliers.

Wins for the quarter included one of the largest fabric contracts the company has received in recent history --- a contract to supply seat fabric to a North American OEM for multiple unnamed models. Wins also included numerous instrument panel, carpet and acoustic and interior trim programs. In particular, the company recently secured contracts to supply instrument panels and center consoles for multiple derivatives of a new crossover type vehicle.

EBITDA Discussion

EBITDA was $69.4 million for the fourth quarter of 2003, which was reduced by charges of $13.8 million for restructuring and $7.3 million for the impairment of long-lived assets. The fourth quarter 2002 EBITDA was $68.2 million, which was reduced by charges of $4.8 million for restructuring and $9.3 million for the impairment of long-lived assets. A reconciliation of our EBITDA, a non-GAAP financial measure, to U.S. GAAP loss from continuing operations, our most comparable GAAP figure, is set out in the attached EBITDA reconciliation schedule. The company believes that EBITDA is a meaningful measure of performance as it is commonly utilized in the industry to analyze operating performance. EBITDA should not be construed as income from operations, net income (loss) or cash flow from operating activities as determined by generally accepted accounting principles. Other companies may calculate EBITDA differently.

Completion of Previously Announced Audit Committee Inquiry

As separately announced today, the company's Audit Committee inquiry into certain assertions made by two former executives and related matters has been completed. The Audit Committee's inquiry extended into the following areas: (1) assertions regarding the company's accounting for revenue and tooling, (2) a comprehensive review of related party transactions and (3) certain corporate governance procedures. The primary findings of the Audit Committee include that (1) it did not become aware of any events that would necessitate a restatement of any previously issued financial statements and (2) that all related party transactions had a legitimate business

<PAGE>

purpose, were negotiated fairly, and were intended to advance the interests of the company and not to benefit the related parties at the company's expense.

The Audit Committee, however, has made certain corporate governance and disclosure recommendations concerning related party transactions that are summarized in the company's separate press release.

The company intends to file amended Quarterly Reports on Form 10-Q for the quarters ended June 30, 2003 and September 30, 2003, to reflect the conclusion of the Audit Committee's inquiry and its recommendations, but, as indicated

above, no restatement of any previously issued financial statements is required or being made. The 2003 Form 10-K is expected to include audited financial statements and the required CEO and CFO certifications under Sarbanes-Oxley.

The members of the company's Audit Committee are Robert C. Clark, the former Dean of the Harvard Law School, Marshall A. Cohen, counsel at Cassels Brock and Blackwell, a Canadian law firm, and former Senator Warren B. Rudman. The Audit Committee was advised by Davis Polk & Wardwell and an accounting expert, Alex Arcady, a retired partner from Ernst & Young LLP.

Commenting upon the completion of the Audit Committee's work, which began in August 2003, Mr. Stockman said, "The company is deeply grateful to the members of the Audit Committee and its advisors for their tireless work in examining these matters."

2004 Outlook

We estimate net sales for the full year 2004 will be $4.0 billion to $4.05 billion based on a 16.2 million NAFTA vehicle build and we expect operating income to be in the $225 million to $240 million range for 2004. EBITDA is expected to be in the $355 million to $370 million range. We anticipate that in 2004 net earnings will range between a breakeven and 10 cents per common share. All of these numbers exclude the impacts of any future restructuring or impairment charges. Capital spending is expected to be in the $145 million to $155 million range for 2004.

FASB Interpretation No. 46
The company is currently evaluating whether the recently revised FASB Interpretation No. 46, "Consolidation of Variable Interest Entities," applies to certain of the company's previously-disclosed operating leases with a related party. The financial information contained in this release has been presented on the basis that FIN 46 is not applicable in this instance, but the company's Annual Report on Form 10-K will reflect its ultimate conclusion on this issue.

<PAGE>

Management believes that, if FIN 46 is applicable, the resulting implementation will not have a material effect on the company's financial statements.

The company will hold a briefing with automotive institutional investors and security analysts, news media representatives and other interested parties, including its security holders, at 10:30 a.m. EST on Thursday, March 11, 2004 to discuss its fourth quarter and year-end results and other matters. To participate by phone, please dial (973) 582-2729. The briefing will also be audio webcast, on our website at: www.collinsaikman.com/investor/confcalls.html. A slide presentation will also be used in conjunction with this teleconference and will be available on the company's website.

Collins & Aikman Corporation is a leading global supplier of automotive interior components and systems, including: instrument panels, cockpit modules, flooring and acoustic systems, automotive fabric, and interior trim, as well as exterior trim and convertible roof systems. The company's current operations include 15 countries, more than 100 facilities and nearly 24,000 employees. Information about Collins & Aikman is available on the Internet at www.collinsaikman.com.

This news release contains forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995. Actual results may differ materially from the anticipated results because of certain risks and uncertainties, including but not limited to general economic conditions in the markets in which Collins & Aikman operates, fluctuations in the production of vehicles for which the company is a supplier, changes in the popularity of particular car models, labor disputes involving the company or its significant customers, changes in consumer preferences, dependence on significant automotive customers, the level of competition in the automotive supply industry, pricing pressure from automotive customers, the substantial leverage of the company and its subsidiaries, limitations imposed by the company's debt facilities, implementation of the reorganization plan, charges made in connection with the integration of operations acquired by the company, the risks associated with conducting business in foreign countries and other risks detailed from time-to-time in the company's Securities and Exchange Commission filings.

CONTACT: J. MICHAEL STEPP
VICE CHAIRMAN & CFO
(248) 824-1520
MIKE.STEPP@COLAIK.COM

ROBERT A. KRAUSE
VICE PRESIDENT & TREASURER
HEAD OF INVESTOR RELATIONS
(248) 733-4355
ROBERT.KRAUSE@COLAIK.COM

###

<PAGE>

COLLINS & AIKMAN CORPORATION
CONDENSED CONSOLIDATED STATEMENTS OF OPERATIONS
(Unaudited)

<TABLE>
<CAPTION>

```
-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
 MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGjlWyK3XmZv3dTINen
 TWSM7vrzLADbmYQaionwg5sDW3P6oaM5D3tdezXMm7z1T+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
 FloaY+ZHV4ICa2EcC1CGJWDWRjpu3ZKC01FXmMdSPQfIuYBriX2UBZhZYm4xNeDy
 mIW+8jlh3CUixuEpC6bbVw==

<SEC-DOCUMENT>0000950124-03-001365.txt : 20030424
<SEC-HEADER>0000950124-03-001365.hdr.sgml : 20030424
<ACCEPTANCE-DATETIME>20030424143508
ACCESSION NUMBER:		0000950124-03-001365
CONFORMED SUBMISSION TYPE:	DEF 14A
PUBLIC DOCUMENT COUNT:		5
CONFORMED PERIOD OF REPORT:	20030516
FILED AS OF DATE:		20030424
EFFECTIVENESS DATE:		20030424

FILER:

	COMPANY DATA:
		COMPANY CONFORMED NAME:			COLLINS & AIKMAN CORP
		CENTRAL INDEX KEY:			0000846815
		STANDARD INDUSTRIAL CLASSIFICATION:	MOTOR VEHICLE PARTS & ACCESSORIES [3714]
		IRS NUMBER:				133489233
		STATE OF INCORPORATION:			DE
		FISCAL YEAR END:			1231

	FILING VALUES:
		FORM TYPE:		DEF 14A
		SEC ACT:		1934 Act
		SEC FILE NUMBER:	001-10218
		FILM NUMBER:		03662035

	BUSINESS ADDRESS:
		STREET 1:		250 STEPHENSON HWY
		CITY:			TROY
		STATE:			MI
		ZIP:			48083
		BUSINESS PHONE:		2488242500

	MAIL ADDRESS:
		STREET 1:		250 STEPHENSON HWY
		CITY:			TROY
		STATE:			MI
		ZIP:			48083

	FORMER COMPANY:
		FORMER CONFORMED NAME:	WCI HOLDINGS CORP
		DATE OF NAME CHANGE:	19920703

	FORMER COMPANY:
		FORMER CONFORMED NAME:	COLLINS & AIKMAN HOLDINGS CORP
		DATE OF NAME CHANGE:	19930114

	FORMER COMPANY:
		FORMER CONFORMED NAME:	COLLINS & AIKMAN HOLDINGS CORP/DE
		DATE OF NAME CHANGE:	19930914
</SEC-HEADER>
<DOCUMENT>
<TYPE>DEF 14A
<SEQUENCE>1
<FILENAME>k75833def14a.htm
<DESCRIPTION>DEFINITIVE PROXY STATEMENT
<TEXT>
<HTML>
<HEAD>
<TITLE>def14a</TITLE>
</HEAD>
<BODY bgcolor="#FFFFFF">
<!-- PAGEBREAK -->
<H5 align="left" style="page-break-before:always"><A HREF="#toc">Table of Contents</A></H5><P>
<CENTER>
<TABLE cellspacing="0" border="0" cellpadding="0" width="100%">
<TR valign="bottom">
	<TD width="70%"> </TD>
	<TD width="1%"> </TD>
	<TD width="13%"> </TD>
	<TD width="1%"> </TD>
	<TD width="15%"> </TD>
</TR>
<TR valign="bottom">
	<TD><FONT size="1"> </FONT></TD>
	<TD><FONT size="1"> </FONT></TD>
	<TD colspan="3" nowrap align="center"><FONT size="2">OMB APPROVAL</FONT></TD>
</TR>
<TR valign="bottom">
	<TD><FONT size="1"> </FONT></TD>
	<TD><FONT size="1"> </FONT></TD>
	<TD colspan="3" nowrap align="center"><HR size="1" noshade></TD>
</TR>
<TR valign="bottom">
	<TD valign="top"><FONT size="2"> </FONT></TD>
	<TD><FONT size="2"> </FONT></TD>
	<TD align="left" valign="top"><FONT size="2">
OMB Number:
</FONT></TD>
	<TD><FONT size="2"> </FONT></TD>
```

```
        <TD align="right" valign="top"><FONT size="2">3235-0059</FONT></TD>
</TR>

<TR valign="bottom">
        <TD valign="top"><FONT size="2"> </FONT></TD>
        <TD><FONT size="2"> </FONT></TD>
        <TD align="left" valign="top"><FONT size="2">
Expires:
</FONT></TD>
        <TD><FONT size="2"> </FONT></TD>

<TD nowrap align="right" valign="top"><FONT size="2">August 31, 2004</FONT></TD>
</TR>

<TR valign="bottom">
        <TD valign="top"><FONT size="2"> </FONT></TD>
        <TD><FONT size="2"> </FONT></TD>
        <TD colspan="2" nowrap align="left" valign="top"><FONT size="2">Estimated average burden<br>hours per

response</FONT></TD>

        <TD align="right" valign="bottom"><FONT size="2">14.73</FONT></TD>
</TR>

</TABLE>
</CENTER>

<P align="center"><font size="2"><B>UNITED STATES<BR>SECURITIES AND EXCHANGE COMMISSION<BR>
Washington, D.C. 20549</B>
</font>

<P align="center"><FONT size="2"><B>SCHEDULE 14A</B>
</FONT>

<P align="center"><FONT size="2">Proxy Statement Pursuant to Section 14(a) of the Securities<BR>
Exchange Act of 1934 (Amendment No.     )
</FONT>

<P>
<TABLE width="100%" border="0" cellpadding="0" cellspacing="0">
<TR>
        <TD width="3%"></TD>
        <TD width="97%"></TD>
</TR>
<TR valign="top">
        <TD> </TD>
        <TD><FONT size="2">Filed by the Registrant   <FONT face="wingdings">&#111;</FONT></FONT></TD>
</TR>
<TR valign="top">
        <TD> </TD>
        <TD><FONT size="2">Filed by a Party other than the Registrant   <FONT face="wingdings">&#111;</FONT></FONT></TD>
</TR>
<TR><TD> </TD></TR>
<TR valign="top">
        <TD> </TD>
        <TD><FONT size="2">Check the appropriate box:</FONT></TD>
</TR>
</TABLE>
<p>
<TABLE width="100%" border="0" cellpadding="0" cellspacing="0">
<TR>
        <TD width="3%"></TD>
        <TD width="97%"></TD>
</TR>
<TR valign="top">
        <TD> </TD>

<TD><FONT size="2"><FONT face="wingdings">&#111;</FONT>   Preliminary Proxy Statement</FONT></TD>
</TR>
<TR valign="top">
        <TD> </TD>

<TD><FONT size="2"><FONT face="wingdings">&#111;</FONT>  
<B>Confidential, for Use of the Commission Only (as permitted by
Rule 14a-6(e)(2))</B></FONT></TD>
</TR>
<TR valign="top">
        <TD> </TD>

<TD><FONT size="2"><FONT face="wingdings">&#120;</FONT>   Definitive Proxy Statement</FONT></TD>
</TR>
<TR valign="top">
        <TD> </TD>
        <TD><FONT size="2"><FONT face="wingdings">&#111;</FONT>   Definitive Additional Materials</FONT></TD>
</TR>
<TR valign="top">
        <TD> </TD>

<TD><FONT size="2"><FONT face="wingdings">&#111;</FONT>  
Soliciting Material Pursuant to &#167;240.14a-12</FONT></TD>
</TR>
</TABLE>

<P align="center"><FONT size="2">Collins and Aikman Corporation</FONT>
<HR size="1">
<P align="center"><FONT size="2">(Name of Registrant as Specified In Its Charter)
</FONT>
<p>
```

```
<HR size="1">
<P align="center"><FONT size="2">(Name of Person(s) Filing Proxy
Statement, if other than the Registrant)
</FONT>
<P><FONT size="2">      Payment of Filing Fee (Check the appropriate box):
</FONT>

<P>
<TABLE width="100%" border="0" cellpadding="0" cellspacing="0">
<TR>
        <TD width="3%"></TD>
        <TD width="97%"></TD>
</TR>
<TR valign="top">
        <TD> </TD>

<TD><FONT size="2"><FONT face="wingdings">&#120;</FONT>   No fee required.</FONT></TD>
</TR>
<TR valign="top">
        <TD> </TD>

<TD><FONT size="2"><FONT face="wingdings">&#111;</FONT>  
Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and
0-11.</FONT></TD>
</TR>
</TABLE>
<P>
<TABLE width="100%" border="0" cellpadding="0" cellspacing="0">
<TR>
        <TD width="3%"></TD>
        <TD width="97%"></TD>
</TR>
<TR valign="top">
        <TD> </TD>
        <TD><FONT size="2">      1) Title of each class of securities to which transaction applies:</FONT
</TR>
</TABLE>
<HR size="1">

<P>
<TABLE width="100%" border="0" cellpadding="0" cellspacing="0">
<TR>
        <TD width="3%"></TD>
        <TD width="97%"></TD>
</TR>
<TR valign="top">
        <TD> </TD>
        <TD><FONT size="2">      2) Aggregate number of securities to which transaction applies:</FONT></
</TR>
</TABLE>
<HR size="1">

<P>
<TABLE width="100%" border="0" cellpadding="0" cellspacing="0">
<TR>
        <TD width="3%"></TD>
        <TD width="97%"></TD>
</TR>
<TR valign="top">
        <TD> </TD>
        <TD><FONT size="2">      3) Per unit price or other underlying value of transaction computed
pursuant to Exchange Act Rule 0-11 (set forth the amount on which the
filing fee is calculated and state how it was determined):</FONT></TD>
</TR>
</TABLE>
<HR size="1">

<P>
<TABLE width="100%" border="0" cellpadding="0" cellspacing="0">
<TR>
        <TD width="3%"></TD>
        <TD width="97%"></TD>
</TR>
<TR valign="top">
        <TD> </TD>
        <TD><FONT size="2">      4) Proposed maximum aggregate value of transaction:</FONT></TD>
</TR>
</TABLE>
<HR size="1">

<P>
<TABLE width="100%" border="0" cellpadding="0" cellspacing="0">
<TR>
        <TD width="3%"></TD>
        <TD width="97%"></TD>
</TR>
<TR valign="top">
        <TD> </TD>
        <TD><FONT size="2">      5) Total fee paid:</FONT></TD>
</TR>
</TABLE>
<HR size="1">

<P>
<TABLE width="100%" border="0" cellpadding="0" cellspacing="0">
<TR>
        <TD width="3%"></TD>
        <TD width="97%"></TD>
</TR>
<TR valign="top">
```

**REPORT OF THE AUDIT COMMITTEE**

The role of the Audit Committee is to assist the Board of Directors in its oversight of the Company's financial reporting processes. The Board of Directors, in its business judgment, has determined that the members of the Committee are "independent", as required by applicable listing standards of the New York Stock Exchange. The Committee operates pursuant to a written Charter, a copy of which was attached to the Company's Proxy Statement for the annual meeting held in 2001. As set forth in the Charter, management of the Company is responsible for the preparation, presentation and integrity of the Company's financial statements, and maintaining appropriate accounting and financial reporting principles, policies, internal controls and procedures designed to assure compliance with accounting standards and applicable laws and regulations. The independent auditors are responsible for planning and carrying out a proper audit of the Company's annual financial statements and expressing an opinion as to the fairness of the financial statements in conformity with generally accepted accounting principles.

The Audit Committee met with the independent auditors, management and internal auditors to assure that all were carrying out their respective responsibilities. The Committee reviewed the performance and fees of the independent auditors prior to recommending their appointment, and met with them to discuss the scope and results of their audit work, including the adequacy of internal controls and the quality of financial reporting. The Committee discussed with the independent auditors their judgments regarding the quality and acceptability of the Company's accounting principles, the clarity of its disclosures and the degree of

Table of Contents

aggressiveness or conservatism of its accounting principles and underlying estimates. The Committee discussed with and received the written disclosures and the letter from the independent auditors required by Independence Standards Board Standard No. 1, confirming their independence. The independent auditors had full access to the Committee, including meetings without management present.

Based upon the reports and discussions described in this report, and subject to the limitations on the role and responsibilities of the Committee referred to above and in the Charter, the Committee recommended to the Board of Directors that the audited financial statements be included in the Company's Annual Report on Form 10-K for the year ended December 31, 2002 filed with the Securities and Exchange Commission.

By: The Audit Committee of the Board of Directors of
Collins & Aikman Corporation

Robert C. Clark, *Chair*
Warren B. Rudman
Marshall A. Cohen

```
-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
 MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGjlWyK3Xm2v3dTINen
 TWSM7vrzLADbmYQaionwg5sDW3P6oaM5D3tdezXMm7z1T+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
 F2I6hOhyJrvcpav1nOLXqV3afFb0yArYc2Hea0l1GaOYR8TLiNfTRYD1RDjBsA8D
 HcmFU4WQ0o8s93xaj4fh+A==
```

```
<SEC-DOCUMENT>0000950134-02-004125.txt : 20020425
<SEC-HEADER>0000950134-02-004125.hdr.sgml : 20020425
ACCESSION NUMBER:               0000950134-02-004125
CONFORMED SUBMISSION TYPE:      DEF 14A
PUBLIC DOCUMENT COUNT:          5
CONFORMED PERIOD OF REPORT:     20020516
FILED AS OF DATE:               20020425

FILER:

        COMPANY DATA:
                COMPANY CONFORMED NAME:                 COLLINS & AIKMAN CORP
                CENTRAL INDEX KEY:                      0000846815
                STANDARD INDUSTRIAL CLASSIFICATION:     CARPETS AND RUGS [2273]
                IRS NUMBER:                             133489233
                STATE OF INCORPORATION:                 DE
                FISCAL YEAR END:                        1231

        FILING VALUES:
                FORM TYPE:              DEF 14A
                SEC ACT:                1934 Act
                SEC FILE NUMBER:        001-10218
                FILM NUMBER:            02620213

        BUSINESS ADDRESS:
                STREET 1:               5755 NEW KING CT
                CITY:                   TROY
                STATE:                  MI
                ZIP:                    48098
                BUSINESS PHONE:         2488242500

        MAIL ADDRESS:
                STREET 1:               5755 NEW KING CT
                CITY:                   TROY
                STATE:                  MI
                ZIP:                    48098

        FORMER COMPANY:
                FORMER CONFORMED NAME:  WCI HOLDINGS CORP
                DATE OF NAME CHANGE:    19920703

        FORMER COMPANY:
                FORMER CONFORMED NAME:  COLLINS & AIKMAN HOLDINGS CORP
                DATE OF NAME CHANGE:    19930114

        FORMER COMPANY:
                FORMER CONFORMED NAME:  COLLINS & AIKMAN HOLDINGS CORP/DE
                DATE OF NAME CHANGE:    19930914
</SEC-HEADER>
<DOCUMENT>
<TYPE>DEF 14A
<SEQUENCE>1
<FILENAME>k69050def14a.htm
<DESCRIPTION>DEFINITIVE PROXY STATEMENT
<TEXT>
<HTML>
<HEAD>
<TITLE>Collins & Aikman Corporation - DEF 14A</TITLE>
</HEAD>
<BODY bgcolor="#FFFFFF">
<!-- PAGEBREAK -->
<H5 align="left" style="page-break-before:always"><A HREF="#toc">Table of Contents</A></H5><P>

<BR clear="right">
<BR clear="right">
<P align="center"><FONT size="2">SECURITIES AND EXCHANGE COMMISSION<BR>
Washington, D.C. 20549</FONT>
<P align="center"><FONT size="2">SCHEDULE 14A INFORMATION</FONT>
<P align="center"><FONT size="2"><B>PROXY STATEMENT PURSUANT TO
SECTION 14(a) OF THE<BR>SECURITIES
EXCHANGE ACT OF 1934</B></FONT>
<P>
<FONT size="2">Filed by the Registrant [X]<BR>
Filed by a Party other than the Registrant [  ]</FONT>
<P>
<TABLE width="640" border="0" cellspacing="0" cellpadding="4">
<TR><TD colspan="2"><FONT size="2">Check the appropriate box:</FONT></TD></TR>

<TR><TD nowrap><FONT size="2">[  ]</FONT></TD>
<TD><FONT size="2">Preliminary Proxy Statement</FONT></TD></TR>

<TR><TD nowrap><FONT size="2">[  ]</FONT></TD>
<TD><FONT size="2">Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))</FONT></TD></TR>

<TR><TD nowrap><FONT size="2">[X]</FONT></TD>
<TD><FONT size="2">Definitive Proxy Statement</FONT></TD></TR>

<TR><TD nowrap><FONT size="2">[  ]</FONT></TD>
<TD><FONT size="2">Definitive Additional Materials</FONT></TD></TR>
```

```
<TR><TD nowrap><FONT size="2">[  ]</FONT></TD>
<TD><FONT size="2">Soliciting Material Pursuant to Section 240.14a-11(c) or Section 240.14a-12</FONT></TD></TR>
</TABLE>

<P>

<TABLE width="100%" border="0" cellspacing="0" cellpadding="4">
<TR>
<TD align="center" colspan="3"><FONT size="2">Collins &amp; Aikman
Corporation</FONT></TD>
</TR>

<TR>
<TD align="center" colspan="3"><HR noshade></TD>
</TR>

<TR>
<TD align="center" colspan="3"><FONT size="2">(Name of Registrant as Specified in Its Charter)</FONT></TD>
</TR>

<TR>
<TD align="center" colspan="3"> </TD>
</TR>

<TR>
<TD align="center" colspan="3"> </TD>
</TR>

<TR>
<TD align="center" colspan="3"><FONT size="2">Not Applicable</FONT></TD>
</TR>

<TR>
<TD align="center" colspan="3"><HR noshade></TD>
</TR>

<TR>
<TD align="center" colspan="3"><FONT size="2">(Name of Person(s) Filing Proxy Statement, if other than the Registrant)</FONT></TD>
</TR>

<TR>
<TD align="center" colspan="3"> </TD>
</TR>

<TR>
<TD colspan="3"><FONT size="2">Payment of Filing Fee (Check the appropriate box):</FONT></TD>
</TR>

<TR>
<TD nowrap><FONT size="2">[X]</FONT></TD>
<TD colspan="2"><FONT size="2">No fee required.</FONT></TD>
</TR>

<TR>
<TD><FONT size="2">[  ]</FONT></TD>
<TD colspan="2"><FONT size="2">Fee computed on table below per
Exchange Act Rules 14a-6(i)(1) and 0-11.</FONT></TD>
</TR>

<TR>
<TD> </TD>
<TD><FONT size="2">1)</FONT></TD>
<TD><FONT size="2">Title of each class of securities to which transaction applies:</FONT></TD>
</TR>

<TR>
<TD> </TD>
<TD> </TD>
<TD> </TD>
</TR>

<TR>
<TD colspan="3"><HR noshade></TD>
</TR>

<TR>
<TD> </TD>
<TD><FONT size="2">2)</FONT></TD>
<TD><FONT size="2">Aggregate number of securities to which transaction applies:</FONT></TD>
</TR>

<TR>
<TD> </TD>
<TD> </TD>
<TD> </TD>
</TR>

<TR>
<TD colspan="3"><HR noshade></TD>
</TR>

<TR><TD><BR></TD>
<TD valign="top"><FONT size="2">3)</FONT></TD>
<TD><FONT size="2">Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount

<TR>
<TD> </TD>
<TD> </TD>
<TD> </TD>
```

```
</TR>

<TR>
<TD colspan="3"><HR noshade></TD>
</TR>

<TR><TD><BR></TD>
<TD><FONT size="2">4)</FONT></TD>
<TD><FONT size="2">Proposed maximum aggregate value of transaction:</FONT></TD></TR>

<TR>
<TD> </TD>
<TD> </TD>
<TD> </TD>
</TR>

<TR>
<TD colspan="3"><HR noshade></TD>
</TR>

<TR><TD><BR></TD>
<TD><FONT size="2">5)</FONT></TD>
<TD><FONT size="2">Total fee paid:</FONT></TD></TR>

<TR>
<TD> </TD>
<TD> </TD>
<TD> </TD>
</TR>

<TR>
<TD colspan="3"><HR noshade></TD>
</TR>

<TR><TD><FONT size="2">[  ]</FONT></TD>
<TD colspan="2"><FONT size="2">Fee paid previously with preliminary materials.</FONT></TD></TR>

<TR><TD valign="top"><FONT size="2">[  ]</FONT></TD>
<TD colspan="2"><FONT size="2">Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filin
<TR><TD colspan="3"><BR></TD></TR>
<P>
<TR><TD><BR></TD>
<TD><FONT size="2">1)</FONT></TD>
<TD><FONT size="2">Amount Previously Paid:</FONT></TD></TR>

<TR>
<TD> </TD>
<TD> </TD>
<TD> </TD>
</TR>

<TR>
<TD colspan="3"><HR noshade></TD>
</TR>

<TR><TD><BR></TD>
<TD><FONT size="2">2)</FONT></TD>
<TD><FONT size="2">Form, Schedule or Registration Statement No.:</FONT></TD></TR>

<TR>
<TD> </TD>
<TD> </TD>
<TD> </TD>
</TR>

<TR>
<TD colspan="3"><HR noshade></TD>
</TR>

<TR><TD><BR></TD>
<TD><FONT size="2">3)</FONT></TD>
<TD><FONT size="2">Filing Party:</FONT></TD></TR>

<TR>
<TD> </TD>
<TD> </TD>
<TD> </TD>
</TR>

<TR>
<TD colspan="3"><HR noshade></TD>
</TR>

<TR><TD><BR></TD>
<TD><FONT size="2">4)</FONT></TD>
<TD><FONT size="2">Date Filed:</FONT></TD></TR>

<TR>
<TD> </TD>
<TD> </TD>
<TD> </TD>
</TR>

<TR>
<TD colspan="3"><HR noshade></TD>
</TR>

</TABLE>
```

**REPORT OF THE AUDIT COMMITTEE**

The role of the Audit Committee is to assist the Board of Directors in its oversight of the Company's financial reporting processes. The Board of Directors, in its business judgment, has determined that the members of the Committee are "independent", as required by applicable listing standards of the New York Stock Exchange. The Committee operates pursuant to a written Charter, a copy of which is attached to the Company's Proxy Statement for the annual meeting held in 2001. As set forth in the Charter, management of the Company is responsible for the preparation, presentation and integrity of the Company's financial statements, and maintaining appropriate accounting and financial reporting principles, policies, internal controls and procedures designed to assure compliance with accounting standards and applicable laws and regulations. The independent auditors are responsible for planning and carrying out a proper audit of the Company's annual financial statements and expressing an opinion as to the fairness of the financial statements in conformity with generally accepted accounting principles.

The Audit Committee met with the independent auditors, management and internal auditors to assure that all were carrying out their respective responsibilities. The Committee reviewed the performance and fees of the independent auditors prior to recommending their appointment, and met with them to discuss the scope and results of their audit work, including the adequacy of internal controls and the quality of financial

**Table of Contents**

reporting. The Committee discussed with the independent auditors their judgments regarding the quality and acceptability of the Company's accounting principles, the clarity of its disclosures and the degree of aggressiveness or conservatism of its accounting principles and underlying estimates. The Committee discussed with and received the written disclosures and the letter from the independent auditors required by Independence Standards Board Standard No. 1 confirming their independence. The independent auditors had full access to the Committee, including meetings without management present.

Based upon the reports and discussions described in this report, and subject to the limitations on the role and responsibilities of the Committee referred to above and in the Charter, the Committee recommended to the Board of Directors that the audited financial statements be included in the Company's Annual Report on Form 10-K for the year ended December 31, 2001 filed with the Securities and Exchange Commission.

By:  The Collins & Aikman Corporation Audit Committee

Robert C. Clark, *Chair*
Warren B. Rudman
Marshall A. Cohen

<DOCUMENT>
<TYPE>DEF 14A
<SEQUENCE>1
<FILENAME>0001.txt
<DESCRIPTION>DEFINITIVE PROXY
<TEXT>

<PAGE>

SCHEDULE 14A INFORMATION
PROXY STATEMENT PURSUANT TO SECTION 14(A)
OF THE SECURITIES EXCHANGE ACT OF 1934
(AMENDMENT NO. )

Filed by the Registrant [X]

Filed by a Party other than the Registrant [ ]

Check the appropriate box:

[ ] Preliminary Proxy Statement

[ ] Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)2))

[X] Definitive Proxy Statement

[ ] Definitive Additional Materials

[ ] Soliciting Material Pursuant to Section 240.14a-11(c) or Section 240.14a-12

COLLINS & AIKMAN CORPORATION
---
(Name of Registrant as Specified In Its Charter)

---
(Name of Person(s) Filing Proxy Statement, if other than Registrant)

Payment of Filing Fee (Check the appropriate box):

[X] No fee required.

[ ] Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

1) Title of each class of securities to which transaction applies:

---

2) Aggregate number of securities to which transaction applies:

---

3) Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):

4) Proposed maximum aggregate value of transaction:

---

5) Total fee paid:

---

[ ] Fee paid previously with preliminary materials.

[ ] Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

1) Amount Previously Paid:

---

2) Form, Schedule or Registration Statement No.:

---

3) Filing Party:

---

4) Date Filed:

---

<PAGE>

[COLLINS & AIKMAN LOGO]

Collins & Aikman Corporation
5755 New King Court
Troy, Michigan 48098

April 20, 2001

Dear Stockholder:

You are cordially invited to attend the Annual Meeting of Stockholders of Collins & Aikman Corporation to be held on May 15, 2001 at the Company's headquarters at 5755 New King Court, Troy, Michigan 48098, at 11:00 a.m., Eastern Daylight Savings Time.

You are urged to read carefully the formal notice of the meeting and the Proxy Statement which follow. After reading them, please sign, date and mail the enclosed proxy card so that your shares will be represented at the meeting. A prepaid return envelope is provided for this purpose.

We look forward to seeing you at the meeting.

Sincerely,

/s/ Thomas E. Evans

Thomas E. Evans
Chairman of the Board and
Chief Executive Officer

<PAGE>

NOTICE OF ANNUAL MEETING OF STOCKHOLDERS
To Be Held May 15, 2001

To the Stockholders of
COLLINS & AIKMAN CORPORATION:

NOTICE IS HEREBY GIVEN that the Annual Meeting (the "Meeting") of the holders of common stock, par value $0.01 per share (the "Common Stock"), of Collins & Aikman Corporation, a Delaware corporation (the "Company"), will be held on May 15, 2001 at the Company's headquarters at 5755 New King Court, Troy, Michigan 48098, commencing at 11:00 a.m., Eastern Daylight Savings Time, for the purpose of considering and voting upon the following matters:

(I) the election of four directors to hold office until the 2004 Annual Meeting and thereafter until their successors are elected and qualified; and

(II) such other matters as may properly come before the Meeting or any adjournment or postponement thereof.

The Board of Directors has fixed the close of business on April 9, 2001 as the record date for the determination of stockholders entitled to notice of and to vote at the Meeting. Therefore, only holders of record of Common Stock at the close of business on such date will be entitled to notice of and to vote at the Meeting.

A complete list of stockholders entitled to notice of and to vote at the Meeting will be available at our offices at 5755 New King Court, Troy, Michigan 48098, at least ten days prior to the Meeting. The list will also be available for inspection by stockholders at the Meeting on the day thereof.

Stockholders are requested to sign and date the enclosed proxy and return it promptly in the enclosed pre-addressed reply envelope, whether or not they plan to attend the Meeting, so that their shares may be represented. Any proxy may be revoked by filing with the Secretary of the Company in care of the First Union Customer Information Service Center at the address set forth in the accompanying Proxy Statement either a written notice of revocation bearing a later date than the proxy or a subsequent proxy relating to the same shares at

any time prior to the time the proxy is voted. Further, any person who has executed a proxy and is present at the Meeting may vote in person instead of by proxy, thereby canceling any proxy previously given.

By Order of the Board of Directors,

/s/ Ronald T. Lindsay
-----------------------------------
RONALD T. LINDSAY
Secretary

April 20, 2001

Please execute, date and return the enclosed proxy card whether or not you intend to be present at the Annual Meeting.
<PAGE>

PROXY STATEMENT

------------

COLLINS & AIKMAN CORPORATION
5755 New King Court
Troy, Michigan 48098

------------

ANNUAL MEETING OF STOCKHOLDERS
To Be Held May 15, 2001

GENERAL INFORMATION

This Proxy Statement is furnished in connection with the solicitation by the Board of Directors of Collins & Aikman Corporation, a Delaware corporation (the "Company"), of proxies for use at the Annual Meeting of Stockholders of the Company to be held on May 15, 2001 at the Company's offices at 5755 New King Court, Troy, Michigan 48098, commencing at 11:00 a.m., Eastern Daylight Savings Time, and at any adjournment or postponement thereof (the "Meeting").

The presence, in person or by proxy, of stockholders holding a majority of the shares entitled to vote at the Meeting is necessary to constitute a quorum at the Meeting.

All shares of the common stock, par value $0.01 per share (the "Common Stock"), of the Company which are entitled to vote and are represented at the Meeting by properly executed proxies received prior to or at the Meeting, and not revoked, will be voted at the Meeting in accordance with the instructions indicated on such proxies. If no instructions are indicated, such proxies will be voted to elect the four nominees for director named below (or if any nominee becomes unavailable, such other person as the Nominating Committee of the Board of Directors or the Company selects) and in accordance with the Board of Directors' recommendations with respect to any other matter that may properly come before the Meeting.

The Board of Directors has fixed the close of business on April 9, 2001 as the record date (the "Record Date") for the determination of stockholders entitled to notice of and to vote at the Meeting. Therefore, only holders of record of Common Stock at the close of business on the Record Date will be entitled to notice of and to vote at the Meeting.

Any proxy may be revoked by the person giving it at any time before it is voted. A proxy may be revoked by filing, with the Secretary of the Company (in care of the First Union Customer Information Service Center, Client Service Group, 1525 West W.T. Harris Boulevard, 3C3, Charlotte, North Carolina, 28288-1153, Attention: Proxy Department) at any time prior to the time the proxy is voted, either a written notice of revocation bearing a later date than the proxy or a subsequent proxy relating to the same shares, or by attending the Meeting and voting in person (although attendance at the Meeting will not in and of itself constitute revocation of a proxy).

All expenses of this solicitation, including the cost of preparing and mailing this Proxy Statement, will be borne by the Company. In addition to solicitation by use of the mails, proxies may be solicited by directors, officers and employees of the Company in person or by telephone, telegram or other means of communication. Such directors, officers and employees will not be additionally compensated, but may be reimbursed for out-of-pocket expenses in connection with such solicitation. Arrangements will also be made with custodians, nominees and fiduciaries for forwarding of proxy solicitation materials to beneficial owners of shares of Common Stock held of record by such custodians, nominees and fiduciaries, and the Company may reimburse such custodians, nominees and fiduciaries for reasonable expenses incurred in connection therewith.

This Proxy Statement and the accompanying proxy are being mailed to stockholders commencing on or about April 20, 2001.

REPORT OF THE AUDIT COMMITTEE

The role of the Audit Committee is to assist the Board of Directors in its oversight of the Company's financial reporting processes. The Board of Directors, in its business judgment, has determined that the members of the Committee are "independent", as required by applicable listing standards of the New York Stock Exchange. The Committee operates pursuant to a charter (the "Charter"), a copy of which is attached to this Proxy Statement as Appendix A. As set forth in the Charter, management of the Company is responsible for the preparation, presentation and integrity of the Company's financial statements, and maintaining appropriate accounting and financial reporting principles, policies, internal controls and procedures designed to assure compliance with accounting standards and applicable laws and regulations. The independent auditors are responsible for planning and carrying out a proper audit of the Company's annual financial statements and expressing an opinion as to the fairness of the financial statements in conformity with generally accepted accounting principles.

The Audit Committee held six meetings during 2000.

The Audit Committee met with the independent auditors, management and internal auditors to assure that all were carrying out their respective responsibilities. The Committee reviewed the performance and fees of the independent auditors prior to recommending their appointment, and met with them to discuss the scope and results of their audit work, including the adequacy of internal controls and the quality of financial reporting. The Committee discussed with the independent auditors their judgments regarding the quality and acceptability of the Company's accounting principles, the clarity of its disclosures and the degree of aggressiveness or conservatism of its accounting principles and underlying estimates. The Committee discussed with and received a letter from the independent auditors

<PAGE>

confirming their independence. The independent auditors had full access to the Committee, including meetings without management present.

Based upon the reports and discussions described in this report, and subject to the limitations on the role and responsibilities of the Committee referred to above and in the Charter, the Committee recommended to the Board of Directors that the audited financial statements be included in the Company's Annual Report on Form 10-K for the year ended December 31, 2000 filed with the Securities and Exchange Commission.

The Audit Committee of the Board of Directors of Collins & Aikman Corporation for the period reported:

Robert C. Clark, Chair
Warren B. Rudman

# Exhibit 3

<DOCUMENT>
<TYPE>8-K
<SEQUENCE>1
<FILENAME>0001.txt
<DESCRIPTION>FORM 8-K
<TEXT>

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

FORM 8-K

CURRENT REPORT

Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934

Date of Report (Date of earliest event reported): March 21, 2001

COLLINS & AIKMAN CORPORATION
(Exact name of registrant as specified in its charter)

DELAWARE
(State or other jurisdiction of incorporation)

| 1-10218 | 13-3489233 |
|---|---|
| (Commission File Number) | (IRS Employer Identification No.) |

5755 New King Court, Troy, Michigan 48098
(Address of principal executive offices) (Zip code)

(248) 824-2500
(Registrant's telephone number, including area code):

N/A
(Former name or former address, if changed since last report)

<PAGE>

ITEM 5.

OTHER EVENTS

On March 21, 2001 Collins & Aikman Corporation issued a news release announcing that it has signed a letter of intent to acquire the Becker Group LLC. A copy of the news release is attached hereto as an exhibit and hereby incorporated into and made a part hereof.

ITEM 7.

EXHIBITS

(c)

| EXHIBIT NO. | EXHIBIT |
|---|---|
| 99 | News Release of Collins & Aikman Corporation dated March 21, 2001. |

SIGNATURE

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

Date: March 28, 2001

COLLINS & AIKMAN CORPORATION
(Registrant)

By: /S/ RONALD T. LINDSAY
------------------------------
Ronald T. Lindsay
Senior Vice President,
General Counsel and Secretary

<PAGE>

EXHIBIT INDEX

| EXHIBIT NO. | EXHIBIT |
|---|---|
| 99 | News Release of Collins & Aikman Corporation dated March 21, 2001. |

</TEXT>
</DOCUMENT>

<DOCUMENT>
<TYPE>EX-99
<SEQUENCE>2
<FILENAME>0002.txt
<DESCRIPTION>NEWS RELEASE
<TEXT>

EXHIBIT 99

News Release of Collins & Aikman Corporation dated March 21, 2001.

CONTACT: Collins & Aikman Corporation
Media: Aaron Stowell, 248/824-1656
aaron.stowell@colaik.com
Analysts: Sandra A. Thomas, 248/824-1645
sandy.thomas@colaik.com

COLLINS & AIKMAN ANNOUNCES LETTER OF INTENT TO ACQUIRE BECKER GROUP LLC

TROY, Mich.--(AutomotiveWire)--March 21, 2001--Collins & Aikman Corporation (NYSE:CKC) announced today that it has signed a letter of intent to acquire the Becker Group LLC (Becker), a leading supplier of plastic components to the automotive industry, with fiscal 2000 sales of approximately $235 million and EBITDA of $29 million. Under terms of the letter, Collins & Aikman will purchase all of the operating assets and equity interests of Becker. Consideration is expected to include $60 million in cash, an $18 million non-compete agreement (paid out over five years), 17 million shares of Collins & Aikman common stock and warrants for 500,000 shares at an exercise price of $5.00 per share. Completion of the transaction is subject to normal terms and conditions, including negotiation of definitive documentation, and it is expected to close within approximately 60 days. Once completed, the addition of Becker is anticipated to enhance Collins & Aikman's "Mega Tier Two" supplier position, via a significant increase in the scale of the Company's plastics business and strengthened relationships with the world's leading automotive interior integrators.

Upon completion of the transaction, Chuck Becker, principal owner of the Becker Group, will join the Collins & Aikman Board of Directors as Vice Chairman. Becker is a skilled and successful veteran of the automotive plastics industry, who brings to the combined companies extensive product knowledge and strong customer relationships.

Commenting on the transaction, Thomas E. Evans, Collins & Aikman's Chairman and Chief Executive Officer stated, "We are extremely excited about our pending transaction with the Becker Group. Our initial analysis shows that the combination of Becker and Collins & Aikman provides us with an opportunity to more than double our North American plastics business within a few years, while simultaneously providing both Collins & Aikman and our customers with a host of synergistic benefits. We look forward to completing this transaction, welcoming Chuck Becker and his team to our Company, further strengthening our relationships with the major Tier One integrators and continuing the transformation of Collins & Aikman into a world-class 'Mega Tier Two' automotive supplier."

Collins & Aikman, with annual sales approaching $2 billion, is the global leader in automotive floor and acoustic systems and is a leading supplier of automotive fabric, interior trim and convertible top systems. The Company's operations span the globe through 72 facilities, 13 countries and nearly 15,000 employees who are committed to achieving total excellence. Collins & Aikman's high-quality products combine industry-leading design and styling capabilities, superior

manufacturing  capabilities  and  the  industry's  most  effective  NVH  "quiet"

<PAGE>

technologies. Information about Collins & Aikman is available on the Internet at
www.collinsaikman.com.

This news release contains forward-looking  statements within the meaning of the
Private  Securities  Litigation  Reform Act of 1995.  Actual  results may differ
materially  from  the  anticipated  results because of  certain  risks  and
uncertainties,  including but not limited to general economic  conditions in the
markets in which Collins & Aikman  operates,  fluctuations  in the production of
vehicles  for which the  Company is a supplier,  labor  disputes  involving  the
Company  or  its  significant  customers,  changes  in  consumer  preferences,
dependence on significant automotive customers,  the level of competition in the
automotive  supply  industry,  pricing pressure from automotive  customers,  the
substantial leverage of the Company and its subsidiaries, limitations imposed by
the Company's debt  facilities,  charges made in connection with the integration
of operations acquired by the Company,  the implementation of the reorganization
plan, changes in the popularity of particular car models or particular  interior
trim packages,  the loss of programs on particular car models,  risks associated
with conducting business in foreign countries and other risks detailed from time
to time in the Company's  Securities and Exchange  Commission  filings including
without limitation, in Items 1 and 7 of the Company's Annual Report on Form 10-K
for the  year-ended  December 25, 1999,  and Item 1 in the  Company's  Quarterly
Report  on Form  10-Q for the  periods  ended  April 1,  2000,  July 1, 2000 and
September 25, 2000.

</TEXT>
</DOCUMENT>

# Exhibit 4

<DOCUMENT>
<TYPE>8-K
<SEQUENCE>1
<FILENAME>coll8k071301.txt
<DESCRIPTION>FORM 8-K
<TEXT>

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

FORM 8-K

Current Report

Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934

Date of Report (Date of earliest event reported): July 3, 2001

COLLINS & AIKMAN CORPORATION
(Exact name of registrant as specified in its charter)

DELAWARE

(State or other jurisdiction of incorporation)

| 1-10218 | 13-3489233 |
|---|---|
| (Commission File Number) | (IRS Employer Identification No.) |

5755 New King Court, Troy, Michigan 48098

(Address of principal executive offices) (Zip code)

(248) 824-2500

(Registrant's telephone number, including area code):

N/A

(Former name or former address, if changed since last report)

<PAGE>

-2-

ITEM 2. ACQUISITION OR DISPOSITION OF ASSETS

On July 3, 2001, Collins & Aikman Corporation (the "Company") completed the acquisition of Becker Group, L.L.C. pursuant to an Agreement and Plan of Merger (the "Merger Agreement") dated as of May 14, 2001 by and among the Company, Collins & Aikman Products Co., Becker Group, L.L.C., CE Becker Inc., ME McInerney Inc. and J Hoehnel Inc. (together with CE Becker Inc. and ME McInerney Inc., the "Corporations"), and the individuals named therein as Sellers. The

Merger Agreement is attached hereto as Exhibit 2.1.

Pursuant to the Merger Agreement, the Company merged with and into each of the Corporations, with the Company surviving. The consideration for the acquisition included an aggregate of 17 million shares of common stock of the Company and warrants to purchase 500,000 shares of common stock of the Company at an exercise price of $5.00 per share, $60.0 million in cash and an $18.0 million non-compete agreement with Charles E. Becker to be paid out over five years.

ITEM 7. FINANCIAL STATEMENTS AND EXHIBITS

(a) Financial Statements of Business Acquired

In accordance with Item 7(a)(4) of Form 8-K, the Company will file the financial statements of the business acquired as required by Item 7(a)(1) as soon as possible but in no event later than sixty days after the filing of this report.

(b) Pro Forma Financial Information

In accordance with Item 7(b)(2) of Form 8-K, the Company will file the pro forma financial information of the business acquired as required by Item 7(b) as soon as practicable but in no event later than sixty days after the filing of this report.

(c) EXHIBIT NO. DESCRIPTION

2.1 Agreement and Plan of Merger dated as of May 14, 2001 by and among Collins & Aikman Corporation, Collins & Aikman Products Co., Becker Group, L.L.C., CE Becker Inc., ME McInerney Inc., J. Hoehnel Inc. and the individuals party thereto as sellers.

4.1 Form of Warrant

99.1 News Release of Collins & Aikman Corporation dated July 5, 2001

<PAGE>

SIGNATURE

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

Date: July 13, 2001

COLLINS & AIKMAN CORPORATION
(Registrant)

By: /s/ Ronald T. Lindsay
---------------------------------------
Ronald T. Lindsay
Senior Vice President
General Counsel and Secretary

<PAGE>

EXHIBIT INDEX

| EXHIBIT NO. | DESCRIPTION |
| --- | --- |
| 2.1 | Agreement and Plan of Merger dated as of May 14, 2001 by and among Collins & Aikman Corporation, Collins & Aikman Products Co., Becker Group, L.L.C., CE Becker Inc., ME McInerney Inc., J. Hoehnel Inc. and the individuals party thereto as sellers. |
| 4.1 | Form of Warrant |
| 99.1 | News Release of Collins & Aikman Corporation dated July 5, 2001 |

</TEXT>
</DOCUMENT>

<DOCUMENT>
<TYPE>EX-99..1
<SEQUENCE>4
<FILENAME>collspress.txt
<DESCRIPTION>PRESS RELEASE
<TEXT>

For Immediate Release
July 5, 2001

Contacts:
Media: Aaron Stowell
(248) 824-1656
aaron.stowell@colaik.com

Analysts: Sandy Thomas
(248) 824-1645
sandy.thomas@colaik.com

COLLINS & AIKMAN COMPLETES ACQUISITION OF BECKER GROUP, LLC

TROY, Mich. - Collins & Aikman (NYSE: CKC) today announced that it has completed its acquisition of the Becker Group, LLC (Becker). As previously indicated, consideration included $60 million in cash, an $18 million non-compete agreement (to be paid out over five years), 17 million shares of Collins & Aikman common stock and warrants for 500,000 shares at an exercise price of $5.00 per share. Becker, a leading supplier of plastic components to the automotive industry is being integrated into the Company's plastics operations under the direction of Louis Gasperut, Chief Operating Officer - North American Plastics. Additionally, Chuck Becker, former principal and owner of Becker, has joined Collins & Aikman's Board of Directors as Vice Chairman.

Commenting on the transaction, Thomas E. Evans, Collins & Aikman's Chairman and Chief Executive Officer stated, "We're extremely pleased to have completed this transaction which will further strengthen our plastics operations. In addition to gaining Becker's strong book of business, this transaction brings to us both world-class tooling manufacturing capabilities and expanded production capacity over a wide-range of high tonnage presses, adds strategic production locations in the Eastern and Southern United States and represents a key building block in Collins & Aikman's `Mega Tier 2' strategy."

Collins & Aikman Corporation, with annual sales approaching $2 billion, is the global leader in automotive floor and acoustic systems and is a leading supplier of automotive

<PAGE>

-2-

fabric, interior trim and convertible top systems. The Company's operations span the globe through 13 countries, more than 70 facilities and over 15,000 employees who are committed to achieving total excellence. Collins & Aikman's high-quality products combine superior design, styling and manufacturing capabilities with NVH "quiet" technologies that are among the most effective available in the industry. Information about Collins & Aikman is available on the Internet at www.colaik.com.

This news release contains forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995. Actual results may differ

materially from the anticipated results because of certain risks and uncertainties, including but not limited to general economic conditions in the markets in which Collins & Aikman operates, fluctuations in the production of vehicles for which the Company is a supplier, changes in the popularity of particular car models or particular interior trim packages, the loss of programs on particular car models, labor disputes involving the Company or its significant customers, changes in consumer preferences, dependence on significant automotive customers, the level of competition in the automotive supply industry, pricing pressure from automotive customers, the substantial leverage of the Company and its subsidiaries, limitations imposed by the Company's debt facilities, charges made in connection with the integration of operations acquired by the Company, the implementation of the reorganization plan, risks associated with conducting business in foreign countries and other risks detailed from time-to-time in the Company's Securities and Exchange Commission filings including without limitation, in Items 1, 7, 7a and 8 of the Company's Annual Report on Form 10-K for the year-ended December 31, 2000 and part 1 in the Company's Quarterly Report on Form 10-Q for the period ended March 31, 2001.

</TEXT>
</DOCUMENT>

# Exhibit 5

Table of Contents

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
**WASHINGTON, D.C. 20549**

## Form 10-K

(Mark One)

☑ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2002**

**or**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**Commission file number 1-10218**

# Collins & Aikman Corporation
*(Exact name of registrant as specified in its charter)*

| **Delaware** | **13-3489233** |
|---|---|
| *(State or other jurisdiction of incorporation or organization)* | *(I.R.S. Employer Identification Number)* |

**250 Stephenson Highway**
**Troy, Michigan 48083**
*(Address of principal executive offices, including zip code)*

**Registrant's telephone number, including area code:**
**(248) 824-2500**

**Securities registered pursuant to Section 12(b) of the Act:**

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Stock, $.01 par value | New York Stock Exchange |

**Securities registered pursuant to Section 12(g) of the Act:**
**None**

Indicate by check mark whether the Registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the Registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☑ No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein,

**Effects of Certain Transactions with Related Parties**

***Heartland Transactions***

The Company is a party to a services agreement with Heartland under which Heartland provides it with advisory and consulting services, including services with respect to developments in the automotive industry and supply markets, advice on financial and strategic plans and alternatives and other matters as it may reasonably request and are within Heartland's expertise. The services agreement terminates on the earlier of its 10th anniversary or the date upon which Heartland ceases to own Company shares equivalent to 25% of that owned by them on February 23, 2001.

Under the services agreement, the Company is obligated to pay to Heartland a $4.0 million annual advisory fee on a quarterly basis and to reimburse its out-of-pocket expenses related to the services it provides. The Company has also agreed to pay a fee of 1% of the total enterprise value of certain acquisitions and dispositions.

***Charles E. Becker Transactions***

Subsequent to December 31, 2002, the Company entered into a letter of intent with Charles E. Becker, a member of the Company's Board of Directors, to buyout the non-compete agreement effective in early 2003. The non-compete agreement was entered into as part of the Becker acquisition. The Company will make a one-time payment to Mr. Becker of $11.3 million thereby terminating its remaining obligation of approximately $12.6 million and eliminate Mr. Becker's obligation not to compete. As a result of this transaction the

Table of Contents

Company expects to record a loss of approximately $10 million, which is primarily due to the resulting write-off of the intangible assets initially recorded in conjunction with the Becker acquisition.

In July 2001, the Company completed the acquisition of Becker. As a result of the Becker acquisition and a purchase of Company common stock immediately afterwards, Charles Becker became one of the Company's principal stockholders. Charles Becker became Vice Chairman and a member of the Company's Board of Directors upon closing of the Becker acquisition. The Company agreed to make $18.0 million in non-compete payments over five years to Mr. Becker at the time of the acquisition.

10-K 1 k74303e10vk.htm ANNUAL REPORT FOR FISCAL YEAR ENDED 12/31/02

**CERTIFICATE OF SERVICE**

I, J. Clayton Athey, hereby certify that on this 14th day of September, 2007, a copy of the foregoing **AFFIRMATION OF STEPHEN L. ASCHER IN SUPPORT OF DEFENDANT CHARLES E. BECKER'S MOTION TO DISMISS** was served on the following counsel:

BY ELECTRONIC SERVICE & HAND DELIVERY

Joseph A. Rosenthal
Carmella P. Keener
Rosenthal, Monhait & Goddess, P.A.
919 N. Market Street, Suite 1401
Wilmington, DE 19899

BY ELECTRONIC SERVICE & HAND DELIVERY

Anne C. Foster
Robert J. Stearn, Jr.
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

BY ELECTRONIC SERVICE & HAND DELIVERY

Thomas P. Preston
Blank Rome LLP
Chase Manhattan
1201 Market Street, Suite 800
Wilmington, DE 19801

BY ELECTRONIC SERVICE & HAND DELIVERY

Thomas G. Macauley
Zuckerman Spaeder LLP
919 Market Street, Suite 990
Wilmington, DE 19801

BY ELECTRONIC SERVICE & HAND DELIVERY

Vernon R. Proctor
Proctor Heyman LLP
1116 West Street
Wilmington, DE 19899

BY ELECTRONIC SERVICE & HAND DELIVERY

Christian Douglas Wright
Andrew A. Lundgren
Young, Conaway, Stargatt & Taylor
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

BY ELECTRONIC SERVICE & HAND DELIVERY

Michael J. Maimone
Joseph B. Cicero
Edwards Angell Palmer & Dodge LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

BY ELECTRONIC SERVICE & HAND DELIVERY

Peter B. Ladig
Stephen B. Brauerman
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899

BY HAND DELIVERY

Robert S. Saunders
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899

BY FIRST-CLASS MAIL

Christopher Harris
Seth L. Friedman
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022

BY FIRST –CLASS MAIL

Michael Shapiro
Gerald Griffin
Carter Ledyard & Milburn LLP
2 Wall Street
New York, NY 10005

BY FIRST-CLASS MAIL

Richard M. Strassberg
Jeffrey A. Simes
Laurie L. Leven
Goodwin Proctor
599 Lexington Avenue
New York, NY 10022

BY FIRST-CLASS MAIL

Gandolfo V. DiBlasi
Stacey R. Friedman
David E. Swarts
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

BY FIRST-CLASS MAIL

Lynn Brimer
Strobl & Sharp, P.C.
300 East Long Lake Road, Suite 200
Bloomfield Hills, MI 48304-2376

/s/ J. Clayton Athey
J. Clayton Athey (Bar ID #4378)