IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

COLLINS & AIKMAN CORPORATION, et al.,   )
         )
      Plaintiffs,        )     C.A. No. 07-265 ***
         )
   v.         )
         )
DAVID A. STOCKMAN, et al.,      )
         )
      Defendants.      )

## DEFENDANT KPMG LLP'S OPENING BRIEF
## IN SUPPORT OF MOTION TO STAY
## PROCEEDINGS PENDING ARBITRATION

EDWARDS ANGELL PALMER & DODGE LLP
Michael J. Maimone (#3592)
Paul D. Brown (#3903)
919 North Market Street, 15th Floor
Wilmington, DE 19801
(302) 777-7770
mmaimone@eapdlaw.com

OF COUNSEL:

Christopher Harris
Seth L. Friedman
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022
(212) 906-1200

September 14, 2007

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................................... 1

II.  NATURE AND STAGE OF PROCEEDINGS .......................................... 2

III. SUMMARY OF THE ARGUMENT ......................................................... 2

IV.  FACTS ....................................................................................................... 3

V.   THE PARTIES AGREED IN WRITING TO ARBITRATE ALL DISPUTES AND CLAIMS ........................................................................... 5

   A.   APPLICABLE LAW ........................................................................ 5

   B.   THE ARBITRATION PROVISION IS VALID, ENFORCEABLE AND ENCOMPASSES ALL OF PLAINTIFFS' CLAIMS. ........................... 7

      1.   THE 2004 AGREEMENT'S ARBITRATION PROVISION IS VALID AND ENFORCEABLE. ............................................... 7

      2.   PLAINTIFFS' CLAIMS FALL WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT. ............................................ 8

      3.   THE ARBITRATION CLAUSE COVERS KPMG'S WORK PRIOR TO THE 2004 AGREEMENT ...................................... 10

      4.   ANY QUESTION REGARDING THE SCOPE OF THE ARBITRATION CLAUSE MUST BE RESOLVED BY THE ARBITRATOR, NOT BY THE COURT ................................... 12

VI.  CONCLUSION ......................................................................................... 13

VII. STATEMENT PURSUANT TO RULE 7.1.1 ............................................ 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allied-Bruce Terminix Cos. v. Dobson,*
   513 U.S. 265 (1995) ......................................................................................................5

*Battaglia v. McKendry,*
   233 F.3d 720 (3d Cir. 2000) .........................................................................................8

*Belke v. Merrill Lynch, Pierce, Fenner & Smith,*
   693 F.2d 1023 (11th Cir. 1982) ..................................................................................11

*Ben. Nat'l Bank v. Payton,*
   214 F. Supp. 2d 679 (D. Miss. 2001) .........................................................................11

*CD Partners, LLC v. Grizzle,*
   424 F.3d 795 (8th Cir. 2005) ........................................................................................9

*Dean Witter Reynolds, Inc. v. Byrd,*
   470 U.S. 213 (1985) ...........................................................................................2, 6, 11

*Drews Distrib. v. Silicon Gaming, Inc.,*
   245 F.3d 347 (4th Cir. 2001) ......................................................................................11

*First Options v. Kaplan,*
   514 U.S. 938 (1995) ...............................................................................................3, 12

*Gregory v. Electro-Mechanical Corp.,*
   83 F.3d 382 (11th Cir. 1996) ........................................................................................9

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   885 F.2d 1149 (3d Cir. 1989) .......................................................................................7

*In re BCE West, L.P.,*
   2006 U.S. Dist. LEXIS 67761 (D. Ariz. Sept. 20, 2006) .............................................7

*In re Crysen/Montenay Energy Co.,*
   226 F.3d 160 (2d Cir. 2000) .........................................................................................7

*In re Fleming Cos., Inc.,*
   325 B.R. 687 (Bankr. D. Del. 2005) ..........................................................................11

*In re Gandy,*
   299 F.3d 489 (5th Cir. 2002) ........................................................................................7

*In re Mintze,*
    434 F.3d 222 (3d Cir. 2006).................................................................................................7

*James & Jackson LLC v. Willie Gary, LLC,*
    906 A.2d 76 (2006) ..........................................................................................................5

*Kristian v. Comcast Corp.,*
    446 F.3d 25 (1st Cir. 2005) .......................................................................................10, 11

*Liveware Publ'g Co. v. Best Software, Inc.,*
    252 F. Supp. 2d 74 (D. Del. 2003) .............................................................................2, 11

*Medtronic AVE Inc. v. Cordis Corp.,*
    367 F.3d 147 (3d Cir. 2004)........................................................................................2, 8

*Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.,*
    247 F.3d 44 (3d Cir. 2001).............................................................................................12

*Mehler v. Terminix Int'l Co.,*
    205 F.3d 44 (2d Cir. 2000).............................................................................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) .........................................................................................................5, 6

*PaineWebber, Inc. v. Hartmann,*
    921 F.2d 507 (3d Cir. 1990).............................................................................................6

*S.E.C. v. Collins & Aikman Corp.,*
    No. 07 Civ. 2419, ¶ 54 (Mar. 26, 2007) .........................................................................3

*Sharon Steel Corp. v. Jewell Coal & Coke Co.,*
    735 F.2d 775 (3d Cir. 1984).............................................................................................8

*Trippe Mfg. Co. v. Niles Audio Corp.,*
    401 F.3d 529 (3d Cir. 2005).............................................................................................6

*United States v. Stockman,*
    No. 07 Cr. 0220, ¶ 62 (Mar. 21, 2007)...........................................................................3

*Wellington Int'l Commerce Corp. v. Retelny,*
    727 F. Supp. 843 (S.D.N.Y. 1989).................................................................................10

*Whisler v. H.J. Meyers & Co.,*
    948 F. Supp. 798 (E.D. Ill. 1996).............................................................................10, 11

*Whiting-Turner Contracting Co. v. Elec. Mach. Enters.,*
    479 F.3d 791 (11th Cir. 2007).........................................................................................7

**STATUTES**

11 U.S.C. § 1107 (2006) ....................................................................................................................4

9 U.S.C. § 2 (2006) .......................................................................................................................2, 5

9 U.S.C. § 3 (2006) .......................................................................................................................2, 5

9 U.S.C. § 4 (2006) ..........................................................................................................................6

**RULES**

Rule 12(b)(6) ...............................................................................................................................2, 13

## I.    INTRODUCTION

Plaintiffs' claims against KPMG LLP ("KPMG") are fatally defective and should be dismissed, as described in KPMG's separately-filed Motion to Dismiss. If KPMG's Motion to Dismiss is granted, the Court need not address this Motion to Stay. However, in the alternative, if any claim survives KPMG's Motion to Dismiss, the case against KPMG should be stayed pending arbitration.

Collins & Aikman Corporation ("C&A") engaged KPMG to perform financial statement auditing and review services in 2003 and 2004. C&A and KPMG executed two engagement letter agreements – one prior to the year-end 2003 audit (the "2003 Agreement") and one prior to the year-end 2004 audit (the "2004 Agreement"). The 2004 Agreement contained a dispute resolution provision that directed "any dispute or claim arising out of or relating to the engagement letter … *or any other services provided by or on behalf of KPMG*" to be resolved by mediation and, if necessary, arbitration. 2004 Agreement at 8 (emphasis added). All of Plaintiffs' claims alleged against KPMG arise out of the services KPMG provided to C&A. In accordance with this unambiguous contractual provision, C&A is required to mediate and, if unsuccessful, arbitrate any such claims. Plaintiffs, as debtors-in-possession, stand in the shoes of C&A and are equally bound by the arbitration agreement. Therefore, under the contract, the Federal Arbitration Act (the "FAA") and Third Circuit law, if any claim survives KPMG's Motion to Dismiss, the case against KPMG should be stayed pending arbitration.

## II.    NATURE AND STAGE OF PROCEEDINGS

On May 17, 2007, Plaintiffs filed this action against former C&A officers, directors, Heartland Industrial Partners, L.P. and related entities, and C&A's outside auditors, PricewaterhouseCoopers and KPMG. KPMG now moves to stay this action against it pursuant to the Federal Arbitration Act. 9 U.S.C. § 3 (2006). This is KPMG's opening brief in support of its Motion to Stay. Contemporaneously with this Motion to Stay, KPMG has also filed a Motion to Dismiss under Rule 12(b)(6).

## III.   SUMMARY OF THE ARGUMENT

1.    In 2004, C&A and KPMG entered into an agreement which included a clause requiring any dispute arising out of or related to any services provided by KPMG to C&A to be submitted to arbitration and mediation.

2.    The FAA requires the enforcement of valid contractual agreements to arbitrate. *See* 9 U.S.C. § 2. Where claims fall within the scope of a valid, enforceable agreement to arbitrate, a court must stay litigation in favor of arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

3.    All of Plaintiffs claims – both those sounding in contract and those in tort – fall under the broad language of the parties' arbitration agreement. *See Medtronic AVE Inc. v. Cordis Corp.*, 367 F.3d 147 (3d Cir. 2004).

4.    The 2004 Agreement applies retroactively to encompass work performed under the parties' prior agreements. *See, e.g., Liveware Publ'g Co. v. Best Software, Inc.*, 252 F. Supp. 2d 74, 80 (D. Del. 2003).

2

      **5.**     Per the parties' agreement, any ambiguity about the scope of the

arbitration clause must be resolved by the arbitrators. *See First Options v.*

*Kaplan*, 514 U.S. 938, 943 (1995).

## IV.    FACTS

Plaintiffs in this case represent the estate in bankruptcy of C&A and certain affiliated

entities. Compl. ¶¶ 5-8(D.I. 1). C&A is a Delaware corporation with its headquarters in

Michigan, and, along with its subsidiaries, is engaged in the design, supply, and manufacture of

automotive interior components. *See id.* Plaintiffs have commenced the present action against

David Stockman, C&A's former Chairman, Chief Executive Officer, and board member;

numerous other individual directors and officers of C&A; Heartland Industrial Associates,

L.L.C. and other Heartland entities, the majority shareholders of C&A; and C&A's former

auditors KPMG and PricewaterhouseCoopers. *Id.* KPMG was C&A's auditor for fiscal year

2003 and 2004, although it never provided an opinion on the 2004 financial statements because

of the exposure of C&A's alleged fraud. Compl. ¶ 35. In fact, as noted by the United States

Government in its criminal and civil actions against C&A management, it was KPMG that first

uncovered and brought to the attention of C&A's audit committee the accounting errors that

brought down the company. *See* Indictment, *United States v. Stockman*, No. 07 Cr. 0220,

(Affidavit of Paul D. Brown In Support of Motions ("Brown Aff."), Ex. 3), ¶ 62 (Mar. 21, 2007);

Complaint, *S.E.C. v. Collins & Aikman Corp.*, No. 07 Civ. 2419, (Brown Aff., Ex. 4), ¶ 54 (Mar.

26, 2007).

C&A and KPMG executed their first agreement on June 24, 2003. *See* Brown Aff., Ex.

1. The 2003 Agreement, approved by Dean Robert C. Clark, the Chair of C&A's audit

committee, and J. Michael Stepp, its Chief Financial Officer, called for KPMG to audit C&A's

year-end 2003 financial statements, and to review its 2003 unaudited quarterly financial

statements.   The parties executed their second agreement on July 15, 2004.  *See* Brown Aff., Ex.

2.  In that agreement, which also was executed by Clark and Stepp, KPMG agreed to audit

C&A's year-end 2004 consolidated financial statements, review its 2004 quarterly financial

statements, and perform certain other tasks.

The 2004 Agreement contained a dispute resolution provision that directed "any dispute

or claim arising out of or relating to the engagement letter … or any other services provided by

or on behalf of KPMG" to mediation and then, if necessary, arbitration.  *See* 2004 Agreement at

8.  In particular, it states:

> Any dispute or claim arising out of or relating to the engagement letter
> between the parties, the services provided thereunder, or any other
> services provided by or on behalf of KPMG or any of its subcontractors or
> agents to Collins & Aikman or at its request (including any dispute or
> claim involving any person or entity for whose benefit the services in
> question are or were provided) shall be resolved in accordance with the
> dispute resolution procedures set forth in appendix II.

*Id.*  Appendix II, in turn, sets out the arbitration process – requiring mediation under CPR

Mediation Procedures, followed by arbitration under CPR Arbitration rules (or under other rules

if the parties so designate) if mediation is unsuccessful or inappropriate to the dispute at issue.[1]

*Id.* at 15.  This process constitutes the "*sole* methodologies to be used to resolve any controversy

or claim."  *Id* (emphasis added).  The parties agreed to conduct any arbitration in New York,

New York.  *Id.* at *8.*

---

[1]     KPMG has sent a letter to C&A requesting mediation and, if necessary, arbitration.  *See*
Letter to Joseph A. Rosenthal, Esq., Brown Aff., Ex. 7.

On May 17, 2005, C&A filed for bankruptcy in the Eastern District of Michigan. Compl.

¶ 74. The instant complaint, brought by the companies as debtors in possession under the

Bankruptcy Code, followed.[2]

## V.    THE PARTIES AGREED IN WRITING TO ARBITRATE ALL DISPUTES AND CLAIMS

### A.    APPLICABLE LAW

Under the FAA, an arbitration clause within any contract "evidencing a transaction

involving commerce" is "valid, irrevocable, and enforceable." 9 U.S.C. § 2 (2006). The FAA

also provides that any claim that is contractually required to be arbitrated must be stayed until the

arbitration is completed. *See* 9 U.S.C. § 3 (2006). The FAA makes explicit the Federal policy

favoring the enforcement of agreements to arbitrate.[3] *See* 9 U.S.C. § 2; *see also Moses H. Cone*

*Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("questions of arbitrability must

be addressed with a healthy regard for the federal policy favoring arbitration").

The 2004 Agreement is enforceable under the FAA as a "transaction involving

commerce." The phrase "involving commerce" extends the reach of the FAA to the full extent

of Congress' power under the Commerce Clause, and reaches any contract that "affects"

commerce. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995). The 2004

Agreement plainly fits within that definition – C&A is a Michigan-based entity with subsidiaries

and operations in numerous states; KPMG is a New York-based partnership which contemplated

---

[2]    With certain exceptions not relevant here, the debtor in possession in a Chapter 11 proceeding, "shall have all the rights, other than the right to compensation ... and powers, and shall perform all the functions and duties... of a trustee." 11 U.S.C. § 1107 (2006).

[3]    A motion under the FAA is governed by federal law. *See James & Jackson LLC v. Willie Gary, LLC*, 906 A.2d 76, 80 (2006). In contrast, Plaintiffs' substantive claims against KPMG arise under Michigan state law, as Michigan was the locus of the parties' relationship, the principal place of business of C&A, and the site of the injury. *See* Memorandum of Law in Support of Defendant KPMG's Motion to Dismiss, *Collins & Aikman Co. v. Stockman*, § III B.

performance of the contract through its Michigan subsidiary. The services required by the contract required the collection and analysis of financial data from C&A's operations nationwide and resulted in the production of audited financial statements for filing with the Securities and Exchange Commission and for use in the client's ongoing financial operations. Indeed, the parties agreed in writing that the arbitration agreement would be governed by the FAA. *See* 2004 Agreement at 15. Therefore, the jurisdictional requirements of the FAA are satisfied.

Where one party seeks to enforce the arbitration clause of a contract, the court's inquiry is limited to a two-part analysis: "that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990). On the second prong, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *see also Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

Where claims fall within the scope of a valid, enforceable agreement to arbitrate, a court must stay litigation in favor of arbitration.[4] *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed" (emphasis in original)).

---

[4]    Under 9 U.S.C. § 4, a court may also grant an order compelling a party to submit to arbitration any dispute covered by a prior written arbitration agreement. KPMG does not seek such an order here: orders to compel arbitration are properly sought in the district in which arbitration is to be held. *See id.* As the parties in this case have agreed to arbitrate solely in New York, New York, the Southern District of New York is the appropriate venue for such a petition.

## B.  THE ARBITRATION PROVISION IS VALID, ENFORCEABLE AND ENCOMPASSES ALL OF PLAINTIFFS' CLAIMS.

### 1.  THE 2004 AGREEMENT'S ARBITRATION PROVISION IS VALID AND ENFORCEABLE.

The 2004 Agreement, including the arbitration agreement therein, is on its face valid and enforceable.  Indeed, Plaintiffs have embraced this contract, having premised a breach of contract claim on KPMG's failure to comply with this very agreement.  Compl. ¶¶ 204-209. Both parties are sophisticated commercial entities who negotiated and executed the Agreement with full knowledge of its contents.  The 2004 Agreement was executed on behalf of C&A by C&A's Chief Financial Officer, Mr. Stepp, and the Chair of C&A's audit committee, Mr. Clark.

A bankruptcy trustee (or, in this case, a debtor in possession) is bound by the debtor's arbitration agreements.  *See Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1153-54 (3d Cir. 1989) ("the trustee-plaintiff stands in the shoes of the debtor for the purposes of the arbitration clause and … is bound by the clause to the same extent as would the debtor"); *see also In re Mintze*, 434 F.3d 222, 231 (3d Cir. 2006) (holding that no "sufficiently adverse effect on the underlying purposes of the Bankruptcy Code" is created by enforcement of a pre-bankruptcy arbitration provision).  Other courts are in accord with this rule.  *See Whiting-Turner Contracting Co. v. Elec. Mach. Enters.*, 479 F.3d 791, 798 (11th Cir. 2007) ("A determination of whether Whiting-Turner owes EME money under their contractual agreement does not involve a right created by federal bankruptcy law, and it is not a proceeding that would arise only in bankruptcy…. Therefore … it is non-core and subject to arbitration."); *In re Gandy*, 299 F.3d 489, 495 (5th Cir. 2002) ("it is generally accepted that a bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving 'core' bankruptcy proceedings"); *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 166 (2d Cir. 2000); *In re BCE*

7

*West, L.P.*, 2006 U.S. Dist. LEXIS 67761, at *27 (D. Ariz. Sept. 20, 2006) ("the Court concludes

that the bankruptcy court erred when it compelled arbitration on terms materially different than

the terms contained in the D&O policy's arbitration clause").[5]  Plaintiffs are therefore bound by

the 2004 Agreement's arbitration provision.

### 2.    PLAINTIFFS' CLAIMS FALL WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT.

The 2004 Agreement states:

> Any dispute or claim arising out of or relating to the engagement letter
> between the parties, the services provided thereunder, or any other
> services provided by or on behalf of KPMG or any of its subcontractors or
> agents to Collins & Aikman or at its request (including any dispute or
> claim involving any person or entity for whose benefit the services in
> question are or were provided) shall be resolved in accordance with the
> dispute resolution procedures set forth in appendix II.

2004 Agreement at 8.  This broad language is explicit and unambiguous – it requires the parties

to submit to arbitration "any dispute or claim arising out of or relating to ... any other services

provided by or on behalf of KPMG ... to Collins & Aikman." *Id.*  The Third Circuit routinely

gives broad construction to arbitration agreements containing such "arising out of" language, and

particularly the even broader "relating to" language:

> As we explained in *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir.
> 2000), "when phrases such as 'arising under' and 'arising out of' appear in
> arbitration provisions, they are normally given broad construction."
> Coupled with our usual strong presumption in favor of arbitrability, *see,
> e.g., Sharon Steel Corp. v. Jewell Coal & Coke Co.*, 735 F.2d 775, 778 (3d
> Cir. 1984), a clause providing for the arbitration of all matters "arising
> from" an agreement overwhelmingly suggests that a given dispute is
> arbitrable.

---

[5]    A true and correct copy of this unreported decision is attached hereto as Exhibit "A."

*Medtronic AVE Inc. v. Cordis Corp.*, 367 F.3d 147 (3d Cir. 2004). Moreover, the 2004 Agreement contains the even broader "any other services" clause to catch any services provided by KPMG to C&A.

Plaintiffs' claims "aris[e] out of or relat[e] to" the 2004 Agreement or "any other services provided by or on behalf of KPMG ... to Collins & Aikman." Their contract claims are based on the 2004 Agreement (which "arise[s] out of" the 2004 Agreement), and the 2003 Agreement (which involves "*any other services provided by or on behalf of KPMG*" – as discussed more fully in Section B(3) *infra*).

Plaintiffs' other claims – fraud, negligence, and aiding and abetting the individual defendants' breaches of fiduciary duty – likewise all arise out of KPMG's services provided under the 2004 Agreement or "*any other services provided by or on behalf of KPMG*". The crux of Plaintiffs' fraud claim is that "KPMG made misrepresentations of material facts to Collins & Aikman *through its audits and reviews* of Collins & Aikman's financial statements." Compl. ¶ 183 (emphasis added). Likewise, Plaintiffs' negligence claim is based on an alleged breach of a duty of care in performing the services provided under the 2003 and 2004 Agreements. *See* Compl. ¶ 196 ("Having been engaged by Collins & Aikman to perform auditing services, KPMG had a duty to exercise reasonable care and skill to comply with the applicable standard of care in performing its obligations to Collins & Aikman."). Finally, Plaintiffs' "aiding and abetting" claim alleges that KPMG aided the individual directors' breaches by "failing to comply with the standard of care... and failing to bring material misstatements and fraudulent conduct to the attention of the Board of Directors and the Audit Committee" (Compl. ¶ 213) – alleged conduct that arises out of services provided under the 2004 Agreement or "any other services provided by or on behalf of KPMG."

9

Case law holds such claims to be subject to mandatory arbitration when they arise out of or relate to a contract governed by an arbitration clause. *See CD Partners, LLC v. Grizzle*, 424 F.3d 795, 800 (8th Cir. 2005) (negligence claims subject to arbitration); *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382 (11th Cir. 1996) (holding claims of fraud, deceit, misrepresentation, breach of good faith, and others to arise under contract and subject to arbitration); *Wellington Int'l Commerce Corp. v. Retelny*, 727 F. Supp. 843, 847 (S.D.N.Y. 1989) (same for claims of aiding and abetting a breach of fiduciary duty). Therefore, each of Plaintiff's claims is subject to arbitration.

### 3.    THE ARBITRATION CLAUSE COVERS KPMG'S WORK PRIOR TO THE 2004 AGREEMENT.

In addition to covering the broadest possible range of claims substantively, the arbitration agreement is also broad in time, encompassing claims arising out of prior work. Had C&A and KPMG wished to limit their agreement to arbitrate only the 2004 Agreement, or only to contemporaneous agreements, they were more than capable of doing so. *See Kristian v. Comcast Corp.*, 446 F.3d 25, 32 (1st Cir. 2005). However, the expansive language adopted in 2004 covers not only "the engagement letter between the parties [and] the services provided thereunder" but also "*any other services* provided by or on behalf of KPMG" – which covers work performed under the 2003 Agreement as well. 2004 Agreement at 8 (emphasis added). This reading fits with the common sense understanding of the language: that the cost of lengthy litigation could be avoided by submitting any future dispute between the parties, regardless of its source, to arbitration.

In addition, even if the 2004 Agreement did not contain the "any other services" language, any claim regarding the 2003 work certainly "relate[s] to" the 2004 work. Courts in this and other circuits interpret similar language to cover disputes arising out of prior work.

Where an arbitration clause "speaks in terms of relationships and not timing," the clause should be read to govern all claims between the parties, not just those arising after execution of the arbitration agreement. *Whisler v. H.J. Meyers & Co.*, 948 F. Supp. 798, 802 (E.D. Ill. 1996) (internal quotation omitted). This Court has agreed with this position, stating that claims arising under a preceding agreement "can credibly be said to be at least 'related to' rights under the License and therefore within the... arbitration clause." *Liveware Publ'g Co. v. Best Software, Inc.*, 252 F. Supp. 2d 74, 80 (D. Del. 2003). Other courts have also held broadly-worded agreements to have retroactive effect. *See Kristian*, 446 F.3d at 32-36 (concluding that the phrase "any claim or dispute related to or arising out of this agreement or the services provided" in an arbitration clause implies retroactive effect); *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 48-49 (2d Cir. 2000) (arbitration clause covering "any controversy or claim between them arising out of or relating to this agreement" in written agreement held to govern claims arising prior to the agreement's "effective starting date"); *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1028 (11th Cir. 1982) (holding arbitration agreement covering "any controversy between us arising out of your business" to have retroactive effect), *overruled on other grounds by Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985); *Ben. Nat'l Bank v. Payton*, 214 F. Supp. 2d 679, 688-89 (D. Miss. 2001) (holding arbitration clause to cover "allegedly wrongful acts that were committed prior to the purported effective date of the arbitration agreement" even absent "retroactive time-specific language"); *Whisler*, 948 F. Supp. at 802.

Likewise, where the issue before the court is whether such a clause reaches conduct under a related agreement between the parties, broad language such as that in KPMG's engagement letter has been held to extend to such related agreements. *See Drews Distrib. v.*

11

*Silicon Gaming, Inc.*, 245 F.3d 347, 350 (4th Cir. 2001) ("the reach of an arbitration clause is not

restricted to those causes of action brought under the contract containing the clause, unless the

parties draft a clause so restricted in scope"); *In re Fleming Cos., Inc.*, 325 B.R. 687, 691 (Bankr.

D. Del. 2005) (noting that phrase, "all disputes....including any matter relating to this

Agreement" requires arbitration of disputes arising under related agreements). The work

performed under the 2003 Agreement certainly relates to the 2004 Agreement.

     In light of the plain language of the arbitration clause, the FAA requires a stay of all of

Plaintiffs' claims.

### 4.    ANY QUESTION REGARDING THE SCOPE OF THE ARBITRATION CLAUSE MUST BE RESOLVED BY THE ARBITRATOR, NOT BY THE COURT.

     Further, if there is any ambiguity in the reach of the 2004 Agreement's arbitration

provision – which there is not – that ambiguity must, by the terms of the parties' contract, be

resolved by the arbitrator. The 2004 Agreement reads:

> Any issue concerning *the extent to which any dispute is subject to arbitration*, or any dispute concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, *shall be governed by the Federal Arbitration Act and resolved by the arbitrators*.

2004 Agreement at 15 (emphasis added). The court's role "is very limited when the parties have

agreed to submit all questions of contract interpretation to the arbitrator. It is confined to

ascertaining whether the party seeking arbitration is making a claim which on its face is

governed by the contract." *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d

44, 55 (3d Cir. 2001) (internal citations omitted); *see also First Options v. Kaplan*, 514 U.S. 938,

943 (1995) ("Did the parties agree to submit the arbitrability question itself to arbitration? If so,

then the court's standard for reviewing the arbitrator's decision about that matter should not differ

from the standard courts apply when they review any other matter that parties have agreed to

arbitrate…. That is to say, the court should give considerable leeway to the arbitrator…." (internal citations omitted)).

The language of the 2004 Agreement requires that the parties submit all claims arising out of the parties' dealings to mediation and, if necessary, arbitration. Further, to the extent there is any question about the scope of the arbitration clause itself – which there is not – the parties agreed to submit that question to arbitration as well. For these reasons, all claims presently raised by Plaintiffs are not properly before this Court and must be raised in the appropriate forum: before an arbitrator.

## VI.    CONCLUSION

In sum, the 2004 Agreement, including its mediation and arbitration provision, is valid and binding on the parties. The scope of this arbitration clause covers the claims against KPMG alleged in the Complaint. And in any event, the parties contractually agreed that any question on the scope of matters subject to arbitration was expressly reserved for the arbitrator.

While KPMG contends that all Plaintiffs' claims should be dismissed pursuant to its motion under Rule 12(b)(6), any claim that survives must be resolved through mediation and arbitration. Therefore, KPMG respectfully submits that under the FAA, this Court must stay these proceedings against it in full in favor of mediation and, if necessary, arbitration.

## VII.    STATEMENT PURSUANT TO RULE 7.1.1

KPMG has made a reasonable effort to reach agreement with Plaintiffs regarding the matters set forth in the motion.

13

EDWARDS ANGELL PALMER & DODGE LLP

*/s/ Michael J. Maimone*

Michael J. Maimone (#3592)
Paul D. Brown (#3903)
919 North Market Street, 15th Floor
Wilmington, DE 19801
(302) 777-7770
mmaimone@eapdlaw.com

OF COUNSEL:

Christopher Harris
Seth L. Friedman
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022
(212) 906-1200

September 14, 2007

## CERTIFICATE OF SERVICE

I, Michael J. Maimone, Esquire, hereby certify that on September 14, 2007, I

caused to be electronically filed a true and correct copy of the foregoing document with the Clerk

of the Court using CM/ECF, which will send notification that such filing is available for

reviewing and downloading to the following counsel of record:

Joseph A. Rosenthal, Esquire.
Carmella P. Keener
Rosenthal, Monhait & Goddess, P.A.
919 N. Market Street
P.O. Box 1070
Wilmington, DE 19899

I further certify that on September 14, 2007, I caused a copy of the foregoing

document to be served on the following non-registered participants in the manner indicated:

### BY EMAIL

Samuel H. Rudman
srudman@csgrr.com
David A. Rosenfeld
drosenfeld@csgrr.com
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY 11747

/s/ Michael J. Maimone
Michael J. Maimone (#3592)
Paul D. Brown (#3903)
Edwards Angell Palmer & Dodge LLP
Wilmington, DE 19801
(302) 777-7770
mmaimone@eapdlaw.com

# EXHIBIT A

121 Fed.Appx. 779, 2005 WL 361685 (C.A.9 (Ariz.))

<u>Briefs and Other Related Documents</u>

This case was not selected for publication in the Federal Reporter.

Please use FIND to look at the applicable circuit court rule before citing this opinion. (FIND CTA9 Rule 36-3.)

United States Court of Appeals,
Ninth Circuit.
In re: **BCE WEST**, L.P., et al, dba Boston Chicken dba Boston, Market, Debtor,
Houlihan, Lokey, Howard & Zukin, INC., Appellant,
v.
B.C.E. West Limited Partnership, dba Boston Chicken dba Boston Market; et al., Appellees.
No. 03-16986.
D.C. No. CV-02-02431-PGR.
Submitted Feb. 8, 2005.<u>FN*</u>

<u>FN*</u> This panel unanimously finds this case suitable for decision without oral argument. See <u>Fed. R.App. P. 34(a)(2)</u>.

Decided Feb. 16, 2005.

<u>Shelton L. Freeman</u>, Esq., Deconcini, McDonald, Yetwin & Lacy, P.C., Phoenix, AZ, for Appellant.

<u>Richard A. Chesley</u>, Jones, Day, Reavis & Pogue, <u>Lori Ann Schmig</u>, Snell & Wilmer, LLP, <u>Richard Lorenzen</u>, Perkins, Coie, Brown & Bain, PA, Phoenix, AZ, for Appellee.

Appeal from the United States District Court for the District of Arizona, <u>Paul G. Rosenblatt</u>, District Judge, Presiding.

Before <u>WALLACE</u>, <u>RAWLINSON</u>, and <u>BYBEE</u>, Circuit Judges.

MEMORANDUM <u>FN**</u>

<u>FN**</u> This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by <u>Ninth Circuit Rule 36-3</u>.

**\*1** The bankruptcy court did not abuse its discretion or misapply the law when it reduced the total fee award payable to Appellant Houlihan Lokey Howard & Zukin, Inc. See *Leichty v. Neary ( <u>In re Strand), 375 F.3d 854, 857 (9th Cir.2004)</u>* ("We will not disturb a bankruptcy court's award of [professional] fees unless the bankruptcy court abused its discretion or erroneously applied the law.") (citations omitted). The court properly considered "the nature, the extent, and the value" of Appellant's services, taking into account the factors it deemed relevant. *See* <u>11 U.S.C. § 330(a)(3) (A)</u>; *see also <u>Houlihan Lokey Howard & Zukin Capital v. Unsecured Creditors' Liquidating Trust (In re Commercial Fin. Servs., Inc), 298 B.R. 733, 748 (B.A.P. 10th Cir.2003)</u>* ("[T]he factors to be taken into account in determining reasonableness are within the discretion of the bankruptcy court....").

AFFIRMED.

C.A.9 (Ariz.),2005.
In re BCE West, L.P.

121 Fed.Appx. 779, 2005 WL 361685 (C.A.9 (Ariz.))


Briefs and Other Related Documents (Back to top)

• 2004 WL 870314 (Appellate Brief) Appellees' Answering Brief (Mar. 19, 2004) ⬚ Original Image of this Document (PDF)
• 03-16986 (Docket) (Oct. 23, 2003)
• 2003 WL 23518424 (Appellate Brief) Appellant's Reply Brief (Jan. 01, 2003) ⬚ Original Image of this Document (PDF)
• 2000 WL 34251170 (Appellate Brief) Appellant's Opening Brief (Jan. 01, 2000) ⬚ Original Image of this Document (PDF)
END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

121 Fed.Appx. 779

Page 1

121 Fed.Appx. 779, 2005 WL 361685 (C.A.9 (Ariz.))
**(Cite as: 121 Fed.Appx. 779)**

**H**
In re BCE West, L.P.
C.A.9 (Ariz.),2005.
This case was not selected for publication in the
Federal Reporter.Please use FIND to look at the
applicable circuit court rule before citing this
opinion. (FIND CTA9 Rule 36-3.)
United States Court of Appeals,Ninth Circuit.
In re: **BCEWEST**, L.P., et al, dba Boston Chicken
dba Boston, Market, Debtor,
Houlihan, Lokey, Howard & Zukin, INC.,
Appellant,
v.
B.C.E. West Limited Partnership, dba Boston
Chicken dba Boston Market; et al., Appellees.
**No. 03-16986.**
**D.C. No. CV-02-02431-PGR.**

Submitted Feb. 8, 2005.FN*

FN* This panel unanimously finds this
case suitable for decision without oral
argument. See Fed. R.App. P. 34(a)(2).
Decided Feb. 16, 2005.

Shelton L. Freeman, Esq., Deconcini, McDonald,
Yetwin & Lacy, P.C., Phoenix, AZ, for Appellant.
Richard A. Chesley, Jones, Day, Reavis & Pogue,
Lori Ann Schmig, Snell & Wilmer, LLP, Richard
Lorenzen, Perkins, Coie, Brown & Bain, PA,
Phoenix, AZ, for Appellee.

Appeal from the United States District Court for the
District of Arizona, Paul G. Rosenblatt, District
Judge, Presiding.

Before WALLACE, RAWLINSON, and BYBEE,
Circuit Judges.

MEMORANDUM

FN** This disposition is not appropriate
for publication and may not be cited to or
by the courts of this circuit except as
provided by Ninth Circuit Rule 36-3.

**\*1** The bankruptcy court did not abuse its
discretion or misapply the law when it reduced the
total fee award payable to Appellant Houlihan
Lokey Howard & Zukin, Inc. *See Leichty v. Neary (
In re Strand),* 375 F.3d 854, 857 (9th Cir.2004) ("
We will not disturb a bankruptcy court's award of
[professional] fees unless the bankruptcy court
abused its discretion or erroneously applied the law.
") (citations omitted). The court properly
considered "the nature, the extent, and the value" of
Appellant's services, taking into account the factors
it deemed relevant. *See* 11 U.S.C. § 330(a)(3)(A);
*see also Houlihan Lokey Howard & Zukin Capital
v. Unsecured Creditors' Liquidating Trust (In re
Commercial Fin. Servs., Inc),* 298 B.R. 733, 748
(B.A.P. 10th Cir.2003) ("[T]he factors to be taken
into account in determining reasonableness are
within the discretion of the bankruptcy court....").

AFFIRMED.

C.A.9 (Ariz.),2005.
In re BCE West, L.P.
121 Fed.Appx. 779, 2005 WL 361685 (C.A.9
(Ariz.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.