## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

COLLINS & AIKMAN CORPORATION and COLLINS :
& AIKMAN PRODUCTS CO., as Debtors in Possession,

                Plaintiffs,                      :

        v.                               :

DAVID A. STOCKMAN, J. MICHAEL STEPP,      :
BRYCE M. KOTH, DAVID R. COSGROVE, PAUL C.
BARNABA, ROBERT KRAUSE, JOHN A. GALANTE,  :    Civil Action No. 07-265-SLR
CHARLES E. BECKER, ELKIN B. MCCALLUM,
THOMAS E. EVANS, CYNTHIA HESS, DANIEL P.  :
TREDWELL, W. GERALD MCCONNELL, SAMUEL
VALENTI, III, HEARTLAND INDUSTRIAL        :
PARTNERS, L.P., HEARTLAND INDUSTRIAL
ASSOCIATES, L.L.C., PRICEWATERHOUSE-     :
COOPERS LLP and KPMG LLP,

                Defendants.

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OF DEFENDANT ELKIN B. MCCALLUM

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Kenneth J. Nachbar (No. 2067)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
302.658.9200
knachbar@mnat.com
*Attorneys for Defendant Elkin B. McCallum*

*Of Counsel:*
Richard M. Strassberg
Jeffrey A. Simes
Laurie L. Levin
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, NY 10022
212.813.8800
jsimes@goodwinprocter.com

Dated:  April 28, 2008

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 3

ARGUMENT ........................................................................................................... 7

I.    PLAINTIFFS' FRAUD AND SECURITIES FRAUD CLAIMS ARE NEITHER VIABLE
      NOR PROPERLY PLED. ................................................................................. 7

      A.    The Strict Pleading Requirements For Fraud. .............................. 7

      B.    Plaintiffs Fail To Offer Factual Allegations Giving Rise To A "Strong
            Inference" Of Scienter. ............................................................... 8

      C.    The McCallum Transactions Are Immaterial As A Matter Of Law. ........ 13

      D.    Plaintiffs Fail To Demonstrate Reliance. .................................... 15

      E.    The Claims Against Mr. McCallum Must Be Dismissed For Lack Of
            Loss Causation. ........................................................................ 17

      F.    Plaintiffs Have Not Pled With Particularity Facts That Show That The
            Challenged Transactions Were Fraudulent. ................................ 19

      G.    Plaintiffs' Claims Against Mr. McCallum Are Barred By The Statute
            Of Limitations. ......................................................................... 21

II.   PLAINTIFFS' SECTION 14(A) AND RULE 14a-9 CLAIMS FAIL FOR THE SAME
      REASONS AS THEIR FRAUD AND SECTION 10(B) CLAIMS. ........................... 21

      A.    Plaintiffs' Obligation Under Section 14(a) And Rule 14a-9. .................. 21

      B.    Plaintiffs Have Failed To Plead Their Section 14(a) Claims With The
            Requisite Particularity. .............................................................. 22

      C.    The Proxy Statements' Alleged Misrepresentations And/Or Omissions
            Are Immaterial As A Matter of Law. ........................................... 24

III.  PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS BECAUSE IT IS UNTIMELY
      AND THERE WAS NO ENRICHMENT. ............................................................ 25

IV.   PLAINTIFFS' FIDUCIARY DUTY ALLEGATIONS MUST BE DISMISSED
      BECAUSE THEY FAIL TO STATE A TIMELY CLAIM. ....................................... 26

CONCLUSION ...................................................................................................... 28

## TABLE OF AUTHORITIES

### CASES

*Abbott Labs. v. Teva Pharms. USA, Inc.*,
  432 F. Supp. 2d 408 (D. Del. 2006)..................................................................................7

*Acito v. IMCERA Group, Inc.*,
  47 F.3d 47 (2d Cir. 1995) .............................................................................................12

*Albert v. Alex Brown Mgmt. Servs., Inc.*
  No. Civ.A. 762-N, 2005 WL 1594085 (Del. Ch. June 29, 2005) ...........................26

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984) ............................................................................................27

*Baker v. MBNA Corp.*,
  C. A. No. 05-272, 2007 WL 2009673 (D. Del. July 6, 2007)....................................8

*Basic v. Levinson*,
  485 U.S. 224 (1988)......................................................................................................24

*Brehm v. Eisner*,
  746 A.2d 244 (Del. 2000) ............................................................................................27

*CalPERS v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004) .................................................................................22-23

*Castellano v. Young & Rubicam, Inc.*,
  257 F.3d 171 (2d Cir. 2001) ........................................................................................18

*Dasho v. Susquehanna Corp.*,
  461 F.2d 11 (7th Cir. 1972) .................................................................................22-23

*Desimone v. Barrows*,
  924 A.2d 908 (Del. Ch. 2007).....................................................................................27

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)......................................................................................................18

*Gen. Elec. Co. v. Cathcart*,
  980 F.2d 927 (3d Cir. 1992) ........................................................................................22

*Glassman v. Computervision Corp.*,
  90 F.3d 617 (1st Cir. 1996)..........................................................................................14

*Grobow v. Perot*,
  539 A.2d 180 (Del. 1988) ............................................................................................27

*Guttman v. Huang,*
   823 A.2d 492 (Del. Ch. 2003)...................................................................................11

*In re Advanta Corp. Sec. Litig.,*
   180 F.3d 525 (3[d] Cir. 1999) ............................................................................ *passim*

*In re Allied Capital Corp. Sec. Litig.,*
   No. 02 Civ. 3812, 2003 WL 1964184 (S.D.N.Y. Apr. 25, 2003)...........................15

*In re Burlington Coat Factory Sec. Litig.,*
   114 F.3d 1410 (3[d] Cir. 1997) ..........................................................................6-8

*In re Carter-Wallace, Inc. Sec. Litig.,*
   150 F.3d 153 (2[d] Cir. 1998) ...............................................................................13

*In re DaimlerChrysler AG Sec. Litig.,*
   294 F. Supp. 2d 616 (D. Del. 2003) .....................................................................17

*In re Duke Energy Corp. Sec. Litig.,*
   282 F. Supp. 2d 158 (S.D.N.Y. 2003), *aff'd*, 113 Fed. App'x 427 (2[d] Cir. 2004)...................14

*In re Exxon Mobil Sec. Litig.,*
   500 F.3d 189  (3[d] Cir. 2007) ..............................................................................23

*In re General Motors Class E Stock Buyout Sec. Litig.,*
   694 F. Supp. 1119 (D. Del. 1988)........................................................................27

*In re Health Mgmt. Sys., Inc. Sec. Litig.,*
   No. 97 Civ. 1865, 1998 WL 283286 (S.D.N.Y. June 1, 1998)..............................11

*In re Intel Corp. Microprocessor Antitrust Litig.,*
   496 F. Supp. 2d 404 (D. Del. 2007)......................................................................25

*In re JP Morgan Chase Sec. Litig.,*
   363 F. Supp. 2d 595 (S.D.N.Y. 2005)...................................................................14

*In re N. Telecom Ltd. Sec. Litig.,*
   116 F. Supp. 2d 446 (S.D.N.Y. 2000)...................................................................12

*In re NAHC, Inc. Sec. Litig.,*
   306 F.3d 1314  (3[d] Cir. 2002) ........................................................................ *passim*

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.,*
   311 F.3d 198 (3[d] Cir. 2002) ............................................................................ *passim*

*In re Suprema Specialties, Inc. Sec. Litig.,*
   438 F.3d 256 (3[d] Cir. 2006) .................................................................................7

*In re Tyson Foods,*
    919 A.2d 563 (Del. Ch. 2007)................................................................26

*In re Westinghouse Sec. Litig.,*
    90 F.3d 696 (3d Cir. 1996) ................................................................14

*Jackson Nat'l Life Ins. Co. v. Kennedy,*
    741 A.2d 377 (Del. Ch. 1999)................................................................25

*Kahn v. Seaboard Corp.,*
    625 A.2d 269 (Del. Ch. 1993)................................................................26

*Kalnit v. Eichler,*
    264 F.3d 131 (2d Cir. 2001) ................................................................11

*Lewis v. Chrysler Corp.,*
    949 F.2d 644 (3d Cir. 1991) ................................................................23

*MBIA Ins. Corp. v. Royal Indem. Co.,*
    221 F.R.D. 419 (D. Del. 2004) ................................................................7, 22

*Morse v. Lower Merion Sch. Dist.,*
    132 F.3d 902 (3d Cir. 1997) ................................................................8, 19-20

*Parnes v. Gateway 2000, Inc.,*
    122 F.3d 539 (8th Cir. 1997) ................................................................14

*Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.,*
    998 F.2d 1192 (3d Cir. 1993) ................................................................4

*PR Diamonds, Inc. v. Chandler,*
    364 F.3d 671 (6th Cir. 2004) ................................................................11-12

*R.W. ex rel. Williams v. Del. Dept. of Educ.,*
    No. 05-662, 2007 WL 2213598 (D. Del. Aug. 2, 2007)................................4

*Royal Indem. Co. v. Pepper Hamilton LLP,*
    479 F. Supp. 2d 419 (D. Del. 2007) ................................................................8

*Sandvik AB v. Advent Int'l Corp.,*
    83 F. Supp. 2d 442 (D. Del. 1999)................................................................7

*SEC v. Infinity Group Co.,*
    212 F.3d 180 (3d Cir. 2000) ................................................................9

*Shaw v. Digital Equip. Corp.,*
    82 F.3d 1194 (1st Cir. 1996) ................................................................6

*Smith v. Smitty McGee's, Inc.*,
   No. 15668, 1998 WL 246681 (Del. Ch. May 8, 1998) ............................................18

*Stone v. Ritter*,
   911 A.2d 362 (Del. 2006) ............................................................................11

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
   128 S. Ct. 761 (2008) .............................................................................. 15-17

*Teachers' Ret. Sys. of La. v. Hunter*,
   477 F.3d 162 (4th Cir. 2007) ...................................................................... 18-20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   127 S. Ct. 2499 (2007) ........................................................................... 9, 12-13

*Total Care Physicians, P.A. v. O'Hara*,
   798 A.2d 1043 (Del. Super. 2001) ..................................................................25

*Tracinda Corp. v. DaimlerChrysler AG*,
   197 F. Supp. 2d 42 (D. Del. 2002) ...................................................................8

*TSC Indus., Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976) ...................................................................................14

*Tse v. Ventana Med. Sys., Inc.*,
   123 F. Supp. 2d 213 (D. Del. 2000), *aff'd*, 297 F.3d 210 (3d Cir. 2002) ("*Tse I*") ............... 8-9

*Tse v. Ventana Med. Sys., Inc.*,
   297 F.3d 210 (3d Cir. 2002) ("*Tse II*") ............................................................17

*Williams v. Geier*,
   671 A.2d 1368 (Del. 1996) ...........................................................................27

*Winer Family Trust v. Queen*,
   503 F.3d 319 (3d Cir. 2007) ..........................................................................17

### STATUTES

10 Del. C. § 8106 .................................................................................21, 27

15 U.S.C. § 78u-4 ("Private Securities Litigation Reform Act") ...................................7, 17

15 U.S.C. § 78j(b) ("Section 10(b) of the Securities Exchange Act") ................................. *passim*

15 U.S.C. § 78n(a) ("Section 14(a) of the Securities Exchange Act") ................................. *passim*

28 U.S.C. § 1658(b) ..............................................................................21, 23

## RULES

Rule 9(b) of the Federal Rules of Civil Procedure ................................................................ *passim*

Rule 12(b) of the Federal Rules of Civil Procedure ......................................................................3

**INTRODUCTION**

For all its length and bluster, the 246-paragraph, 83-page First Amended Complaint (the "Amended Complaint" or "FAC") says little about Defendant Elkin B. McCallum, an outside director who sat on the Board of Directors of Collins & Aikman Corporation ("C&A") from September 2001 until May 2004. This is because the gravamen of the Amended Complaint concerns the alleged actions of other Defendants, primarily in the time period following Mr. McCallum's resignation from C&A's board. Plaintiffs have attempted to obscure this fact by lumping him together with "the defendants" in various paragraphs of the Amended Complaint that refer to alleged activities in which he had no involvement.

Mr. McCallum is mentioned by name only a handful of times in connection with four small transactions that took place in 2001 and 2002 in which Mr. McCallum sold certain assets and companies to C&A. Plaintiffs contend C&A "overpaid" for these assets and then was paid back the overcharge by Mr. McCallum in the form of rebates. The Amended Complaint alleges that these transactions were improper because C&A reported the rebates as income, instead of as a loan. Notably, Plaintiffs do not plead any facts demonstrating that Mr. McCallum had any knowledge of or involvement in C&A's internal accounting for these transactions, which were approved by C&A's independent directors and which involved $14.9 million in revenue in a period in which C&A's overall revenue was $9.7 *billion*.

The first of Plaintiffs' theories against Mr. McCallum—fraud and securities fraud—fails for at least six independent reasons:

1) ***Lack of scienter.*** The garden-variety transactions in which Mr. McCallum is alleged to have participated could only become fraudulent, if at all, through their subsequent accounting treatment. But Mr. McCallum is not alleged to have had any knowledge or involvement in C&A's accounting for these transactions, nor any motive to commit fraud. Plaintiffs have alleged no facts giving rise to the requisite "strong inference" that Mr. McCallum acted with fraudulent intent.

2)  ***Lack of materiality.*** The $14.9 million in revenue the McCallum transactions are alleged to have brought to C&A comprise a mere *0.15 of one percent* of C&A's total revenue of $9.7 billion over the same period. The transactions at issue cannot be said to have had a measurable effect on C&A's financial position at all.

3)  ***Lack of reliance.*** Plaintiffs do not allege that Mr. McCallum was involved in any way with C&A's accounting decisions or policies or that he prepared its financial statements. Under a recent Supreme Court decision, those who prepared C&A's financial statements—not Mr. McCallum—are the persons on whom a plaintiff could claim to have relied.

4)  ***Lack of loss causation.*** Mr. McCallum's tiny transactions with C&A in 2001 and 2002 were so unimportant that when C&A disclosed they were being investigated in 2003, C&A's share price actually *increased*. Plaintiffs do not explain how these transactions came back to cause harm years later in 2005. There is no connection between the transactions and Plaintiffs' alleged losses.

5)  ***Lack of false or misleading conduct.*** No facts are alleged by Plaintiffs to suggest that Mr. McCallum committed "fraud." Instead, the Amended Complaint is replete with mere conclusions of fraud, which must be disregarded on this motion to dismiss.

6)  ***Statute of limitations.*** Plaintiffs concede that the various transactions on which they base their fraud claim took place in "the fourth quarter of 2001," "March 2002," or "on or about April 19, 2002"—all time periods that are more than three years prior to C&A's bankruptcy on May 17, 2005, and five years prior to its filing of the original Complaint in this matter on May 16, 2007. These claims are thus barred by the three-year statute of limitations.

Plaintiffs' remaining claims are meritless. The "unjust enrichment" claim fails because it is untimely and because Plaintiffs' allegations concede there was no enrichment: Plaintiffs admit that all "overpayments" were subsequently paid back to C&A. The fiduciary duty claims fail because the transactions at issue were approved by the independent members of the Board of Directors, because the Amended Complaint alleges no conduct by Mr. McCallum that constitutes a breach of his fiduciary duties, and because the claims are untimely.

Plaintiffs' inclusion of Mr. McCallum as a defendant is inappropriate and is evidently premised on the hope that the Court will elect not to parse out what alleged conduct is specifically attributable to Mr. McCallum. The Amended Complaint does not plead a viable

cause of action against Mr. McCallum and thus the claims against him must be dismissed under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

### FACTUAL BACKGROUND

Mr. McCallum joined the Board of Directors of C&A in September 2001 and served as a director until May 2004.   FAC ¶ 15.  Mr. McCallum held no other position at C&A, and is not alleged to have had *any* involvement in the Company's accounting or financial decisions, processes, or systems. Mr. McCallum is mentioned in the Amended Complaint only as to four transactions that occurred in the 2001-2002 time frame:

(1)    The SWL Sale.  Plaintiffs allege that in March 2002, C&A purchased a company called Southwest Laminates ("SWL") from Mr. McCallum for $17 million.  *Id*. at ¶¶ 56, 119. Plaintiffs assert, without explanation, that this sum was "at least $7 million more than the Company estimated it was worth."  *Id*. at ¶ 56.  The Amended Complaint is silent as to who made (or agreed with) this estimate, or when, how, or on what basis it was made.  Nor is there any allegation that Mr. McCallum ever saw, knew of, or agreed with this estimate.  There are no allegations as to who was involved in this transaction or what was discussed about it.  Nor does the Amended Complaint allege that Mr. McCallum had any knowledge of or involvement in C&A's accounting for or recognition of revenue from this transaction.

(2)    The Dutton Yarns Sale.  Plaintiffs allege that "[d]uring 2002," C&A purchased a company called Dutton Yarns from Mr. McCallum for $4.2 million.  *Id*. at ¶ 119.  The Amended Complaint asserts that "Director and Officer Defendants improperly inflated the fair value of the $2 million business by $2.2 million, or 110%, and valued the transaction in its financial statements at $4.2 million."  *Id*.   The Amended Complaint does not provide any details concerning which defendants did this inflation/valuation, who was involved in the transaction, or why Plaintiffs believe that Dutton Yarns was worth less than what C&A paid.  No facts are

3

alleged to indicate that Mr. McCallum knew or understood that some unidentified person or persons at C&A or on C&A's board felt that Dutton Yarns was worth less, nor is he alleged to have had any understanding as to how C&A was accounting for the transaction.

   (3) <u>The Sale of Furniture Looms and Equipment</u>. Plaintiffs allege that C&A "overpaid" for certain looms and texturing machines it bought from Mr. McCallum's company, Joan Fabrics, and that the overcharge was subsequently paid back to C&A. *Id.* at ¶ 56. Plaintiffs offer no factual basis for their estimate of the value of these assets, nor any allegations to suggest that Mr. McCallum knew of or was involved in C&A's internal accounting for the transaction.

   (4) <u>The 2001 Rebate</u>. The Amended Complaint alleges that Mr. McCallum was asked by Defendant Michael Stepp "[i]n the fourth quarter of 2001" to provide a $3 million rebate to C&A. *Id.* at ¶ 54. Such rebates were common in the automotive industry in which C&A participates as excess capacity among the major manufacturers caused them to pressure their suppliers for such payments. *See, e.g.,* C&A Form 10-K for the period ending December 31, 2002 ("2002 10-K") at 3 (attached as Ex. A to the Declaration of Laurie L. Levin, D.I. 27 (the "Levin Decl.")).[1] Plaintiffs allege that this rebate was "falsely characterized on Collins & Aikman's financial statements" as a rebate although it should have been treated as a loan, since C&A repaid it by giving certain looms back to Mr. McCallum. FAC ¶¶ 54, 56, 116. Plaintiffs offer no allegation that this transaction was inherently improper or unlawful, nor do they plead any facts to suggest that Mr. McCallum knew of or was involved in C&A's accounting for the transaction.

---

[1] The Court may consider C&A's public filings and related documents on this motion. *See, e.g., Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3ᵈ Cir. 1993); *R.W. ex rel. Williams v. Del. Dept. of Educ.,* No. 05-662, 2007 WL 2213598, at *3 (D. Del. Aug. 2, 2007) (holding that on a "motion to dismiss, the court is not limited to the pleadings, but may consider exhibits attached to the complaint, its opinions and orders in the case, matters of public record, items appearing in the case, such as, documents referenced or relied upon by [Plaintiff] in the complaint.").

The Amended Complaint asserts that these four transactions caused "Collins & Aikman's financial results" to be "artificially inflated by at least $14.9 million between 2001 and 2003." *Id.* at ¶ 57. The Company's revenues for those three years, however, was $1.823 billion in 2001, $3.886 billion in 2002, and $3.984 billion in 2003, for a total of $9.693 billion. *See* C&A Form 10-K/A for the year ending December 1, 2001 ("2001 10-K/A") at F-39 (attached as Ex. B to the Levin Decl.); 2002 10-K at F-42; C&A Form 10-K for the year ending December 1, 2003 ("2003 10-K") at F-51 (attached as Ex. C to the Levin Decl.). Thus, the total revenue derived from the allegedly improper transactions was approximately 0.15 of one percent of C&A's revenues.

The Amended Complaint alleges no motive for "fraud." In fact, Plaintiffs concede that Mr. McCallum paid back to C&A sums "in an equal amount" to the alleged overcharges to C&A. FAC ¶ 121. And although Mr. McCallum, through his company Joan Fabrics, was a significant shareholder of C&A at all relevant times (owning nearly 12.8 million shares of C&A stock, *see, e.g.*, C&A Schedule 13D, filed October 1, 2001 ("10/1/01 SC 13D") at 4 (attached as Ex. D to the Levin Decl.)), he is not alleged to have sold any shares of C&A stock.

### *The 2003-2004 Audit Committee Investigation*

The Amended Complaint references an internal investigation conducted by the Audit Committee of C&A into the four C&A-McCallum transactions discussed above. FAC ¶ 41. C&A informed the investing public of this investigation in an August 15, 2003 press release, which noted that the manner in which C&A had accounted for its transactions with Mr. McCallum was being scrutinized. *See* Press Release, Collins & Aikman Corporation, "Collins & Aikman Announces Second Quarter EPS of 13 Cents; Reduces Net Debt By $54 Million; Sets Restructuring Actions to Improve Results; Announces Audit Committee Inquiry" (August 15, 2003), http://www.collinsaikman.com/profile/news.asp?newsid=478&year=2003 (last visited

Sept. 12, 2007) (the "8/15/03 Press Release") (attached as Ex. E to the Levin Decl.). C&A's Audit Committee, including a former U.S. Senator and a former Dean of the Harvard Law School, retained Davis Polk & Wardwell and an accounting expert formerly of Ernst & Young to investigate these transactions and others on August 8, 2003. Audit Committee Report (the "Report") (attached as Ex. F to the Levin Decl.) at 2.[2] On March 8, 2004, the Audit Committee issued a 104-page Report. *See generally* Report. The price of C&A's stock closed at $2.43 per share on the day the investigation was announced. *See* C&A stock price on Aug. 15, 2003, Aug. 22, 2003, and Aug. 29, 2003, as reported by Morningstar, Inc. (attached as Ex. G to the Levin Decl.). Following the disclosure, C&A's stock price increased to $2.85 per share within one week and by $3.07 per share within two weeks. 8/15/03 Press Release at 3.

### *The 2005 Audit Committee Investigation*

Following the discovery of unspecified alleged accounting improprieties during preparation of the Company's 2004 10-K, C&A again retained Davis Polk & Wardwell to conduct a second investigation in 2005. This time, "the Audit Committee concluded . . . that between 2001 and 2005, several Collins & Aikman *executives* engaged in inappropriate conduct and, as a result, many supplier rebates were accounted for improperly, which affected Collins & Aikman's financials by misstating the Company's income." FAC ¶ 100 (emphasis added). There is no allegation that the Audit Committee investigated Mr. McCallum or found that he had any involvement in the accounting improprieties it found.

---

[2] The Court may consider documents such as the Audit Committee Report on this motion to dismiss because it is "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3[d] Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Consequently, the document "may be considered without converting the motion to dismiss into one for summary judgment." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 206 (3[d] Cir. 2002) (internal quotations and citation omitted).

ARGUMENT

I.    PLAINTIFFS' FRAUD AND SECURITIES FRAUD CLAIMS ARE NEITHER VIABLE NOR
      PROPERLY PLED.

A.    **The Strict Pleading Requirements For Fraud.**

Plaintiffs' allegations fail to meet the strict pleading requirements for fraud and securities

fraud. Because fraud is a serious accusation, Rule 9(b) of the Federal Rules of Civil Procedure

demands that "the circumstances constituting fraud . . . shall be stated with particularity." This

Rule provides defendants "notice of the claims against them, provide[] an increased measure of

protection for their reputations, and reduce[] the number of frivolous suits brought solely to

extract settlements." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3[d] Cir. 2006)

(quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3[d] Cir. 1997)). The

Private Securities Litigation Reform Act ("PSLRA") "imposes another layer of factual

particularity to allegations of securities fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311

F.3d 198, 217 (3[d] Cir. 2002).

Under settled Third Circuit law, Rule 9(b) and the PSLRA require Plaintiffs to plead all

of the specifics—"the who, what, when, where, and how" of the alleged fraud—with

particularity. *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3[d] Cir. 1999). Thus, "fraud

allegations should be analyzed individually to determine whether each alleged incident of fraud

has been pleaded with particularity." *In re Rockefeller Ctr. Props*, 311 F.3d at 224. Moreover, a

plaintiff "cannot sue multiple defendants for fraud merely by alleging fraud with particularity as

to one defendant." *Abbott Labs. v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408, 432 (D. Del.

2006) (quoting *Sandvik AB v. Advent Int'l Corp.*, 83 F. Supp. 2d 442, 448 (D. Del. 1999)).

Instead, "a plaintiff is required to separately plead the fraudulent acts of each defendant to satisfy

Rule 9(b)." *MBIA Ins. Corp. v. Royal Indem. Co.*, 221 F.R.D. 419, 421 (D. Del. 2004); *see also*

7

*Baker v. MBNA Corp.*, C. A. No. 05-272, 2007 WL 2009673, at *7 (D. Del. July 6, 2007) ("The plaintiffs' blanket allegations against 'the defendants' and 'management' do not meet the particularity requirements of Rule 9(b) . . . .").

Thus, the Amended Complaint must offer detailed, particularized facts as to each element of the Section 10(b) claim asserted against Mr. McCallum, namely "(1) a misstatement or omission; (2) of a material fact; (3) with scienter; (4) in connection with the purchase or sale of a security; (5) upon which the plaintiff reasonably relied; and (6) that reliance was the proximate cause of plaintiff's injury." *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 54 (D. Del. 2002).[3]    Finally, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3ᵈ Cir. 1997) (quoting *In re Burlington*, 114 F.3d at 1429-30).

As discussed below, the Amended Complaint offers only conclusions—not facts— against Mr. McCallum and thus the claims against him must be dismissed.

**B.    Plaintiffs Fail To Offer Factual Allegations Giving Rise To A "Strong Inference" Of Scienter.**

The "fraud" and "securities fraud" claims against Mr. McCallum must be dismissed because Plaintiffs have pled no facts that give rise to the requisite "strong inference" that Mr. McCallum acted with scienter—*i.e.*, that Mr. McCallum intended to defraud. *See Tse v. Ventana Med. Sys., Inc.*, 123 F. Supp. 2d 213, 225 (D. Del. 2000) ("*Tse I*"), *aff'd*, 297 F.3d 210 (3ᵈ Cir. 2002) ("*Tse II*").    Prior Third Circuit precedents held that to plead scienter, "a plaintiff must

---

[3] The elements of common law fraud under Delaware law are substantially identical. "Under Delaware law, the elements of common law fraud are: 1) a false representation, usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as the result of such reliance." *Royal Indem. Co. v. Pepper Hamilton LLP*, 479 F. Supp. 2d 419, 430 (D. Del. 2007).

allege facts 'establishing a motive and an opportunity to commit fraud, or . . . set[] forth facts that constitute circumstantial evidence of either reckless or conscious behavior.'" *Id.* (quoting *In re Advanta Corp.*, 180 F.3d at 534-35).[4]  The recent Supreme Court holding in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509-11 (2007), however, mandates that the allegations be evaluated "holistically" and that "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences."  In so ruling, the Supreme Court rejected the notion that inferences that are "merely plausible or reasonable" may satisfy this heightened standard; the Court directed that to plead scienter, inferences "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  The Third Circuit has yet to explicitly address whether the "motive and opportunity" test survives *Tellabs*, but, in any event, Plaintiffs have failed to allege facts that would either satisfy the "motive and opportunity" test or meet the *Tellabs* standard.

Plaintiffs have not pled facts giving rise to a "strong inference" that Mr. McCallum acted with scienter for at least three reasons.  *First*, the allegations do not provide any facts to suggest that Mr. McCallum had any awareness of the accounting treatment accorded the transactions by C&A.  *Second*, the allegations negate the notion that Mr. McCallum had any motive to engage in any alleged fraud.  *Third*, the inferences on which Plaintiffs seek to rely are not at least as compelling as the opposing inferences (*i.e.*, that Mr. McCallum acted without scienter), which are more plausible and better supported by the allegations and the documents referenced therein.

---

[4] Recklessness is defined to mean "highly unreasonable (conduct), involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, . . . which presents a danger of misleading . . . that is either known to the defendant or is so obvious that the actor must have been aware of it." *SEC v. Infinity Group Co.*, 212 F.3d 180, 192 (3[d] Cir. 2000) (citations omitted).

**1.     Plaintiffs Have Not Alleged That Mr. McCallum Had Any Knowledge Of Improper Accounting By C&A.**

Notably absent from the 83-page Amended Complaint is a single factual allegation suggesting that Mr. McCallum had *any knowledge at all* about how C&A intended to or did account for the transactions that Plaintiffs allege constitute a "fraud." Without such an allegation, there is no basis to suppose that Mr. McCallum had any awareness of any improprieties, and thus the Amended Complaint fails to plead scienter.

It is important to note that the transactions at issue here are not inherently unlawful. There is nothing wrong with giving a corporation a rebate, or a loan, or selling a company to another company. These transactions can only become suspect if they are accounted for or reported after the fact in an improper manner by the company. In other words, the "fraud" can only lie in the company's subsequent treatment of the transactions—not the transactions themselves, which are unremarkable and commonplace in the business world. The basis of the Amended Complaint, therefore, is that that C&A did not accurately reflect the true nature of these transactions in its financial statements.

But Mr. McCallum is not alleged to have played any role in C&A's accounting department, nor any role in the management or operations of the Company. He is not alleged to have had any dealings with or awareness of the accounting system of C&A in any way, or to have known of any accounting decisions or entries made concerning these or any other transactions. Plaintiffs conclusorily assert that the "Director and Officer Defendants . . . knew of . . . [C&A's] operations and finances, as well as its accounting practices" but they offer not one fact suggesting that Mr. McCallum specifically had any awareness of how C&A's accounting personnel were treating the transactions at issue. FAC ¶ 25. There is no basis to assume that Mr. McCallum believed these transactions were anything other than what they were—a series of

ordinary sales and rebates negotiated at arm's length and approved by the disinterested members of the Board of Directors.

The most that can be said about Mr. McCallum is that he was once a member of the C&A Board. But courts invariably find that such mundane, universal circumstances do not give rise to a "strong inference" of scienter. *See, e.g., In re Advanta Corp.*, 180 F.3d at 539 (holding that in a suit against officers and directors alleging misleading disclosure of the company's earnings, plaintiffs "may not rest on a bare inference that a defendant 'must have had' knowledge of the facts") (citation omitted); *In re Health Mgmt. Sys., Inc. Sec. Litig.*, No. 97 Civ. 1865, 1998 WL 283286, at *6 (S.D.N.Y. June 1, 1998) ("[C]ourts have routinely rejected the attempt to plead scienter based on allegations that because of defendants' board membership and/or their executive managerial positions, they had access to information concerning the company's adverse financial outlook.").[5] Outside directors such as Mr. McCallum are generally not presumed to have intimate knowledge of the accounting details of the company, and the suggestion that any accounting regularities automatically subject Mr. McCallum to claims of fraud would make a mockery of Rule 9(b). *Guttman v. Huang*, 823 A.2d 492, 498 (Del. Ch. 2003) (dismissing a derivative complaint of insider trading where the complaint was "entirely devoid of particularized allegations of fact demonstrating that the outside directors had actual or constructive notice of the accounting improprieties" that existed at the company); *see also Stone v. Ritter*, 911 A.2d 362, 364-65 (Del. 2006).

The Amended Complaint provides no facts that would give rise to any inference—much less a "strong inference"—that Mr. McCallum knew or believed that C&A was not properly

---

[5] Such all-inclusive allegations concerning scienter "generally possessed by most corporate directors and officers" simply "do not suffice" to create a strong inference of scienter. *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001); *accord PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 688 (6th Cir. 2004) ("[F]raudulent intent cannot be inferred merely from the Individual Defendants' positions in the Company and alleged access to information.").

accounting for the transactions in question. Plaintiffs' scienter allegations are wholly conclusory and inadequate to plead fraud.

### 2.    Mr. McCallum Had No Motive To Commit Fraud.

Plaintiffs make no effort to plead that Mr. McCallum had a motive to commit fraud, and their allegations show that he did not. Mr. McCallum is conceded to have remitted all of the "excess consideration" right back to C&A "in an equal amount" to what he received. FAC ¶ 121. The transactions thus conferred no gain or benefit to Mr. McCallum.

Motive is also refuted by the fact that Mr. McCallum, a significant holder of C&A stock through his company Joan Fabrics Corporation, is not alleged to have sold a single one of his nearly thirteen million C&A shares at any time during the relevant period. Thus, if Mr. McCallum really had committed a fraud, he would simply have been defrauding himself. *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2$^{\text{d}}$ Cir. 1995) ("that . . . defendants did not sell their shares during the relevant class period undermines plaintiffs' claim"); *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 691 (6th Cir. 2004) ("the absence of inside sales dulls allegations of fraudulent motive.").[6] Indeed, Mr. McCallum suffered losses from the bankruptcy of C&A.

Mr. McCallum had nothing to gain from the alleged fraud and, because of his significant shareholdings in C&A, much to lose. Plaintiffs' allegations are squarely inconsistent with motive and thus the Amended Complaint fails for lack of scienter.

### 3.    The More Compelling Inferences Negate Fraud.

The Supreme Court's directive in *Tellabs* provides yet another, independent reason for dismissing the Amended Complaint for lack of scienter. The inferences that can be drawn from

---

[6] *See also In re N. Telecom Ltd. Sec. Litig.*, 116 F. Supp. 2d 446, 462 (S.D.N.Y. 2000) (finding that the actions of defendants who "held or increased their holdings" and thus experienced losses, were "inconsistent with an intent to defraud").

the facts that the Court may consider on this motion more plausibly point to the absence of fraudulent intent than its presence.

The transactions at issue were presented to the independent directors of C&A, who independently evaluated the proposed deals in accordance with their fiduciary duties to the corporation. Report at 76, 84. Mr. McCallum could reasonably conclude that those directors had honored their duties, evaluated the proposed purchase prices, and decided that the prices requested were appropriate. In short, Mr. McCallum "had no sound reason to doubt the commercial viability" of the transactions and thus cannot be said to have acted fraudulently. *In re Carter-Wallace, Inc. Sec. Litig.*, 150 F.3d 153, 157 (2[d] Cir. 1998). The Amended Complaint alleges no facts to the contrary. Because Plaintiffs' "fraud" theory is significantly less logical and substantiated than the picture the record paints of non-fraudulent transactions, the logic of *Tellabs* compels dismissal.

## C.     The McCallum Transactions Are Immaterial As A Matter Of Law.

The four transactions that Mr. McCallum is alleged to have been involved in brought C&A a mere $14.9 million in revenue between 2001 and 2003. FAC ¶ 57. Over the same period, C&A generated a whopping $9.693 billion in revenue from its global operations, with quarterly revenue ranging from a low of $482 million to a high well in excess of $1 billion. Thus, the challenged transactions represented a mere *0.15%* of C&A's revenue over the relevant period. *See* 2001 10-K/A at F-39; 2002 10-K at F-42; 2003 10-K at F-51. Moreover, between the fourth quarter of 2001 and the first quarter of 2003, C&A's cost of goods sold amounted to $4.734 *billion. See* 2002 10-K at F-42 ($439.8 million calculated for Q4 2001); 2003 10-K at F-3 ($3.368 billion listed for FY 2002) and F-51 ($925.7 million calculated for Q1 2003). The challenged transactions therefore equal just *0.3%* of C&A's cost of goods sold during that period. Whether analyzed with respect to revenue or reductions in cost, the amounts at issue are

13

not alleged to have converted a loss into a profit and are well below those that courts have found to be immaterial as a matter of law. *See, e.g., In re Westinghouse Sec. Litig.*, 90 F.3d 696, 715 (3ᵈ Cir. 1996) (affirming dismissal based on immateriality of 1.2% overstatement of total assets despite 60% drop in stock price); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546-47 (8ᵗʰ Cir. 1997) (affirming dismissal where alleged overstatement of assets by 2% was immaterial as a matter of law); *Glassman v. Computervision Corp.*, 90 F.3d 617, 633 (1ˢᵗ Cir. 1996) (affirming denial of leave to amend complaint based on immateriality of omission concerning 3% to 9% of actual revenues); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 631 (S.D.N.Y. 2005) (granting dismissal because, *inter alia*, "[c]hanging the accounting treatment of approximately 0.3% of JPM Chase's total assets from trades to loans would not have been material to investors").[7]

No rational investor in a company with $4 billion in annual revenues would find $14.9 million particularly notable, much less dispositive. It would not be "viewed by the reasonable investor as having significantly altered the 'total mix' of information made available" and thus is immaterial as a matter of law. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3ᵈ Cir. 2002) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

The best proof of this is the reaction of the market itself to C&A's August 15, 2003 press release that included an announcement of the Audit Committee's inquiry into the McCallum transactions challenged by Plaintiffs. On the day the investigation was announced, C&A's stock was trading at $2.43 per share. *See* C&A stock price on Aug. 15, 2003, Aug. 22, 2003, and Aug.

---

[7] The court in *In re Duke Energy Corp. Sec. Litig.*, 282 F. Supp. 2d 158 (S.D.N.Y. 2003), *aff'd*, 113 Fed. App'x 427 (2ᵈ Cir. 2004), dismissed highly similar "round trip" allegations on the ground that they were immaterial as a matter of law. The Court held that "an inflation of $217 million in the Company's revenues for the relevant period amounts to about 0.3% of Duke Energy's total revenues for that period" and were "an immaterial percentage as a matter of law." *Id.* at 161. Here, an inflation of $14.9 million amounts to only 0.15% of C&A's total revenues and thus is immaterial as a matter of law.

29, 2003, as reported by Morningstar, Inc. (attached as Ex. G to the Levin Decl.). Following the
disclosure, C&A's stock price *increased* to $2.85 per share within one week and by $3.07 per
share within two weeks, even though the announcement clearly indicated that the investigation
was examining the propriety of the accounting treatment of the transactions.  8/15/03 Press
Release at 3.   This confirms that the market had determined that the transactions under
investigation were not material to investors' decisions.  *See, e.g., In re NAHC*, 306 F.3d at 1331
(affirming dismissal of complaint alleging securities fraud based on $13.4 million loss where
"disclosure had no negative effect whatsoever on the price of [the issuer's] stock on or
immediately following [the date of disclosure]"); *In re Allied Capital Corp. Sec. Litig.*, No. 02
Civ. 3812, 2003 WL 1964184, at *5-6 (S.D.N.Y. Apr. 25, 2003) (finding no materiality where
the company's stock price fell by 10% following public questions concerning its valuation
methods because, *inter alia*, the stock price's subsequent recovery, "in the face of a general
decline in the market, . . . indicates that investors quickly determined that the 'new' information
was *not* material to their investment decisions") (emphasis in original).

### D.     Plaintiffs Fail to Demonstrate Reliance.

On January 15, 2008, the United States Supreme Court issued a landmark securities law
decision that makes clear that Plaintiffs cannot allege the essential element of reliance as to Mr.
McCallum.  In *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761 (2008),
the Court examined whether the suppliers of a public company, Charter Communications, could
be held liable under § 10(b) for entering into arrangements with Charter that enabled it to issue
misleading financial statements, affecting the price of Charter's stock.  Echoing the allegations
of the instant case, the complaint in *Stoneridge* accused defendants of knowingly enabling
Charter to meet a revenue shortfall by agreeing to overcharge Charter for cable boxes and then
returning the overcharges by purchasing an equivalent amount of advertising from Charter which

Charter booked as revenue. 128 S. Ct. at 766. It was alleged that Defendants agreed to this "round trip" arrangement and generated false and backdated documentation to enable Charter to carry it out, fully aware of the fraudulent nature of the transactions. *Id.* at 767. The intended consequence of those transactions, which the plaintiffs alleged were devoid of economic substance, was that Charter was able to inflate the revenue and cash flow reported in its financial statements and public filings by some $17 million. *Id.*

The Supreme Court affirmed the dismissal of plaintiffs' claim that Charter's suppliers should be liable under § 10(b) because they "engaged in conduct with the purpose and effect of creating a false appearance of material fact to misrepresent Charter's revenue." *Id.* at 770. The Court concluded that:

> respondents' deceptive acts, which were not disclosed to the investing public, are too remote to satisfy the requirement of reliance. It was Charter, not respondents, that misled the auditor and filed false financial statements; nothing respondents did made it necessary or inevitable for Charter to record the transactions as it did.

*Id.* The Court further explained "Charter was free to do as it chose in preparing its books, conferring with its auditor, and preparing and issuing its financial statements." *Id.* at 774. That defendants' conduct assisted, or was essential to Charter's misconduct, or that defendants engaged in a conscious scheme to defraud, did not alter the fundamental fact that plaintiffs in no way relied on the actions of defendants, a defect that was fatal to plaintiffs' claims. The Court observed that plaintiffs' theory stretched Section 10(b) beyond its reasonable bounds. Plaintiffs' claims would, in effect, create aiding and abetting liability that Congress specifically elected not to enact. *Id.* at 768-69. The Court reasoned that the purposes of Section 10(b) were not served by exposing indirect and secondary actors to liability in the manner that plaintiffs proposed. *Id.* at 770-71.

16

The Court's words and reasoning in *Stoneridge* could have been written about the instant case. Mr. McCallum, a supplier to C&A, is accused of having sold assets to C&A at inflated prices, later paying back the "overcharge," which C&A recognized as revenue. Just as in *Stoneridge*, where Charter was responsible for the contents of its financial statements, so too is Plaintiff C&A responsible here for the disclosures made to the investing public. The most that can be said is that Mr. McCallum once served as an outside director on the C&A Board and, in that capacity, signed certain of C&A's public filings. But Plaintiffs do not allege that Mr. McCallum specifically had any involvement with about C&A's accounting decisions or policies, nor is there any allegation that he prepared C&A's financial statements.[8]

Even if Mr. McCallum had engaged in any "deceptive acts" to enable C&A to carry out a "round trip" arrangement—and none are alleged—"[n]o member of the investing public had knowledge, either actual or presumed, of [such alleged] deceptive acts during the relevant times." *Id.* at 769. As in *Stoneridge*, plaintiffs cannot claim any reliance on Mr. McCallum or his conduct. *Id.* at 769, 773. Thus, the claims against Mr. McCallum must be dismissed.

### E. The Claims Against Mr. McCallum Must Be Dismissed For Lack Of Loss Causation.

Plaintiffs' claims against Mr. McCallum fail for a further, independent reason: failure to plead loss causation. To establish loss causation or "proximate cause" as the concept is referred to with respect to common law fraud, Plaintiffs "must show a 'legal link' between Defendants' alleged misrepresentations and [Plaintiffs'] alleged injury." *In re DaimlerChrysler AG Sec. Litig.*, 294 F. Supp. 2d 616, 626 (D. Del. 2003) (quoting *Tse II*, 297 F.3d at 217) (applying the same loss causation standard to fraud claims under both Delaware law and the Exchange Act);

---

[8] *See Winer Family Trust v. Queen*, 503 F.3d 319, 335-36 (3ᵈ Cir. 2007) (rejecting the group pleading doctrine in the PSLRA context and holding that in private securities actions, plaintiffs must "specify the role of *each* defendant, demonstrating *each* defendant's involvement in misstatements and omissions") (emphasis added).

*see also Smith v. Smitty McGee's, Inc.*, No. 15668, 1998 WL 246681, at *5 (Del. Ch. May 8, 1998) (dismissing Delaware fraud claims in part because conclusory assertions concerning damages did not "explain exactly what damage was caused by [defendant's] action or inaction"). It is not sufficient for Plaintiffs to argue that they purchased or sold securities at an artificially inflated price. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Instead, loss causation requires the plaintiff to point to some causal link between the alleged fraudulent conduct of Mr. McCallum and a concrete decline in the value of the plaintiff's stock. *Id.*

The Amended Complaint fails to do this. Plaintiffs offer no allegations that Mr. McCallum himself, or the few, small transactions in which he is alleged to have been involved, were in any way the cause of any losses suffered by Plaintiffs. There is no attempt to suggest how the modest $14.9 million C&A is alleged to have realized from its transactions with Mr. McCallum in 2001 and 2002 somehow snowballed into the collapse and bankruptcy of a $4 billion multi-national corporation in 2005. *See Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 186 (4th Cir. 2007) (affirming dismissal of a "roundtrip" fraud case for failure to allege loss causation "with sufficient specificity to enable the court to evaluate whether the necessary causal link exists").[9]

The market reaction to the disclosure that the McCallum transactions were being investigated is once again significant. The investigation was disclosed in 2003, and was immediately followed by an *increase* in the stock price. It makes no sense to suppose that Mr. McCallum's few transactions in 2001 and 2002 could have been the cause of Plaintiffs' alleged losses in 2005 when the investing public found them to be of no significance in 2003. It makes

---

[9] The lapse of time alone between the 2001-2002 transactions and Plaintiff's alleged losses in 2005 further weighs against loss causation and demands clearer allegations to link Mr. McCallum's alleged conduct to Plaintiff's claimed injuries. *See Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 186 (2d Cir. 2001) (finding that loss causation inquiry requires an examination of "the lapse of time between the behavior complained of and the loss").

no sense to suppose that these transactions could have caused losses *at all* in 2005, years after the potential accounting issues were disclosed publicly. Plaintiffs' failure to connect the transactions at issue to their alleged injuries mandates dismissal of their Amended Complaint.

**F.**      **Plaintiffs Have Not Pled With Particularity Facts That Show That The Challenged Transactions Were Fraudulent.**

Plaintiffs were obligated to allege with particularity false or misleading statements by Mr. McCallum. Moreover, as to allegedly fraudulent "round trip" transactions, a complaint "must allege facts sufficient to support a reasonable belief that both legs of the round-tripping were a sham" or face dismissal. *Teachers' Ret. Sys.*, 477 F.3d at 179. The Amended Complaint wholly fails to meet this standard.

Three of the challenged transactions—the SWL, Dutton Yarns, and the loom and equipment sales—depend critically on Plaintiffs' assertion that C&A paid too much and received the "overpayment" as a rebate which it then improperly recognized as income. But the Amended Complaint pleads no *facts* that this was the case, only the mere conclusion that it is so. As to the furniture loom sale, for example, Plaintiffs offer only a single, unsupported assertion that the looms were "only worth approximately $2 million." FAC ¶ 56. This is not an allegation of particularized facts supporting fraud, but the mere conclusion of fraud, which should be disregarded on this motion to dismiss. *See Morse*, 132 F.3d at 906.

The allegations concerning the Dutton Yarns transaction suffer from the same defect. That transaction is condemned by Plaintiffs with a cryptic conclusion that "Collins & Aikman improperly inflated the fair value of the $2 million business by $2.2 million . . . ." FAC ¶ 119. All details concerning the basis for this conclusion are omitted, such as who made the valuation, when the valuation was made, for what purpose, or how. Similarly, Plaintiffs' assertion that the purchase price of SWL was "improperly inflated" by "at least $7 million" (*id.*) provides no

19

details, such as who made the estimate, when, for what purpose, or how. Rule 9(b) obligated Plaintiffs to specify in detail "the who, what, when, where, and how"—of the alleged fraud. *In re Advanta Corp.*, 180 F.3d at 534. Plaintiffs have entirely failed to meet this requirement and have offered none of the *facts* required by Rule 9(b) to support their merely conclusory assertions that the amounts paid were inappropriate.[10]

Additionally, the Amended Complaint is inconsistent with C&A's public filings, further mandating dismissal. As to the SWL transaction, for example, C&A's securities filings confirm that the acquisition of Southwest Laminates was, in fact, a boon for C&A: the Company's net sales increased in 2002 and "the 2002 acquisition of SWL drove this sales increase" in significant part. 2002 10-K at 21.[11] Similarly, Plaintiffs' conclusory assertion that "Collins & Aikman improperly inflated the fair value of the $2 million [Dutton Yarns] business by $2.2 million" is similarly at odds with C&A's filings. FAC ¶ 119. C&A's disclosures concerning Dutton Yarns confirm that C&A acquired more than merely the assets of that company. *See* 2002 10-K at 34 ("Dutton Yarns has agreed to provide the Company transition services through December 31, 2003.").

The Amended Complaint boils down to a mere allegation that certain transactions between Mr. McCallum and C&A were not accounted for properly. No facts are alleged to suggest that Mr. McCallum was involved in C&A's accounting or committed "fraud," and thus the claims against Mr. McCallum must be dismissed.

---

[10] The need for particularized allegations is especially acute where, as here, the notion of "fraud" hinges critically on the subjective and problematic question of valuation. *See Teachers' Ret. Sys.,* 477 F.3d at 181 ("A 'fair' acquisition price depends on a wide variety of factors, including market value, dividends, earning prospects, the nature of the enterprise, and any other facts . . . which throw any light on future prospects.") (internal quotations omitted).

[11] Further, the terms of the SWL transaction, including the purchase price, were publicly disclosed in C&A's 2002 securities filings. *See, e.g.,* C&A 10-Q/A for the period ending March 31, 2002 at 23 ("Q1 2002 10-Q/A") (Ex. H to the Levin Decl.) (noting sale of SWL to C&A by Mr. McCallum for $17 million in stock, cash, and debt).

G. **Plaintiffs' Claims Against Mr. McCallum Are Barred By The Statute Of Limitations.**

Plaintiffs' theories of fraud and securities fraud are not viable because they are barred by the applicable statutes of limitations. *See* 10 Del. Code § 8106 (2006) (stating that "no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action"); 28 U.S.C. § 1658(b) (providing that securities law claims must be brought "not later than the earlier of— . . . 2 years after the discovery of the facts constituting the violation; or . . . 5 years after such violation").

Mr. McCallum's transactions took place between 2001 and 2002. FAC ¶¶ 15, 54, 56. The 2001 rebate is alleged to have taken place in "the fourth quarter of 2001." *Id.* at ¶ 54. The Southwest Laminates transactions took place in "March 2002." *Id.* at ¶ 56. The transaction for the looms occurred "on or about April 19, 2002." *Id.* at ¶ 56.

All of these transactions predated C&A's filing for bankruptcy (which occurred on May 17, 2005) by more than three years, and preceded the original Complaint in this matter (which was filed on May 16, 2007) by more than five years. As Plaintiffs—*i.e.*, C&A itself—cannot reasonably argue that they did not know of the McCallum transactions as they occurred, these claims are therefore untimely and must be dismissed.

II. **PLAINTIFFS' SECTION 14(A) AND RULE 14A-9 CLAIMS FAIL FOR THE SAME REASONS AS THEIR FRAUD AND SECTION 10(B) CLAIMS.**

A. **Plaintiffs' Obligation Under Section 14(a) And Rule 14a-9.**

Plaintiffs have failed to state a claim under Section 14(a) and Rule 14a-9. Under § 14(a) of the Exchange Act and Rule 14a-9, Plaintiffs were obligated to plead that:

> "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the

> solicitation materials, was "an essential link in the accomplishment
> of the transaction."

*In re NAHC*, 306 F.3d at 1329 (quoting *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 932 (3ᵈ Cir.

1992)).  Although it is not necessary to allege scienter as an element of § 14(a) claims, because

such claims "sound in fraud," they are subject to the heightened pleading standards of Rule 9(b).

*CalPERS v. Chubb Corp.*, 394 F.3d 126, 142, 143-44 (3ᵈ Cir. 2004); *see also In re Rockefeller*

*Ctr. Props.*, 311 F.3d at 212 (holding that § 14(a) claims "require . . . well-pleaded allegations of

fraudulent misrepresentations or omissions. . . .").  Most importantly, to satisfy Rule 9(b),

Plaintiffs must "separately plead the fraudulent acts of each defendant." *MBIA Ins. Corp.*, 221

F.R.D. at 421.  In their improper attempt to group Mr. McCallum in with the other defendants,

Plaintiffs fail utterly to fulfill this obligation.

**B.    Plaintiffs Have Failed To Plead Their Section 14(a) Claims With The**
**Requisite Particularity.**

Plaintiffs base their § 14(a) claims on the issuance of three Proxy Statements—dated

April 25, 2002, April 24, 2003, and September 30, 2004—that allegedly "violated Section 14(a)

and Rule 14a-9 because they omitted material facts, including that Collins & Aikman's reported

financial results were artificially inflated through a variety of improper accounting practices and

the Company was then experiencing severe liquidity constraints." FAC ¶ 188.  As an initial

matter, Plaintiffs' claim against Mr. McCallum as to the 2004 Proxy Statement fails because that

Proxy Statement was issued *nearly five months after* Mr. McCallum left C&A's Board on May 6,

2004.  *Id*. at ¶ 15.  Regardless of whether Plaintiffs' allegations concerning the 2004 Proxy

Statement are sufficient to state a claim against any other Defendant in this action, they are

certainly insufficient to state a claim as to Mr. McCallum.  *See MBIA Ins. Corp.*, 221 F.R.D. at

421; *see also Dasho v. Susquehanna Corp.*, 461 F.2d 11, 33 (7ᵗʰ Cir. 1972) (holding that former

directors are "not responsible for actions taken by other defendants or the board of directors after

their respective resignations"). Moreover, by Plaintiffs' own account, the so-called "severe liquidity constraints" at the core of this claim are not alleged to have developed until "August 2004," again well after Mr. McCallum left the C&A Board. FAC ¶ 88.

With respect to the 2002 and 2003 Proxy Statements, Plaintiffs have failed to present particularized allegations supporting their theory that these Proxy Statements "omitted material facts, including" the alleged "artificial inflation" of C&A's reported financial results "through a variety of improper accounting practices."[12] FAC ¶ 188. As described above, the Amended Complaint provides no details concerning the alleged "inflation." It is also lacking in any description of the Proxy Statements themselves, such as what about them was false or misleading; in fact, the Amended Complaint does not point to even a single alleged "misrepresentation" anywhere in the Proxy Statements. This alone mandates dismissal. *See Lewis v. Chrysler Corp.*, 949 F.2d 644, 653 (3[d] Cir. 1991) (the plaintiff's "conclusory allegation of a § 14(a) violation does not state with particularity *exactly how the proxy materials were false and misleading*" and therefore warrants dismissal) (emphasis added). Plaintiffs' attempts to "[c]obbl[e] together a litany of inadequate allegations does not render those allegations particularized in accordance with Rule 9(b) . . . ." *CalPERS*, 394 F.3d at 155.[13]

This is especially true with respect to Plaintiffs' inadequate attempt to establish the "essential link" element of Section 14(a) claims. Plaintiffs allege that "[t]he Proxy Statements

---

[12] In addition, Plaintiffs' claims as to the Proxy Statements are time-barred. In the Third Circuit, a plaintiff must bring § 14(a) claims within the earlier of one year after the discovery of the facts constituting the violation or three years after the violation. *See In re Exxon Mobil Sec. Litig.*, 500 F.3d 189, 198 (3[d] Cir. 2007) (holding that the longer limitations periods under 28 U.S.C. § 1658(b), *i.e.*, the Sarbanes-Oxley Act, do not apply to § 14(a) claims). The April 25, 2002 Proxy Statement, for example, predates both C&A's May 17, 2005 filing for bankruptcy and the May 16, 2007 filing of the original Complaint by more than three years.

[13] In any event, Plaintiffs fail to address the fact that the 2002 and 2003 Proxy Statements *disclose* the terms of the McCallum transactions challenged by Plaintiffs. *See* 2002 Proxy Statement (attached as Ex. I to the Levin Decl.) at 11 and 2003 Proxy Statement (attached as Ex. J to the Levin Decl.) at 11-12.

were an essential link in the accomplishment of the continuation of Defendants' fraudulent scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation, and the Company's compensation policies." FAC ¶ 190. Such blatant, conclusory mirroring of the statutory language does not create a cognizable claim. *In re Rockefeller Ctr. Props.*, 311 F.3d at 216 ("[L]egal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness."). Plaintiffs do not plead any *facts*—the "who, what, when, where, and how"—showing that the proxy solicitation caused the shareholders to vote as they did. *In re Advanta Corp.*, 180 F.3d at 534. The § 14(a) claim must therefore be dismissed.

### C.     The Proxy Statements' Alleged Misrepresentations And/Or Omissions Are Immaterial As A Matter of Law.

Plaintiffs also fail to satisfy the materiality requirements of their Section 14(a) claim for the same reasons their Section 10(b) claim fails to do so. A misrepresentation or omission is only material if "there is a substantial likelihood that it would have been viewed by the reasonable investor as having significantly altered the total mix of information available to the investor." *In re NAHC*, 306 F.3d at 1330 (quoting *Basic v. Levinson*, 485 U.S. 224, 231-32 (1988)). This is clearly not the case here. The terms of the challenged transactions alleged to have taken place during Mr. McCallum's tenure on the C&A board were disclosed and, as noted above, involved only a tiny fraction of C&A's revenue during the relevant period. *See* 2001 10-K/A at F-39; 2002 10-K at F-42; 2003 10-K at F-51. In addition, as described above, when the public was made aware that the Company had launched an Audit Committee inquiry into the propriety of the accounting treatment of the challenged transactions, the stock price *increased*. *See* Levin Decl., Ex. G (C&A stock price on August 15, 2003, August 22, 2003, and August 29, 2003); *In re NAHC*, 306 F.3d at 1331. Plaintiffs' allegations in support of their § 14(a) claim are

simply immaterial as a matter of law.

**III.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS BECAUSE IT IS UNTIMELY AND THERE WAS NO ENRICHMENT.**

Plaintiffs' unjust enrichment claim against Mr. McCallum fails because the Amended Complaint refutes the first and most critical element of the claim—enrichment.[14]   According to the Amended Complaint, C&A overpaid for certain assets but then received back the overpayments in the form of rebates.   McCallum, far from pocketing these overpayments, would "reimburse C&A in an equal amount over time . . . ."  FAC ¶ 121.   These transactions are alleged to have been "round-trips," meaning that the money did not stay with Mr. McCallum, but returned to C&A.   In other words, Mr. McCallum was not unjustly enriched at all—by Plaintiffs' own admission he remitted any gains right back to C&A.   Mr. McCallum was not "enriched," nor was C&A "impoverished."   This is not unjust enrichment.

The unjust enrichment claim must be dismissed for another, independent reason—namely, that Mr. McCallum's transactions with C&A were circumscribed by written agreements. "Unjust enrichment only applies in circumstances in which the parties have not entered into an express contract."   *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 421 (D. Del. 2007).   Each of the transactions at issue was subject to agreement under a contract carefully negotiated and reviewed by attorneys.[15]   Whatever rights C&A may have as against Mr. McCallum would arise from these instruments, and not from a quasi-contract theory of recovery.

---

[14] Under Delaware law, "[t]he elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1056 (Del. Super. 2001) (quoting *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999)).

[15] The Southwest Laminates transaction was memorialized in an Agreement and Plan of Merger dated April 12, 2002. The Dutton Yarns transaction was memorialized in an Asset Purchase Agreement dated December 31, 2002. The sale of the furniture looms was memorialized in a Cooperation and Supply Agreement dated January 1, 2003. All three transactions were disclosed in C&A's public filings. *See, e.g.*, 2003 10-K at 38.

Finally, Plaintiffs' unjust enrichment claim as against Mr. McCallum is untimely. Plaintiffs were obligated to bring their action within three years of when they learned of the rebates that form the basis of their claim—*i.e.*, in "the fourth quarter of 2001" and "March 2002".[16] FAC ¶¶ 54, 56. Because, as noted above, Plaintiffs knew of the issues they now seek to raise more than three years before C&A's bankruptcy and more than five years they brought this lawsuit, their claims are barred by the statute of limitations. *See In re Tyson Foods*, 919 A.2d 563, 586-87 (Del. Ch. 2007) (dismissing fiduciary duty claim as time-barred where brought more than three years after plaintiff was on inquiry notice).

## IV.   PLAINTIFFS' FIDUCIARY DUTY ALLEGATIONS MUST BE DISMISSED BECAUSE THEY FAIL TO STATE A TIMELY CLAIM.

As noted above, the Amended Complaint makes clear that any "excessive consideration" obtained by Mr. McCallum in connection with the few transactions as to which he is mentioned by name was paid back to C&A in full. *See, e.g.,* FAC ¶ 121. And no allegation indicates that Mr. McCallum knew of or was aware of the accounting treatment for these transactions. No reasonable understanding of a director's fiduciary duties under Delaware law would require directors to familiarize themselves with the accounting minutiae for any of the hundreds or thousands of tiny transactions a corporation may engage in. On the face of the Amended Complaint, no breach of fiduciary duty is stated against Mr. McCallum.

Moreover, the documents referred to in the Amended Complaint and other documents of which Plaintiffs were aware when they prepared the Amended Complaint make clear that these

---

[16] "A cause of action accrues under 10 Del. C. § 8106 at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action." *Albert v. Alex Brown Mgmt. Servs., Inc.* No. Civ.A. 762-N, 2005 WL 1594085, at *13 (Del. Ch. June 29, 2005). Nonetheless, some Delaware courts have held that in the context of alleged self-dealing transactions, the limitations period may be tolled via the "discovery rule" until the time plaintiff "knew or had reason to know the facts alleged to give rise to the wrong." *Kahn v. Seaboard Corp.*, 625 A.2d 269, 276 (Del. Ch. 1993). Either way, C&A plainly knew of the McCallum transactions as they occurred.

transactions were approved as being in the best interests of C&A by the disinterested members of its Board, with Mr. McCallum recusing himself from the vote. *See, e.g.*, Report at 76, 84. As a result, the business judgment rule applies and defeats Plaintiffs' *post hoc* challenge of that decision. *See Williams v. Geier*, 671 A.2d 1368, 1379 n.23 (Del. 1996) ("[A] transaction will be sheltered from shareholder challenge if approved by either a committee of independent directors, the shareholders, or the courts."); *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). As Plaintiffs have not asserted particularized facts to overcome the presumption that the transactions were proper, Mr. McCallum is entitled to dismissal. *See In re General Motors Class E Stock Buyout Sec. Litig.*, 694 F. Supp. 1119, 1132 (D. Del. 1988) ("[I]n order to overcome the presumption of the business judgment rule, [the plaintiff] must allege with particularity facts which establish that the contested decision was not a product of valid business judgment") (citing *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988)); *Desimone v. Barrows*, 924 A.2d 908, 928 (Del. Ch. 2007) ("[A] complaint alleging breach of fiduciary duty must plead facts supporting an inference of breach, not simply a conclusion to that effect.").

Finally, the fiduciary duty claim is time-barred. As noted above, Plaintiffs were aware of the alleged rebate scheme no later than the "fourth quarter of 2001." *See, e.g.,* FAC ¶ 54. Moreover, the Southwest Laminates transaction took place in "March 2002" and the loom transactions referenced in the Amended Complaint took place in "March 2002" and "on or about April 19, 2002." *Id.* at ¶ 56. Thus, Plaintiffs' fiduciary claim is time-barred, as it was not asserted within the three-year statute of limitations applicable to fiduciary duty claims. *See* 10 Del. C. § 8106.

## CONCLUSION

Plaintiffs have no viable claims against Mr. McCallum. The four small, older transactions between Mr. McCallum and C&A do not involve any improper conduct, "fraud," or impropriety of any kind. Plaintiffs' untimely attempt to challenge these immaterial transactions is not supported by particularized factual allegations, but by conclusory assertions contradicted by either the Amended Complaint itself or the documents referenced therein. The claims against Mr. McCallum must be dismissed in their entirety, with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Kenneth J. Nachbar (No. 2067)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Tel.: 302.658.9200
Fax: 302.425.3013
Email: knachbar@mnat.com
*Attorneys for Defendant Elkin B. McCallum*

*Of Counsel:*
Richard M. Strassberg
Jeffrey A. Simes
Laurie L. Levin
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, New York 10022
Tel.: 212.813.8800
Fax: 212.355.3333
Email: jsimes@goodwinprocter.com

Dated: April 28, 2008

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on April 28, 2008 I electronically filed the

attached MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED

COMPLAINT OF DEFENDANT ELKIN B. MCCALLUM with the Clerk of the Court using

CM/ECF which will send notification of such filing to the following:

| | |
|---|---|
| Joseph A. Rosenthal<br>Carmella P. Keener<br>Rosenthal, Monhait & Goddess, P.A.<br>919 Market Street, Suite 1401<br>P.O. Box 1070<br>Wilmington, DE 19899<br>(302) 656-4433<br>Jrosenthal@rmgglaw.com<br>ckeener@rmgglaw.com | Michael M. Maimone<br>Joseph B. Cicero<br>Edwards Angell Palmer & Dodge LLP<br>919 North Market Street, 15th Floor<br>Wilmington, DE 19801<br>(302) 777-7770<br>Mmaimone@eapdlaw.com<br>jcicero@eapdlaw.com |
| Anne C. Foster<br>Robert J. Stearn, Jr.<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>(302) 651-7700<br>foster@rlf.com<br>stearn@rlf.com | Peter B. Ladig<br>Stephen B. Brauerman<br>The Bayard Firm<br>222 Delaware Avenue, Suite 900<br>P.O. Box 25130<br>Wilmington, DE 19899<br>(302) 655-5000<br>pladig@bayardfirm.com<br>sbrauerman@bayardfirm.com |
| Thomas P. Preston<br>Blank Rome LLP<br>1201 North Market Street<br>Suite 800<br>Wilmington, DE 19801-4226<br>(302) 425-6400<br>Preston-t@blankrome.com | Thomas G. Macauley<br>Zucerman Spaeder LLP<br>919 Market Street, Suite 1705<br>P.O. Box 1028<br>Wilmington, DE 19899<br>(302) 427-0400<br>tmacauley@zuckerman.com |

James L. Holzman
J. Clayton Athey
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE  19899
(302) 888-6500
jlholzman@prickett.com
jcathey@prickett.com

Robert S. Saunders
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE  19899
(302) 651-3000
rsaunders@skadden.com

Vernon R. Proctor
Proctor Heyman LLP
1116 West Street
Wilmington, DE  19801
(302) 472-7300
vproctor@proctorheyman.com

Kenneth J. Nachbar (#2067)
Morris, Nichols, Arsht & Tunnell, LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
knachbar@mnat.com