IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

COLLINS & AIKMAN CORPORATION and
COLLINS & AIKMAN PRODUCTS CO., as
Debtors in Possession,

Plaintiffs,

v.

DAVID A. STOCKMAN, J. MICHAEL
STEPP, BRYCE M. KOTH, DAVID R.
COSGROVE, PAUL C. BARNABA, ROBERT
A. KRAUSE, JOHN A. GALANTE,
CHARLES E. BECKER, ELKIN B.
MCCALLUM, THOMAS E. EVANS,
CYNTHIA HESS, DANIEL P. TREDWELL,
W. GERALD MCCONNELL, SAMUEL
VALENTI, III, HEARTLAND INDUSTRIAL
PARTNERS, L.P., HEARTLAND
INDUSTRIAL ASSOCIATES, L.L.C.,
HEARTLAND INDUSTRIAL GROUP, L.L.C.,
PRICEWATERHOUSECOOPERS LLP and
KPMG LLP,

Defendants.

C.A. No. 07-265-SLR-LPS

**OPENING BRIEF IN SUPPORT OF DEFENDANT
THOMAS E. EVANS' MOTION TO DISMISS**

OF COUNSEL:

MAYER BROWN LLP
Richard A. Spehr
Joseph De Simone
1675 Broadway
New York, New York 10019
(212) 506-2500

Dated:  April 28, 2008

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Christian Douglas Wright (#3554)
Andrew A. Lundgren (#4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6600
cwright@ycst.com

*Attorneys for Defendant Thomas E. Evans*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

NATURE AND STAGE OF THE PROCEEDING ....................................................... 3

SUMMARY OF ARGUMENT ................................................................................. 3

STATEMENT OF FACTS ...................................................................................... 5

    Generalized Allegations About the "Director and Officer Defendants" Occurring
    Prior to Evans' Resignation In August 2002 ....................................................... 5

    Allegations Occurring After August 2002 ........................................................... 7

ARGUMENT ........................................................................................................ 8

    I.    C&A'S 10b-5 CLAIM AGAINST EVANS MUST BE DISMISSED ................ 10

        A.    The Amended Complaint's Blanket Securities Fraud Accusations
             Violate The Particularity Requirement Of Rule 9(b) ............................. 11

        B.    C&A's 10b-5 Claim Also Must Be Dismissed Because It Does Not
             Plead Misrepresentation, Scienter, Reliance Or Loss ............................ 13

             1.    The Amended Complaint does not allege that Evans made
                 any misleading statement in connection with the 2004
                 securities transaction ............................................................ 14

             2.    Evans could not have acted with scienter with respect to a
                 statement published years after he resigned from C&A ............. 14

             3.    The Amended Complaint fails to allege that C&A was
                 ignorant of the falsity of its accounting statements, or that
                 C&A acted in reliance thereon ................................................. 15

             4.    C&A has pleaded an invalid theory of loss ................................ 16

    II.    C&A'S SECTION 14(a) CLAIM IS UNTIMELY, AND ALLEGES
        NEITHER INJURY NOR CAUSATION ........................................................... 19

        A.    As To Evans, This Claim Is Plainly Untimely ...................................... 20

B.     C&A Did Not Suffer A Cognizable Injury ................................................ 22

C.     If C&A Suffered An Injury, It Was Not Caused By The Proxy Statements .................................................................................... 23

D.     C&A Lacks Standing To Assert This Claim........................................... 25

III.    C&A'S STATE LAW CLAIMS FAIL UNDER RULES 9(b) AND 12(b)(6) ..................................................................................................... 27

A.     C&A's State-Law Claims Are Not Pleaded With Particularity.............. 28

B.     C&A's Unjust Enrichment Claim Must Be Dismissed Because C&A Has Adequate Remedies At Law, And Because Evans' Entitlement To The Compensation He Received Is A Matter Of Contract Law.......................................................................................... 32

      1.     C&A's unjust enrichment claim must be dismissed because adequate remedies exist at law for the Company's alleged injuries....................................................................................... 32

      2.     Evans' entitlement to his C&A compensation is properly the subject of contract law, not unjust enrichment ...................... 34

C.     The Amended Complaint Does Not State A Claim For Common-Law Fraud ............................................................................................ 35

      1.     The Amended Complaint fails to plead reliance.......................... 35

      2.     Any injury suffered by C&A was not proximately caused by the alleged misrepresentations ................................................ 36

CONCLUSION ....................................................................................................... 39

## TABLE OF AUTHORITIES

**Page**

**Cases**

*7547 Corporation v. Parker & Parsley,*
   38 F.3d 211 (5th Cir. 1994) ............................................................................................25

*Am. Mobile Comms., Inc. v. Nationwide Cellular Serv., Inc.,*
   No. 91 Civ. 3587 (LBS), 1992 WL 232058 (S.D.N.Y. Sept. 3, 1992).........................28

*Ash v. GAF Corp.,*
   723 F.2d 1090 (3d Cir. 1983)........................................................................................25

*Bakerman v. Sidney Frank Importing Co., Inc.,*
   No. Civ. A. 1844-N, 2006 WL 3927242 (Del. Ch. Oct. 16, 2006)...............................32

*Bell Atl. Corp. v. Twombly,*
   127 S. Ct. 1955 (2007)....................................................................................................9

*Blue Chip Stamps v. Manor Drug Stores,*
   421 U.S. 723 (1975)......................................................................................................10

*Borsellino v. Goldman Sachs Group, Inc.,*
   477 F.3d 502 (7th Cir. 2007) ....................................................................................9, 28

*Buckley v. O'Hanlon,*
   No. 04-955GMS, 2007 WL 956947 (D. Del. Mar. 28, 2007) ......................................28

*Caplin v. Marine Midland Grace Trust Co.,*
   406 U.S. 416 (1972)......................................................................................................11

*Ceres Partners v. GEL Assocs.,*
   918 F.2d 349 (2d Cir. 1990)..........................................................................................21

*Cort v. Ash,*
   422 U.S. 66 (1975)........................................................................................................25

*Crigger v. Fahnestock and Co., Inc.,*
   No. 01 Civ. 07819 (JFK), 2003 WL 22170607 (S.D.N.Y. Sept. 18, 2003)................. 33

*Diceon Elecs. Inc. v. Calvary Partners, L.P.,*
   772 F. Supp. 859 (D. Del. 1991)...............................................................................25, 26

*DiVittorio v. Equidyne Extractive Indus., Inc.,*
   822 F.2d 1242 (2d Cir. 1987).........................................................................................31

*Duphily v. Del. Elec. Co-op., Inc.*,
   662 A.2d 821 (Del. 1995) ................................................................................37

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ........................................................................................13

*General Electric Company by Levit v. Cathart*,
   980 F.2d 927 (3d Cir. 1992) .................................................................22, 23, 38

*In re Aetna Sec. Litig.*,
   34 F. Supp. 2d 935 (E.D. Pa. 1999) ...........................................................12, 29

*In re AOL Time Warner Sec. and "ERISA" Litig.*,
   381 F. Supp. 2d 192 (S.D.N.Y. 2004) .............................................................25

*In re Baan Sec. Litig.*,
   103 F. Supp. 2d 1 (D.D.C. 2000) .....................................................................31

*In re Bennett Funding Group, Inc.*,
   336 F.3d 94 (2d Cir. 2003) ..............................................................................11

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) .....................................................................10, 12

*In re CITX Corp., Inc.*,
   448 F.3d 672 (3d Cir. 2006) .................................................................17, 18, 19

*In re Digital Island Sec. Litig.*,
   223 F. Supp. 2d 546 (D. Del. 2002) .................................................................31

*In re Exxon Mobil Sec. Litig.*,
   387 F. Supp. 2d 407 (D.N.J. 2005) ..................................................................21

*In re Exxon Mobil Sec. Litig.*,
   500 F.3d 189 (3d Cir. 2007) ............................................................................21

*In re HealthSouth Corp. S'holders Litig.*,
   845 A.2d 1096 (Del. Ch. 2003) .......................................................................35

*In re Lupron Marketing and Sales Practices Litig.*,
   295 F. Supp. 2d 148 (D. Mass. 2003) ..............................................................33

*In re Radnor Holdings Corp.*,
   353 B.R. 820 (Bankr. D. Del. 2006) ..........................................................17, 18

*In re Rockefeller Ctr. Properties Inc. Sec. Litig.*,
  311 F.3d 198 (3d Cir. 2002)................................................................................9

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006).......................................................................*passim*

*In re Tyson Foods, Inc.*,
  919 A.2d 563 (Del. Ch. 2007)..........................................................................34

*In re Reliance Sec. Litig.*,
  135 F. Supp. 2d 480 (D. Del. 2001).................................................................. 20

*Int'l Jensen Inc. v. Emerson Radio Corp.*,
  Nos. 96 C 2816, 96 C 6902, 1997 WL 43229 (N.D. Ill. Jan. 24, 1997).....................26

*J.I. Case Co. v. Borak*,
  377 U.S. 426 (1964)...............................................................................19, 25

*Johnson v. Knorr*,
  477 F.3d 75 (3d Cir. 2007)..............................................................................39

*Kirtley v. Wadekar*,
  No. 05-5383 (JAG), 2006 WL 2482939 (D.N.J. Aug. 25, 2006) ...............................28

*Kolbeck v. LIT America, Inc.*,
  923 F. Supp. 557 (S.D.N.Y. 1996)....................................................................12

*Lum v. Bank of America*,
  361 F.3d 217 (3d Cir. 2004)...................................................................9, 11, 28

*MBIA Ins. Corp. v. Royal Indem. Co.*,
  221 F.R.D. 419 (D. Del. 2004) ..............................................................11, 29

*Metcap Sec. LLC v. Pearl Senior Care, Inc.*,
  No. Civ.A. 2129-VCN, 2007 WL 1498989 (Del. Ch. May 16, 2007).........................34

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  135 F.3d 266 (3d Cir. 1966).............................................................................15

*North Penn Transfer, Inc. v. Victaulic Co. of Am.*,
  859 F. Supp. 154 (E.D. Pa. 1994) .....................................................................21

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
  267 F.3d 340 (3d Cir. 2001).............................................................................17

*Phillips v. County of Allegheny,*
  515 F.3d 224 (3d Cir. 2008)............................................................................8

*Pinnacle Choice Inc. v. Silverstein,*
  No. 07-cv-1379 (DMC), 2007 WL 2212861 (D.N.J. July 31, 2007)............................28

*Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1237 (S.D. Fla. 2007) ...............................33

*Pryor v. Nat'l Collegiate Athletic Ass'n,*
  288 F.3d 548 (3d Cir. 2002)...........................................................................20

*Republic of Pan. v. Am. Tobacco Co.,*
  Nos. 05C-07-181-RRC, 05C-07-180-RRC, 2006 WL 1933740
  (Del. Super. June 23, 2006) ...........................................................................37

*Santa Fe v. Green,*
  430 U.S. 462 (1977)...................................................................................26

*Scattergood v. Perelman,*
  945 F.2d 618 (3d Cir. 1991)...........................................................................24

*SEC v. Yuen*, 221
  F.R.D. 631 (C.D. Cal. 2004)...........................................................................30

*Shapiro v. UJB Fin. Corp,*
  964 F.2d 272 (3d Cir. 1992)...........................................................................29

*Stephenson v. Capano Dev. Inc.,*
  462 A.2d 1069 (Del. 1983) ...........................................................................35

*Studebaker Corp. v. Gittlin,*
  360 F.2d 692 (2d Cir. 1966)...........................................................................26

*Tellabs, Inc. Makor Issues & Rights, Ltd.,*
  127 S. Ct. 2499 (2007) ............................................................................ 14-15

*Total Care Physicians, P.A. v. O'Hara,*
  No. Civ. A. 99C-11-201-JRS, 2002 WL 31667901 (Del. Super. Oct. 29, 2002) ............32, 33

*Trenwick Am. Litig. Trust v. Ernst & Young, LLP,*
  906 A.2d 168 (Del. Ch. 2006)..........................................................16, 30, 35, 36

*Virginia Bankshares, Inc. v. Sandberg,*
  501 U.S. 1083 (1991)...............................................................................23, 24, 26

*Virginia M. Damon Trust v. North Country Fin. Corp.*,
  325 F. Supp. 2d 817 (W.D. Mich. 2004) ................................................................20

*Weiner v. Quaker Oats Co.*,
  129 F.3d 310 (3d Cir. 1997).........................................................................29, 30

*Wilmington Country Club v. Cowee*,
  747 A.2d 1087 (Del. 2000) ........................................................................37

*Winer Family Trust v. Queen*,
  503 F.3d 319 (3d Cir. 2007).........................................................................13, 14

*Wood v. Coastal States Gas Corp.*,
  401 A.2d 932 (Del. 1979) ...........................................................................34

## Statutes

8 *Del. C.* § 216(2) (2007)................................................................................24

8 *Del. C.* § 216(3) (2007)................................................................................24

11 U.S.C. § 108(a) .........................................................................................21

15 U.S.C. § 78u-4(b)(2)................................................................................10, 14

17 C.F.R. § 240.14a-9.....................................................................................19

28 U.S.C. § 1367(c) ........................................................................................39

Fed. R. Civ. P. 9(b) . ...............................................................................*passim*

Fed. R. Civ. P. 11(b)(3) ..................................................................................31

Fed. R. Civ. P. 12(b)(6)...............................................................................*passim*

## Other Authorities

37 AM. JUR. 2D *Fraud and Deceit* § 280 (2007) ........................................................37

L. Hazen, THE LAW OF SECURITIES REGULATION, § 10.3 (5th ed. 2007)..........................25

S. Willet, *The Shallows of Deepening Insolvency*,
  60 BUS. LAW 549 (2005) ............................................................................17, 18

## PRELIMINARY STATEMENT

Thomas Evans resigned as Chairman of the Board and CEO of Collins & Aikman in the summer of 2002 and since that time has had no association with the Company. Now, more than five years after his departure, plaintiffs Collins & Aikman Corporation and Collins & Aikman Products Co. (collectively, "C&A" or "the Company") have named Evans as a defendant in this highly unusual suit – one which is marked by at least three distinct and ultimately fatal defects.

The first and most glaring defect is that Evans has been forced to defend this suit at all. Just as in the original pleading, Evans' name barely appears in the Amended Complaint, gracing only the caption, a sentence incorrectly identifying his past corporate titles, and a sentence identifying him as a defendant. Beyond that, there is *nothing*. There is not one word alleging that Evans participated in any unlawful act. There is not a word concerning Evans' alleged scienter. Virtually all of the events alleged in the Amended Complaint occurred long after Evans left the Company. And every one of these allegedly injurious acts occurred after the defendants associated with the Heartland entities obtained what C&A describes as "dominion and control" over the Company's affairs. Given these asserted facts, there is no basis for any claim against Evans.

Even if C&A had something to say about Evans' conduct, two additional failings would require the dismissal of this action. The first is the sharp disconnect between the allegations in the body of the Amended Complaint and the claims for relief ultimately asserted against Evans and the other Director and Officer Defendants: the factual allegations assert that these defendants engaged in a scheme to defraud the *creditors* of the now-bankrupt C&A by presenting falsified accounting statements to the outside world; but the claims for relief allege that C&A itself was somehow misled and damaged by its own false statements.

A second, closely related defect lies in the asserted injury. C&A alleges that it was injured when the defendants' misleading statements supposedly caused the Company to borrow money during a liquidity crunch that the Company was later unable to repay. This is absurd. The injured parties, if any, in this story were the *creditors*, who may or may not have lost funds they advanced. It certainly was not C&A, which benefited from the opportunity to employ those funds in its ultimately unsuccessful turnaround effort.

C&A attempts to plead around the first two of these fatal defects by asserting that the alleged misrepresentations and omissions of its former managers caused the Company to obtain financing and capital it would not otherwise have obtained, thereby prolonging the Company's existence. This theory of "deepening insolvency," however, has been flatly rejected by the Third Circuit (and the Delaware state courts) – a fact that C&A has underscored by scrambling to replace the term "deepening insolvency" in its amended pleading with different but logically equivalent language, such as the defendants' causing C&A to take on "unwieldy debt" (Amend. Compl. ¶ 204) that "prevented the Company from being repaired and resulted in massive losses in the value and worth of the Company." *Id.* ¶ 89. But by any name, the result is the same: C&A has not suffered a cognizable injury.

Together, these defects doom all five of the claims asserted against Evans, each of which either fails to comply with the heightened pleading requirement imposed by Rule 9(b), is time-barred, fails to state a claim upon which relief may be granted, or fails for lack of standing. In fact, most of the claims against Evans suffer from more than one of these shortcomings. If this deeply flawed action is to go forward at all, it must proceed without Evans, against whom Collins & Aikman has not presented a single viable claim.

## NATURE AND STAGE OF THE PROCEEDING

Acting as debtors in possession, C&A filed the original complaint in this suit on May 16, 2007 (D.I. 1). After the defendants submitted their motions to dismiss that complaint, the parties entered into a stipulation, later approved by the Court, permitting C&A to file the amended complaint submitted on January 28, 2008 (the "Amended Complaint") (D.I. 90). The Amended Complaint accuses many of C&A's former Directors and Officers, the Company's largest shareholder, and the Company's outside accountants of having caused and deepened C&A's insolvency through their combined fraud and negligence. It further alleges that each of the Director and Officer Defendants (defined to include Evans) violated the federal securities laws by committing securities fraud and causing the release of materially misleading proxy statements to shareholders. And it additionally alleges that each of the Director and Officer Defendants is liable to C&A under state law for breach of fiduciary duty, unjust enrichment and common-law fraud. Evans now moves to dismiss all of the claims against him.

## SUMMARY OF ARGUMENT

1.    C&A's securities fraud claim against Evans, alleged under Section 10(b) of the Exchange Act, must be dismissed because:

(a)    In violation of Fed. R. Civ. P. 9(b), which requires all "averments of fraud" to be pleaded with particularity, the Amended Complaint does not contain any detail whatsoever about Evans' role in the publication of the alleged misstatements – an omission that is particularly damning here because that event that occurred two years after Evans left C&A.

(b)    The Amended Complaint does not allege that Evans made or approved any misleading statement made in connection with the sole securities transaction identified in the

Amended Complaint – a 2004 sale of corporate bonds. This omission is hardly surprising, as Evans left the Company two years before this sale occurred.

(c) The Amended Complaint fails to allege transaction causation for two reasons. First, it fails to allege any facts that support its conclusory assertion that misstatements were made *to* C&A; the only purported misstatements identified in the Amended Complaint were made *by* C&A to outside investors. Second, the Amended Complaint fails to plead facts from which C&A's justifiable reliance on the alleged misstatements can be inferred because it alleges that these alleged misstatements fooled the very people who created them – C&A's managers.

(d) C&A's loss theory, which alleges that the Company was harmed when the Director and Officer Defendants caused C&A to take on additional debt, thereby deepening its insolvency, fails as a matter of law and of logic. As controlling precedent confirms, this is simply not a valid theory of injury. And even if it were, it would not be valid as to Evans, who had no role in the Company's decision to engage in the 2004 bond sale.

2.    C&A's claim against Evans under Section 14(a) of the Exchange Act fails because:

(a)    This claim accrued as to Evans on April 25, 2002, and is therefore time-barred;

(b)    The Third Circuit has squarely rejected C&A's loss theory;

(c)    The allegedly misleading proxy statement did not cause C&A's alleged injury;

(d)    C&A lacks standing to assert that it was injured by its own false publications.

3.    Each of C&A's state-law claims against Evans must be dismissed because:

(a)    All three of these claims (alleging breach of fiduciary duty, unjust enrichment and common-law fraud, respectively) sound in fraud and therefore must comply with Rule 9(b)'s heightened pleading requirements. Because C&A does not allege any facts about Evans' purported participation in the underlying accounting schemes, and because the necessary

predicates for group pleading have not been and cannot be met by C&A, Rule 9(b) requires dismissal.

(b)  C&A's unjust enrichment claim against Evans also must be dismissed because: (i) C&A has failed to allege that it lacks an adequate remedy at law; and (ii) Evans' entitlement to the purportedly unjust benefit he received – his compensation – is a matter of contract law.

(c)  C&A's common-law fraud claim against Evans must be dismissed because C&A has failed to plead facts from which its reliance on the alleged misstatements can be inferred.

## STATEMENT OF FACTS

C&A alleges that Evans "served as CEO and President of Collins & Aikman Corporation from April 1999 until he resigned those positions in August 2002." Amend. Compl. ¶ 16 (D.I. 90). This is the only factual allegation in the Amended Complaint that pertains to Evans specifically.[1]

### Generalized Allegations About the "Director and Officer Defendants" Occurring Prior to Evans' Resignation In August 2002

The Amended Complaint identifies Evans as one of fourteen Director and Officer Defendants. *Id.* ¶¶ 7-21. With the exception of defendant J. Michael Stepp, all of the other Director and Officer Defendants adopted their positions at C&A in or after February 2001 (*id.* ¶¶ 7-15, 17-20), *i.e.*, after the Heartland entities acquired a controlling interest in C&A. *Id.* ¶ 45. Each of the other Director and Officer Defendants continued on in one or more corporate roles at C&A long after Evans left the Company in August 2002. *Id.* ¶¶ 7-15, 17-20.

---

[1]  For the sake of accuracy, Evans respectfully advises the Court that he actually served as C&A's CEO and Chairman of the Board until he resigned those positions in June 2002; at no time was Evans the Company's President. *See* Collins & Aikman 2002 Proxy Statement, Apr. 25, 2002, at 19 (Wright Decl., Ex. 1). While Evans, in fact, left C&A in June 2002, Evans will accept C&A's allegation that he resigned in August 2002 as true, solely for purposes of this motion, along with the Amended Complaint's remaining well-pleaded allegations.

C&A alleges that the corporate positions held by each of the Director and Officer Defendants made them "privy to confidential and proprietary information concerning [C&A] and its operations, finances and financial condition." *Id.* ¶ 25. C&A further alleges that each of the Director and Officer Defendants therefore knew that certain "true facts" concerning C&A's financial condition and accounting practices "had not been disclosed to and were being concealed from its shareholders, its creditors, vendors, customers, employees and the public." *Id.* In particular, C&A complains that, in order to disguise the negative effects that developments in the automotive industry were having on the company's bottom line and future prospects, "Defendants employed a variety of fraudulent schemes designed to artificially inflate the Company's reported financial results." *Id.* ¶ 39. C&A alleges that an additional purpose of these schemes was to "avoid triggering debt covenants and enable Collins & Aikman to borrow additional funds" by fraudulently inducing the Company's creditors to lend. *Id.*

These alleged accounting schemes took a variety of forms. For example, C&A alleges that from the fourth quarter of 2001 to the first quarter of 2003, the Company "engaged in a series of fraudulent 'round-trip' transactions" with Joan Fabrics (*id.* ¶¶ 53, 55) – fraudulent because they were recorded by C&A as supplier rebates for past purchases when they really were short-term loans. *Id.* ¶¶ 54, 56, 57. C&A claims that defendants "Stockman, Stepp and McCallum" were responsible for this scheme, (*id.* ¶ 55) which allegedly inflated C&A's financial results by $14.9 million between 2001 and 2003. *Id.* ¶ 57.

C&A also alleges that in early 2002, the Company began to engage in a practice that the Amended Complaint calls the "Rebate Scheme." *Id.* ¶ 58. This alleged scheme – in which the accused participants are defendants Stockman, Stepp, Cosgrove, Barnaba and Galante – consisted of "improperly recognizing rebates from the Company's suppliers before the rebates

had actually been earned by the Company in order to artificially increase [C&A's] reported income." *Id.* ¶¶ 58, 60-69.

Finally, C&A alleges that beginning with the fourth quarter of 2001, "Defendants caused [C&A] to file false and misleading quarterly and annual reports with the SEC and to issue materially false and misleading statements to investors concerning the Company's financial performance, operations and prospects." *Id.* ¶ 92. C&A contends that these reports – its very own corporate statements – were false and misleading because "they contained financial results which were artificially inflated by the improper accounting practices" described above. *Id.* The Company further alleges that each of the Director and Officer Defendants – in ways unspecified – "participated in the issuance and/or review of false and/or misleading statements, including the preparation of false and/or misleading press releases, SEC filings and reports to [C&A] shareholders and/or creditors." *Id.* ¶ 25.

## Allegations Occurring After August 2002

Many allegations of wrongdoing described in the Amended Complaint occurred long after Evans left C&A in August 2002. For example, C&A claims that:

- In August 2003 and March 2005, defendants Stockman, Stepp, McCallum and unspecified "others" took steps to impede an internal investigation into various C&A transactions and accounting decisions. *Id.* ¶¶ 95-101.

- In August 2004 – two years after Evans' resignation – "Stockman, Stepp and Cosgrove" caused C&A to prepare and disseminate an Offering Memorandum containing false and misleading statements in connection with C&A's sale of approximately $415 million in senior subordinated bonds. *Id.* ¶ 71.

- In or around January 2005, "Stockman, and others acting at his direction" engaged in a scheme to defraud General Electric Capital Corporation ("GECC") by including tens of millions of dollars of ineligible receivables in the borrowing base, thereby fraudulently reducing the amount of money the Company then owed to GECC. *Id.* ¶¶ 74-79.

- On March 17, 2005, the Company issued a press release "partially drafted by Stockman and Galante" announcing that it was delaying the issuance of its financial results for

fiscal year 2004 while it conducted an internal review of its rebate accounting. *Id.* ¶ 80. According to the Amended Complaint, this press release was false because it materially misstated the amount of liquidity that the Company then possessed. *Id.* ¶ 81. The Amended Complaint likewise alleges that a second press release, issued on April 4, 2005, similarly contained false liquidity figures, and therefore was also materially misleading. *Id.* ¶ 88.

- In early April 2005, "Stockman and others" made further false and misleading statements to a lender about the Company's liquidity, capital expenditures, and prior and projected financial results. *Id.* ¶ 87.

C&A does not suggest that Evans had anything do with any of these alleged instances of misconduct. This silence is hardly surprising. As C&A concedes, Evans was long gone. *Id.* ¶ 16.

On May 12, 2005, Stockman resigned his positions at C&A. *Id.* ¶ 90. Five days later, on May 17, 2005, C&A and its subsidiaries filed for bankruptcy. *Id.* ¶ 91.

C&A now asserts five claims against Evans. Count I charges that Evans committed securities fraud in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder in connection with a sale of securities by C&A in August 2004 – two years after Evans resigned from C&A. *Id.* ¶¶ 181-85. Count II alleges that Evans violated Section 14(a) of the Exchange Act and Rule 14a-9 thereunder by making misleading statements in proxy materials sent to C&A's shareholders in 2002 (during Evans' tenure), 2003 and 2004 (after Evans left). *Id.* ¶¶ 186-91. Count III alleges that Evans breached his fiduciary duties to C&A. *Id.* ¶¶ 192-95. Count IV asserts that Evans was unjustly enriched by his allegedly unlawful conduct. *Id.* ¶¶ 196-98. Finally, Count V alleges that Evans committed common-law fraud. *Id.* ¶¶ 199-204.

## ARGUMENT

The Court should dismiss each of the claims asserted against Evans pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). In reviewing a motion to dismiss, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the

plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotation marks omitted). This standard obligates a plaintiff to "provide the grounds of his entitlement to relief," and supply factual allegations strong enough to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Accordingly, "courts are not required to credit bald assertions or legal complaints improperly alleged in the complaint." *In re Rockefeller Ctr. Properties Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

Where applicable, Rule 9(b) imposes additional pleading obligations on plaintiffs, mandating that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be pleaded with particularity." Fed. R. Civ. P. 9(b). This particularity requirement applies to causes of action directly alleging fraud, and also applies to non-fraud causes of action that, as pleaded, sound in fraud. *See, e.g.*, *Lum v. Bank of America*, 361 F.3d 217, 220 (3d Cir. 2004) (measuring antitrust claim under Rule 9(b)'s requirements even though "antitrust claims generally are not subject to the heightened pleading requirements of Rule 9(b)" because "[f]raud is the basis for the antitrust violation alleged here"); *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) ("Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations. A claim that 'sounds in fraud' – in other words, one that is premised upon a course of fraudulent conduct – can implicate Rule 9(b)'s heightened pleading requirements.").

The Third Circuit has declared that Rule 9(b) is to be "rigorously applied" in securities fraud cases. *In re Rockefeller Ctr.*, 311 F.3d at 217. The courts of this Circuit therefore demand, "at a minimum, that plaintiffs support their allegations . . . with all of the essential factual

background that would accompany 'the first paragraph of any newspaper story' – that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (citations omitted). And with good reason: "Rule 9(b)'s heightened pleading standard gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) (citations omitted). With respect to C&A's § 10(b) claim, the Private Securities Litigation Reform Act ("PSLRA") adds a further requirement, demanding that C&A "state with particularity facts giving rise to a strong inference that the defendant acted with the required [scienter]." 15 U.S.C. § 78u-4(b)(2). Measured against these appropriately demanding standards, each of C&A's claims against Evans falls far short of the mark and, accordingly, must be dismissed.

## I.   C&A's 10b-5 CLAIM AGAINST EVANS MUST BE DISMISSED

C&A's claim under Rule 10b-5 is exceedingly limited, and, at least as to Evans, is hopelessly misguided. C&A's winding 88-page Amended Complaint attributes various allegedly false and misleading statements to various defendants – none specifically to Evans. Moreover, the Amended Complaint recounts only one securities transaction in which C&A participated – its August 2004 bond issue. Amend. Compl. ¶¶ 71, 93, 184. Because it is firmly established that the implied private right of action created by Rule 10b-5 reaches only misstatements or omissions made "in connection" with an actual purchase or sale of securities, only those misstatements alleged to have been made in connection with this 2004 transaction conceivably could support C&A's securities fraud claim. *See Blue Chip Stamps v. Manor Drug Stores*, 421

U.S. 723 (1975). So focused, it is immediately evident that C&A's 10b-5 claim against Evans is fatally flawed for at least three reasons.

First, displaying no regard for the particularity that Rule 9(b) and the law of this Circuit demand of plaintiffs pleading fraud, the Amended Complaint advances only the vague accusation that Evans is one of a number of culpable "Director and Officer Defendants," nowhere specifying what *Evans* allegedly has done wrong. Second, the Amended Complaint fails to satisfy Rules 9(b) and 12(b)(6) because it does not identify *any* misstatement or omission that was made *to C&A* – rather, the Amended Complaint describes alleged falsehoods that were conveyed to prospective securities purchasers. But of course, C&A lacks standing to assert the alleged injuries of its creditors in this proceeding. *See Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 434 (1972); *In re Bennett Funding Group, Inc.*, 336 F.3d 94 (2d Cir. 2003). Third, if any misstatement was made to C&A in connection with its 2004 bond sale, it was not made by *Evans*, who left C&A's management two full years before this allegedly injurious transaction occurred; in other words, Evans made no actionable misstatement, and did nothing that could be the proximate cause of C&A's purported injury. For each of these reasons, the securities fraud claim against Evans must be dismissed.

### A. The Amended Complaint's Blanket Securities Fraud Accusations Violate The Particularity Requirement Of Rule 9(b)

Plaintiffs are not permitted to plead fraud by association. Rather, "[w]hen alleging fraudulent behavior against a group of defendants, a plaintiff is required to separately plead the fraudulent acts of each defendant to satisfy Rule 9(b). Collective allegations of fraud against a group of defendants generally do not satisfy Rule 9(b) because the Rule is intended to ensure that each defendant has adequate notice of the charges against it, thereby permitting each defendant to mount a defense and not just deny that they did anything wrong." *MBIA Ins. Corp. v. Royal*

*Indem. Co.*, 221 F.R.D. 419, 421 (D. Del. 2004). *See also Lum*, 361 F.3d at 229 (affirming dismissal of allegations that, among other things, failed to "set out who sent what information to whom or when it was sent"); *Kolbeck v. LIT America, Inc.*, 923 F. Supp. 557, 569 (S.D.N.Y. 1996) ("In a case involving multiple defendants, Rule 9(b) mandates that the complaint inform each defendant of his alleged role in the deception.").

The Amended Complaint openly violates this simple pleading rule, which serves the vital purpose of requiring plaintiffs to serve notice of their factual basis for raising accusations that threaten to sully a defendant's reputation for honesty and fair dealing. *See In re Burlington*, 114 F.3d at 1418. The Amended Complaint does not allege that *Evans* was involved in *any* way with the allegedly fraudulent securities transaction that occurred in August 2004. Nor is it clear how C&A could do so. As C&A concedes, Evans resigned from his positions at C&A no later than August 2002. Amend. Compl. ¶ 16. It defies logic and common sense that Evans could have been involved in the preparation of the offering materials that C&A presented *two years later* to potential bond purchasers. But the Amended Complaint offers no hint of how such an improbable event could have come to pass, and therefore leaves the answer to the crucial question of why this securities fraud charge has been leveled against Evans purely to the imagination. Rule 9(b) plainly requires more. *See, e.g., In re Suprema Specialties*, 438 F.3d at 276-77.

Nor can the so-called "group pleading doctrine" excuse C&A's obvious failure to plead its securities fraud claim against Evans with even the slightest hint of specificity. In limited circumstances, that doctrine had been held to relax Rule 9(b)'s strictures and allow plaintiffs to allege that all of a corporation's officers and directors are responsible for the publication of a purportedly misleading statement. *See, e.g., In re Aetna Sec. Litig.*, 34 F. Supp. 2d 935, 949

(E.D. Pa. 1999). But the group pleading doctrine is no more: As the Third Circuit recently confirmed, "the group pleading doctrine is no longer viable in private securities actions after the enactment of the PSLRA." *Winer Family Trust v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007). And this holding is expressly applicable to C&A's attempt to attribute alleged misrepresentations to a group of defendants. *Id.* at 337 n.6. Accordingly, C&A's pleading burden here is clear. It must plead "particular facts associating [Evans] to the alleged fraud." *Id.* at 335. It is equally clear that this burden has not been met – no factual allegations link Evans to the alleged securities fraud that took place two years after he resigned from C&A. Rule 9(b) and the PSLRA therefore require the dismissal of the Company's 10b-5 claim against Evans.

### B.    C&A's 10b-5 Claim Also Must Be Dismissed Because It Does Not Plead Misrepresentation, Scienter, Reliance Or Loss

In order state a claim under Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation (or omission); (2) scienter, *i.e.*, a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as 'transaction causation'; (5) economic loss; and (6) 'loss causation,' *i.e.*, a causal connection between the material misrepresentation and the loss." *In re Suprema Specialties*, 438 F.3d at 275 (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005)) (citations omitted). C&A's claim fails to plead that Evans made any misrepresentation, fails to plead facts supporting a "strong inference" (or indeed any inference) that Evans acted with scienter, fails to allege facts from which C&A's reliance on the alleged misrepresentations can be inferred, and fails to plead economic loss. These flaws require the dismissal of this claim.[2]

---

[2]    *See In re Suprema Specialties*, 438 F.3d at 276-77 ("As applied to Section 10(b) claims, Rule 9(b) requires a plaintiff to plead (1) a specific false representation [or omission] of material

1.    The Amended Complaint does not allege that Evans made any misleading
statement in connection with the 2004 securities transaction

It bears repeating that Evans resigned his corporate positions at C&A in August of 2002

(Amend. Compl. ¶ 16) – over two years before the only securities transaction alleged in the

Amended Complaint occurred – and that C&A does not allege that Evans had any involvement

in any aspect of the Company's management at any time thereafter.  Accordingly, even if group

pleading were still permissible in private securities actions, Rules 9(b) and 12(b)(6) would still

require the dismissal of this claim against Evans because the Amended Complaint simply fails to

assert that Evans made or approved any relevant statement, and thus makes no attempt to satisfy

this essential element of a Rule 10b-5 claim.  *See In re Suprema Specialties*, 438 F.3d at 275.

2.    Evans could not have acted with scienter with respect to a statement
published years after he resigned from C&A

The PSLRA requires plaintiffs asserting securities fraud claims to "state with

particularity facts giving rise to a strong inference that the defendant acted with the required state

of mind."  15 U.S.C. § 78u-4(b)(2).  This requirement cannot be established through group

pleading, *see Winer*, 503 F.3d at 335-37; rather, "[e]ach untrue statement or omission must be set

forth with particularity as to 'the defendant' and scienter must be pleaded in regards to 'each act

or omission' sufficient to support a strong inference that 'the defendant' acted with the required

state of mind." *Id.* at 335.  As the Supreme Court has emphasized, full meaning must be given to

the word "strong."  Thus, in considering whether the "strong inference" standard has been

satisfied, courts must consider "plausible nonculpable explanations for the defendants conduct,"

and must dismiss a 10(b) claim against a defendant unless "a reasonable person would deem the

inference of scienter cogent and at least as compelling as any opposing inference one could draw

---

fact; (2) knowledge *by the person who made it* of its falsity; (3) *ignorance of its falsity* by the
person to whom it was made; (4) the *intention* that it should be acted upon; and (5) that the
plaintiff acted upon it to his *damage*.") (emphasis added).

from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007).

Under these standards, the Amended Complaint does not come close to alleging that Evans acted with scienter. The *only* fact asserted about Evans is that he held corporate offices at C&A until two years *before* the alleged misrepresentations concerning the 2004 bond offering were made. *Compare* Amend. Compl. ¶ 16; ¶ 71. This fact alone does not create any inference that Evans acted with scienter. On the contrary, the *only* plausible inference that can be drawn from this allegation is that Evans had nothing to do with these purported misrepresentations and harbored no intent at all concerning these statements – let alone the deliberate or reckless mindset necessary to support a securities fraud claim. *See, e.g., Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 272-73 (3d Cir. 1998). The PSLRA requires the dismissal of this groundless claim.

3.    The Amended Complaint fails to allege that C&A was ignorant of the falsity of its accounting statements, or that C&A acted in reliance thereon

C&A's attempt to plead reliance and, accordingly, "transaction causation" is nonsensical. The Amended Complaint alleges that C&A "sold securities in reliance on Director and Officer Defendants' materially false and misleading statements. . . ." Amend. Compl. ¶ 184. But the Amended Complaint also alleges that C&A was controlled by these same Director and Officer Defendants (*id.* ¶ 30), who purportedly *knew* that C&A's financial statements were false and misleading (*id.* ¶¶ 25, 182). C&A thus alleges that the false statements of the Director and Officer Defendants misled the Director and Officer Defendants, and thereby caused the same Director and Officer Defendants to authorize a sale of C&A's securities in August 2004. This allegation makes no sense: How could the alleged schemers have been misled by their own scheme? The Amended Complaint does not even hint at an answer to this fundamental question,

thereby demonstrating the implausibility of C&A's conclusory assertion that it relied on the Director and Officer Defendants' statements in arriving at its decision to sell securities. *See Trenwick Am. Litig. Trust v. Ernst & Young, LLP*, 906 A.2d 168, 211-12 (Del. Ch. 2006), *aff'd*, 931 A.2d 438 (Del. 2007) ("By the Litigation Trust's own admission, [debtor's] board of directors knew the true facts about all the issues said to have been misrepresented. As a result, [the debtor] - as an entity - did not rely to its detriment on any of the misstatements, despite the cursory statement in the complaint that the 'plaintiff' relied on the false statements to its detriment.").

This illogic highlights two further flaws in C&A's attempt to plead securities fraud: the Amended Complaint fails to allege that the alleged misstatements were made *to* C&A, and fails to allege that C&A was ignorant of the falsity of these statements. *See In re Suprema Specialties*, 438 F.3d at 276-77 (holding that Section 10(b) plaintiffs must allege with specificity, *inter alia*, "ignorance of [the statement's] falsity by the person to whom it was made"). As to the first, the Amended Complaint actually asserts that the misstatements were made *by* C&A: "Defendants caused Collins & Aikman to circulate [the allegedly misleading] offering memorandum" to investors. Amend. Compl. ¶ 93. And as to C&A's knowledge of the offering memorandum's falsity, the Amended Complaint is mute. The Amended Complaint thus offers only silence and contradiction where Rules 12(b)(6) and 9(b) require allegations of fact and particularity. These deficiencies, too, require the dismissal of this 10b-5 claim.

4.    C&A has pleaded an invalid theory of loss

According to the Amended Complaint, C&A suffered a loss when, facing a "liquidity crisis," (Amend. Compl. ¶ 73) its management decided to seek a capital infusion from the securities markets by issuing bonds (*id.* ¶ 184) and thereby "increased the Company's debt load

and prolonged the life of the already insolvent company." *Id.* On this rationale, individuals and business entities suffer a "loss" when they obtain a mortgage, finance a car purchase, take out a student loan, or borrow funds to make capital improvements in a small business. But as logic and ordinary experience teach, a loan is not, in and of itself, a loss – the borrower is not automatically poorer for having accepted the lender's money. Rather, at the moment the loan closes, the borrower is exactly as rich or poor as he was before: the transaction "increases liabilities (the amount of the loan) and assets (the cash provided by the loan) in the same amount." *In re Radnor Holdings Corp.*, 353 B.R. 820, 842 (Bankr. D. Del. 2006). As one commentator has explained, this is no less true of an insolvent borrower than of any other: "the fresh cash equals and cancels out the fresh debt, and the insolvency stands as it did before." S. Willett, *The Shallows of Deepening Insolvency*, 60 BUS. LAW 549, 553 (2005). If a loss comes at all, it comes only later, when the borrower fails to make productive use of the cash supplied by the loan. *See id.* at 575 (explaining that "[l]oans do not deepen insolvency. Although improvident uses of firm assets . . . may cause harm, the borrower is responsible for the uses to which credit is put.").

This common-sense principle – although ignored in the Amended Complaint – has been strongly endorsed by the Third Circuit. In *In re CITX Corp., Inc.*, the Third Circuit considered a Chapter 7 Trustee's claim that the debtor's accountant was liable for professional malpractice because its incautious audit reports had permitted the debtor to continue to raise equity from new investors. 448 F.3d 672, 677 (3d Cir. 2006). The Court sharply rejected this loss theory. It first clarified that the Court's earlier opinion in *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340 (3d Cir. 2001), had "never held that [deepening insolvency] was a valid theory of damages for an independent cause of action," and disavowed any implication in

*Lafferty* that "deepening insolvency would be a valid theory of damages for any other cause of action, such as fraud." *CITX Corp.*, 448 F.3d at 677 and n.8.[3]    The Court then went on to explain why the new equity obtained by the debtor had not harmed the company:

> Assuming for the sake of argument that [defendant's] financial statements allowed [the debtor] to raise over $1,000,000, that did nothing to "deepen" [the debtor's] insolvency. It did the opposite. Before the equity infusion, [debtor] was $2,000,000 in the red. . . . With the added $1,000,000 investment, it was thereby insolvent only $1,000,000. Insolvency decreased rather than deepened. . . . The crux, then, is the claim that the $1,000,000 equity investment allowed [debtor] to exist long enough for its management to incur millions more in debt. But that looks at the issue through hindsight bias.  As noted, the equity investment was hardly harmful to [debtor].  Its management surely misused the opportunity created by that investment; that was unfortunate. But they could have instead used that opportunity to turn the company around and transform it into a profitable business. They did not, and therein lies the harm to [debtor].

*Id.* at 677-78 (citing with approval S. Willet, *The Shallows of Deepening Insolvency*, 60 BUS. LAW at 552-57).

The same principles require the rejection of C&A's theory that the corporation suffered a loss when it borrowed money from outside investors.  While C&A's 2004 bond sale did not lessen C&A's alleged insolvency, neither did it deepen it; C&A was exactly as rich or poor as it was before. *See In re Radnor Holdings*, 353 B.R. at 842.  The crux of C&A's claim, then, must be that by raising money through the bond sale, C&A gained the ability to pursue other business decisions that turned out to be unwise.  The Amended Complaint concedes as much, asserting that the debt issue "precluded the Company from being repaired by providing it with funds *it would* rapidly lose and *be unable* to repay due to the huge hidden operating losses it already had incurred and was continuing to incur."  Amend. Compl. ¶ 71 (emphasis added).  But for precisely the reasons explained by the *CITX* Court, this allegation fails to state a claim that C&A sustained an injury when it borrowed funds: "[T]hat looks at the issue through hindsight bias . . .

---

[3]     Judge Fuentes, who authored *Lafferty*, was also member of the *CITX* panel and joined the *CITX* opinion without reservation.

[defendant's] management surely misused the opportunity created by that [loan]; that was unfortunate. But they could have instead used that opportunity to turn the company around and transform it into a profitable business. They did not, and therein lies the harm to [defendant]." 448 F.3d at 678. Because the Amended Complaint therefore does not adequately link the purported misstatements in the 2004 Offering Memorandum to a cognizable harm, C&A's 10b-5 claim must be dismissed.

There is an even more basic reason why this loss causation argument fails as to Evans: Evans resigned his corporate positions in August 2002 (Amend. Compl. ¶ 16) and therefore had nothing to do with C&A's August 2004 decision to issue new corporate debt. By its silence on this point, C&A concedes as much. It necessarily follows that *Evans* did not cause the injury that purportedly ensued when C&A's 2004 management team "sold securities and used the proceeds to prop up and sustain" C&A. *Id.* ¶ 184. Evans did not make this decision, and is not responsible for its result.

## II.    C&A'S SECTION 14(a) CLAIM IS UNTIMELY, AND ALLEGES NEITHER INJURY NOR CAUSATION

C&A next claims that Evans is liable to the Company under Section 14(a) of the Exchange Act and Rule 14a-9 thereunder because the Company's 2002, 2003 and 2004 proxy statements omitted material facts, and thus were misleading to its shareholders.[4] This claim fails against Evans for four reasons. First, Section 14(a) claims arising out of the 2002 Proxy Statement are time-barred, and Evans – again by virtue of his 2002 resignation date – cannot be

---

[4]    Rule 14a-9 provides, in relevant part, that "[n]o solicitation . . . shall be made by means of any proxy statement . . . containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9(a). While Rule 14a-9 does not expressly grant a right of action to private plaintiffs, courts have interpreted the Rule to confer an implied right of action on certain plaintiffs. *See J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964).

held liable for the purported omissions in the 2003 and 2004 proxy statements. Second, the attenuated loss theory asserted by the Amended Complaint has been squarely rejected by the Third Circuit. Third, because investors who collectively owned almost 85% of C&A's shares committed to vote in favor of the Company's proposals before the 2002 Proxy Statement was released, C&A cannot show in any event that its purported injury was caused by the allegedly misleading statements contained in that document. Finally, C&A lacks standing to bring a claim under Section 14(a) complaining that its own proxy statements were misleading. In short, this claim is meritless.

### A.    As To Evans, This Claim Is Plainly Untimely

Thomas Evans resigned his positions as President and CEO of C&A in August 2002 (*see* Amend. Compl. ¶ 16), and therefore had no obligation and no opportunity to ensure the accuracy of the 2003 and 2004 Proxy Statements about which C&A now complains. *See Virginia M. Damon Trust v. North Country Fin. Corp.*, 325 F. Supp. 2d 817, 824 (W.D. Mich. 2004) (holding that directors who were not members of the board when allegedly misleading proxy statements were made could not be held liable under Rule 14a-9); *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 512 (D. Del. 2001) (holding that attribution of misstatements or omissions is appropriate as to directors who *approved* the Proxy Statements). That leaves only the 2002 Proxy Statement, which was issued on April 25, 2002. *See* Collins & Aikman 2002 Proxy Statement (Wright Decl., Ex. 1).[5] But the applicable limitations period expired, at the latest, on

---

[5]    The Court may consider the contents of the 2002 Proxy Statement, which is referred to in the Amended Complaint (*see* Amend. Compl. ¶¶ 94, 188-91), and is indispensable to C&A's claim that this document was materially misleading. *See, e.g.*, *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

April 25, 2005 – several weeks before C&A filed its bankruptcy petition on May 17, 2005. *See*

Amend. Compl. ¶ 6. Therefore, C&A's Section 14(a) claim against Evans is time-barred.[6]

    The Third Circuit's recent decision in *In re Exxon Mobil Corp. Sec. Litig.* has put to rest

any lingering doubt about the period within which private actions under Section 14(a) and Rule

14a-9 must be brought.  500 F.3d 189, 199 (3d Cir. 2007).  First, the Third Circuit reaffirmed

that the traditional limitations period codified at 15 U.S.C. § 77m and applicable to other

securities law violations continues to govern the implied right of action created by Section 14(a)

and Rule 14a-9. *Id.* at 198-99.  Under this rule, a Section 14(a) claim expires one year after the

point at which the plaintiff knew or reasonably should have known that a violation occurred and,

in any event, no later than three years after the occurrence of the alleged violation. *See id.* at

194; *Ceres Partners v. GEL Assocs.*, 918 F.2d 349, 363-64 (2d Cir. 1990).  Second, the Third

Circuit confirmed that like all statutes of repose, "the three-year statute of repose that applies to

Section 14(a) claims "begins to run on the date of the alleged fraudulent statement." *Exxon*

*Mobil*, 500 F.3d at 201. *See also In re Exxon Mobil Sec. Litig.*, 387 F. Supp. 2d 407, 421 (D.N.J.

2005) ("[I]t is clear that the three-year repose period for Section 14(a) claims begins to run at the

time the misleading statement is made," *i.e.*, the date on which the proxy statement is

disseminated to shareholders.) (citing cases). Accordingly, because the 2002 Proxy Statement

---

[6]    Evans acknowledges that "[t]he Bankruptcy Code extends for two years from the order for relief in a bankruptcy proceeding the time within which a debtor-in-possession may file any cause of action on behalf of an estate." *North Penn Transfer, Inc. v. Victaulic Co. of America*, 859 F. Supp. 154, 164 (E.D. Pa. 1994).  However, the relevant statute preserves only those claims that were not yet time-barred on the date of the bankruptcy filing. *See* 11 U.S.C. § 108(a) ("If applicable nonbankruptcy law . . . fixes a period within which the debtor may commence an action, *and such period has not expired before the date of the filing of the petition*, the trustee may commence such action only before the later of (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief.") (emphasis added).

was filed on April 25, 2002, C&A's time to file a Section 14(a) action based on alleged inaccuracies in that document expired no later than April 25, 2005, three full weeks before C&A's bankruptcy petition was filed. Thus, this claim is time-barred.

**B.    C&A Did Not Suffer A Cognizable Injury**

The Amended Complaint also fails to plead an injury cognizable under Rule 14a-9, an additional flaw that equally requires the dismissal of this claim. With respect to its Section 14(a) claim, C&A asserts the following:

> During 2002, 2003 and 2004, Defendants . . . caused Collins & Aikman to file and disseminate to its shareholders materially false and misleading Proxy Statements which failed to disclose that the Company was reporting financial results which were artificially inflated by the improper accounting practices detailed herein. In each of the Proxy Statements, Collins & Aikman sought shareholder approval for, among other things the election of directors, employee stock option plans and compensation policies.

Amend. Compl. ¶ 94.

C&A further asserts:

> The misrepresentations and omissions in the Proxy Statements were material to shareholders of Collins & Aikman in voting pursuant to each Proxy Statement. The Proxy Statements were an essential link in the accomplishment of the continuation of Defendants' fraudulent scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policies.

*Id.* ¶ 190 (emphasis added).

Under the law of this Circuit, this loss allegation is plainly insufficient to withstand a motion to dismiss. The Third Circuit confronted a nearly identical claim of loss in *General Electric Company by Levit v. Cathart,* 980 F.2d 927, 932-33 (3d Cir. 1992). There, the plaintiff "argue[d] that the misleading proxy statements served as 'an essential link' in the transactions which caused General Electric to lose money; the proxy statements allowed the appellees to retain their positions on the board, thus ensuring that they could continue to mismanage the

company." *Id.* at 933. The Third Circuit affirmed the district court's decision to dismiss the plaintiff's claim and, moreover, did so in language that leaves no doubt about the deficiency of C&A's current pleading. In the Third Circuit's words:

> [T]his is precisely the sort of claim that courts have repeatedly found insufficient to satisfy the transaction causation requirement. The pecuniary harm to General Electric that [plaintiff] alleges resulted from the appellees' purported mismanagement. Yet the mere fact that omissions in proxy materials, by permitting directors to win re-election, indirectly lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss. Rather, damages are recoverable under Section 14(a) only when the votes for a specific corporate transaction requiring shareholder authorization, such as a corporate merger, are obtained by a false proxy statement, and that transaction was the direct cause of the pecuniary injury for which recovery is sought.

*Id.* at 932-33 (emphasis added).

Here too, C&A alleges that it was harmed because the omissions from the 2002 Proxy Statement permitted the defendants to retain their corporate positions and continue their purportedly fraudulent mismanagement of the Company. *See* Amend. Compl. ¶ 190. And here too, C&A fails to allege that approval for a specific corporate transaction was obtained by a false proxy statement, and that this precise transaction caused C&A a pecuniary injury. In short, this loss theory is on all fours with the one that was rejected in *Cathart*. C&A's claim must be dismissed.

### C.    If C&A Suffered An Injury, It Was Not Caused By The Proxy Statements

C&A's claim under Rule 14a-9 also fails because C&A cannot show that its purported injury was *caused* by the allegedly misleading statements in the 2002 Proxy Statement. Under the Supreme Court's decision in *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991), a plaintiff seeking damages under § 14(a) must show that his or her votes were required by law or corporate bylaw to authorize the transaction giving rise to the claim. *Id.* at 1100-06. In other words, the requisite causal nexus between the proxy solicitation and the alleged injury arises

only where "the solicitation links a directors' proposal with the votes legally required to authorize the transaction proposed." *Id.* at 1102. *See also Scattergood v. Perelman*, 945 F.2d 618, 623-26 (3d Cir. 1991) (no causation where 57% of voting shares were beneficially owned by entity backing the proposed merger, and only a majority of voting shares was necessary to approve the proposal). By this standard, causation is plainly lacking here.

The express terms of the 2002 Proxy Statement demonstrate that the votes of the solicited minority shareholders were superfluous. The Proxy Statement advised shareholders that certain investors, including Heartland, "beneficially own or have the right to vote in the aggregate approximately 84.7% of the outstanding Common Stock. . . . The Investors have advised the Company that they intend to vote all such shares in favor of Proposals I, II and III. Accordingly, assuming that the Investors vote as indicated, the presence of a quorum at the meeting and the approval and adoption of Proposals I, II and III are assured." 2002 Proxy Statement, at 4 (Wright Decl., Ex. 1).

Given this pre-existing agreement, the causal link required by *Sandberg* is plainly absent here because each of the proposals at stake could have been overwhelmingly approved without a single vote of any minority shareholder.[7] Accordingly, as a matter of law, C&A cannot show that the Proxy Statements caused the shareholders to approve the Proxy Proposals.

---

[7]     Proposal I of the 2002 Proxy Statement concerned the election of directors. *Id.* at 4. Under Delaware law, only "a plurality of the votes of the shares present in person or represented by proxy at the meeting and entitled to vote on the election of directors" was required to elect the proposed directors. *See* 8 *Del. C.* § 216(3). Proposal II concerned an employee stock option plan while Proposal III asked for approval of a reverse stock split. 2002 Proxy Statement, at 30, 34 (Wright Decl., Ex. 1). Because, "[i]n all matters other than the election of directors, the affirmative vote of the majority of shares present in person or represented by proxy at the meeting and entitled to vote on the subject matter shall be the act of the stockholders," the nearly 85% approval that the Proposals received prior to the issuance of the proxy statement more than satisfied the requirements of Delaware law. 8 *Del. C.* § 216(2). The by-laws of C&A are in accord. Art. II, Section 8 of the Company's By-Laws, entitled "Voting," provides that "[a]t all

### D.    C&A Lacks Standing To Assert This Claim

C&A's alleged injury is all the more fleeting because C&A has not suffered the kind of injury that Section 14(a) was intended to prevent, and therefore lacks standing to sue under Rule 14a-9. Standing to assert an implied private right of action, such as the one recognized under Rule 14a-9, is limited to the class of persons for whose "especial benefit the statute was enacted." *See generally Cort v. Ash*, 422 U.S. 66, 78 (1975). "Section 14(a) was not enacted for the 'especial benefit' of management, but rather, was intended to curb their abuse of the proxy solicitation process." *Diceon Elecs. Inc. v. Calvary Partners, L.P.*, 772 F. Supp. 859, 869 (D. Del. 1991). Accordingly, standing to raise claims for damages under Rule 14a-9 is generally limited to shareholders who were entitled to vote in the allegedly tainted proxy contest. *See Ash v. GAF Corp.*, 723 F.2d 1090, 1092 (3d Cir. 1983) ("as a prerequisite to recovery, a complainant initially must prove that his proxy was solicited in contravention of an SEC rule or regulation"); *In re AOL Time Warner Sec. and "ERISA" Litig.*, 381 F. Supp. 2d 192, 208 (S.D.N.Y. 2004) ("Section 14(a)'s emphasis on the proxy solicitation process indicates that the statute was designed to protect only those shareholders with voting rights."); *7547 Corporation v. Parker & Parsley*, 38 F.3d 211, 229-30 (5th Cir. 1994) ("it goes too far to allow persons not even entitled to vote to assert a claim under [§ 14(a)]"); L. Hazen, THE LAW OF SECURITIES REGULATION § 10.3 (5th ed. 2007) ("[S]ince the proxy regulations are designed to protect shareholder voting rights, standing should be limited to shareholders who had a right to vote."). *Cf. Borak*, 377 U.S. at 431 ("The purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation.").

---

meetings of stockholders, all matters, except as otherwise provided for by law or in these By-laws, shall be decided by a majority of the votes cast by stockholders present in person or by proxy and entitled to vote thereat, a quorum being present." (Wright Decl., Ex. 2).

Some courts have carved out a limited exception to this general rule, granting standing under Section 14(a) to corporations targeted by hostile proxy solicitations to the extent that they seek injunctive relief to bar the use of unlawful or deceptive practices by outsiders. *See, e.g.*, *Studebaker Corp. v. Gittlin*, 360 F.2d 692, 695 (2d Cir. 1966); *Int'l Jensen Inc. v. Emerson Radio Corp.*, Nos. 96 C 2816, 96 C 6902, 1997 WL 43229, at *3-4 (N.D. Ill. Jan. 24, 1997) (citing cases). *But see Diceon Elecs.*, 772 F. Supp. at 867-69 (questioning whether this exception remains viable after *Sandberg*). Even assuming, *arguendo*, the continued viability of these precedents in light of *Sandberg*, it is plain that the private right of action implied under Section 14(a) is not broad enough to encompass C&A's claim that it is entitled to damages because *its own proxy materials* were false, and thus caused C&A's own shareholders to support the slate of directors and other proposals endorsed by C&A's Board of Directors. *See, e.g.*, *Sandberg*, 501 U.S. at 1103 ("[R]ecognition of any private right of action for violating a federal statute must ultimately rest on congressional intent to provide a private remedy. From this the corollary follows that the breadth of the right once recognized should not, as a general matter, grow beyond the scope congressionally intended."). Neither the text nor the legislative history of Section 14(a) suggests that Congress enacted the statute in order to regulate the manager-director relationship; this alone is sufficient to defeat C&A's expansive claim. *Id.* Moreover, because the extent of managers' duties of loyalty and care to the corporation and its board of directors are a quintessential matter of state law, *see id.* at 1094 n.6, courts have been particularly wary of encroaching on that domain by expanding rights of action implied under the securities laws. *See Santa Fe v. Green*, 430 U.S. 462, 478 (1977) (declining to expand the 10b-5 implied right of action into an area of "corporate conduct traditionally left to state regulation"). For these reasons, as well as those stated above, C&A's Rule 14a-9 claim must be dismissed.

## III.    C&A'S STATE LAW CLAIMS FAIL UNDER RULES 9(b) AND 12(b)(6)

C&A alleges that the "conduct of the Director and Officer Defendants complained of herein involves *fraudulent misconduct* – a knowing, intentional and culpable violation of their obligations as officers/directors of Collins & Aikman and the absence of good faith on their part for their duties to the Company, its shareholders and its creditors."   Amend. Compl. ¶ 22 (emphasis added).   Each of the state-law claims against Evans – alleging breach of fiduciary duty, unjust enrichment, and common-law fraud – therefore rests upon an averment of fraud. The federal pleading standards embodied in Rule 9(b) require pungent accusations of this kind to be backed by specific allegations of fact tying each of the defendants to the purported fraud.   But the Amended Complaint contains no specifics at all about Evans' alleged misconduct.   Rule 9(b) therefore requires the dismissal of all three of the state-law claims against Evans.[8]

C&A's unjust enrichment and fraud claims also should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.   The unjust enrichment claim is legally defective because C&A possesses fully adequate remedies at law for its alleged injuries.   In addition, C&A cannot maintain its common-law fraud claim because C&A has failed to plead facts from which its justifiable reliance on the alleged misstatements can be inferred.   Accordingly, Rule 12(b)(6) supplies an independent basis for the dismissal of C&A's unjust enrichment and fraud claims.[9]

---

[8]     Evans additionally joins in his co-defendants' arguments that the breach of fiduciary claim is deficient because C&A has not adequately pleaded a violation of the duty of loyalty, and because its duty of care allegation is expressly barred by the exculpatory clause of C&A's Restated Certificate of Incorporation.

[9]     It is not clear whether C&A believes that Delaware law applies to these state-law claims or whether the substantive law of Michigan – where C&A was headquartered – instead governs. Evans here relies primarily on Delaware authorities, but reserves the right to raise any choice-of-law argument in the future.

### A.    C&A's State-Law Claims Are Not Pleaded With Particularity

As explained in Section I.A. above, C&A's securities fraud claim against Evans must be dismissed, *inter alia*, because the Amended Complaint's blunderbuss allegations against the Director and Officer Defendants are insufficiently particular to survive scrutiny under Rule 9(b). This same failing requires the dismissal all three of C&A's state law claims.

Again, Fed. R. Civ. P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be pleaded with particularity." This pleading requirement plainly governs C&A's common-law fraud claim. *See, e.g., Pinnacle Choice Inc. v. Silverstein*, No. 07-cv-1379 (DMC), 2007 WL 2212861, at *2 (D.N.J. July 31, 2007). It equally applies to C&A's claims for breach of fiduciary duty and unjust enrichment, inasmuch as these causes of action, as the Amended Complaint itself makes plain, are grounded in assertions of "fraudulent misconduct." Amend. Compl. ¶ 22. C&A's breach of fiduciary duty claim, for example, charges that the Director and Officer Defendants breached their duties "by orchestrating, encouraging or utilizing various accounting schemes. . . ." *Id.* ¶ 194. The Company's unjust enrichment claim is similarly grounded in allegations of fraudulent conduct. *Id.* ¶ 197. Because these state-law claims fundamentally aver that Evans committed a fraud, they must be held to the heightened pleading requirements that Rule 9(b) imposes. *See Lum*, 361 F.3d at 220; *Borsellino*, 477 F.3d at 507; *Kirtley v. Wadekar*, No. 05-5383 (JAG), 2006 WL 2482939, at *2 (D.N.J. Aug. 25, 2006) (applying Rule 9(b) to unjust enrichment claim); *Buckley v. O'Hanlon*, No. 04-955GMS, 2007 WL 956947, at *5 (D. Del. Mar. 28, 2007) (Rule 9(b) applies "when the allegations of breach of fiduciary duty sound in fraud"); *Am. Mobile Comms., Inc. v. Nationwide Cellular Serv., Inc.*, No. 91 Civ. 3587 (LBS), 1992 WL 232058, at *6 (S.D.N.Y. Sept. 3, 1992) ("[Plaintiff's] claim of breach of fiduciary duty is subject to the particularity requirements of Rule 9(b) because it relies heavily on allegations of fraudulent conduct.").

As with C&A's securities fraud claim, the application of Rule 9(b)'s heightened pleading standard dooms all three of the state-law claims asserted against Evans. The Amended Complaint does not explain how or when *Evans* is alleged to have participated in the accounting fraud through which he supposedly breached his fiduciary duties to C&A, unjustly enriched himself, and defrauded the Company. It does not contain a whit of particularity about any decision that *Evans* reached, any statement that *Evans* made, any conversation in which *Evans* participated, or any document that *Evans* signed. The only thing that the Amended Complaint says about *Evans* is that he held a high-ranking corporate position at C&A during a period in which bad things are alleged to have happened at the Company. *See* Amend. Compl. ¶ 16. As explained *supra* in Section I.A., Rule 9(b)'s demand for particularity in an averment of fraud is intended to prohibit precisely this kind of vague and undifferentiated pleading. *See MBIA Ins. Corp.*, 221 F.R.D. at 421.

Moreover, the so-called "group pleading doctrine" cannot excuse C&A's failure to plead its state-law claims against Evans with even the slightest hint of specificity. In limited circumstances, that doctrine has been held to relax Rule 9(b)'s strictures and allow plaintiffs to allege that all of a corporation's officers and directors are responsible for the publication of a purportedly misleading statement. *See, e.g., In re Aetna*, 34 F. Supp. 2d at 949. But this exception cannot aid C&A here.

First, the group pleading doctrine applies to lessen a plaintiff's burden only where the information needed to allow particularized pleading "lies in defendants' exclusive control," *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 319 (3d Cir. 1997), and where plaintiffs allege as much in their pleadings. *See Shapiro v. UJB Fin. Corp*, 964 F.2d 272, 285 (3d Cir. 1992). That is patently not the case here. C&A has not even attempted to plead that the defendants have

"exclusive control" over the necessary evidence. This is likely because C&A has access to – and indeed, exclusive control over – its own corporate books, records, emails, telephone records and notes of meetings, and other documents relevant to the question of who was involved in the drafting, review and approval of the financial statements at issue in the Amended Complaint. Moreover, according to C&A, its Special Counsel has already conducted an investigation of the circumstances underlying its claims. *See* Amend. Compl. Opening, at 1. On these facts, the practical considerations that support application of the group pleading doctrine in other contexts are not present, and no unfairness resides in requiring C&A to state its fraud allegations with particularity. *See Trenwick*, 906 A.2d at 211 ("The Litigation Trust has had far more access to information than the typical plaintiff, having access to voluminous documents during the bankruptcy proceedings, for more than a year before it filed its complaint. Thus, it was better positioned than most fraud plaintiffs to meet the standards of [Delaware Court of Chancery] Rule 9(b)."); *SEC v. Yuen*, 221 F.R.D. 631, 637 (C.D. Cal. 2004) ("given the SEC's substantial pre-filing investigatory powers and the significant discovery already conducted in this case, the SEC's reliance upon the 'group published information' doctrine is misplaced and inappropriate").

Second, Rule 9(b)'s strictures may be relaxed only where plaintiffs additionally "delineate at least the nature and scope of [their] effort to obtain, before filing the complaint, the information needed to plead with particularity." *Weiner*, 129 F.3d at 319 (internal citation and quotation marks omitted). But nothing in the Amended Complaint describes C&A's efforts to plead its claims with particularity. Nor, given C&A's access to its own records, is it clear how C&A could have mounted such an effort, found itself unable to plead with particularity, and yet

still able to aver in good faith that its claims against Evans "are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

Third, even if the group pleading doctrine could be invoked in this case, C&A's blanket pleading would still be insufficient as to Evans, who left C&A two years before the allegedly misleading Offering Memorandum was distributed to potential investors, and therefore had no responsibility – and further, no opportunity – to ensure the accuracy of the statements then being made by C&A's management. Evans therefore stands well outside the group of persons whose responsibility for the contents of this 2004 corporate publication could be logically or legally presumed in any circumstance. *See In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 553 (D. Del. 2002) ("under the group pleading doctrine, a company's statements or omissions may be presumed to be the collective work of those individuals with *direct involvement* in the everyday business of the company") (citation and quotation marks omitted, emphasis added). *See also DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (same); *In re Baan Sec. Litig.*, 103 F. Supp. 2d 1, 17-18 (D.D.C. 2000) (same).

The Amended Complaint's common-law fraud claim additionally violates Rule 9(b) by failing to identify the "misrepresentations of material facts" (*see* Amend. Compl. ¶ 200) that the Director and Officer Defendants allegedly made to the Company's Board of Directors and Audit Committee. *See In re Suprema Specialties*, 438 F.3d at 270 (explaining that, *inter alia*, "Rule 9(b) requires a plaintiff to plead [] a specific false representation of material fact").[10] This glaring omission brings C&A's common-law fraud claim into clear conflict with the dictates of Rule 9(b), and provides an additional ground for its dismissal.

---

[10] This omission is particularly prejudicial to Evans' ability to defend himself against the common-law fraud claim because he was not an officer or director of the Company at any point after August 2002, and because the allegations of wrongdoing in the Complaint stretch into 2005.

**B.     C&A's Unjust Enrichment Claim Must Be Dismissed Because C&A Has Adequate Remedies At Law, And Because Evans' Entitlement To The Compensation He Received Is A Matter Of Contract Law**

Under Delaware law, unjust enrichment consists of the "unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity or good conscience." *Bakerman v. Sidney Frank Importing Co., Inc.*, No. Civ. A. 1844-N, 2006 WL 3927242, at *18 (Del. Ch. Oct. 16, 2006) (citations omitted) (dismissing unjust enrichment claim). A plaintiff seeking to assert an unjust enrichment claim must adequately plead the following elements: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Id.* (citations omitted); *Total Care Physicians, P.A. v. O'Hara*, No. Civ. A. 99C-11-201-JRS, 2002 WL 31667901, at *10 (Del. Super. Oct. 29, 2002).

Compounding its failure to plead unjust enrichment with any particularity, C&A's unjust enrichment claim is lacking in at least two additional respects. First, C&A has not alleged – and cannot allege – that it lacks an adequate remedy at law. Second, C&A's claim that Evans was unjustly enriched when he received compensation for his labors fails to state a claim because, under Delaware law, Evans' contract relationship with C&A provides the sole determinant of whether he was entitled to receive compensation from the Company.

1.     C&A's unjust enrichment claim must be dismissed because adequate remedies exist at law for the Company's alleged injuries

C&A's unjust enrichment claim is fatally flawed because the Amended Complaint does not allege – or even suggest – that the Company lacks an adequate remedy at law. *See Bakerman*, 2006 WL 3927242, at *18 (noting that "the absence of a remedy provided by law" is a necessary element of an unjust enrichment claim). This failure is not merely the product of oversight. On the contrary, the alleged wrongdoing at the heart of C&A's unjust enrichment

claim is wholly duplicative of C&A's (defective) common-law fraud and federal securities fraud claims. *See* Amend. Compl. ¶ 197 (citing the following conduct as the basis of C&A's unjust enrichment claim: "causing [C&A] to pay inflated prices for goods, services and corporate acquisitions; violating the federal securities laws; making false and misleading statements; and causing the Company to file materially false and misleading press releases and documents with the SEC").

The overlap between the allegations underlying C&A's claims at law and its unjust enrichment claim compels the conclusion that if C&A has any remedy at all against Evans, it is through the damages that the Company seeks for the alleged securities violations and common-law fraud. Given the presence of these plainly adequate remedies at law, C&A's unjust enrichment claim is improper and must be dismissed. *See Total Care Physicians*, 2002 WL 31667901, at *10 (dismissing unjust enrichment claim because plaintiff's claim for damages for misappropriation of trade secrets provided an adequate remedy at law); *accord Crigger v. Fahnestock and Co., Inc.*, No. 01 Civ. 07819 (JFK), 2003 WL 22170607, at *12 (S.D.N.Y. Sept. 18, 2003) ("[p]laintiffs [*sic*] unjust enrichment claim is little more than a recasting of its common law fraud claim in the guise of an equity proceeding . . . plaintiffs' fraud claim provides an adequate remedy at law and removes the need to entertain a claim in equity"); *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1237 (S.D. Fla. 2007) (plaintiffs' consumer fraud claim, based on same allegedly wrongful conduct, provided adequate remedy at law); *In re Lupron Marketing and Sales Practices Litig.*, 295 F. Supp. 2d 148, 182 (D. Mass. 2003) (RICO claims provide adequate remedy at law).

2.      <u>Evans' entitlement to his C&A compensation is properly the subject of contract law, not unjust enrichment</u>

Delaware law also bars the particular allegation of unjust benefit claimed by C&A. C&A alleges that it is entitled to restitution from Evans because he and the other Director and Officer Defendants purportedly broke a number of laws "in order to continue in their positions and personally profit therefrom." Amend. Compl. ¶ 197. C&A therefore concludes that Evans should be required to disgorge the compensation that he earned while employed as a director and officer of the Company. *Id.* ¶ 198.

However, this pleading is insufficient to state a claim for unjust enrichment because the fact and extent of Evans' compensation was governed by his contractual relationship with C&A. Under Delaware law, this fact is "[o]f cardinal significance . . . if there is a contract between the complaining party and the party alleged to have been enriched unjustly, then the contract remains 'the measure of the plaintiff's right.'" *Metcap Sec. LLC v. Pearl Senior Care, Inc.*, No. Civ.A. 2129-VCN, 2007 WL 1498989, at *5 (Del. Ch. May 16, 2007) (quoting *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979)). Accordingly, it is this contractual relationship, and not C&A's Draconian notions of equity, that under Delaware law define whether Evans was entitled to receive and retain compensation for his work. Having failed to allege that Evans received more money than he was entitled to receive under the terms of that relationship, C&A's claim must be dismissed.

C&A's failure to adequately allege unjust enrichment (even given a second bite at the apple) is not merely a rectifiable pleading defect. C&A cannot allege an enrichment because C&A has not alleged that Evans engaged in the type of self-dealing or simple thievery that could provide an unjust personal benefit at the Company's expense. *Contrast In re Tyson Foods, Inc.*, 919 A.2d 563, 602-03 (Del. Ch. 2007) (unjust enrichment claim stated where corporation

engaged in related-party transactions with directors, and spring-loaded options were given to directors just before release of positive information about corporation); *In re HealthSouth Corp. S'holders Litig.*, 845 A.2d 1096, 1105-06 (Del. Ch. 2003), *aff'd*, 847 A.2d 1121 (Del. 2004) (CEO unjustly enriched when he extinguished $25 million loan he owed to corporation by transferring back to corporation shares that within a month sharply declined in price). Once again, all that the Amended Complaint has to say about Evans is that he was at C&A when the Company's fortunes began to decline. That allegation provides no basis for an unjust enrichment claim.

### C. The Amended Complaint Does Not State A Claim For Common-Law Fraud

Under Delaware law, a plaintiff asserting a claim for common-law fraud must plead the following elements: "(1) the defendants falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendants knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendants intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance." *Trenwick*, 906 A.2d at 207-08; *see also Stephenson v. Capano Dev. Inc.*, 462 A.2d 1069, 1074 (Del. 1983). C&A's common-law fraud claim flunks this test because it fails to allege facts from which the Company's justifiable reliance on the Director and Officer Defendants' alleged misrepresentations can be inferred. This claim therefore must be dismissed.

#### 1. The Amended Complaint fails to plead reliance

As a matter of Delaware law, C&A's allegation that the very same people who controlled the Company were misled by their own misstatements is insufficient to meet the requirement that a plaintiff plead detrimental reliance. As the Delaware Court of Chancery has

explained, the allegation that a corporation relied to its detriment on misstatements made on the corporation's behalf by its controlling officers and directors "makes no sense . . . the claim that the disclosing company made misrepresentations is not a fraud claim. . . . The reason is simple, the entity would not have been relying to its detriment on the fraudulent statement because its controllers were aware of the actual state of affairs." *Trenwick*, 906 A.2d at 211-12.

*Trenwick* controls here and requires the dismissal of this fraud claim. The Amended Complaint alleges that Heartland and the Defendant Directors and Officers who managed C&A after Evans left in August 2002 completely controlled the Company (Amend. Compl. ¶ 30) and knew that C&A's financial statements were false and misleading (*id.* ¶ 25); nonetheless, Plaintiffs contend that somehow the Company was misled by these same allegedly false financial statements and justifiably relied upon them in "electing and appointing the defendant officers" (*id.* ¶ 203). Just as in *Trenwick*, this allegation of reliance "makes no sense." *Trenwick*, 906 A.2d at 211-12. If the allegations in the Amended Complaint are true, then C&A's "controllers were aware of the actual state of affairs," *id.*, and thus could not have relied on the misleading statements that they were disseminating to others. Such allegations do not state a claim for fraud under Delaware law.

        2.    <u>Any injury suffered by C&A was not proximately caused by the alleged misrepresentations</u>

C&A's conclusory allegation that it suffered injuries as a "direct and proximate result of reliance on the misrepresentations of the Director and Officer Defendants" is incorrect as a matter of law. The Amended Complaint, by its express terms, clearly demonstrates that any injury suffered by the Company – remembering that claims concerning misleading corporate disclosures belong to the shareholders, not the Company[11] – was extremely attenuated from the

---

[11]    *See Trenwick*, 906 A.2d at 212.

unspecified misrepresentations that allegedly were made at unspecified times to the Board of Directors and Audit Committee.    According to C&A, the Board of Directors and Audit Committee relied upon the alleged misrepresentations for the limited purpose of "electing and appointing the defendant officers." Amend. Compl. ¶ 203.  The Company then alleges that C&A suffered a loss "in that it was denied the opportunity to continue as a going concern and its value as a business enterprise significantly decreased." *Id.* ¶ 204.  The Amended Complaint thus alleges that its losses were proximately caused by the election and appointment of the Director and Officer Defendants, in that these defendants went on to make decisions that harmed Company.  But this does not amount to proximate causation under Delaware law.

Proximate cause, of course, is an essential element of a plaintiff's effort to recover damages for an alleged fraud. *See, e.g., Republic of Pan. v. Am. Tobacco Co.*, Nos. 05C-07-181-RRC, 05C-07-180-RRC, 2006 WL 1933740, at *6-7 (Del. Super. Jun. 23, 2006), *aff'd sub nom.*, *State of Sao Paulo of Federative Republic of Braz. v. Am. Tobacco Co.*, 919 A.2d 1116 (Del. 2007).  Under Delaware law, "proximate cause exists if a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." *Wilmington Country Club v. Cowee*, 747 A.2d 1087, 1097 (Del. 2000).  Thus, "[a] prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated and efficient cause of the injury even though such injury would not have happened but for such condition or occasion." *Duphily v. Del. Elec. Co-op., Inc.*, 662 A.2d 821, 829 n.6 (Del. 1995).  *See also* 37 AM.JUR.2D *Fraud and Deceit* § 280 (2007) ("[T]he fraud and injury must be connected and must bear to each other the relation of cause and effect . . .

there must be a causal connection between [the misrepresentation] and the damage sustained (not a remote consequence of the fraud), and a showing that the loss complained of is independent of other causes.").

Here, the unspecified statements that allegedly caused the Board of Directors and Audit Committee to appoint and elect the Director and Officer Defendants did nothing more than "furnish the condition" – these defendants' opportunity to lead C&A – that is alleged to have caused the Company's decline. As the Third Circuit has noted in an analogous context, courts have "repeatedly found" arguments of this kind "insufficient to satisfy the transaction causation requirement" imposed by the federal securities laws, finding that even if a misstatement caused the election of a director, such misstatement could only be an indirect cause of financial losses caused by the director's mismanagement. *See Cathart*, 980 F.2d at 932-33. The same logic compels the conclusion that C&A's asserted losses were caused only indirectly by the alleged misstatements – if at all. As such, the unspecified misstatements allegedly made to C&A's Board of Directors and Audit Committee could not have been a proximate of C&A's injuries. Like the rest of C&A's allegations, this common-fraud claim must be dismissed.

## CONCLUSION

For the foregoing reasons, and for the additional reasons articulated by other defendants in this action, defendant Thomas Evans respectfully requests that the Court grant his motion to dismiss the claims brought against him in the Amended Complaint, along with any other relief that the Court deems fit and proper.  In the alternative, if only state-law claims survive these motions to dismiss, Evans respectfully submits that the Court should decline to exercise jurisdiction over the remaining state claims.  *See* 28 U.S.C. § 1367(c); *Johnson v. Knorr*, 477 F.3d 75, 86 n.15 (3d Cir. 2007).

Respectfully submitted,

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

OF COUNSEL:

MAYER BROWN LLP
Richard A. Spehr
Joseph De Simone
1675 Broadway
New York, New York 10019
(212) 506-2500

Dated:  April 28, 2008

*/s/ Christian Douglas Wright*
Christian Douglas Wright (#3554)
Andrew A. Lundgren (#4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6600
cwright@ycst.com

*Attorneys for Defendant Thomas E. Evans*

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on April 28, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Joseph A. Rosenthal
Carmella P. Keener
Rosenthal, Monhait & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899
(302) 656-4433
jrosenthal@rmgglaw.com
ckeener@rmgglaw.com

Anne C. Foster
Robert J. Stearn, Jr.
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
foster@rlf.com
stearn@rlf.com

Thomas P. Preston
Blank Rome LLP
1201 North Market Street
Suite 800
Wilmington, DE 19801-4226
(302) 425-6400
preston-t@blankrome.com

James L. Holzman
J. Clayton Athey
Prickett, Jones & Elliott, P.A.
1310 King St.
P.O. Box 1328
Wilmington, DE 19899
(302) 888-6500
jlholzman@prickett.com
jcathey@prickett.com

Michael J. Maimone
Joseph B. Cicero
Edwards Angell Palmer & Dodge LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801
(302) 777-7770
mmaimone@eapdlaw.com
jcicero@eapdlaw.com

Peter B. Ladig
Stephen B. Brauerman
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000
pladig@bayardfirm.com
sbrauerman@bayardfirm.com

Thomas G. Macauley
Zuckerman Spaeder LLP
919 Market Street, Suite 1705
P.O. Box 1028
Wilmington, DE 19899
(302) 427-0400
tmacauley@zuckerman.com

Vernon R. Proctor
Proctor Heyman LLP
1116 West Street
Wilmington, DE 19801
(302) 472-7300
vproctor@proctorheyman.com

Robert S. Saunders
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
(302) 651-3000
rsaunder@skadden.com

I further certify that on April 28, 2008, I caused a copy of the foregoing document to be

served by e-mail on the above-listed counsel of record and on the following:

Samuel H. Rudman
David A. Rosenfeld
Coughlin Stoia Geller
   Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY 11747
(631) 367-7100
SRudman@csgrr.com
DRosenfeld@csgrr.com

Christopher Harris
Seth L. Friedman
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022
(212) 906-1200
christopher.harris@lw.com
seth.friedman@lw.com

Thomas G. Rafferty
Antony L. Ryan
Cravath, Swaine, & Moore LLP
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000
trafferty@cravath.com
aryan@cravath.com

Stephen L. Ascher
Jenner & Block LLP
919 Third Avenue
New York, NY 10022
(212) 891-1600
sascher@jenner.com

Craig A. Stewart
Ken L. Hashimoto
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022-4690
(212) 715-1000
Craig.Stewart@aporter.com
Ken.Hashimoto@aporter.com

Andrew B. Weissman
Michele L. Taylor
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000
andy.weissman@wilmerhale.com
michele.taylor@wilmerhale.com

Carl S. Kravitz
Zuckerman Spaeder LLP
1800 M. Street, NW Suite 1000
Washington, DC 20036-5802
(202) 778-1800
ckravitz@zuckerman.com


Jonathon J. Lerner
Lea Haber Kuck
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036
(212) 735-3000
jlerner@skadden.com
lkuck@skadden.com

Michael Shapiro
Gerald Griffin
Carter Ledyard & Millburn LLP
2 Wall Street
New York, NY 10005
(212) 732-3200
mshapiro@clm.com
griffin@clm.com

Lynn Brimer
Strobl & Sharp, P.C.
300 East Long Lake Road, Suite 200
Bloomfield Hills, MI 48304
(248) 205-2772
lbrimer@stroblpc.com

Michael Joseph
Joseph O. Click
Blank Rome LLP
600 New Hampshire Avenue, NW
Washington, DC 20037
(202) 772-5800
joseph@blankrome.com
click@blankrome.com


Gandolfo V. DiBlasi
Stacey R. Friedman
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
(212) 558-4000
diblasig@sullcrom.com
friedmans@sullcrom.com

Richard M. Strassberg
Jeffrey A. Simes
Goodwin Procter LLP
599 Lexington Avenue
New York, NY 10022
(212) 813-8859
rstrassberg@goodwinprocter.com
jsimes@goodwinprocter.com


YOUNG CONAWAY STARGATT & TAYLOR, LLP

Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
302-571-6600
alundgren@ycst.com