**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| COLLINS & AIKMAN CORPORATION, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 07-265-SLR-LPS |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID A. STOCKMAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF
DEFENDANT KPMG LLP'S MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT**

EDWARDS ANGELL PALMER & DODGE LLP
Michael J. Maimone (#3592)
Paul D. Brown (#3903)
Joseph B. Cicero (#4388)
919 North Market Street, 15th Floor
Wilmington, DE 19801
(302) 777-7770
mmaimone@eapdlaw.com

OF COUNSEL:
Peter W. Devereaux
Christopher Harris
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022
(212) 906-1200

April 28, 2008

## <u>TABLE OF CONTENTS</u>

**PAGE**

TABLE OF AUTHORITIES ................................................................................................. iv

I.    INTRODUCTION ................................................................................................. 1

II.    NATURE AND STAGE OF PROCEEDINGS................................................... 2

III.   SUMMARY OF ARGUMENT ........................................................................... 3

IV.   BACKGROUND ................................................................................................. 4

    A.    Factual Allegations.................................................................................. 4

    B.    The Roles Of Plaintiff And KPMG In Financial Reporting .................................. 6

        1.    Management Prepares Financial Statements And Auditors Audit Them ................................................................................................. 6

        2.    GAAS Establishes That Auditors Are Not Expected To Uncover Collusive Fraud Being Committed And Concealed By Management ................................................................................ 7

V.    ARGUMENT................................................................................................. 8

    A.    Motion To Dismiss Standard .................................................................. 8

    B.    Michigan Law Governs The Claims Against KPMG .......................................... 9

    C.    Michigan's Wrongful Conduct Rule Bars All Of Plaintiff's Claims .................. 10

        1.    Management's Allegedly Fraudulent Conduct Is Imputed To C&A........ 10

        2.    Plaintiff's Allegations Satisfy All Of The Elements Of Michigan's Wrongful Conduct Rule ........................................................ 12

        3.    Recent Michigan And Other Precedent Holds That The Wrongful Conduct Rule Bars A Bankrupt Company's Claims For Alleged Negligence/Malpractice Against Its Former Auditors............................ 14

    D.    Plaintiff Fails To Allege Causation Or Cognizable Damages ............................ 16

        1.    Plaintiff Does Not Allege How KPMG's Audit Or Review Of The Company's Statements Proximately Caused C&A Harm....................... 16

        2.    Plaintiff's Damages Theory Fails As A Matter Of Law ......................... 21

            a.    Plaintiff Relies On A "Deepening Insolvency" Theory Of Damages ................................................................................ 21

            b.    Michigan Has Adopted And Would Likely Reject The Theory Of Deepening Insolvency ................................................. 22

i

| | | | |
|---|---|---|---|
| | c. | Even If Michigan Accepted The Doctrine Of Deepening Insolvency, It Would Not Apply Here | 23 |
| E. | | Plaintiff's Negligence Claim Fails As A Matter Of Law | 24 |
| | 1. | Alleged Failure To Consider Red Flags | 26 |
| | 2. | Alleged Failure To Examine Related Party Transactions | 26 |
| | 3. | Alleged Failure To Identify Internal Control Problems | 27 |
| | 4. | Alleged Failure To Assess C&A's Ability To Continue As A Going Concern | 27 |
| | 5. | Alleged Failure To Uncover "False Side Letters" | 27 |
| F. | | Plaintiff's Fraud Claim Must Be Dismissed For Failure To Comply With Rule 9(b)'s Heightened Pleading Requirements | 28 |
| | 1. | Plaintiff Has Failed To Plead That KPMG'S 2003 Audit Opinion Was A Material False Statement | 29 |
| | 2. | The Complaint Fails To Allege With Particularity That KPMG Acted With Scienter | 30 |
| | | a. The Standard For Pleading Auditor Scienter Is Unusually Demanding | 30 |
| | | b. Plaintiff's Sole Motive Allegation, About Fees, Cannot Raise An Inference Of Scienter | 31 |
| | | c. Boilerplate Allegations Of GAAS Violations Do Not Establish A Showing Of Knowledge Or Recklessnes | 31 |
| | | d. Plaintiff's Generalized Allegations That KPMG Had Access To C&A Are Insufficient To Plead Scienter | 32 |
| | | e. Plaintiff's Allegations Of Red Flags Are Insufficient To Raise An Inference Of Scienter | 32 |
| | | (1) Plaintiffs' "Red Flags" Are Not Pled With Specificity, And Lack Factual Support | 32 |
| | | (2) KPMG Had No Actual Knowledge Of These So-Called Red Flags | 33 |
| | | (3) Plaintiff Does Not Allege GAAS Failures, i.e., That The Red Flags Required Audit Procedures KPMG Did Not Perform | 34 |
| | | f. Plaintiff's Allegations That KPMG Did Not Uncover Plaintiff's Fraud Does Not Mean That KPMG Acted Recklessly | 34 |
| | | g. Plaintiff Cannot Establish That KPMG's Audit Amounted To "No Audit At All" Or That "No Reasonable Accountant" Would Have Reached The Same Result | 35 |

ii

   3. Plaintiff Has Failed To Plead Reliance ................................................... 36

  G. Plaintiff Has Failed Adequately To Plead An Aiding And Abetting Claim Against KPMG .......................................................................................... 37

  H. Plaintiff Has Failed To Plead A Breach Of Contract Claim Against KPMG ....... 39

VI. CONCLUSION ........................................................................................................ 40

WLM 513396.2

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*AUSA Life Insurance Co. v. Ernst & Young*,
119 F. Supp. 2d 394 (S.D.N.Y. 2000) .......................................................................... 20

*Askanase v. Fatjo*,
828 F. Supp. 465 (S.D. Tex. 1993) ................................................................................ 39

*Baena v. KPMG LLP*,
389 F. Supp. 2d 112 (D. Mass. 2005). ................................................................ 15, 16, 26

*Baena v. KPMG LLP*,
453 F.3d 1 (1st Cir. 2006). .......................................................................... 12, 13, 15, 16

*Battenfeld of America Holding Co., Inc. v. Baird, Kurtz & Dobson*,
60 F. Supp. 2d 1189 (D. Kan. 1999) ............................................................................. 39

*Begier v. Price Waterhouse*,
No. 87-6096, 1992 WL 236175 (E.D. Pa. Sept. 14, 1992) ............................................ 40

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007) ............................................................................................. 8, 36

*Broderick v. PricewaterhouseCoopers LLP*,
169 Fed. Appx. 496 (9th Cir. 2004) ......................................................................... 31-32

*Brownell v. Garber*,
503 N.W.2d 81 (Mich. Ct. App. 1993) ......................................................................... 39

*Cambridge Biotech Corp. v. Deloitte & Touche*,
No. 96-1480-A, 1997 WL 42516 (Mass. Super Ct. Jan. 28, 1997) ........................... 25, 26

*Cenco Inc. v. Seidman & Seidman*,
686 F.2d 449 (7th Cir. 1982) ................................................................................. 12, 37

*Chase Bank of Texas v. Grant Thornton L.L.P.*,
No. 236237, 2003 WL 21350362 (Mich. Ct. App. June 10, 2003) ...................... 29, 37-39

*Christians v. Grant Thornton L.L.P.*,
733 N.W.2d 803 (Minn. Ct. App. 2007) ............................................................ 16,17, 22

*Churella v. Pioneer St. Mutual. Insurance Co.*,
671 N.W.2d 125 (Mich. Ct. App. 2003) ....................................................................... 36

iv

*City of Novi v. Robert Adell Children's Funded Trust*,
701 N.W.2d 144 (Mich. 2005) ...................................................................................... 29

*City of Pontiac v. Pricewaterhouse Coopers, L.L.P.*,
No. 06-076389-NM, 2008 WL 375992 (Mich Ct. App. Feb. 12, 2008)................7, 17, 23

*Conley v. Gibson*,
355 U.S. 41 (1957).......................................................................................................... 8

*D.D. Hamilton Textiles, Inc. v. Estate of Mate*,
269 A.D.2d 214 (N.Y. App. Div. 1st Dep't 2000) ........................................................ 25

*D.E. & J. Ltd. Partnership v. Conaway*,
284 F. Supp. 2d 719 (E.D. Mich. 2003),
*aff'd,* 133 Fed. Appx. 994 (6th Cir. 2005)................................................................29, 32

*Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*,
454 F.3d 1168 (10th Cir. 2006) .................................................................................... 29

*Dresser v. Cradle of Hope Adoption Ctr., Inc.*,
358 F. Supp. 2d 620 (E.D. Mich. 2005) ...................................................................... 16

*Dunn v. Lederele Laboratories*,
328 N.W.2d 576 (Mich. Ct. App. 1982) ...................................................................... 20

*Matter of Estate of Butterfield*,
341 N.W.2d 453 (Mich. 1983) .................................................................................... 23

*Estate of Goldman v. Nat'l Bank of Detroit*,
601 N.W.2d 126 (Mich. Ct. App. 1999) ...................................................................... 37

*Evans v. Pearson Enter., Inc.*,
434 F.3d 839 (6th Cir. 2006) ...................................................................................... 37

*Fidel v. Farley*,
392 F.3d 220 (6th Cir. 2005)................................................................................... 33-34

*Flamm v. Scherer*,
198 N.W.2d 702 (Mich. Ct. App. 1972) ...................................................................... 40

*Frye v. City of Detroit*,
256 Mich. 466 (1932)................................................................................................... 19

*Glazier v. Lee*,
429 N.W.2d 857 (Mich. Ct. App. 1998) ...................................................................... 13

*Grassmueck v. American Shorthorn Ass'n,*
402 F.3d 833 (8th Cir. 2005) .......................................................................... 16

*Green Tree Fin. Corp.- Ala. v. Randolph,*
531 U.S. 79 (2000) ........................................................................................ 4

*Haliw v. Sterling Heights,*
627 N.W.2d 581 (Mich. 2001) ...................................................................... 17

*In re Amcast Industrial Corp.,*
365 B.R. 91 (Bankr. S.D. Ohio 2007) .......................................................... 23

*In re Burlington Coat Factory Securities Litigation,*
114 F.3d 1410 (3d Cir. 1997) ........................................................................ 8

*In re Cardinal Health Inc. Securities Litigation,*
426 F. Supp. 2d 688 (S.D. Ohio 2006) .................................................... 30, 34

*In re CitX Corp., Inc.,*
448 F.3d 672 (3d Cir. 2006) .................................................................... 22, 24

*In re Dublin Securities, Inc.,*
133 F.3d 377 (6th Cir. 1997) ........................................................................ 16

*In re Hayes Lemmerz Int'l, Inc. Equity Securities Litigation,*
271 F. Supp. 2d 1007, 1019 (E.D. Mich. 2003) ............................................ 33

*In re IKON Office Solutions, Inc. Securities Litigation,*
277 F.3d 658 (3d Cir. 2002) .............................................................. 7, 31, 36

*In re Integrated Resources Real Estate Ltd. Partnerships Securities Litigation,*
815 F. Supp. 620 (S.D.N.Y. 1993) ................................................................ 27

*In re Livent Securities Litigation,*
78 F. Supp. 2d 194 (S.D.N.Y. 1999) ........................................................ 33-35

*In Re Marsh & McLennan Cos. Inc., Securities Litigation,*
501 F. Supp 2d 452 (S.D.N.Y. 2006) ............................................................ 30

*In re Parmalat Securities Litigation,*
501 F. Supp. 2d 560, (S.D.N.Y. 2007) .................................................. 20, 22, 24

*In re Royal Ahold N.V. Securities & ERISA Litigation,*
351 F. Supp. 2d 334 (D. Md. 2004) .............................................................. 35

WLM 513396.2

*In re Spear & Jackson Securities Litigation,*
399 F. Supp. 2d 1350 (S.D. Fla. 2005) ........................................ 32

*In re Stone & Webster, Inc. Securities Litigation,*
414 F.3d 187 (1st Cir. 2005) ...................................................... 30

*In re Suprema Specialties, Inc. Securities Litigation,*
438 F.3d 256 (3d Cir. 2006) ....................................................... 31

*In re Williams Securities Litigation,*
496 F. Supp. 2d 1195 (N.D. Okla. 2007) .................................... 27

*In re WorldCom, Inc. Securities Litigation,*
352 F. Supp. 2d 472 (S.D.N.Y. 2005) ......................................... 35

*In re Worlds of Wonder Securities Litigation,*
35 F.3d 1407 (9th Cir. 1994) ...................................................... 31

*Jackson Nat. Life Ins. Co. v. Kennedy,*
741 A.2d 377 (Del. Ch. Ct. 1999) .............................................. 38

*Johnson v. Metabolife International, Inc.,*
No. Civ.A.3:01-CV-2082-G, 2002 WL 32494514 (N.D. Tex. Oct. 23, 2002) ............... 28

*Kalnit v. Eichler,*,
264 F.3d 131 (2d Cir. 2001) ....................................................... 31

*Kennilworth Partners L.P. v. Cendant Corp.,*
59 F. Supp. 2d 417 (D.N.J. 1999) .............................................. 32

*Klaxon Co. v. Stentor Electric Mfg. Co.,*
313 U.S. 487 (1941).................................................................... 9

*Kloian v. Schwartz,*
725 N.W.2d 671 (Mich. Ct. App. 2006) ...................................... 25

*Krieger v. Gast,*
No. 4:99-CV-86, 2000 WL 288442 (W.D. Mich. Jan. 21, 2000).................... 38

*LaMothe v. Automobile Club Insurance Association,*
543 N.W.2d 42 (Mich. Ct. App. 1995) ........................................ 32

*Malpiede v. Townson,*
780 A.2d 1075 (Del. 2001)........................................................... 38

vii

*Marksman Partners, L.P. v. Chantal Pharm. Corp.,*
46 F. Supp. 2d 1042 (C.D. Cal. 1999) .......................................................................... 36

*Maxwell v. KPMG, LLP,*
No. 03 C 3524, 2007 WL 2091184 (N.D. Ill. July 19, 2007) ........................................ 21

*Maxwell v. KPMG LLP,*
--- F.3d ---, 2008 WL 746849 (7th Cir. Mar. 21, 2008) ....................................18, 19, 21

*MCA Financial Corp. v. Grant Thornton, L.L.P.,*
687 N.W.2d 850 (Mich. Ct. App. 2004) ................................................................*passim*

*McIntyre v. Lyon,*
37 N.W.2d 903 (Mich. 1949) ....................................................................................... 37

*Miller v. N.Y. Produce Exch.,*
550 F.2d 762 (2d Cir. 1977) ....................................................................................... 16

*Monroe v. Hughes,*
31 F.3d 772 (9th Cir. 1994) ......................................................................................... 25

*Montcalm Fibre Co. v. Advanced Organics,*
 No. 249642, 2005 WL 957425 (Mich. Ct. App. Apr. 26, 2005)
 *aff'd,* 474 Mich. 857 (2005) ...............................................................................16,18, 20

*Munroe v. Harriman,*
85 F.2d 493 (2d Cir. 1936) .......................................................................................11, 12

*Naghiu v. Inter-Continental Hotels Group Inc.,*
165 F.R.D. 413 (D. Del. 1996) .................................................................................... 10

*Nat'l Turners Bldg. & Loan Ass'n v. Schreitmueller,*
288 Mich. 580 (Mich. 1939) ........................................................................................ 11

*Nisselson v. Lernout,*
469 F.3d 143 (1st Cir. 2006) ....................................................................................... 13

*Official Comm. of Unsecured Creditors of Color Tile v. Coopers & Lybrand LLP*
322 F.3d 147 (2d Cir. 2003) ........................................................................................ 16

*Official Comm. of Unsecured Creditors of Corell Steel v. Fishbein & Co., P.C.,*
No. 91 Civ. 4919, 1992 WL 196768 (E.D. Pa. Aug. 10, 1992) .................................... 39

*Official Comm. of Unsecured Creditors of PSA. Inc.  v. Edwards,*
347 F.3d 1145 (11th Cir. 2006) .................................................................................... 16

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
267 F.3d 340 (3d Cir. 2001) ................................................................................ 13, 22, 24

*Orzel v Scott Drug Co.*,
537 N.W.2d 208 (Mich. 1995) ........................................................................... 1, 12

*Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*,
998 F.2d 1192 (3d Cir. 1993) ............................................................................. 6

*Pew v. Cardarelli*,
No. 03-742, 2005 U.S. Dist. LEXIS 40018 (N.D.N.Y. Mar. 17, 2005),
*aff'd,* 164 Fed. Appx. 31 (2d Cir. N.Y. 2006) ................................................. 27

*Pilot Industrial, Inc. v. Grant Thornton, LLP*,
No. 258689, 2006 WL 2033996 (Mich. Ct. App. July 20, 2006) .............................. 24-25

*PR Diamonds, Inc. v. Chandler*,
364 F.3d 671 (6th Cir. 2004) ............................................................................. 30-33

*Prentis Family Foundation, Inc. v. Barbara Ann Karmanos Cancer Institute*,
698 N.W.2d 900 (Mich. Ct. App. 2005) ............................................................ 23

*Raritan River Steel Co. v. Cherry, Bekaert & Holland*,
322 N.C. 200 (1988) ......................................................................................... 7

*Rose v. National Auction Group*,
646 N.W.2d 455 (Mich. 2002) ........................................................................... 23

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000) ................................................................................. 30

*Scalici v. Bank One, NA*,
No. 254632, 2005 WL 2291732 (Mich. Ct. App. Sept. 20, 2005) ................................ 13

*Sender v. Buchanan (In re Hedged-Investment Associates)*,
84 F.3d 1281 (10th Cir. 1996) ........................................................................... 16

*Seus v. John Nuveen & Co., Inc.*,
146 F.3d 175 (3d Cir. 1998) ............................................................................... 4

*Shivers v. McMartin, Wasek & Assoc., Inc.*,
No. 251569, 2005 WL 1959480 (Mich. Ct. App. Aug. 16, 2005) ................................ 36

*Skinner v. Square D Co.*,
516 N.W.2d 475 (Mich. 1994) ........................................................................... 17, 18, 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
127 S. Ct. 2499 (2007) ....................................................................................... 6, 30

*Transnation Title Ins. Co. v. Livingston*,
No. 243509, 2004 WL 203075 (Mich. Ct. App. Feb. 3, 2004) ..................................... 11

*Travelers Indemnity Co. v. Lake*,
594 A.2d 38 (Del. 1991) ................................................................................... 9

*Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*,
906 A.2d 168 (Del. Ch. 2006),
*aff'd,* 2007 Del. LEXIS 357 (Del. Aug. 14, 2007) ............................................22, 23, 38

*United States v. Arthur Young & Co.*,
465 U.S. 805 (1984)........................................................................................ 25

*Whitwell v. Archemere Acad. Inc.*,
463 F. Supp. 2d 482 (D. Del. 2006).................................................................... 10

*Yadlosky v. Grant Thornton L.L.P.*,
120 F. Supp. 2d 622 (E.D. Mich. 2000)............................................................... 29-31

*Zucker v. Sasaki*,
963 F. Supp. 301 (S.D.N.Y. 1997) ..................................................................... 31

## STATUTES

15 U.S.C. § 78ff (2006)................................................................................... 14

15 U.S.C. § 78j-1 ......................................................................................... 26

## RULES

Fed. R. Civ. P. 8(a) ...................................................................................... 28

Fed. R. Civ. P. 9(b) ..............................................................................*passim*

Fed. R. Civ. P. 12(b)(6)................................................................................ 3, 11

## MISCELLANEOUS

Codification of Statements on Auditing Standards ("AU") §§ 110.01-110.03 .............. 7, 8

Codification of Statements on Auditing Standards ("AU") § 230.12 ............................. 8

Codification of Statements on Auditing Standards ("AU") § 315 .................................. 27

Codification of Statements on Auditing Standards ("AU") § 316 ...........................26, 32

Codification of Statements on Auditing Standards ("AU") §§ 316.09-316.12 ........7, 8, 26

Codification of Statements on Auditing Standards ("AU") §§ 316.85 .......................... 32

Codification of Statements on Auditing Standards ("AU") § 326 .................................. 28

Restatement of Conflicts (Second) § 11 (1971) .................................................... 9

Restatement of Conflicts (Second) §§ 145, 148, 188 (1971) ..................................... 9, 10

## OTHER MATERIALS

*S.E.C. v. Collins & Aikman Corp.*,
No. 07 Civ 2419 (March 26, 2007) ................................................................ 6, 34, 35, 39

*United States v. Stockman*,
No. 07 Civ. 0220 (March 21, 2007) .......................................................... 6, 14, 34, 35, 39

## I.    INTRODUCTION

"When a plaintiff's action is based, in whole or in part, on his own illegal conduct, a fundamental common-law maxim [known as the wrongful conduct rule] generally applies to bar the plaintiff's claim." *MCA Fin. Corp. v. Grant Thornton, L.L.P.*, 687 N.W.2d 850, 853 (Mich. Ct. App. 2004) (quoting *Orzel v. Scott Drug Co.*, 537 N.W.2d 208, 212 (Mich. 1995)).  This case is simply a transparent effort by Plaintiff Collins & Aikman Litigation Trust (the "Litigation Trust"),[1] successor to the debtors, Collins & Aikman Corporation and Collins & Aikman Products Company (collectively, "C&A" or the "Company"), to profit from Plaintiff's own accounting fraud – a fraud that was designed to deceive, among others, C&A's independent auditor, KPMG LLP ("KPMG").  In the binding case of *MCA Financial Corp.*, the Michigan Court of Appeals held that the wrongful conduct rule of Michigan (the governing law for the claims against KPMG) bars a debtor or its trustee from bringing any claims against its auditor relating to the debtor's fraud.  *See* 687 N.W.2d at 853.  The same result is mandated here.

Plaintiff's claims also fail because Plaintiff fails to plead how KPMG's supposed misconduct was the proximate cause of its alleged injury, given that *Plaintiff's own actions, before and after KPMG's 2003 audit and its review of the Company's financial statements, admittedly caused the alleged injury*.  Moreover, Plaintiff's primary damages allegation against KPMG, the theory of "deepening insolvency," has not been adopted by Michigan courts, or by any court in these circumstances, where Plaintiff has failed to allege facts demonstrating that a

---

[1]    While the caption and preliminary paragraph of the First Amended Complaint identify C&A as plaintiff, paragraph five identifies the plaintiff as the Litigation Trust.  In any event, the Litigation Trust, as successor to C&A and its subsidiaries (Compl. ¶ 5), stands in the shoes of the debtor, C&A, and is subject to all applicable defenses, including that of *in pari delicto,* that KPMG would have against C&A.  *See infra* Section V.C.1.  Consequently, as used hereinafter, "Plaintiff" refers to C&A and its subsidiaries, as well as the Litigation Trust.

continued existence harmed C&A.

Beyond these fatal defects which defeat all of Plaintiff's claims against KPMG, each claim suffers additional shortcomings. The negligence claim fails because Plaintiff's conclusory allegations that KPMG violated Generally Accepted Auditing Standards ("GAAS") do not allege that KPMG failed to perform some action required under GAAS, much less tie any alleged audit failures to material misstatements in the 2003 financial statements.

Even more deficient is Plaintiff's attempt to twist this into a fraud claim. Plaintiff cannot establish with empty recitations of supposed GAAP and GAAS violations that KPMG's 2003 audit opinion – its only alleged "statement" – was false, much less that KPMG acted with scienter. Moreover, Plaintiff argues that KPMG defrauded C&A by recklessly not catching and informing Plaintiff *of its own fraud*. Plaintiff cannot establish that it reasonably relied on KPMG's audit opinion when Plaintiff knew the truth, and knew that KPMG's opinion was based on incomplete information due to Plaintiff's own active concealment. Plaintiff's theory is particularly ironic given that KPMG *uncovered* the accounting errors here, required management to explain and investigate, and refused to proceed with the 2004 audit.

Plaintiff's claim for aiding and abetting management's breach of fiduciary duty fails because Plaintiff has not (and cannot) allege that KPMG knew of Plaintiff's fraud.

Plaintiff's breach of contract claim fails because a claim against an auditor for failing to perform an audit properly sounds in negligence rather than contract, and any contract breach here was caused by Plaintiff's own breach in failing to provide accurate information to KPMG.

## II.      NATURE AND STAGE OF PROCEEDINGS

On May 17, 2007, C&A filed this action against former C&A officers, directors, Heartland Industrial Partners, L.P. and related entities, and C&A's outside auditors, PricewaterhouseCoopers ("PWC") and KPMG. Defendants filed motions to dismiss. Rather

than oppose, Plaintiff filed an amended complaint. The First Amended Complaint was filed January 28, 2008. KPMG now moves to dismiss the First Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## III.    SUMMARY OF ARGUMENT

1.    Michigan law governs Plaintiff's claims against KPMG.

2.    The "wrongful conduct" rule, or "*in pari delicto*," bars all of Plaintiff's claims against KPMG because Plaintiff stands at least in equal fault; Plaintiff's wrongful conduct proximately caused the alleged harm; and criminal statutes prohibit Plaintiff's conduct.

3.    Plaintiff fails to show how any alleged error by KPMG caused Plaintiff's loss given that Plaintiff's own management caused the various accounting errors and hid those errors from KPMG. Moreover, Plaintiff's primary damages theory of deepened insolvency has not been recognized by Michigan courts and has been rejected by most recent foreign courts.

4.    Plaintiff's negligence/malpractice claim fails to identify any GAAS violation.

5.    Plaintiff's fraud claim fails to allege with particularity facts showing that KPMG made materially false statements, that it did so intentionally or recklessly, or that Plaintiff relied on those statements in any way.

6.    Plaintiff's aiding and abetting claim fails to allege with particularity facts demonstrating that KPMG had knowledge of management's breaches of fiduciary duty.

7.    Plaintiff's breach of contract claim is duplicative of its negligence/malpractice claim and fails because of Plaintiff's own breach.[2]

---

[2]    Further, as set out in KPMG's Motion to Stay (D.I. 56), Plaintiff's claims against KPMG should be dismissed in favor of binding arbitration as agreed to by the parties pursuant to the terms of their contract. While the Federal Arbitration Act provides solely for a stay pending arbitration, the Third Circuit has held that this Court may dismiss an action in its entirety where

## IV.     BACKGROUND

### A.     Factual Allegations

Plaintiff represents the estate in bankruptcy of C&A and its subsidiary debtors, a manufacturer and supplier of automobile components.  First Amended Complaint, dated January 28, 2008 ("Compl.") ¶¶ 5-6.  In early 2001, C&A was acquired by Heartland, which in turn was managed by Defendant David A. Stockman.  *Id.* ¶¶ 27-28, 36.  Plaintiff alleges that C&A then went on a takeover spree, acquiring a number of companies in 2001.  *Id.* ¶¶ 47, 51-52.

Plaintiff alleges that Stockman, now in control of a highly-leveraged and much-expanded C&A, faced considerable pressure to increase revenues and income.  His response was to enter into a series of fraudulent transactions to improve the appearance of C&A's financial statements. *Id.* ¶ 39.  Beginning in 2001 (shortly after the acquisition of Joan Fabrics), Stockman, Michael Stepp (C&A's Chief Financial Officer) and Elkin McCallum (a board member of C&A and principal of Joan Fabrics) allegedly negotiated and entered into several false transactions, in which "round trip" payments were made between Joan Fabrics and C&A and recorded as rebate payments for prior purchases, thus improperly inflating C&A's quarterly income.  *Id.* ¶¶ 54-69. During 2002, C&A purchased at inflated prices certain business lines and other assets from defendant McCallum, who then repaid the overpayments as a series of unearned "supplier rebates" to C&A.  *Id.* ¶¶ 119-121.  Plaintiff alleges that, in the second quarter of 2002, Stockman and his associates also began to recognize improperly, or "pull forward," rebates from other suppliers.  *Id.* ¶¶ 61-65.  In 2004, Plaintiff expanded its improper rebate recognition practices to certain capital expenditures as well.  *Id.* ¶¶ 66-68.  The alleged purpose of these various acts was

---

all claims are subject to arbitration.  *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 179 (3d Cir. 1998), *overruled on other grounds*, *Green Tree Fin. Corp.- Ala. v. Randolph*, 531 U.S. 79 (2000).

WLM 513396.2

artificially to improve C&A's financial statements in order to satisfy its debt covenants, and enable it to take on additional debt. *Id.* ¶ 70-71.

Plaintiff alleges that these fraudulent transactions were undertaken by C&A's senior management, including: (1) CEO Stockman; (2) CFO Stepp; (3) Director McCallum; (4) David R. Cosgrove, C&A's Vice President of Finance; (5) Paul C. Barnaba, Director of Financial Analysis for purchasing; (6) Robert A. Krause, Vice President and Treasurer; (7) John A. Galante, Director of Strategic Planning; and at least six other directors and officers – all of whom are named defendants, either for allegedly participating in the fraud or knowingly allowing it to continue. *Id.* ¶¶ 7-20. Plaintiff further alleges that this fraud was approved by Heartland, which allegedly controlled C&A "through its share ownership of the Company and by designating a majority of the members of the Company's Board." *Id.* ¶ 30. Plaintiff sued the individual defendants and Heartland for violations of federal securities laws, breaches of fiduciary duty, fraud, and unjust enrichment, and Heartland for breach of contract. *Id.* ¶¶ 181-208.

Plaintiff alleges that management misled the auditors by creating false "side letters" with suppliers attributing the rebates to past purchases, and other false and misleading documents. *Id.* ¶¶ 61-63, 153-54. Management presented these false documents to the auditors "as 'proof' that C&A properly recorded the rebates in their accounting record." *Id.* ¶ 154.

PWC was C&A's auditor for fiscal years 2001 and 2002. *Id.* ¶ 33. KPMG was C&A's auditor for fiscal year 2003 and part of fiscal year 2004. *Id.* ¶ 34; Affidavit of Paul D. Brown, dated April 28, 2008 ("Brown Aff."), Exs. 1 and 2. Plaintiff's allegations against KPMG and PWC are virtually identical, as are its claims for fraud, negligence/malpractice, breach of contract, and aiding and abetting the officers' breach of their fiduciary duties. *Id.* ¶¶ 102-108, 209-246. KPMG's only alleged false statement is its 2003 audit opinion, which stated in

pertinent part:  "In our opinion, the consolidated financial statements referred to above present

fairly, in all material respects, the financial position of Collins & Aikman Corporation and

subsidiaries as of December 31, 2003."  *Id.* ¶ 112.

It was KPMG who uncovered the fraud.  As noted in the criminal actions against C&A

management, KPMG uncovered the rebate errors and brought them to C&A's audit committee.

Indictment, *United States v. Stockman*, No. 07 Cr. 0220, ¶ 62 (Mar. 21, 2007) (the "DOJ

Indictment"), Brown Aff. Ex. 3; Complaint, *S.E.C. v. Collins & Aikman Corp.*, No. 07 Civ. 2419,

¶ 54 (Mar. 26, 2007) (the "SEC Compl."), Brown Aff. Ex. 4.[3]  Soon thereafter, on March 17,

2005, C&A announced it was delaying the issuance of its fiscal 2004 financial results to review

its internal rebate policies; it subsequently retained independent counsel to investigate the issue.

Compl. ¶¶ 80, 86.  Approximately two months later, the Board of Directors removed Stockman

and on May 17, 2005, C&A filed for bankruptcy.  *Id.* ¶¶ 90-91.

**B.      The Roles Of Plaintiff And KPMG In Financial Reporting**

**1.      Management Prepares Financial Statements And Auditors Audit
Them**

A fundamental premise of financial reporting is that the company's management – not

the auditor – is responsible for the company's financial statements:

> The financial statements are management's responsibility.  The
> auditor's responsibility is to express an opinion on the financial
> statements.  Management is responsible for adopting sound

---

[3]      The Court is entitled to consider public documents incorporated into the Complaint (such
as the SEC Complaint, DOJ Indictment, and the Company's SEC filings), and public documents
not cited by Plaintiff but embraced by its allegations, on a motion to dismiss.  *See Tellabs, Inc. v.
Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007).  Additionally, a court "may consider
an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss
if the plaintiff's claims are based on the document."  *Pension Benefit Guar. Corp. v. White
Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993).  If this motion is converted to one for
summary judgment, then KPMG requests the right to supplement the record.

> accounting policies and for establishing and maintaining internal
> control that will, among other things, record, process, summarize,
> and report transactions (as well as events and conditions)
> consistent with management's assertions embodied in the financial
> statements.

Codification of Statements on Auditing Standards ("AU") § 110.03, "Responsibilities and

Functions of the Independent Auditor"; *City of Pontiac v. Pricewaterhouse Coopers, L.L.P.*, No.

06-076389-NM, 2008 WL 375992, at *5 (Mich. Ct. App. Feb. 12, 2008) ("An audit report

represents the auditor's opinion of the accuracy of the client's financial statements at a given

period of time. The financial statements themselves are the representations of management, not

the auditor.") (quoting *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 207

(1988)).

The auditor only opines on whether the company's financial statements fairly present, in

all material respects, the company's financial position in accordance with Generally Accepted

Accounting Principles or GAAP. *See* AU § 110.01. The issuance of an unqualified or "clean"

audit opinion by an auditor "does not guarantee that a client's accounts and financial statements

are correct" but rather "certifies only that [the auditor] exercised appropriate, not flawless, levels

of professional care and judgment" in conducting the audit. *In re IKON Office Solutions, Inc.*

*Sec. Litig.*, 277 F.3d 658, 673 (3d Cir. 2002).

> **2.     GAAS Establishes That Auditors Are Not Expected To Uncover**
> **Collusive Fraud Being Committed And Concealed By Management**

GAAS recognizes that auditors are not expected to uncover management's hidden fraud:

> [T]he auditor has a responsibility to plan and perform the audit to
> obtain reasonable assurance about whether the financial statements
> are free of material misstatement, whether caused by fraud or error.
> *However, absolute assurance is not attainable and thus even a*
> *properly planned and performed audit may not detect a material*
> *misstatement resulting from fraud.*

AU § 316.12, "Consideration of Fraud in a Financial Statement Audit" (emphasis added).

Likewise, GAAS provides that: "Because of the nature of audit evidence and the characteristics of fraud, the auditor is able to obtain reasonable, but *not absolute assurance* that material misstatements are detected."  AU § 110.02 (emphasis added).

The standards recognize that fraud is particularly hard to detect where the company and an outside third party create false documentation, or withhold documentation, such that an auditor does not know the true terms of an agreement.  GAAS repeatedly recognizes that it is virtually impossible for auditors to detect such hidden terms:

> Because of the characteristics of fraud, a properly and planned and performed audit may not detect a material misstatement . . . For example, auditing procedures may be ineffective for detecting an intentional misstatement that is concealed through collusion among personnel within the entity and third parties or among management or employees of the entity.  *Collusion may cause the auditor who has properly performed the audit to conclude that evidence provided is persuasive when it is, in fact, false . . . .  Furthermore, an auditor may not discover the existence of a modification of documentation through a side agreement that management or a third party has not disclosed.*

AU § 230.12, "Due Professional Care in the Performance of Work" (emphasis added); *see also* AU § 316.09 (same).

## V.     ARGUMENT

### A.     Motion To Dismiss Standard

To survive a motion to dismiss, a plaintiff cannot simply make "bald" assertions of the existence of each element of a claim.  *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429 (3d Cir. 1997).  A complaint "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Factual allegations must be enough to raise a right to relief *above the speculative level*" and must "state a claim to

relief that is *plausible* on its face." *Id.* at 1965, 1974 (emphasis added). Fraud-based claims are subject to a further heightened pleading standard. (*See infra* Section V.F.)

### B.    Michigan Law Governs The Claims Against KPMG

As Plaintiff's claims against KPMG arise under state law, Delaware's choice-of-law rules apply. *See Klaxon Co. v. Stentor Elec. Co.*, 313 U.S. 487, 496 (1941). Delaware follows the Second Restatement of Conflicts, which uses different choice-of-law tests based on the underlying claim. *See Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991).

The choice of law for negligence/professional malpractice claims depends on: (1) the location where Plaintiff's injury occurred, (2) the state where the conduct giving rise to the injury occurred, (3) the domiciles and residence of the parties, and (4) the place where the relationship between the parties is centered. Restatement of Conflicts (Second) § 145 (1971). Similarly, for fraud claims, "[w]hen the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties." *Id.* § 148. For a breach of contract claim, the court looks to the law of the state with the greatest connection to the contract; "if the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied." *Id.* § 188.

Here, all factors point to the application of Michigan law. On the tort claims, the location of the alleged injury to C&A is Michigan, the principal place of business of C&A. 2003 C&A Annual Report, Brown Aff. Ex. 5 (A complete copy of this public document is available at www.sec.gov). The allegedly injurious conduct – KPMG's audit work – took place in Michigan: the KPMG audit team was located in Michigan, was "frequently present" at C&A's headquarters and financial offices in Michigan, conducted its reviews and performed its audit in Michigan,

9

and issued the audit opinion letter there.  Compl. ¶ 34; Independent Auditor's Report, included in

2003 C&A Annual Report, Brown Aff. Ex. 5.  The alleged false representation – KPMG's audit

opinion – was made in Michigan, where the opinion was issued, and received in Michigan,

where C&A (to whom the opinion was addressed) is based.  Any action in reliance on the

opinion took place in Michigan, where C&A is based.  Finally, the relationship between the

parties is centered in Michigan.  As to the contract claims, the engagement contracts were

negotiated and executed in Michigan, and sent from KPMG's office in Detroit, Michigan to

C&A's headquarters in Troy, Michigan (2003 Agreement, Brown Aff. Ex. 1, at 1; 2004

Agreement, Brown Aff. Ex. 2, at 1); the audit (the subject matter of the contract) was performed

in Michigan; the interactions between the parties (and their representatives) occurred in

Michigan; and the ostensible injury occurred in Michigan.  Therefore, Michigan law governs all

of Plaintiff's claims against KPMG.[4]

### C.   Michigan's Wrongful Conduct Rule Bars All Of Plaintiff's Claims

Plaintiff alleges that KPMG is liable to Plaintiff for failing to detect various frauds that

C&A's management perpetrated, which benefited C&A and were structured to avoid KPMG's

detection.  Because the fraudulent conduct of C&A's management is imputed to C&A, and to

Plaintiff as C&A's successor, these claims are barred by the wrongful conduct rule (known in

other jurisdictions as the doctrine of *in pari delicto*).  *See MCA Fin. Corp.*, 687 N.W.2d at 858.

### 1.   Management's Allegedly Fraudulent Conduct Is Imputed To C&A

"[T]he fraudulent acts of a corporate officer may be imputed to a corporation where those

---

[4]      KPMG speaks only as to the law applicable to the claims against it, not against other
defendants.  Under the doctrine of depecage, a choice-of-law determination should be made as to
each claim in a case – not to the case as a whole.  *See* Restatement of Conflicts (Second) §§
145,188 (1971); *Whitwell v. Archemere Acad. Inc.*, 463 F. Supp. 2d 482, 485 (D. Del. 2006);
*Naghiu v. Inter-Continental Hotels Group Inc.*, 165 F.R.D. 413, 419-22 & n.4 (D. Del. 1996).

WLM 513396.2

acts (1) are in the course of employment and (2) are for the benefit of the corporation." *MCA Fin. Corp.*, 687 N.W.2d at 857. While the so-called "adverse interest" exception may lie if the corporate officer's actions are done *solely* for his benefit, so long as the agent's actions either benefit in part, or are motivated in part to benefit, the corporation, his actions are imputed to the corporation. *Id.* at 858 (finding that the adverse interest exception does not apply where the corporate officers' actions were motivated "even in part, [by] a misguided belief that their wrongdoing would benefit the corporation[]"); *Transnation Title Ins. Co. v. Livingston*, No. 243509, 2004 WL 203075, at *4 (Mich. Ct. App. Feb. 3, 2004) (where agent is acting "at least in part on behalf of the principal's interest," his actions are imputed to the principal).

Here, Plaintiff's Complaint alleges that management's fraudulent conduct was performed in the course of their employment and benefited C&A, and supports the imputation of management's actions to Plaintiff.[5] For example, from 2002 to 2004, management, in the course of negotiating contracts with C&A's partners and suppliers, allegedly participated in a "rebate scheme" that served to increase C&A's reported earnings. Compl. ¶¶ 63-69. Later, in early 2005, members of management, while performing their duties in acquiring financing for C&A, allegedly included additional receivables in its "borrowing base" to reduce the amount of money owed to G.E. Capital, (*id.* ¶ 75), and made false statements to Credit Suisse to obtain $75 million

---

[5]    Even where an agent acts solely in his own interest, adversely to his principal, and does not in fact benefit the principal in any way, his conduct will still be imputed to principal where the agent is the "sole actor" for the principal. *Nat'l Turners Bldg. & Loan Ass'n v. Schreitmueller*, 288 Mich. 580, 586-87 (Mich. 1939) (citing *Munroe v. Harriman*, 85 F.2d 493, 496 (2d Cir. 1936)). Plaintiff alleges that Defendant Stockman was the mastermind of the alleged fraud (*see, e.g.,* Compl. ¶ 26), and thus his actions are imputed to Plaintiff. For purposes of imputation, Stockman was the "sole actor" for C&A, as he controlled Heartland, (*see id.* ¶¶ 7, 28, 45), which in turn controlled C&A's operations. *See, e.g., id.* ¶¶ 28, 30, 45-46 (alleging Heartland's control over C&A through its share ownership and designated representatives on the C&A board); *id.* ¶¶ 53 *et seq.* (describing Stockman as causing the company to inflate its earnings by engaging in false transactions).

11

in financing.  *Id.* ¶ 87.  These actions were in the course of their employment and directly

benefited C&A – increasing its stock price and available capital and reducing its expenditures.

*See MCA Fin. Corp.*, 687 N.W.2d at 858 (wrongful conduct of management imputed to the

company where management acted "at least in part, out of a motivation of keeping the

corporations afloat, and thus provide a benefit to the corporations"); *Baena v. KPMG LLP*,  453

F.3d 1, 7 (1st Cir. 2006) ("A fraud by top management to overstate earnings, and so facilitate

stock sales or acquisitions, is not in the long-term interest of the company; but, like price-fixing,

it profits the company in the first instance and the company is still civilly and criminally liable");

*Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449, 451 (7th Cir. 1982) (management's "inflating

of inventories" – permitting corporation "to borrow money at lower rates" and "greatly

increas[ing] the market price of its stock" – benefited the corporation).[6]  Therefore, C&A

management's actions are imputed to C&A, and, in turn, to Plaintiff.

> **2.    Plaintiff's Allegations Satisfy All Of The Elements Of Michigan's Wrongful Conduct Rule**

Michigan's wrongful conduct rule holds that "[a]s between parties *in pari delicto*, that is

equally in the wrong, the law will not lend itself to afford relief to one as against the other, but

will leave them as it finds them."  *Orzel*, 537 N.W.2d at 212-13 (dismissing claim by a drug user

who fabricated prescriptions in order to acquire narcotics against a pharmacist on the basis of the

wrongful conduct rule).  The *Orzel* court set out the three factors that trigger the wrongful

conduct rule:  (1) the plaintiff and defendant stand at least in equal fault, (2) the plaintiff's illegal

---

[6]      While Plaintiff claims that management was motivated to protect their reputations and income, this interest could only be served by the survival and profit of C&A.  Further, where a principal accepts the benefits of a fraudulent bargain arranged by an agent, the agent's conduct is imputed to the principal and the principal is bound by the agent's knowledge of that fraud.  *See Munroe*, 85 F.2d at 495-96.

conduct is a proximate cause of the injury, and (3) the nature of plaintiff's wrongful conduct is prohibited under a criminal or penal statute. *Id.* at 214-17. If these factors are present, Michigan courts will grant the equivalent of a motion to dismiss. *Glazier v. Lee*, 429 N.W.2d 857, 860 (Mich. Ct. App. 1988); *Scalici v. Bank One*, NA, No. 254632, 2005 WL 2291732, at *2, 7 (Mich. Ct. App. Sept. 20, 2005); *MCA Fin. Corp.*, 687 N.W.2d at 852-53.[7] Plaintiff's allegations satisfy each of these elements.

First, Plaintiff's fault for its bad conduct far exceeds any alleged fault of KPMG. The Complaint alleges that Plaintiff, through Stockman and the other officers, intentionally perpetrated the fraud that is the center of the Complaint. Even taking the allegations of the Complaint as true, KPMG merely failed to detect Plaintiff's fraud – a fraud Plaintiff intentionally concealed from KPMG. Compl. ¶ 154. Plaintiff stands *at least* in equal fault.

Second, Plaintiff's fraud was a proximate cause (indeed, the direct cause) of the alleged injury. The damages theory Plaintiff has articulated against KPMG is "deepening insolvency." But it was Plaintiff who engaged in the allegedly fraudulent rebate transactions, (Compl. ¶¶ 63-69), Plaintiff who prepared its allegedly fraudulent financial statements, (*id.* ¶¶ 80-84), and Plaintiff who decided not to file for bankruptcy earlier. Thus, Plaintiff's own wrongful conduct was *at least* a proximate cause of any deepened insolvency.

Finally, Plaintiff's allegedly wrongful acts violated numerous criminal laws. Plaintiff's allegations against the individual defendants contain clear-cut assertions of criminal liability. Compl. ¶ 44. Moreover, the United States Attorney's Office recently unsealed an eight-count

---

[7]    Federal courts will similarly grant a motion to dismiss pursuant to Rule 12(b)(6) on the ground of *in pari delicto*. *See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 360 (3d Cir. 2001); *Nisselson v. Lernout*, 469 F.3d 143, 158 (1st Cir. 2006); *cert. denied,* 127 S. Ct. 2131 (U.S. 2007), *Baena*, 453 F.3d at 6.

13

indictment against Defendants Stockman, Stepp, Cosgrove and Barnaba, alleging securities

fraud, wire fraud, bank fraud, obstruction of agency proceedings, and criminal conspiracy. *See*

DOJ Indictment, Brown Aff. Ex. 3. The penalties for willful securities fraud alone could result

in sentences for each of up to 20 years and fines up to $5 million. *See* 15 U.S.C. § 78ff (2006).

Because this element is also met, Plaintiff's claims against KPMG are barred by the wrongful

conduct rule.

>    **3.    Recent Michigan And Other Precedent Holds That The Wrongful
>         Conduct Rule Bars A Bankrupt Company's Claims For Alleged
>         Negligence/Malpractice Against Its Former Auditors**

The Michigan Court of Appeals recently applied the "wrongful conduct" rule to bar

claims against an auditor in *MCA Financial Corp.*, a case closely analogous to the present one.

In *MCA*, a mortgage bank had sold and marketed fraudulent investment products to customers in

violation of state and federal law. *See* 687 N.W.2d at 852. Management attempted to conceal

the fraud but eventually failed; the company entered bankruptcy soon after the fraud came to

light; and securities fraud enforcement actions were brought against management. *Id.* While in

bankruptcy, the debtor, through its liquidating agent, sued its auditors for failing to detect

fraudulent transactions and accounting irregularities. *Id.* The court held that management's

conduct was imputed properly to the company under Michigan law, noting that actions of

management to inflate the company's financial statements in order to keep it solvent are not

adverse to the company's interest and thus do not trigger the "adverse interest" exception to

common-law principles of agency. *Id.* at 858. The court further held that the wrongful conduct

rule barred plaintiffs' claims against its auditor – both those alleging an omission (failing to

detect management's fraud) and those alleging an affirmative act (certifying the company's

financial statements as proper). *Id.* at 854-55 ("Because plaintiffs cannot show that the

wrongdoing occurred at defendants' urging or affirmative advice, plaintiffs stand *in pari delicto*

14

with defendants.  In short, to prevail, plaintiffs would have to show more than that defendants turned a blind eye to plaintiffs' wrongdoing, but that . . . the scheme originated with defendants rather than with plaintiffs.")  Finally, the court held that the debtor was not entitled even to commence an action to benefit its allegedly defrauded investors – if such an action existed at all, then it could only be raised by the defrauded investors directly.  *Id.* at 856.

*MCA Financial Corp.* is controlling precedent, on point, and requires dismissal of all claims against KPMG.  Management here – including the dominating majority shareholder and nearly all of the officers and directors – conducted the alleged fraud.  Compl. ¶¶ 22-25.  The alleged fraud was undertaken to prop up C&A's financial statements and enable it to borrow additional funds – therefore, management's conduct is properly imputed to C&A.  *Id.* ¶¶ 70-74.  Under the principles of Michigan's wrongful conduct rule, C&A stands in at least equal fault to its auditors.  The wrongful conduct rule thus bars all of Plaintiff's claims against KPMG.

Courts in other jurisdictions similarly have applied the doctrine of *in pari delicto* to bar claims brought by a bankrupt debtor, or a trustee in bankruptcy, against its former auditors.  For instance, in *Baena v. KPMG LLP*, 389 F. Supp. 2d 112, 114 (D. Mass. 2005), *aff'd,* 453 F.3d 1 (1st Cir. 2006), the trustee of a post-confirmation litigation trust asserted claims against the debtor's former auditor, KPMG, including claims for professional malpractice, aiding and abetting management's breach of fiduciary duty, and state unfair trade practices laws.  Plaintiff alleged that KPMG's audit opinions allowed the company to take on additional debt that the company was unable to repay.  *Id.*  The trial court dismissed the claims under *in pari delicto*, holding that "the Breaching Managers controlled the corporation, perpetrated the fraud, and, in the words of the Complaint, 'caused' the $340 million of additional debt to be incurred.  As such, the corporation cannot sustain a claim against Defendants arising out of its own misdeeds."  *Id.*

at 120. The First Circuit affirmed because, "assuming fraudulent financial statements [existed],

senior L&H management were, on the trustee's own version of events, the primary wrongdoers."

*Baena*, 453 F.3d at 7. The allegations here are fundamentally the same. Several other courts

have also applied *in pari delicto* to bar claims by a bankrupt entity against its former auditors,

counsel or business partners for failing to detect management's own fraud.[8]

    **D.**    **Plaintiff Fails To Allege Causation Or Cognizable Damages**

In addition, Plaintiff's claims all fail for lack of causation or damages.

    **1.**    **Plaintiff Does Not Allege How KPMG's Audit Or Review Of The Company's Statements Proximately Caused C&A Harm**

For each claim, Plaintiff must allege with sufficient specificity how KPMG's actions

proximately caused its injury. *See Dresser v. Cradle of Hope Adoption Ctr., Inc.,* 358 F. Supp.

2d 620, 633 (E.D. Mich. 2005) (for fraud the "false representation relied on by plaintiff actually

must be the proximate cause for the alleged injury"); *Montcalm Fibre Co. v. Advanced Organics*,

No. 249642, 2005 WL 957425, at *4 (Mich. Ct. App. Apr. 26, 2005) (negligence and breach of

contract claims require showing of proximate cause), *aff'd*, 474 Mich. 857 (2005). Under

Michigan law, "proximate cause" requires a showing of both "cause in fact" *and* "legal cause."

---

[8]    *See, e.g., Christians v. Grant Thornton, LLP*, 733 N.W.2d 803, 814-15 (Minn. Ct. App. 2007) (*in pari delicto* bars trustee's negligence claim against former auditor because "when 'a defendant's only sin is its failure to prevent transgressions by the plaintiff, no benefit flows to the public from rewarding the transgressor'") (quoting *Miller v. N.Y. Produce Exch.*, 550 F.2d 762, 768 (2d Cir. 1977)); *Official Comm. of Unsecured Creditors of Color Tile v. Coopers & Lybrand, LLP*, 322 F.3d 147, 163-66 (2d Cir. 2003) (same for breach of fiduciary duty claim against former auditors); *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152-56 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 45 (2006) (same for trustee's RICO claims against former partners); *Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 837 (8th Cir. 2005) (same for trustee's negligence claims against industry organization); *Terlecky v. Hurd (In re Dublin Sec., Inc.)*, 133 F.3d 377, 381 (6th Cir. 1997) (same for claims of negligence, breach of fiduciary duty, negligent misrepresentation, recklessness, and common law fraud against former lawyers); *Sender v. Buchanan (In re Hedged-Inv. Assoc's)*, 84 F.3d 1281, 1285 (10th Cir. 1996) (same for trustee's claims against former partner under state partnership act).

*Skinner v. Square D Co.,* 516 N.W.2d 475, 479 (Mich. 1994); *City of Pontiac*, 2008 WL 375992, at *6 ("cause in fact" and "legal or proximate cause" are elements of auditing negligence claim in Michigan). "Cause in fact" requires that the injury "would not have come about but for" the defendant's conduct." *Haliw v. Sterling Heights*, 627 N.W.2d 581, 588 (Mich. 2001). "Legal cause" further requires that such injury was foreseeable. *Skinner*, 516 N.W.2d at 479.

Plaintiff's allegations demonstrate that C&A's own business actions – fraudulent or otherwise – caused the Company's alleged damages. While Plaintiff claims that KPMG's failure to detect Plaintiff's own fraud was the "but for" cause of the Company's downfall (Compl. ¶ 107), even if that were true,[9] "but for" causation alone is insufficient; Plaintiff fails to plead facts establishing legal causation. Plaintiff's allegations show that the C&A executives' poor, and allegedly fraudulent, business decisions were responsible for the Company's insolvency:

- "By the end of 2001, Collins & Aikman had announced and/or completed three major acquisitions which dramatically increased the size of the Company. This acquisition spree positioned the Company for disaster." Compl. ¶ 36.

- "[D]uring the time that Defendant Stockman and his confederates ran the Company, Collins & Aikman's debt load had dramatically increased from approximately $884 million as of December 30, 2000 to approximately $1.6 billion as of December 31, 2004." *Id.* ¶ 72.

- "By January 2005, just a few months after raising the $415 million in the August Senior Note Offering, the liquidity crisis at Collins & Aikman worsened. During this time, Stockman caused Collins & Aikman to delay paying its debts and bills for as long as possible because Collins & Aikman was beginning to, if it had not already, run out of credit." *Id.* ¶ 73.

- "In short, Defendant Stockman and others acting at his direction engaged in a pattern of fraudulent conduct with respect to GECC that, when discovered, caused great harm

---

[9]    Moreover, Plaintiff's but for allegations fail because it cannot show what it would have done but for KPMG's alleged negligence and that the outcome would have been any better. *See Christians*, 733 N.W.2d at 813 ("Certainly many positive things *could* have occurred but for [the auditor's] alleged negligence, but these speculative potential outcomes are the problem with the causation element rather than the answer to it."); *see infra* Section V.D.2.c.

17

to the Company, its relations with GECC – a major lender to the Company, and its reputations in the business community." *Id.* ¶ 76.

- "Based, in material part, on these misrepresentations [by Defendant Stockman and others acting at his direction] Credit Suisse First Boston Corporation agreed to lend Collins & Aikman an additional $75 million in financing. . . [and] this particular $75 million caused Collins & Aikman to take on debt that prevented the Company from being repaired and resulted in massive losses in the value and worth of the Company." *Id.* ¶¶ 87, 89.

Plaintiff cannot allege that KPMG caused Plaintiff to increase its debt load, run out of credit, and have its reputation in the business community damaged, when Stockman and other C&A executives were directly responsible for those actions. In other words, Plaintiff fails to allege that KPMG proximately caused its injuries. *See Skinner*, 516 N.W.2d at 479; *Montcalm Fibre Co.*, 2005 WL 957425, at *5 (holding that while a fire may have contributed to plaintiff's financial problems it could not be the proximate cause of its bankruptcy because that resulted from plaintiff's own business failings).

The Seventh Circuit recently affirmed this principle, holding that an auditor cannot be liable for a company's bankruptcy caused by management's own actions because an auditor is not "an insurer against conditions outside his control." *Maxwell v. KPMG LLP*, --- F.3d ---, 2008 WL 746849, at *2-3 (7th Cir. Mar. 21, 2008) (Posner, J.). In *Maxwell*, KPMG audited the financial statements of a predecessor company, which acquired and merged an internet company into a single new company. Thirteen months later, after the dot.com bubble burst, the newly-formed company declared bankruptcy. The bankruptcy trustee for the company sued KPMG for malpractice alleging that the acquisition never would have gone through if KPMG had not approved the predecessor company's fourth-quarter earnings statement which was allegedly overstated. *Id.* at *1. Assuming (without deciding) that KPMG was negligent, Judge Posner held that KPMG was not the proximate cause of the company's bankruptcy. The company failed because of management's own decision to purchase an internet business and the ensuing dot.com

18

bust. Even if KPMG's approval of the company's accounting influenced the internet company's agreement to be bought, the internet company was not harmed by KPMG because it was doomed by the collapse of the internet sector. *Id.* at *2. Further, KPMG did not harm the predecessor company because KPMG was not hired to provide business advice and thus was not "the insurer against the folly (as it later turned out) of a business decision (the decision to try to acquire [the internet company]) unrelated to what an auditor is hired to do." *Id.* at *3. These principles apply with equal force here, where management's own actions caused Plaintiff's downfall.

Plaintiff's allegations of causation also fail because the vast majority of the alleged wrongdoing occurred either *before* or *after* KPMG's 2003 audit work or its review of the Company's financial statements in 2003 and 2004. For instance, Plaintiff alleges that starting in September 2001 – a full two years before KPMG's retention – and leading up until the first quarter of 2003, Director and Officer Defendants "engaged in a series of fraudulent 'round-trip' transactions with Joan Fabrics which were designed to improperly increase Collins & Aikman's reported income and artificially inflate its reported financial results" by at least $14.9 million. Compl. ¶¶ 53-57; s*ee also id*. ¶ 48 (alleging that C&A provided Defendant Becker with a retainer of $300,000 for assisting the integration of the Becker Group into C&A without disclosing the retainer in the Company's SEC filings); *id.* ¶¶ 58-61 (alleging that starting in "early 2002" Defendant and Officer Defendants caused C&A to inflate earnings by improperly recognizing rebates). Indeed, the majority of the allegedly improper rebates were recognized before KPMG was retained as C&A's auditor. *Id.* ¶ 65. KPMG cannot be liable for damages resulting from actions taken before it was retained to audit C&A's financial statements. *Frye v. City of Detroit*, 256 Mich. 466, 470 (1932) ("defendant . . . cannot be held to have its negligence relate back and encompass the precedent negligence of, and injuries inflicted by, an independent tort-feasor").

Acts predating KPMG's involvement cannot establish proximate causation. *Skinner*, 516

N.W.2d at 162-163; *Montcalm Fibre Co,* 2005 WL 957425, at *5.

Similarly, unforeseeable acts occurring *after* KPMG's 2003 audit and reviews break any

proximate causal link that may have existed. For example, the Complaint alleges:

- misdeeds by Stockman in connection with GECC transaction, which occurred in December 2004 and early 2005 – nine months after KPMG had completed its 2003 audit and after KPMG's last review of the Company's financial statements for the third quarter of 2004 (Compl. ¶¶ 74-75);

- that Stockman and other Director and Officer Defendants inappropriately included tooling invoices in the Company's borrowing base in early 2005 (*id*. ¶¶ 77-79);

- that the Company's press release in March 2005 was false and misleading (*id*. ¶¶ 80-82); and

- that Stockman's presentations in March 2005 to JP Morgan Chase and Credit Suisse First Boston Corporation to forestall C&A's filing for bankruptcy were false and misleading. *Id*. ¶¶ 85-87.

Even if proximate cause as to KPMG were otherwise pled (which it is not), these unforeseeable

post-audit actions break the alleged connection between KPMG's 2003 audit and reviews and the

alleged damage. *In re Parmalat Sec. Litig.,* 501 F. Supp. 2d 560, 586-87 (S.D.N.Y. 2007)

(holding plaintiff had not sufficiently alleged proximate cause where the alleged reckless conduct

occurred two years after key audit reports were issued); *see also Dunn v. Lederele Labs.,* 328

N.W.2d 576, 582 (Mich. Ct. App. 1982) ("unforeseeable intervening forces destroy causation

and negate liability"); *AUSA Life Ins. Co. v. Ernst & Young,* 119 F. Supp. 2d 394, 407 (S.D.N.Y.

2000) (rejecting fraud claims because "plaintiffs' loss on their investments in [the company's]

notes was not a foreseeable result of E&Y's complicity in [the company's] misrepresentations

but of post-audit developments that could not have been anticipated"), *aff'd,* 39 Fed. Appx. 667

(2d Cir. 2002); *Maxwell v. KPMG, LLP,* No. 03 C 3524, 2007 WL 2091184, at *4 (N.D. Ill. July

19, 2007) (rejecting professional malpractice claim because "accountant cannot be held liable for

losses if subsequent events over which the accountant had no control - such as the plaintiff's bad luck or poor management decisions - caused the losses"), *aff'd* --- F.3d ---, 2008 WL 746849 (7th Cir. Mar. 21, 2008).  Plaintiff makes no allegation that the actions of the Officer and Director Defendants that occurred after KPMG's audits and reviews were foreseeable.  As a result, Plaintiff's proximate causation claim fails as a matter of law.

### 2.    Plaintiff's Damages Theory Fails As A Matter Of Law

#### a.    Plaintiff Relies On A "Deepening Insolvency" Theory Of Damages

As discussed below in Section V.D.2.b, Plaintiff's damages theory – that KPMG's audit and review of C&A's financial statements prolonged the life of the insolvent Company and allowed C&A to acquire "increasingly unmanageable debts" (Compl. ¶ 215) – is not recognized under Michigan law.[10]  Recognizing that the "deepening insolvency" theory of damages is not cognizable, Plaintiff deleted the term "deepening insolvency" from its Amended Complaint. *Compare* Complaint, dated May 17, 2007 ¶¶ 40, 60, 72, 76, 149, 156, 167, 190, 191 *with* First Amended Complaint, dated January 28, 2008 ¶¶ 39, 71, 89, 93, 177, 184, 195, 220, 221. Plaintiff's wordsmithing, however, does not change the simple fact that it effectively has pled a "deepening insolvency" theory of damages.  For example, Plaintiff alleges that KPMG damaged C&A by "prolonging the life" of the insolvent company, (Compl. ¶¶ 142, 177, 184), which is the very definition of "deepening insolvency."  *See MCA Fin. Corp.,* 687 N.W.2d at 858 ("deepening insolvency theory recognizes that prolonging a corporation's operations may

---

[10]    To the extent Plaintiff attempts to allege damages for costs associated with internal investigations concerning its own misconduct (Compl. ¶¶ 95-101), this allegation fails as well. Plaintiff does not allege that the costs of these investigations should be born by KPMG. Moreover, as discussed above (*see supra* Section V.D.1), it was management's conduct, not KPMG, that was the proximate cause of the internal investigation.

increase its insolvency"). Plaintiff's allegations that KPMG inflicted upon C&A "unwieldy debt," "unnecessary debt," "unmanageable debt," "unnecessary operating expenses" in connection with the new debt, experienced the "loss of use of its money," or lost the "opportunity to continue as a going concern," (Compl. ¶¶ 215, 220, 221, 229), also echo the many formulations of a deepening insolvency theory. *See Parmalat,* 501 F. Supp. 2d at 575-78 (allegation that defendant cause company to incur "unwieldy debt" is characteristic of deepening insolvency theory) (citing *Lafferty*, 267 F.3d at 349-50); *In re CitX Corp., Inc.*, 448 F.3d 672, 681 (3d Cir. 2006) (defining deepening insolvency as "fraudulent expansion of corporate debt and prolongation of corporate life" and "fraudulent and concealed incurrence of debt.").

> **b.    Michigan Has Not Adopted And Would Likely Reject The Theory Of Deepening Insolvency**

It is apparent why Plaintiff chose to delete the term "deepening insolvency" after seeing the Motions to Dismiss: deepening insolvency has never been recognized in Michigan. *See MCA Fin. Corp.*, 687 N.W.2d at 858 (noting that other courts have considered deepening insolvency theory but citing no Michigan cases and not reaching the merits of the theory).[11] As a theory of damages or a theory of liability, deepening insolvency has been rejected in other jurisdictions. *CitX Corp.*, 448 F.3d at 678, 680-81 (rejecting deepening insolvency as a theory of damages); *Christians*, 733 N.W.2d at 811 (same); *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.,* 906 A.2d 168, 205 (Del. Ch. 2006) (rejecting deepening insolvency as a cause of action because to recognize it would "fundamentally transform Delaware law"), *aff'd,* 2007 WL 2317768 (Del. Aug. 14, 2007).

Michigan courts would likely reject the deepening insolvency doctrine because the theory

---

[11]    KPMG has performed a diligent search of Michigan case law and has not found any cases other than *MCA Financial Corp.* that consider the deepening insolvency theory.

conflicts with Michigan law in several ways.  First, Michigan has long embraced the business judgment rule which states that "[a] court should be most reluctant to interfere with the business judgment and discretion of directors in the conduct of corporate affairs."  *Matter of Estate of Butterfield*,  341 N.W.2d 453, 459 (Mich. 1983).  Michigan would reject deepening insolvency because it contradicts the business judgment rule.  *See Trenwick,* 906 A.2d at 205 (rejecting deepening insolvency because the board of directors of an insolvent company is protected by the business judgment rule and "does not become a guarantor" of "a business strategy that it believes will increase the corporation's value, but that also involves the incurrence of additional debt").[12]

Second, Michigan would reject deepening insolvency because established doctrines, such as breach of fiduciary duty and professional malpractice, provide adequate remedies for the wrongs that deepening insolvency purports to address.  *See In re Amcast Industrial Corp.,* 365 B.R. 91, 117-19 (Bankr. S.D. Ohio 2007) ("[A]t its best the deepening insolvency theory is redundant . . . .").  Since Michigan recognizes breach of fiduciary duty as a claim, there is no need to apply the doctrine of deepening insolvency.  *See Rose v. Nat'l Auction Group,* 646 N.W.2d 455, 469 (Mich. 2002); *Prentis Family Found., Inc. v. Barbara Ann Karmanos Cancer Inst.,* 698 N.W.2d 900, 908 (Mich. Ct. App. 2005); *City of Pontiac*, 2008 WL 375992, at *6.

### c.    Even If Michigan Accepted The Doctrine Of Deepening Insolvency, It Would Not Apply Here

Moreover, those non-Michigan courts that have recognized deepening insolvency have limited its application to circumstances that are not present here.  Plaintiffs' theory appears to be that in August 2004, the Company sold $415 million in notes which "permitted Collins & Aikman to take on debt that precluded the Company from being repaired by providing it with

---

[12]     Since a claim for deepening insolvency cannot be raised against directors and officers, *a fortiori* it cannot survive against professionals advising those directors and officers.

funds it would rapidly lose and be unable to repay due to the huge hidden operating losses it already had incurred and was continuing to incur." Compl. ¶ 71. Despite the additional funds, C&A continued to suffer operating losses and eventually entered bankruptcy. *Id.* ¶¶ 73, 88-91.

The incurrence of new debt, however, does not deepen a company's insolvency. As the *Parmalat* court explained:

> The point is that a company's insolvency is not deepened simply by the incurrence of new debt where the company suffers no loss on the loan transaction. The insolvency is deepened when, for example, the proceeds of the loan are squandered or assets otherwise are looted. It is at that point that the gap between liabilities and assets widens and the ability to service outstanding debt is impaired.

501 F. Supp. 2d at 574-75; *CitX*, 448 F.3d at 677 (auditor's opinion allowing CitX to raise funds "lessened CitX's insolvency" rather than deepening it).

Plaintiff's conclusory allegations that an earlier bankruptcy would have been beneficial are insufficient to state a valid claim of deepening insolvency for several reasons. Compl. ¶ 172. First, Plaintiff fails to allege that an earlier filing would have been viable. *Parmalat*, 501 F. Supp. 2d at 576-78. Second, the allegation that C&A could have reorganized or generated more value is purely speculative. *Id.* at 577. Finally, Plaintiff has failed to allege specific injuries – such as heightened "legal and administrative costs," "operational limitations," or the "undermin[ing of] a corporation's relationships with its customers, suppliers, and employees" – that have been recognized by courts which still apply a deepening insolvency theory of damages. *Lafferty*, 267 F.3d at 349-50. Thus, Plaintiff's allegations cannot survive a motion to dismiss.

### E.    Plaintiff's Negligence Claim Fails As A Matter Of Law

In addition to the above fatal defects, Plaintiff's negligence claim fails because it does not allege facts demonstrating that KPMG breached a duty – that KPMG failed to perform some required act – as is required for negligence. *Pilot Indus., Inc. v. Grant Thornton, LLP*, No.

24

258689, 2006 WL 2033996, at *1 (Mich. Ct. App. July 20, 2006). An auditor who complied

with GAAS has not breached a duty and therefore is not negligent. *Id.* at *1 ("Accountants, like

physicians and lawyers, owe a duty to perform their services with that degree of skill and

competence reasonably expected of persons in their profession in the community."); *United*

*States v. Arthur Young & Co.*, 465 U.S. 805, 811 (1984); *Monroe v. Hughes*, 31 F.3d 772, 774

(9th Cir. 1994) ("Accountant's good faith compliance with [GAAP] and [GAAS] discharges the

accountant's professional obligations to act with reasonable care.").

Dismissal of Plaintiff's negligence claim is warranted here, where Plaintiff merely recites

GAAS provisions and then conclusorily asserts that those provisions have been violated.

*Cambridge Biotech Corp. v. Deloitte & Touche,* No. 96-1480-A, 1997 WL 42516, at *4 (Mass.

Super. Ct. Jan. 28, 1997) (dismissing negligence claim because plaintiff's conclusory allegations

failed "to specify facts concerning defendant's alleged negligent acts or omissions, specific

GAAS violations, and what facts [auditor] knew or should have known concerning plaintiff");

*D.D. Hamilton Textiles, Inc. v. Estate of Mate,* 269 A.D.2d 214, 215 (N.Y.A.D. 1st Dep't 2000)

(same); *cf. Kloian v. Schwartz*, 725 N.W.2d 671, 677 (Mich. Ct. App. 2006) (conclusory

allegations are insufficient to state a cause of action for legal malpractice). For the most part,

this is exactly what Plaintiff has done here. Compl. ¶ 143 (alleging that KPMG violated various

GAAS, without alleging *how* or *why*); *id.* ¶ 149 (listing a number of general GAAS provisions

but failing to allege that KPMG violated them or how KPMG violated them). Indeed, many of

Plaintiff's allegations are so boilerplate that they impermissibly conflate PWC and KPMG. *See,*

*e.g.*, Compl. ¶¶ 102-103, 106-109, 113-115, 122-24, 127, 137, 140, 148-165, 167-172, 177-180.

Plaintiff's few attempts to formulate more specific allegations of GAAS violations fail

for a variety of reasons, including that most do not relate to the alleged improper rebates, which

constitute the only alleged material error in the 2003 financial statements.

### 1.     Alleged Failure To Consider Red Flags

Plaintiff's allegation that KPMG violated AU § 316 by issuing its 2003 audit opinion despite the presence of numerous "red flags" (Compl. ¶¶ 158-59) fails for three reasons.[13]  First, Plaintiff alleges no facts to support its bald conclusion that "[these risk factors] were present at Collins & Aikman."  *Id.* ¶ 159.  In fact, the listed "red flags" are copied verbatim from AU § 316 and do not constitute a GAAS violation.  *See Cambridge Biotech Corp.*, 1997 WL 42516, at *4.  Second, Plaintiff fails to allege that these supposed red flags were known, or should have been known, by KPMG.  Third, and critically, Plaintiff fails to allege that the red flags required KPMG to perform some audit step it did not perform, *i.e.*, that the audit did not comply with GAAS.  *See* AU §§ 316.09-316.12.

### 2.     Alleged Failure To Examine Related Party Transactions

Plaintiff's allegation that KPMG failed to determine "the values Collins & Aikman ascribed to entities that it purchased from Defendant McCallum in its financial statements," (Compl. ¶ 169), confuses PWC and KPMG.  First, the McCallum transaction occurred in 2002 – the year *before* KPMG's audit – and Plaintiff fails to explain how it could have affected the 2003 financial statements or KPMG's audit.  Second, even if the 2002 transaction was relevant to the 2003 audit (which it was not), Plaintiff does not identify any GAAS provision requiring an

---

[13]     Plaintiff alleges that KPMG violated Section 10A of the Securities Exchange Act by failing *to determine* whether an illegal act occurred.  Compl. ¶ 161.  Plaintiff misstates the obligation that the Act imposes on auditors.  Section 10A requires no such determination, but merely requires that audits include procedures designed to provide *reasonable assurance* of detecting illegal acts.  15 U.S.C. § 78j-1.  In any case, Section 10A does not purport to give Plaintiff a state law claim.  *See Baena,* 389 F. Supp. 2d at 120 (holding that auditor duties under the Exchange Act "do[] not purport to give the corporation a cause of action under state law when its inside managers were complicit in the fraud").

WLM 513396.2

auditor to determine the value related to such a transaction.

### 3.    Alleged Failure To Identify Internal Control Problems

Plaintiff's allegation that KPMG failed adequately to audit internal controls also confuses KPMG and PWC.  Citing AU § 315, which requires a "newly retained auditor to communicate with the predecessor auditor," Plaintiff asserts that Arthur Andersen knew of control problems. Compl. ¶ 163.  Plaintiff forgets, however, that PWC, not Arthur Andersen, was KPMG's predecessor auditor.  And Plaintiff does not allege that KPMG knew of any specific internal control problems, or that any such problems still existed during KPMG's year-end 2003 audit.

### 4.    Alleged Failure To Assess C&A's Ability To Continue As A Going Concern

Plaintiff claims that KPMG failed to perform certain tests of C&A's ability to continue as a going concern, but does not actually allege a GAAS violation, *i.e.*, that KPMG was *required* to perform the stated tests.  Compl. ¶ 175 (alleging only that certain tests "can" be used). Moreover, as a matter of law there is no GAAS violation where the company, like C&A, continued as a going concern for more than twelve months from the financial statement date. *See In re Williams Sec. Litig.,* 496 F. Supp. 2d 1195, 1288 (N.D. Okla. 2007) (no violation of professional standards for failing to include a going concern qualification when company continued as a going concern over one year after the financial statement date); *Pew v. Cardarelli*, No. 03-742, 2005 WL 3817472, at *9 (N.D.N.Y. Mar. 17, 2005) (same), *aff'd,* 164 Fed. Appx. 31 (2d Cir. N.Y. 2006); *In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig.*, 815 F. Supp. 620, 670 (S.D.N.Y. 1993) (same).

### 5.    Alleged Failure To Uncover "False Side Letters"

After alleging that C&A "routinely arranged for third parties to create false 'side-letters' which were provided to PWC and KPMG as 'proof' that the Company properly recorded the

rebates in its accounting records" (Compl. ¶ 153), Plaintiff asserts that PWC and KPMG should have examined C&A's original supplier agreements instead. *Id.* ¶ 155. The allegation fails for several reasons. First, side letters – often referred to as "side agreements" or "amendments" – are commonplace (and Plaintiff does not allege otherwise). Plaintiff points to nothing in GAAS (because there is nothing) indicating that the existence of a side letter is a "red flag." Indeed, GAAS recognizes that contractual terms can be legitimately documented in purchase orders and accompanying letters. AU § 326, "Evidential Matter." Second, and critically, Plaintiff does not (and cannot) allege that GAAS *required* the auditors to examine the supplier arrangements.

In sum, Plaintiff's negligence claim fails because it does not allege any breach of professional duty, much less one related to the only alleged material error in the 2003 financial statements, the improper rebates.

### F. Plaintiff's Fraud Claim Must Be Dismissed For Failure To Comply With Rule 9(b)'s Heightened Pleading Requirements

Plaintiff's fraud claim, beyond being barred by the wrongful conduct rule and the lack of proximate cause or damages, also fails to meet Rule 9(b)'s heightened pleading standard. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated *with particularity*." Fed. R. Civ. P. 9(b) (emphasis added). "Rule 9(b) imposes a more onerous standard for pleading fraud, one which is significantly more difficult to satisfy than the usual standard of Fed. R. Civ. P. 8(a)." *Johnson v. Metabolife Int'l, Inc.*, No. Civ.A.3:01-CV-2082-G, 2002 WL 32494514, at *3 (N.D. Tex. Oct. 23, 2002).

Michigan courts have looked to federal case law in articulating the pleading standard for state law fraud. *See Yadlosky v. Grant Thornton L.L.P.,* 120 F. Supp. 2d 622, 635 (E.D. Mich. 2000); *Chase Bank of Texas v. Grant Thornton L.L.P.,* No. 236237, 2003 WL 21350362, at *2 (Mich. Ct. App. June 10, 2003). These cases reveal that Plaintiff has failed to plead any of the

elements of a fraud claim with particularity:

> (1) that the charged party made a material representation; (2) that it was false; (3) that when he or she made it he or she knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he or she made it with the intention that it should be acted upon by the other party; (5) that the other party acted in reliance upon it; and (6) that the other party thereby suffered injury.

*City of Novi v. Robert Adell Children's Funded Trust*, 701 N.W.2d 144, 152 n.8 (Mich. 2005).

### 1. Plaintiff Has Failed To Plead That KPMG'S 2003 Audit Opinion Was A Material False Statement

KPMG's *only* allegedly false statement is its 2003 audit opinion. Thus, Plaintiff must allege *with particularity* that the 2003 audit opinion was false, *i.e.*, both a GAAP violation and a GAAS violation. *See Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.,* 454 F.3d 1168, 1176-77 (10th Cir. 2006) (investors' allegations that GAAP violations rendered auditor's opinion materially false or misleading fail to support fraud claim). Pleading a GAAP violation, without a related GAAS violation, is not enough because the auditor's *opinion* that the financial statements conform with GAAP is truthful if the auditor has a reasonable basis for that opinion, *i.e.*, performed a GAAS audit. *Id.*

As discussed in Section V.E. *infra*, Plaintiff's allegations of GAAS violations are conclusory, contradicted by the alleged facts and professional standards, and/or not related to the alleged improper rebates. As a result, these allegations cannot possibly satisfy the heightened pleading standard of Section 9(b). *D.E. & J. Ltd. Partnership v. Conaway*, 284 F. Supp. 2d 719, 741 (E.D. Mich. 2003) ("All that Plaintiffs have done here is recite a list of general GAAS requirements and then assert, without any factual support, that because Kmart's financials were allegedly incorrect, PWC 'must have' violated those requirements"). Such bald allegations – that lack any detail of *how* KPMG violated GAAS and *what* procedures should have been

performed under GAAS – are insufficient to demonstrate a false statement as a matter of law. *In re Cardinal Health,* 426 F. Supp. 2d 688, 778 (S.D. Ohio 2006) ("Plaintiffs have done no more than list these GAAS standards, failing to specify, who, where, when, or how E&Y actually violated them."); *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 214 (1st Cir. 2005).

### 2.    The Complaint Fails To Allege With Particularity That KPMG Acted With Scienter

Plaintiff must also plead scienter, *i.e.*, that "defendants' statements were made knowingly and falsely or in reckless disregard for their truth." *Yadlosky,* 120 F. Supp. 2d at 634-35 (requiring showing of scienter for Michigan common law fraud claim). Plaintiff must allege facts that give rise to a "strong inference of scienter" – an "intent to deceive, manipulate, or defraud" – with respect to *each* defendant and for *each* material misrepresentation or omission alleged. *See Tellabs,* 127 S. Ct. at 2507-08, 2510. To survive dismissal, the "strong inference of scienter" must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged. *Id.* at 2510.

#### a.    The Standard For Pleading Auditor Scienter Is Unusually Demanding

The standard for pleading scienter against an auditor is particularly "demanding." *In re Marsh & McLennan Cos. Inc., Sec. Litig.,* 501 F. Supp. 2d 452, 488 (S.D.N.Y. 2006) ("The scienter of an auditor must 'approximate an actual intent to aid in the fraud being perpetrated by the audited company.'") (quoting *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000)); *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 693 (6th Cir. 2004) (the recklessness standard in securities fraud cases is "especially stringent when the claim is brought against an outside auditor"). Plaintiff must allege facts demonstrating that KPMG's audit amounted to "*no audit at all*, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that *no reasonable accountant* would have

30

made the same decisions if confronted with the same facts." *PR Diamonds,* 364 F.3d at 693

(citing *In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1426 (9th Cir. 1994)) (emphasis

added); *IKON,* 277 F.3d at 669.

### b. Plaintiff's Sole Motive Allegation, About Fees, Cannot Raise An Inference Of Scienter

Plaintiff's only attempt to allege motive, that KPMG received fees (Compl. ¶ 108), is

utterly "insufficient to support a strong inference of scienter as a matter of law." *Yadlosky,* 120

F. Supp. 2d at 630; *Fidel v. Farley,* 392 F.3d 220, 232-33 (6th Cir. 2004) ("[A]llegations that the

auditor earned and wished to continue earning fees from a client does not raise an inference that

the auditor acted with the requisite scienter"); *accord Zucker v. Sasaki*, 963 F. Supp. 301, 308

(S.D.N.Y. 1997).

### c. Boilerplate Allegations Of GAAS Violations Do Not Establish A Showing Of Knowledge Or Recklessness

Lacking motive, Plaintiff must make an even stronger showing of recklessness, *i.e.*, that

KPMG acted irrationally in committing fraud. *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir.

2001) (without motive, proof of intent must be "correspondingly greater").

Plaintiff's allegations of GAAS violations, which fail even to state a negligence claim

(*see supra* Section V.E.), wholly fail to allege with the requisite particularity that KPMG acted

with the extreme recklessness required for scienter. Plaintiff's boilerplate recitations of various

GAAS standards and conclusory assertions that KPMG "knowingly" or "recklessly" violated

them, (*see, e.g.*, Compl. ¶¶ 122-124, 127, 133, 140-162, 169-176, 213-215), are insufficient to

prove scienter under Rule 9(b) or Michigan state law. *See In re Suprema Specialties, Inc. Sec.*

*Litig.,* 438 F.3d 256, 280 (3d Cir. 2006) ("It is insufficient . . . for a plaintiff to cite GAAS

standards without [explaining] how the defendant knowingly or recklessly violated those

standards."); *Broderick v. PricewaterhouseCoopers LLP*, 169 Fed. Appx. 496, 499 (9th Cir.

2006); *PR Diamonds,* 364 F.3d at 694; *In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d 1350, 1363, (S.D. Fla. 2005); *LaMothe v. Auto Club Ins. Ass'n*, 543 N.W.2d 42, 46 (Mich. Ct. App. 1995) (generalized allegations are insufficient to state a fraud claim).

> ### d.    Plaintiff's Generalized Allegations That KPMG Had Access to C&A Are Insufficient To Plead Scienter

Lacking specific allegations of fraudulent intent, Plaintiff generically suggests that KPMG personnel knew or should have known about potentially false statements because they had "access" to C&A's financial statements and confidential financial and business information, were "frequently present" at C&A's corporate headquarters, and had an "intimate knowledge" of C&A's business.  Compl. ¶¶ 34, 106.  Such allegations of an auditor being privy to confidential or material information are insufficient as a matter of law to plead scienter.  *PR Diamonds, Inc*, 364 F.3d at 696 (auditors' presence at corporate headquarters, and access to financial information, "are not enough to raise a strong inference of scienter"); *Fidel,* 392 F.3d at 229-30; *accord Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417, 429 (D.N.J. 1999); *D.E. & J Ltd. Partnership*, 284 F. Supp. 2d at 740.

> ### e.    Plaintiff's Allegations Of Red Flags Are Insufficient To Raise An Inference Of Scienter

Plaintiff alleges that KPMG violated AU § 316 by issuing its opinion despite the presence of numerous "red flags."  (Compl. ¶¶ 158-59.)  Plaintiff further alleges – again in a conclusory manner – that the presence of these risk factors (which itself is a conclusory allegation) means that KPMG's audit violated GAAS.  (*Id.* ¶ 162.)  Such vague statements cannot show scienter.

> ### (1)    Plaintiffs' "Red Flags" Are Not Pled With Specificity, And Lack Factual Support

Each of the alleged "red flags" is copied from AU § 316 verbatim – none of which are supported with any specific factual allegations.  *Compare* AU § 316.85 *with* Compl. ¶ 159.  For

example, the Complaint contains no particularized allegations that C&A suffered from a high turnover of senior management; that there was friction between auditors and employees; that management had insufficient controls to detect fraud generally; or that C&A was facing "declining margins" and "declining customer demand" during KPMG's audit. To simply state in conclusory fashion that such red flags existed fails to satisfy Rule 9(b). *See PR Diamonds,* 364 F.3d at 695 ("purported red flags [that] simply repeat the alleged GAAP improprieties" are not "genuine red flag[s]"); *In re Hayes Lemmerz Int'l, Inc. Equity Sec. Litig.*, 271 F. Supp. 2d 1007, 1019 (E.D. Mich. 2003) (dismissing claims against auditor because a "complaint must identify specific, highly suspicious facts and circumstances available to the auditor at the time of the audit and allege that these facts were ignored either deliberately or recklessly").

### (2) KPMG Had No Actual Knowledge Of These So-Called Red Flags

The Complaint also falls short because it contains no particularized allegation that KPMG *knew* of these red flags. *See In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 218 (S.D.N.Y. 1999) ("Even if [the auditor] should have done more to attempt to uncover and disclose the alleged fraud, without factual allegations tending to establish knowledge of those practices on [the auditor's] part, an auditor's failure to do more is legally insufficient.") Indeed, these so-called red flags indiscriminately cover the period from 2001 until 2005, even though KPMG's sole audit opinion was issued in early 2004. As an example, nothing in the Complaint indicates that KPMG knew of C&A's alleged insolvency until Plaintiff's extensive cover-up fell apart in mid-2005. Moreover, C&A's bankruptcy filing over a year later does not establish that KPMG knew of the alleged "imminent bankruptcy" during its audit. *See Fidel,* 392 F.3d at 232. Similarly, the existence of related-party or "complex" transactions is insufficient to support a claim of recklessness where, as here, the true nature of fraudulent or self-dealing transactions

33

was *unknown* to the auditors.  *See Livent*, 78 F. Supp. 2d at 217-18.  Plaintiff critically fails to

allege that KPMG had direct knowledge of C&A's fraudulent dealings.

> **(3)     Plaintiff Does Not Allege GAAS Failures, i.e., That The Red Flags Required Audit Procedures KPMG Did Not Perform**

Finally, Plaintiff must allege not only facts that demonstrate the existence and knowledge

of red flags – it must also allege with specificity that the circumstances underlying such red flags

were so egregious as to require *additional* audit procedures that the auditor recklessly failed to

implement.  *See Fidel*, 392 F.3d at 230; *Cardinal Health,* 426 F. Supp. 2d at 765-66.  Even if

KPMG had been aware of any red flags, there are *no* particularized allegations that these red

flags required KPMG to perform *different or additional* procedures, and if so, what those

procedures would have been.  Unless the audit work itself was deficient, the presence of risk

factors (which is of course beyond the control of the auditor) is not even a GAAS violation,

much less an act of recklessness.  *Fidel*, 392 F.3d at 230.

> **f.     Plaintiff's Allegations That KPMG Did Not Uncover Plaintiff's Fraud Does Not Mean That KPMG Acted Recklessly**

Plaintiff alleges that KPMG was reckless in not detecting Plaintiff's collusive fraud.  But

Plaintiff alleges that it "routinely arrange[d] for third parties to create 'false side-letters' which

were provided to PWC and KPMG as 'proof' that the Company properly recorded the rebates in

its accounting records," (Compl. ¶ 153; DOJ Indictment ¶ 42, Brown Aff. Ex. 3), "were intended

to mislead KPMG and . . . KPMG did in fact rely on some of the false documents."  (SEC

Compl. ¶ 42, Brown Aff. Ex. 4; DOJ Indictment ¶ 98, Brown Aff. Ex. 3.)  Thus, Plaintiff's

allegations demonstrate, as do the SEC Complaint and the DOJ Indictment, that Plaintiff

deliberately misled KPMG.

Critically, under GAAS an auditor is not expected to catch such collusive, concealed

fraud.[14]  A failure to catch management fraud is not even a GAAS violation, much less a sign of a "reckless" audit.  *Livent*, 78 F. Supp. 2d at 217-18 (holding that "where . . . the magnitude of the fraud was accompanied by the thoroughness of its concealment, scienter will not be inferred on the part of the auditor," even if the auditor should have done more to detect and uncover it); *accord In re Royal Ahold N.V. Securities & ERISA Litigation,* 351 F. Supp. 2d 334, 392 (D. Md. 2004); *In re Worldcom, Inc. Sec. Litig.,* 352 F. Supp. 2d 472, 495 (S.D.N.Y. 2005).

>   g.   **Plaintiff Cannot Establish That KPMG's Audit Amounted To "No Audit At All" Or That "No Reasonable Accountant" Would Have Reached The Same Result**

Plaintiff does not even attempt to establish that KPMG's work amounted to "no audit at all" as required to show scienter.  Notably, Plaintiff only criticizes audit work in the areas where it committed fraud.  And it is undisputed that KPMG engaged in extensive audit work throughout its engagement.  Compl. ¶ 35; DOJ Indictment ¶ 14, Brown Aff. Ex. 3.  In fact, Plaintiff's allegation that Plaintiff actively concealed the fraud from KPMG demonstrates that KPMG was performing independent audit work, or there would have been no need for the artifice.  *Royal Ahold,* 351 F. Supp. 2d at 390.  Moreover, when KPMG became concerned about potential accounting irregularities, it informed Plaintiff that it could not proceed with its audit until Plaintiff's investigation was complete – evidencing its independence and compliance with GAAS standards.[15]  Plaintiff nowhere alleges (because it cannot) facts showing that KPMG's

---

14    *See supra* Section IV.B.2.
15    Statement Regarding Review Of Financial Statements; Audit Committee Investigation, included in C&A 2003 10-Q for the 3rd Quarter, Brown Aff. Ex. 6 ("The Company has been advised by its independent auditors, KPMG LLP, that they will be unable to complete their SAS 100 review of the Company's quarterly results prior to completion of the Audit Committee's inquiry and their review of the results of that inquiry").  A complete copy of this public document is available at ‹www.sec.gov›.

audit was so deficient that it amounted to "no audit at all."

Moreover, Plaintiff cannot establish that "no reasonable accountant" would have made an allegedly reckless decision when it alleges (Compl. ¶¶ 155-56) that PWC and KPMG – two auditing firms – made the *same* decision. *IKON,* 277 F.3d at 669 (that auditor and successor auditor reached same decision "is highly probative" and "undermines any suggestion of recklessness"); *accord Marksman Partners, L.P. v. Chantal Pharm. Corp.,* 46 F. Supp. 2d 1042, 1050 (C.D. Cal. 1999).

### 3.    Plaintiff Has Failed To Plead Reliance

Plaintiff also utterly fails to allege with particularity facts showing that C&A relied on KPMG's opinion.  The Complaint contains only three empty hints of reliance on KPMG:

- First, that "[t]he Company and its Board of Directors, including its Audit Committee, in hiring an experienced, independent auditor, justifiably relied upon KPMG's misrepresentations." Compl. ¶ 219.

- Second, that "[a]s a direct and proximate result of reliance on KPMG's misrepresentations, Collins & Aikman suffered damage and injury in that it was denied the opportunity to continue as a going concern and its value as a business enterprise significantly decreased." *Id.* ¶ 221.

- And finally, that ". . . KPMG failed to meet the standards imposed by GAAS and failed to advise Collins & Aikman that the financial statements were not in accordance with GAAP." *Id.* ¶ 228.

Such conclusory allegations are insufficient to survive a motion to dismiss.  *Shivers v. McMartin, Wasek & Assoc., Inc.*, No. 251569, 2005 WL 1959480, at *2 (Mich. Ct. App. Aug. 16, 2005) (rejecting plaintiff's fraud claim where "he did not support this assertion with any factual allegations of reliance or damages"); *accord Churella v. Pioneer St. Mut. Ins. Co.,* 671 N.W.2d 125, 132 (Mich. Ct. App. 2003).

Moreover, as a matter of law it is not "plausible" that Plaintiff reasonably relied on KPMG's 2003 audit opinion. *Twombly,* 127 S. Ct. at 1965.  First, Plaintiff concedes that it knew

the *truth* about the fraud concealed from KPMG, including that C&A's financial statements were erroneous. Plaintiff alleges that nearly all of the officers and directors were aware of the fraud, and in any event management's knowledge is imputed to Plaintiff. It is not plausible that Plaintiff relied on KPMG's opinion (that C&A's financial statements materially complied with GAAP) when Plaintiff admittedly knew the opposite. *Cenco,* 686 F.2d at 454 ("a participant in a fraud cannot also be a victim entitled to recover damages, for he cannot have relied on the truth of the fraudulent representations, and such reliance is an essential element in a case of fraud."). As the Michigan Supreme Court has held, "[k]nowledge of the falsity of representations is inconsistent with reliance thereon." *McIntyre v. Lyon*, 37 N.W.2d 903, 906 (Mich. 1949).

Second, Plaintiff admittedly withheld information about the fraud from KPMG, undermining the audit. It is thus not plausible that Plaintiff reasonably relied on an audit opinion that it *knew* was based on incomplete information. Given this situation, Plaintiff's empty and generic statements of "reliance" are patently insufficient under Rule 9(b). *Evans v. Pearson Enters., Inc.,* 434 F.3d 839, 852-53 (6th Cir. 2006).

In sum, Plaintiff's claim for fraud is nothing more than an effort to dress up a malpractice claim – itself without support in fact or law – as a separate tort. Michigan courts do not favor such tactics, and dismiss claims that are, in substance, equivalent to a claim of accounting malpractice. *Chase Bank of Texas,* 2003 WL 21350362, at *2.

## G.    Plaintiff Has Failed Adequately To Plead An Aiding And Abetting Claim Against KPMG

In addition to being barred by the wrongful conduct rule and lack of proximate cause or damages, Plaintiff's aiding and abetting claim fails to allege facts demonstrating *actual knowledge* of Plaintiff's fraud, an even higher standard than the recklessness required for fraud. *Estate of Goldman v. Nat'l Bank of Detroit*, 601 N.W.2d 126, 129 (Mich. Ct. App. 1999);

37

*Malpiede v. Townson*, 780 A.2d 1075, 1097 (Del. 2001).[16]

Since it cannot even adequately plead recklessness, *see supra* Section V.F.2, it certainly

cannot (and does not) adequately allege that KPMG *knew* of Plaintiff's fraud.  Plaintiff fails to

allege *any* facts to support its single, conclusory allegation (Compl. ¶ 245) that KPMG knew of

Plaintiff's fraud.  Indeed, the Complaint concedes the exact opposite, that management

deliberately hid the fraud from KPMG.  *See, e.g.,* Compl. ¶¶ 153-54.  Without actual knowledge,

the claim must be dismissed.  *See Krieger v. Gast,* No. 4:99-CV-86, 2000 WL 288442, at *12

(W.D. Mich. Jan. 21, 2000) (dismissing aiding and abetting breach of fiduciary duty claim

"because those claims require at least some degree of knowing participation, which is not

supported by the allegations in the complaint"); *accord Jackson Nat. Life Ins. Co. v. Kennedy*,

741 A.2d 377, 391-92 (Del. Ch. Ct. 1999).

Even if Plaintiff adequately alleged that KPMG knew of management's actions, Plaintiff

fails to allege that KPMG knew such actions constituted a breach of fiduciary duty, which alone

is fatal to Plaintiff's claim.  *See Malpiede*, 780 A.2d at 1097 ("Knowing participation in a

board's fiduciary breach requires that the third party act with the knowledge that the conduct

advocated or assisted constitutes such a breach."); *Chase Bank of Texas*, 2003 WL 21350362, at

*4 ("the alleged abettor is required to have the same degree of scienter as the person committing

the actual fraud").

Finally, as with Plaintiff's claim for fraud, its claim for aiding and abetting is properly a

claim of malpractice, and may be dismissed on that ground alone.  *See Chase Bank of Texas,*

2003 WL 21350362, at *2-3; *Trenwick,* 906 A.2d at 215.

---

[16]    Michigan and Delaware law regarding aiding and abetting are essentially the same, as both require actual knowledge.

### H.    Plaintiff Has Failed To Plead A Breach Of Contract Claim Against KPMG

Beyond being barred by the wrongful conduct rule and lack of proximate cause or damages, the breach of contract claim fails because it is duplicative, because Plaintiff has not alleged a breach, and because any breach would have been precipitated by *Plaintiff's* breach.[17]

Since an accountant's duty to comply with GAAS arises out of law, not by contract,[18] Plaintiff's breach of contract claim (as with its claim for fraud and aiding and abetting) must be dismissed as a thinly-veiled attempt to replead its malpractice claim.[19]  *Chase Bank of Texas*, 2003 WL 21350362, at *2; *Askanase v. Fatjo*, 828 F. Supp. 465, 469 (S.D. Tex 1993) (dismissing the plaintiffs' breach of contract claim where the claim was "nothing more than a claim for breach of a professional's duty, thinly disguised as a contract claim"); *Battenfeld of Am. Holding Co., Inc. v. Baird, Kurtz & Dobson,* 60 F. Supp. 2d 1189, 1206 (D. Kan. 1999) (dismissing breach of contract claim and rejecting plaintiff's claim that engagement letters expressly providing to conduct audits in accordance with GAAS imposed a contractual duty beyond any duty imposed by law).

Plaintiff's contract claim also fails because KPMG did not breach the contracts, which

---

[17]    Plaintiff erroneously alleges that the years in question were 2001 and 2002.

[18]    *Official Comm. of Unsecured Creditors of Corell Steel v. Fishbein & Co., P.C.,* No. 91 Civ. 4919, 1992 WL 196768, at *5-6 (E.D. Pa. Aug. 10, 1992) (accountant's duty to act in accordance with GAAS arises by law, regardless of contract terms).

[19]    Plaintiff's assertion that KPMG failed to report fraud to C&A's Audit Committee, (Compl. ¶¶ 238-239), is contrary to the public record and not plausible.  KPMG *did* contact C&A when it had concerns, both in 2003 and 2005.  *See* DOJ Indictment ¶ 62, Brown Aff. Ex. 3; SEC Compl. ¶ 54, Brown Aff. Ex. 4; Statement Regarding Review Of Financial Statements; Audit Committee Investigation, includes in C&A 2003 10-Q for the 3rd Quarter, Brown Aff. Ex. 6 Moreover, there is no "special contract" (nor does Plaintiff so allege) by which KPMG agreed to perform any audit services beyond what is required to satisfy the relevant professional standards. *Brownell v. Garber*, 503 N.W.2d 81, 84 (Mich. Ct. App. 1993) (reasoning that, in the absence of a special agreement to the contrary, an attorney needs only satisfy the standard of care relevant to the profession).

expressly state that KPMG cannot certify that C&A's financial statements will be free from material misstatements caused by fraud, as allegedly occurred here.  *See* 2003 Agreement at 2, Brown Aff. Ex. 1; 2004 Agreement at 2, Brown Aff. Ex. 2.

Finally, any breach was caused by Plaintiff's own breach in failing to provide accurate information to the auditors.  The engagement letters required management to provide all relevant materials and cooperate with KPMG.  2003 Agreement at 3, Brown Aff. Ex.1; 2004 Agreement at 7, Brown Aff. Ex. 2.  According to Plaintiff's own allegations, Plaintiff failed to do so. Therefore, the breach of contract claim fails as a matter of law.  *Flamm v. Scherer,* 198 N.W.2d 702, 706 (Mich. Ct. App. 1972) (reasoning that the plaintiff could not maintain a contract action against the defendant where the plaintiff first breached the contract); *Begier v. Price Waterhouse*, No. 87-6096, 1992 WL 236175, at *4 (E.D. Pa. Sept. 14, 1992) (rejecting breach of contract claim where plaintiff gave "false and misleading financial information" to defendant auditor).

## VI.    CONCLUSION

For the reasons stated above, KPMG respectfully requests that the Court dismiss Plaintiff's claims with prejudice.

|  | EDWARDS ANGELL PALMER & DODGE LLP |
|---|---|

OF COUNSEL:
Peter W. Devereaux
Christopher Harris
Latham & Watkins LLP
885 Third Avenue
New York, NY  10022
(212) 906-1200

April 28, 2008

*/s/ Michael J. Maimone*
Michael J. Maimone (#3592)
Paul D. Brown (#3903)
Joseph B. Cicero (#4388)
919 North Market Street, 15th Floor
Wilmington, DE  19801
(302) 777-7770
mmaimone@eapdlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Michael J. Maimone, Esq., hereby certify that on April 28, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for reviewing and downloading to the following counsel of record:

| | |
|---|---|
| Joseph A. Rosenthal, Esquire<br>Carmella P. Keener, Esquire<br>Rosenthal, Monhait & Goddess, P.A.<br>919 N. Market Street, Suite 1401<br>P. 0. Box 1070<br>Wilmington, DE 19899<br>(Counsel to Plaintiffs) | Peter B. Ladig, Esquire<br>Stephen B. Brauerman, Esquire<br>The Bayard Firm<br>222 Delaware Avenue<br>Suite 900<br>P. 0. Box 25130<br>Wilmington, DE 19899 |
| Thomas G. Macauley, Esquire<br>Zuckerman Spaeder LLP<br>919 Market Street, Suite 1705<br>P. 0. Box 1028<br>Wilmington, DE 19899 | Vernon R. Proctor, Esquire<br>Proctor Heyman LLP<br>1116 West Street<br>Wilmington, DE 19801 |
| Thomas P. Preston, Esquire<br>Blank Rome LLP<br>Chase Manhattan Centre<br>1201 Market Street<br>Suite 800<br>Wilmington, DE 19801 | James L. Holzman, Esquire<br>J. Clayton Athey, Esquire<br>Prickett Jones & Elliott, P.A.<br>1310 King Street<br>P. 0. Box 1328<br>Wilmington, DE 19899 |
| Christian D. Wright, Esquire<br>Andrew A. Lundgren, Esquire<br>Young, Conaway, Stargatt & Taylor, LLP<br>The Brandywine Building<br>1000 West Street, 17th Street<br>P. 0. Box 391<br>Wilmington, DE 19899-0391 | Stephen L. Ascher, Esquire<br>Zenner & Block<br>919 Third Avenue<br>New York, NY 10022-3908 |

| Albert H. Manwaring, IV, Esquire<br>Pepper Hamilton LLP<br>1313 Market Street, Suite 5100<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>(302) 777-6500 | Thomas Henry Kovach, Esquire<br>Parkowski, Guerke & Swayze, P.A.<br>800 King Street<br>Suite 203<br>Wilmington, DE 19801<br>(302) 594-3313<br>Fax: (302 654-3033 |
|---|---|
| Richard L. Horwitz, Esquire<br>Potter Anderson & Corroon, LLP<br>131.3 N.. Market St., Hercules Plaza, 6th Flr.<br>P.O. Box 951<br>Wilmington, DE 19899-0951<br>(Counsel to Defendant Stepp) | Robert S. Saunders, Esquire<br>Skadden, Alps, Slate, Meagher & Flom LLP<br>One Rodney Square<br>P. 0. Box 636<br>Wilmington, DE 19899 |

I further certify that on April 28, 2008, I caused a copy of the foregoing document

to be served on the following non-registered participants in the manner indicated:

**BY EMAIL**

Samuel H. Rudman
srudman@csgrr.com
David A. Rosenfeld
drosenfeld@csgrr.com
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY 11747


/s/ Michael J. Maimone
Michael J. Maimone (#3592)

WLM 513401.1