UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| COLLINS & AIKMAN CORPORATION and COLLINS & AIKMAN PRODUCTS CO., as Debtors in Possession,<br><br>      Plaintiffs,<br><br>v.<br><br>DAVID A. STOCKMAN, et al.,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civ. No. 07-265-SLR/LPS<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT BY
DANIEL P. TREDWELL, W. GERALD McCONNELL AND SAMUEL VALENTI, III**

Robert S. Saunders (Bar I.D. No. 3027)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
Tel: (302) 651-3000
Fax: (302) 651-3001

Of counsel:
Jonathan J. Lerner
Lea Haber Kuck
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036

# TABLE OF CONTENTS

**Page**

TABLE OF CITATIONS ................................................................................................ iv

NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

SUMMARY OF THE ARGUMENT ............................................................................. 2

STATEMENT OF FACTS ............................................................................................. 6

    A.    The Parties ................................................................................................ 6

          1.    Plaintiffs ....................................................................................... 6

          2.    Defendants ................................................................................... 7

                (a)    C&A's Former Officers and Employees ........................... 7

                (b)    C&A's Auditors ................................................................. 7

                (c)    C&A's Outside Directors ................................................. 7

                (d)    Heartland ........................................................................... 8

    B.    The Alleged Accounting Improprieties at C&A .................................... 8

          1.    Accounting in Connection with C&A's Acquisitions ................... 8

          2.    C&A's Accounting for Rebates ..................................................... 8

          3.    C&A's Receivables Facility .......................................................... 9

          4.    C&A's Public Statements .............................................................. 9

          5.    The Audit Committee's Internal Investigations .......................... 10

          6.    Other Civil and Criminal Actions ............................................... 10

ARGUMENT ............................................................................................................... 10

I.    THE COMPLAINT VIOLATES RULES 8 and 9(b) ......................................... 10

    A.    The Complaint Does Not Provide the Outside Directors With Fair Notice of Any Claims as Required by Rule 8. ................................................. 11

    B.    The Complaint Does Not Plead Any Claim With Particularity as Required by Rule 9(b). ......................................................................... 13

C.    The Complaint Lumps Defendants Together in Violation of Both Rules 8 and 9(b). ..................................................................................................15

D.    Given Its Longstanding Access to All the Relevant Facts, C&A Should Be Strictly Held to the Applicable Pleading Requirements. ...........................16

II.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 10(b). .............18

A.    C&A Relies Solely on the Group Pleading Doctrine, Which Was Recently Abolished by the Third Circuit. ...............................................................18

B.    C&A Fails to Meet the Stringent Pleading Requirements of the PSLRA. ............18

1.    C&A Does Not Allege That the Outside Directors Actually Made Any Misrepresentations. ...............................................................19

2.    C&A Does Not Plead Any Facts From Which a Strong Inference of Scienter Can Be Drawn. .......................................................21

C.    C&A Cannot Plead Reliance. ...................................................................24

D.    C&A Cannot Plead Economic Loss or Loss Causation...............................25

III.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 14(a)...............27

A.    C&A Does Not Identify Any False Statements In the Proxy Statement. .............28

B.    C&A Does Not Plead an Essential Link Between the Proxy Statements and Any Alleged Injury. ...........................................................................28

C.    C&A Does Not Have Standing to Pursue a Section 14(a) Claim. .........................29

D.    The Statute of Limitations Bars Any Claim Based on the 2002 Proxy Statement..................................................................................................30

IV.    THE COMPLAINT FAILS TO STATE A CLAIM FOR FRAUD. .................................30

V.    THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY............................................................................................32

A.    The Duty of Loyalty Claim Fails............................................................32

B.    The Duty of Care Claim Fails.................................................................33

C.    The Corporate Waste Claim Fails............................................................34

VI.    THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT. .........................................................................................35

VII.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE. ...........................35

CONCLUSION..................................................................................................................36

## TABLE OF CITATIONS

**Cases**                                                                                            **Page(s)**

7547 Corp. v. Parker & Parsley Development Partners, L.P., 38 F.3d 211 (5th Cir. 1994)..........29

In re Advanta Corp. Securities Litigation, 180 F.3d 525 (3d Cir. 1999)................................21, 23

In re Alpharma Inc. Securities Litigation, 372 F.3d 137 (3d Cir. 2004) ................................23, 24

Aronson v. Lewis, 473 A.2d 805 (Del. 1984)..............................................................................33

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007)..........................................................6, 11

Bloor v. Carro, Spanbock, Londin, Rodmin & Fass, 754 F.2d 57 (2d Cir. 1985)........................25

Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502 (7th Cir. 2007) .....................................13

Brehm v. Eisner, 746 A.2d 244 (Del. 2000) ................................................................................34

Brug v. Enstar Group, Inc., 755 F. Supp. 1247 (D. Del. 1991) ................................................30, 31

Bruhl v. PricewaterhouseCoopers International, No. 03-23044, 2007 WL 997362 (S.D.
    Fla. Mar. 27, 2007) ................................................................................................................16

California Public Employees' Retirement System v. Chubb Corp., 394 F.3d 126 (3d Cir.
    2004) ......................................................................................................................................14

In re Caremark International Inc. Derivative Litigation, 698 A.2d 959 (Del. Ch. 1996)..............16

Christensen v. WMA Consumer Services, Inc., No. Civ. A. 03-1545, 2003 WL 22174240
    (E.D. La. Sept. 5, 2003) ........................................................................................................16

In re CitX Corp., 448 F.3d 672 (3d Cir. 2006) ............................................................................26

Communications Workers of America Plan for Employees Pensions & Death Benefits v.
    CSK Auto Corp., No. CV06-1503, 2007 WL 951968 (D. Ariz. Mar. 28, 2007) ..............20

Conley v. Gibson, 355 U.S. 41 (1957)..........................................................................................11

Continuing Creditors' Committee of Star Telecommunications Inc. v. Edgecomb,
    385 F. Supp. 2d 449 (D. Del. 2004)................................................................32, 33, 34, 35

Copland v. Grumet, 88 F. Supp. 2d 326 (D.N.J. 1999) .................................................................20

Diceon Electrics, Inc. v. Calvary Partners, L.P., 772 F. Supp. 859 (D. Del. 1991)......................29

In re Digital Island Securities Litigation, 357 F.3d 322 (3d Cir. 2004)...........................................23

Donovan v. ABC-NACO Inc., No. 02 Civ. 1951, 2002 WL 1553259 (N.D. Ill. July 15, 2002) ......................................................................................................................................16

Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005) .......................................................25

Ernst & Ernst v. Hochfelder, 425 U.S. 185 (1976)........................................................................21

In re Exxon Mobil Corp. Securities Litigation, 500 F.3d 189 (3d Cir. 2007) .........................13, 30

Fink v. Weill, No. 02 Civ. 10250, 2005 WL 2298224 (S.D.N.Y. Sept. 19, 2005)........................28

In re The First Union Corp. Securities Litigation, No. Civ. 3:99CV237-H, 2006 WL 163616 (W.D.N.C. Jan. 20, 2006) ......................................................................................25

Frota v. Prudential-Bache Securities, Inc., 639 F. Supp. 1186 (S.D.N.Y. 1986) ..........................13

General Electric Co. v. Cathcart, 980 F.2d 927 (3d Cir. 1992) ....................................................28

Glassman v. Computervision Corp., 90 F.3d 617 (1st Cir. 1996) ..................................................17

Globis Capital Partners, L.P. v. Stonepath Group, Inc., 241 F. App'x 832 (3d Cir. 2007)...........21

GSC Partners CDO Fund v. Washington, 368 F.3d 228 (3d Cir. 2004)..............................18, 19, 23

Gurfein v. Ameritrade, Inc., 411 F. Supp. 2d 416 (S.D.N.Y. 2006).............................................16

Kennilworth Partners L.P. v. Cendant Corp., 59 F. Supp. 2d 417 (D.N.J. 1999)..........................16

Kirtley v. Wadekar, No. 05-5383, 2006 WL 2482939 (D.N.J. Aug. 25, 2006) .............................14

Lane v. Capital Acquisitions & Management Co., No. 04-60602, 2006 WL 4590705 (S.D. Fla. Apr. 14, 2006)..........................................................................................................15

Lum v. Bank of America, 361 F.3d 217 (3d Cir. 2004) ................................................................14

Malpiede v. Townson, 780 A.2d 1075 (Del. 2001) ................................................................33, 34

Medina v. Bauer, No. 02 Civ. 8837, 2004 WL 136636 (S.D.N.Y. Jan. 27, 2004)........................15

MetCap Securities LLC v. Pearl Senior Care, Inc., No. Civ.A. 2129, 2007 WL 1498989 (Del. Ch. May 16, 2007) ......................................................................................................35

Morrison v. Madison Dearborn Capital Partners III, L.P., 389 F. Supp. 2d 596 (D. Del. 2005) ....................................................................................................................................34

v

NACCO Industries, Inc. v. Applica Inc., No. 1:06-CV-3002, 2006 WL 3762090 (N.D. Ohio Dec. 20, 2006) ................................................................................................27

In re NAHC, Inc. Securities Litigation, 306 F.3d 1314 (3d Cir. 2002) ........................................27

North Amer. Catholic Educ. Programming Foundation, Inc. v. Gheewalla, 930 A.2d 92 (Del. 2007) ................................................................................................32

Official Committee Of Unsecured Creditors v. Tennenbaum Capital Partners, LLC (In re Radnor Holdings Corp.), 353 B.R. 820 (D. Del. 2006) ......................................................26

Pacific Electric Wire & Cable Co. v. Set Top International, Inc., No. 03 Civ 9623, 2005 WL 578916 (S.D.N.Y. Mar. 11, 2005) ..............................................................................14

Phillips v. Allegheny, 515 F.3d 224 (3d Cir. 2008)............................................................6, 11, 12

In re Providian Finance Corp. ERISA Litigation, No. C 01-05027, 2002 WL 31785044 (N.D. Cal. Nov. 14, 2002) ................................................................................................15

Roberto's Fruit Market, Inc. v. Schaffer, 13 F. Supp. 2d 390 (E.D.N.Y. 1998) ............................12

Rochelle v. Marine Midland Grace Trust Co. v. Young, 535 F.2d 523 (9th Cir. 1976)................25

In re Rockefeller Center Properties, Inc. Securities Litigation, 311 F.3d 198 (3d Cir. 2002)................................................................................................6, 18, 19

Saint-Val v. Domino's Pizza, LLC, No. 06-4273, 2007 WL 2049120 (D.N.J. July 12, 2007) ................................................................................................12

Salomon Brothers Municipal Partners Fund, Inc. v. Thornton, 410 F. Supp. 2d 330 (S.D.N.Y. 2006) ................................................................................................29

Scattergood v. Perelman, 945 F.2d 618 (3d Cir. 1991) ................................................................29

Schock v. Nash, 732 A.2d 217 (Del. 1999) ................................................................................35

Shapiro v. Cantor, 123 F.3d 717 (2d Cir. 1997) ................................................................................20

Shurkin v. Golden State Vintners, Inc., No. C 04-3434, 2005 WL 1926620 (N.D. Cal. Aug. 10, 2005) ................................................................................................34

Stone ex rel. AmSouth Bancorporation v. Ritter, 911 A.2d 362 (Del. 2006)................................32

In re Suprema Specialties Inc., 438 F.3d 256 (3d Cir. 2006) ........................................................23

Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Communications Corp.), 493 F.3d 345
(3d Cir. 2007)................................................................................................26

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499 (2007) .....................................21, 22

Thouret v. Hudner, No. 95 Civ. 1793, 1996 WL 38824 (S.D.N.Y. Feb. 1, 1996) .......................29

Tredennick v. Bone, No. 07-0735, 2007 WL 4244652 (W.D.Pa. Nov. 29, 2007) ........................16

Trenwick America Litigation Trust v. Ernst & Young, L.L.P., 906 A.2d 168 (Del. Ch.
2006), aff'd mem. sub nom. Trenwick America Litigation Trust v. Billett, 931
A.2d 438 (Del. 2007) .................................................................................17, 24,
26, 31

In re Tyson Foods, Inc. Securities Litigation, 155 F. App'x 53 (3d Cir. 2005) ............................20

U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383 (3d Cir. 2002)..................................................27

United States ex rel. Garst v. Lockheed-Martin Corp., 328 F.3d 374 (7th Cir. 2003) ............11, 12

Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083 (1991)..........................................27, 28, 29

Vladimir v. Deloitte & Touche LLP, No. 95 Civ. 10319, 1997 WL 151330 (S.D.N.Y.
Mar. 31, 1997)..............................................................................................17

In re Walt Disney Co. Derivative Litigation, 907 A.2d 693 (Del. Ch. 2005), aff'd, 906
A.2d 27 (Del. 2006) ......................................................................................34

Westinghouse Electric Corp. v. Franklin, 993 F.2d 349 (3d Cir. 1993).......................................30

Winer Family Trust v. Queen, 503 F.3d 319 (3d Cir. 2007) .............................................18, 19, 22

**Statutes**

15 U.S.C. § 78u-4(b)...................................................................................................19, 20,
21, 27

Fed. R. Civ. P. 8 ...........................................................................................................11

Fed. R. Civ. P. 9(b) ......................................................................................................11

**Miscellaneous**

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363 (3d
ed. 2004) .......................................................................................................6

Defendants Daniel P. Tredwell, W. Gerald McConnell and Samuel Valenti, III (collectively, the "Outside Directors") respectfully submit this memorandum of law in support of their motion, pursuant to Rules 8, 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and 15 U.S.C. § 78u-4(b)(1)-(2) (enacted as part of the Private Securities Litigation Reform Act of 1995 ("PSLRA")), to dismiss all claims for relief alleged against them in the First Amended Complaint ("Complaint" or "Compl.") by plaintiffs Collins & Aikman Corp. and Collins & Aikman Products Co. (together, "C&A" or the "Company").[1]

## NATURE AND STAGE OF THE PROCEEDINGS

The Outside Directors are among nineteen defendants that C&A contends should be liable for misstatements that it made over a period of three years. Despite their disparate relationships with C&A, the Complaint fails entirely to distinguish among the defendants, which include the Company's former officers, directors, employees, outside accountants, and one of its significant stockholders. Painting with a broad brush and asserting a hodgepodge of contradictory theories, C&A makes allegations throughout the Complaint against "Defendants" and "Director and Officer Defendants" as a group, instead of apprising each Outside Director of what he in particular is alleged to have done wrong. This pleading tactic is directly contrary to controlling Third Circuit authority.

Indeed, allegations specific to the Outside Directors in the Complaint are virtually non-existent. Each is mentioned by name in only two paragraphs – one recites the individual's name and the dates he held his position as a C&A director (Compl. ¶¶ 18-20), and the other alleges that the individuals are all Senior Managing Directors of Heartland Industrial Partners,

---

[1]    The original complaint in this action was filed on May 16, 2007. While the defendants' motions to dismiss that complaint were pending, C&A amended and filed the instant Complaint on January 28, 2008.

L.P. ("Heartland LP") (<u>id.</u> ¶ 27). And although they are cavalierly lumped into a broad group labeled "Director and Officer Defendants," none of the Outside Directors ever served as an officer of C&A. Ignoring the fundamental legal differences between the responsibilities of C&A's management and its outside directors, the Complaint asserts claims of federal securities fraud, common law fraud, breach of fiduciary duty, and unjust enrichment against the Outside Directors without any supporting factual allegations connecting them to the alleged wrongdoing.

C&A's use of this discredited pleading tactic, and the vague and contradictory nature of its allegations, are especially inexcusable in this case. Unlike the typical plaintiff, C&A has had years to investigate its claims and unlimited access to C&A documents and personnel. Indeed, as C&A admits, extensive years-long investigations into the very issues raised in the Complaint were conducted by the audit committee of C&A's board of directors, in cooperation with the United States Securities and Exchange Commission ("SEC"). In light of this advantage, C&A's failure to plead specific allegations of actionable conduct by the Outside Directors warrants summary dismissal of the Complaint. Moreover, this amended complaint was filed in response to motions to dismiss the original complaint and C&A made no effort, or was unable, to remedy the deficiencies in its pleading against the Outside Directors despite having been given notice of them.

Because C&A has not pled even the most basic elements of the claims asserted against the Outside Directors, its Complaint should be dismissed with prejudice.

## SUMMARY OF THE ARGUMENT

1.    Despite C&A's unfettered access to documents and witnesses relevant to its claims, the Complaint fails to satisfy the applicable pleading standards and simultaneously violates both Rules 8 and 9(b) of the Federal Rules of Civil Procedure:

(a)    The Complaint in no way gives the Outside Directors fair notice of the claims they face, as required by Rule 8, because the allegations do not apprise each individual of what he is personally alleged to have done wrong.

(b)    At the same time, Rule 9(b) requires all averments of fraud to be pled with particularity. Here, although each of the claims asserted against the Outside Directors sounds in fraud, C&A has not alleged any specifics regarding their individual participation in the alleged fraud, thus failing to satisfy the pleading requirements of Rule 9(b).

(c)    Because the plaintiffs here are the companies at which the alleged misconduct occurred, and as a result, have had access to all of the facts relevant to their claims for years, they should be strictly held to the applicable pleading requirements.

2.    For its novel claim under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), C&A attempts to recover for its creditors unspecified damages for misrepresentations it made to its stockholders, who have filed their own separate lawsuits against many of the same defendants.[2] The only connection that C&A makes between the Outside Directors and the alleged wrongdoing is by "group pleading," a tactic that the Third Circuit has categorically rejected in recent months.

3.    In any event, the Complaint simply does not make out the elements of a Section 10(b) claim, let alone with the exacting specificity required by the PSLRA:

(a)    C&A does not identify any allegedly false statements made by the Outside Directors.

---

[2]    See Egleston v. Heartland Industrial Partners, L.P., No. 2:06-cv-13555 (E.D. Mich.); In re Collins & Aikman Corp. Sec. Litig., No. 2:03-cv-71173 (E.D. Mich.).

(b)    C&A does not plead facts giving rise to a strong inference of scienter, but merely rests on generalized motives common to all corporate executives and on the Outside Directors' positions at C&A, which are insufficient.

(c)    C&A does not sufficiently plead that it relied on any allegedly false statement made by the Outside Directors. Indeed, C&A alleges that the Director and Officer Defendants – and therefore C&A itself – were aware of the "true facts" behind the alleged misrepresentations.

(d)    C&A has not adequately alleged that it suffered any economic loss attributable to the Outside Directors, much less a causal connection between such loss and any misrepresentation. Indeed, although the relief C&A seeks from the Outside Directors is return of "remuneration," the Outside Directors received no compensation at all from C&A.

4.    Likewise, C&A does not plead a claim under Section 14(a) of the Exchange Act based on misrepresentations it allegedly made in its own proxy statements, with anything close to the particularity required by the PSLRA:

(a)    C&A fails to plead an "essential link" between the proxy statements at issue and the alleged injury. As a matter of law, C&A's allegations that misstatements in the proxy statements caused certain individuals to be elected as directors, which then led to the perpetration of the alleged fraud, are too attenuated to establish an essential link. In any event, because non-defendant stockholders held less than 50% of C&A's outstanding stock, none of the alleged misstatements could have affected the outcome of votes tendered pursuant to the proxy statements.

(b)    C&A does not have standing to bring a claim pursuant to Section 14(a) because it seeks to recover on behalf of individuals and entities who were not entitled to vote based on C&A's proxy statements.

(c)    Any Section 14(a) claim based on C&A's 2002 proxy statement is barred by the statute of limitations.

5.    The common law fraud claim asserted against the Outside Directors fails for the same reasons as the Section 10(b) claim, and is even more illogical to the extent that C&A contends that its directors and officers made misrepresentations to themselves and then relied upon their own misrepresentations. Moreover, C&A essentially concedes that it cannot plead scienter by alleging that the defendants' actions may have been "mistaken."

6.    C&A's breach of fiduciary duty claim fails because the Complaint does not sufficiently allege how the Outside Directors breached their fiduciary duties:

(a)    With respect to the duty of loyalty, C&A does not identify any transaction that could form the basis of such a claim, let alone that the Outside Directors (along with a majority of the board) were interested and/or lacked independence in approving that transaction.

(b)    The duty of care and corporate waste claims fail as a matter of law because the exculpation clause in C&A's certificate of incorporation bars C&A from proceeding on these theories.

7.    Finally, the unjust enrichment claim against the Outside Directors fails because C&A has not alleged the existence of any enrichment by the Outside Directors, unjust or otherwise. Indeed, there is no allegation – nor could there be – that the Outside Directors received any salaries, directors' fees, stock options, or anything else of value from C&A.

8.    Dismissal should be with prejudice in light of the many opportunities and advantages that plaintiffs have had to state a viable claim against the Outside Directors.

## STATEMENT OF FACTS[3]

### A.    The Parties

#### 1.    Plaintiffs

Plaintiffs in this action are Collins & Aikman Corporation and Collins & Aikman Products Co., which filed for bankruptcy on May 17, 2005, following a precipitous decline in the financial condition of the automotive sector in general. (Compl. ¶¶ 5-6, 37, 43, 91.) Prior to its bankruptcy, C&A "was engaged in the design, manufacture and supply of automotive interior components." (Id. ¶ 35.) C&A's products were sold to original equipment manufacturers such as General Motors, Ford and Chrysler. (Id.) Under the plan of reorganization, C&A assigned the claims asserted in the Complaint to the Collins & Aikman Litigation Trust, which is administered by a Litigation Trust Administrator. (Id. ¶ 6.) According to the Complaint, any recovery in this action will be "for the benefit of the creditors of [C&A's] estates." (Id.)

---

[3]    While the well-pled factual allegations of the Complaint are taken as true solely for the purpose of this motion, the Third Circuit has held: "[C]ourts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint. Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness." In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (citation omitted); see also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363 (3d ed. 2004) ("Unsupported conclusions of law can be disregarded. . . . The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading.") (citations omitted); see generally Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-69 (2007); Phillips v. Allegheny, 515 F.3d 224, 231-35 (3d Cir. 2008).

6

### 2.    Defendants

#### (a)    C&A's Former Officers and Employees

C&A names as defendants nineteen individuals and entities that had various relationships with C&A.  Eight of the defendants are individuals who were officers or employees of C&A at various points and for varying lengths of time, including David Stockman, C&A's former Chief Executive Officer and Chairman of the Board from 2002 to 2005 (id. ¶ 7); J. Michael Stepp, C&A's former Chief Financial Officer and Vice President (id. ¶ 8); Bryce Koth, another former C&A Chief Financial Officer and a Vice President (id. ¶ 9); John Galante, C&A's former Treasurer (id. ¶ 13); Thomas E. Evans, C&A's former President and CEO from April 1999 to August 2002 (id. ¶ 16); David Cosgrove, who held various positions in C&A's finance department (id. ¶ 10); Paul Barnaba, who held various purchasing positions (id. ¶ 11); and Robert Krause, a former Vice President and Treasurer, and Senior Vice President, Finance and Administration (id. ¶ 12).

#### (b)    C&A's Auditors

C&A also asserts a variety of claims against both PricewaterhouseCoopers LLP and KPMG LLP, which served as C&A's auditors at different times.

#### (c)    C&A's Outside Directors

C&A also names as defendants five individuals who served only as outside directors of C&A.  Among them are defendants Daniel Tredwell and W. Gerald McConnell, who served as directors of C&A from February 2001 until May 10, 2006 (id. ¶¶ 18-19), and Samuel Valenti, who served as a director from February 2001 until September 30, 2004 (id. ¶ 20).  The Outside Directors held no management positions at C&A and did not serve on C&A's audit committee.  Other than this and the allegations that all are Senior Managing Directors of Heartland LP, a significant C&A stockholder (id. ¶ 27), the Complaint contains no factual

allegations concerning these individuals specifically.  There is no allegation – nor could there be – that the Outside Directors received any salaries, directors' fees or stock options.

### (d)    Heartland

Finally, C&A names as defendants Heartland LP, which it alleges is a $1 billion private equity firm that invested in C&A, and its two affiliated entities (collectively, "Heartland").  (Id. ¶¶ 27-28.)  According to the Complaint, at least 30% of Heartland LP's total investments were in C&A (allegedly over $300 million).  (Id. ¶ 27.)  There are no allegations that any Heartland entity ever sold any stock in C&A.

### B.    The Alleged Accounting Improprieties at C&A

#### 1.    Accounting in Connection with C&A's Acquisitions

In 2001, C&A grew its operations through a series of acquisitions that C&A, in hindsight, apparently considers unwise.  (See id. ¶¶ 47-52.)  C&A alleges that certain defendants other than the Outside Directors, as well as unnamed "others," engaged in accounting improprieties with one of these acquired companies.  (Id. ¶¶ 53-57.)  In particular, C&A alleges that these individuals engaged in "round-trip" transactions by mischaracterizing certain loans as rebates, which "artificially inflated" C&A's "financial results," and then overpaying for machinery in repayment.  (Id.)  There are no allegations that the Outside Directors were involved in any way with these "round-trip transactions," let alone the determination of how the rebates should have been recorded or what C&A should have paid for the machinery.  This glaring omission is not surprising, however, given that the allegations concern events and actions that occurred far below the level at which a board of directors would have been involved.

#### 2.    C&A's Accounting for Rebates

C&A devotes much of the Complaint to an alleged scheme at C&A involving rebates the Company received from suppliers for making purchases.  (See id. ¶¶ 58-69, 125-26.)

8

According to C&A, commencing in early 2002, certain payments from suppliers that were contingent on future events or were overpayments for capital equipment and maintenance services were mischaracterized as rebates for past purchases, which "artificially inflated [C&A's] financial results." (Id.) Once again, the Complaint alleges that certain defendants other than the Outside Directors, as well as unidentified C&A employees, were involved in this "rebate scheme," which included having suppliers provide "false side letters." (Id.) The Complaint contains no factual allegations that the Outside Directors had any involvement in this alleged scheme, nor could it, given their lack of involvement at this level of C&A's business and with the minutiae of how rebates were negotiated with suppliers and recorded on the Company's books.

### 3.    C&A's Receivables Facility

C&A also alleges that defendant Stockman and certain unnamed "other Director and Officer Defendants" engaged in a scheme to defraud one of C&A's lenders by improperly inflating the amount of receivables used to calculate the amount the Company could borrow under an accounts receivable facility. (Id. ¶¶ 74-79.) Once again, the Complaint contains no factual allegations that the Outside Directors had any involvement in this alleged wrongdoing, nor does it provide any reason to believe that the Outsider Directors would have been involved, in any capacity, in determining which receivables were included in the borrowing base of the accounts receivable facility.

### 4.    C&A's Public Statements

C&A alleges that a slew of its "press releases, SEC filings and reports to [C&A] shareholders and/or creditors," "financial statements with the SEC," "statements to [C&A's] creditors," "financial statements," "financial results," "offering materials," "quarterly earnings," "quarterly and annual reports with the SEC," "statements to investors," and "proxy statements" were misleading as a result of the alleged improprieties. (Id. ¶¶ 25, 39-40, 54-55, 69, 71, 80-88,

92-94.) The Complaint does not plead any facts, much less specific facts, suggesting any involvement by the Outside Directors in making the alleged misstatements or their awareness of any such misstatements.

### 5.    The Audit Committee's Internal Investigations

C&A alleges that its audit committee conducted extensive internal investigations into its accounting practices, which allegedly resulted in the conclusion that several officers and directors of C&A had engaged in misconduct. (Id. ¶¶ 41-42, 95-101.) None of the Outside Directors, who cooperated fully in these investigations, has been charged with any wrongdoing in connection with the investigations and the Complaint does not allege otherwise.

### 6.    Other Civil and Criminal Actions

Finally, C&A asserts that many of its former officers and directors face civil and criminal charges associated with the alleged fraudulent accounting scheme, which is the subject of a complaint brought by the SEC, a criminal indictment, and three securities class action lawsuits brought by investors. (Id. ¶¶ 44, 98.) All of the investor lawsuits are themselves based on the indictment and SEC complaint. Neither the SEC complaint nor the criminal indictment names the Outside Directors as defendants or even mentions them in the allegations.

### ARGUMENT

### I.    THE COMPLAINT VIOLATES RULES 8 AND 9(b).

The Complaint is governed by the pleading standards of both Rules 8 and 9(b) of the Federal Rules of Civil Procedure.[4] Rule 8 requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," and that "[e]ach

---

[4]    C&A's claims under the Exchange Act are also governed by a third set of pleading rules found in the PSLRA. (See infra pp. 18-19, 27.)

allegation . . . be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), 8(d)(1). Rule 9(b) requires

that complaints sounding in fraud be pled with particularity. See Fed. R. Civ. P. 9(b) ("[A] party

must state with particularity the circumstances constituting fraud . . . ."). Courts have recognized

that "[t]hese rules are not in conflict" and it is possible to violate them simultaneously. United

States ex rel. Garst v. Lockheed-Martin Corp., 328 F.3d 374, 376 (7th Cir. 2003). Where, as

here, the complaint "is so sprawling as to be essentially incomprehensible (a Rule 8 problem)

and . . . despite the bloat it lacks details outlining fraud (a Rule 9 shortcoming)," it should be

dismissed under both rules. Id.

### A.    The Complaint Does Not Provide the Outside Directors With Fair Notice of Any Claims as Required by Rule 8.

The "short and plain statement" required by Rule 8 must "'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'" Phillips v. Allegheny, 515

F.3d 224, 231 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)).

In Twombly, the Supreme Court further elaborated on the pleading requirements of Rule 8,

holding that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." Id. at 1964-65 (citation omitted). At a minimum, "[f]actual allegations

must be enough to raise a right to relief above the speculative level." Id. at 1965.[5] "The Court

explained that," in the end, "a plaintiff must 'nudge [his or her] claims across the line from

---

[5]    In tightening the pleading standard, the Supreme Court specifically overruled the holding of Conley v. Gibson, 355 U.S. 41 (1957), often quoted by plaintiffs, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle to him to relief." Id. at 45-46. The Supreme Court concluded that the passage was "an incomplete, negative gloss on an accepted pleading standard" and that it "has earned its retirement." Twombly, 127 S. Ct. at 1969.

11

conceivable to plausible' in order to survive a motion to dismiss." <u>Phillips</u>, 515 F.3d at 234
(citing <u>Twombly</u>, 127 S. Ct. at 1974).

Accordingly, complaints that are unduly lengthy or confusing are deficient under
Rule 8. In the words of the Seventh Circuit: "Rule 8(a) requires parties to make their pleadings
straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket
of mud." <u>Lockheed-Martin Corp.</u>, 328 F.3d at 378; <u>see also</u> <u>Saint-Val v. Domino's Pizza, LLC</u>,
No. 06-4273, 2007 WL 2049120, at *1 (D.N.J. July 12, 2007) (dismissing complaint where it "is
so confusing that Defendant is not given fair notice of what claims it faces"); <u>Roberto's Fruit
Market, Inc. v. Schaffer</u>, 13 F. Supp. 2d 390, 395 (E.D.N.Y. 1998) (forcing defendants to select
relevant material from "'mass of verbiage'" in prolix pleading containing vague and
incomprehensible allegations would "'fly in the face of the very purposes for which Rule 8
exists'") (citation omitted).

Here, the Complaint – at 84 pages and 246 paragraphs – is indeed a "bucket of
mud," filled with "labels and conclusions [and] formulaic recitation[s] of the elements" of the
purported causes of action. The sprawling Complaint fails to apprise any of the Outside
Directors of what C&A contends was his individual role in the alleged wrongdoing. The Outside
Directors are each mentioned by name in only two paragraphs – once in a paragraph reciting the
individual's name and the dates he held his position as a director (<u>see</u> Compl. ¶¶ 18-20), and once
in a paragraph stating that the Outside Directors are all Senior Managing Directors of Heartland
LP (<u>id.</u> ¶ 27). While the Complaint purports to allege five claims against the Outside Directors,
it pleads no facts linking them to the alleged wrongdoing. There are no allegations that the
Outside Directors, as non-management defendants, had or would have had anything to do with
the wrongdoing that appears central to the Complaint, including:

- The alleged creation of "round trip" transactions between C&A and one of its suppliers (see id. ¶¶ 53-57);

- The alleged improper accounting recognition of rebate transactions and the creation of "side letters" attributing rebates to incorrect accounting periods (see id. ¶¶ 58-69, 125-26); and

- The inclusion of allegedly ineligible receivables in the borrowing base of C&A's accounts receivable facility (see id. ¶¶ 74-79).

Similarly, the Complaint identifies no misrepresentations made by any of the Outside Directors and sets forth no facts demonstrating why these particular individuals would have had any reason to know that public statements made by C&A were false.  (See id. ¶¶ 25, 39-40, 54-55, 69, 71, 80-88, 92-94.)

Because these allegations do nothing to apprise each of the Outside Directors of what he is personally alleged to have done wrong, the Complaint fails to satisfy the pleading standards set forth in Rule 8 and should be dismissed for this reason alone.

**B.      The Complaint Does Not Plead Any Claim With Particularity as Required by Rule 9(b).**

Because the entire Complaint sounds in fraud, it is also subject to the heightened pleading standards of Rule 9(b).  "Rule 9(b) extends to all averments of fraud or mistake, whatever may be the theory of legal duty – statutory, common law, tort, contractual, or fiduciary." Frota v. Prudential-Bache Sec., Inc., 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986); see also In re Exxon Mobil Corp. Sec. Litig., 500 F.3d 189, 197 (3d Cir. 2007) ("[U]nder our precedent, if a claim not otherwise requiring proof of scienter nonetheless sounds in fraud, then [Rule 9(b)'s] heightened pleading standard applies."); Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502, 507 (7th Cir. 2007) ("A claim that 'sounds in fraud' – in other words, one that is premised upon a course of fraudulent conduct – can implicate Rule 9(b)'s heightened pleading requirements.").

C&A makes clear in the Complaint that its claims are grounded in allegedly fraudulent conduct. At the outset, the Complaint alleges that "[t]he conduct of the Director and Officer Defendants complained of herein involves fraudulent misconduct" (Compl. ¶ 22), and conclusory allegations of fraud then permeate the Complaint beyond the Section 10(b) and fraud claims. (See id. ¶¶ 22, 188, 190, 194, 197.) Because they are grounded in fraud, C&A's Section 14(a), fiduciary duty, and unjust enrichment claims are also subject to the heightened pleading requirements of Rule 9(b). See Cal. Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 163 (3d Cir. 2004) (Section 14(a) claim); Pac. Elec. Wire & Cable Co. v. Set Top Int'l, Inc., No. 03 Civ. 9623, 2005 WL 578916, at *15 (S.D.N.Y. Mar. 11, 2005) (breach of fiduciary duty claim); Kirtley v. Wadekar, No. 05-5383, 2006 WL 2482939, at *2-3 (D.N.J. Aug. 25, 2006) (unjust enrichment claim).

At a minimum, C&A must certainly plead what role each defendant played in the alleged scheme. See Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004) (Rule 9(b) requires plaintiffs to "'inject[] precision and some measure of substantiation into their allegations of fraud'" in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.'") (citation omitted). But as discussed above, the Complaint fails to give the Outside Directors even the most basic notice of what they are alleged to have done wrong under Rule 8 (see supra pp. 11-13), much less allege the "circumstances constituting fraud" by the Outside Directors with the particularity required by Rule 9(b).

**C.    The Complaint Lumps Defendants Together in Violation of Both Rules 8 and 9(b).**[6]

Instead of giving notice as required by Rule 8 or pleading with particularity as required by Rule 9(b), C&A lumps the nineteen defendants together – despite their vastly different relationships with C&A – and subjects them to a variety of vague, contradictory and incomprehensible theories.  Besides the paragraphs that recite each Outside Director's name, dates he held his position as a C&A director, and position at Heartland LP (see Compl. ¶¶ 20-22, 28), the Complaint refers only to "Defendants" or "Director and Officer Defendants" generically, or to specific defendants other than the Outside Directors.  (See, e.g., id. ¶¶ 39, 58, 66, 68-70, 77-79, 81, 84, 89, 92-94, 97, 116-19, 124-26, 153.)

The lumping of all defendants together and the failure to provide facts distinguishing their conduct warrant dismissal for violation of Rule 8.  See Lane v. Capital Acquisitions & Mgmt. Co., No. 04-60602, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) (dismissing complaint where it "fails to differentiate among the defendants, alleging instead violations by a collective 'defendant'" because "the individual defendants cannot determine from the face of the Complaint which acts or omissions the Plaintiffs seek to hold each of them liable") (citing Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001)); Medina v. Bauer, No. 02 Civ. 8837, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) (dismissing claims against defendants lumped together for failure to give adequate notice of wrongdoing to defendants); In re Providian Fin. Corp. ERISA Litig., No. C 01-05027, 2002 WL 31785044, at *1 (N.D. Cal. Nov. 14, 2002) ("Here, plaintiffs have lumped the various classes of defendants into an undifferentiated mass and alleged that all of them violated all of the asserted fiduciary duties.

---

[6]    As discussed further below, this pleading tactic also violates the PSLRA.  (See infra p. 18.)

The resulting cause of action is so general that it fails to put the various defendants on notice of the allegations against them.").

It is also well-established that complaints that lump defendants together fail to satisfy the heightened pleading requirements of Rule 9(b). See, e.g., Tredennick v. Bone, No. 07-0735, 2007 WL 4244652, at *5 (W.D. Pa. Nov. 29, 2007) (citing Silverstein v. Percudani, 422 F. Supp. 2d 468, 472-473 (M.D. Pa. 2006)); Bruhl v. PricewaterhouseCoopers Int'l, No. 03-23044, 2007 WL 997362, at *3 (S.D. Fla. Mar. 27, 2007); Gurfein v. Ameritrade, Inc., 411 F. Supp. 2d 416, 426-27 (S.D.N.Y. 2006); Christensen v. WMA Consumer Servs., Inc., No. Civ. A. 03-1545, 2003 WL 22174240, at *3 (E.D. La. Sept. 5, 2003); Donovan v. ABC-NACO Inc., No. 02 Civ. 1951, 2002 WL 1553259, at *4-5 (N.D. Ill. July 15, 2002); Kennilworth Partners L.P. v. Cendant Corp., 59 F. Supp. 2d 417, 430 (D.N.J. 1999).

The need to distinguish among defendants is particularly acute here because, as the Delaware Court of Chancery has observed, outside directors have very different functions, roles and responsibilities from officers and inside directors involved in the day-to-day management of the company:

> Legally, the board itself will be required only to authorize the most significant corporate acts or transactions: mergers, changes in capital structure, fundamental changes in business, appointment and compensation of the CEO, etc. . . . [O]rdinary business decisions that are made by officers and employees deeper in the interior of the organization can, however, vitally affect the welfare of the corporation and its ability to achieve its various strategic and financial goals.

In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959, 968 (Del. Ch. 1996).

### D.    Given Its Longstanding Access to All the Relevant Facts, C&A Should Be Strictly Held to the Applicable Pleading Requirements.

In this case, the pleading requirements of Rules 8 and 9(b), as well as the PSLRA, should be applied with extra vigor, because the information C&A would need to plead specific facts (if such specific facts existed) has been available to it for years. C&A has had years to

16

investigate the issues underlying the Complaint and unlimited access to information relevant to its claims, including the results of internal investigations conducted by its own audit committee in connection with which the Outside Directors fully cooperated and provided information. (See Compl. ¶¶ 41-42, 95-101.) As C&A admits, since 2003, it has "incur[red] considerable expenses, including costs related to retaining independent counsel and outside auditors, as well as reviewing numerous documents and interviewing employees," in connection with the internal investigations. (See id. ¶ 101.) Thus, unlike the typical case by an "outsider", C&A has had complete access to all the facts.

In these circumstances, C&A has no excuse for the factual pleading deficiencies in the Complaint and it should be dismissed. See Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P., 906 A.2d 168, 211 (Del. Ch. 2006) ("The Litigation Trust has had far more access to information than the typical plaintiff, having access to voluminous documents during the bankruptcy proceedings, for more than a year before it filed its complaint. Thus, it was better positioned than most fraud plaintiffs to meet the standards of Rule 9(b)."), aff'd mem. sub nom. Trenwick Am. Litig. Trust v. Billett, 931 A.2d 438 (Del. 2007); see also Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir. 1996) (holding that in a case with extensive discovery, the court will "thus look more closely at the factual allegations to see if they support the legal conclusions pled"); Vladimir v. Deloitte & Touche LLP, No. 95 Civ. 10319, 1997 WL 151330, at *2 (S.D.N.Y. Mar. 31, 1997) (recognizing that "defendant is entitled to a properly drafted complaint or dismissal thereof" where plaintiffs' counsel had access to defendant's work papers and was involved in related proceedings for years).

.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 10(b).

### A.    C&A Relies Solely on the Group Pleading Doctrine, Which Was Recently Abolished by the Third Circuit.

As discussed above, the Complaint stakes its entire case against the Outside

Directors on allegations made against defendants as a group (supra pp. 15-16), including its

novel claim under Section 10(b) of the Exchange Act.  In recent months, however, the Third

Circuit has made clear that C&A cannot shirk its obligation to particularize its allegations against

each of the Outside Directors by relying on the so-called "group pleading doctrine," which "is no

longer viable in private securities actions after the enactment of the PSLRA." Winer Family

Trust v. Queen, 503 F.3d 319, 335-36 (3d Cir. 2007) ("The PSLRA requires plaintiffs to specify

the role of each defendant, demonstrating each defendant's involvement in misstatements and

omissions.").  Under these circumstances, where the Outside Directors are linked to the alleged

wrongdoing only by way of group pleading, the Third Circuit has mandated dismissal of the

Section 10(b) claim on this basis alone. See id. at 337.

### B.    C&A Fails to Meet the Stringent Pleading Requirements of the PSLRA.

With or without the benefit of the group pleading doctrine, C&A fails to state a

claim under Section 10(b), which requires a plaintiff to allege that the defendant:  "(1) made a

misstatement or omission of material fact (2) with scienter (3) in connection with the purchase or

the sale of a security (4) upon which the plaintiffs reasonably relied and (5) the plaintiffs'

reliance was the proximate cause of their injury." GSC Partners CDO Fund v. Washington, 368

F.3d 228, 236 (3d Cir. 2004).  Not only must a plaintiff plead the elements of a Section 10(b)

claim with the particularity required by Rule 9(b) as in any fraud case, but a plaintiff must also

meet the heightened pleading standard set forth in the PSLRA, which "extends" Rule 9(b) and

"imposes another layer of factual particularity to allegations of securities fraud." In re

Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 217 (3d Cir. 2002); see also id. at 224

("Rule 9(b) and the [PSLRA] impose independent, threshold pleading requirements that, if not

met, support dismissal apart from Rule 12(b)(6).").[7]

   Far from pleading each of the elements of its Section 10(b) claim with

particularity, the Complaint offers only conclusory and boilerplate allegations, which are

insufficient as a matter of law.  See Rockefeller, 311 F.3d at 224 n.19 ("'[U]nder the [PSLRA],

we disregard 'catch-all' or 'blanket' assertions that do not live up to the particularity requirements

of the statute.'" (citation omitted)).  "If a complaint fails to comply with the PSLRA's pleading

requirements, dismissal is mandatory."  GSC Partners, 368 F.3d at 237.

  **1.**  **C&A Does Not Allege That the Outside Directors Actually Made Any Misrepresentations.**

   C&A does not identify any false or misleading statement actually made by any of

the Outside Directors.  Instead, C&A only alleges that the Outside Directors (along with all other

Director and Officer Defendants) "caused" C&A to issue and "participated in the issuance and/or

review of false and/or misleading statements."  (Compl. ¶¶ 25, 92-94, 182.)  The Complaint does

not identify with any particularity what these "false and/or misleading statements" by C&A were,

but rather refers to an undifferentiated mass of "press releases, SEC filings and reports to [C&A]

---

[7] The PSLRA imposes two distinctive pleading requirements on plaintiffs.  First, it provides that where, as here, a complaint "alleges that the defendant . . . made an untrue statement of a material fact," the complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1) (emphasis added); see also Rockefeller, 311 F.3d at 217 ("[The PSLRA] requires plaintiffs to set forth the details of allegedly fraudulent statements or omissions, including who was involved, where the events took place, when the events took place, and why any statements were misleading.").  Second, in any case where, as here, the plaintiff must show that the defendant "acted with a particular state of mind," the complaint must, "with respect to each act or omission" alleged to constitute a violation, "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2) (emphasis added); see generally Winer, 503 F.3d at 326-34.

shareholders and/or creditors," "quarterly and annual reports with the SEC," "statements to investors," "financial statements," and "proxy statements," issued over a period of more than three years. (See id. ¶¶ 25, 39-40, 54-55, 69, 71, 80-88, 92-94.) The Complaint simply ignores the PSLRA's explicit requirement that plaintiffs "specify each statement alleged to have been misleading." 15 U.S.C. § 78u-4(b)(1) (emphasis added).

A number of courts, including those in this Circuit, have adopted a "bright line test" which "requires that [a] defendant actually make the offending statement himself" to be subject to liability under Section 10(b). In re Tyson Foods, Inc. Secs. Litig., 155 F. App'x 53, 56 (3d Cir. 2005) (discussing tests applied by various courts); see also Copland v. Grumet, 88 F. Supp. 2d 326, 332-34 (D.N.J. 1999) ("allegations of 'assisting in,' 'participating in,' 'complicity in' and similar synonyms" fail to state a claim for primary liability under Section 10(b)) (quoting Shapiro v. Cantor, 123 F.3d 717, 720-21 (2d Cir. 1997)). Other courts "permit[] a finding of liability where the defendant had a significant role in drafting or preparing the statement[]." Tyson, 155 F. App'x at 56. Even where this "substantial participation" test applies, however, the complaint must allege specific facts describing the defendant's involvement. See, e.g., Commc'ns Workers of Am. Plan for Employees' Pensions & Death Benefits v. CSK Auto Corp., No. CV06-1503, 2007 WL 951968, at *3 (D. Ariz. Mar. 28, 2007) (dismissing Section 10(b) claim where complaint failed to explain officer's involvement or participation in conference calls in which misrepresentations were allegedly made and relied on "[v]ague and repetitive allegations that 'defendants . . . reiterated the financial results'" (second alteration in original) (citation omitted)).

The Third Circuit has not yet chosen between these tests, but it has held that when neither test is met, dismissal is warranted. See Tyson, 155 F. App'x at 56-57. Here, C&A has

not alleged that the Outside Directors made any statements, nor has it alleged facts showing that they substantially participated in making any statements.

### 2. C&A Does Not Plead Any Facts From Which a Strong Inference of Scienter Can Be Drawn.

C&A has utterly failed to plead any facts – let alone with the particularity required by the PSLRA – that would support an inference that the Outside Directors took any action with scienter, i.e., "intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976). A plaintiff must plead scienter by alleging facts "'establishing a motive and an opportunity to commit fraud, or by setting forth facts that constitute circumstantial evidence of either reckless or conscious behavior.'" In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534-35 (3d Cir. 1999) (citation omitted).[8] The PSLRA requires a plaintiff to plead facts giving rise to a strong inference of scienter with respect to each statement alleged to violate Section 10(b). See 15 U.S.C. § 78u-4(b)(2).

The Supreme Court recently held that "an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing

---

[8]    Conscious misbehavior "may be alleged by stating with particularity facts giving rise to a strong inference of conscious wrongdoing, such as intentional fraud or other deliberate illegal behavior." Advanta, 180 F.3d at 535. Allegations of recklessness involve "'not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" Id. at 535, 539 (citation omitted).

The Supreme Court has specifically left open the question of whether and when recklessness may be sufficient. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2507 n.3 (2007). Regardless, the Third Circuit has embraced a "demanding standard of recklessness to ensure that 'the culpability attaching to such reckless conduct closely approaches that which attaches to conscious deception.'" Globis Capital Partners, L.P. v. Stonepath Group, Inc., 241 F. App'x 832, 835 (3d Cir. 2007) (quoting In re Digital Island Sec. Litig., 357 F.3d 322, 332 (3d Cir. 2004)).

inference of nonfraudulent intent." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499,

2504-05 (2007); see also Winer, 503 F.3d at 326-34 (affirming dismissal for failure to plead

scienter under Tellabs standard). "To determine whether the plaintiff has alleged facts that give

rise to the requisite 'strong inference' of scienter, a court must consider plausible nonculpable

explanations for the defendant's conduct, as well as inferences favoring the plaintiff." Tellabs,

127 S. Ct. at 2510. Ultimately, a "complaint will survive . . . only if a reasonable person would

deem the inference of scienter cogent and at least as compelling as any opposing inference one

could draw from the facts alleged." Id.

   C&A makes just two sweeping allegations concerning scienter against the Outside

Directors and the other defendants as a group: (1) "the Director and Officer Defendants were

solely motivated by their own self interests in receiving compensation and salvaging their own

reputations" and "continuing in their positions and personally profiting therefrom" (Compl. ¶¶

39-40; see also id. ¶¶ 70, 94); and (2) the Director and Officer Defendants, because of their

positions and access to "confidential and proprietary information," "knew that the true facts ...

regarding [C&A's] business and finances had not been disclosed . . . and were being concealed"

(id. ¶ 25), and "knew . . . or deliberately disregarded" that statements issued by C&A were

misleading (id. ¶ 182). Under controlling Third Circuit law, these conclusory allegations fall far

short of the requirements for pleading scienter.

   First, as to C&A's allegations that the Outside Directors were motivated to salvage

their reputations, continue in their positions, and receive compensation (notwithstanding that

they never received any compensation from C&A), the Third Circuit has recognized that

"'[m]otives . . . generally possessed by most corporate officers do not suffice; instead, plaintiffs

must assert a concrete and personal benefit to the individual defendants resulting from this

fraud.'" GSC Partners, 368 F.3d at 237-38 (rejecting allegations of corporate defendants' motives

to "'retain . . . position with its attendant salary'" and to "'"protect and enhance their executive

positions"'") (citations omitted); see also In re Digital Island Sec. Litig., 357 F.3d 322, 331 (3d

Cir. 2004) ("'[A]n allegation that defendants were motivated by a desire to maintain or increase

executive compensation is insufficient because such a desire can be imputed to all corporate

officers.'") (citation omitted) (alteration in original).  Here, C&A does not allege that the Outside

Directors received any "concrete and personal benefit" as a result of the alleged fraud.

   Second, the Third Circuit has also made clear that C&A cannot plead scienter, as

it attempts to do here, by simply resting on the Outside Directors' positions at C&A:

> [A]llegations that a securities-fraud defendant, because of his position within the
> company, 'must have known' a statement was false or misleading are 'precisely
> the types of inferences which [courts], on numerous occasions, have determined
> to be inadequate to withstand Rule 9(b) scrutiny.'  Generalized imputations of
> knowledge do not suffice, regardless of the defendants' positions within the
> company.

Advanta, 180 F.3d at 539 (second alteration in original) (citation omitted); see also In re

Suprema Specialties Inc., 438 F.3d 256, 281-82 (3d Cir. 2006).  The Third Circuit has also

repeatedly held that "general allegations that defendants knew or recklessly disregarded the false

nature of the statements at issue are insufficient" to plead scienter.  In re Alpharma Inc. Sec.

Litig., 372 F.3d 137, 149 (3d Cir. 2004); accord GSC Partners, 368 F.3d at 239.  Rather,

plaintiffs "must support their allegations [of scienter] with the essential factual background that

would accompany 'the first paragraph of any newspaper story' – that is, the 'who, what, when,

where and how' of the events at issue."  GSC Partners, 368 F.3d at 239 (citation omitted); accord

Advanta, 180 F.3d at 534-35.

   In Alpharma, plaintiffs attempted to demonstrate recklessness by alleging that

defendants had violated GAAP and the company's internal policies in connection with

questionable accounting practices that had been uncovered in a division of the company.  372

F.3d at 149.  The Third Circuit held that such allegations, which failed to allege that the

individual defendants were involved in any way with the accounting violations and "rest[ed]

primarily upon the premise that the individual defendants [were] liable simply by virtue of the

positions they hold within the company," were insufficient to state a claim under Section 10(b).

Id. at 149-50.  This holding mandates dismissal of the Section 10(b) claim here, where the

Complaint is devoid of allegations that the Outside Directors were involved with the alleged

accounting irregularities and seeks to impose liability based solely on their positions at C&A.

### C.     C&A Cannot Plead Reliance.

With respect to the reliance element of its Section 10(b) claim, the Complaint

offers only the single conclusory assertion that C&A "sold securities in reliance on Director and

Officer Defendants' materially false and misleading statements." (Compl. ¶ 184.)  Leaving aside

the fact that C&A has not pled any misrepresentations were made to it – as opposed to by it – the

allegation that C&A relied on the Director and Officer Defendants' alleged misrepresentations

simply "makes no sense because the complaint alleges that those who controlled [C&A] knew

the statements were inaccurate." Trenwick, 906 A.2d at 211-12.

As the Delaware Court of Chancery recently explained in rejecting a similar claim

brought by the litigation trust of a bankrupt company:

> By [plaintiff's] own admission, [the company's] board of directors knew the true
> facts about all the issues said to have been misrepresented.  As a result, [the
> company] – as an entity – did not rely to its detriment on any of the misstatements,
> despite the cursory statement in the complaint that the 'plaintiff' relied on the false
> statements to its detriment. . . .
>
>     . . . [T]he claim that the disclosing company made misrepresentations is
> not a fraud claim, it is a claim related to the original wrongdoing.  The
> misdisclosure might have relevance for the vitality of the underlying claim – such
> as by defeating an argument that a stockholder vote cleansed any breach of
> fiduciary duty or by tolling a statute of limitations – but it would not give rise to a

24

separate claim for fraud. The reason is simple, the entity would not have been relying to its detriment on the fraudulent statement because its controllers were aware of the actual state of affairs. For this reason, our law has treated claims by stockholders that corporate disclosures in connection with a stockholder vote or tender were materially misleading as direct claims belonging to the stockholders who were asked to vote or tender.

Id. (footnotes and citations omitted). Given C&A's claim that the Director and Officer

Defendants – and therefore, C&A – "knew . . . the true facts" (Compl. ¶¶ 27, 154), C&A cannot,

as a matter of law, plead that it acted in reliance on any misrepresentations by the Director and

Officer Defendants.

> **D.     C&A Cannot Plead Economic Loss or Loss Causation.**

C&A also fails to plead facts demonstrating it was injured by selling securities to

others, much less pleading with any particularity "a causal connection between the material

misrepresentation and the loss." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 342 (2005); see

also In re The First Union Corp. Sec. Litig., No. Civ. 3:99CV237-H, 2006 WL 163616, at *6

(W.D.N.C. Jan. 20, 2006) (loss causation must be pled with particularity). First, C&A cannot

premise its claim on its alleged sale of securities to others at an artificially inflated price. (See,

e.g., Compl. ¶ 93.) Selling securities to others at an inflated price does not result in an injury to

the seller and is not cognizable under the securities laws. See Rochelle v. Marine Midland Grace

Trust Co. v. Young, 535 F.2d 523, 529 (9th Cir. 1976) (plaintiff company cannot bring 10(b)

claim when it "lost nothing in its capacity as an investor"); see also Bloor v. Carro, Spanbock,

Londin, Rodmin & Fass, 754 F.2d 57, 62 (2d Cir. 1985) ("By failing to allege that the proceeds

of the sales were inadequate and by admitting that the corporation received 'large amounts of

money' for the sale of the stock, [the bankruptcy trustee] necessarily undercut any claim that the

harm later suffered by the corporation was the result of [defendant's] activities.").

Second, C&A cannot claim any loss based on the controversial theory of "deepening insolvency," which has been defined as "'an injury to [a debtor's] corporate property from the fraudulent expansion of corporate debt and prolongation of corporate life.'" In re CitX Corp., 448 F.3d 672, 677 (3d Cir. 2006) (alteration in original) (citation omitted). While C&A has studiously excised specific references to "deepening insolvency" that appeared throughout its original complaint, it continues to allege just as much in this Complaint. (See Compl. ¶¶ 39, 71, 89, 93, 107, 142, 172, 177, 184, 195, 197, 204). C&A's reason for avoiding the phrase is obvious, given the Third Circuit's rejection of deepening insolvency as a theory of damages, see CitX, 448 F.3d at 677, and as an independent cause of action, see Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.), 493 F.3d 345, 385 n.36 (3d Cir. 2007) (citing Delaware court's rejection in Trenwick, 906 A.2d at 205). However, "simply calling a discredited deepening insolvency cause of action by some other name does not make it a claim that passes muster." Official Comm. Of Unsecured Creditors v. Tennenbaum Capital Partners, LLC (In re Radnor Holdings Corp.), 353 B.R. 820, 842 (D. Del. 2006).

Lastly, as relief from the so-called "Director and Officer Defendants," C&A seeks repayment of "all salaries and the value of other remuneration of any kind paid to them" and "restitution . . . for all sums of money and other things of value by which they were unjustly enriched." (Compl. at 83, ¶¶ B-C.) However, C&A does not make any attempt to tie those amounts to any alleged misrepresentations nor is there a logical nexus. In any case, the Outside Directors did not receive any salaries, directors' fees, stock options, or anything of value from C&A, as disclosed in the proxy statements cited by C&A throughout the Complaint. (Declaration of Robert S. Saunders dated April 28, 2008 ("Saunders Decl."), Ex. A, relevant

excerpts from SEC Form DEF 14A, Proxy Statement filed by C&A on Sept. 30, 2004.)[9]  Thus,

there is nothing for C&A to recover from the Outside Directors and the Complaint should be

dismissed as to these individuals.

## III.     THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 14(a).

For yet another novel claim, C&A seeks to recover under Section 14(a) of the

Exchange Act for allegedly false proxy statements it issued to its stockholders, not for the benefit

of its stockholders (who were allegedly deceived), but instead for its creditors (who did not have

a right to vote based on the proxy statements).

To establish a violation of Section 14(a), a plaintiff must demonstrate that:  (1) the

proxy statements contained false or misleading statements with respect to a material fact, or

omitted to state a material fact necessary to make the statements not misleading; (2) the

misstatement caused the plaintiff's injury; and (3) the proxy solicitation itself was an "'essential

link'" in accomplishing the proposed corporate transaction.  In re NAHC, 306 F.3d at 1329

(citation omitted); NACCO Indus., Inc. v. Applica Inc., No. 1:06-CV-3002, 2006 WL 3762090,

at *7 (N.D. Ohio Dec. 20, 2006) (citation omitted); see also Virginia Bankshares, Inc. v.

Sandberg, 501 U.S. 1083, 1099-100 (1991) (explaining provenance of "essential link"

requirement).  As discussed above, because the Section 14(a) claim sounds in fraud, it is subject

to the heightened pleading requirements of Rule 9(b).  In addition, the claim is subject to the

PSLRA's requirement that a complaint must plead with specificity the falsity of statements made

in the proxy statement.  See 15 U.S.C. § 78u-4(b)(1); see also In re NAHC, 306 F.3d at 1329.

---

[9]     A court may consider documents integral to the complaint, even if not attached to the
complaint, without converting a motion to dismiss into a motion for summary judgment, see
U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002), and may take judicial
notice of public disclosure documents filed with SEC, see In re NAHC, Inc. Sec. Litig., 306
F.3d 1314, 1331 (3d Cir. 2002).

Because C&A has not sufficiently pled any of the elements of a Section 14(a) claim, this claim should be dismissed.

**A.    C&A Does Not Identify Any False Statements In the Proxy Statement.**

C&A has not pled with particularity what statements within the proxy statements were allegedly false or why those statements were false. Indeed, the sum of C&A's allegations in this regard is that the proxy statements failed to disclose "that the Company was reporting financial results which were artificially inflated by the improper accounting practices detailed herein." (Compl. ¶ 94.) This failure alone warrants dismissal of the Section 14(a) claim.

**B.    C&A Does Not Plead an Essential Link Between the Proxy Statements and Any Alleged Injury.**

C&A also has not alleged facts indicating that the proxy solicitation was an "essential link" in the transaction at issue. See Virginia Bankshares, 501 U.S. at 1099-100; Gen. Elec. Co. v. Cathcart, 980 F.2d 927, 933 (3d Cir. 1992). C&A contends that the proxy statements led to the election of directors and endorsement of the Company's compensation policies, and because the directors continued in their positions, they were able to perpetrate the allegedly fraudulent scheme which, in turn, allegedly caused unspecified damage to C&A. (See Compl. ¶¶ 94, 190.) This attenuated causation argument has been squarely rejected by the Third Circuit. See General Electric, 980 F.2d at 933 ("[T]he mere fact that omissions in proxy materials, by permitting directors to win re-election, indirectly lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss.") (emphasis in original); see also Fink v. Weill, No. 02 Civ. 10250, 2005 WL 2298224, at *5 (S.D.N.Y. Sept. 19, 2005) ("[S]ection 14(a) claim fails because the wrongs flowing from the allegedly false and misleading disclosure are improper governance and injury resulting from the undisclosed

28

transactions, rather than from any particular action taken by shareholders on the basis of the proxy statements."). [10]

### C.    C&A Does Not Have Standing to Pursue a Section 14(a) Claim.

Section 14(a) does not explicitly create a private right of action, and claims may only be brought in those limited contexts where courts have inferred such a right. See Virginia Bankshares, 501 U.S. at 1104 (limiting private right under Section 14(a) to situations where comparable right already exists). The Supreme Court has noted that Section 14(a) was intended to protect "investors from misinformation that rendered them unwitting agents of self-inflicted damage." Id. at 1103. Accordingly, only stockholders with a voting interest have standing to assert a private right of action for damages pursuant to Section 14(a), and courts have limited attempts by other plaintiffs to extend the implied right of action. See 7547 Corp. v. Parker & Parsley Dev. Partners, L.P., 38 F.3d 211, 230 (5th Cir. 1994) ("[W]e believe that it goes too far to allow persons not even entitled to vote to assert a claim under [Section 14(a)]."); Salomon Bros. Mun. Partners Fund, Inc. v. Thornton, 410 F. Supp. 2d 330, 334 (S.D.N.Y. 2006) (questioning whether issuer has standing under Section 14(a)); Diceon Elecs., Inc. v. Calvary Partners, L.P., 772 F. Supp. 859, 866-67 (D. Del. 1991) (issuer lacks standing to sue under Section 14(a) for damages caused by fraudulent proxy solicitation).

---

[10]    In addition, the Supreme Court in Virginia Bankshares stressed that a claimant must posit a theory of causation which links the misrepresentation to "the votes legally required to authorize the action proposed." Virginia Bankshares, 501 U.S. at 1102; see also Scattergood v. Perelman, 945 F.2d 618, 625-26 (3d Cir. 1991) (following Supreme Court in Virginia Bankshares in "rejecting nonvoting causation theories"); Thouret v. Hudner, No. 95 Civ. 1793, 1996 WL 38824, at *2 (S.D.N.Y. Feb. 1, 1996) ("[W]here minority shareholders' votes [are] not necessary to the passage of a proposal, they [have] no private right of action under § 14(a)."). Here, among the nineteen individuals and entities named as defendants, C&A has brought claims against the majority of its stockholders. As a result, no votes other than those of the defendants in this action were necessary to effectuate the elections about which C&A complains. As a result, the Section 14(a) claim cannot survive a motion to dismiss.

Neither C&A nor C&A's creditors were stockholders or entitled to vote based on any of the allegedly misleading proxy statements. As such, Section 14(a) does not afford these parties a private right of action for damages.

**D.    The Statute of Limitations Bars Any Claim Based on the 2002 Proxy Statement.**

The statute of limitations for claims under Section 14(a) is one year from the date of discovery, but no more than three years from the date the proxy statement was issued. See In re Exxon Mobil Corp. Sec. Litig., 500 F.3d 189, 194-95, 198 (3d Cir. 2007); Westinghouse Elec. Corp. v. Franklin, 993 F.2d 349, 353 (3d Cir. 1993). C&A purports to assert claims based on its 2002 proxy statement, which was filed on April 25, 2002. C&A filed for bankruptcy on May 17, 2005. (Compl. ¶¶ 6, 91, 188.) As a result, the statute of limitations for a Section 14(a) claim based on the 2002 proxy statement expired, at the latest, on April 25, 2005 – three years after the proxy statement was filed and before C&A filed for bankruptcy. Accordingly, C&A may not maintain a Section 14(a) claim against the Outside Directors based on the 2002 proxy statement.

**IV.    THE COMPLAINT FAILS TO STATE A CLAIM FOR FRAUD.**

"The standards for proving fraud claims under federal securities law and under Delaware state law are similar. . . . To prove a claim of fraud under Delaware law, the plaintiffs must establish that the defendants: (1) with intent to deceive, (2) made false statements (3) of material fact (4) upon which plaintiffs relied (5) reasonably (6) and to their detriment." Brug v. Enstar Group, Inc., 755 F. Supp. 1247, 1252-53 (D. Del. 1991) (citing Simons v. Cogan, 549 A.2d 300, 304 (Del. 1988)). Rule 9(b) requires plaintiffs to plead their fraud claim with particularity by providing "sufficient factual detail regarding the circumstances of the alleged fraud to place the defendants on notice of the precise misconduct charged." Brug, 755 F. Supp. at 1253.

30

Like its Section 10(b) claim, C&A's fraud claim against the Outside Directors makes no sense. First, the Complaint alleges that the Outside Directors made misrepresentations to themselves. (See Compl. ¶ 200 ("the Director and Officer Defendants made misrepresentations of material facts to [C&A's] Board of Directors and Audit Committee").) Similarly illogical are C&A's allegations that the Outside Directors relied on their own purported misrepresentations. (Id. ¶¶ 202-03 ("[C&A], through its Board of Directors and Audit Committee," relied on misrepresentations made by the Director and Officer Defendants).)

Moreover, the Complaint fails to plead with particularity that: (1) the Outside Directors made any false statements (see supra pp. 19-21), (2) upon which C&A relied (see supra pp. 24-25), (3) to C&A's detriment (see supra pp. 25-27). Instead, C&A's allegations:

> are precisely the sort of unspecific, broad-brush generalities that Rule 9(b) is intended to preclude from serving as a basis for a fraud claim. Notably absent from the complaint are particularized allegations identifying what aspects of [the companies'] financial statements were tainted by improper accounting practices, when those financial statements were made public, and the circumstances that suggest that any inaccuracies were intentional, rather than good faith mistakes.

Trenwick, 906 A.2d at 208 (dismissing litigation trust's fraud claim against directors of bankrupt companies under identical Delaware Chancery Rule 9(b)).

While Rule 9(b) permits intent to be averred generally, the Complaint fails to meet even this standard. Far from pleading facts demonstrating intent, C&A actually pleads the opposite: "The conduct of the Director and Officer Defendants, whether intentional, reckless, grossly negligent or mistaken, constituted fraud." (Compl. ¶ 201 (emphasis added).) Of course, if the Outside Directors' conduct were merely "mistaken," it cannot, as a matter of law, constitute fraud. In any event, such "general allegations do not claim that the defendants were actually aware of any falsity of or incompleteness in the challenged statements" and are insufficient to plead intent. Brug, 755 F. Supp. at 1255.

31

## V.    THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY.

C&A's breach of fiduciary duty claim against the Outside Directors also has no merit.  Taking a kitchen-sink approach, C&A contends in conclusory fashion that the Outside Directors breached their "duties of loyalty, good faith and care" to the Company and its creditors,[11] as well as caused "corporate waste" and "dissipation of corporate assets."  (Compl. ¶¶ 194-95.)  Without offering a single allegation about what exactly the Outside Directors did, C&A simply asserts that the "Director and Officer Defendants" breached their fiduciary duties "by orchestrating, encouraging or utilizing various accounting schemes as set forth herein which materially misstated the financial condition of the Company."  (Id. ¶ 194; see also id. ¶¶ 22, 195.)  Because the Complaint is bereft of allegations that the Outside Directors were in any way involved in the alleged "accounting schemes," C&A has not met its burden under Rule 8, let alone Rule 9(b), to state a claim for breach of fiduciary duty.

### A.    The Duty of Loyalty Claim Fails.

To state a claim for breach of the duty of loyalty or good faith[12] against the Outside Directors, C&A must "'plead facts demonstrating that a majority of a board that approved the transaction in dispute was interested and/or lacked independence.'"  Continuing

---

[11]    To the extent that the Litigation Trust or C&A itself purports to assert a breach of duty to creditors, such a claim must be dismissed because the Delaware Supreme Court has held that no such duty exists, even in insolvency.  North Amer. Catholic Educ. Programming Foundation, Inc. v. Gheewalla, 930 A.2d 92, 103 (Del. 2007).

[12]    The duty of good faith is subsumed within the duty of loyalty.  See Edgecomb, 385 F. Supp. 2d at 460 n.9; see also Stone ex rel. AmSouth Bancorporation v. Ritter, 911 A.2d 362, 370 (Del. 2006) ("[T]he obligation to act in good faith does not establish an independent fiduciary duty that stands on the same footing as the duties of care and loyalty.  Only the latter two duties, where violated, may directly result in liability, whereas a failure to act in good faith may do so, but indirectly.").

Creditors' Comm. of Star Telecomms. Inc. v. Edgecomb, 385 F. Supp. 2d 449, 460 (D. Del. 2004) (citation omitted) (emphasis in original).  "To show that a director was interested, it is usually necessary to show that the director was on both sides of a transaction or received a benefit not received by the shareholders." Edgecomb, 385 F. Supp. 2d at 460; accord Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984), overruled on other grounds, Brehm v. Eisner, 746 A.2d 244 (Del. 2000).  "Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." Aronson, 473 A.2d at 816.

Nowhere in the Complaint does C&A allege any facts sufficient to state a claim for breach of the duty of loyalty:  C&A does not identify any transaction that could serve as the basis for its duty of loyalty claim; C&A does not allege that any of the Outside Directors (much less a majority of the board) stood on both sides of, or received any benefit from, that unidentified transaction; C&A does not allege that the decision to approve that unidentified transaction (by a majority of the board, no less) was based on any consideration or influence extraneous to the corporate merits.  (See Compl. ¶¶ 22-26, 193-95.)

**B.    The Duty of Care Claim Fails.**

C&A's duty of care claim fails as a matter of law because the exculpation clause in C&A's Certificate of Incorporation immunizes the Company's directors from liability arising from breaches of the duty of care.  See Edgecomb, 385 F. Supp. 2d at 462-63; Malpiede v. Townson, 780 A.2d 1075, 1093-96 (Del. 2001).  Specifically, the Certificate of Incorporation provides:

> To the fullest extent that the General Corporation Law of the State of Delaware as it exists on the date hereof or as it may hereafter be amended permits the limitation or elimination of the liability of directors, no director of the Corporation shall be liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director.  No amendment to or repeal of

33

this Article EIGHTH shall apply to or have any effect on the liability or alleged liability of any director of the Corporation for or with respect to any acts or omissions of such director occurring prior to such amendment or repeal.

(Saunders Decl., Ex. B, Restated Cert. of Inc. of C&A, at 25-26.)[13]  Thus, even if C&A could state a duty of care claim, it would be "unavailing because defendants have brought forth the Section 102(b)(7) charter provision that bars such claims.  This is the end of the case."  Malpiede, 780 A.2d at 1094-95.

### C.    The Corporate Waste Claim Fails.

The exculpatory clause in C&A's Certificate of Incorporation also serves to shield the Outside Directors from C&A's cursory allegation of corporate waste.  See Edgecomb, 385 F. Supp. 2d at 465.  In any case, the Complaint in no way meets Delaware's "stringent" standard for pleading corporate waste, which must entail "'an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration.'"  Edgecomb, 385 F. Supp. 2d at 464 (citation omitted).[14]  Indeed, "[c]orporate waste is very rarely found in Delaware courts because the applicable test imposes such an onerous burden upon a plaintiff."  In re Walt Disney Co. Derivative Litig., 907 A.2d 693, 748 (Del. Ch. 2005), aff'd, 906 A.2d 27 (Del. 2006); see also id. at 749 ("[W]aste is a rare, 'unconscionable case[]' where directors irrationally squander or give away corporate assets.'")

---

[13]  This Court may take judicial notice of C&A's Certificate of Incorporation.  See Morrison v. Madison Dearborn Capital Partners III, L.P., 389 F. Supp. 2d 596, 597 n.2 (D. Del. 2005); Shurkin v. Golden State Vintners, Inc., No. C 04-3434, 2005 WL 1926620, at *6 (N.D. Cal. Aug. 10, 2005) ("[D]istrict courts routinely take judicial notice of public documents such as certificates of incorporation or organization filed with the secretary of state.").

[14]  See also Brehm, 746 A.2d at 263 ("[A] waste entails an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade.  Most often the claim is associated with a transfer of corporate assets that serves no corporate purpose; or for which no consideration at all is received.  Such a transfer is in effect a gift.").

(citation omitted; alteration in original); accord Edgecomb, 385 F. Supp. 2d at 464. Here, C&A

fails to identify any exchange, much less one for which C&A received grossly inadequate

consideration.

## VI.    THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.

"'Unjust enrichment is defined as "the unjust retention of a benefit to the loss of

another, or the retention of money or property of another against the fundamental principles of

justice or equity and good conscience."'" Schock v. Nash, 732 A.2d 217, 232 (Del. 1999)

(citation omitted).  Courts look to several factors in determining whether a plaintiff has

adequately pled a claim for unjust enrichment:  "(1) an enrichment, (2) an impoverishment, (3) a

relation between the enrichment and the impoverishment, (4) the absence of justification, and (5)

the absence of a remedy provided by law." MetCap Sec. LLC v. Pearl Senior Care, Inc., No.

Civ.A. 2129, 2007 WL 1498989, at *5 (Del. Ch. May 16, 2007).

Here, C&A's unjust enrichment claim fails for the simple reason that it has not

alleged any enrichment, unjust or otherwise, received by the Outside Directors.  These

individuals received nothing from C&A – they did not receive any compensation for their

services as directors; they did not sell any assets to C&A; they did not engage personally in any

other transactions with C&A.  The Complaint makes no allegations to the contrary.

## VII.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiffs have had an unusually ample opportunity to plead their Complaint.  Not

only have they had years of virtually unfettered access to all of the documents and witnesses

relevant to the allegations in the Complaint, but plaintiffs have also enjoyed the expert assistance

of numerous law firms and accountants in connection with the wide-ranging internal

investigations.  Moreover, despite previewing the Outside Directors' arguments in their motion to

dismiss the original complaint, plaintiffs added only a smattering of amendments to the

35

Complaint that do nothing to remedy the numerous defects pointed out in the briefing. Given the extensive time and information available to plaintiffs, a third bite at the proverbial apple should not be permitted.

## CONCLUSION

For all the foregoing reasons, the Outside Directors respectfully request that all claims alleged against them in the Complaint be dismissed with prejudice.

Dated: April 28, 2008

Jonathan J. Lerner
Lea Haber Kuck
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Tel: (212) 735-3000

/s/ Robert S. Saunders
Robert S. Saunders (Bar I.D. No. 3027)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
Tel: (302) 651-3000

Attorneys for Daniel P. Tredwell,
W. Gerald McConnell and
Samuel Valenti, III

36