IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COLLINS & AIKMAN CORPORATIONS and COLLINS & AIKMAN PRODUCTS CO., as Debtors in Possession, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 07-265-SLR-LPS |
| DAVID A. STOCKMAN, J. MICHAEL STEPP, BRYCE M. KOTH, DAVID R. COSGROVE, PAUL C. BARNABA, ROBERT A. KRAUSE, JOHN A. GALANTE, CHARLES E. BECKER, ELKIN B. MCCALLUM, THOMAS E. EVANS, CYNTHIA HESS, DANIEL P. TREDWELL, W. GERALD MCCONNELL, SAMUEL VALENTI, III, HEARTLAND INDUSTRIAL PARTNERS, L.P., HEARTLAND INDUSTRIAL ASSOCIATES, L.L.C., HEARTLAND INDUSTRIAL GROUP, L.L.C., PRICEWATERHOUSECOOPERS LLP and KPMG LLP, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CHARLES E. BECKER'S MOTION TO DISMISS THE AMENDED COMPLAINT**

OF COUNSEL:

JENNER & BLOCK LLP
Anton Valukas
330 N. Wabash Avenue
Chicago, IL 60611-7603
avalukas@jenner.com

Stephen L. Ascher
919 Third Avenue - 37th Floor
New York, New York 10022
sascher@jenner.com

DATED:  April 28, 2008

PRICKETT, JONES & ELLIOTT, P.A.
James L. Holzman (Bar ID #663)
J. Clayton Athey (Bar ID #4378)
1310 King Street, Box 1328
Wilmington, Delaware  19899
(302) 888-6500
jlholzman@prickett.com
jcathey@prickett.com

*Counsel for Defendant Charles E. Becker*

## TABLE OF CONTENTS

Preliminary Statement ............................................................................................ 1

    A.  The Parties ................................................................................... 5

    B.  The Scheme Alleged in the Complaint .............................................. 6

        1.  The Company's Acquisition of the Becker Group ........................... 7

            a.  The Non-Compete Agreement ............................................ 7

            b.  The Acquisition Price and Due Diligence ........................... 8

            c.  The $300,000 Consulting Fee .......................................... 8

        2.  The Joan Fabrics Roundtrip Transactions ..................................... 9

        3.  The Rebate Scheme ................................................................. 9

        4.  The Company's August 2004 Sale of Notes ................................. 10

        5.  The GECC Loan .................................................................... 11

        6.  The Other Misrepresentations .................................................. 11

        7.  Alleged Malpractice by the Company's Auditors .......................... 12

    C.  The Company's Bankruptcy ............................................................. 12

    D.  The Amended Complaint ................................................................. 13

Argument ........................................................................................................ 14

I.  The Amended Complaint Does Not Adequately Allege That Mr. Becker Participated in Any Securities or Accounting Fraud ................................................... 14

    A.  The 10b-5 Claim Should Be Dismissed ............................................. 14

        1.  Plaintiffs Fail to Allege Fraud with Particularity As to Mr. Becker ................... 14

        2.  The Amended Complaint Does Not Allege a Primary Violation by Mr. Becker ................................................................................ 16

        3.  Plaintiffs Fail to Allege Facts Giving Rise to a "Strong Inference" That Mr. Becker Acted with Scienter ......................................................... 17

        4.  The Company Does Not Have Standing to Bring the 10(b) Claim ................. 20

     **5.  The Amended Complaint Does Not Adequately Allege Loss Causation** ............. **21**

  **B.  The Section 14(a) Claim Should Be Dismissed** ............................................. **24**

     **1.  The Amended Complaint Does Not Allege Facts Giving Rise to a Strong Inference That Mr. Becker Was Negligent** ................................................ **24**

     **2.  The Claim Does Not Adequately Allege Causation** ............................... **26**

     **3.  The Allegations Do Not Satisfy the "Essential Link" Test** .................... **26**

  **C.  The Breach of Fiduciary Duty Claim Should Be Dismissed** ...................................... **28**

     **1.  The Amended Complaint Does Not State a Claim** ................................. **28**

     **2.  The Amended Complaint Does Not Adequately Allege a Failure to Supervise** .......................................................................................... **30**

     **3.  The Claim Does Not Adequately Allege Facts Sufficient to Pierce the Protections of the Exculpatory Clause or 8 Del. C. § 141(e)** ................. **31**

     **4.  "Deepening Insolvency" Damages Are Not Cognizable** ........................ **33**

  **D.  The Common Law Fraud Claim Should Be Dismissed** ........................................... **34**

     **1.  The Claim Fails to Allege Fraud with Particularity** ........................... **34**

     **2.  The Claim Does Not Plead Scienter Adequately** ................................. **35**

     **3.  The Claim Does Not Allege Proximate Cause** .................................... **35**

     **4.  "Deepening Insolvency" Damages Are Not Cognizable** ........................ **36**

**II.  The Unjust Enrichment Claim Concerning the Company's Acquisition of the Becker Group Should Be Dismissed** ............................................................................. **36**

  **A.  The Statute of Limitations Bars The Claim** ............................................................ **37**

  **B.  The Unjust Enrichment Claim is Barred by the Business Judgement Rule** ............. **38**

  **C.  Plaintiffs Have Not Adequately Alleged Unjust Enrichment** ................................... **38**

**III. The Amended Complaint Should Be Dismissed With Prejudice** ..................................... **39**

**Conclusion** ...................................................................................................................... **40**

# TABLE OF AUTHORITIES

**CASES**

*7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211(5th Cir. 1994) .................... 27

*Akerman v. Collins & Aikman Corp.*, No. 1:05-CV-05098 (S.D.N.Y.) ..................................... 12

*Ash v. McCall*, 2000 WL 1370341 (Del. Ch. Sept. 15, 2000) .................................... 33

*Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168 (3d Cir. 2005).................................... 28

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007)........................................ 3, 29

*Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006)........................................... 21

*Bio-Medical Sciences, Inc. v. Weinstein*, 407 F. Supp. 970 (S.D.N.Y. 1976) ................20, 21, 22

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) ................................................ 20

*Bond Opportunity Fund v. Unilab Corp.*, 2003 WL 21058251 (S.D.N.Y. May 9, 2003)........... 25

*Bruno v. Collins & Aikman Corp.*, No. 2:05-CV-71325 (S.D.N.Y.) ........................................... 12

*Buckley v. O'Hanlon*, 2007 WL 956947 (D. Del. Mar. 8, 2007)........................................ 28, 31

*California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126 (3d Cir. 2004)................. 24

*Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645 (7th Cir. 1997)............................... 21

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) .... 16

*Cinalli v. Kane*, 191 F. Supp. 2d 601 (E.D. Pa. 2002) ................................................. 34

*Conley v. Gibson*, 355 U.S. 41 (1957)........................................................... 29

*Copland v. Grumet*, 88 F. Supp. 2d 326 (D.N.J. 1999) .................................................. 17

*Crescent/Mach I Partners, L.P.*, 846 A.2d 963 (Del. Ch. 2000) .......................................... 30, 33

*Desimone v. Barrows,* 924 A.2d 908 (Del. Ch. 2007)........................................................ 29

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005) ....................................................... 21

*Egleston v. Collins & Aikman Corp.*, No. 2:05-CV-04950 (S.D.N.Y.) ...................................... 12

*Emerald Partners v. Berlin*, 2003 WL 21003437 (Del. Ch. Apr. 28, 2003) .............................. 32

*Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060 (Del. 1988) ................................... 38

*Gantler v. Stephens*, 2008 WL 401124 (Del. Ch. Feb. 14, 2008).............................................. 38

*Gariddi v. Mosingo*, No. 2:05-CV-05251 (S.D.N.Y.)................................................... 12

*Gen. Elec. Co. v. Cathcart*, 980 F.2d 927 (3d Cir. 1992).........................................26, 27, 36

*Giordano v. Czerwinski*, 216 A.2d 874 (Del. 1966)......................................................... 36

*Globis Capital Partners, L.P. v. Stonepath Group, Inc.*, 241 Fed. Appx. 832 (3d Cir. 2007) ..... 19

*Gould v. Am.-Haw. S. S. Co.*, 535 F.2d 761 (3d Cir. 1976)........................................... 24

iv

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) ................................................................. 31

*Halpern v. Barran*, 313 A.2d 139 (Del. Ch. 1973) ................................................................. 37

*Hoover v. Allen*, 241 F. Supp. 213 (S.D.N.Y. 1965) ............................................................... 22

*Hudson v. Wesley College, Inc.*, 1998 WL 939712 (Del. Ch. Dec. 23, 1998) ......................... 36

*In re Advanta Corp. Sec. Litig.*, 180 F.3d 525 (3d Cir. 1999) ...................................15, 17, 18, 19

*In re Aetna Inc. Sec. Litig.*, 34 F. Supp. 2d 935 (E.D. Pa. 1999) ........................................... 29

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ............................... 15

*In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574 (D.N.J. 2001) ............................... 37

*In re Caremark Intern. Inc. Derivatives Lit.*, 698 A.2d 959 (Del. Ch. 1996) ...................... 30, 31

*In re Champion Enters., Inc., Sec. Litig.*, 145 F. Supp. 2d 871 (E.D. Mich. 2001) .................. 39

*In re CitX Corp., Inc.*, 448 F.3d 672 (3d Cir. 2006) .......................................................... 24, 33

*In re DVI, Inc. Sec. Litig.*, 2005 WL 1307959 (E.D. Pa. May 31, 2005) ................................. 16

*In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549 (S.D. Tex. 2002) ....... 17

*In re GlenFed, Inc., Sec. Litig.*, 60 F.3d 591 (9th Cir. 1995) ................................................. 29

*In re Lukens Inc. S'holders Litig.*, 757 A.2d 720 (Del. Ch. 1999) .......................................... 32

*In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................. 25, 33

*In re NAHC, Inc. Sec. Litig.*, 2001 WL 1241007 (E.D. Pa. Oct. 17, 2001) ............................. 39

*In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314 (3d Cir. 2002) ............................................... 6, 37

*In re Nat'l Auto Credit Inc. S'holder Litig.*, 2003 WL 139768 (Del. Ch. Jan. 10, 2003) ........... 30

*In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 511 (D. Del. 2001) ..................................... 24

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198 (3d Cir. 2002) .......................... 15

*In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006) ............................... 19

*In re Teleglobe Commc'n Corp.*, 493 F.3d 345 (3d Cir. 2007) .............................................. 33

*In re The Student Loan Corp. Derivatives Litig.*, 2002 WL 75479 (Del. Ch. Jan. 8, 2002) ........ 30

*In re U.S. West, Inc. Sec. Litig.*, 201 F. Supp. 2d 302 (D. Del. 2002) .................................... 25

*In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693 (Del. Ch. 2005) .................................. 31

*Initio, Inc. v. Hesse*, 474 F. Supp. 312 (D. Del. 1979) ........................................................ 21

*Isanaka v. Spectrum Techs. USA, Inc.*, 131 F. Supp. 2d 353 (N.D.N.Y. 2001) ........................ 28

*J.I. Case Co. v. Borak*, 377 U.S. 426 (1964) ....................................................................... 24

*Kahn v. Seaboard Corp.*, 625 A.2d 269 (Del. Ch. 1993) ....................................................... 37

*Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417 (D.N.J. 1999) ..................... 19

v

*Key Equity Investors, Inc. v. Sel-Leb Mktg. Inc.,* 2007 WL 2510385 (3d Cir. Sept. 6, 2007)...... 19

*Kleinpeter-Fleck v. Collins & Aikman Corp.*, No. 2:06-CV-01355 (S.D.N.Y.)......................... 12

*Kline v. First Western Gov't Sec., Inc.*, 24 F.3d 480 (3d Cir. 1994)........................................... 14

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350 (1991) ........................ 37

*Mainstay High Yield Corp. Bond Fund v. Heartland Indus. Partners, L.P.*, 2:07-CV-10542
    (E.D.MI.).................................................................................................................................. 12

*Malpiede v. Townson* 780 A.2d 1075 (Del. 2001) ..................................................................... 32

*McDermott Inc. v. Lewis*, 531 A.2d 206 (Del. 1987) ................................................................. 28

*Merck & Co., Inc. v. SmithKline Beecham Pharm. Co.*, 1999 WL 669354 (Del. Ch. Aug. 5,
    1999)........................................................................................................................................ 37

*MetCap Sec. LLC v. Pearl Senior Care, Inc.,* 2007 WL 1498989 (Del. Ch. May 16, 2007)....... 39

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121 (Del. Ch. 2004)
    .................................................................................................................................................. 35

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) ..................................................................... 26

*N. Amer. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92 (Del. 2007).... 34

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266 (3d Cir. 1998) .............. 17

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001) .............. 21

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340 (3d Cir. 2001)
    .................................................................................................................................................. 24

*Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772 (Del. Ch. 2004) .................... 31, 38

*Scattergood v. Perelman*, 945 F.2d 618 (3d Cir. 1991)............................................................... 27

*SEC v. Collins & Aikman Corp.*, No. 1:07-CV-02419 (S.D.N.Y.) ............................................. 13

*SEC v. Lucent Techs., Inc.,* 363 F. Supp. 2d 708 (D.N.J. 2005) .......................................... 16, 17

*Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir. 2000) ....................................................... 23

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353 (5th Cir. 2004)................... 19

*Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289 (3d Cir. 1991)................................................... 23

*Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069 (Del. 1983) ............................................. 34, 35

*Tellabs v. Makor Issues & Rights, Ltd*, 127 S. Ct. 2499 (2007) .......................................2, 18, 25

*Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043 (Del. Super. 2001).............................. 38

*Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42 (D. Del. 2002) ............................ 26

*Trenwick America Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168 (Del. Ch. 2006) ..... 32, 33

vi

15676.12

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478 (3rd Cir. 1998)...... 20

*Tse v. Ventana Medical Systems, Inc.*, 297 F.3d 210 (3d Cir. 2002) .......................................... 23

*United Canso Oil & Gas Ltd. v. Catawba Corp.*, 566 F. Supp. 232 (D. Conn. 1983)................ 27

*United States v. David A. Stockman*, No. 1:07-CR-0020 (S.D.N.Y.) .......................................... 13

*Virginia Bankshares, Inc. v. Sandberg*, 501 U.S 1083 (1991)..................................................... 27

*Westinghouse Elec. Corp. v. Franklin*, 993 F.2d 349 (3d Cir. 1993).......................................... 37

*Wilmington Country Club v. Cowee*, 747 A.2d 1087 (Del. 2000) ............................................... 36

*Winer Family Trust v. Queen*, 503 F.3d 319 (3d Cir. 2007).................................................... 1, 16

*Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987).............................................. 16

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998)....................................................... 17

*Zerby v. Allied Signal Inc.*, 2001 WL 112052 (Del. Super. Ct. Feb. 2, 2001)............................ 36

**STATUTES**

10 Del. C. § 8106............................................................................................................................. 37

15 U.S.C. §  78j(b) ......................................................................................................................... 14

15 U.S.C. § 78n .............................................................................................................................. 24

15 U.S.C. § 78u-4.................................................................................................................15, 17, 39

17 C.F.R. § 240.10b-5 .................................................................................................................... 14

17 C.F.R. § 240.14a-9..................................................................................................................... 24

8 Del. C. § 102 ................................................................................................................................ 32

8 Del. C. § 141 .....................................................................................................................28, 31, 32

8 Del. C. § 174 ................................................................................................................................ 32

**RULES**

Fed. R. Civ. P. 8(a)......................................................................................................................... 29

Fed. R. Civ. P. 9(b).............................................................................................................14, 28, 34

**TREATISES**

Thomas Lee Hazen, 3 *Treatise on the Law of Securities* (5th ed. 2005)..................................... 23

Defendant Charles E. Becker respectfully submits this memorandum of law in support of his motion to dismiss the First Amended Complaint ("amended complaint") filed by plaintiffs Collins & Aikman Corporation and Collins & Aikman Production Company, as debtors in possession ("plaintiffs," "Collins & Aikman," or "the Company").

## PRELIMINARY STATEMENT

Charles Becker should not be a defendant in this case. He is not even mentioned in the complaint's allegations concerning the accounting and securities fraud that allegedly occurred at Collins & Aikman, and he was not unjustly enriched by the Company's acquisition of a company he owned in an arms-length transaction that occurred before he joined the Company's Board.

Mr. Becker plainly cannot be held liable for the alleged accounting and securities fraud. The amended complaint does not allege that Mr. Becker made a single misrepresentation, committed a single wrongful act, or disregarded a single "red flag." Mr. Becker was not even associated with the Company when it sold securities pursuant to the allegedly false financial statements – the only securities transaction specified in the complaint. Faced with these same facts, the Department of Justice, the Securities and Exchange Commission, and Collins & Aikman's investors have all decided not to name Mr. Becker as a defendant in the criminal, regulatory, or civil actions that have arisen from the Company's bankruptcy.

The amended complaint does not suggest any reason for plaintiffs' decision to the contrary. Plaintiffs fail to allege even a single fact to demonstrate that Mr. Becker knew of or participated in the alleged securities or accounting fraud. Thus, plaintiffs seek to hold Mr. Becker responsible for this fraud simply because he was in the wrong place at the wrong time: He was an outside director of a company whose officers were allegedly falsifying its accounts.

These allegations apparently rest on the now defunct "group pleading" doctrine. *In Winer Family Trust v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007), the Court of Appeals for the

1

Third Circuit held that "group pleading" is no longer viable in private securities actions because the strict particularity provision in the Private Securities Litigation Reform Act (the "Reform Act") requires plaintiffs to allege fraud by Mr. Becker personally. The complaint contains no such allegations, and with good reason: Mr. Becker resigned from the Company's board three months *before* the relevant sale of securities. As a result, the court cannot credit plaintiffs' generalized allegation that "all the officers and directors" participated in a securities fraud. Thus, the claim under Section 10(b) and Rule 10b-5 of the Exchange Act must be dismissed for failure to plead fraud with particularity, and for failure to allege that Mr. Becker was a "primary violator" of the securities laws.

The Reform Act also requires plaintiffs to allege facts supporting a "strong inference" that Mr. Becker had the requisite state of mind for the securities fraud claims. As the Supreme Court recently held in *Tellabs v. Makor Issues & Rights, Ltd*, 127 S. Ct. 2499 (2007), plaintiffs must plead facts from which the court can find "cogent and compelling" evidence of Mr. Becker's state of mind. But the amended complaint does not allege a single fact to show that Mr. Becker personally had *any* intent, let alone the requisite intent, for these claims.

Plaintiffs' state-law claims concerning the accounting fraud should be dismissed for similar reasons. Plaintiffs allege that "the Director and Officer Defendants" breached their fiduciary duty by "orchestrating, encouraging or utilizing various accounting schemes . . . which materially misstated the financial condition of the Company." Compl. ¶ 194. Since this claim "sounds in fraud," it is subject to Rule 9(b)'s particularity requirement. And while Rule 9(b) can sometimes be satisfied by group pleading, group pleading cannot be used against an outside director, like Mr. Becker, who is not alleged to have participated in the Company's day-to-day business or in its statements.

15676.12

Even if the breach of fiduciary duty claim is evaluated under the lesser "notice" pleading standard of Rule 8(a), it still fails. As the Supreme Court recently explained, Rule 8(a) requires the plaintiff to allege more than "labels," "conclusions," and a "formulaic recitation of a cause of action's elements." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). Plaintiffs' allegations concerning the "Director and Officer Defendants" are precisely that; without alleging any specific facts concerning Mr. Becker, the allegations do not give him any notice whatsoever of what he personally is alleged to have done wrong.

Under these circumstances, plaintiffs have failed to state a claim that Mr. Becker failed to detect an accounting fraud committed by others. He is not alleged to have disregarded any red flags or to have participated in a systematic failure of oversight, as required by Delaware's strict standard for pleading a failure to supervise claim. Moreover, as a director, Mr. Becker is protected from such claims by his statutory right under Delaware law to rely on the company's auditors, and by the "exculpatory clause" in the Company charter that precludes claims that he breached his duty of care. Plaintiffs have pled no facts to pierce these fundamental protections.

The only portion of the complaint that actually names Mr. Becker is the unjust enrichment claim, which challenges Collins & Aikman's acquisition of a company Mr. Becker owned, the Becker Group, in July 2001. Plaintiffs complain about three aspects of that acquisition: (a) a non-compete agreement that Mr. Becker concluded with Collins & Aikman in March 2001, *before* he joined the Company; (b) the allegedly "excessive" price the Company paid for the Becker Group after conducting allegedly inadequate due diligence; and (c) a $300,000 retainer that Mr. Becker received to compensate him for helping to integrate the Becker Group into the Company. Compl. ¶¶ 47-50.

This claim is time-barred. The material facts of the Company's acquisition of the Becker Group, including the non-compete agreement, were accurately disclosed in Collins & Aikman's Form 8-K filings in March and July 2001. Thus, plaintiffs were on inquiry notice of this claim more than three years before the Company's bankruptcy filing, and the claim has expired under the applicable Delaware statute of limitation.

The unjust enrichment claim also lacks substance. Plaintiffs do not identify anything unjust or unlawful about the arms-length non-compete agreement. Moreover, since Mr. Becker was not a director of the Company at the time of the acquisition, but was affiliated only with the Becker Group, he cannot be responsible for the Company's alleged lack of diligence or its alleged overpayment. And plaintiffs do not identify any reason why Mr. Becker should not keep the $300,000 retainer, which was paid for services rendered; if the Company failed to disclose that payment, the non-disclosure would not give the Company a claim against Mr. Becker.

Plaintiffs should be denied leave to replead yet again. In the three years since the Company's bankruptcy, plaintiffs have had access to the findings of special counsel, as well as to information that has been developed in the concurrent criminal, regulatory, and investor actions. Plaintiffs' amended complaint apparently incorporates the additional facts that they have learned. Yet plaintiffs still allege no specific facts to support any claim that Mr. Becker should be liable for either the alleged accounting fraud or for the Company's acquisition of the Becker Group.

For these reasons, and additional reasons that are applicable to all the individual defendants (and are therefore discussed more briefly below), the complaint against Mr. Becker should be dismissed in its entirety, with prejudice.

# STATEMENT OF FACTS[1]

## A.    THE PARTIES

Plaintiffs Collins & Aikman Corporation and Collins & Aikman Production Company are Delaware corporations.  Compl. ¶ 6.  Collins & Aikman, through its subsidiaries, was engaged in the design, manufacture, and supply of automotive interior components.  *Id.* ¶ 6.

On May 17, 2005, Collins & Aikman and its subsidiaries filed for protection under Chapter 11 of the Bankruptcy Code.  *Id.* ¶¶ 70-91.  The plaintiff corporations bring this complaint as debtors-in-possession.  *Id.* ¶ 6.  According to the complaint, a litigation trust has been created to pursue these claims on behalf of the companies' creditors.  *Id.* ¶ 7.

Defendant Heartland Industrial Partners, L.P. is a Delaware limited partnership whose managing general partner is defendant Heartland Industrial Associates, L.L.C.  *Id.* ¶ 27.  Defendant Heartland Industrial Group, L.L.C. is a related entity.  *Id.* ¶ 28.  Together, these entities are referred to as "Heartland."  *Id.* ¶ 30.  In February 2001, Heartland LP acquired a controlling interest in Collins & Aikman, and Heartland's representatives, including David A. Stockman, assumed positions on Collins & Aikman's Board of Directors.  *Id.* ¶ 45.

Many of the individual defendants were Heartland executives who also participated in the management of Collins & Aikman.  *Id.* ¶¶ 7, 8, 13, 17-20, 30.  For example, Stockman, a Managing Member of one Heartland entity and a founding partner and Senior Managing Director of another, was at various times either Collins & Aikman's Chairman of the Board, CEO, or both.  *Id.* ¶¶ 7, 30.  Similarly, defendants Michael Stepp, John A. Galante, Cynthia Hess, Daniel Tredwell, W. Gerald McConnell, and Samuel Valenti were all members or managing directors of a Heartland entity and either officers or directors of Collins & Aikman.  *Id.* ¶¶ 8, 13, 17-20.

---

[1]  The documents cited in this Statement of Facts are attached to the accompanying Affirmation of Stephen L. Ascher, dated April 28, 2008 ("Ascher Aff.").

Most of the remaining individual defendants were officers of Collins & Aikman who had an active role in the Company's day-to-day business or accounting. *Id.* ¶¶ 9, 10, 11, 12, 16. For example, Bryce Koth held various positions at Collins & Aikman relating to tax and finance, culminating as its CFO from October 13, 2004. *Id.* ¶ 9. David R. Cosgrove held various positions relating to finance and financial planning, culminating as its Corporate Controller from October 2004 until May 2005. *Id.* ¶ 10. Paul Barnaba, Robert Krause, and Thomas E. Evans were also each high-ranking officers of the Company. *Id.* ¶¶ 11-12, 16.

Mr. Becker was an outside director of Collins & Aikman. He became an outside director after he sold Becker Group LLC to Collins & Aikman in July 2001. *Id.* ¶ 14. Mr. Becker was not on the board's audit committee and is not alleged to have had any other responsibilities related to the Company's accounting. *See* Collins & Aikman 14-A filings, attached to Ascher Aff. as Ex. 2.[2] Mr. Becker resigned from the Board on May 6, 2004, and had no role in the company for the year leading to its bankruptcy. Compl. ¶ 14.

After Stockman resigned from his position as CEO in May 2005, Mr. Becker was appointed interim CEO. *Id.* Plaintiffs have not asserted any claims against Mr. Becker arising out of his actions as interim CEO. During the time period covered by the complaint, Mr. Becker was not a Heartland executive; he was only a limited partner (*i.e.*, a passive investor). *Id.*

## B.    THE SCHEME ALLEGED IN THE COMPLAINT

The gist of the amended complaint is that Heartland looted Collins & Aikman by extracting tens of millions of dollars in management fees after its acquisition in 2001, all the while "cooking its books" to hide a liquidity crisis at the Company. *Id.* ¶¶ 53-91. The complaint

---

[2] The Court can take notice of this fact from the Company's SEC filing. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002).

describes a host of allegedly fraudulent activity that furthered this scheme, including at least two separate accounting frauds, a sale of $415 million in Collins & Aikman securities, and several purportedly misleading press releases and other statements. *Id.* ¶¶ 53-94.

The amended complaint mentions Mr. Becker by name in only four of its 246 paragraphs, *see id.* ¶¶ 14, 48-49, 140, and alleges his personal involvement in only one allegedly improper transaction – the Company's arms-length acquisition of the Becker Group, LLC, which occurred *before* Mr. Becker joined the Board of Collins & Aikman – as follows:

**1.    The Company's Acquisition of the Becker Group**

In July 2001, the Company acquired Becker Group LLC, a manufacturer of plastic parts for automobiles owned by Mr. Becker. *Id.* ¶ 47. The amended complaint appears to challenge three aspects of the acquisition.

**a.    The Non-Compete Agreement**

First, the Company agreed to pay Mr. Becker $18 million for a non-compete agreement, which was to be paid out over five years. *Id.* ¶ 49. In March 2003, after making two years of such payments, the Company bought out the non-compete agreement for $11.3 million. *Id.*

The terms of the non-compete were fully and accurately disclosed before and after the sale. On March 21, 2001, Collins & Aikman disclosed in an 8-K its intent to acquire Becker Group LLC, including the facts concerning the agreement and concerning Mr. Becker's intention to join the Company's Board of Directors. Ascher Aff., Ex. 3. On July 3, 2001, the Company issued another 8-K in which it reiterated that as part of the acquisition Mr. Becker was to receive $18 million over five years pursuant to a non-compete agreement. Ascher Aff., Ex. 4. The $11.3 million buy-out was similarly disclosed in the Company's 10-K filing in March, 2003. Ascher Aff., Ex. 5. These filings contradict the amended complaint's allegation that Collins &

Aikman's financial statements failed to disclose "transactions with defendants Becker, McCallum and entities that they controlled." Compl. ¶¶ 138-40.

Despite these accurate disclosures, the amended complaint alleges that "[u]nder applicable law, Becker was obligated to not compete with the Company and, therefore, there was no reason to enter into a non-compete with him, and he was not entitled to receive any monies from the Company for his agreement not to compete." *Id.* The amended complaint does not specify the "applicable law" that purportedly obliged Mr. Becker not to compete with the Company, nor does it otherwise explain how this routine agreement was wrongful. *Id.*

### b.     The Acquisition Price and Due Diligence

Plaintiffs' amended complaint also alleges that "[t]he acquisition of the Becker Group was ill-conceived and executed," that "Defendants did not perform adequate due diligence in connection with the acquisition, and the valuation . . . placed on the Becker Group was excessive and not warranted." *Id.* ¶ 50. Once again, however, the terms of Collins & Aikman's acquisition of the Becker Group were fully disclosed in Collins & Aikman's 8-K filings on March 21, 2001 and again on July 3, 2001. Ascher Aff., Exhs. 3-4.

Moreover, Mr. Becker represented the Becker Group, not the Company, in this transaction. Mr. Becker was not appointed as a director of the Company until after it acquired the Becker Group. As the seller, Mr. Becker obviously was not responsible for the Company's due diligence into that transaction or its decision concerning how much to pay for the Becker Group. *Id.* ¶ 14.

### c.     The $300,000 Consulting Fee

Finally, plaintiffs allege that Mr. Becker received a retainer for his assistance in facilitating "the integration of Becker Group into Collins & Aikman," and that this retainer was not disclosed in the Company's SEC filings. *Id.* ¶ 48. The complaint does not allege that the

8

payment to Mr. Becker was substantively improper, that he did not perform services entitling him to this consultancy fee, or that the Company was injured by its non-disclosure. *Id.* Nor does the complaint suggest that Mr. Becker, as an outside director, was in any way responsible for the non-disclosure.

### 2.    The Joan Fabrics Roundtrip Transactions

In September 2001, Collins & Aikman made another acquisition, this time of Joan Automotive Fabrics ("Joan Fabrics"). *Id.* ¶ 53. The amended complaint alleges that soon after this acquisition, the defendants embarked on a fraudulent accounting scheme that continued without interruption until the Company's bankruptcy. *Id.* ¶¶ 53-69.

Specifically, beginning in late 2001, the Company began to engage in a series of fraudulent "round-trip" transactions designed "to improperly increase its reported income and artificially inflate its reported financial results." *Id.* ¶ 53. These disguised loans allowed the Company to book $15 million in fake profits from December 2001 until the first quarter of 2003. *Id.* ¶¶ 55-57. The amended complaint alleges that this fraud was carried out by Stockman, McCallum and Stepp, as well as unnamed "others acting at their direction." *Id.* ¶¶ 50-57.

The detailed allegations about this scheme do not allege that Mr. Becker had any role in it, was aware of it, or was aware of any facts that should have put him on notice of it.

### 3.    The Rebate Scheme

Beginning in early 2002, "Defendants" allegedly engaged in a "Rebate Scheme" whereby the Company "improperly recogniz[ed] rebates from the Company's suppliers before the rebates had actually been earned by the Company." *Id.* ¶ 58. The amended complaint describes three different ways that the Company improperly recognized rebates, and the amounts of the rebates listed by supplier and fiscal quarter. *Id.* ¶¶ 58-69.

The amended complaint again does not allege that Mr. Becker played any part in this scheme or knew or should have known of its existence. *Id*. If anything, plaintiffs' allegations negate any inference of wrongdoing. The amended complaint alleges that some of the defendants used fraudulent "side letters" to hide the transactions from the Company's directors. *Id*. ¶¶ 153-56. Although the "side letters" are alleged to be "red flags" that the Company's auditors should have investigated, *id.*, plaintiffs concede that such letters are typically hidden from the Board of Directors, *id*. ¶ 153.

### 4.    The Company's August 2004 Sale of Notes

In May 2004, Mr. Becker resigned from the Board of Directors. Compl. ¶ 14. He was not affiliated with the Company again until May 2005, when he became its interim CEO.

In August 2004, three months after Mr. Becker's resignation, the Company sold approximately $415 million in notes. *Id*. ¶ 71. The amended complaint alleges that "[t]he offering materials used to sell the notes presented materially false and misleading financial results for the Company as they included financial results that were artificially inflated due to the accounting improprieties detailed herein." *Id*.

Mr. Becker is not alleged to have personally played any role in this sale. Instead, the amended complaint makes conclusory allegations that *all of the officers and directors* of the Company participated in the false statements, including:

(1) "During all times relevant hereto, each of the Director and Officer Defendants occupied a position with Collins & Aikman or was associated with the Company in such a capacity as to make him or her privy to confidential and proprietary information concerning Collins & Aikman and its operations, finances and financial condition." Compl. ¶ 25;

(2) "Because of these positions and such access, each of the Director and Officer Defendants knew that the true facts specified herein regarding Collins & Aikman's business and finances had not been disclosed to and were being concealed . . . ." *Id.*; and

(3) "Each of the officer and director defendants participated in the issuance and/or review of false and/or misleading statements, including the preparation of false and/or misleading press releases, SEC filings and reports to Collins & Aikman shareholders and/or creditors." *Id.*

Since Mr. Becker was not associated with the Company at the time of this sale, these conclusory and generalized allegations plainly do not apply to him.

### 5.    The GECC Loan

In December 2004, seven months after Mr. Becker resigned from the Board, the Company entered into a borrowing agreement with General Electric Capital Corporation ("GECC"). *Id.* ¶ 74-79. Plaintiffs allege that Stockman and others issued misleading statements regarding the Company's ability to borrow pursuant to its GECC agreement. *Id.* ¶ 80.

This transaction occurred when Mr. Becker was not on the Board or otherwise associated with the Company, and he is not mentioned in the relevant allegations.

### 6.    The Other Misrepresentations

The amended complaint also alleges that after Mr. Becker resigned in May 2004, but before he rejoined the Company in May 2005, various defendants made misrepresentations concerning the Company's liquidity and financial results, including a March 2005 press release concerning the Company's delay in issuing its 2004 financial results while it reviewed its rebate accounting; a conference call with investors at about the same time; a presentation to some of the company's lenders in March 2005; and a presentation to one of those lenders (and an associated press release) in April 2005. *Id.* ¶¶ 80-89. Mr. Becker was not associated with the Company at the time of these alleged misrepresentations and is not alleged to have participated in them.

### 7.    Alleged Malpractice by the Company's Auditors

In 79 numbered paragraphs that make up the bulk of the complaint, plaintiffs allege that the Company's auditors committed malpractice by failing to uncover the misconduct described above. *Id*. ¶¶ 102-80. None of these allegations mentions Charles Becker.

## C.    THE COMPANY'S BANKRUPTCY

On May 12, 2005, Collins & Aikman issued a press release announcing that the Board of Directors had forced Stockman to resign his positions at the Company. *Id*. ¶ 90. In that same announcement, the Board appointed Mr. Becker to serve as interim CEO while it searched for Stockman's permanent replacement. *Id*. ¶ 14. On May 17, 2005, Collins & Aikman and its subsidiaries filed for protection under Chapter 11 of the Bankruptcy Code. *Id*. ¶ 91.

Collins & Aikman's bankruptcy has led to significant collateral litigation. First, several shareholder class action lawsuits were filed, consolidated and transferred to the Eastern District of Michigan. *Akerman v. Collins & Aikman Corp.*, No. 1:05-CV-05098 (S.D.N.Y.); *Egleston v. Collins & Aikman Corp.*, No. 2:05-CV-04950 (S.D.N.Y.); *Gariddi v. Mosingo*, No. 2:05-CV-05251 (S.D.N.Y.); *Bruno v. Collins & Aikman Corp.*, No. 2:05-CV-71325 (S.D.N.Y.); *Kleinpeter-Fleck v. Collins & Aikman Corp.*, No. 2:06-CV-01355 (S.D.N.Y.). These lawsuits seek damages from the Company's former officers and directors, including defendants Stockman, Stepp, Koth, and Heartland, based on allegations that they violated federal securities laws by participating in a scheme to misrepresent the Company's financial position. *Id.*

Second, the Company's note-holders brought a class action against several former officers and directors of the Company based on the Company's allegedly fraudulent issuance of the August 2004 Notes. *Mainstay High Yield Corp. Bond Fund v. Heartland Indus. Partners, L.P.*, No. 2:07-CV-10542 (E.D. MI.); *see also* Compl. ¶ 71.

Third, on March 21, 2007 a grand jury indicted Stockman, Stepp, Cosgrove and Barnaba on charges of conspiracy to commit securities fraud, securities fraud, bank fraud, mail fraud and obstruction of justice. *United States v. David A. Stockman*, No. 1:07-CR-0020 (S.D.N.Y.).

Finally, on March 26, 2007, the SEC filed civil charges against Stockman and eight other former officers of Collins & Aikman, including defendants Stepp, Galante, Cosgrove, Barnaba and McCallum. *SEC v. Collins & Aikman Corp.*, No. 1:07-CV-02419 (S.D.N.Y.).

None of these actions named Mr. Becker as a defendant or alleged any impropriety by him regarding the acquisition of the Becker Group.

**D.    THE AMENDED COMPLAINT**

Plaintiffs assert five claims against "Director and Officer Defendants" without any attempt to match specific allegations or individual defendants to any of those claims. Plaintiffs assert: (1) a Section 10(b) claim based on alleged misstatements related to the sale of securities (presumably the August 2004 notes), Compl. ¶¶ 181-85; (2) a Section 14(a) claim based on alleged misrepresentations in proxy statements leading to the election of directors, *id.* ¶¶ 186-91; (3) a breach of fiduciary claim based solely on the allegedly inappropriate accounting schemes, *id.* ¶¶ 192-95; (4) an unjust enrichment claim based on the alleged payment of inflated prices for goods, services and corporate acquisitions, the alleged violation of securities laws and alleged misrepresentations, *id.* ¶¶ 195-98; and (5) a fraud claim based on alleged misrepresentations made to Collins & Aikman's Board of Directors and Audit Committee, *id.* ¶¶ 199-204.

From Mr. Becker's perspective, the best that can be discerned is that he is grouped with the other officer and director defendants for purposes of the securities fraud, common-law fraud and breach of fiduciary duty claims concerning the alleged accounting fraud. The allegations regarding the Company's acquisition of the Becker Group appear to be alleged as part of the unjust enrichment claim against Mr. Becker, but not as part of the other claims.

13

15676.12

## ARGUMENT

Mr. Becker cannot be held liable for either the accounting and securities fraud that allegedly occurred at the Company, or for any claims arising out of Collins & Aikman's acquisition of Becker Ventures in July 2001.

## I.    THE AMENDED COMPLAINT DOES NOT ADEQUATELY ALLEGE THAT MR. BECKER PARTICIPATED IN ANY SECURITIES OR ACCOUNTING FRAUD

Since Mr. Becker was not associated with Collins & Aikman at the time of any relevant securities transaction, and the amended complaint does not allege that he personally participated in the alleged accounting fraud or even was on notice of it, all the claims should be dismissed to the extent that they try to hold him liable for the securities or accounting fraud. These claims should also be dismissed because they seek "deepening insolvency" damages, which are not cognizable under federal securities law or Delaware state law.

## A.    THE 10B-5 CLAIM SHOULD BE DISMISSED

The plaintiffs' first claim is that the director and officer defendants violated the antifraud provisions of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Compl. ¶ 182. To allege a claim under Section 10(b) and Rule 10b-5, plaintiffs must allege that (1) the defendant made a misstatement or an omission (2) of a material fact (3) with scienter (4) in connection with the purchase or sale of a security (5) upon which plaintiff reasonably relied (6) which proximately caused injury. *Kline v. First Western Gov't Sec., Inc.*, 24 F.3d 480, 487 (3d Cir. 1994). The amended complaint does not adequately allege several of these elements, as follows.

### 1.    Plaintiffs Fail to Allege Fraud with Particularity As to Mr. Becker

Fed. R. Civ. P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This particularity

14

requirement has been rigorously applied in securities fraud cases. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1417 (3d Cir. 1997). Thus, plaintiffs asserting securities fraud claims must specify "the who, what, when, where, and how: the first paragraph of any newspaper story." *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999).

In addition, Rule 10b-5 claims must comply with the heightened pleading requirements of the Reform Act (15 U.S.C. §§ 78u-4(b)(1), (b)(2)), which "imposes another layer of factual particularity to allegations of securities fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002). Under the Reform Act, a securities fraud claim brought under the Exchange Act must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). If a complaint fails to comply with these pleading requirements, it must be dismissed. *Id.* § 78u-4(b)(3)(A).

The amended complaint in this case fails to allege the "who." While Stockman and several other defendants are named repeatedly in the amended complaint, plaintiffs do not allege any misleading statements or omissions by Mr. Becker. Mr. Becker is not alleged to have signed any corporate filings, issued any press releases, or otherwise spoken (or had a duty to speak).

Without any such allegations, the amended complaint is in essence trying to hold Mr. Becker responsible for various Company statements under the group pleading doctrine. Under this doctrine, the plaintiff need not identify individual sources of statements when the fraud allegations arise from misstatements or omissions in "group published information" such as annual reports, prospectuses, registration statements, press releases, or other documents that

presumably constitute the collective actions of the individuals who run the day-to-day affairs of the corporation. *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1440 (9th Cir. 1987).

But, as the Third Circuit held just four months ago, the "group pleading" doctrine did not survive the enactment of the Reform Act because it cannot satisfy the statute's stringent pleading requirements regarding particularity and scienter. *See Winer Family Trust v. Queen*, 503 F.3d 319, 335 (3d Cir. 2007) ("[T]he group pleading doctrine is no longer viable in private securities actions after the enactment of the PSLRA.").

Thus, in *Winer*, plaintiffs attempted to hold defendant officer/directors liable under Rule 10(b) for alleged misrepresentation and omissions in the company's SEC filings. *See Winer*, 503 F.3d at 334-35. Plaintiffs alleged that the officers and directors had "access to, control over, and ability to edit and withhold dissemination of the [company's] press releases and SEC filings." *Id.* The Third Circuit dismissed plaintiffs' claims and emphasized that "[t]he PSLRA requires plaintiffs to specify the role of each defendant demonstrating each defendant's involvement in misstatements and omissions." *See Winer*, 503 F.3d at 335-36.

Since plaintiffs cannot rely on the group pleading doctrine, the claims against Mr. Becker should be dismissed for lack of particularity.

### 2.    The Amended Complaint Does Not Allege a Primary Violation by Mr. Becker

In *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190-91 (1994), the Supreme Court held that a private plaintiff cannot bring an aiding and abetting claim under section 10(b), and that private civil liability under section 10(b) is limited to "primary violator[s]." *Id.* Although the Third Circuit has not had occasion to decide the criteria for primary liability, *SEC v. Lucent Techs., Inc.,* 363 F. Supp. 2d 708, 722 (D.N.J. 2005), district courts in the circuit have adopted the "bright line" approach, *see id.* at 724; *In re DVI, Inc. Sec. Litig.*, 2005 WL 1307959, at *8 (E.D. Pa. May 31, 2005) (noting that "most courts" have adopted

16

the "bright line" test); *Copland v. Grumet*, 88 F. Supp. 2d 326, 330-34 (D.N.J. 1999). Under the "bright line" test, a primary violator "must actually make the material misstatement or omission and 'the misrepresentation must be attributed to the specific actor at the time of public dissemination' . . . ." *Lucent Techs., Inc.,* 363 F. Supp. 2d at 720 (D.N.J. 2005) (quoting *Wright v. Ernst & Young LLP*, 152 F.3d 169, 174-75 (2d Cir. 1998)).

Mr. Becker obviously was not a primary violator. The amended complaint does not allege that he signed any documents in connection with the note offering, or that any misrepresentation or omission could be attributed to him at the time of its dissemination. In fact, such attribution would be impossible since he was no longer with the Company when any alleged misrepresentations were publicly made.[3]

For this reason as well, the 10(b) claim against Mr. Becker should be dismissed.

### 3. Plaintiffs Fail to Allege Facts Giving Rise to a "Strong Inference" That Mr. Becker Acted with Scienter

The Reform Act requires 10b-5 plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *In re Advanta Corp. Sec. Litig.*, 180 F.3d at 538. In a securities fraud case under Rule 10b-5, the required state of mind is scienter, or fraudulent intent, which requires a showing of intentional wrongdoing or recklessness. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 272-73 (3d Cir. 1998). Recklessness is defined as an "extreme departure

---

[3] Some circuits have instead applied a "substantial participation" test, which "provides for primary liability where there is '"substantial participation or intricate involvement' of the secondary party in the preparation of fraudulent statements 'even though that participation might not lead to the actor's actual making of the statements.'" *Lucent Techs., Inc.,* 363 F. Supp. 2d at 722 (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 585 (S.D. Tex. 2002)) (internal quotation marks omitted). Even under this test, Mr. Becker is not a primary violator. Plaintiffs have not alleged that Mr. Becker participated at all, let alone substantially, in the preparation of misstatements in connection with a sale of securities that occurred months after his resignation.

15676.12

from the standards of ordinary care which presents a danger of misleading that is either known to the defendant or is so obvious that the actor must have been aware of it." *In re Advanta Corp. Sec. Litig.*, 180 F.3d at 535. This "strong inference" requirement supersedes the provisions of Rule 9(b) that otherwise permit state of mind to be averred generally. *Id.* at 531 n.5.

In *Tellabs*, *Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007), the Supreme Court held that for the plaintiff to satisfy the "strong inference" requirement, "the inference of scienter must be more than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of other explanations." To determine whether the inference is "cogent and compelling," the court "must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Id.* at 2504. The relevant inquiry is "whether *all of the facts alleged*, *taken collectively*, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard. . . . " Under this standard, a complaint will survive dismissal only if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 2510 (emphasis supplied) .

Under the *Tellabs* standard, the amended complaint plainly does not allege that Mr. Becker had an intent to defraud. It does not include any facts to suggest that he engaged in any intentional wrongdoing or reckless misconduct in connection with the Company's accounting or sale of securities, but instead alleges only that he must have known about the alleged accounting fraud due to his position as a director of the company.

Even before *Tellabs*, courts in the Third Circuit repeatedly dismissed conclusory allegations of knowledge based on the defendant's position, particularly as an outside director.

18

15676.12

*See, e.g.*, *In re Advanta*, 180 F.3d at 539.  Allegations that a defendant "must have known" a statement was false or misleading are "precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny." *Id.; see also Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417, 428-30 (D.N.J. 1999). Allegations of this type are indistinguishable from impermissible "group pleading." *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 364-65 (5th Cir. 2004).

*In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 281-82 (3d Cir. 2006), is on point.  In that case, the plaintiffs alleged scienter against the company's outside directors "without any attempt to link specific individuals to specific instances of reckless conduct."  The Third Circuit held that the "allegation that the Outside Directors, *qua* directors and members of the audit committee, had access to unspecified business records and a duty to review them does not give rise to a strong inference that the Outside Directors individually knew of or recklessly disregarded particular wrongful recognitions of revenue." *Id.* at 282.

Similarly, in this case, plaintiffs do not "link" Mr. Becker to any "specific instances of reckless conduct"; they allege merely that he must have been aware of the fraud based upon his position as an outside director.  Compl. ¶ 25.  Moreover, plaintiffs allege that certain aspects of the fraud were designed to hide the scheme from the Board of Directors, which necessarily includes Mr. Becker.  *Id.* ¶ 153.  Nor are there any specific allegations of an improper motive.[4]

---

[4] Under *Tellabs,* plaintiffs can no longer establish scienter by alleging merely that defendants had the "motive and opportunity" to commit the fraud; considering two specific factors (motive and opportunity) in isolation is inconsistent with the Supreme Court's directive to consider all the inferences "collectively" and "holistically."  *See Tellabs, id.* at 2609-11 ( "[T]he significance that can be ascribed to an allegation of motive, or lack thereof, depends on the entirety of the complaint." ).  The Third Circuit has not specifically addressed the question of whether the "motive and opportunity" test survives *Tellabs.  See Key Equity Investors, Inc. v. Sel-Leb Mktg. Inc.,* 2007 WL 2510385, at *3-4 (3d Cir. Sept. 6, 2007); *Globis Capital Partners, L.P. v. Stonepath Group, Inc.*, 241 Fed. Appx. 832, 836 (3d Cir. 2007).

15676.12

Based on the absence of any specific allegations against Mr. Becker personally, his status as an outside director, and the exculpatory allegation that the Board itself was deceived, the more cogent inference is that Mr. Becker was not reckless, and that individuals other than Mr. Becker executed any fraud behind his back.  Plaintiffs' 10(b) claim must be dismissed.

### 4.    The Company Does Not Have Standing to Bring the 10(b) Claim

Section 10(b) prohibits fraud only if it is "in connection with the purchase or sale of any security."  In *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 729-31 (1975), the Supreme Court interpreted this element to require a plaintiff in a private civil case to be a buyer or seller of a security in order to have standing to sue under the statute.  *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478 (3rd Cir. 1998).

Although Collins & Aikman was a seller of securities in August 2004, it is not bringing its 10b-5 claim based on any injury it suffered as a seller; the Company did not receive less money than it should have when it sold the notes.  If anyone was victimized by the sale, it was the purchasers, who are not parties to this action.  Rather, the amended complaint alleges only that the company was injured by the business decision to take on more debt, which deepened the Company's insolvency and reduced creditors' returns in bankruptcy.  Compl. ¶ 184.

The Company does not have standing to assert a claim for this "deepening insolvency" injury.  Courts have consistently held that under the "buyer-seller" rule, corporate issuers do not have standing to bring 10b-5 claims against their officers or directors based upon the issuer's fraudulent sale of its own securities, because issuers cannot suffer damages from their own sales of securities.  For example, in *Bio-Medical Sciences, Inc. v. Weinstein*, 407 F. Supp. 970, 973 (S.D.N.Y. 1976), the corporation brought a 10b-5 claim against its former CEO alleging that he made misrepresentations in a note offering.  The court rejected the claim, holding that not every

20

"fraud by any officer of an issuer having any relationship to any sale by the issuer is actionable by such issuer"; the issuer must show that the "loss resulted from the sale itself." *Id.*

Similarly, in *Initio, Inc. v. Hesse*, 474 F. Supp. 312 (D. Del. 1979), the plaintiff brought a derivative suit on behalf of the corporation, claiming that the director defendants caused the company to issue a misleading registration statement in conjunction with its own public offering of securities. *Id.* at 319. The court rejected the claim, reasoning: "In this case . . . , [the plaintiff] does not claim that [the corporation] is about to become the victim of a fraudulent sale, but rather that [it] is about to perpetrate a fraud on the public and . . . may eventually be injured. . . . In light of this distinction, the Court concludes that [the corporation] would not qualify as a buyer or seller under the [buyer-seller] rule. . . ." *Id.* at 320 (emphasis in original). Since the Company here is trying to recover for a similarly indirect injury, the claim should be dismissed.

### 5.    The Amended Complaint Does Not Adequately Allege Loss Causation

A 10b-5 plaintiff must allege "loss causation." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). Loss causation means "that the fraudulent misrepresentation actually caused the loss suffered." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 222 (3d Cir. 2006) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 173 (3d Cir. 2001)) (internal quotation marks omitted). Loss causation, or "proximate cause," requires a plaintiff to demonstrate "that it was the very facts about which the defendant lied which caused its injuries." *Id.* (quoting *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997)) (internal quotation marks omitted). It is not sufficient for a plaintiff to allege that a fraudulent misrepresentation itself was related to an economic loss, or that it caused a transaction that may have led to an eventual loss; the plaintiff must allege that the misrepresentation actually caused the loss. *See Dura Pharm., Inc.*, 544 U.S. at 343.

21

A corporation cannot assert a claim against its officers or directors for engaging in a fraud that benefited the company, even if the corporation suffered some collateral or eventual harm from the transaction. For example, in *Weinstein,* 407 F. Supp. 970, the court rejected plaintiff's 10(b) claim because the issuer company actually benefited from the fraud. *Id.* at 973-74 ("Weinstein, albeit by improper means and for the conceded purpose of benefiting himself, was seeking to achieve such benefit solely by enhancing the assets of the corporation and thus increasing the value of its shares. Had he succeeded, all other stockholders would have benefited as much as he did. Indeed, he did succeed in enhancing those assets, if only temporarily."). Similarly, in *Hoover v. Allen*, 241 F. Supp. 213, 227 (S.D.N.Y. 1965), the district court held that a corporation has "no cause of action under section 10(b) predicated solely upon its purchase of its stock at a fraudulently lowered price," because "the immediate effect of the Company's purchasing at a price below value was to benefit, rather than injure, the Company."

Collins & Aikman does not allege that the misrepresentations actually caused any loss; in fact, the Company likely *benefited* from the misstatements by selling the notes on better terms. Instead of alleging a direct harm from the transaction, the Company claims that the fraud caused it a "deepening insolvency" injury. Compl. ¶ 184 ("The issuance of the securities increased the Company's debt load and prolonged the life of the already insolvent Company.").[5] This "deepening insolvency" theory requires plaintiffs to establish that (1) without the alleged fraudulent conduct the Company would not have been able to raise money; (2) without a capital infusion the Company would not have been able to continue operating; (3) the Company would not have taken other legitimate approaches to solving its liquidity issues that would have left it in

---

[5] Evidently recognizing that "deepening insolvency" is not a cognizable measure of damages, *see infra*, plaintiffs removed the term from the amended complaint, but make the same substantive allegation.

a worse financial position; and (4) despite the number of business decisions that occurred after the issuance of the debt, it was the debt that proximately caused the Company harm. This proposed causal chain requires too many steps, too many assumptions, and too much armchair corporate management to be a predicate for liability.

Typically, damages in 10(b) cases are out-of-pocket losses, measured as the difference between the purchase price of the security and its "true value" at the time of purchase. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 184-86 (3d Cir. 2000); *Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 297 (3d Cir. 1991). Other measures of damages include rescission, disgorgement of ill-gotten gains, and occasionally "benefit-of-the-bargain" damages. *See* Thomas Lee Hazen, 3 *Treatise on the Law of Securities* § 12.12[2] (5th ed. 2005). This circuit has refused to recognize losses outside these categories. *See e.g., Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 485 (3rd Cir. 1998) (dismissing claim to enjoin bond issuance that would have allowed defendant to build a highway and tunnel because the environmental and indirect economic harms that would allegedly have been caused by the construction were not "within the zone of interests protected by § 10(b) and Rule 10b-5"); *Tse v. Ventana Med. Sys., Inc.*, 297 F.3d 210, 218-23 (3d Cir. 2002) (rejecting claim by shareholders that company omitted to disclose information concerning value of shares they were exchanging as part of merger, because plaintiffs suffered no actual damages from merger, and their "lost opportunity" theory required the occurrence of four events, at least two of which were uncertain).

"Deepening insolvency" does not fall into any of these recognized categories. Although the Third Circuit has acknowledged a cause of action under Pennsylvania law for "deepening insolvency," *see Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d

15676.12

340, 354 (3d Cir. 2001), the court later clarified that its holding was limited to the recognition of a state-law claim and did not create a new form of injury resulting from other causes of action. *See In re CitX Corp., Inc.*, 448 F.3d 672, 678 (3d Cir. 2006) ("[t]he deepening of a firm's insolvency is not an independent form of corporate damage" (quotation omitted)).

Plaintiffs have not adequately alleged "loss causation."

## B.     THE SECTION 14(A) CLAIM SHOULD BE DISMISSED

The amended complaint also alleges that the director and officer defendants violated Section 14(a) of the Securities Exchange Act of 1934 and SEC Rule 14a-9 thereunder. *Id.* ¶¶ 186-88. Section 14(a) and Rule 14a-9 prohibit the use of false or misleading proxy statements. *See* 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9. The purpose of these regulations is "to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation." *J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964).

To prevail on a Section 14(a) claim, a plaintiff must show that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *See California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004). Plaintiffs must also (4) allege facts to support a "strong inference" that Mr. Becker was negligent with respect to the proxy statements. The amended complaint does not adequately allege the second, third, or fourth of these elements.

### 1.     The Amended Complaint Does Not Allege Facts Giving Rise to a Strong Inference That Mr. Becker Was Negligent

The "required state of mind" for 14(a) claims is negligence. *See Gould v. Am.-Haw. S. S. Co.*, 535 F.2d 761, 777-78 (3d Cir. 1976); *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 511 (D. Del. 2001). While the Third Circuit has not determined the applicability of the Reform Act's

state-of-mind pleading requirement to Section 14(a) claims, *see In re U.S. West, Inc. Sec. Litig.*, 201 F. Supp. 2d 302, 306 (D. Del. 2002), *aff'd*, 65 Fed. Appx. 856 (3d Cir. 2003), other courts have applied the heightened pleading requirement to Section 14(a). *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000) ("[A] Section 14(a) plaintiff must plead with particularity facts that give rise to a strong inference of negligence."); *Bond Opportunity Fund v. Unilab Corp.*, 2003 WL 21058251, at *4 (S.D.N.Y. May 9, 2003) ("[U]nder the standards imposed by the Reform Act, plaintiffs must plead with particularity facts that give rise to a strong inference of negligence on the part of all Defendants.").

The plaintiffs in this case have not alleged with particularity *any* facts that give rise to a strong inference that Mr. Becker acted negligently with respect to the proxy statements. *In Re McKesson HBOC* is instructive. There, the court dismissed a 14(a) claim based on financial misrepresentations in a proxy statement because "[p]laintiff pleads no specific facts that would tend to show culpable conduct of any sort. To the contrary, the amended complaint simply alleges that the Section 14(a) defendants 'acted negligently and without due care in distributing, or causing to be distributed, the Joint Proxy Statement containing the false and misleading statements omissions.' [S]uch general allegations . . . fail under the Reform Act." *Id.* (citation omitted). After *Tellabs*, 127 S. Ct. 2499, such allegations are even further from the mark.

Similarly, in this case, plaintiffs have only generally asserted that "[i]n the exercise of reasonable care, [Defendants] should have known that the Proxy Statements were materially false and misleading." Compl. ¶ 189. This assertion is no more particularized than the allegation rejected in *In Re McKesson HBOC*. Moreover, given the competing inferences that can reasonably be derived from other aspects of the amended complaint – Mr. Becker's role as an outside director, the alleged attempts by the perpetrators of the scheme to conceal it from the

Board of Directors, and the clean audit reports issued by accountants who are alleged to have committed malpractice – an inference of negligence is not as compelling as an inference that Mr. Becker satisfied his duty of care.  The Section 14(a) claim must be dismissed.

>    **2.    The Claim Does Not Adequately Allege Causation**

Like 10(b) claims, 14(a) claims require proof of loss causation.  *See Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 66 (D. Del. 2002).   In this case, plaintiffs cannot prove loss causation with respect to the 14(a) claim for the same reasons they cannot prove it with respect to their 10(b) claim.  The election of various directors and the adoption of certain compensation plans did not proximately cause plaintiffs' claimed loss, and "deepening insolvency" is not a cognizable theory of damages under Section 14(a).  *Supra* at 21-24.

>    **3.    The Allegations Do Not Satisfy the "Essential Link" Test**

Damages are recoverable under Section 14(a) only when the proxy solicitation itself, rather than the particular defect in the solicitation, was "an essential link in the accomplishment of the transaction."  *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 385 (1970).   To satisfy the "essential link" standard, the plaintiff must allege that (1) "the votes for a specific corporate transaction requiring shareholder authorization, such as a corporate merger, are obtained by a false proxy statement," and (2) "that transaction was the direct cause of the pecuniary injury for which recovery is sought."  *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992).

Here, plaintiffs have not adequately alleged either of these prongs.  The proxy statements did not relate to specific corporate transactions, such as mergers or buy-outs, but instead covered general matters such as "the election of the board of directors, employee stock option plans and

compensation policies." Compl. ¶ 94.[6]  Moreover, plaintiffs do not and cannot allege that the election of directors or the approval of compensation policies directly caused any claimed injury.

*Cathcart* squarely illustrates both these deficiencies.  In that case, a shareholder brought a derivative action against corporate directors to recover damages allegedly caused by corporate misconduct, including fraudulent billing practices, mismanagement, and improper supervision of subsidiaries.  *Cathcart*, 980 F.2d at 929-30.  Plaintiff alleged that the directors violated, among other things, Section 14(a) by omitting reference to the alleged misconduct in proxy solicitations which sought re-election of directors and limitations on their personal liability.  *Id*. at 930.

The Third Circuit dismissed the Section 14(a) claim, holding that plaintiff's theory did not satisfy either prong.  *Id*. at 933.  "[T]he mere fact that omissions in proxy materials, by permitting directors to win re-election, indirectly lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss"; "[t]his is precisely the sort of claim that courts have repeatedly found insufficient to satisfy the transaction causation requirement."  *Id*.; *see also United Canso Oil & Gas Ltd. v. Catawba Corp.*, 566 F. Supp. 232, 237 (D. Conn. 1983) ("scheme" of mismanagement lasting 26 years and requiring directors' elections to implement it is not a " transaction" within meaning of Section 14(a)).  A contrary result would allow the non-disclosure of virtually any wrongdoing by a director to be the subject of a Section 14(a) claim.  For this reason, the claim in this case must be dismissed.[7]

---

[6] In addition, because the defendants represented a majority of C&A shareholders, the votes solicited by the proxy statements were of no legal consequence with respect to the elections at issue.  As such, even if a cause of action could be based on the election of directors, Plaintiffs have no cause of action under section 14(a).  *See Virginia Bankshares, Inc. v. Sandberg*, 501 U.S 1083, 1102, 1106 (1991); *Scattergood v. Perelman*, 945 F.2d 618, 625-26 (3d Cir. 1991).

[7] Moreover, the Company, as the issuer of the proxy statements, does not have standing to bring a claim under 14(a).  *See 7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 230 (5th Cir. 1994).

27

15676.12

## C.    THE BREACH OF FIDUCIARY DUTY CLAIM SHOULD BE DISMISSED

The breach of fiduciary duty claim should be dismissed because it does not satisfy Fed.

R. Civ. P. 9(b) or 8(a), it does not adequately allege a failure to supervise under Delaware law,[8]

and it is barred by the exculpatory clause in the Company's Certificate of Incorporation and by 8

Del. C. § 141(e).

### 1.    The Amended Complaint Does Not State a Claim

The breach of fiduciary duty claim does not satisfy the pleading requirements of either

Rule 9(b) or 8(a) of the Federal Rules.  When a fiduciary duty claim "sounds in fraud," the claim

must satisfy the particularity requirements Rule 9(b).  *Buckley v. O'Hanlon*, 2007 WL 956947, at

*5 (D. Del. Mar. 28, 2007); *Isanaka v. Spectrum Techs. USA, Inc.,* 131 F. Supp. 2d 353, 362

(N.D.N.Y 2001).  Here, the fiduciary duty claim "sounds in fraud" because plaintiffs allege that

the officers and directors breached their duties "by orchestrating, encouraging or utilizing

various accounting schemes . . . which materially misstated the financial condition of the

Company."  Comp. ¶ 194.

This claim fails to satisfy Rule 9(b) for the same reasons as the 10b-5 claim.  The

amended complaint fails to cite a single fact to support the conclusion that Mr. Becker

"orchestrated," "encouraged" or "utilized" any "accounting schemes."  Moreover, plaintiffs

cannot fill this gap by relying on Mr. Becker's position as an outside director under the "group

pleading" doctrine, because even where the group pleading doctrine is allowed, it does not

typically apply to outside directors.  *In re GlenFed, Inc., Sec. Litig.*, 60 F.3d 591, 593 (9th Cir.

---

[8]  Under the internal affairs doctrine, legal relations between a corporation and its stockholders, directors, and officers, including an action by the company against a director, are governed by the law of the state of incorporation.  *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 179 (3d Cir. 2005); *see also McDermott Inc. v. Lewis*, 531 A.2d 206 (Del. 1987);  Since Collins & Aikman is incorporated in Delaware (Compl. ¶ 6), we construe all the state-law claims under Delaware law.

1995).  To avail itself of the doctrine as to an outside director, the plaintiff must allege "that an outside director either participated in day-to-day corporate activities, or had a special relationship with the corporation, such as participation in preparing or communicating group information at particular times."  *Id.; see also In re Aetna Inc. Sec. Litig.*, 34 F. Supp. 2d 935, 949 (E.D. Pa. 1999).  Here, plaintiffs do not make any such allegations as to Mr. Becker..

Even under the lesser standard of Fed. R. Civ. P. 8(a), this claim still fails.  The Supreme Court recently clarified that under Rule 8(a), while a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1959 (2007) (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Id.* (citation omitted).  Thus, the Supreme Court retracted its previous statement that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id.* at 1968-69 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

After *Twombly*, the federal pleading standard under Rule 8(a) is now equivalent to the standard applied by the Delaware Chancery Court.  *Desimone v. Barrows,* 924 A.2d 908, 928-29 (Del. Ch. 2007) ("[As] explained in *Bell Atlantic Corp. v. Twombly*, . . . our nation's high court has now embraced the pleading principle that Delaware courts have long applied, which is that a complaint must plead enough facts to plausibly suggest that the plaintiff will ultimately be entitled to the relief she seeks.  If a complaint fails to do that and instead asserts mere conclusions, a Rule 12(b)(6) motion to dismiss must be granted." (footnotes omitted)).

Under Delaware's Rule 8(a), the courts have consistently dismissed breach of fiduciary duty claims where plaintiffs made only conclusory allegations against an individual corporate officer or director. *See In re Nat'l Auto Credit Inc. S'holder Litig.*, 2003 WL 139768, at *12 (Del. Ch. Jan. 10, 2003) (dismissing claims against directors for breach of duty of care where plaintiffs failed to plead any specific deficiencies in the Board's decision-making process.); *In re The Student Loan Corp. Derivatives Litig.*, 2002 WL 75479, at *4 (Del. Ch. Jan. 8, 2002) (same); *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 983-85 (Del. Ch. 2000)) (dismissing breach of fiduciary claims based on "nothing more than conclusory allegations").

In this case, the amended complaint does not include any allegations concerning Mr. Becker's involvement in the fraudulent accounting scheme other than labels, conclusions, and formulaic recitations of elements. There is simply no reason to conclude that Mr. Becker, an outside director who was not a member of the audit committee and had no day-to-day involvement in the Company's accounting, breached his fiduciary duty to the Company.

### 2.    The Amended Complaint Does Not Adequately Allege a Failure to Supervise

The amended complaint does not contend that Mr. Becker is liable for negligently failing to oversee Collins & Aikman's financial reporting, presumably because plaintiffs cannot come close to satisfying the requirements for alleging such a claim. As the Delaware Chancery Court has emphasized, demonstrating a director's liability for failure to oversee a company's financial reporting "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Intern. Inc. Derivatives Lit.*, 698 A.2d 959, 967 (Del. Ch. 1996) (*Caremark*). "[T]he fact that [the company's liability] resulted from a violation of criminal law alone does not create a breach of fiduciary duty by directors." *Id.* at 972.

Under *Caremark*, when the plaintiff claims that an officer or director permitted a company to engage in illegal acts, the plaintiff must prove (1) that the officer or director "knew

30

15676.12

or should have known that violations of law were occurring," (2) that he or she "took no good faith steps to ameliorate the situation," and (3) that "the company suffered losses as a result." *Id.* at 971. To satisfy the second element, plaintiffs must allege facts to demonstrate "a sustained or systematic failure of the board to exercise oversight" and "a wide disparity between the process the directors used to ensure the integrity of the Company's financial statements and that which would have been rational." *Guttman v. Huang*, 823 A.2d 492, 506-07 (Del. Ch. 2003). Thus, *Caremark* requires at least "gross negligence," *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 748 (Del. Ch. 2005), and, according to some courts, "subjective bad faith," *Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 799 n.80 (Del. Ch. 2004).

Here, the amended complaint fails to plead any specific facts to demonstrate either of the first two *Caremark* elements. The amended complaint does not allege even a single "red flag" to suggest that Mr. Becker knew or should have known of the alleged accounting improprieties, or a single fact to suggest a "systemic failure" of oversight. Each of these failures mandates dismissal of any breach of care claim under *Caremark*. *Guttman*, 823 A.2d at 506-07 (dismissing claim that company's officers and directors failed to discover accounting fraud because, among other reasons, there were no allegations that the outside directors should have been on notice of accounting irregularities or that company's financial controls or Audit Committee were inadequate); *cf. Buckley*, 2007 WL 956947, at *6 (denying motion to dismiss claim against officer when officer had notice of accounting fraud from auditors' warnings and SEC inquiries). Any claim based on failure of oversight must be dismissed.

### 3. The Claim Does Not Adequately Allege Facts Sufficient to Pierce the Protections of the Exculpatory Clause or 8 Del. C. § 141(e)

The exculpatory clause in Collins & Aikman's Amended and Restated Certificate of Incorporation limits the personal financial liability of a director to the corporation or its

stockholders for breaches of the duty of care to the greatest extent permitted under Section

102(b)(7) of Delaware's General Corporation Law.  This exculpatory clause can be invoked on a

motion to dismiss.  *Malpiede v. Townson* 780 A.2d 1075, 1092 (Del. 2001); *see also In re Lukens*

*Inc. S'holders Litig.*, 757 A.2d 720, 734 (Del. Ch. 1999).  To escape the force of the clause,

plaintiffs must assert facts that could support a judgment that Mr. Becker's acts or omissions

were not in good faith or involved intentional misconduct or a knowing violation of law,

violations of Section 174 of the DGCL, or violations that involved a transaction from which Mr.

Becker derived an improper personal benefit.  *Emerald Partners v. Berlin*, 2003 WL 21003437,

at *39 (Del. Ch. Apr. 28, 2003), *aff'd*, 840 A.2d 641 (Del. Dec. 23, 2003).

Moreover, as an outside director who relied on the expertise of independent auditors to

monitor the Company's accounting systems, Mr. Becker is also protected under Section 141(e)

of Delaware's General Corporation Law statute, which provides that a director:

> shall, in the performance of his duties, be fully protected in relying
> in good faith upon the records of the corporation and upon such
> information, opinions, reports or statements presented to the
> corporation by any of the corporation's officers or employees, or
> committees of the board of directors, or by any other person as to
> matters the member reasonably believes are within such other
> person's professional or expert competence and who has been
> selected with reasonable care by or on behalf of the corporation.

Where plaintiffs fail to plead sufficient facts to suggest that directors acted with gross negligence

in relying on experts, the Delaware courts have applied 141(e) as an additional basis for

dismissing fiduciary claims.  *See Trenwick America Litig. Trust v. Ernst & Young, L.L.P.*, 906

A.2d 168, 193-94 (Del. Ch. 2006), *aff'd*, 2007 WL 2317768 (Del. Aug. 14, 2007) (dismissing

fiduciary duty claims and finding that Board's reliance on outside expert made plaintiffs'

inferences that Board had acted without due care "even less sustainable"); *Crescent/Mach I*

32

*Partners, L.P.*, 846 A.2d at 985-86 (dismissing claims based on conclusory allegations that directors were grossly negligent in approving merger where they relied on third party expert).

Plaintiffs have alleged no specific facts to support a finding that Mr. Becker acted in bad faith, engaged in intentional misconduct, was grossly negligent, or should otherwise be divested of these important statutory protections. Plaintiffs allege at most negligence by an outside director who failed to detect an accounting fraud committed by others and not detected even by the independent auditors. Such a claim cannot proceed in the face of the exculpatory clause and Section 141(e). *See In re McKesson HBOC, Inc. Sec. Lit.*, 126 F. Supp. 2d at 1277-78 (dismissing breach of duty of care claims against outside directors based on exculpatory clause); *see also In re Lukens Inc. S'holders Litig.*, 757 A.2d at 734 (dismissing claim that directors negligently approved merger as barred by exculpatory clause); *Ash v. McCall*, 2000 WL 1370341, at *10 (Del. Ch. Sept. 15, 2000).

### 4.    "Deepening Insolvency" Damages Are Not Cognizable

The Delaware courts have emphatically held that Delaware does not recognize "deepening insolvency" as a cause of action. The Court of Chancery has noted that the concept itself is "not . . . coherent." *Trenwick America Litig. Trust*, 906 A.2d at 174 (Del. Ch. 2006), *aff'd* 931 A.2d 438 (Del. Aug 14, 2007). The Third Circuit has noted the *Trenwick* court's position, *see In re Teleglobe Commc'n Corp.*, 493 F.3d 345, 385 n.36 (3d Cir. 2007) ("In *Trenwick*, the Vice Chancellor put to rest the notion that there is such a thing as a cause of action for so-called 'deepening insolvency' in Delaware law."), and held further that "deepening insolvency" is not a valid theory of damages even under a state law that recognizes "deepening insolvency" as a standalone cause of action, *see In re CitX Corp., Inc.*, 448 F.3d 672, 678 (3d Cir. 2006). The *CitX* court's reasoning applies with even greater force where the state has rejected the concept of "deepening insolvency" altogether.

33

15676.12

Since plaintiffs' fiduciary claim pleads only "deepening insolvency" damages (Compl. ¶ 195), plaintiffs have failed to allege cognizable damages, and the claim should be dismissed.[9]

## D.    THE COMMON LAW FRAUD CLAIM SHOULD BE DISMISSED

The amended complaint alleges that the directors and officers "made misrepresentations of material facts to Collins & Aikman's Board of Directors and Audit Committee relating to the true financial condition of the Company . . . ." *Id.* ¶ 200.  To plead a claim for fraud, plaintiffs must allege: 1) a false representation, usually one of fact, made by the defendant; 2) knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage as a result of such reliance. *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).  Fraud may also occur through deliberate concealment of material facts, or by silence in the face of a duty to speak.  *Id.*

### 1.    The Claim Fails to Allege Fraud with Particularity

As previously indicated, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Where multiple defendants are involved, fraud must be pled with particularity as to each defendant. *Cinalli v. Kane*, 191 F. Supp. 2d 601, 609 (E.D. Pa. 2002).

Plaintiffs have failed to state at all, let alone with particularity, that Mr. Becker personally made any false misrepresentation, concealed any material facts, or failed to disclose any material

---

[9]  The complaint vaguely suggests that Mr. Becker breached his fiduciary duty to the creditors of Collins & Aikman.  *See* Compl. ¶ 194.  Delaware does not recognize such a duty.  *See N. Amer. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007) ("When a solvent corporation is navigating in the zone of insolvency, the focus for Delaware directors does not change: directors must continue to discharge their fiduciary duties to the corporation and its shareholders . . . .").  Moreover, plaintiffs have not pled facts sufficient to show that the Company was insolvent or nearly insolvent when Mr. Becker was on the Board more than a year before the bankruptcy.

information in the face of a duty to do so.  Plaintiffs have alleged neither dates, nor places, nor times of any fraud on the part of Mr. Becker.  As such, the amended complaint fails to put Mr. Becker on notice of the precise nature of the challenged conduct.  Accordingly, the claim of fraud against Mr. Becker does not satisfy the requirements of Rule 9(b) and must be dismissed.

### 2.     The Claim Does Not Plead Scienter Adequately

Under Delaware law, plaintiffs must establish that a defendant acted with knowledge of falsity or reckless indifference to the truth, and with an intention to cause the plaintiff to act or refrain from acting.  *Stephenson*, 462 A.2d at 1074.  As noted above, plaintiffs allege nothing more than conclusory allegations that Mr. Becker must have been aware of the fraud because of his position as an outside director with Collins & Aikman.  Essentially, plaintiffs are attempting to hold Mr. Becker strictly liable for the alleged misconduct of others based simply on his position with the Company.  Delaware does not recognize such a basis for liability.  *See Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 148 n.50 (Del. Ch. 2004) ("Delaware law also does not permit the conclusion that a defendant knew of certain facts involving an organization merely because the defendant had a position of responsibility within that organization.").  Without specific facts, plaintiffs have alleged at most negligence, which is insufficient to sustain a cause of action for fraud.  *See id.* at 148 ("At most, what the alleged facts perhaps do suggest is that certain . . . managers should have monitored their subsidiaries' operations more closely. . . . [B]ut ordinary negligence is insufficient to support a claim of common law fraud.").  The claim should be dismissed.

### 3.     The Claim Does Not Allege Proximate Cause

To state a claim for fraud, plaintiffs must prove damage "as a result of" their reliance on the alleged misconduct.  *Stephenson*, 462 A.2d at 1074.  The alleged fraudulent activity must be the proximate cause of the claimed loss.  *See Giordano v. Czerwinski*, 216 A.2d 874, 876 (Del.

35

1966); *Hudson v. Wesley College, Inc.*, 1998 WL 939712, at *13 n.44 (Del. Ch. Dec. 23, 1998),

*aff'd*, 734 A.2d 641 (Del. 1999); *Wilmington Country Club v. Cowee*, 747 A.2d 1087, 1097 (Del.

2000) ("Proximate cause exists if a natural and continuous sequence, unbroken by any efficient

intervening cause, produces the injury and without which the result would not have occurred.").

The connection between the misconduct and the damage cannot be "too tenuous [or] remote."

*Zerby v. Allied Signal Inc.*, 2001 WL 112052, at *6 (Del. Super. Ct. Feb. 2, 2001).

In this case, plaintiffs claim that they relied upon the alleged misrepresentations "in

electing and appointing the defendant officers," Compl. ¶ 203, and that the asserted misconduct

"denied [the Company] the opportunity to continue as a going concern and its value as a business

enterprise significantly decreased." *Id*. ¶ 204.  This theory requires plaintiffs to prove that

different directors and officers would have been elected, that those directors and officers would

have made different business decisions, and that the Company would have avoided bankruptcy

as a result.  *Cf. Cathcart*, 980 F.2d at 933.  Since this "lost opportunity" theory involves

countless intervening factors and business decisions rather than a "natural and continuous

sequence," it cannot satisfy the "proximate cause" requirement, and should be dismissed.

### 4.    "Deepening Insolvency" Damages Are Not Cognizable

Plaintiffs again allege that they suffered damages in the form of "deepening insolvency."

Compl. ¶ 204.  Since Delaware does not recognize "deepening insolvency" as a cause of action

or a theory of damages, *supra* at 33, the fraud claim should be dismissed.

## II.    THE UNJUST ENRICHMENT CLAIM CONCERNING THE COMPANY'S ACQUISITION OF THE BECKER GROUP SHOULD BE DISMISSED

The amended complaint also includes an unjust enrichment claim alleging that the

officers and directors "caus[ed the Company] to pay inflated prices for goods, services and

corporate acquisitions; violat[ed] the federal securities laws; ma[de] false and misleading

15676.12

statements; and caus[ed] the Company to file materially false and misleading press releases and documents with the SEC in order to increase the borrowings of the Company to a level far in excess of its ability to pay." Compl. ¶ 197. Plaintiffs thus seek disgorgement of any benefits received by the director and officer defendants. *Id.* ¶ 198. This claim appears to be the only theory under which plaintiffs challenge the non-compete agreement, the price paid for the Becker Group, or the consulting fee paid to Mr. Becker. The claim fails as a matter of law.

## A.    THE STATUTE OF LIMITATIONS BARS THE CLAIM

The unjust enrichment claim is subject to a three-year limitations period pursuant to 10 Del. C. § 8106. *See Merck & Co., Inc. v. SmithKline Beecham Pharm. Co.*, 1999 WL 669354, at *43 (Del. Ch. Aug. 5, 1999). If the limitations period is tolled, the tolling period ends once the plaintiffs know or should know of facts constituting the alleged wrong. *See Kahn v. Seaboard Corp.*, 625 A.2d 269, 276 (Del. Ch. 1993).

Since Collins & Aikman's acquisition of the Becker Group was fully and accurately disclosed in the Company's 8-K filings in March and July 2001, plaintiffs were on inquiry notice of these claims at that time. As such, any claim regarding the acquisition was time-barred as of March 2004, or more than a year before Collins & Aikman filed for bankruptcy.[10]

---

[10] If the acquisition of the Becker Group is challenged under the other legal theories, those claims are also time-barred. The common law claims are barred by section 8106's three-year limitation. *See Halpern v. Barran*, 313 A.2d 139, 141 (Del. Ch. 1973). The limitations period for the Section 10(b) and 14(a) claims is the earlier of one-year after discovery of the alleged wrongdoing or three years from the occurrence of the alleged violation. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364 (1991); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d at 1324; *Westinghouse Elec. Corp. v. Franklin*, 993 F.2d 349, 353 (3d Cir. 1993) (holding that for purposes of determining the appropriate limitations period, Section 14(a) actions are treated identically to actions under Section 10(b)). The statute of limitations begins to run from the time that a plaintiff is on "inquiry notice" to investigate a potential securities claim, meaning plaintiffs "discovered or in the exercise of reasonable diligence should have discovered the basis for their claim" against the defendant. *See In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 601 (D.N.J. 2001). Because plaintiffs did not bring an action within a year of March 2001, their claims are barred.

37

### B.    THE UNJUST ENRICHMENT CLAIM IS BARRED BY THE BUSINESS JUDGEMENT RULE

Collins & Aikman's decisions to enter into the non-compete agreement, to acquire the Becker Group, and to pay Mr. Becker a consulting fee are all protected by the business judgment rule. *See Prod. Res. Group, L.L.C.*, 863 A.2d at 799. Plaintiffs have not alleged any facts to pierce that important protection, such as a defect in the approval of the agreements or the self-interest of a majority of the Company's board. *See Gantler v. Stephens*, 2008 WL 401124, at *8 (Del. Ch. Feb. 14, 2008). These claims cannot proceed.

### C.    PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED UNJUST ENRICHMENT

Under Delaware law, unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1056 (Del. Super. 2001) (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988) (citation omitted)) (internal quotation marks omitted)). Its elements are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law. *Id.*

Although the Company's acquisition of the Becker Group resulted in various enrichments to Mr. Becker, the amended complaint does not adequately allege an "absence of justification" for Mr. Becker to have received any of these particular benefits. Plaintiffs have identified no legal defect in the non-compete agreement, other than alleging that Mr. Becker was somehow obligated not to compete with the Company for an unspecified reason. This allegation is too vague to be credited under Rule 9(b) or Rule 8(a). *Total Care Physicians, P.A.*, 798 A.2d at 1056 ("The Court cannot conclude on this record that any evidence has been elicited to suggest that [defendants] personally have been enriched at all, much less unjustly. . . ."); *MetCap Sec.*

38

*LLC v. Pearl Senior Care, Inc.*, 2007 WL 1498989, at *6 n.50 (Del. Ch. May 16, 2007) ("[The] claim[s] of unjust enrichment . . . do not survive the motion to dismiss. No non-conclusory facts are alleged to suggest in any fashion how any of these entities benefited. . . .").

Nor does the complaint allege any reason why Mr. Becker was unjustly enriched by the sale of the Becker Group. Mr. Becker was not associated with Collins & Aikman when he sold the Becker Group to it. He obviously cannot be held responsible for the Company's allegedly inadequate due diligence or the allegedly excessive purchase price it paid.

Likewise, plaintiffs' allegation concerning undisclosed consulting fees does not give rise to any claim by the Company against Mr. Becker. Plaintiffs do not (and cannot) allege that Mr. Becker did not earn this payment or that Mr. Becker's receipt of such payment was in any way improper. Nor do plaintiffs allege that Mr. Becker was in any way responsible for the Company's failure to disclose this information. And if anyone was injured by the alleged non-disclosure, it was the shareholders, not the Company. Plaintiffs have no standing to bring this claim. *Cf. supra* at 20 - 19.

## III.    THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

The Reform Act provides that "in any private action arising under this chapter, the court shall, on the motion of any defendant, dismiss the complaint if the [pleading] requirements . . . are not met." 15 U.S.C. § 78u-4(b)(3)(A). This provision restricts the application of Rule 15 so that claims that fail the heightened pleading requirements should be dismissed with prejudice. *In re NAHC, Inc. Sec. Litig.*, 2001 WL 1241007, at *26 (E.D. Pa. Oct. 17, 2001); *In re Champion Enters., Inc., Sec. Litig.,* 145 F. Supp. 2d 871, 873 (E.D. Mich. 2001) ("The plain language of the Reform Act does not contemplate amending complaints; it *does* set a high standard of pleading which if not met results in a mandatory dismissal. The necessary goal of this plain, and strong

39

language, is that it should be dismissed *with prejudice*. To conclude otherwise would be to abrogate the very purpose of the legislation.").

Despite nearly three years in which to investigate their claims, the benefit of related litigation by parties with subpoena power, and the opportunity to amend their complaint once to incorporate the information they have learned during this period, plaintiffs have raised no meaningful allegations against Mr. Becker in their amended complaint. Plaintiffs should not be allowed to skirt the purposes of the Reform Act by receiving additional leave to amend their claims. The claims should be dismissed with prejudice.

## CONCLUSION

For these reasons, and the applicable reasons set forth in the motions to dismiss by the other defendants, this Court should dismiss the amended complaint against Mr. Becker with prejudice.

Respectfully submitted,

PRICKETT, JONES & ELLIOTT, P.A.

By:    /s/ James L. Holzman
    James L. Holzman (Bar ID #663)
    J. Clayton Athey (Bar ID #4378)
    1310 King Street, Box 1328
    Wilmington, Delaware  19899
    Ph:  (302) 888-6500
    jlholzman@prickett.com
    jcathey@prickett.com

OF COUNSEL:

Anton Valukas
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611-7603
(312) 222-9350
avalukas@jenner.com

Stephen L. Ascher
JENNER & BLOCK LLP
919 Third Avenue - 37th Floor
New York, New York 10022
sascher@jenner.com

40

15676.12