UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COLLINS & AIKMAN CORPORATION<br>and COLLINS & AIKMAN PRODUCTS<br>CO., as Debtors in Possession, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| DAVID A. STOCKMAN, et al., | ) | Civ. No. 07-265-SLR/LPS |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT BY HEARTLAND INDUSTRIAL PARTNERS, L.P., HEARTLAND INDUSTRIAL ASSOCIATES, L.L.C. AND HEARTLAND INDUSTRIAL GROUP, L.L.C.**

Robert S. Saunders (Bar I.D. No. 3027)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
Tel: (302) 651-3000
Fax: (302) 651-3001

Of counsel:
Jonathan J. Lerner
Lea Haber Kuck
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS ...................................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

SUMMARY OF THE ARGUMENT ..................................................................... 2

STATEMENT OF FACTS ..................................................................................... 4

    A.    The Parties ..................................................................................... 4

        1.    Plaintiffs ..................................................................................... 4

        2.    Defendants ..................................................................................... 5

    B.    Heartland's Relationship with C&A ..................................................... 5

        1.    Heartland Invests in C&A ..................................................................................... 5

        2.    The Services Agreement ..................................................................................... 6

    C.    The Alleged Accounting Improprieties at C&A ..................................................... 8

    D.    Other Actions Brought by C&A Against Heartland Seeking the Same Relief ..................................................................................... 10

ARGUMENT ..................................................................................... 11

I.    THE COMPLAINT VIOLATES RULES 8 AND 9(b) ..................................................... 11

    A.    The Complaint Does Not Provide Heartland With Fair Notice of C&A's Claims as Required by Rule 8 ..................................................................................... 11

    B.    The Complaint Does Not Plead Any Claim With Particularity as Required by Rule 9(b) ..................................................................................... 13

    C.    The Complaint Lumps Defendants Together in Violation of Both Rules 8 and 9(b) ..................................................................................... 14

    D.    Given Its Access to All the Relevant Facts, C&A Should Be Strictly Held to the Applicable Pleading Requirements ..................................................................................... 15

II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY ..................................................................................... 16

    A.    C&A Does Not Plead How Heartland Breached Any Fiduciary Duties ............... 16

i

B.    C&A Does Not Sufficiently Allege That Heartland Owed Any Fiduciary
      Duties to C&A ...................................................................................................17

III.   THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF
       CONTRACT ..................................................................................................................19

       A.    C&A Does Not Allege How Heartland Breached the Services Agreement ..........19

       B.    C&A Cannot Impose Obligations on Heartland That Are Not Found in the
             Services Agreement ..............................................................................................20

       C.    C&A Cannot Invoke the Implied Duty of Good Faith and Fair Dealing to
             Salvage Its Deficient Claim .................................................................................22

IV.    THE UNJUST ENRICHMENT CLAIM IS FORECLOSED BY THE
       EXISTENCE OF THE SERVICES AGREEMENT .......................................................23

V.     ANY CLAIMS THAT ACCRUED PRIOR TO MAY 17, 2002 ARE BARRED BY
       THE STATUTE OF LIMITATIONS ..............................................................................24

VI.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ............................24

CONCLUSION..............................................................................................................................25

## TABLE OF CITATIONS

### CASES

American National Theater & Academy v. American National Theater Inc., No. 05 Civ. 4535, 2006 U.S. Dist. LEXIS 69420 (S.D.N.Y. Sept. 27, 2006)........................................19

Ari & Co. v. Regent International Corp., 273 F. Supp. 2d 518 (S.D.N.Y. 2003)..........................22

Aronson v. Lewis, 473 A.2d 805 (Del. 1984)...........................................................................18

Atuahene v. City of Hartford, 10 F. App'x 33 (2d Cir. 2001)........................................................14

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007)...........................................................4, 11

Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502 (7th Cir. 2007) ....................................13

Bruhl v. PricewaterhouseCoopers International, No. 03-23044, 2007 WL 997362 (S.D. Fla. Mar. 27, 2007.......................................................................................................................15

Christensen v. WMA Consumer Services, Inc., No. Civ.A. 03-1545, 2003 WL 22174240 (E.D. La. Sept. 5, 2003) .....................................................................................................15

Citron v. Steego Corp., No. 10171, 1988 WL 94738 (Del. Ch. 1988) ..........................................17

Conley v. Gibson, 355 U.S. 41 (1957)....................................................................................11

Coty Inc. v. L'Oréal S.A., No. 07 CV 6206, 2008 WL 331360 (S.D.N.Y. Feb. 4, 2008) .............22

Crane Co. v. Coltec Industrial Inc., 171 F.3d 733 (2d Cir. 1999) ...................................................21

Crowley v. VisionMaker, LLC, 512 F. Supp. 2d 144 (S.D.N.Y. 2007) ..........................................24

In re Crown-Simplimatic Inc., 299 B.R. 319 (Bankr. D. Del. 2003)...............................................24

Donovan v. ABC-NACO Inc., No. 02 C 1951, 2002 WL 1553259 (N.D. Ill. July 15, 2002) ...............................................................................................................................15

In re Exxon Mobil Corp. Securities Litigation, 500 F.3d 189 (3d Cir. 2007) ................................13

Fitzgerald v. Hudson National Golf Club, 783 N.Y.S.2d 615 (App. Div. 2004) ..........................22

Frota v. Prudential-Bache Securities, Inc., 639 F. Supp. 1186 (S.D.N.Y. 1986) .........................13

Glassman v. Computervision Corp., 90 F.3d 617 (1st Cir. 1996) ................................................16

In re Global Crossing, Ltd. Securities Litigation, No. 02 Civ. 910, 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005) .....................................................................................................18

Goldman v. Metropolitan Life Insurance Co., 841 N.E.2d 742 (N.Y. 2005) ...............................23

Gurfein v. Ameritrade, Inc., 411 F. Supp. 2d 416 (S.D.N.Y. 2006)...............................................15

Ivanhoe Partners v. Newmont Mining Corp., 535 A.2d 1334 (Del. 1987)....................................17

Kahn v. Seaboard, 625 A.2d 269 (Del. Ch. 1993) .........................................................................18

Kennilworth Partners L.P. v. Cendant Corp., 59 F. Supp. 2d 417 (D.N.J. 1999)........................15

Kirtley v. Wadekar, No. 05-5383, 2006 WL 2482939 (D.N.J. Aug. 25, 2006) ...........................13

Lane v. Capital Acquisitions & Management Co., No. 04-60602 CIV, 2006 WL 4590705
    (S.D. Fla. Apr. 14, 2006) ...................................................................................................14

Lum v. Bank of America, 361 F. 3d 217 (3d Cir. 2004) ................................................................14

Medina v. Bauer, No. 02 Civ. 8837, 2004 WL 136636 (S.D.N.Y. Jan. 27, 2004)........................14

Metcap Securities LLC v. Pearl Senior Care, Inc., No. Civ.A. 2129, 2007 WL 1498989
    (Del. Ch. May 16, 2007) ...................................................................................................23

In re NAHC, Inc. Securities Litigation, 306 F.3d 1314 (3d Cir. 2002) ..........................................6

Northgate Motors, Inc. v. General Motors Corp., 111 F. Supp. 2d 1071 (E.D. Wis. 2000)..........20

Pacific Electric Wire & Cable Co. v. Set Top International Inc., No. 03 Civ. 9623, 2005
    WL 578916 (S.D.N.Y. Mar. 11, 2005) .............................................................................13

Palese v. Delaware State Lottery Office, No. Civ. A. 1546-N, 2006 WL 1875915 (Del. Ch.
    June 29, 2006), aff'd mem., 913 A.2d 570 (Del. 2006) ....................................................23

Phillips v. Allegheny, 515 F. 3d 224 (3d Cir. 2008)..................................................................4, 11

In re Providian Finance Corp. ERISA Litigation, No. C 01-05027, 2002 WL 31785044
    (N.D. Cal. Nov. 14, 2002)..................................................................................................14

Ramon v. Budget Rent-a-Car System, Inc., No. 06-1905, 2007 WL 604795 (D.N.J. Feb.
    20, 2007) ..............................................................................................................................7

Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481 (2d Cir. 1999)........................20

Roberto's Fruit Market, Inc. v. Schaffer, 13 F. Supp. 2d 390 (E.D.N.Y. 1998) ...........................12

In re Rockefeller Center Properties, Inc. Securities Litigation, 311 F.3d 198 (3d Cir.
    2002) ....................................................................................................................................4

Rossdeutscher v. Viacom, Inc., 768 A.2d 8 (Del. 2001) ..............................................................24

iv

Saint-Val v. Domino's Pizza, LLC, No. 06-4273, 2007 WL 2049120 (D.N.J. July 12, 2007) ............................................................................................................. 12

Schock v. Nash, 732 A.2d 217 (Del. 1999) ............................................................. 23

In re Sea-Land Corp. Shareholders Litigation, No. 8453, 1987 WL 11283 (Del. Ch. May 22, 1987) ........................................................................................... 17, 18

Silverstein v. Percudani, 422 F. Supp. 2d 468 (M.D. Pa. 2006) .............................. 15

Slamow v. Delcol, 571 N.Y.S.2d 335 (App. Div. 1991), aff'd, 594 N.E.2d 918 (N.Y. 1992) ............................................................................................................. 20

Sobek v. Quattrochi, No. 03 Civ. 10219, 2004 WL 2809989 (S.D.N.Y. Dec. 8, 2004) ............... 20

Texas Liquids Holdings, LLC v. Key Bank National Association, No. 05 CV 5070, 2007 WL 950136 (S.D.N.Y. Mar. 27, 2007) ............................................... 19

Toner v. Allstate Insurance Co., 821 F. Supp. 276 (D. Del. 1993) ........................... 13

Tredennick v. Bone, No. 07-0735, 2007 WL 4244652 (W.D. Pa. Nov. 29, 2007) ......... 15

Trenwick America Litigation Trust v. Ernst & Young, L.L.P., 906 A.2d 168 (Del. Ch. 2006), aff'd mem., 931 A.2d 438 (Del. 2007) ................................................... 16

United States Express Lines, Ltd. v. Higgins, 281 F.3d 383 (3d Cir. 2002) .................. 5

United States ex rel. Garst v. Lockheed-Martin Corp, 328 F.3d 374 (7th Cir. 2003) ............. 12, 13

Vladimir v. Deloitte & Touche LLP, No. 95 Civ. 10319, 1997 WL 151330 (S.D.N.Y. Mar. 31, 1997) .................................................................................... 16

Warburton v. Foxtons, Inc., No. 04-2474, 2005 WL 1398512 (D.N.J. June 13, 2005) ................. 7

In re Western National Corp. Shareholders Litigation, No. 15927, 2000 WL 710192 (Del. Ch. May 22, 2000) ................................................................. 18

Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490 (S.D.N.Y. 2002), aff'd, 65 F. App'x 736 (2d Cir. 2003) ............................................................................ 19, 22

## STATUTES

Del. Code Ann. tit. 10, § 8106 (2008) ...................................................................... 24

Fed. R. Civ. P. 8 .................................................................................................... 11

Fed. R. Civ. P. 9(b) ............................................................................................... 11

**MISCELLANEOUS**

5C Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1363 (3d ed. 2004) ........................................................................................................................................4

12B William Meade Fletcher, <u>Fletcher Cyclopedia of the Law of Private Corporations</u> § 5811 (2000)...........................................................................................................................17

Defendants Heartland Industrial Partners, L.P. ("Heartland LP"), Heartland Industrial Associates, L.L.C. ("Heartland LLC"), and Heartland Industrial Group, L.L.C. ("Heartland Industrial") (collectively, "Heartland"), respectfully submit this memorandum of law in support of their motion, pursuant to Rules 8, 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all claims for relief alleged against them in the First Amended Complaint ("Complaint" or "Compl.") by plaintiffs Collins & Aikman Corp. and Collins & Aikman Products Co. (together, "C&A").[1]

## NATURE AND STAGE OF THE PROCEEDINGS

Heartland is a private equity firm that had a large equity investment in C&A and lost the entire value of its more than $300 million investment after C&A filed for bankruptcy. Although Heartland never sold a single share of C&A stock and lost hundreds of millions of dollars, C&A contends that Heartland was involved in alleged wrongdoing that included misrepresenting C&A's financial condition to C&A's investors – in essence, that Heartland was involved in a scheme to defraud itself.  It appears that the claims against Heartland are based on the facts that: (1) C&A paid Heartland for advisory services under a routine "Services Agreement;" and (2) Heartland was a substantial stockholder of C&A (albeit not a majority stockholder at any relevant time).  These unremarkable facts are insufficient to support the claims for fiduciary duty, breach of contract and unjust enrichment that C&A attempts to plead against Heartland.

It bears emphasis that this is the third separate litigation filed by C&A against Heartland seeking the recovery of fees it paid Heartland under the Services Agreement, the other two cases having been filed in C&A's bankruptcy proceeding.  Here, C&A has included Heartland

---

[1]    The original complaint in this action was filed on May 16, 2007.  While the defendants' motions to dismiss that complaint were pending, C&A amended and filed the instant Complaint on January 28, 2008.

in a blunderbuss complaint that names myriad other defendants, including fourteen former officers, directors, and/or employees of C&A and C&A's outside auditors. As C&A admits, the audit committee of its board of directors, in cooperation with the Securities and Exchange Commission ("SEC"), conducted extensive investigations into the issues that form the basis of the Complaint and C&A has had unlimited access to information relevant to its claims. Yet C&A's allegations against Heartland are conclusory, vague and devoid of any facts – much less specific facts.

Rather than allege specific facts about anything Heartland supposedly did, C&A bootstraps a bevy of conclusory allegations it makes against "Defendants" as a group. Because it is impossible to discern how those generic allegations – asserted in support of twelve different claims against nineteen different individuals and entities with widely disparate relationships to C&A – relate to specific claims against Heartland, such pleading fails to give Heartland even the most basic notice of what it is alleged to have done wrong.

For the reasons set forth in further detail below, C&A fails to satisfy the pleading standards of both Rules 8 and 9(b) of the Federal Rules of Civil Procedure and fails to allege any cognizable claim against Heartland. This failure is particularly noteworthy because this amended Complaint was filed in response to motions to dismiss the original complaint, and C&A has made no effort, or was unable, to remedy the deficiencies in its pleading against Heartland despite having been given notice of them. In these circumstances, the Complaint must be dismissed with prejudice.

## SUMMARY OF THE ARGUMENT

1.    Despite C&A's extensive access to documents and witnesses, the Complaint fails to satisfy the applicable pleading standards of the Federal Rules of Civil Procedure:

2

        (a)     The Complaint fails to give Heartland fair notice of C&A's claims because it fails to apprise any of the Heartland entities of what each is alleged to have done wrong. Such ambiguous pleading violates Rule 8.

        (b)     The predicate of each of the claims asserted against Heartland appears to be fraud and thus, all claims must be pled with particularity in accordance with Rule 9(b). C&A has failed to plead any of the specifics required by Rule 9(b).

        (c)     The Complaint's attempt to lump Heartland with the other defendants by employing catch-all and perfunctory references to "Defendants" does not give Heartland notice of the claims, much less plead them with particularity. Such pleading violates both Rules 8 and 9(b).

        (d)     The pleading requirements of the Federal Rules of Civil Procedure should be applied vigorously here, where C&A has had years of access to all of the facts pertaining to its alleged claims (which the typical plaintiff would not).

        2.     The breach of fiduciary duty claim fails because C&A does not allege any facts showing that Heartland owed any fiduciary duties to C&A or that Heartland took any actions that breached any fiduciary duties – even if they did exist.

        3.     Although C&A makes the perfunctory allegation that Heartland owed C&A contractual duties pursuant to the Services Agreement, the specific obligations C&A attempts to impose on Heartland are not found anywhere in the contract and thus cannot form the basis of a breach of contract claim. As a matter of law, C&A cannot salvage its contract claim by invoking an implied covenant of "good faith and fair dealing," which does not create obligations independent of the contract.

4.     Finally, the unjust enrichment claim fails because C&A has not alleged the existence of any enrichment to Heartland outside of what it was paid pursuant to the terms of the Services Agreement.  Because that contract sets forth the parties' obligations, C&A may not rely on this quasi-contractual theory of recovery.

5.     The three-year statute of limitations bars any claim that accrued prior to May 17, 2002 (i.e., more than three years before C&A filed for bankruptcy).

6.     Dismissal should be with prejudice in light of the many opportunities and advantages that plaintiffs have had to state a viable claim against Heartland.

## STATEMENT OF FACTS[2]

A.     **The Parties**

1.     **Plaintiffs**

Plaintiffs in this action are Collins & Aikman Corporation and Collins & Aikman Products Co., which filed for bankruptcy on May 17, 2005, following a precipitous decline in the financial condition of the automotive sector in general.  (Compl. ¶¶ 5-6, 37, 43, 91.)  Prior to its bankruptcy, C&A "was engaged in the design, manufacture and supply of automotive interior components."  (Id. ¶ 35.)  C&A's products were sold to original equipment manufacturers such as General Motors, Ford and Chrysler.  (Id.)  Under the plan of reorganization, C&A assigned the

---

[2]     While the well-pled factual allegations of the Complaint are taken as true solely for the purpose of this motion, the Third Circuit has held:  "[C]ourts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint.  Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness."  In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (citation omitted); see also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363 (3d ed. 2004) ("Unsupported conclusions of law can be disregarded . . . . The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading."); see generally Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-69 (2007); Phillips v. Allegheny, 515 F.3d 224, 231-35 (3d Cir. 2008).

claims asserted in the Complaint to the Collins & Aikman Litigation Trust, which is administered by a Litigation Trust Administrator. (<u>Id.</u> ¶ 6.) According to the Complaint, any recovery in this action will be "for the benefit of the creditors of [C&A's] estates." (<u>Id.</u>)

### 2.    Defendants

C&A names as defendants nineteen individuals and entities that had various relationships with C&A. Heartland LP is alleged to be a $1 billion private equity firm which invested in C&A. (<u>Id.</u> ¶ 27.) According to the Complaint, at least 30% of Heartland LP's total investments were in C&A. (<u>Id.</u>) The Complaint also names as defendants Heartland LLC, the general partner of Heartland LP, and Heartland Industrial, though it contains no allegations whatsoever concerning Heartland Industrial's relationship with C&A. (<u>Id.</u> ¶¶ 28-29.) The Complaint makes no effort to differentiate among the different Heartland defendants.

Significantly, there are no allegations that any Heartland entity ever sold any C&A stock. On the contrary, Heartland was purchasing stock during the time that C&A was allegedly misleading its shareholders, as reflected in the filings with the SEC relied on in the Complaint.[3] As C&A's allegations demonstrate, Heartland lost an enormous amount of money after C&A filed for protection under the Bankruptcy Code.

### B.    Heartland's Relationship with C&A

### 1.    Heartland Invests in C&A

In February 2001, Heartland made a large equity investment in C&A. In connection with that transaction, Heartland obtained the right to appoint a majority of C&A's board of directors. (Compl. ¶ 30.) Beginning on September 29, 2004, however, Heartland chose

---

[3]    A court may consider documents integral to the complaint (even if not attached to the complaint) without converting a motion to dismiss into a motion for summary judgment. <u>See</u> <u>U.S. Express Lines, Ltd. v. Higgins</u>, 281 F.3d 383, 388 (3d Cir. 2002).

not to exercise this right, and from that time forward, a majority of C&A's board of directors was independent and unaffiliated with Heartland. (See Declaration of Robert S. Saunders dated April 28, 2008 ("Saunders Decl.") Ex. A, SEC Form 8-K filed by C&A on Sept. 30, 2004.)[4] Heartland did not at any time obtain the right or the obligation to designate any individuals in C&A's management.

Heartland LLC (and the Heartland defendants collectively) owned less than 50% of C&A's outstanding stock at all times except for a brief period of time during 2001.[5]

### 2. The Services Agreement

Heartland entered into a Services Agreement with C&A in 2001. (Compl. ¶ 46.) Such agreements are common in situations where a private equity firm has made an investment in a company because the private equity firm brings with it certain expertise that a manufacturing company, such as C&A, does not otherwise have. The Services Agreement was entered into as part of the original transaction in which Heartland made its investment in C&A. The terms of the Services Agreement, and specifically the fees to be paid by C&A to Heartland, were heavily negotiated by C&A prior to the time Heartland made its investment. Indeed, C&A appointed a special committee of disinterested directors to negotiate and approve the transaction with Heartland. This committee negotiated the terms of the Services Agreement and obtained concessions from Heartland. (See Saunders Decl. Ex. B, relevant excerpts from SEC Form DEF 14A, Proxy Statement filed by C&A on Feb. 13, 2001.) Each of the subsequent amendments to the

---

[4]    A court may take judicial notice of public disclosure documents filed with the SEC. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1331 (3d Cir. 2002).

[5]    The Complaint alleges that Heartland LLC beneficially owned "at least 59.7%" of C&A's stock in 2001 and, by January 1, 2005, owned 41% of C&A's stock. (Compl. ¶ 28.) Heartland's percentage ownership declined because of dilution resulting from certain transactions, not because Heartland sold any of its C&A shares.

Services Agreement was likewise approved by C&A's disinterested and independent directors.

(See, e.g., Saunders Decl. Ex. C, relevant excerpts from SEC Form 10-Q filed by C&A on May 7, 2004.)

Contrary to C&A's conclusory allegation that the Services Agreement gave "Heartland contractual control and dominion over the Company's affairs" (Compl. ¶ 46), the Services Agreement delineates a discrete set of services to be provided by Heartland that in no way gave Heartland "control" over C&A.[6] The Services Agreement was designed to allow C&A to take advantage of Heartland's expertise and, in exchange, to compensate Heartland for the services it performed for the company:

> Heartland hereby agrees that, during the term of this Agreement, it shall render to the Company . . . advisory and consulting services in relation to the affairs and strategic direction of the Company and its subsidiaries, including, without limitation, (i) advice with respect to general developments in the automotive industry and the manner in which those developments may impact the Company; (ii) advice on market developments concerning the purchase and sale of automotive suppliers in its market area and other automotive industry entities identified by the Company and the manner in which those developments may impact the Company; (iii) advice on the Company's financial plans, strategic plans, and alternatives after review of such plans and alternatives with management of the Company; and (iv) advice in other business and financial areas as may be reasonably requested by the Company and which are within the expertise of Heartland.

(Saunders Decl. Ex. D, Services Agreement, ¶ 2.)

Similarly, C&A's conclusory assertions – that "Heartland thereby exercised supervision and oversight of every aspect of the Company's affairs" and that the "Company reasonably relied upon Heartland to ensure that the Company's affairs were properly and lawfully

---

[6]    A court need not accept as true allegations in a complaint that are contradicted by the documents on which the complaint is based. See Ramon v. Budget Rent-a-Car Sys., Inc., No. 06-1905, 2007 WL 604795, at *2 (D.N.J. Feb. 20, 2007); Warburton v. Foxtons, Inc., No. 04-2474, 2005 WL 1398512, at *4 (D.N.J. June 13, 2005).

conducted" (Compl. ¶ 206) – are contrary to the Services Agreement, which actually provides just the opposite:

> The Company shall furnish or cause to be furnished to Heartland such information as Heartland reasonably believes appropriate to its advisory services hereunder and to the ownership by affiliates of Heartland of equity interests of the Company (all such information so furnished being the "Information"). The Company recognizes and confirms that Heartland (i) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (ii) does not assume responsibility for the accuracy or completeness of the Information and such other information and (iii) is entitled to rely upon the Information without independent verification.

(Saunders Decl. Ex. D, ¶ 6.) On its face, the contract between Heartland and C&A specifically provided that Heartland had the right to rely on C&A's financial statements – and not the other way around, as C&A alleges.

It is not disputed that C&A paid Heartland for its services. (Compl. ¶ 32.) But as discussed above, all of the fees that were paid under the Services Agreement were approved by C&A's disinterested directors and were fully disclosed to the public. (See Saunders Decl., Exs. B & C.) Pursuant to the terms of the Services Agreement, and as fully disclosed in C&A's SEC filings, Heartland was to receive quarterly payments as well as transaction fees based on the size of any transaction that was completed with Heartland's assistance. The fees paid to Heartland pursuant to the Services Agreement amounted to only a small fraction of the total amount of money Heartland had invested in C&A – and pale in comparison to the equity investment lost by Heartland after C&A filed for bankruptcy.

### C.     The Alleged Accounting Improprieties at C&A

C&A alleges that in 2001, with Heartland's advice, it undertook efforts to expand its business and acquired three corporations: Becker Group, L.L.C., Joan Automotive Fabrics and a division of Textron Automotive. (Compl. ¶¶ 45-52.) C&A further alleges that Heartland was

8

paid fees in connection with certain of these acquisitions, but it does not allege that Heartland failed to perform any of the services for which it was paid. (See id.) Instead, C&A appears to allege that certain individuals improperly recorded rebates and overpaid for machinery relating to these businesses. (Id. ¶¶ 53-57.) Not only is Heartland not mentioned in these allegations, but Heartland was never responsible for determining how C&A accounted for such transactions – and C&A does not and cannot allege that it was. On the contrary, Heartland had the contractual right to rely on C&A's financial statements in performing all of its services under the Services Agreement.

The balance of the Complaint sheds no further light on what Heartland supposedly did wrong. C&A alleges that: (1) its own accounting for certain rebates was incorrect (id. ¶¶ 58-69, 125-26); (2) C&A factored ineligible receivables into the calculation of the amount it could borrow under an accounts receivable facility (id. ¶¶ 74-79); and (3) certain financial information C&A disclosed to the public was incorrect (id. ¶¶ 25, 39-40, 54-55, 69, 71, 80-88, 92-94). Not surprisingly, these sections make absolutely no mention of Heartland, much less allege that Heartland: (1) played any role in determining how C&A should account for rebates or anything else for that matter; (2) had anything to do with determining which receivables C&A should factor into the calculation of the loan amount under the accounts receivable facility; or (3) was involved in preparing the financial information included in C&A's public disclosures. Of course, the Services Agreement did not contemplate Heartland having any role in such activities.

As such, Heartland has not been charged with any wrongdoing in connection with these accounting improprieties, which were extensively investigated by C&A's audit committee

9

(id. ¶¶ 41-42, 95-101), and are the subject of an SEC complaint and criminal indictment – neither of which names Heartland as a defendant (id. ¶ 44).[7]

**D.    Other Actions Brought by C&A Against Heartland Seeking the Same Relief**

This is only one of three cases filed within the space of three days by C&A against Heartland seeking to recover fees allegedly paid by C&A.  In this action, filed on May 16, 2007, C&A asks the Court to direct Heartland "to make restitution to Plaintiffs for all compensation, profits and other things of value by which they were unjustly enriched as a result of the wrongs they committed."  (Id. at 83, ¶ D.)

In the first action, filed on May 14, 2007, C&A seeks to avoid certain fees allegedly paid to Heartland LP as preferential transfers pursuant to 11 U.S.C. §§ 547 and 550.  See Collins & Aikman Corp. v. Heartland Indus. Partners, L.P., Case No. 05-55927, Adv. Pro. No. 07-05592 (Bankr. E.D. Mich.).  That complaint appears to seek the return of fees allegedly paid to Heartland within one year of C&A's bankruptcy filing.

In the second action, filed on May 15, 2007, C&A asserts several counts of fraudulent transfer and preference against Heartland LP, Heartland LLC and Heartland Industrial. See Collins & Aikman Corp. v. Heartland Indus. Partners, L.P., Case No. 05-55927, Adv. Pro. No. 07-05650 (Bankr. E.D. Mich.).  That complaint appears to seek the return of certain fees paid to Heartland as far back as 2001, including those fees sought in the first action.

Thus, C&A seeks duplicative relief by engaging in vexatious litigation against Heartland on three fronts – using three different law firms to prosecute three different cases in two different forums against one or more of the Heartland defendants.

---

[7]    Although the Complaint also mentions three securities class action lawsuits brought by investors (id. ¶¶ 44, 98), these complaints are themselves based on the indictment and SEC complaint.

## ARGUMENT

## I.    THE COMPLAINT VIOLATES RULES 8 AND 9(b).

The Complaint is subject to both Rules 8 and 9(b) of the Federal Rules of Civil

Procedure. Rule 8 requires that a complaint set forth "a short and plain statement of the claim

showing that the pleader is entitled to relief" and that "[e]ach allegation must be simple, concise,

and direct." Fed. R. Civ. P. 8(a)(2), 8(d)(1). Rule 9(b) requires that complaints sounding in fraud

be pled with particularity. See Fed. R. Civ. P. 9(b).

### A.    The Complaint Does Not Provide Heartland With Fair Notice of C&A's Claims as Required by Rule 8.

The "short and plain statement" required by Rule 8 must "'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'" Phillips v. Allegheny, 515 F.

3d 224, 231 (3d Cir. 2008) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)).

In Twombly, the Supreme Court further elaborated on the pleading requirements of Rule 8,

holding that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." Id. at 1964-65 (citation omitted). At a minimum, "[f]actual allegations must be

enough to raise a right to relief above the speculative level." Id. at 1965.[8] The Court explained

that, in the end, "a plaintiff must 'nudge [his or her] claims across the line from conceivable to

plausible' in order to survive a motion to dismiss." Phillips, 515 F. 3d at 234 (citing Twombly, 127

S. Ct. at 1974).

---

[8]    In tightening the pleading standard, the Supreme Court specifically overruled the holding of
Conley v. Gibson, 355 U.S. 41, 45-46 (1957), often quoted by plaintiffs, that "a complaint
should not be dismissed for failure to state a claim unless it appears beyond doubt that the
plaintiff can prove no set of facts in support of his claim which would entitle to him to relief."
The Supreme Court concluded that the passage was "an incomplete, negative gloss on an
accepted pleading standard" and that it "has earned its retirement." Twombly, 127 S. Ct. at
1969.

11

Accordingly, complaints that are unduly lengthy or confusing are deficient under Rule 8. In the words of the Seventh Circuit: "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." United States ex rel. Garst v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir. 2003); see also Saint-Val v. Domino's Pizza, LLC, No. 06-4273, 2007 WL 2049120, at *1 (D.N.J. July 12, 2007) (dismissing complaint where it "is so confusing that Defendant is not given fair notice of what claims it faces"); Roberto's Fruit Mkt., Inc. v. Schaffer, 13 F. Supp. 2d 390, 394-96 (E.D.N.Y. 1998) (forcing defendants to select relevant material from "mass of verbiage" in prolix pleading containing vague and incomprehensible allegations would "fly in the face of the very purposes for which Rule 8 exists").

Here, at a sprawling 84 pages and 246 paragraphs, the Complaint fails to apprise Heartland of what it allegedly did wrong. The Complaint makes only a handful of allegations that relate to Heartland's conduct, which are so vague that they do not come close to satisfying the requirements of Rule 8. (See Compl. ¶¶ 193, 195, 197, 207.) These conclusory allegations, which the Court need not accept as true, merely allege that Heartland breached some duties and refer to hundreds of paragraphs and dozens of pages "above" to decipher what Heartland is actually alleged to have done wrong. Of course, when the reader looks "above," there are no references whatsoever to any conduct by Heartland, only the alleged conduct of "Defendants" as a group. Although Heartland is mentioned several times in the early paragraphs of the Complaint that provide factual background, the portions of the Complaint supposedly describing the wrongdoing do not mention Heartland at all – referring only to defendants other than Heartland or to "Defendants" collectively. (See, e.g., id. ¶¶ 39, 58, 69, 81, 92-94, 125, 153.) Accordingly, the Complaint fails completely to apprise Heartland of what role, if any, it supposedly played in the

12

alleged wrongdoing. Neither the Court nor Heartland has an obligation "to fish a gold coin from [this] bucket of mud," <u>Lockheed-Martin</u>, 328 F.3d at 378, even if there were a gold coin to be found (which here there is not).

    **B.**    **The Complaint Does Not Plead Any Claim With Particularity as Required by Rule 9(b).**

        Because the entire Complaint sounds in fraud, it must meet the heightened pleading standards of Rule 9(b). "Rule 9(b) extends to all averments of fraud or mistake, whatever may be the theory of legal duty – statutory, common law, tort, contractual, or fiduciary." <u>Frota v. Prudential-Bache Sec., Inc.</u>, 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986); <u>see also</u> <u>In re Exxon Mobil Corp. Sec. Litig.</u>, 500 F.3d 189, 197 (3d Cir. 2007) ("[U]nder our precedent, if a claim not otherwise requiring proof of scienter nonetheless sounds in fraud, then [Rule 9(b)'s] heightened pleading standard applies."); <u>Borsellino v. Goldman Sachs Group, Inc.</u>, 477 F.3d 502, 507 (7th Cir. 2007) ("A claim that 'sounds in fraud' – in other words, one that is premised upon a course of fraudulent conduct – can implicate Rule 9(b)'s heightened pleading requirements.").

        Each cause of action that is asserted against Heartland clearly rests on an "averment[] of fraud" (<u>see</u> Compl. ¶¶ 193, 197, 207), which requires C&A to plead the "circumstances constituting fraud" with particularity. See <u>Kirtley v. Wadekar</u>, No. 05-5383, 2006 WL 2482939, at *2-3 (D.N.J. Aug. 25, 2006) (applying Rule 9(b) to unjust enrichment claim that rested "on the theory that Defendants were unjustly enriched by their fraud"); <u>Pac. Elec. Wire & Cable Co. v. Set Top Int'l Inc.</u>, No. 03 Civ. 9623, 2005 WL 578916, at *15 (S.D.N.Y. Mar. 11, 2005) (breach of fiduciary duty claims that sound in fraud "must meet the heightened pleading standard of Rule 9(b)"); <u>Toner v. Allstate Ins. Co.</u>, 821 F. Supp. 276, 283-85 (D. Del. 1993) (applying Rule 9(b) to claim that defendant breached the implied covenant of good faith and fair dealing where claim sounded in fraud).

13

C&A has not met its obligations under Rule 9(b).  See Lum v. Bank of Am., 361 F.

3d 217, 223-24 (3d Cir. 2004) (Rule 9(b) requires plaintiffs to "inject[] precision and some

measure of substantiation into their allegations of fraud" "in order to place the defendants on notice

of the precise misconduct with which they are charged, and to safeguard defendants against

spurious charges of immoral and fraudulent behavior.").  As discussed above, C&A has not even

provided Heartland with notice of what it is alleged to have done wrong under Rule 8 (see supra pp.

11-12), and, a fortiori, has failed to plead supporting facts with particularity as required by Rule

9(b).

C.      **The Complaint Lumps Defendants Together in Violation of Both Rules 8 and
         9(b).**

Courts routinely dismiss complaints that lump defendants together for pleading

purposes, as the Complaint does here.  Such pleading runs afoul of Rule 8 because it does not

provide notice of the claims asserted against each defendant.  See Lane v. Capital Acquisitions &

Mgmt. Co., No. 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) (dismissing

complaint where it "fails to differentiate among the defendants, alleging instead violations by a

collective 'defendant'" because "the individual defendants cannot determine from the face of the

Complaint which acts or omissions the Plaintiffs seek to hold each of them liable") (citing

Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001)); Medina v. Bauer, No. 02 Civ.

8837, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) ("By lumping all the defendants together

and failing to distinguish their conduct, plaintiff's amended complaint fails to satisfy the

requirements of Rule 8.  Specifically, the allegations fail to give adequate notice to these

defendants as to what they did wrong."); In re Providian Fin. Corp. ERISA Litig., No. C 01-05027,

2002 WL 31785044, at *1 (N.D. Cal. Nov. 14, 2002) ("Here, plaintiffs have lumped the various

classes of defendants into an undifferentiated mass and alleged that all of them violated all of the

14

asserted fiduciary duties. The resulting cause of action is so general that it fails to put the various defendants on notice of the allegations against them.").

Complaints that lump defendants together also fail to satisfy the heightened pleading requirement set forth in Rule 9(b). See, e.g., Tredennick v. Bone, No. 07-0735, 2007 WL 4244652, at *5 (W.D. Pa. Nov. 29, 2007) (citing Silverstein v. Percudani, 422 F. Supp. 2d 468, 472-473 (M.D. Pa. 2006)); Bruhl v. PricewaterhouseCoopers Int'l, No. 03-23044, 2007 WL 997362, at *3 (S.D. Fla. Mar. 27, 2007); Gurfein v. Ameritrade, Inc., 411 F. Supp. 2d 416, 426-27 (S.D.N.Y. 2006); Christensen v. WMA Consumer Servs., Inc., No. Civ.A. 03-1545, 2003 WL 22174240, at *3 (E.D. La. Sept. 5, 2003); Donovan v. ABC-NACO Inc., No. 02 C 1951, 2002 WL 1553259, at *4-5 (N.D. Ill. July 15, 2002); Kennilworth Partners L.P. v. Cendant Corp., 59 F. Supp. 2d 417, 430 (D.N.J. 1999).

### D. Given Its Access to All the Relevant Facts, C&A Should Be Strictly Held to the Applicable Pleading Requirements.

The pleading requirements of Rules 8 and 9(b) should be applied with particular vigor here because all the information C&A would need to plead specific facts (if such specific facts existed) has been available to it for years. C&A has had ample time to investigate the issues underlying the Complaint and unlimited access to information relevant to its claims, including the results of internal investigations conducted by its own audit committee. (See Compl. ¶¶ 41-42, 95-101.) As C&A admits, since 2003, it has "incur[red] considerable expenses, including costs related to retaining independent counsel and outside auditors, as well as reviewing numerous documents and interviewing employees," in connection with the internal investigations. (See id. ¶ 101.) Thus, unlike the typical case by an "outsider," C&A has complete access to all the facts and yet it still fails to plead a proper complaint.

Where C&A has unlimited access to the facts on which the Complaint is based, there is simply no excuse for the pleading deficiencies that abound in the Complaint. See Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P., 906 A.2d 168, 211 (Del. Ch. 2006) ("The Litigation Trust has had far more access to information than the typical plaintiff, having access to voluminous documents during the bankruptcy proceedings, for more than a year before it filed its complaint. Thus, it was better positioned than most fraud plaintiffs to meet the standards of Rule 9(b)."), aff'd mem., 931 A.2d 438 (Del. 2007); see also Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir. 1996) (holding that in a case with extensive discovery the court will "thus look more closely at the factual allegations to see if they support the legal conclusions pled"); Vladimir v. Deloitte & Touche LLP, No. 95 Civ. 10319, 1997 WL 151330, at *2 (S.D.N.Y. Mar. 31, 1997) (recognizing that "defendant is entitled to a properly drafted complaint or dismissal thereof" where plaintiffs' counsel had access to defendant's work papers and was involved in related proceedings for years). C&A obviously knows the facts which – if they supported its claims – it presumably would have alleged.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY.

### A.    C&A Does Not Plead How Heartland Breached Any Fiduciary Duties.

It is impossible to discern from the Complaint any basis for C&A's breach of fiduciary duty claim against Heartland. In a single sentence in Count III, C&A summarily alleges that Heartland breached a fiduciary duty owed to C&A by "causing, permitting, enabling, acquiescing and aiding and abetting the fraudulent scheme detailed herein." (Compl. ¶ 193.) These conclusory, internally inconsistent assertions are not supported by any factual allegations describing how Heartland is alleged to have participated or assisted in the alleged wrongdoing. C&A also contends Heartland had a duty "not to take actions to benefit itself to the detriment of the

16

Company" (id.), but it pleads no facts suggesting that Heartland ever did so. This omission is hardly surprising, given Heartland's investment of over $300 million in the Company, which it lost when C&A went bankrupt.

### B.     C&A Does Not Sufficiently Allege That Heartland Owed Any Fiduciary Duties to C&A.

As a threshold matter, C&A fails to plead any facts establishing that Heartland even owed a fiduciary duty to C&A. C&A contends that Heartland owed a duty to C&A as its "controlling shareholder and by virtue of its designation of a majority of [C&A's] directors." (Id.) As a matter of law, absent majority shareholding (which Heartland did not have) or evidence of actual control (which C&A does not allege), a stockholder does not have a fiduciary duty to the corporation. See Ivanhoe Partners v. Newmont Mining Corp., 535 A.2d 1334, 1344 (Del. 1987); see also In re Sea-Land Corp. S'holders Litig., No. 8453, 1987 WL 11283, at *4-6 (Del. Ch. May 22, 1987) (dismissing fiduciary duty claim where "complaint admits that [corporate defendant] was not a majority (51%) stockholder" and plaintiffs admit that individual defendant "did not control the day-to-day affairs of [corporation]"); 12B William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 5811 (2000) ("There must be some evidence demonstrating control . . . since the presumption is against it." (footnotes omitted)).

Here, the Heartland defendants (collectively and independently) owned less than 50% of C&A's outstanding stock (except for a brief period of time in 2001, following Heartland's initial purchase). Thus, C&A can only state a claim against Heartland for breach of a fiduciary duty to C&A if it can plead specific facts to overcome the presumption that Heartland did not have control of the corporation. C&A's conclusory allegations concerning Heartland's stock ownership and right to nominate a majority of directors are insufficient to plead the actual control required to impose a fiduciary duty on a non-majority stockholder. See, e.g., Citron v. Steego Corp., No.

17

10171, 1988 WL 94738, *6-7 (Del. Ch. 1988) ("[I]t is the actual exercise of such control, not the simple potential for control, that creates the special duty."); In re Sea-Land, 1987 WL 11283, at *4-5 (dismissing "conclusory allegations concerning [39.5% shareholder's] stock control" as insufficient to bestow fiduciary status).

As the Delaware Supreme Court has made clear, "[t]he shorthand shibboleth of 'dominated and controlled directors' is insufficient." Aronson v. Lewis, 473 A.2d 805, 816 (Del. 1984), overruled in part on other grounds, Brehm v. Eisner, 746 A.2d 244 (Del. 2000). Indeed, "[d]irectors must be nominated and elected to the board in one fashion or another. The fact that a . . . large shareholder played some role in the nomination process should not, without additional evidence, automatically foreclose a director's potential independence." In re Western Nat'l Corp. S'holders Litig., No. 15927, 2000 WL 710192, at *15 (Del. Ch. May 22, 2000); see also In re Sea-Land, 1987 WL 11283, at *5 (even if stockholder "had caused its nominees to be elected to the . . . board . . . , that fact, without more, does not establish actual domination or control"). Similarly, "the mere fact that [directors] held high positions with [defendants], and were appointed to the . . . board by [defendants], cannot, standing alone, establish that they acted as agents, or acted under the control, of [defendants]." In re Global Crossing, Ltd. Sec. Litig., No. 02 Civ. 910, 2005 WL 1907005, at *3-4 (S.D.N.Y. Aug. 8, 2005).

Finally, although C&A also alleges that Heartland "controlled" C&A by virtue of the Services Agreement, those allegations are belied by the agreement itself. (See supra pp 6-8.)[9] For this and the foregoing reasons, C&A's fiduciary duty claim fails as a matter of law.

---

[9]  Moreover, to the extent C&A's breach of fiduciary duty claim is based on the Services Agreement, that claim is barred by the three-year statute of limitations for breach of fiduciary duty claims. That statute began to run as of the time the contract was entered into, here 2001. See, e.g., Kahn v. Seaboard, 625 A.2d 269, 270 (Del. Ch. 1993).

18

## III.  THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.

### A.  C&A Does Not Allege How Heartland Breached the Services Agreement.

C&A's breach of contract claim appears to be founded on the Services Agreement (see Compl. ¶ 206), which is governed by New York law (see Saunders Decl. Ex. D, ¶ 9(d)).  "To state a claim for breach of contract, New York law requires that a plaintiff allege:  (1) the existence of an agreement between the plaintiff and defendant; (2) due performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages resulting from the breach."  Texas Liquids Holdings, LLC v. Key Bank Nat'l Ass'n, No. 05 CV 5070, 2007 WL 950136, at *2 (S.D.N.Y. Mar. 27, 2007).

As an initial matter, C&A makes no attempt to plead which Heartland entities may be held liable for a breach of the Services Agreement, although three legally distinct entities are named in the Complaint (Heartland LP, Heartland LLC and Heartland Industrial).  Of these entities, Heartland LP is the only one alleged to have been a party to the Services Agreement.  (See Compl. ¶ 46.)  Thus, with respect to Heartland LLC and Heartland Industrial, C&A has failed to plead the first element of a breach of contract claim.

The Complaint also fails to allege how the Services Agreement was actually breached, thereby failing to satisfy a basic element of a breach of contract claim.  As a matter of law, the failure to identify the contractual provisions allegedly breached renders the claim deficient and subject to dismissal.  See Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490, 494-96 (S.D.N.Y. 2002), aff'd, 65 F. App'x 736 (2d Cir. 2003); Am. Nat'l Theater & Academy v. Am. Nat'l Theater Inc., No. 05 Civ. 4535, 2006 U.S. Dist. LEXIS 69420, at *10-11 (S.D.N.Y. Sept. 27, 2006).

19

**B.     C&A Cannot Impose Obligations on Heartland That Are Not Found in the Services Agreement.**

Rather than referring to any actual contractual provision, C&A is forced to resort to allege obligations that are not found in the Services Agreement.  This violates the basic rule of construction that "[i]f a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself."  Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999); see also Slamow v. Delcol, 571 N.Y.S.2d 335, 336 (App. Div. 1991) ("A court may not rewrite into a contract conditions the parties did not insert by adding or excising terms under the guise of construction."), aff'd, 594 N.E.2d 918 (N.Y. 1992).  Although for purposes of this motion a complaint's allegations are generally accepted as true, where the terms of a contract are inconsistent with those allegations, the terms of the contract prevail.  See Sobek v. Quattrochi, No. 03 Civ. 10219, 2004 WL 2809989, at *3 (S.D.N.Y. Dec. 8, 2004); Northgate Motors, Inc. v. Gen. Motors Corp., 111 F. Supp. 2d 1071, 1081 (E.D. Wis. 2000).

Here, C&A conjures up the following general allegations, each of which is absent from the Services Agreement and contradicted by its express terms:

- "Plaintiffs and Heartland L.P. entered into the Heartland Services Agreement thereby giving Heartland contractual control and domination over the Company's affairs" (Compl. ¶ 46);

- "Heartland . . . exercised supervision and oversight of every aspect of the Company's affairs" (id. ¶ 206); and

- "The Company reasonably relied upon Heartland to ensure that the Company's affairs were properly and lawfully conducted" (id.).

The Services Agreement states only that Heartland is to provide "advisory and consulting services in relation to the affairs and strategic direction of the Company" and certain ancillary services,

including those "reasonably requested by the Company."[10]  (Saunders Decl. Ex. D, ¶ 2).  Although

C&A's claims are based on allegations of fraudulent accounting, Heartland did not assume any

responsibility for accounting in the Services Agreement.  (See id.)  And nowhere does the Services

Agreement give Heartland any control over C&A's operations or accounting functions.

        Instead, as noted above, far from "exercis[ing] supervision and oversight of every

aspect of the Company's affairs" (Compl. ¶ 206), Heartland expressly disclaimed any

responsibility for the accuracy of C&A's information in the Services Agreement:

> The Company shall furnish or cause to be furnished to Heartland such information
> as Heartland reasonably believes appropriate to its advisory services hereunder and
> to the ownership by affiliates of Heartland of equity interests of the Company (all
> such information so furnished being the "Information").  The Company recognizes
> and confirms that Heartland (i) will use and rely primarily on the Information and
> on information available from generally recognized public sources in performing
> the services contemplated by this Agreement without having independently
> verified the same, (ii) does not assume responsibility for the accuracy or
> completeness of the Information and such other information and (iii) is entitled to
> rely upon the Information without independent verification.

(Saunders Decl. Ex. D, ¶ 6 (second emphasis added).)  As a result, to the extent there is a claim to

be had, it would be by Heartland against C&A for providing Heartland with inaccurate information

under the Services Agreement.

        Thus, on its face, the Services Agreement cannot possibly be read to provide for

Heartland to have run C&A and policed its "affairs" to ensure that C&A was acting "properly and

lawfully."  (Compl. ¶ 206.)  Because the allegations of a breach are inconsistent with the terms of

the Services Agreement, the breach of contract claim should be dismissed.  See Crane Co. v.

---

[10]  The Services Agreement also contains an integration clause: "This Agreement shall constitute
the entire agreement between the parties with respect to the subject matter hereof, and shall
supersede all previous oral and written (and all contemporaneous oral) negotiations,
commitments, agreements and understandings relating hereto."  (Saunders Decl. Ex. D, ¶ 9(c).)
Thus, C&A may not reach outside the bounds of the Services Agreement in search of a legal
obligation on the part of Heartland to undertake the duties alleged in the Complaint.

Coltec Indus., Inc., 171 F.3d 733, 737-39 (2d Cir. 1999) (affirming dismissal of breach of contract claims where obligations sought to be imposed by plaintiff were not supported by the unambiguous terms of the contract).

C.    **C&A Cannot Invoke the Implied Duty of Good Faith and Fair Dealing to Salvage Its Deficient Claim.**

In a further effort to expand Heartland's obligations beyond the bounds of the Services Agreement, C&A also attempts to fall back on the implied duty of good faith and fair dealing. However, in attempting to make Heartland the guarantor of C&A's financial information and responsible for ensuring that C&A's "affairs were properly and lawfully conducted" (Compl. ¶ 206), C&A tortures the implied duty of good faith and fair dealing far beyond recognition.

The purpose of the implied covenant of good faith and fair dealing is "to further an agreement by protecting a promisee against 'breach of the reasonable expectations and inferences otherwise derived from the agreement.'" Ari & Co. v. Regent Int'l Corp., 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003) (citation omitted). In view of this, "New York law is clear that the implied covenant cannot be used to create independent obligations beyond the contract." Id. at 523; see also Wolff, 210 F. Supp. 2d at 497 ("[T]he obligation of good faith does not create obligations that go beyond those intended and stated in the language of the contract."); Fitzgerald v. Hudson Nat'l Golf Club, 783 N.Y.S.2d 615, 616-17 (App. Div. 2004) (affirming dismissal of claim of breach of implied duty of good faith and fair dealing where "plaintiff was seeking to imply an obligation of the defendants which was inconsistent with the terms of the contract").

C&A may not wield the implied covenant of good faith and fair dealing to impose on Heartland – long after the fact – far-reaching and onerous obligations that are nowhere found in the Services Agreement. See Coty Inc. v. L'Oréal S.A., No. 07 CV 6206, 2008 WL 331360, at *5-6 (S.D.N.Y. Feb. 4, 2008). Because the Services Agreement simply does not support C&A's

contentions that Heartland was the guarantor of all of its actions and financial statements, the breach of contract claim must be dismissed.

## IV.    THE UNJUST ENRICHMENT CLAIM IS FORECLOSED BY THE EXISTENCE OF THE SERVICES AGREEMENT.

"'Unjust enrichment is defined as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."'" Schock v. Nash, 732 A.2d 217, 232 (Del. 1999) (citations omitted).  Under both Delaware and New York law, an unjust enrichment claim may not be maintained where there is a legally enforceable contract governing the relationship between the parties.  See Goldman v. Metro. Life Ins. Co., 841 N.E.2d 742, 746-47 (N.Y. 2005) ("The theory of unjust enrichment lies as a quasi-contract claim.  It is an obligation the law creates in the absence of any agreement."); Palese v. Delaware State Lottery Office, No. Civ. A. 1546-N, 2006 WL 1875915, at *5 (Del. Ch. June 29, 2006) ("Courts developed unjust enrichment, or quasi-contract, as a theory of recovery to remedy the absence of a formal contract.  A party cannot seek recovery under an unjust enrichment theory if a contract is the measure of the plaintiff's right."), aff'd mem., 913 A.2d 570 (Del. 2006); Metcap Sec. LLC v. Pearl Senior Care, Inc., No. Civ.A. 2129, 2007 WL 1498989, at *5 (Del. Ch. May 16, 2007) ("Of cardinal significance is whether a contract already governs the parties' relationship.  In short, if there is a contract between the complaining party and the party alleged to have been enriched unjustly, then the contract remains 'the measure of [the] plaintiff's right.'").

The only benefit Heartland is alleged to have received from C&A is the receipt of fees pursuant to the Services Agreement, which was entered into (and fully disclosed) before Heartland completed its acquisition of C&A securities. (See Compl. ¶¶ 31-32; Saunders Decl. Ex. B.) In light of the Services Agreement, the unjust enrichment claim is defective as a matter of law.

23

See Rossdeutscher v. Viacom, Inc., 768 A.2d 8, 23-24 (Del. 2001) (dismissing unjust enrichment claim under New York law where any recovery would be based on what plaintiff should have received under contract had there not been alleged artificial inflation of stock); In re Crown-Simplimatic Inc., 299 B.R. 319, 327 (Bankr. D. Del. 2003) (dismissing unjust enrichment claim under Delaware law where contract "adequately addresses each party's rights and duties"); Crowley v. VisionMaker, LLC, 512 F. Supp. 2d 144, 153-54 (S.D.N.Y. 2007) (dismissing unjust enrichment claim where plaintiff also sought to recover under provisions of agreement).

Thus, the unjust enrichment claim must be dismissed.

## V.    ANY CLAIMS THAT ACCRUED PRIOR TO MAY 17, 2002 ARE BARRED BY THE STATUTE OF LIMITATIONS.

The Complaint contains allegations concerning events as far back as 2001.  (See, e.g., Compl. ¶¶ 36, 39, 45, 47, 51-55, 69.)  In Delaware, the period under the statute of limitations for the claims asserted by C&A against Heartland is three years from accrual.  See Del. Code Ann. tit. 10, § 8106 (2008).  As a result, to the extent that any of the causes of action are premised on claims that accrued more than three years before C&A filed for bankruptcy (i.e., prior to May 17, 2002), they should be dismissed.

## VI.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiffs have had an unusually ample opportunity to plead their Complaint.  Not only have they had years of virtually unfettered access to all of the documents and witnesses relevant to the allegations in the Complaint, but plaintiffs have also enjoyed the expert assistance of numerous law firms and accountants in connection with the wide-ranging internal investigations.  Moreover, despite previewing Heartland's arguments in its motion to dismiss the original complaint, plaintiffs added only a smattering of amendments to the Complaint that do

nothing to remedy the numerous defects pointed out in the briefing.  Given the extensive time and

information available to plaintiffs, a third bite at the proverbial apple should not be permitted.

## CONCLUSION

For all the foregoing reasons, Heartland respectfully requests that all claims alleged

against it in the Complaint be dismissed with prejudice.

Dated: April 28, 2008

Jonathan J. Lerner
Lea Haber Kuck
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Tel:  (212) 735-3000
Fax:  (212) 735-2000

/s/ Robert S. Saunders
Robert S. Saunders (Bar I.D. No. 3027)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
Tel: (302) 651-3000
Fax:  (302) 651-3001

Attorneys for Heartland Industrial Partners,
L.P., Heartland Industrial Associates, L.L.C.
and Heartland Industrial Group, L.L.C.