UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COLLINS & AIKMAN CORPORATION and COLLINS & AIKMAN PRODUCTS CO., as Debtors in Possession, | ) | |
| Plaintiffs, | ) | Civil Action No. 07-265-SLR/LPS |
| vs. | ) | |
| DAVID A. STOCKMAN, et al., | ) | |
| Defendants. | ) | |

# OMNIBUS MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO AUDITOR DEFENDANTS' MOTIONS TO DISMISS


ROSENTHAL, MONHAIT & GODDESS, P.A.
Carmella P. Keener (#2810)
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899
302/656-4433
ckeener@rmgglaw.com
*Attorneys for Plaintiffs*

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
Samuel H. Rudman
David A. Rosenfeld
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
*Special Counsel for Collins & Aikman Corporation, et al.*


Date filed: August 15, 2008

## TABLE OF CONTENTS

**Page**


I. NATURE AND STAGE OF THE PROCEEDINGS ........ 1

II. SUMMARY OF THE ARGUMENT ........ 2

III. STATEMENT OF FACTS ........ 4

A. Improper Accounting Practices Lead to Collins & Aikman's Demise ........ 4

B. Auditor Defendants' Role in the Company's Collapse ........ 6

IV. ARGUMENT ........ 8

A. Standard on a Motion to Dismiss ........ 8

B. Choice-of-Law Analysis is Unnecessary ........ 9

C. The FAC Adequately Pleads a Claim for Professional Negligence/Malpractice Against Auditor Defendants ........ 10

D. The FAC Adequately Pleads a Claim for Breach of Contract Against Auditor Defendants ........ 16

E. The FAC Adequately Pleads a Common Law Fraud Cause of Action Against Auditor Defendants ........ 20

1. Common Law Fraud Pleading Requirements ........ 20

2. The FAC Adequately Alleges KPMG and PWC Made False Representations ........ 21

3. Plaintiff Adequately Alleges Auditor Defendants' Scienter ........ 24

a. The FAC sufficiently alleges Auditor Defendants' motive and opportunity to commit fraud ........ 26

b. The FAC sufficiently alleges circumstantial evidence of Auditor Defendants' recklessness ........ 27

c. The FAC adequately alleges Auditor Defendants' conscious misbehavior ........ 30

4. Plaintiff Adequately Alleges Reliance on the Auditor Defendants' False Representations ........ 31

F. The FAC Adequately Alleges a Claim for Aiding and Abetting Breach of Fiduciary Duty Against Auditor Defendants ........ 31

**Page**


G. The FAC Properly Alleges Causation and Damages ....35

1. The FAC Sufficiently Alleges Facts to Support Its Claim that Auditor Defendants Proximately Caused Damage to Collins & Aikman ....35

2. The FAC Alleges More Than One Legally Cognizable Injury ....39

H. The *In Pari Delicto* Defense Does Not Bar Plaintiff's Claims ....44

1. The Conduct of Collins & Aikman Management Cannot be Imputed to the Company ....45

2. Auditor Defendants Cannot Rely on the *In Pari Delicto* Defense to Avoid Liability Because They Are Not Innocent Third Parties ....48

3. Auditor Defendants' *In Pari Delicto* Defense is an Affirmative Defense That Cannot be Considered on a Motion to Dismiss ....50

I. Plaintiff's Claims Against PwC Are Timely ....52

1. Plaintiff's Claims Were Brought Within Delaware's Three Year Limitations Period ....54

J. The Litigation Trust Has Standing to Bring This Suit Against PwC ....57

V. CONCLUSION ....60

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Allard v. Arthur Andersen & Co. (USA)*,
924 F. Supp. 488 (S.D.N.Y. 1996) ....................10, 41, 43

*Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*,
No. 03 Civ. 3748 (DAB), 2006 U.S. Dist. LEXIS 4270
(S.D.N.Y. Feb. 2, 2006) ....................32

*Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*,
961 F. Supp. 1078 (W.D. Mich. 1997) ....................55

*Amico v. New Castle County*,
101 F.R.D. 472 (D. Del. 1984),
*aff'd. without op.*, 770 F.2d 1066 (3d Cir. 1985) ....................54

*Anderson v. Airco, Inc.*,
No. 02C-12-091 HdR, 2004 Del. Super. LEXIS 210
(Del. Super. Ct. June 30, 2004) ....................35

*AstroPower Liquidating Trust v. KPMG LLP*,
No. 06-469-JJF, 2007 U.S. Dist. LEXIS 38222
(D. Del. May 25, 2007) .................... *passim*

*Automatic Logistics Productivity Improvement Sys., LLC v. UHY Advisors, Inc.*,
No. 05-73851, 2006 U.S. Dist. LEXIS 62325 (E.D. Mich. Aug. 17, 2006), *aff'd.* No. 06-2387, 2007 U.S. App. LEXIS 19107 (6th Cir. Aug. 8, 2007) ....................15

*Ballard Med. Prods. v. Concord Labs., Inc.*,
700 F. Supp. 796 (D. Del. 1988) ....................53

*Bell Atl. Corp. v. Twombly*,
___ U.S. ___, 127 S. Ct. 1955 (2007) ....................9

*Bintliff-Ritchie v. Am. Reinsurance Co.*,
No. 07-1527, 2008 U.S. App. LEXIS 14788
(3d Cir. July 11, 2008) ....................51

*Brossman v. FDIC*,
510 A.2d 471 (Del. 1986) ....................53

*Buckley v. Deloitte & Touche USA LLP*,
No. 06 Civ. 3291 (SHS), 2007 U.S. Dist. LEXIS 37107
(S.D.N.Y. May 22, 2007) .................... *passim*

**Page**

*Buckley v. O'Hanlon*,
No. 04-955 (GMS), 2007 U.S. Dist. LEXIS 22211
(D. Del. Mar. 28, 2007) ........ *passim*

*Busch Oil Co. v. Amoco Oil Co.*,
No. 5:94-CV-175, 1996 U.S Dist. LEXIS 4705
(W.D. Mich. Feb. 20, 1996) ........ 56

*Cerullo v. Harper Collins Publishers, Inc.*,
No. 01C-03-21-CHT, 2002 WL 243387
(Del. Super. Ct. Feb. 19, 2002) ........ 53

*Coleman v. PriceWaterhouseCoopers, LLC*,
854 A.2d 838 (Del. 2004) ........ 56

*Cortec Ind. US, Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) ........ 60

*Crowley v. Chait*,
No. 85-2441 (HAA), 2006 U.S. Dist. LEXIS 8894
(D.N.J. Mar. 7, 2006) ........ 40

*D.E. & J L.P. v. Conaway*,
284 F. Supp. 2d 719 (E.D. Mich. 2003),
*aff'd.*, 133 F. App'x 994 (6th Cir. 2005) ........ 25

*D'Angelo v. Petroleos Mexicanos*,
398 F. Supp. 72 (D. Del. 1975) ........ 53

*David B. Lilly Co. v. Fisher*,
18 F.3d 1112 (3d Cir. 1994) ........ 53

*Devex Corp. v. Gen. Motors Corp.*,
579 F. Supp. 690 (D. Del. 1984),
*aff'd without op.*, 746 F.2d 1466 (3d Cir. 1984) ........ 55

*Di Ossi v. Maroney*,
548 A.2d 1361 (Del. 1988) ........ 38

*Echelon Homes, L.L.C. v. Carter Lumber Co.*,
683 N.W. 2d 171 (Mich. Ct. App. 2004),
*rev'd in part on other grounds*, 694 N.W. 2d 544 (2005) ........ 32

*Ewing v. Beck*,
520 A.2d 653 (Del. 1987) ........ 54

**Page**

*Fewless v. Bd. of Educ.*,
208 F. Supp. 2d 806 (W.D. Mich. 2002) ....................51

*Fund of Funds, Ltd. v. Arthur Andersen & Co.*,
545 F. Supp. 1314 (S.D.N.Y. 1982)....................19

*Glazier v. Lee*,
429 N.W.2d 857 (Mich. Ct. App. 1988) ....................51

*Global Tech., Inc. v. Moto Diesel Mexicana*,
No. 05-CV-70069, 2007 U.S. Dist. LEXIS 37090
(E.D. Mich. May 22, 2007)....................39

*Green Constr. Co. v. Williams Form Eng'g Corp.*,
506 F. Supp. 173 (W.D. Mich. 1980) ....................20

*Green Leaf Nursery, Inc. v. KMART Corp.*,
485 F. Supp. 2d 815 (E.D. Mich. 2007)....................16

*Greenstone v. Cambex Corp.*,
975 F.2d 22 (1st Cir. 1992)....................25

*Gressley v. Paragon of Mich.*,
No. 1 93 C 885, 1994 U.S. Dist. LEXIS 15616
(W.D. Mich. Sept. 26, 1994)....................39

*Hammersmith v. TIG Ins. Co.*,
480 F.3d 220 (3d Cir. 2007)....................9

*Hannover Corp. of Am. v. Beckner*,
211 B.R. 849 (M.D. La. 1997) ....................41

*Hansen v. Umtech Industrieservice Und Spedition*,
95-516 MMS, 1996 U.S. Dist. LEXIS 10949
(D. Del. July 3, 1996)....................35, 37

*Hayes-Albion v. Kuberski*,
364 N.W. 2d 609 (Mich. 1984)....................32

*Hedrick v. Webb*,
No. 01C-06-031-RFS, 2004 Del. Super. LEXIS 379
(Del. Super. Ct. Nov. 22, 2004) ....................38

*Household Int'l, Inc. v. Westchester Fire Ins. Co.*,
286 F. Supp. 2d 369 (D. Del. 2003),
*aff'd.*, 167 F. App'x 895 (3d Cir. 2006)....................20, 21, 26

**Page**

*Iacono v. Barici*,
No. 06C-02-021-RFS, 2006 Del. Super. LEXIS 531
(Del. Super. Ct. Dec. 29, 2006)....................11

*In re Am. Bus. Fin. Servs.*,
375 B.R. 112 (Bankr. D. Del. 2007)....................34

*In re Amcast Indus. Corp.*,
365 B.R. 91 (Bankr. S.D. Ohio 2007)....................40

*In re Brown Sch.*,
368 B.R. 394 (Bankr. D. Del. 2007)....................21, 32, 43

*In re Brown Sch.*,
386 B.R. 37 (Bankr. D. Del. 2008)....................21, 40, 44

*In re CBI Holding Co.*,
529 F.3d 432 (2d Cir. 2008)....................48

*In re Circle Y*,
354 B.R. 349 (Bankr. D. Del. 2006)....................32

*In re Citx Corp.*,
448 F.3d 672 (3d Cir. 2006)....................42

*In re Combustion Eng'g, Inc.*,
391 F.3d 190 (3d Cir. 2004)....................60

*In re CVEO Corp.*,
01-0223 (MFW), 2004 Bankr. LEXIS 2123
(Bankr. D. Del. Dec. 15, 2004)....................58

*In re Exide Techs., Inc.*,
299 B.R. 732 (Bankr. D. Del. 2003)....................52

*In re Express Scripts, Inc.*,
No. 1672, 2007 U.S. Dist. LEXIS 44722
(E.D. Mo. June 20, 2007)....................19

*In re Federal-Mogul Global Inc.*,
385 B.R. 560 (Bankr. D. Del. 2008)....................60

*In re Fruehauf Trailer Corp.*,
250 B.R. 168 (D. Del. 2000)....................10

**Page**

*In re Genesis Health Ventures, Inc.*,
355 B.R. 438 (Bankr. D. Del. 2006) ....24, 27

*In re GlenFed, Inc. Sec. Litig.*,
42 F.3d 1541 (9th Cir. 1994) ....25

*In re Global Serv. Group LLC*,
316 B.R. 451 (Bankr. S.D.N.Y. 2004) ....40

*In re Gouiran Holdings*,
165 B.R. 104 (E.D.N.Y. 1994) ....36, 37, 38, 41

*In re Greater Se. Cmty. Hosp. Corp.*,
353 B.R. 324 (Bankr. D.D.C. 2006) ....40

*In re Greater Se. Cmty. Hosp. Corp.*,
333 B.R. 506 (Bankr. D.D.C. 2005) ....59

*In re Hayes Lemmerz Int'l, Inc. Equity Sec. Litig.*,
271 F. Supp. 2d 1007 (E.D. Mich. 2003) ....14

*In re HealthSouth Corp. S'holders Litig.*,
845 A.2d 1096 (Del. Ch. 2003),
*aff'd.*, 847 A.2d 1121 (Del. 2004) ....45, 48

*In re Ikon Office Solutions, Inc.*,
66 F. Supp. 2d 622 (E.D. Pa. 1999) ....28, 30

*In re IT Group, Inc.*,
361 B.R. 417 (Bankr. D. Del. 2007) ....16

*In re Jack Greenberg, Inc.*,
212 B.R. 76 (Bankr. E.D. Pa. 1997) ....47, 49

*In re Kaiser Aluminum Corp.*,
343 B.R. 88 (D. Del. 2006) ....60

*In re Leslie Fay Cos. Sec. Litig.*,
871 F. Supp. 686 (S.D.N.Y. 1995) ....28

*In re MicroStrategy Inc. Sec. Litig.*,
115 F. Supp. 2d 620 (E.D. Va. 2000) ....29

*In re Oakwood Homes Corp.*,
340 B.R. 510 (Bankr. D. Del. 2006) ....19, 40, 50

**Page**

*In re Parmalat Sec. Litig.*,
383 F. Supp. 2d 587 (S.D.N.Y. 2005)....................43

*In re Parmalat Sec. Litig.*,
501 F. Supp. 2d 560, 578 (S.D.N.Y. 2007)....................41

*In re Personal & Bus. Ins. Agency*,
334 F.3d 239 (3d Cir. 2003)....................49

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
396 F. Supp. 2d 1178 (D. Colo. 2004)....................25, 29

*In re Reliance Sec. Litig.*,
91 F. Supp. 2d 706 (D. Del. 2000)....................27, 29

*In re Rent-Way Sec. Litig.*,
209 F. Supp. 2d 493 (W.D. Pa. 2002)....................29

*In re Scott Acquisition Corp.*,
344 B.R. 283 (Bankr. D. Del. 2006)....................34

*In re Shoe-Town, Inc. Stockholders Litig.*,
No. 9483, 1990 Del. Ch. LEXIS 14
(Del. Ch. Feb. 12, 1990)....................33

*In re Student Fin. Corp.*,
No. 02-11620(DDS), 2006 U.S. Dist. LEXIS 56759
(D. Del. Aug. 10; 2006)....................44

*In re Suprema Specialties, Inc. Sec. Litig.*,
438 F.3d 256 (3d Cir. 2006)....................23, 27, 28

*In re Sw. Supermarkets, LLC*,
325 B.R. 417 (Bankr. D. Ariz. 2005)....................43

*In re Sweetwater*,
884 F.2d 1323 (10th Cir. 1989)....................59

*In re Teleglobe Commcn's Corp.*,
493 F.3d 345 (3d Cir. 2007)....................9

*In re Total Containment, Inc.*,
335 B.R. 589 (Bankr. E.D. Pa. 2005)....................11, 21, 45, 50

**Page**

*In re Winstar Commc'ns*,
No. 01 CV 3014 (GBD), 2006 U.S. Dist. LEXIS 7618
(S.D.N.Y. Feb. 27, 2006) ....28

*Integrated Solutions v. Serv. Support Specialties*,
124 F.3d 487 (3d Cir. 1997)....58, 59, 60

*Isaacson, Stolper & Co. v. Artisan's Sav. Bank*,
330 A.2d 130 (Del. 1974) ....56

*Island Farm, Inc. v. Master Sidlow & Assocs., P.A.*,
No. 06C-03-206 (PLA), 2007 Del. Super. LEXIS 276
(Del. Super. Ct. Sept. 20, 2007)....56

*Johnson v. Geico Cas. Co.*,
516 F. Supp. 2d 351 (D. Del. 2007)....20

*Khanna v. McMinn*,
No. 20545-NC, 2006 Del. Ch. LEXIS 86
(Del. Ch. May 9, 2006) ....33

*Kirkland v. E.F. Hutton & Co.*,
564 F. Supp. 427 (E.D. Mich. 1983)....51

*Kost v. Kozakiewicz*,
1 F.3d 176 (3d. Cir. 1993)....8, 17

*Kozin v. Dunn*,
No. 04-852 (DRD), 2005 U.S. Dist. LEXIS 18156
(D.N.J. Aug. 15, 2005)....25

*Langdon v. Google, Inc.*,
474 F. Supp. 2d 622 (D. Del. 2007)....17

*Levine v. Metal Recovery Techs, Inc.*,
182 F.R.D. 102 (D. Del. 1998) ....26, 27

*Levy v. Martin*,
620 N.W. 2d 292 (Mich. 2001)....55

*Marion v. TDI, Inc.*,
No. 02-7032, 2004 U.S. Dist. LEXIS 9754
(E.D. Pa. May 27, 2004) ....49

*MCA Fin. Corp. v. Thorton*,
687 N.W. 2d 850 (Mich. Ct. App. 2004) ....43, 51

**Page**

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
854 A.2d 121 (Del. Ch. 2004)....................24

*Metro. Mortgage & Sec. Co. v. PricewaterhouseCoopers, LLP*,
No. CV-05-290-FVS, 2005 U.S. Dist. LEXIS 39851
(E.D. Wash. Dec. 21, 2005)....................37

*NCP Litig. Trust v. KPMG LLP*,
901 A.2d 871 (N.J. 2006)....................47, 48, 49, 50

*Norman v. Elkin*,
No. 06-005-JJF, 2007 U.S. Dist. LEXIS 72725
(D. Del. Sept. 26, 2007)....................52

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
267 F.3d 340 (3d Cir. 2001)....................40, 41, 44, 45

*Orzel v. Scott Drug Co.*,
537 N.W.2d 208 (Mich. 1995)....................51

*PG&E Co. v. Cal. ex rel. Cal. Dep't of Toxic Substances Control*,
350 F.3d 932 (9th Cir. 2003)....................60

*Pilot Indus., Inc. v. Grant Thornton, LLP*,
No. 258689, 2006 WL 2033996
(Mich. Ct. App. July 20, 2006)....................15

*Plan Comm. v. PricewaterhouseCoopers, LLP*,
335 B.R. 234 (D.D.C. 2005)....................15

*Ploog v. HomeSide Lending, Inc.*,
209 F. Supp. 2d 863 (N.D. Ill. 2002)....................19

*Precision, Inc. v. Kenco/Williams, Inc.*,
66 F. App'x. 1 (6th Cir. 2003)....................10

*Rabkin v. Philip A. Hunt Chem. Corp.*,
No. 7547, 1987 Del. Ch. LEXIS 522
(Del. Ch. Dec. 17, 1987)....................38

*Rapoport v. Litig. Trust of MDIP, Inc.*,
No. 1035-N, 2005 Del. Ch. LEXIS 180
(Del. Ch. Nov. 23, 2005)....................32

*Riley v. Ameritech Corp.*,
147 F. Supp. 2d 762 (E.D. Mich. 2001)....................19

**Page**

*Rollins Envtl. Servs., Inc. v. WSMW Indus., Inc.*,
No. 244 CIV.A.1977, 1979 WL 193328
(Del. Super. Ct. Jan. 24, 1979)....................53

*Royal Indem. Co. v. Pepper Hamilton LLP*,
479 F. Supp. 2d 419 (D. Del. 2007)....................33, 56

*Ryan v. Gifford*,
918 A.2d 341 (Del. Ch. 2007)....................54

*Rymal v. Baergen*,
686 N.W. 2d 241 (Mich. Ct. App. 2004)....................15

*Scalici v. Bank One, NA*,
No. 254632, 2005 WL 2291732
(Mich. Ct. App. Sept. 20, 2005)....................51

*Scheuer v. Rhodes*,
416 U.S. 232 (1974)....................9

*Scholes v. Lehmann*,
56 F.3d 750 (7th Cir. 1995)....................31, 49

*Sec. Investor Prot. Corp. v. R.D. Kushnir & Co.*,
274 B.R. 768 (Bankr. N.D. Ill. 2002)....................15

*Semerenko v. Cendant Corp.*,
223 F.3d 165 (3d Cir. 2000)....................8, 9, 43

*Shamrock Holdings v. Arenson*,
456 F. Supp. 2d 599 (D. Del. 2006)....................34

*Sheldon Co. Profit Sharing Plan & Trust v. Smith*,
858 F. Supp. 663 (W.D. Mich. 1994)....................20

*Sherman Indus., Inc. v. Goldhammer*,
683 F. Supp. 502 (E.D. Pa. 1988)....................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
___ U.S. ____, 127 S. Ct. 2499 (2007)....................24, 25

*Thomas v. St. Vincent & Sarah Fisher Ctr.*,
No. 03-73002, 2006 U.S. Dist. LEXIS 58556
(E.D. Mich. Aug. 21, 2006)....................38

**Page**


*Transnation Title Ins. Co. v. Livingston*,
No. 243509, 2004 WL 203075
(Mich. Ct. App. Feb. 3, 2004)....................51

*TruePosition, Inc. v. Andrew Corp.*,
507 F. Supp. 2d 447 (D. Del. 2007)....................21

*VLIW Tech., L.L.C. v. Hewlett-Packard Co.*,
840 A.2d 606 (Del. 2003)....................16

*Williams v. Stone*,
109 F.3d 890 (3d Cir. 1997)....................9


**STATUTES, RULES AND REGULATIONS**


10 Del. Code
§8106....................54
§8121....................52, 53

11 U.S.C.
§108(a)....................52, 55
§1123(a)....................58
§1123(b)(3)(B)....................58

17 C.F.R.
§210.10 01(d)....................12

American Institute of Certified Public Accountants
AU §150.02....................15
AU §316.05....................11
AU §411.02....................15

Bankruptcy Code
¶5.02 (2004)....................43
Section 541(c)(1)....................59, 60
Section 1123(a)(5)(B)....................60

Federal Rule of Civil Procedure
8(d)(2) & (3)....................34
12(b)(6)....................*passim*
Rule 9....................21
Rule 9(b)....................*passim*
Rule 10b-5....................14, 25
Rule 56....................2

**Page**

Generally Accepted Accounting Standards
AU §326 ....................................................................................................13

Mich. Comp. Laws
§600.5838 ....................................................................................................55

**SECONDARY AUTHORITIES**

Denise M. Orlinsky,
*An Accountant's Liability to Third Parties: Bily v. Arthur Young & Co.*,
43 DePaul L. Rev. 859, 869 ....................................................................................................11

# I. NATURE AND STAGE OF THE PROCEEDINGS

On May 16, 2007 Collins & Aikman Corporation and Collins & Aikman Products Co. (collectively, "Collins & Aikman" or the "Company") filed a Complaint against certain of its former officers and directors, its former controlling shareholder, and its former outside auditors (collectively, "Defendants"). [DI 1]. On or about September 14, 2007, Defendants moved to dismiss. [DI 23, 25, 28, 31, 33, 36, 37, 42, 46, 48, 50, 55]

On January 28, 2008, Plaintiff Collins & Aikman Litigation Trust[1] ("Litigation Trust" or "Plaintiff") filed a First Amended Complaint ("FAC") [DI 90] against Defendants. Defendants moved to dismiss the FAC on April 28, 2008 [DI 97, 99, 101, 104, 106, 107, 110, 115, 118, 120, 124, 128, 131]. In response, Plaintiff filed an Omnibus Memorandum of Law in Support of Plaintiff's Opposition to Defendants' (Other than Auditor Defendants) Motions to Dismiss ("Omnibus Memorandum") [DI 139] on July 28, 2008. With permission from the Court, Plaintiff respectfully submits this memorandum in opposition to KPMG LLP's ("KPMG") and PricewaterhouseCoopers LLP's ("PwC") (collectively, "Auditor Defendants") Motions to Dismiss.

While Auditor Defendants played a substantial role in Collins & Aikman's ultimate collapse, they now attempt to absolve themselves from liability for their own negligence, breaches of contract and misconduct. Rather than accepting responsibility for their conduct, Auditor Defendants shift blame on Collins & Aikman's officers and directors. The grounds for Auditor Defendants' motions to dismiss, however, are baseless. Conveniently forgetting that they have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), among

---

1 Please take notice that Collins & Aikman Litigation Trust, as successor to Collins & Aikman, is now Plaintiff.

other things, Auditor Defendants inappropriately apply the standards for summary judgment under Rule 56 and rely on a series of affirmative defenses that are not appropriate at this juncture. As discussed in detail throughout this memorandum, Plaintiff has sufficiently alleged claims for negligence, breach of contract, common law fraud and aiding and abetting breach of fiduciary duty against Auditor Defendants. Accordingly, Auditor Defendants' motions to dismiss pursuant to Rule 12(b)(6) should be denied.

## II. SUMMARY OF THE ARGUMENT

1. A choice-of-law analysis is unnecessary because there is no relevant conflict under either Delaware or Michigan law on any of the claims at issue.

2. The FAC sufficiently pleads a professional negligence/malpractice claim against Auditor Defendants. Auditor Defendants had a duty to act with reasonable care and perform their services pursuant to professional standards. Auditor Defendants breached these duties by, *inter alia*: (1) issuing unqualified and false audit opinions on Collins & Aikman's financial statements; (2) failing to properly audit and review the Company's financial statements in accordance with Generally Accepted Accounting Principles ("GAAP") and Generally Accepted Auditing Standards ("GAAS"); (3) failing to obtain sufficient evidence to afford a reasonable basis for their audit opinions; (4) failing to report accounting irregularities, fraud and lack of internal controls; and (5) ignoring numerous red flags.

3. The FAC sufficiently pleads a breach of contract claim against Auditor Defendants. Auditor Defendants breached their contractual obligations by failing to properly perform their audits and other services according to their service agreements and failing to report fraud and deficiencies in Collins & Aikman's internal controls to the Company's audit committee or Board of Directors.

4. The FAC sufficiently pleads a common law fraud claim against Auditor Defendants and meets the particularity standard of Rule 9(b) in alleging that: (1) Auditor Defendants made false representations; (2) Auditor Defendants acted with scienter; and (3) Collins & Aikman relied upon the false representations.

5. The FAC sufficiently pleads a claim for aiding and abetting breach of fiduciary duty against Auditor Defendants. Auditor Defendants knowingly assisted certain Collins & Aikman officers in breaching their fiduciary duties by failing to disclose the officers' fraudulent conduct.

6. Plaintiff adequately pleads causation and a cognizable theory of damages. Plaintiff alleges facts to support its claim that Auditor Defendants' negligence, breach of contract, fraud and aiding and abetting breach of fiduciary duty caused damage to Collins & Aikman. The FAC also alleges numerous injuries to Collins & Aikman other than those based on deepening insolvency. Moreover, deepening insolvency has been recognized as a theory of damages under Delaware and Michigan law.

7. Despite Auditor Defendants' assertion to the contrary, the *in pari delicto* doctrine does not bar Plaintiff's claims because: (1) the conduct of Collins & Aikman's officers and directors cannot be imputed to the Company since their acts were adverse to, and not for the benefit of, Collins & Aikman; (2) Auditor Defendants may not use *in pari delicto* as a means to shield themselves from liability because they are not innocent third parties; and (3) as an affirmative defense, *in pari delicto* is not applicable at this stage because it requires a fact-intensive analysis that is not appropriate in the context of a Rule 12(b)(6) motion to dismiss.

8. The statute of limitations does not bar Plaintiff's claims against PwC. The statute of limitations did not begin to run until the termination of PwC's services in June 2003 and is tolled by the "discovery rule."

9. The Litigation Trust has standing to bring this suit against PwC because it is not a third party, but rather stands in the place of debtor's estate in order to bring causes of action on behalf of Collins & Aikman's creditors that are the owners of the Litigation Trust.

## III. STATEMENT OF FACTS

### A. Improper Accounting Practices Lead to Collins & Aikman's Demise

Collins & Aikman designed, manufactured and supplied automotive interior components.[2] ¶¶6, 35.[3] The Company sold its products to automotive original equipment manufacturers ("OEMs") such as GM, Ford, Chrysler and others. ¶35. Starting in 2001, certain adverse business conditions, including increasing pressure from OEMs to lower prices paid to suppliers like the Company and a rise in the price of raw materials, had a debilitating effect on Collins & Aikman's profit margins and the Company's financial results. ¶¶37-38. In order to conceal the Company's true financial condition, from 2001 through May 2005, Defendants engaged in numerous accounting schemes that inflated Collins & Aikman's reported earnings. ¶¶38-39. In doing so, Defendants acted in their own self-interests to receive compensation and salvage their reputations. ¶¶39-40, 70, 94.

While Collins & Aikman was experiencing severe financial problems, Defendants created the illusion of success by issuing a series of false and misleading statements about

---

[2] The Statement of Facts in Plaintiff's July 28, 2008 Omnibus Memorandum is incorporated by reference herein. This memorandum responds only to the motions to dismiss filed by Auditor Defendants.

[3] "¶__" herein references paragraphs in the FAC, filed on January 28, 2008.

the Company's financial results, its operating condition and future prospects. Most significantly, with the help of Auditor Defendants, Collins & Aikman's officers and directors:

- Engaged in a series of fraudulent "round-trip" transactions which were designed to improperly increase Collins & Aikman's reported income and artificially inflate its reported financial results (¶¶53-57, 114, 116-121);
- Improperly recognized rebates from Collins & Aikman's suppliers and capital equipment vendors before the rebates were actually earned by the Company (¶¶58-69, 114, 125-126);
- Engaged in a scheme to defraud General Electric Capital Corporation ("GECC") by improperly including tens of millions of dollars of bogus receivables in Collins & Aikman's borrowing base in order to fraudulently reduce the amount of money owed to GECC from $21.8 million to $11.8 million (¶¶74-79);
- Failed to timely record an impairment in the value of Collins & Aikman's long-lived assets and goodwill associated with its U.S. and Mexico Plastics and Global Fabric divisions (¶¶114, 130-132);
- Overstated Collins & Aikman's deferred tax assets (¶¶114, 134-137);
- Improperly accounted for related party transactions (¶¶114, 138-140); and
- Failed to provide appropriate disclosure about the Company's liquidity issues (¶¶114, 141-146).

At the same time, even though Collins & Aikman was rapidly losing liquidity, in August 2004, it sold approximately $415 million in 12.875% Senior Subordinated Notes due 2012 (the "August Senior Note Offering") and continued to borrow money from various creditors, including Credit Suisse First Boston Corporation ("Credit Suisse"). ¶¶71, 87, 93. This caused the Company to incur substantial debt that Defendants knew it could not repay. ¶¶71, 93. Indeed, while Collins & Aikman's liquidity deteriorated, the Company's net debt nearly doubled, rising from $884 million at December 30, 2000 to approximately $1.6 billion at December 31, 2004. ¶143.

In August 2003, the Company's audit committee ("Audit Committee") conducted an investigation into certain business transactions between Collins & Aikman and entities controlled by several members of the Board of Directors. ¶96. The 2003 internal investigation revealed that documentation regarding certain transactions was incomplete and the disclosures in the Company's financial statements were inadequate. ¶97. However, the accounting fraud continued and in March 2005, the Audit Committee conducted another internal investigation. ¶42. The 2005 investigation focused on the Company's accounting for rebates from 2001 to 2005, the Company's invoicing practices regarding GECC, and its financial forecasts for 2005. ¶99. Despite Collins & Aikman's clean audits and reviews issued by Auditor Defendants, the Audit Committee concluded that between 2001 and 2005, several Collins & Aikman officers and directors engaged in misconduct and, as a result, many supplier rebates were accounted for improperly, thereby misstating the Company's financials. ¶¶42, 100. After discovering that Defendants misled the public and its lenders about Collins & Aikman's financial condition and that the Company had almost no money left, Collins & Aikman filed for bankruptcy protection on May 12, 2005. ¶¶43, 90.

On July 18, 2007, the Bankruptcy Court confirmed a Chapter 11 Plan of Reorganization (the "Plan"). ¶6. Under the Plan, all claims and causes of action of Collins & Aikman against third parties were assigned to Plaintiff Collins & Aikman Litigation Trust, which brought this suit. *Id.* The purpose of the Litigation Trust is to liquidate assets and distribute the proceeds to Collins & Aikman's creditors. *Id.*

**B. Auditor Defendants' Role in the Company's Collapse**

PwC was Collins & Aikman's auditor for the fiscal years 2001 and 2002. ¶33. It issued audit opinions on Collins & Aikman's financial statements for the years ended December 31, 2001 and 2002, and reviewed the Company's interim financial statements for

the quarters ended March 31, 2001, through the quarter ended June 30, 2003. ¶104. KPMG was Collins & Aikman's auditor for fiscal years 2003 and 2004. ¶34. KPMG issued audit opinions on Collins & Aikman's financial statements for the year ended December 31, 2003, and reviewed the Company's interim financial statements for the quarters ended September 30, 2003, through the quarter ended September 30, 2004. ¶105. In addition to auditing and reviewing Collins & Aikman's annual and quarterly financials, Auditor Defendants also provided consulting services to the Company. ¶¶33-34. In order to render their services, Auditor Defendants had virtually limitless access to the Company's personnel and its confidential corporate, financial and business information, including internal and external financial statements and information as to Collins & Aikman's true financial condition and rebate accounting. *Id.*

In the performance of their services, Auditor Defendants were obligated to comply with certain professional standards and contractual obligations. ¶102. Under these standards, Auditor Defendants were required to, *inter alia*: (1) use due professional care in the performance of their audits and reports; (2) obtain sufficient evidence to afford a reasonable basis for their audit opinions; (3) plan and perform their audits in a manner that provided them reasonable assurance that the Company's financial statements were free from misstatements caused by error or fraud; and (4) inform the Audit Committee of fraud and deficiencies in the Company's internal controls. ¶¶149, 151, 158.

Auditor Defendants breached their service agreements and duties to the Company by, *inter alia,* negligently failing to properly audit and review the Company's financial statements in accordance with GAAP and GAAS and failing to disclose the numerous accounting irregularities that Auditor Defendants were aware of. Indeed, numerous red flags, which included false side-agreements and direct notice that the Company was

experiencing internal control deficiencies, were in existence and put Auditor Defendants on notice of fraudulent financial reporting. ¶¶153-156, 159-160, 163-165. However, instead of disclosing these failures and other improprieties, Auditor Defendants issued a series of false and misleading audit reports, which created the false impression that Collins & Aikman was financially stable and allowed certain Collins & Aikman officers and directors to continue their fraudulent accounting schemes. ¶¶109-112, 124, 160, 170, 244.

As a result of Auditor Defendants' failure to disclose Collins & Aikman's improper accounting practices and internal control deficiencies, as well as Auditor Defendants' failure to comply with their contractual and professional obligations, Collins & Aikman was able to secure excessive amounts of debt, thereby precipitating the Company's liquidity crisis and preventing it from being repaired. ¶¶107, 167, 172, 177. This also contributed to serious quality control issues because Collins & Aikman was unable to pay for the staffing required by its customer contracts, causing projects to be grossly understaffed, mismanaged and untimely completed. ¶144. Eventually, Collins & Aikman was forced to file for bankruptcy protection. ¶43.

## IV. ARGUMENT

### A. Standard on a Motion to Dismiss

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the facts alleged in a complaint, not to resolve disputed facts or decide the merits of a case. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d. Cir. 1993). In reviewing such a motion, the Court "must accept the allegations of the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiffs." *Semerenko v. Cendant Corp.*, 223 F.3d 165, 180 (3d Cir. 2000). At issue on a motion to dismiss "'is not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims.'" *Id.* at 173;[4] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Accordingly, a complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but rather must simply provide the grounds of entitlement to relief and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1964-65 (2007).

As detailed herein, and accepting Plaintiff's allegations as true, the FAC provides extensive factual detail supporting its allegations, thereby raising Plaintiff's right to relief far beyond the speculative level and satisfies Plaintiff's obligations to place Auditor Defendants on notice of the claims against them.

**B. Choice-of-Law Analysis is Unnecessary**

Auditor Defendants correctly acknowledge that when federal jurisdiction is based on diversity, as it is here, a district court applies the choice-of-law rules of the forum state. *See* KPMG Mem. at 9[5]; PwC Mem. at 8[6]; *see also Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007) (in a diversity case, a federal court applies the choice-of law-rules of the forum state). However, a choice-of-law question only arises when the laws of the forum state and the laws of the foreign jurisdiction "actually conflict on a relevant point." *In re Teleglobe Commcn's Corp.*, 493 F.3d 345, 358 (3d Cir. 2007). In other words, "where the laws of the two jurisdictions would produce the same result on [a] particular issue . . . the

---

4 Citations and footnotes are omitted throughout, unless otherwise noted.

5 "KPMG Mem. at ___" herein references pages in the opening Brief in Support of Defendant KPMG LLP's Motion to Dismiss the First Amended Complaint, filed on April 28, 2008.

6 "PWC Mem. at ___" herein references pages in the Memorandum of Law in Support of PWC's Motion to Dismiss the First Amended Complaint, filed April 28, 2008.

Court should avoid the choice-of-law question." *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997).

Here, Auditor Defendants blindly apply Delaware's choice-of-law rules to ***all*** of the claims, without first establishing an actual conflict between Delaware and Michigan law that would require the Court to engage in a choice-of-law analysis. As discussed throughout this memorandum, an examination of the claims demonstrates that there is no relevant conflict between Delaware and Michigan law on any of the state law claims at issue. *See Precision, Inc. v. Kenco/Williams, Inc.*, 66 F. App'x. 1, 4 (6th Cir. 2003) (in a breach of contract case, court did not engage in a choice-of-law analysis because "the law governing th[e] dispute is similar in both" Michigan and Delaware); *see also In re Fruehauf Trailer Corp.*, 250 B.R. 168, 194 (D. Del. 2000) (court did not consider which state's law would apply because interpretation of a release would be the same under both Delaware and Michigan law). Accordingly, there is no need to engage in a choice-of-law analysis in the present case because application of either Delaware or Michigan law would produce the same result on the issues presented here. *Cf. Allard v. Arthur Andersen & Co. (USA)*, 924 F. Supp. 488, 491 (S.D.N.Y. 1996) (court refused to take part in a choice-of-law analysis because resolution of the malpractice, breach of contract, common law fraud and aiding and abetting breach of fiduciary claims against auditors was unaffected by any relevant differences between New York and Michigan law).

### C. The FAC Adequately Pleads a Claim for Professional Negligence/Malpractice Against Auditor Defendants

Plaintiff may establish a claim for professional negligence based on accounting malpractice by demonstrating the traditional negligence elements of duty, breach, causation and damages. *AstroPower Liquidating Trust v. KPMG LLP*, No. 06-469-JJF, 2007 U.S. Dist. LEXIS 38222, at *12 (D. Del. May 25, 2007). Here, Auditor Defendants do not

dispute that they owed a duty of care to Collins & Aikman or that they actually breached their duty. Rather, KPMG asserts that the FAC does not sufficiently allege a breach of duty because it fails "to formulate more specific allegations of GAAS violations."[7] KPMG Mem. at 25. Contrary to KPMG's assertions, the FAC's allegations need only place a defendant "'on notice of what duty was breached, who breached it, the breaching act, and the party upon whom the act was performed."' *Iacono v. Barici*, No. 06C-02-021-RFS, 2006 Del. Super. LEXIS 531, at *15 (Del. Super. Ct. Dec. 29, 2006); *see also In re Total Containment, Inc.*, 335 B.R. 589, 619 (Bankr. E.D. Pa. 2005) (complaint is sufficiently pled if it "places the defendants on notice of the date of the alleged occurrence of the negligence" and provides "a general description of the defendants' purported failure that gives rise to liability").

The FAC contains allegations that are more than sufficient to place Auditor Defendants on notice of the malpractice claims against them. As alleged in the FAC, PwC and KPMG were employed by Collins & Aikman to provide auditing, accounting and consulting services to the Company from 2001-2003 and 2003-2004, respectively. ¶¶33-34. During those years, Auditor Defendants owed Collins & Aikman "a duty to act with reasonable care and competence and perform the services they rendered pursuant to their professional standards." ¶¶102, 178. For auditors, a duty to act according to professional standards means complying with accounting standards under GAAS and ensuring that a company's financial statements are presented in accordance with GAAP.[8] ¶107.

---

7 PwC does not challenge the adequacy of Plaintiff's malpractice claim. Instead, it merely challenges whether the claim is time-barred. *See* PwC Mem. at 25-27.

8 The mere "existence of a material misstatement in the financial statements creates the inference that the auditor has not complied with GAAS and has thus breached his

Specifically, Auditor Defendants were responsible for properly reviewing Collins & Aikman's financial results,[9] properly auditing and providing an opinion on the Company's financial statements and reporting weaknesses and failures in the Company's controls to its Audit Committee. ¶103. As worldwide firms of Certified Public Accountants, auditors and business consultants, Auditor Defendants were aware of their duties and obligations in serving Collins & Aikman. ¶178.

Auditor Defendants breached their duties to the Company by negligently: (1) issuing unqualified and false audit opinions on Collins & Aikman's financial statements; (2) failing to properly audit and review the Company's financial statements in accordance with GAAP and GAAS; (3) failing to obtain sufficient evidence to afford a reasonable basis for their audit opinions; (4) failing to report accounting irregularities, fraud and lack of internal controls; and (5) ignoring numerous red flags. ¶¶104-106, 124, 115, 151, 160-161, 167, 179. In support of these allegations, the FAC lists the specific GAAP provisions that were violated in the financial statements audited by Auditor Defendants (¶¶122, 127, 133, 137, 140-141, 146-147) and the ways in which those provisions were violated.[10] ¶¶123, 128, 132,

---

professional duty." *See* Denise M. Orlinsky, *An Accountant's Liability to Third Parties: Bily v. Arthur Young & Co.*, 43 DePaul L. Rev. 859, 869 (citing American Institute of Certified Public Accountants ("AICPA") Standards, AU §316.05, at 240).

9 Under Article 10 of Regulation S-X [17 C.F.R. §210.10 01(d)], Auditor Defendants were required to review, in accordance with professional standards, the quarterly financial statements filed with the SEC on Form 10-Q. ¶113.

10 Specifically, the FAC alleges, *inter alia*, that Auditor Defendants failed to properly audit and review Collins & Aikman's financial statements, which violated GAAP because the financial statements: (1) "overstated its operating income or understated its operating loss" (¶128); (2) "failed to timely record an impairment in the value of the Company's long-lived assets and goodwill" (¶132); (3) "failed to timely record a write-down in the value of its deferred tax assets" (¶137); (4) "failed to provide the disclosure called for under . . .

137, 140, 142. The FAC also alleges the specific ways in which Auditor Defendants violated numerous GAAS provisions, thereby breaching their duty of care. ¶¶149-180.

KPMG's argument that the FAC "merely recit[es] GAAS provisions and then makes conclusory assertions that those provisions have been violated" (KPMG Mem. at 25) is meritless.[11] On the contrary, the FAC identifies specific GAAS provisions that were violated and explicitly alleges how such provisions were violated. For example, the FAC alleges that under AU §326 of GAAS, Auditor Defendants were required to "[o]btain sufficient competent evidential matter through inspection, observation, inquiries and confirmations to afford a reasonable basis for an opinion regarding the financial statements under audit." ¶151. Auditor Defendants violated AU §326 because they "did not obtain sufficient competent evidential matter in the performance of their audits" and, despite repeated warnings by the SEC and AICPA about the use of fraudulent side-agreements, relied on the side-agreements to conclude that Collins & Aikman properly recorded rebates in their accounting records. ¶¶152-154, 156. Had Auditor Defendants examined Collins & Aikman's original supplier agreements, as they were required to, they would have been placed on notice that the "agreement contained provisions that were contrary to or silent about . . . those set forth in the side letters regarding [the Company's] entitlement to multi-million dollar rebates" and that "nearly all of Collins & Aikman's recorded rebates were accounted for improperly." ¶155, 157.

---

GAAP" (¶140); and (5) "failed to provide the disclosure about Collins & Aikman's ability to continue as a going concern" (¶142).

11 KPMG selectively chooses one paragraph of the FAC in which Plaintiff alleges some GAAS provisions that were violated, while ignoring over 30 other paragraphs that specifically allege how KPMG violated these and other GAAS provisions. *See, e.g.*, ¶¶150-180.

Moreover, the FAC alleges, *inter alia*, that Auditor Defendants: (1) "ignored [certain] red flags and failed to adequately plan and perform their audit procedures in a manner reasonably designed to identify the numerous financial improprieties" (¶¶159-160); (2) failed to inform the SEC of the fraud that was occurring at the Company (¶161); (3) "ignored [] internal control related flags" and specific information from Arthur Andersen, LLP ("Arthur Andersen") regarding internal deficiencies during the course of their audits (¶¶163-167); (4) "failed to determine that the values Collins & Aikman ascribed to entities that it purchased from defendant McCallum were millions of dollars greater than their respective appraised values"[12] (¶169); and (5) failed to perform one of several existing tests to evaluate the Company's solvency and ability to continue as a going concern (¶173-175). These facts more than sufficiently allege a claim for accounting malpractice.[13] *See AstroPower,* 2007 U.S. Dist. LEXIS 38222, at *13 (allegations for a claim of professional negligence were sufficient when complaint alleged that auditors breached their professional duties by failing to audit "financial statements and prepare reports with the appropriate level of skill and diligence," failing to "investigate accounting and financial information," and

---

12 Although not required to plead an accounting malpractice claim, the FAC alleges exactly what KPMG claims is not alleged – *i.e.,* how McCallum's transaction could have affected the 2003 financial statement (¶123) and that KPMG knew or should have known of internal control problems because the 2003 internal investigation by the Audit Committee should have prompted Auditor Defendants to probe and verify appropriate internal controls. *See* ¶¶42, 169.

13 There is no conflict between Delaware and Michigan law on this point. Neither Delaware nor Michigan law requires negligence/malpractice claims to be pled with the specificity that KPMG demands. *Cf. In re Hayes Lemmerz Int'l, Inc. Equity Sec. Litig.*, 271 F. Supp. 2d 1007, 1024 (E.D. Mich. 2003) (plaintiff's allegations that "merely list[ed] specific GAAS standards and conclud[ed] that [auditor] failed to comply" without alleging how or why auditor violated GAAS, was sufficient to assert negligence but not enough to satisfy a §10(b) securities claim). Indeed, KPMG fails to cite even a single case in which such specificity for a common law negligence or malpractice claim was required.

failing to "inquire into suspect transactions"); *see also Plan Comm. v. PricewaterhouseCoopers, LLP*, 335 B.R. 234, 249 (D.D.C. 2005) (breach of duty of care was sufficiently alleged where complaint identified the accounting provisions under GAAS or GAAP that were violated and what the auditors saw and ignored); *Sec. Investor Prot. Corp. v. R.D. Kushnir & Co.*, 274 B.R. 768, 774 (Bankr. N.D. Ill. 2002) (negligence was sufficiently pled where complaint alleged that auditor failed to perform its audit in accordance with GAAS).

Assuming, *arguendo*, that Michigan law would apply to Plaintiff's malpractice claim, the same result would follow because Delaware and Michigan law do not conflict. Indeed, the elements of accounting malpractice in Michigan are exactly the same as those in Delaware.[14] In Michigan, "[a]ccounting malpractice, like any malpractice claim, requires Plaintiff to establish duty, breach, causation, and damages." *Automatic Logistics Productivity Improvement Sys., LLC v. UHY Advisors, Inc.*, No. 05-73851, 2006 U.S. Dist. LEXIS 62325, at *3 (E.D. Mich. Aug. 17, 2006), *aff'd.* No. 06-2387, 2007 U.S. App. LEXIS 19107 (6th Cir. Aug. 8, 2007). "[A] plaintiff, in alleging a cause of action, need only plead factual allegations sufficient to reasonably 'inform the adverse party of the nature of the claims the adverse party is called on to defend.'" *See Rymal v. Baergen*, 686 N.W. 2d 241, 256 (Mich. Ct. App. 2004). Moreover, even under Michigan law, auditors have the same standard of professional care under GAAS and GAAP. *See generally* (AICPA), AU

---

[14] Notably, KPMG does not restrict its malpractice argument to Michigan cases, but rather, uses other states' case law to support its assertion that Plaintiff's malpractice claim fails under Michigan law. *See* KPMG Mem. at 24-28. The only Michigan case KPMG cites is a case where, unlike here, the parties went to trial and testimony was heard. *See Pilot Indus., Inc. v. Grant Thornton, LLP*, No. 258689, 2006 WL 2033996 (Mich. Ct. App. July 20, 2006).

§150.02; AU §411.02. Accordingly, the FAC sufficiently pleads malpractice claims against Auditor Defendants under either Delaware or Michigan law.

### D. The FAC Adequately Pleads a Claim for Breach of Contract Against Auditor Defendants

Under Delaware law, to establish a breach of contract claim, a plaintiff must demonstrate: (1) existence of a contract; (2) breach of an obligation imposed by that contract; and (3) resulting damages. *AstroPower*, 2007 U.S. Dist. LEXIS 38222, at *5-*6.[15] "In alleging a breach of contract, a plaintiff need not plead specific facts to state an actionable claim." *VLIW Tech., L.L.C. v. Hewlett-Packard Co.*, 840 A.2d 606, 611 (Del. 2003). Allegations that the plaintiff is entitled to damages if a breach of contract occurred are enough to withstand a motion to dismiss. *In re IT Group, Inc.*, 361 B.R. 417, 422 (Bankr. D. Del. 2007).

Plaintiff has adequately pled the elements for a breach of contract claim against Auditor Defendants. As alleged in the FAC, Auditor Defendants entered into service agreements with Collins & Aikman whereby they each agreed to provide accounting and auditing services to the Company in accordance with GAAP, GAAS and standards promulgated by the AICPA. ¶¶33-34, 231, 237. Specifically, Auditor Defendants were contractually obligated to report any internal control deficiencies or fraud by the management to the Audit Committee, and other matters that would cause them to believe that the Company's financial statements were materially misstated. ¶¶103, 232, 238.

---

15 The law in Michigan for breach of contract does not conflict with Delaware law. The elements of a breach of contract claim under Michigan law require the showing of (1) the existence of a contract between the parties; (2) performance of certain actions under the contract; (3) breach of the contract; and (4) injury caused by the breach. *See, e.g.*, *Green Leaf Nursery, Inc. v. KMART Corp.*, 485 F. Supp. 2d 815, 818 (E.D. Mich. 2007).

Auditor Defendants breached their contractual obligations by failing to: (1) perform their audits according to GAAP, GAAS and AICPA standards; (2) plan and perform their audits to obtain reasonable assurance that the financial statements were free from material misstatements; (3) examine evidence to support the disclosures in the financial documents; and (4) report fraud, deficiencies in internal controls and other conditions causing material misstatements. *See, e.g.*, ¶¶128, 148, 156, 164-165, 233, 239. As a result of Auditor Defendants' breaches of contract, Collins & Aikman suffered damages. ¶¶234-235, 240-241. These allegations more than satisfy the relaxed pleading standards for a breach of contract claim. *See, e.g.*, *AstroPower*, 2007 U.S. Dist. LEXIS 38222, at *7 (breach of contract claim was satisfied when complaint alleged that defendant "'breached its contracts with [company] by failing to provide the bargained-for services and conduct its audits in accordance with GAAP and GAAS'" and complaint identified the services that were not performed).

Auditor Defendants do not dispute that the FAC adequately pleads a claim for breach of contract. Instead, KPMG asserts that it did not breach its contract with Collins & Aikman.[16] KPMG Mem. at 39-40. However, this assertion cannot be considered on a motion to dismiss. *See Kost*, 1 F.3d at 183 (noting that a motion to dismiss is not intended to resolve factual disputes or the merits of a case); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 633 (D. Del. 2007) (finding that plaintiff adequately alleged breach of contract claim, court declined to rule on specific issues at the motion to dismiss stage). Similarly, KPMG's

---

[16] Apparently, KPMG did not take the time to make necessary changes to its original motion to dismiss, as KPMG's present motion wrongly points out that Plaintiff alleged that the years of the service agreements were 2001 and 2002. *See* KPMG Mem. at 39 n.17. The FAC clearly states that KPMG's service agreements were for the years 2003 and 2004. ¶237.

argument that the breach was caused by Collins & Aikman's own breach does not warrant dismissal. Instead, it is a factual issue not suitable for resolution at this stage of the litigation. Courts in Delaware have expressly refused to grant dismissal on the basis of this argument. *See AstroPower*, 2007 U.S. Dist. LEXIS 38222, at *10 (rejecting defendant auditor's argument that it could not be responsible for breach of contract because the accounting deficiencies were the fault of the company's management).

The crux of Auditor Defendants' argument, however, is that the breach of contract claim must be dismissed because it is duplicative of the negligence/malpractice claim. KPMG Mem. at 39; PwC Mem. at 31-33. Auditor Defendants are wrong, as Plaintiff's breach of contract claim is clearly distinct. *See Sherman Indus., Inc. v. Goldhammer*, 683 F. Supp. 502, 506 (E.D. Pa. 1988) (where a plaintiff "assert[s] that defendants have breached both specific contractual terms and a general . . . duty of care," breach of contract and malpractice claims may be alleged in one complaint).

Here, Auditor Defendants breached their contractual duties by failing to properly perform their audits according to their service agreements and failing to inform the Audit Committee of fraud and deficiencies in the Company's internal controls. KPMG's service agreements specifically state that they had a "responsibility to conduct and will conduct the audit in accordance with auditing standards generally accepted in the United States of America" and "will perform tests of the accounting records . . . to provide a reasonable basis for [their] opinion." KPMG Ex. 1 at 1.[17] The service agreement further obligated KPMG to "inform the audit committee about fraud and illegal acts that involve senior management."

---

[17] "KMPG Ex. ___" herein references exhibits to the Affidavit of Paul D. Brown in Support of KPMG LLP's Motion to Dismiss the First Amended Complaint, filed on April 28, 2008.

*Id.* at 3. Similarly, PwC's service agreement stated that it will communicate "any matters that come to [its] attention as a result of the review that [it] believe[s] may require material modifications to the quarterly financial information to make it conform with [GAAP]" and "any significant deficiencies relating to internal control over financial reporting." PwC Ex. 5 at 1-2.[18] The breach of these specific contractual duties is independent from Auditor Defendants' duty to perform with reasonable care in providing auditing services to Collins & Aikman. *See In re Oakwood Homes Corp.*, 340 B.R. 510, 520 (Bankr. D. Del. 2006) (permitting negligence and breach of contract claims where the complaint alleged facts to support a finding of a legal duty separate from the contractual duty, such as where the defendant is a fiduciary or professional); *see also In re Express Scripts, Inc.*, No. 1672, 2007 U.S. Dist. LEXIS 44722, at *29 (E.D. Mo. June 20, 2007) ("'[a] tort action may accompany one for breach of contract only where the contract creates a relation out of which springs a duty, independent of the contract obligation, and that independent duty is breached'"); *Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863, 875 (N.D. Ill. 2002) (noting that accountants have a duty, independent from any contractual duty, to use reasonable professional competence); *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 545 F. Supp. 1314, 1364 (S.D.N.Y. 1982) (auditor's failure to reveal irregularities "is actionable as a contractual duty separate and independent from the obligation to use due professional care in its audits"). Accordingly, Plaintiff may maintain a claim for breach of contract, separate from its claim for malpractice.[19]

---

18 "PWC Ex. ___" herein references exhibits to the PWC Mem.

19 Michigan law also allows a plaintiff to allege breach of contract claims along with negligence or malpractice claims. *See Riley v. Ameritech Corp.*, 147 F. Supp. 2d 762, 772 (E.D. Mich. 2001) (denying motion to dismiss breach of contract and accounting malpractice

**E. The FAC Adequately Pleads a Common Law Fraud Cause of Action Against Auditor Defendants**

**1. Common Law Fraud Pleading Requirements**

In Delaware, to adequately plead a claim of common law fraud, a plaintiff must allege the following: "(1) a false representation made by the defendant; (2) the defendant knew that the representation was false; (3) the defendant intended the plaintiff to rely upon the false statement; (4) the plaintiff reasonably relied upon the false statement, to his detriment; and (5) damages resulted from that reliance." *Johnson v. Geico Cas. Co.*, 516 F. Supp. 2d 351, 358-59 (D. Del. 2007).[20] Common law fraud must also meet Rule 9(b) of the Federal Rules of Civil Procedure which states, in pertinent part, "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *Household Int'l, Inc. v. Westchester Fire Ins. Co.*, 286 F. Supp. 2d 369, 373 (D. Del. 2003) (denying motion to dismiss fraud claim), *aff'd.*, 167 F. App'x 895 (3d Cir. 2006). In order to satisfy Rule 9(b), plaintiffs must plead with particularity "to notify the defendant of

---

claims where both claims arose out of accountant's failure to perform accounting duties in compliance with professional standards); *Green Constr. Co. v. Williams Form Eng'g Corp.*, 506 F. Supp. 173, 177 (W.D. Mich. 1980) (misfeasance in the performance of a contract may give rise to tort liability independent from liability for a breach of contract).

20 There is no conflict between Delaware and Michigan law with regard to the common law fraud claims alleged against Auditor Defendants. Similar to Delaware, common law fraud in Michigan requires:

> 1) That defendant made a material misrepresentation; 2) that it was false; 3) that when [defendant] made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; 4) that he made it with the intention that it should be acted upon by plaintiff; 5) that plaintiff acted in reliance upon it; and 6) that plaintiff thereby suffered injury.

*Sheldon Co. Profit Sharing Plan & Trust v. Smith*, 858 F. Supp. 663, 669 (W.D. Mich. 1994).

the charges against him so that he may adequately prepare an answer." *In re Brown Sch.*, 368 B.R. 394, 399 (Bankr. D. Del. 2007).

Although allegations of date, place or time satisfy the particularity requirements under Rule 9(b), such allegations are not required in every case; "plaintiffs may use any alternative method of 'injecting precision and some measure of substantiation' into the allegations of fraud." *Buckley v. O'Hanlon*, No. 04-955 (GMS), 2007 U.S. Dist. LEXIS 22211, at *27 (D. Del. Mar. 28, 2007). Delaware courts have noted that:

> while conclusory allegations that do nothing more than mirror language of statutes and rules are not sufficient under Rule 9(b), the requirement of particularity does not require 'an exhaustive cataloging of facts but only sufficient factual specificity to provide assurance that plaintiff has investigated . . . the alleged fraud and reasonably believes that a wrong has occurred.'

*Household Int'l*, 286 F. Supp. 2d at 373. Courts have also acknowledged that a "bankruptcy trustee . . . is generally afforded greater liberality in pleading fraud." *In re Brown Sch.*, 386 B.R. 37, 44 (Bankr. D. Del. 2008); *Total Containment*, 335 B.R. at 600 ("flexibility in construing the particularity requirement of Rule 9 is particularly apt when a fraud claim is brought by a bankruptcy trustee").

Auditor Defendants argue that the FAC fails to allege a common law fraud claim because it fails to adequately meet the particularity standard of Rule 9(b) in alleging: (1) Auditor Defendants made false representations; (2) Plaintiff relied upon the false representations; and (3) Auditor Defendants acted with scienter. All three arguments are meritless.

**2. The FAC Adequately Alleges KPMG and PWC Made False Representations**

False representations may occur either by "'deliberate concealment of material facts'" or by "'silence in the face of a duty to speak.'" *TruePosition, Inc. v. Andrew Corp.*,

507 F. Supp. 2d 447, 462 (D. Del. 2007). The FAC pleads Auditor Defendants' false representations with sufficient specificity to meet Rule 9(b). The FAC identifies the statements that were false, when the statements were made, who made the statements and where they were made.[21] *See* ¶¶109-112. The FAC also details why the statements were false when made. ¶¶114-179. Despite the Auditor Defendants' protestations, throughout some 65 paragraphs the FAC does much more than just list GAAS or GAAP violations. *See id.* Indeed, the FAC alleges that Auditor Defendants' audit reports were false and misleading in several ways. The audit opinions represented that Collins & Aikman's financial statements conformed with GAAP, that the Auditor Defendants complied with GAAS, that the audits provided a reasonable basis for Auditor Defendants' opinions, and that the financial statements "present fairly, in all material respects" Collins & Aikman's financial position, when none of these statements were true. *Id.* For example, the FAC alleges:

- The above-noted audit reports were false and misleading because Collins & Aikman's financial statements violated GAAP in numerous respects, including: (1) the Company's accounting for "round-trip" transactions with McCallum; (2) the Company's accounting for cash received from suppliers and capital equipment vendors; (3) the Company's failure to timely record an impairment in the value of its long-lived assets, goodwill; (4) the Company's overstatement of its deferred tax assets; (5) the Company's improper reporting of related party transactions; and (6) the Company's failure to provide appropriate disclosure about its liquidity issues and ability to continue as a going concern (¶114);

- As a result of the above-noted violations of GAAP, Collins & Aikman's financial statements, audited by PwC and/or KPMG improperly: (1) overstated the value of its reported goodwill in its audited 2002 and 2003 financial statements by approximately 9.2 million; (2) overstated the amount of its reported fixed assets in its audited 2002 and 2003 financial statements

---

21 Specifically, the FAC alleges that PwC issued false and misleading statements in its audit reports for the years ended December 31, 2001 and December 31, 2002 (¶¶110-111) and that KPMG issued false and misleading statements in its audit report for the year ended December 31, 2003. ¶112.

by $2.7 million; (3) understated the amount of its loss from continuing operations in its audited 2002 and 2003 financial statements by approximately $10.8 million, or approximately 25%, and $1.2 million, respectively; (4) overstated the amount of its reported depreciation expense in its audited 2002 and 2003 financial statements; (5) overstated the amount of its cash flows from operations in its audited 2002 and 2003 financial statements by approximately $10.8 million, or approximately 25%, and $1.2 million, respectively; and (6) overstated the amount of cash used for investing activities in its audited 2002 financial statements by 9.2 million (¶123);

- Despite the improper accounting of the "round-trip" transactions noted above, PwC and KPMG issued clean audit reports on Collins & Aikman's 2002 and 2003 financial statements. Such financial statements created a false impression that Collins & Aikman was a financially stable company when, in fact, it was not. The financial statements represented a concerted effort by all Defendants to falsify Collins & Aikman's financial condition (¶124); and

- As a result of its accounting for vendor rebates in violation of GAAP, Collins & Aikman's financial statements audited and reviewed by PwC and/or KPMG improperly overstated its operating income or understated its operating loss . . . (¶128).

It is significant that the FAC does not merely allege a few minor violations of GAAP or GAAS, or the Company's internal accounting policies and controls. Rather, the FAC details the facts of ***numerous*** violations throughout the relevant time period, including round trip transactions, improper accounting for cash received from suppliers, failure to record an impairment in the value of the Company's long-lived assets and goodwill, overstatement of deferred taxes, improper reporting of related transactions, and failure to provide appropriate disclosure about the Company's ability as a going concern. ¶¶116-146. The magnitude and pervasiveness of the accounting improprieties demonstrate the falsity of the Auditor Defendants' representations. *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 279-80 (3d Cir. 2006) ("courts have recognized that allegations of GAAS violations, coupled with allegations that significant 'red flags' were ignored, can suffice to withstand a motion to dismiss"). Therefore, the FAC adequately alleges the common law fraud requirement of false representation.

### 3. Plaintiff Adequately Alleges Auditor Defendants' Scienter

Auditor Defendants argue that the FAC fails to allege sufficient detail to demonstrate their scienter. In Delaware, common law fraud claims '"require a certain level of scienter on the part of the defendant; a misrepresentation must be made either knowingly, intentionally, or with reckless indifference to the truth."' *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 143 (Del. Ch. 2004). In pleading scienter, great specificity is not required. *In re Genesis Health Ventures, Inc.*, 355 B.R. 438, 458-59 (Bankr. D. Del. 2006). Scienter is adequately pled by alleging facts that establish a "motive and an opportunity to commit fraud, or by setting forth facts that constitute circumstantial evidence of either reckless or conscious behavior." *Id.* at 459.

Contrary to the Auditor Defendants' implications and KPMG's argument, the FAC's common law fraud scienter allegations do not have to meet the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). *See* KPMG Mem. at 30-36; PWC Mem. at 34-35. KPMG's reliance upon *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, ___ U.S. ____, 127 S. Ct. 2499, 2507-08, 2510 (2007), in arguing that "Plaintiff must allege facts that give rise to a 'strong inference of scienter' – an 'intent to deceive, manipulate or defraud' – with respect to *each* defendant and for *each* material misrepresentation or omission alleged," and that "[t]o survive dismissal, the 'strong inference of scienter' must be 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged" is flatly wrong. KPMG Mem. at 30. Plaintiff has not alleged a claim for securities fraud under the PSLRA against the Auditor Defendants, which is the ***only*** type of claim which *Tellabs* discusses. *See Tellabs*, at 2507-08. The scienter standard KPMG puts forth in its brief is for securities fraud cases ***only*** and is a heightened pleading standard which applies only to cases brought under the PSLRA. *See Tellabs*, 127 S.

Ct. at 2504, 2508 (discussing the "strong" inference of scienter plaintiffs in securities fraud actions must plead and stating that "Congress 'impose[d] ***heightened pleading*** requirements in actions brought pursuant to §10(b) and Rule 10b-5'") (emphasis added); *see also Kozin v. Dunn*, No. 04-852 (DRD), 2005 U.S. Dist. LEXIS 18156, at *12-*13 (D.N.J. Aug. 15, 2005) (finding plaintiff adequately alleged common law fraud and noting federal securities claims have an "even higher pleading hurdle" than the common law fraud claims); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 396 F. Supp. 2d 1178, 1188 (D. Colo. 2004) ("Generally, the PSLRA is seen as imposing a standard of pleading which is more strict than that of Rule 9(b).").[22]

Because the claim in the FAC is a common law fraud claim, the allegations are not held to the higher standard for scienter under the PSLRA, and KPMG's entire argument based upon such assumption, including the cases upon which it relies, must be disregarded. In fact, KPMG relies exclusively, and PWC almost exclusively, on cases that discuss scienter in a federal securities context.[23] *See* KPMG Mem. at 30-36 (citing federal securities fraud

---

22 Even prior to the passing of the PSLRA, "Courts of Appeals diverged on the character of the Rule 9(b) inquiry in §10(b) cases." *Tellabs*, 127 S. Ct. at 2507. (*Cf. In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1546 (9th Cir. 1994) ("We are not permitted to add new requirements to Rule 9(b) simply because we like the effects of doing so."), *with, e.g.*, *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992) (were the law to permit a securities fraud complaint simply to allege scienter without supporting facts, "a complaint could evade too easily the 'particularity' requirement in Rule 9(b)'s first sentence")). Thus, the securities fraud cases discussing scienter should be viewed differently from those of common law fraud.

23 Indeed, *D.E. & J L.P. v. Conaway*, 284 F. Supp. 2d 719 (E.D. Mich. 2003), *aff'd.*, 133 F. App'x 994 (6th Cir. 2005), a securities fraud case under §10(b) that both Auditor Defendants cite to support their argument that Plaintiff's common law fraud claim is inadequately pled, noted that although the plaintiffs did not satisfy the pleading requirements for a securities fraud claim, "Plaintiffs may very well have a viable cause of action under state law, such as a common law fraud action." *Id.* at 754.

cases to argue "[t]he standard for pleading scienter against an auditor is particularly 'demanding.'"); PWC Mem. at 33-35. For this reason alone, Auditor Defendants' scienter arguments are meritless and their reliance upon cases involving securities fraud should not be considered by the Court.[24]

Because Plaintiff has not alleged securities fraud claims against the Auditor Defendants, rather only common law fraud claims, it is afforded the more "lenient" standard under Rule 9(b), which only requires enough specificity to show that a plaintiff has investigated the fraud and reasonably believes that a wrong has occurred. *Household Int'l*, 286 F. Supp. 2d at 373. With this in mind, the totality of the FAC's allegations sufficiently plead the Auditor Defendants' scienter.

**a. The FAC sufficiently alleges Auditor Defendants' motive and opportunity to commit fraud**

Despite Auditor Defendants' misplaced reliance upon securities fraud cases, neither disputes that scienter can be adequately pleaded by demonstrating they had the motive and opportunity to commit fraud. *See Levine v. Metal Recovery Techs, Inc.*, 182 F.R.D. 102, 107 (D. Del. 1998) ("Scienter can be pleaded by alleging facts that demonstrate both motive and opportunity to commit fraud."). The Auditor Defendants also do not challenge that they had the opportunity to commit fraud. Thus, the only issue is whether the FAC pleads the Auditor Defendants' motive, which it does.

The FAC alleges that Auditor Defendants had a motive to increase their profits, through both the typical auditing fees and also through non-audit services rendered to the

---

24 Conversely, cases under the PSLRA holding that plaintiffs adequately alleged scienter are relevant because scienter for common law fraud requires a more lenient standard.

Company (as much as $1.4 million for PwC and $11.8 million for KPMG). *See* ¶108. In addition, the FAC alleges that the individual partners of PwC and KPMG were pressured to "maintain a reputation for having a strong presence in the automotive industry," and they were rewarded financially for their ability to obtain new and maintain old relationships with clients. *Id.* Moreover, the partners' remuneration was "closely tied to the fees generated from Collins & Aikman engagements." *Id.*

At least one Court in this District has noted that scienter was established when alleged motives were more than a simple allegation that defendants were motivated to make money in the ordinary course of business. *See Genesis*, 355 B.R. at 459. The FAC here alleges more than the Auditor Defendants' motivation to make money in the ordinary course of business. Thus, the FAC adequately alleges Auditor Defendants' scienter based upon motive and opportunity.

**b. The FAC sufficiently alleges circumstantial evidence of Auditor Defendants' recklessness**

The FAC also adequately alleges the Auditor Defendants' scienter under Rule 9(b) through circumstantial evidence of their conscious misbehavior or recklessness. Courts have found that, in the context of an audit, "[a] showing that an auditor either lacked a genuine belief that its representations were supported by adequate information or engaged in auditing practices so shoddy that they amounted at best to a 'pretended audit' has traditionally supported a finding of liability, even in the face of assertions of good faith." *Suprema Specialties*, 438 F.3d at 279, 281 (scienter was satisfied when plaintiffs alleged accounting violations that suggested that auditors "either knew of, or willfully turned a blind eye to" fraud). A complaint can prevail on a fraud claim against an auditor by "'show[ing] how specific and not insignificant accounting violations collectively raise an inference of scienter.'" *Id.* at 281; *see also In re Reliance Sec. Litig.*, 91 F. Supp. 2d 706, 724 (D. Del.

2000) (finding that "[w]hen combined with other circumstances suggesting fraudulent intent, allegations for improper accounting may support a strong inference of recklessness"). Moreover, allegations of "red flags" that an auditor must have been aware of if it were conducting any kind of audit are also adequate to allege recklessness sufficient to meet Rule 9(b)'s standard. *See Suprema Specialties*, 438 F.3d at 280 (scienter was established under heightened securities fraud standard when the complaint alleged how auditor defendant's GAAS violations caused it to overlook numerous red flags); *see also In re Winstar Commc'ns*, No. 01 CV 3014 (GBD), 2006 U.S. Dist. LEXIS 7618, at *38 (S.D.N.Y. Feb. 27, 2006) (auditor acted recklessly in conducting an audit where complaint alleged that the company provided auditor with all the documents associated with certain transactions and that a reasonable review would have "at the very least placed the auditor on notice to inquire further").

Here, the FAC alleges that Auditor Defendants were aware of numerous "red flags" warning them of the accounting fraud. ¶102. For example, Auditor Defendants knowingly or recklessly failed to investigate the false side agreements in relation to the original supplier agreements and claims of internal control deficiencies made by Arthur Anderson. ¶¶153-157, 163-167. In addition, the Company was engaged in numerous accounting manipulations. ¶¶114-179. Where, as here, "'red flags' would be clearly evident to any auditor performing its duties," the only, reasonable conclusion is that Auditor Defendants "must have noticed the 'red flags', but deliberately chose to disregard them." *In re Leslie Fay Cos. Sec. Litig.*, 871 F. Supp. 686, 699 (S.D.N.Y. 1995). Given the duration and the magnitude of the accounting problems, at the very least, the FAC adequately alleges that the Auditor Defendants were reckless in stating that the Collins & Aikman's financial statements properly reflected the true financial condition of the Company. *See In re Ikon Office*

*Solutions, Inc.*, 66 F. Supp. 2d 622, 629 (E.D. Pa. 1999) (allegations that showed auditor's failure to investigate a claim that would have affected its financial opinion satisfied scienter under the more heightened pleading standard of the PSLRA); *Qwest*, 396 F. Supp. 2d at 1194 (noting that even under the heightened PSLRA standard, "[a]llegations of pervasive and long-standing accounting machinations, and resulting misstatements," support scienter); *In re MicroStrategy Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 635 (E.D. Va. 2000) ("number, size, timing, nature, frequency, and context" of accounting manipulations, combined with other circumstances provides support for scienter even under PSLRA).

Finally, allegations that an auditor must have been aware of wrongdoing at the company, "by nature of its service as the Company's auditor, and by other information it received" are sufficient to survive a motion to dismiss, even under the PSLRA's more exacting scienter standards. *Reliance*, 91 F. Supp 2d at 726 (finding that auditor "may have acted recklessly in stating that the Company's financial statements were in accordance with GAAP"); *see also In re Rent-Way Sec. Litig.*, 209 F. Supp. 2d 493, 507 (W.D. Pa. 2002) (allegations that auditor conducted its "audits without obtaining adequate detail and documentation in violation of GAAS and consequently failed to detect non-standard journal entries made by [company] personnel" were sufficient to demonstrate scienter). Here, the FAC alleges that Auditor Defendants "had virtually limitless access to the Company's personnel and corporate information and documents, including accounting books and records." ¶106. In addition, Auditor Defendants had ample opportunity to examine the Company's internal controls, especially after the red flags were raised demonstrating serious problems with the internal controls. *Id.* The totality of the FAC's allegations demonstrate that Auditor Defendants were at least reckless, and thus meet the requirements of scienter for common law fraud.

**c. The FAC adequately alleges Auditor Defendants' conscious misbehavior**

The FAC also contains sufficient detail regarding the Auditor Defendants' conscious misbehavior, and demonstrates another reason scienter is properly pleaded under Rule 9(b). As alleged in the FAC, Auditor Defendants were put on notice and ignored Collins & Aikman's internal control deficiencies, by Arthur Andersen's prior audits, which noted that the Company was experiencing ***ongoing*** deficiencies with its system of internal controls over financial reporting. ¶163. These same control deficiencies, which persisted over the course of the relevant period, contributed to the financial fraud. ¶¶165-66.

Moreover, the conflicting or missing contractual supplier rebate entitlement provisions that the Company repeatedly had to obtain through "side agreements" which were given to Auditor Defendants, put them on notice that a fraud was possible. *See* ¶¶153, 156. In fact, because of these "side agreements" 84% of the rebate transactions constituting 96% of the total dollar of all rebates ***was improperly recorded***. ¶157. This alone demonstrates that Auditor Defendants were aware of and consciously disregarded the fraud.

The facts pleaded demonstrate that Auditor Defendants were put on ***actual notice*** of problems in the Company, but still failed to investigate and ensure that their statements about the Company's financial condition were accurate. These allegations are sufficient to show Auditor Defendants' conscious misbehavior for purposes of Rule 9(b). *See In re Ikon*, 66 F. Supp. 2d at 631 ("[I]nternal policies are relevant to scienter to the extent that they correspond to violations of GAAP and GAAS or that they indicate an auditor's awareness of problems in corporate finances.").

In short, taken in their entirety, the FAC's allegations adequately plead Auditor Defendants' scienter under Rule 9(b)'s pleading standards in a multitude of ways, and thus state a claim for common law fraud.

**4. Plaintiff Adequately Alleges Reliance on the Auditor Defendants' False Representations**

Auditor Defendants use the reliance element of common law fraud to reiterate their faulty *in pari delicto* defense, *i.e.*, that the Litigation Trust, as successor to debtor Collins & Aikman, cannot state a claim against Auditor Defendants because the knowledge of Collins & Aikman's wrongdoing insiders is imputed to the Company. Thus, Auditor Defendants argue that if Collins & Aikman's officers knew about the fraud, the Company could not have relied upon Auditor Defendants' false representations because Collins & Aikman would have known the statements were false.

As discussed in Section IV.H. *infra*, Auditor Defendants' reliance upon the *in pari delicto* defense is meritless. As a threshold matter, this affirmative defense is not suitable for resolution on this motion to dismiss. *See Buckley*, 2007 U.S. Dist. LEXIS 22211, at *24. Moreover, the defense of *in pari delicto* functions to prevent a wrongdoer from profiting from the recovery awarded by a court for the wrong. *See Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995). However, where, as in this case, the wrongdoer insiders are unable to share in the recovery, the *in pari delicto* defense "loses its sting." *Id.*

Plaintiff pleads that the Company, "in hiring an experienced, independent auditor," relied upon Auditor Defendants' statements. ¶¶218-219. Indeed, that reliance is demonstrated by the fact that Auditor Defendants' statements were included in the public filings with the SEC which were disseminated to the market. This is adequate and the common law fraud claim against the Auditor Defendants should be upheld.

**F. The FAC Adequately Alleges a Claim for Aiding and Abetting Breach of Fiduciary Duty Against Auditor Defendants**

As a threshold matter, Delaware law governs the aiding and abetting breach of fiduciary duty claims alleged in the FAC. Delaware recognizes the internal affairs doctrine,

which requires "'the law of the state of incorporation to [determine] issues involving corporate internal affairs.'" *In re Circle Y*, 354 B.R. 349, 359 (Bankr. D. Del. 2006). It is well recognized that a breach of fiduciary duty involves the internal affairs of a corporation. *See id. Rapoport v. Litig. Trust of MDIP, Inc.*, No. 1035-N, 2005 Del. Ch. LEXIS 180, at *24 (Del. Ch. Nov. 23, 2005). Although Delaware courts have not ruled on the issue, several courts have also applied the law of the state of incorporation to claims of aiding and abetting breach of fiduciary duty. *See, e.g., Buckley v. Deloitte & Touche USA LLP*, No. 06 Civ. 3291 (SHS), 2007 U.S. Dist. LEXIS 37107, at *37 (S.D.N.Y. May 22, 2007); *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, No. 03 Civ. 3748 (DAB), 2006 U.S. Dist. LEXIS 4270 (S.D.N.Y. Feb. 2, 2006). Therefore, since Delaware is the state of incorporation for Collins & Aikman, Delaware law governs the aiding and abetting breach of fiduciary duty claims alleged against Auditor Defendants.

In Delaware, to adequately allege a claim for aiding and abetting breach of fiduciary duty, the plaintiff must demonstrate: "'(1) the existence of a fiduciary relationship, (2) the fiduciary breached its duty, (3) a defendant, who is not a fiduciary, knowingly participated in a breach, and (4) damages to the plaintiff resulted from the concerted action of the fiduciary and the non-fiduciary.'" *Brown Sch.*, 368 B.R. at 402 (aiding and abetting claim sufficiently pleaded when complaint alleged that each non-fiduciary defendant knowingly aided and abetted the breach of fiduciary duty engaged in by management of company).[25] At the

---

[25] Although Delaware law governs the aiding and abetting breach of fiduciary duty claim, application of Michigan law would lead to the same outcome because Michigan similarly recognizes a claim for aiding and abetting a breach of fiduciary duty where a defendant knowingly participated in the breach. *See Echelon Homes, L.L.C. v. Carter Lumber Co.*, 683 N.W. 2d 171, 183-84 (Mich. Ct. App. 2004), *rev'd in part on other grounds*, 694 N.W. 2d 544 (2005); *Hayes-Albion v. Kuberski*, 364 N.W. 2d 609, 617 (Mich.

motion to dismiss stage, allegations that "Defendants knowingly participated in [a] fraudulent scheme and gave [the company] substantial assistance through its accounting . . . services" are enough to state a claim for aiding and abetting. *Royal Indem. Co. v. Pepper Hamilton LLP*, 479 F. Supp. 2d 419, 431 (D. Del. 2007).

Auditor Defendants argue only that Plaintiff has failed to adequately allege "knowing participation." Once again, Auditor Defendants are wrong. Unlike a claim for fraud, defendants' "knowing participation" for an aiding and abetting claim need not meet the particularity requirements of Rule 9(b). *See In re Shoe-Town, Inc. Stockholders Litig.*, No. 9483, 1990 Del. Ch. LEXIS 14, at *23 (Del. Ch. Feb. 12, 1990) (cited with approval in *Khanna v. McMinn*, No. 20545-NC, 2006 Del. Ch. LEXIS 86, at *113 (Del. Ch. May 9, 2006)). Rather, the complaint must allege factual allegations "from which knowing participation can be reasonably inferred."[26] *Id.*

Here, the FAC alleges that certain Collins & Aikman officers committed wrongful acts that defrauded creditors and shareholders of the Company. Auditor Defendants were aware of these activities and participated in them by failing to disclose the material misstatements and fraudulent conduct. ¶¶161, 167, 177. The FAC clearly states that "PwC and KPMG knew of the officers' breaches of fiduciary duty and knew that their conduct of failing to take proper action in accordance with accounting standards, including GAAS, and PwC's and KPMG's engagement contract with the Company, furthered the wrongful conduct

---

1984) ("'Where a person in a fiduciary relation to another violates his duty as fiduciary, a third person who participates in the violation of duty is liable to the beneficiary.'").

26 Despite this, as detailed in the section regarding Auditor Defendants' scienter (Section IV.E.3), the FAC does meet the particularity requirements of Rule 9(b) in alleging Auditor Defendants' knowing participation.

of the officers." ¶245. The FAC further alleges that "[g]iven [Auditor Defendants'] intimate knowledge of Collins & Aikman's business, PwC and KPMG knew or should have known about the numerous accounting irregularities and improprieties alleged herein, and that the Company's financial statements, and related financial information, were materially false and misleading because, among other things, they violated GAAP in numerous respects." ¶106. These allegations are sufficient to meet the notice pleading standards required for aiding and abetting a breach of fiduciary duty. *See In re Am. Bus. Fin. Servs.*, 375 B.R. 112, 118 (Bankr. D. Del. 2007) (claim for aiding and abetting was sufficiently pleaded when complaint alleged that defendants knew of fiduciaries' wrongful conduct and that the knowledge could be inferred from defendant's concealment, conflict of interest, and misrepresentations); *Shamrock Holdings v. Arenson*, 456 F. Supp. 2d 599, 610-11 (D. Del. 2006) (upholding aiding and abetting breach of fiduciary duty claim where the party noted that, "'at this pre-discovery point in the litigation,' federal notice pleading standards do not require . . . 'alleg[ations] [of] precisely what actions were taken'" by those who allegedly aided and abetted); *In re Scott Acquisition Corp.*, 344 B.R. 283, 290 (Bankr. D. Del. 2006) (despite defendants' arguments that "a number of places in the complaint suggest that certain of the named defendants had no knowledge of and there is no evidence of any participation in the improper conduct of others," the complaint's allegations that "'the Defendants had knowledge of the facts and circumstances alleged in paragraphs 1 through 75 above'" sufficiently stated a claim for aiding and abetting breach of fiduciary duty).[27]

---

[27] The Auditor Defendants' argument that the aiding and abetting claim and the fraud claim should also be dismissed merely because they are duplicative of a negligence claim is also meritless. As demonstrated herein, the FAC alleges detailed facts to support the fraud claim and the aiding and abetting claim. The cases upon which the Auditor Defendants rely are distinguishable because, in those cases, the plaintiffs had not adequately alleged the

### G. The FAC Properly Alleges Causation and Damages

#### 1. The FAC Sufficiently Alleges Facts to Support Its Claim that Auditor Defendants Proximately Caused Damage to Collins & Aikman

Contrary to Auditor Defendant's assertions, at this stage of litigation, Plaintiff is not required to ***prove*** proximate cause.[28] *Anderson v. Airco, Inc.*, No. 02C-12-091 HdR, 2004 Del. Super. LEXIS 210, *23-*24 (Del. Super. Ct. June 30, 2004). Instead, Plaintiff must simply allege facts that support a showing of proximate cause – *i.e.*, that the injury would not have occurred "but for" the defendant's conduct. *See Hansen v. Umtech Industrieservice Und Spedition*, 95-516 MMS, 1996 U.S. Dist. LEXIS 10949, at *23 (D. Del. July 3, 1996).

Here, the allegations in the FAC, which must be accepted as true, clearly demonstrate that Auditor Defendants' role in the accounting improprieties allowed Collins & Aikman's management to continue their improper practices after they were discovered or should have been discovered and revealed to the Audit Committee. Specifically, if Auditor Defendants performed their audits and reviews in accordance with GAAS and GAAP standards, they would have either caused the Company to report its true financial condition or informed the public, including prospective lenders, that the financial statements were not in compliance with GAAP. ¶107. In either case, the public would have known not to rely on the financial

---

requirements of their fraud or aiding and abetting claims. *See* KPMG Mem. at 38; PwC Mem. at 33. The cases upon which the Auditor Defendants rely, however, do not stand for the proposition that fraud, aiding and abetting and negligence claims cannot all be pleaded in the same complaint, as the Auditor Defendants appear to argue. Rather, it is well established that a plaintiff can plead multiple causes of action, even if those claims are inconsistent with each other. Fed. R. Civ. P. 8(d)(2) & (3). Consequently, the question only becomes whether the FAC adequately alleges each claim. Because, here, the FAC does adequately allege the fraud and aiding and abetting claims, those claims should be upheld.

[28] Indeed, KPMG does not cite a single case where a claim was denied upon a motion to dismiss based on a plaintiff's failure to properly plead causation. This is because there is a very low threshold for alleging causation on a motion to dismiss.

statements. *Id.* In other words, "but for" Auditor Defendants' failure to uncover and force disclosure of the Company's true economic condition, Collins & Aikman would never have been able to raise capital by incurring large amounts of unmanageable debt that would subsequently prevent the Company from being repaired. *Id. See AstroPower*, 2007 U.S. Dist. LEXIS 38222, at *11-*12 (causation was sufficiently alleged where auditor defendant's "'"role in [the Company's] improper revenue recognition, asset valuation and other accounting practices ***prevented*** [the Company's] management . . . from being able to discover[] and correct the misstatements'") (emphasis in original); *In re Gouiran Holdings*, 165 B.R. 104, 107 (E.D.N.Y. 1994) (allegations were sufficient because two years of negligently prepared financial statements could have been a substantial cause of the Company's incurring unmanageable debt and filing for bankruptcy protection).

The FAC also alleges the following:

- PwC and KPMG ignored these red flags and failed to adequately plan and perform their audit procedures in a manner reasonably designed to identify the numerous financial improprieties alleged herein. Such failures ***permitted*** Collins & Aikman to issue materially false and misleading financial statements over a multi-year period. (¶160);

- PwC's and KPMG's failures to adequately perform their audit procedures to identify the improprieties alleged herein, and their failures to report the problems described herein, ***permitted*** the accounting irregularities and improprieties to continue over a multi-year period, leading to false and misstated financial statements and resulting in the prolonging of the insolvent Company's life. (¶170);

- Had PwC and KPMG properly discharged their duties and obligations, Director and Officer Defendants' improprieties would have been revealed earlier and Collins & Aikman would have been able to have been reorganized, or at least would have generated more value than it did when it filed for bankruptcy. (¶172); and

- PwC and KPMG, by failing to comply with the standard of care, and failing to perform their duties in compliance with GAAS, substantially assisted, aided or encouraged the perpetuation of the breaches of the officers' fiduciary duties. By failing to bring material misstatements and fraudulent conduct to the attention of the Board of Directors and the Audit Committee,

> and the public, if necessary, PwC and KPMG ***enabled*** the officers to continue their breaches of fiduciary duties owed to Collins & Aikman on an ongoing basis, to the detriment of the Company. (¶244).

[Emphasis added.]

These allegations are more than sufficient to satisfy the liberal pleading requirements for causation.[29] *See Metro. Mortgage & Sec. Co. v. PricewaterhouseCoopers, LLP*, No. CV-05-290-FVS, 2005 U.S. Dist. LEXIS 39851, at *16-*17 (E.D. Wash. Dec. 21, 2005) (allegations that "if [auditor defendant] had discharged its duties, damages to Plaintiffs would have been averted, despite the companies' deficient internal controls and accounting systems" were sufficient to adequately plead causation to survive dismissal); *Gouiran Holdings*, 165 B.R. at 106 (allegations that but for the accountant's malpractice, the plaintiff would not have suffered an increase in debt and embezzlement by its principals was sufficient to establish proximate cause).

In arguing that causation is not sufficiently alleged, KPMG faults Plaintiff for not proving its claims and engages in a complete mischaracterization of the FAC. For example, KPMG argues that "Plaintiff's allegations demonstrate that "[Collins & Aikman's] own business actions . . . caused the Company's alleged damages." KPMG Mem. at 17. However, in support of its argument, KPMG selectively cites only the portions of the FAC describing the management's fraud. *See* KPMG Mem. at 17-18. As the FAC makes clear, the injury caused to Collins & Aikman was a collaborative effort by ***both*** Auditor Defendants and the Company's officers and directors. See ¶¶107, 124, 160, 170; *see Hansen*, 1996 U.S. Dist. LEXIS 10949, at *23 ("there can be more than one proximate cause

---

[29] PwC concedes that the FAC adequately pleads proximate causation.

of an injury"); *Hedrick v. Webb*, No. 01C-06-031-RFS, 2004 Del. Super. LEXIS 379, at *11 (Del. Super. Ct. Nov. 22, 2004).

In a desperate effort to escape liability, KPMG also argues that it is not liable because "the alleged wrongdoing occurred either before or after KPMG's 2003 audit work." KPMG Mem. at 19. Not only is this argument a disputed issue of fact that cannot be resolved on this motion to dismiss, but it is also inaccurate. The FAC specifically alleges misconduct that occurred while KPMG was performing audit services for Collins & Aikman. *See, e.g.*, ¶¶41-42, 66, 71, 93-94, 96-98, 112, 124, 126-128, 173-176. Nevertheless, whether or not KPMG was actually present for the management's misconduct is irrelevant because KPMG was in a position to know about the numerous improprieties (¶106) and had an on-going obligation to make sure the financial statements they audited and reviewed were in accordance with GAAP.[30] *See Rabkin v. Philip A. Hunt Chem. Corp.*, No. 7547, 1987 Del. Ch. LEXIS 522 (Del. Ch. Dec. 17, 1987) (where it is reasonable to conclude that the failure to act would produce a particular result and that result has followed, causation may be inferred); *Gouiran Holdings*, 165 B.R. at 107 (rejecting defendant's argument that the principal's acts were intervening causes, court held that plaintiff's allegations were sufficient for pleading

---

30 KPMG also argues that various acts of misconduct occurred after KPMG's audits took place that break KPMG's connection to the Company's damages. However, any post-audit misdeeds by Collins & Aikman's management were a foreseeable consequence of KPMG's failure to make adequate disclosures in earlier reports. Regardless, consideration of this issue is premature. Under both Michigan and Delaware law, intervening cause, like KPMG's other arguments, is a factual issue reserved for jury determination. *See Di Ossi v. Maroney*, 548 A.2d 1361, 1368 (Del. 1988); *Thomas v. St. Vincent & Sarah Fisher Ctr.*, No. 03-73002, 2006 U.S. Dist. LEXIS 58556, *34 (E.D. Mich. Aug. 21, 2006).

proximate cause because they showed that the accountants were familiar with the company's finances and were in a position to know that funds had been previously misappropriated).[31]

### 2. The FAC Alleges More Than One Legally Cognizable Injury

Auditor Defendants erroneously contend that the only injury alleged in the FAC is one of deepening insolvency. *See* KPMG Mem. at 21; PwC Mem. at 21. Their argument, however, entirely misreads both the FAC and the decisions they cite.

The FAC alleges various injuries to Collins & Aikman other than those based on deepening insolvency or the prolongation of corporate life, including, *inter alia*, causing the Company to "hemorrhage cash and lose money," experience a "significant financial loss" in relation to its internal investigations, "incur unnecessary operating expenses," be "denied the opportunity to continue as a going concern," "suffer[ ] loss of use of its money," "incur . . . costs associated with debt," "loss of profits," "tarnished reputation in the marketplace" and decrease in "value as a business enterprise." ¶¶89, 101, 144, 214-215, 220-221, 225, 229, 235, 241, 246. These are standard damages, none of which are based on a theory of deepening insolvency.

The authorities Auditor Defendants cite are inapposite and do not support dismissal here. First, Auditor Defendants ignore the relevant distinction between deepening insolvency as a ***cause of action*** as opposed to a measure of ***damages***, citing cases that reject

---

31 Delaware and Michigan law do not conflict on issues of causation and application of Michigan law would produce the same result. *See Global Tech., Inc. v. Moto Diesel Mexicana*, No. 05-CV-70069, 2007 U.S. Dist. LEXIS 37090, at *36 (E.D. Mich. May 22, 2007) ("It is well settled that there may be more than one proximate cause for a tortious injury"); *see also Gressley v. Paragon of Mich.*, No. 1 93 C 885, 1994 U.S. Dist. LEXIS 15616, at *12 (W.D. Mich. Sept. 26, 1994) ("'Proximate cause is usually a factual issue for the jury to determine.'").

deepening insolvency as a cause of action for the proposition that deepening insolvency is an impermissible measure of corporate injury.[32] This distinction is important because although Delaware may not recognize a separate cause of action for deepening insolvency, several Delaware courts have recognized deepening insolvency as a theory of damages. *See, e.g., Brown Sch.*, 386 B.R. at 48 (holding that deepening insolvency was a "valid theory of damages"); *Oakwood Homes*, 340 B.R. at 532 (damages were alleged where complaint stated that defendants deepened the insolvency of the Debtors and eventually drove them into bankruptcy). Even courts outside of Delaware have increasingly accepted deepening insolvency as a cognizable theory of damages. *See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 350-51 (3d Cir. 2001); *Crowley v. Chait*, No. 85-2441 (HAA), 2006 U.S. Dist. LEXIS 8894, at *12 (D.N.J. Mar. 7, 2006) ("a claim for damages for 'wrongful prolongation of corporate existence' is cognizable under New Jersey law"); *In re Greater Se. Cmty. Hosp. Corp.*, 353 B.R. 324, 338 (Bankr. D.D.C. 2006) (treating "deepening insolvency as the theory of harm that it was always meant to be"); *In re Amcast Indus. Corp.*, 365 B.R. 91, 119 n.19 (Bankr. S.D. Ohio 2007) (while declining to recognize deepening insolvency as a valid cause of action, finding that "the concept may be useful as a measure of damages"); *In re Global Serv. Group LLC*, 316 B.R. 451, 458 (Bankr. S.D.N.Y. 2004) (plaintiff can recover deepening insolvency as a measure of damages when "the

---

32 KPMG's confusion is evidenced by their nonsensical argument that "Michigan would reject deepening insolvency because established doctrines, such as breach of fiduciary duty and professional malpractice, provide adequate remedies for the wrongs that deepening insolvency purports to address." KPMG Mem. at 23. This argument would only be reasonable if Plaintiff were asserting a claim for deepening insolvency such that other claims would provide similar remedies. However, the FAC does not state a separate claim for deepening insolvency but instead, alleges that deepening insolvency occurred as one of the many results of Auditor Defendants' professional malpractice, breach of contract, fraud and aiding and abetting breach of fiduciary duty.

defendant prolonged the company's life in breach of a separate duty, or committed an actionable tort that contributed to the continued operation of a corporation and its increased debt"); *Hannover Corp. of Am. v. Beckner*, 211 B.R. 849, 854-55 (M.D. La. 1997) ("a corporation can suffer injury from fraudulently extended life, dissipation of assets, or increased insolvency"); *Allard*, 924 F. Supp. at 494 (allowing recovery based on a deepening insolvency theory of damages); *Gouiran Holdings*, 165 B.R. at 107 (motion to dismiss denied where negligently prepared financial statements could have caused the company to incur "unmanageable debt and filing for bankruptcy protection").

These courts have acknowledged that the incurrence of debt and the extension of losses can cause numerous injuries to a corporation, including, "forc[ing] an insolvent corporation into bankruptcy, thus inflicting legal and administrative costs on the corporation" and creating "operational limitations which [can] hurt a corporation's ability to run its business in a profitable manner." *Lafferty*, 267 F.3d at 349-50. "In addition, prolonging an insolvent corporation's life through bad debt may simply cause the dissipation of corporate assets." *Id* at 350. Indeed, *In re Parmalat Sec. Litig.*, the very case that Auditor Defendants cite in support of their argument, recognizes that "while the incurrence of debt by itself cannot deepen a company's insolvency, the Court is not prepared to conclude that it never can cause injury to an insolvent company." 501 F. Supp. 2d 560, 578 (S.D.N.Y. 2007). Unlike *Parmalat*, Plaintiff here alleges that the Company's incurred debt resulted in massive losses in the value and worth of Collins & Aikman and ultimately caused it to file for bankruptcy protection and be liquidated with a resulting loss of going concern value. ¶¶71, 89, 107, 220-221, 225, 229.

Auditor Defendants also misconstrue the holding in *In re Citx Corp.*, 448 F.3d 672 (3d Cir. 2006), which applies Pennsylvania law.[33] Notwithstanding the court's finding that deepening insolvency was not viable as a theory of damages, the court in *Citx* acknowledged that "[w]here an independent cause of action gives a firm a remedy for the increase in its liabilities, the decrease in fair asset value, or its lost profits, then the firm may recover, without reference to the incidental impact upon the solvency calculation." *Id.* at 678; *see also Buckley*, 2007 U.S. Dist. LEXIS 37107, at *28-*29. Here, Plaintiff does not allege a claim for deepening insolvency. Instead, four independent causes of action are alleged that provide, *inter alia*, a remedy for Collins & Aikman's injury in its decrease "in fair asset value" and "lost profits." ¶¶225, 229, 235, 241, 246. These are exactly the type of allegations *Citx* holds must be alleged in order for a company to recover. *See Citx,* 448 F.3d at 678. *Citx* is also distinguishable because there, the court found that the company suffered no actual harm since the additional debt incurred actually decreased, rather than increased, the company's insolvency. *Id.* at 677. Here, however, the additional debt prevented Collins & Aikman from being repaired and resulted in massive losses in the Company's value. ¶¶71, 89, 107. Therefore, contrary to Auditor Defendants' meritless assertions, the FAC clearly states a cognizable injury for its claims.[34]

---

33 Although Auditor Defendants assert that Michigan law applies to all of the claims, they conveniently cite 3rd Circuit cases in support of their deepening insolvency argument. *See* KPMG Mem. at 22; PwC Mem. at 21-24.

34 PwC wrongly asserts that the Plaintiff's pleading of damages is inconsistent. *See* PwC Mem. at 21 n.5. There is nothing inconsistent about Defendants' conduct "hasten[ing] the demise of the Company" in early 2002 (¶38) and later, once Collins & Aikman had already become insolvent beyond repair, prolonging its life (¶177), during which period it incurred massive operating and capital losses.

Moreover, Auditor Defendants cannot prevail on their assumption that Plaintiff's deepening insolvency theory of damages fails because "[n]o Michigan court has authorized a 'deepening insolvency' claim or 'deepening insolvency' damages" (PwC Mem. at 22) and therefore, "Michigan courts would likely reject the deepening insolvency doctrine." KPMG Mem. at 22. Given that no Michigan court has directly addressed the issue, Auditor Defendants cannot speculatively assert that Michigan would not recognize the deepening insolvency theory. Indeed, at least one court has noted that "deepening insolvency was a form of injury compensable under other causes of action asserted under . . . Michigan law." *In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 587, 602 n.74 (S.D.N.Y. 2005) (citing *Allard*, 924 F. Supp. at 494). The only Michigan case that considers the deepening insolvency theory, also suggests that Michigan may recognize a deepening insolvency theory of damages. *MCA Fin. Corp. v. Thorton*, 687 N.W. 2d 850, 858 (Mich. Ct. App. 2004) (stating that the "deepening insolvency theory might provide a basis for recovery by plaintiffs").

Finally, whether it is "likely" that Michigan, or Delaware for that matter, would reject the doctrine of deepening insolvency should not be considered at this stage. To begin with, Plaintiff has alleged other cognizable damages. In addition, on a motion to dismiss, "all reasonable inferences" must be drawn "in the light most favorable to the plaintiffs." *Semerenko*, 223 F.3d at 180. Accordingly, "[w]hile there has been a shift among the courts towards rejecting deepening insolvency as a cause of action and theory of damages, plaintiffs have had, and continue to have, some level of success, particularly at the motion to dismiss stage of proceedings." 1 Robert J. Rosenberg, Michael S. Jurey & Mark A. Broude, *Collier Lending Institutions and the Bankruptcy Code* ¶5.02 (2004); *see also Brown Sch.*, 368 B.R. at 409 (court declined to dismiss a deepening insolvency claim on a motion to dismiss); *In re Sw. Supermarkets, LLC*, 325 B.R. 417, 429 (Bankr. D. Ariz. 2005) (stating that "[a] motion

to dismiss is not an appropriate procedure to test the Trustee's deepening insolvency theory of damages").

### H. The *In Pari Delicto* Defense Does Not Bar Plaintiff's Claims

Auditor Defendants argue that the affirmative defense of *in pari delicto* requires dismissal of all the claims against them.[35] KPMG Mem. at 10; PwC Mem. at 11. "The *in pari delicto* doctrine states that, 'a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim.'" *Brown Sch.*, 386 B.R. at 55 (citing *Lafferty*, 267 F.3d at 354). *In pari delicto* may be used as an affirmative defense to impute misconduct of an officer on the corporation itself, but only if the officer commits the fraud "for the benefit of the corporation." *Buckley*, 2007 U.S. Dist. LEXIS 22211, at *22-*23. However, courts are generally reluctant to bar claims based on *in pari delicto*, especially on a motion to dismiss. *See, e.g., id.* at *15, *22; *In re Student Fin. Corp.*, No. 02-11620(DDS), 2006 U.S. Dist. LEXIS 56759, at *6-*7 (D. Del. Aug. 10; 2006); *Buckley*, 2007 U.S. Dist. LEXIS 37107, at *14. To establish the affirmative defense of *in pari delicto*, Auditor Defendants would have to show that: (1) as a direct result of its own actions, Collins & Aikman bears at least substantially equal responsibility for the violations it seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the law and other important public policies. *AstroPower*, 2007 U.S. Dist. LEXIS 38222, at *14-*15.

As detailed below, the *in pari delicto* defense does not bar any of Plaintiff's claims for the following reasons: (1) Collins & Aikman's management did not act for the benefit of the Company and, therefore, their conduct cannot be imputed to the Company; (2) Auditor Defendants cannot use *in pari delicto* as a means to shield themselves from liability because

---

35 KPMG refers to the *in pari delicto* doctrine as the "wrongful conduct rule."

they are not innocent third parties; and (3) as an affirmative defense, *in pari delicto* cannot support this motion to dismiss.

**1. The Conduct of Collins & Aikman Management Cannot be Imputed to the Company**

As KPMG briefly acknowledges (KPMG Mem. at 11), the "adverse interest exception" is an exception to imputation. The exception applies where the officers' actions were not "'for the benefit of the corporation.'" *Buckley*, 2007 U.S. Dist. LEXIS 22211, at *24 (citing *Lafferty*, 267 F.3d at 359.[36] In other words, "the wrongful conduct of a defendant will not be imputed to the corporation if the action was . . . adverse to the corporation and not for its benefit." *Total Containment*, 335 B.R. at 621. For example, "[w]hen corporate fiduciaries – such as [corporate] managers – have a self-interest in concealing information – such as the falsity of the financial statements that they had helped prepare – their knowledge cannot be imputed to the corporation." *In re HealthSouth Corp. S'holders Litig.*, 845 A.2d 1096, 1108 n.22 (Del. Ch. 2003), *aff'd.*, 847 A.2d 1121 (Del. 2004).

Here, the conduct of Collins & Aikman's management cannot be imputed to the Company because their acts were "adverse" to, and not for the benefit of, Collins & Aikman.

---

36 Auditor Defendants cite *Lafferty* for the proposition that *in pari delicto* bars a suit when "the misconduct of top officers [is] imputed to the company." PwC Mem. at. 11. However, in *Lafferty*, the District Court applied an exception to the adverse interest exception, known as the "'sole' actor exception." 267 F.3d at 359. Under the sole actor exception, where an agent is the "sole representative" of the company, "that agent's fraudulent conduct is imputable to the principal regardless of whether the agent's conduct was adverse to the principal's interests." *Id.* The sole actor exception usually applies to cases in which the agent was also the sole shareholder of the corporation because the rationale for the rule is that the "sole agent has no one to whom he can impart his knowledge or from whom he can conceal it, and that the corporation must bear the responsibility for allowing an agent to act without accountability." *Id.* at 359-60. Clearly, the sole actor exception does not apply in this case because there was no "sole representative" of Collins & Aikman.

The FAC specifically alleges that Collins & Aikman's management was not acting in the Company's interest, but, rather, acting in their own self-interests to the detriment of the corporation by breaching their fiduciary duties to the Company. For example, the FAC alleges the following facts, which must be accepted as true:

- ***Unfortunately for Collins & Aikman***, its creditors, shareholders, customers, vendors and employees, ***instead of dealing with the issues facing the Company in an open and legal manner, Defendants went to extreme measures to conceal the true financial results of operations and condition of the Company, embarking on a fraudulent accounting scheme*** which hastened the demise of the Company and left it unable to right itself. (¶38);

- As detailed further herein, from the fourth quarter of 2001 to the time of the Company's bankruptcy filing, ***Defendants employed a variety of fraudulent schemes.... In doing so, the Director and Officer Defendants were solely motivated by their own self interests in receiving compensation and salvaging their own reputations.*** (¶39);

- ***Where Collins & Aikman's financial difficulties could have been overcome by proper planning and financial support, Defendants instead deceived their customers and creditors, failing to disclose any difficulties they were experiencing, with the intent of concealing the financial condition of Collins & Aikman and continuing in their positions and personally profiting therefrom.*** Eventual revelation of the Company's financial problems led to a disastrous outcome and caused the Company to collapse. (¶40);

- In order to avoid triggering debt covenants, ***Stockman and others acting at his direction engaged in the accounting schemes detailed herein with the intent of concealing the financial condition of Collins & Aikman so that Stockman could preserve his reputation as an "investment wizard" and Director and Officer Defendants could continue in their positions and personally profit therefrom. Stockman, in particular, had financial incentives to engage in the fraudulent schemes because he, along with Heartland LP, invested approximately $360 million in Collins & Aikman.*** Other Defendants that participated in fraudulent transactions with Collins & Aikman, such as McCallum, also personally benefited from the fraud because it allowed them to continue to engage in profitable business with the Company. (¶70);

- During 2002, 2003 and 2004, ***Defendants, acting in their own self interests to continue in their positions and personally profit therefrom, caused Collins & Aikman to file and disseminate to its shareholders materially false and misleading Proxy Statements*** which failed to disclose that the Company was reporting financial results which were artificially inflated by

the improper accounting practices detailed herein. ***In each of the Proxy Statements, Collins & Aikman sought shareholder approval for, among other things, the election of directors, employee stock option plans and compensation policies.*** (¶94);

- The ***Proxy Statements were an essential link in the accomplishment of the continuation of Defendants' fraudulent scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policies.*** (¶190); and

- The ***Director and Officer Defendants and Heartland personally benefited by engaging in the conduct described above*** . . . . The ***Director and Officer Defendants*** and Heartland acted with the intent of concealing the true financial condition of the Company and increasing its borrowings to a level far in excess of its ability to pay ***in order to continue in their positions and personally profit therefrom.*** (¶197).

[Emphasis added.]

Clearly, in cases such as this, where allegations of management's self interest are made, the adverse interest exception applies. Accordingly, the managements' misconduct cannot be imputed to Collins & Aikman and *in pari delicto* cannot be invoked to defeat Plaintiff's claims.

Despite the explicit allegations of management's self interest, Auditor Defendants nevertheless argue that management's misconduct benefited Collins & Aikman. *See* KPMG Mem. at 12; PwC Mem. at 15. Not only is this argument false, but it misconstrues the law as well. Artificially inflating financial results, borrowing funds and prolonging an insolvent company's life are not necessarily beneficial to a company. *See In re Jack Greenberg, Inc.*, 212 B.R. 76, 84-85 (Bankr. E.D. Pa. 1997) (finding that inflating a company's financials and allowing it to take on additional loans is not a benefit when it puts the company in default of its loan agreements, the court rejected defendant's imputation defense); *see also NCP Litig. Trust v. KPMG LLP*, 901 A.2d 871, 888 (N.J. 2006) ("inflating a corporation's revenues and

enabling a corporation to continue in business 'past the point of insolvency' cannot be considered a benefit to the corporation").

> Indeed, even where the purpose of a fraud was to continue a corporation past insolvency in order to give its management time "to resolve [the corporation's] underlying business problems, such a motivation does not . . . necessarily equate to a finding that the fraudulent actors intended to benefit [the corporation]. . . . [A] reasonable trier of fact could conclude that the true motive of the wrongdoers was the preservation of their employment, salaries, . . . and reputations . . ."

*In re CBI Holding Co.*, 529 F.3d 432, 451 (2d Cir. 2008).

### 2. Auditor Defendants Cannot Rely on the *In Pari Delicto* Defense to Avoid Liability Because They Are Not Innocent Third Parties

Even assuming, *arguendo*, that Collins & Aikman's management was acting for the benefit of the Company (which they were not), the *in pari delicto* defense is still inapplicable and Auditor Defendants cannot use it as a means to avoid liability for their own misconduct. The purpose of the *in pari delicto* and imputation defenses is to protect innocent third parties. *NCP*, 901 A.2d at 882 (court rejected KPMG's imputation defense because "KPMG [was] not a victim . . . in need of protection"). Application of the *in pari delicto* defense in this case would result in a dramatically inequitable result. It would allow Auditor Defendants to insulate themselves from liability for their own negligence and misconduct. *Cf. HealthSouth*, 845 A.2d at 1107 (having failed to ensure the filing of accurate financial statements, defendant could not "wield the doctrine of *in pari delicto* to escape liability").

Auditor Defendants are certainly not "innocent third parties" in need of protection.[37] Indeed, "[a]llowing [Auditor Defendants] to avoid liability . . . would not promote the

---

[37] The FAC is replete with allegations of Auditor Defendants' misconduct, including, *inter alia*, their violation of "numerous professional standards," and indifference to "numerous red flags warning them of the massive financial fraud." ¶¶102-115, 149-172.

purpose of the imputation doctrine – to protect the innocent," but would, instead, prevent Collins & Aikman's creditors, as innocent third parties, from recovering the debt owed to them.[38] *See NCP*, 901 A.2d at 882 (N.J. 2006). Where, as here, "'recovery from defendants would benefit the creditors of the estate, not the wrongdoers,'" *in pari delicto* does not apply. *See Jack Greenberg*, 212 B.R. at 90-91; *see also In re Personal & Bus. Ins. Agency*, 334 F.3d 239, 246-47 (3d Cir. 2003) ("'equitable defenses such as the doctrine of imputation that may be sustainable against the corporation may fail to act as a total bar to recovery when the beneficiaries of the action are the corporation's innocent creditors'"). Moreover, there is no question that Collins & Aikman's wrongdoing officers and directors will not benefit from this action because they were either removed from or resigned their positions several years ago.[39] *See Personal & Bus. Ins. Agency*, 334 F.3d at 246 (finding that the "defense of *in pari delicto* should not be applied when a bad actor has been removed and the defense is serving only to bar the claims of an innocent successor"); *Scholes*, 56 F.3d at 754 (court noted that "the defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated"); *Marion v. TDI, Inc.*, No. 02-7032, 2004 U.S. Dist. LEXIS 9754, at *10 (E.D. Pa. May 27, 2004) (court refused to apply *in pari delicto* to bar claims of plaintiff-receiver who brought action as an innocent successor in interest). Accordingly, Plaintiff, as innocent successor to Collins & Aikman's claims, should not be barred from recovering on behalf of

---

[38] Under the Chapter 11 Plan of Reorganization, the proceeds of these claims do not go to Collins & Aikman, but are "to be distributed to the creditors of the Debtors' estates." ¶6.

[39] Defendant Stockman was forced by the Board of Directors to resign his positions at the Company on May 12, 2005 (¶90); Defendant Stepp resigned in October 2004 (¶8); Defendant Galante was terminated on July 29, 2005 (¶13); Defendant Becker and Defendant McCallum resigned on May 6, 2004 (¶¶14-15); Defendant Evans resigned in August 2002 (¶16); and Defendant Tredwell resigned on May 10, 2006 (¶18).

the debtor's estate because neither Plaintiff, nor the Company's creditors, participated in the misconduct alleged in the FAC. Indeed, the Company's creditors were the victims of the misconduct.

### 3. Auditor Defendants' *In Pari Delicto* Defense is an Affirmative Defense That Cannot be Considered on a Motion to Dismiss

An affirmative defense, such as *in pari delicto,* cannot be considered on a motion to dismiss unless it arises on the face of the complaint. *Oakwood Homes*, 340 B.R. at 536 (holding that at the motion to dismiss stage, whether the plaintiff company participated in fraud was not determinative of the *in pari delicto* issue); *see also Total Containment*, 335 B.R. at 621 (where complaint alleged that defendants' conduct benefited themselves, *in pari delicto* was "not established on the face of the complaint and [could not] be considered in the context of a motion to dismiss"). In other words, *in pari delicto* cannot be resolved upon a motion to dismiss when the issues involved are based on fact-specific determinations. *Buckley*, 2007 U.S. Dist. LEXIS 37107, at *16 (noting that *in pari delicto* would lead to an inequitable result because auditors would not be deterred from future wrongdoing if the claims were dismissed). "The liberal standard that governs a motion to dismiss has particular relevance to imputation cases because '[d]eciding whether to permit an auditor to utilize imputation requires a detailed factual analysis of the dispute.'" *NCP*, 901 A.2d at 878.

Although Auditor Defendants allege otherwise, an *in pari delicto* defense is inapplicable at this stage of the pleadings because the applicability of the doctrine depends

on fact-specific inquiries that cannot be resolved at this stage.[40] Specifically, application of *in pari delicto* hinges upon whether Collins & Aikman's management acted for their own benefit or for the benefit of the Company. As alleged in detail throughout the FAC, the wrongdoing of Collins & Aikman's management cannot be imputed to the Company because the officers and directors were not acting "'for the benefit of the corporation.'" *See Buckley*, 2007 U.S. Dist. LEXIS 22211, at *23. Drawing all reasonable inferences in the light most favorable to Plaintiffs, it would be premature at this stage to bar all of Plaintiff's claims on *in pari delicto* grounds. *See id.* at *25 (court rejected an *in pari delicto* defense where "further

---

[40] Even under Michigan law, *in pari delicto* would be inapplicable. An *in pari delicto* defense is inappropriate where, as here, "facts are disputed by the parties and have not yet been presented to the factfinder." *Kirkland v. E.F. Hutton & Co.*, 564 F. Supp. 427, 437 (E.D. Mich. 1983). The Michigan cases that Auditor Defendants cite are clearly distinctive. The most important distinction is that none of the cases cited by Auditor Defendants permit the *in pari delicto* defense on a motion to dismiss. Instead, all of the cases Auditor Defendants reference are summary disposition cases and other cases that require consideration of evidence. *See Orzel v. Scott Drug Co.*, 537 N.W.2d 208 (Mich. 1995); *Scalici v. Bank One, NA*, No. 254632, 2005 WL 2291732 (Mich. Ct. App. Sept. 20, 2005); *Transnation Title Ins. Co. v. Livingston,* No. 243509, 2004 WL 203075 (Mich. Ct. App. Feb. 3, 2004); *MCA Fin.*, 687 N.W.2d 850; *Glazier v. Lee*, 429 N.W.2d 857 (Mich. Ct. App. 1988). A motion for summary disposition is the equivalent of a summary judgment motion, not a motion to dismiss as KPMG asserts. *Fewless v. Bd. of Educ.*, 208 F. Supp. 2d 806, 807 n.1 (W.D. Mich. 2002). As such, the standard for a motion to dismiss is more lenient than the summary disposition standard. *See Bintliff-Ritchie v. Am. Reinsurance Co.*, No. 07-1527, 2008 U.S. App. LEXIS 14788, at *8 (3d Cir. July 11, 2008). Indeed, the case that KPMG calls "closely analogous to the present one," *MCA Fin.*, held that summary disposition was appropriate because there was "no evidence that the wrongdoers were motivated by self-interest." 687 N.W.2d at 861. Since evidence is not required at this stage and the FAC adequately alleges that Collins & Aikman officers and directors acted solely in their own interests, the *in pari delcito* defense should not be considered. In addition, all of the cases cited by Auditor Defendants consist of plaintiffs who themselves engaged in some sort of wrongdoing. As explained in *Orzel*, cited by Auditor Defendants, the purpose of the *in pari delicto* doctrine, or wrongful conduct rule, is to prevent wrongdoers from using the court system to profit from their own illegal conduct. 537 N.W.2d at 213 (wrongful conduct rule barred plaintiff drug addict from recovery against pharmacist). Here, there is no concern that Collins & Aikman will somehow profit from this lawsuit. To the contrary, it is the Litigation Trust, rather than the corporation itself, that is the plaintiff here, and any recovery will be used to compensate Collins & Aikman's creditors.

development of the facts" was necessary); *In re Exide Techs., Inc.*, 299 B.R. 732, 752 (Bankr. D. Del. 2003) ("[a] plaintiff is not required to plead in the complaint all requirements for a claim as well as contemplate and plead in anticipation of all affirmative defenses that may lie against such claim"); *see also Buckley*, 2007 U.S. Dist. LEXIS 37107, at *26 (motion to dismiss was denied because court refused to determine whether insiders acted to benefit the corporation "based solely on the pleadings in [the] complaint and without the benefit of a factual record").

**I. Plaintiff's Claims Against PwC Are Timely**

In another attempt to escape liability, PwC raises the inapplicable affirmative defense of statute of limitations and argues that all claims against it are time-barred.[41] Although PwC correctly acknowledges that bankruptcy code 11 U.S.C. §108(a) extends the statute of limitations for an additional two years after filing for bankruptcy (PwC Mem. at 24), PwC wrongly asserts that the statute of limitations had already run by May 17, 2005, the date Collins & Aikman filed for bankruptcy.

PwC premises its argument on the assumption that the shorter statute of limitations period between Delaware and Michigan should be used. This is a complete misapplication of Delaware's borrowing statute,[42] which, in relevant part, provides:

> ***Where the cause of action originally accrued in favor of a person who at the time of such accrual was a resident of this State, the time limited by the law of this State shall apply.***

---

41 KPMG does not make any argument that the claims against it are barred by the statute of limitations.

42 Because statutes of limitations are generally considered procedural rather than substantive law, a federal court will apply the statute of limitations of the forum state. *See Norman v. Elkin*, No. 06-005-JJF, 2007 U.S. Dist. LEXIS 72725, at *9-*10 (D. Del. Sept. 26, 2007) (conflict of law doctrine does not apply to procedural issues such as statute of limitations).

10 Del. Code §8121. [Emphasis added.]

The borrowing statute expressly requires Delaware's statute of limitations apply to a Delaware resident, even if the limitations period is longer than that of the state where the cause of action arose. In Delaware, a corporation is a resident of the state of incorporation. *See David B. Lilly Co. v. Fisher*, 18 F.3d 1112, 1114, 1117 (3d Cir. 1994) (applying Delaware's statute of limitations under 10 Del. Code §8121 because the corporation was a Delaware resident since it was incorporated there); *see also Rollins Envtl. Servs., Inc. v. WSMW Indus., Inc.*, No. 244 CIV.A.1977, 1979 WL 193328, at *1 (Del. Super. Ct. Jan. 24, 1979) (company incorporated in Delaware was a Delaware resident for purposes of 10 Del. Code §8121); *D'Angelo v. Petroleos Mexicanos*, 398 F. Supp. 72, 79 (D. Del. 1975) (Delaware corporation was entitled to Delaware statute of limitations under 10 Del. Code §8121). Here, the claims accrued in favor of Collins & Aikman, which at the time of accrual was incorporated in Delaware.[43] Accordingly, Collins & Aikman was a Delaware resident and, therefore, Delaware's statute of limitations should apply to Plaintiff's claims.[44]

---

43 Whether the Litigation Trust, as Plaintiff-successor, is a Delaware resident is irrelevant because Collins & Aikman's claims were assigned to Plaintiff under the confirmed Plan. *Brossman v. FDIC*, 510 A.2d 471, 473 (Del. 1986) (where a cause of action originally accrued in favor of a Delaware bank, which assigned its interest to the FDIC, a nonresident corporation, the Delaware statute of limitations applied).

44 PwC contests the fact that Collins & Aikman is a Delaware resident, citing only New York cases in support of its argument. While PwC argues that New York law should be applied to determine residency, the authorities it cites are inapposite. For example, PwC cites *Cerullo v. Harper Collins Publishers, Inc.*, No. 01C-03-21-CHT, 2002 WL 243387, at *3 (Del. Super. Ct. Feb. 19, 2002), for the proposition that New York law should be applied to determine the residency of a Delaware corporation. *See* PwC Mem. at 26. However, *Cerullo* merely used "guidance from the New York courts" to determine the residency of an individual, not a corporation. 2002 WL 243387, at *3. As a corporation, Collins & Aikman is a resident of the state of incorporation, *i.e.*, Delaware. *See Ballard Med. Prods. v. Concord Labs., Inc.*, 700 F. Supp. 796, 798 (D. Del. 1988) (the judicial district where the defendant resides is the state where the defendant is incorporated).

### 1. Plaintiff's Claims Were Brought Within Delaware's Three Year Limitations Period

Plaintiff's claims are timely under Delaware's three year statute of limitations period. *See* 10 Del. Code §8106.[45] Under §8106, "[t]he statute of limitations begins to run at the time the alleged harmful act is committed, regardless of plaintiff's knowledge of the act." *Ryan v. Gifford*, 918 A.2d 341, 359 (Del. Ch. 2007). Where a violation is continuing, however, "a plaintiff may . . . institute an action at any time during which the alleged violation has taken place." *Amico v. New Castle County*, 101 F.R.D. 472, 480-81 (D. Del. 1984), *aff'd. without op.*, 770 F.2d 1066 (3d Cir. 1985). "'Such a charge or action will not be barred by the applicable statute of limitations, even though some of the acts complained of occurred outside of the limitations period.'" *Id.*

While PwC concedes that Plaintiff's claims are timely under Delaware's statute of limitations with respect to any misconduct that occurred after the 2001 audit (PwC Mem. at 29), PwC wrongly asserts that it cannot be liable for its 2001 audit. The claims against PwC arise from its failure to comply with accounting standards, its failure to act and its knowing participation in the accounting scheme, which was continuously occurring throughout PwC's relationship with the Company. The financial statement audits cannot be "segmented into independent actions producing independent harms" as PwC suggests, but rather, makes up one continuous act of misconduct.[46] The continuous misconduct consisted not only of

---

[45] All of Plaintiff's claims against PwC fall under this statute.

[46] In asserting that the "continuous negligence" doctrine must be separately pleaded, PwC blatantly misinterprets *Ewing v. Beck*, 520 A.2d 653, 662 (Del. 1987). In *Ewing*, the court stated that "allegations of negligence must be pled with particularity and should be examined separately for statute of limitations purposes." *Id.* This simply means that courts should determine the statute of limitations issue separately from the issue of whether negligence has been sufficiently pled.

PwC's improper audits, but also of its quarterly reviews of Collins & Aikman's financial statements, among other services provided to the Company.[47] In other words, the 2001 audit is just part of the overall violation by PwC that continued until PwC no longer performed any services for the Company. Accordingly, the statute of limitations does not begin to run until the termination of PwC's services in June 2003.[48] *See Devex Corp. v. Gen. Motors Corp.*, 579 F. Supp. 690, 703 (D. Del. 1984) ("'[w]here an attorney's employment is regarded as being single and continuous, his claim for services is not subject to the running of the statute of limitations until the termination of the employment'"), *aff'd without op.*, 746 F.2d 1466 (3d Cir. 1984). Collins & Aikman filed for bankruptcy on May 17, 2005, less than three years after PwC discontinued its service in June 2003, which places Plaintiff's claims against PwC within Delaware's statute of limitations period, as extended by 11 U.S.C. §108(a).

Moreover, since Collins & Aikman could not have known about management's misconduct and Auditor Defendants' participation in the misconduct until at least 2005,

---

47 In an attempt to distort Plaintiff's allegations, PwC argues that the malpractice claim is limited to PwC's "auditing services." PwC Mem. at 27. As the FAC clearly alleges, however, the malpractice claim against PwC includes ***all*** services provided to Collins & Aikman from 2001-2003, including reviews of quarterly financial statements. ¶¶33, 102-104, 107, 224.

48 Even if Michigan's statute of limitations applied, Plaintiff's claims would not be barred because under Mich. Comp. Laws §600.5838, a malpractice claim "'accrues at the time [defendant] discontinues serving the plaintiff in a professional . . . capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.'" *Levy v. Martin*, 620 N.W. 2d 292, 294 (Mich. 2001). In Michigan, the continuous treatment rule has been applied to auditors. *Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1093 (W.D. Mich. 1997) ("Where the parties have a longstanding relationship with respect to multiple interrelated matters, the statute of limitations generally has been held to run from the last date of service on all matters.") Here, PwC continued to provide services to Collins & Aikman until at least June 2003. ¶104; *see also* Form 8-K, dated June 20, 2003 (PwC Ex.3). To the extent that PwC disputes this date, this is a question of fact not appropriate on a motion to dismiss.

when the Company's Audit Committee conducted an internal investigation, the statute of limitations is tolled by the "discovery rule." *Coleman v. PriceWaterhouseCoopers, LLC*, 854 A.2d 838, 842 (Del. 2004). Under the discovery rule, the statute of limitations begins to run upon discovery of facts "'constituting the basis of the cause of action ***or*** the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry'" notice. *Id.* (Emphasis in original.) The discovery rule allows tolling of the statute of limitations where (1) "there is evidence of concealment or fraud," or (2) "injury is 'inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of.'"[49] *Island Farm, Inc. v. Master Sidlow & Assocs., P.A.*, No. 06C-03-206 (PLA), 2007 Del. Super. LEXIS 276, at *6 (Del. Super. Ct. Sept. 20, 2007); *see also Royal Indem. Co.*, 479 F. Supp. 2d at 429 (statute of limitations was tolled where plaintiffs alleged that defendants fraudulently concealed their wrongdoing and plaintiffs could not have learned of defendants' knowing participation in the fraudulent scheme). These circumstances are especially likely to exist in cases involving accountant malfeasance, as is the case here, "because of the special character of the relationship between the professional and the client." *Coleman*, 854 A.2d at 842 (applying the discovery rule in an accounting malpractice case against PwC); *see also Isaacson, Stolper & Co. v. Artisan's Sav. Bank*, 330 A.2d 130 (Del. 1974) (discovery rule was applied to an accounting malpractice claim to toll the statute of limitations).

Here, Collins & Aikman could not have known about the accounting scheme until it was revealed by the Audit Committee investigation in 2005, because the wrongful conduct

---

49 Michigan similarly recognizes a discovery rule so that in certain situations "a claim accrues when a reasonably diligent plaintiff 'knew or should have known' of the wrong." *Busch Oil Co. v. Amoco Oil Co.*, No. 5:94-CV-175, 1996 U.S Dist. LEXIS 4705, at *31 (W.D. Mich. Feb. 20, 1996).

was fraudulently concealed. Indeed, as alleged in the FAC, Defendants went to extreme measures to conceal the true financial results of operations and condition of the Company. ¶38. Although the Audit Committee had conducted an earlier investigation in 2003, the Company could not have discovered any improprieties at that time because certain executives and a board member provided the Audit Committee with false documents and continued to conceal the fraudulent accounting scheme. ¶97. As a result, Collins & Aikman could not (and indeed did not) have any knowledge about the accounting improprieties until the March 2005 internal investigation, when the Audit Committee investigation uncovered that from 2001 to 2005, several Collins & Aikman executives had engaged in inappropriate conduct. ¶100. Therefore, Collins & Aikman's claims are not barred by Delaware's three year statute of limitations, as extended.

### J. The Litigation Trust Has Standing to Bring This Suit Against PwC.

PwC argues that the Litigation Trust does not have standing to sue PwC because Collins & Aikman could not assign its rights to the Litigation Trust under state law. PwC Mem. at 36-40. First, it is not surprising that PwC throws its "standing" argument in at the end of its memorandum. The standing argument is completely meritless, and the only way PwC can make the argument is to misconstrue the Litigation Trust and its purpose for bringing this suit. PwC argues that because its contract with Collins & Aikman states the Company's rights cannot be assigned, the "assignment" of the claims to the Litigation Trust by the bankruptcy court contradicts state law, which is not preempted by bankruptcy law. Therefore, says PwC, the Litigation Trust has no standing to sue. To better understand PwC's argument and its lack of merit, a background of bankruptcy law and how and why the Litigation Trust was established is necessary.

As stated in the FAC, under Chapter 11 bankruptcy law, the United States Bankruptcy Court for the Eastern District of Michigan confirmed a plan of reorganization for Collins & Aikman (the "Plan"). ¶6. Under this Plan, the Litigation Trust was established in order to bring all claims and causes of action to which Collins & Aikman were entitled for the benefit of the creditors of Collins & Aikman's estate. *Id.* The proceeds of the claims, as proceeds of the estate, would then be distributed to the creditors according to the Plan. *Id.*

Under bankruptcy law, 11 U.S.C.S. §1123(a) allows the Plan to do certain things, "[n]otwithstanding any otherwise applicable nonbankruptcy law." In other words, the bankruptcy laws can preempt state laws and contractual prohibitions. PwC does not challenge this. Significantly, PwC admits that the bankruptcy laws allow a debtor's causes of action to pass ***into*** the debtor's estate, to become assets of the estate, regardless of anti-assignment state laws. PwC argues, however, that the bankruptcy laws do not allow the estate to then assign those causes of action to a third party, citing *Integrated Solutions v. Serv. Support Specialties*, 124 F.3d 487 (3d Cir. 1997). PwC's argument rises or falls upon whether the "assignment" to the Litigation Trust was an assignment to a "third party." Unfortunately for PwC, the Litigation Trust is not a "third party" but rather stands in the shoes of the debtor's estate in order to bring causes of action belonging to the estate ***on behalf of the creditors***. Such an assignment is expressly permitted by 11 U.S.C. §1123(b)(3)(B), which permits a plan, like the Plan here, to provide for the retention and enforcement of causes of action that are not settled under the plan by the debtor, the trustee, or a representative of the estate appointed for the purpose of pursuing and enforcing such claims. 11 U.S.C. §1123(b)(3)(B); *In re CVEO Corp.*, 01-0223 (MFW), 2004 Bankr. LEXIS 2123, at *10 (Bankr. D. Del. Dec. 15, 2004) (holding that Plaintiff had standing to bring an action because Debtor's Chapter 11 plan designated the Plaintiff as Plan Trustee and

empowered it to prosecute Debtor's avoidance actions for the benfit of creditors); *In re Greater Se. Cmty. Hosp. Corp.*, 333 B.R. 506, 538 (Bankr. D.D.C. 2005) (liquidating trust had standing because it "was not some third party stranger to the proceedings; rather, it was a "representative of the estate" . . . with the right to retain and enforce the claims of the estate"); *see also In re Sweetwater,* 884 F.2d 1323, 1326-27 (10th Cir. 1989) (finding it proper to appoint a representative to pursue actions under avoiding powers usually reserved for trustee or debtor in possession because representative pursues these claims not for personal benefit but for the benefit of certain unsecured creditors).

The case upon which PwC relies does not support its argument that the Litigation Trust lacks standing; rather, it ***supports*** the Litigation Trust's standing in this case. Like PwC, the *Integrated Solutions* court concludes that "[g]iven §541's broad scope, its legislative history, and the weight of authority from other jurisdictions, we conclude that state laws prohibiting the assignment or transfer of property, including causes of action and tort claims, do not prevent the inclusion of such property in the bankruptcy estate." *Id.* at 491. In *Integrated*, however, the assignment at issue did not involve a litigation trust bringing causes of action to bring the recovery ***into the estate***, for the benefit of the creditors. To the contrary, *Integrated Solutions* involved a third party who ***purchased*** assets from the debtor's estate and later attempted to bring suit ***on its own behalf***. *Id.* at 489. Thus, the *Integrated Solutions* court held that the bankruptcy trustee was not allowed "to sell [estate] property in violation of state law transfer restrictions." *Id.* at 493.

*Integrated Solutions* is clearly distinguishable from this case. Here, the Litigation Trust was designated and approved by the bankruptcy court as the successor to the debtors and vehicle through which the estate itself would bring cases on behalf of the creditors, *i.e.*, bringing assets into the estate. Anything gained by this action is ***still property of the***

***successor to the estate.*** Thus, nothing has moved out of the estate, whether by assignment or sale. PwC's argument is thus, based upon misinformation and misconstruction of the purpose and design of the Litigation Trust, and should be disregarded.[50]

## V. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Auditor Defendants' motions to dismiss be denied in their entirety.[51]

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
Samuel H. Rudman
David A. Rosenfeld
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
*Special Counsel for Collins & Aikman Corporation, et al.*

ROSENTHAL, MONHAIT & GODDESS, P.A.
By: *Carmella P. Keener*
Carmella P. Keener (Del. Bar #2810)
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899
302/656-4433
ckeener@rmgglaw.com
*Attorneys for Plaintiffs*

---

50 For this same reason, the holdings of *In re Kaiser Aluminum Corp.*, 343 B.R. 88 (D. Del. 2006), and *In re Federal-Mogul Global Inc.*, 385 B.R. 560 (Bankr. D. Del. 2008), are not inapposite. These courts, like *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 218-19 (3d Cir. 2004), and PwC also agree that "Section 541(c)(1) and Section 1123(a)(5)(B) of the Bankruptcy Code expressly permits the assignment of a debtor's interest . . . ***to a trust*** or other entity," even where there is an applicable anti-assignment provision. *See In re Kaiser Aluminum Corp.*, 343 B.R. at 95 (emphasis added). Because there has been no attempt to assign the causes of action ***from the estate*** to a third party in this case, PwC's other argument based on *Combustion Eng'g* and *Integrated Solutions*, that the trustee cannot transfer or sell property of the estate ***out of the estate*** to third parties against applicable state law, is completely irrelevant. PwC's reliance upon *PG&E Co. v. Cal. ex rel. Cal. Dep't of Toxic Substances Control*, 350 F.3d 932, 937 (9th Cir. 2003), is curious. Indeed, *PG&E* did not even involve an assignment. Rather, it involved the question of whether federal energy regulations would apply to the surviving companies after bankruptcy, which is clearly inapplicable to the case here. Moreover, *PG&E* does not dispute that causes of action become the property of the estate, in benefit to the creditors, regardless of anti-assignment state laws.

51 In the event that the Court grants dismissal, in whole or in part, Plaintiff respectfully requests an opportunity to amend the FAC. *See Cortec Ind. US, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead.").

**CERTIFICATE OF SERVICE**

I, Carmella P. Keener, hereby certify that on August 15, 2008, I electronically filed with the Clerk of Court the foregoing document using CM/ECF which will send notification of such filing to the following:

Thomas P. Preston
Blank Rome LLP
Chase Manhattan Centre
1201 Market Street
Suite 800
Wilmington, DE 19801

Robert S. Saunders
Skadden Arps Slate Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899

Richard L. Horwitz
Peter J. Walsh, Jr.
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801

Peter B. Ladig
Stephen B. Brauerman
The Bayard Firm, P.A.
222 Delaware Ave., Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130

Christian Douglas Wright
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

Thomas G. Macauley
Zuckerman Spaeder LLP
919 Market Street, Suite 990
Wilmington, DE 19801

Anne C. Foster
Robert J. Stearn, Jr.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801

Kenneth J. Nachbar
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

James L. Holzman
J. Clayton Athey
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899

Vernon R. Proctor
Proctor Heyman LLP
1116 West Street
Wilmington, DE 19801

Albert H. Manwaring, IV
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
Wilmington, DE 19801

and also by electronic mail upon:

Michael Shapiro (mshapiro@clm.com)
Gerald Griffin (griffin@clm.com)
Carter Ledyard & Milburn LLP
2 Wall Street
New York, NY 10005

Christopher Harris (christopher.harris@lw.com)
Seth L. Friedman (seth.friedman@lw.com)
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022

*/s/ Carmella P. Keener*

Joseph A. Rosenthal (Del. Bar No. 234)
Carmella P. Keener (Del. Bar No. 2810)
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899
(302) 656-4433
jrosenthal@rmgglaw.com
ckeener@rmgglaw.com

*Delaware Attorneys for Plaintiffs*