UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

| | |
|---|---|
| COLLINS & AIKMAN CORPORATION ) <br> and COLLINS & AIKMAN PRODUCTS ) <br> CO., as Debtors in Possession, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> DAVID A. STOCKMAN, et al., ) <br> ) <br> Defendants. ) | C.A. No. 07-265-SLR-LPS |

**NOTICE OF SUBSEQUENT AUTHORITY
PURSUANT TO D.DEL. LOC. R. 7.1.2(b)**

COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP
Samuel H. Rudman
David A. Rosenfeld
58 South Service Road, Suite 200
Melville, NY  11747
(631) 367-7100

ROSENTHAL, MONHAIT &
 GODDESS, P.A.
Joseph A. Rosenthal (#234)
Carmella P. Keener (#2810)
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE  19899
(302) 656-4433
jrosenthal@rmgglaw.com
ckeener@rmgglaw.com

Date filed:  November 10, 2008

Plaintiff Collins & Aikman Litigation Trust respectfully submits the following supplemental authorities, which are pertinent to issues discussed in Plaintiffs' Omnibus Memorandum of Law in Support of Plaintiffs' Opposition to Defendants' (Other than Auditor Defendants) Motions to Dismiss ("Opp. to Defs MTD") [DI 139] and Plaintiffs' Omnibus Memorandum of Law in Support of Plaintiffs' Opposition to Auditor Defendants' Motions to Dismiss ("Opp. to Aud MTD") [DI 140]:

1. *In re Bristol Myers Squibb Co. Secs. Litig.*, No. 07 Civ. 5867 (PAC), **2008 WL 3884384 (S.D.N.Y. Aug. 20, 2008) (attached hereto as Exhibit A).**

Defendant Paul C. Barnaba ("Barnaba") argued in his motion to dismiss that, because his alleged conduct in the rebate scheme, as outlined in the Amended Complaint, was conducted "behind-the-scenes" and "too remote," he cannot be held liable for violations of §10(b) of the Securities Exchange Act of 1934 under the U.S. Supreme Court's decision in *Stoneridge Inv. Partners LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761 (2008). Barnaba Mem. at 11-14. [DI 129]. Defendant Elkin B. McCallum ("McCallum") likewise cites *Stoneridge* for the argument that, even if he "had engaged in any deceptive acts to enable C&A to carry out a round trip arrangement[,] . . . no member of the investing public had knowledge, either actual or presumed, of such alleged deceptive acts during the relevant times." McCallum Mem. at 17. [DI 100].

In *In re Bristol Myers Squibb*, the defendant similarly cited *Stoneridge* for the proposition that his background participation in a fraudulent settlement was too remote for liability under Section 10(b). The district court nevertheless held:

> Here, however, Bodnar's behavior is at the heart of Bristol-Myers's false and misleading conduct. It is neither implausible, nor too remote to find that the investing public relied on the announcement of the Apotex litigation settlement in deciding whether or not to invest in Bristol-Myers stock, and Bodnar was directly responsible for the settlement agreements. Bodnar made no public statements himself, but investors relied on his good faith in

- 1 -

> negotiating the Apotex settlement agreement and committing the Company to its terms. Furthermore, unlike in *Stoneridge* where the defendants' "deceptive acts were not communicated to the public," Bodnar's misconduct and deceptive acts were communicated to the public here through the disclosure of the regulatory rejection of the settlement, the disclosure of the amended settlement's terms, and the revelation of the secret oral side agreements. Bodnar's actions are directly tied to the Apotex settlement, the Justice Department investigation, and the alleged misstatements and omissions. These allegations are more than adequate to satisfy 10(b) and the requirements of the *Stoneridge* decision.

*In re Bristol Myers Squibb*, 2008 WL 3884384, at *20.

The application is seamless here. Barnaba and McCallum, like Defendants David A. Stockman ("Stockman"), J. Michael Stepp ("Stepp"), and Daniel R. Cosgrove ("Cosgrove"), were critical players in the rebate scheme to promise "future business to suppliers in exchange for immediate recognition of rebates," *i.e.*, McCallum was the recipient of the payments that Barnaba and the other Defendants engineered. Am. Compl., ¶¶53-69. [DI 90]. The resultant effect of the rebate scheme translated into fraudulent public statements about the company's financial position. *Id.* at ¶¶61-62, 68-69. Similarly, when the scheme began to unravel, Defendants lied to the public about the full extent of the supplier rebate scheme. Therefore, as in *In re Bristol Myers Squibb*, Barnaba and McCallum's actions, as well as the actions of the other Defendants are "directly tied to" – and make each of them individually "responsible for"[1] – the public misstatements arising out of the rebate scheme under §10(b).[2]

---

[1] McCallum is also liable under Section 10(b) for his signature on the public filings that were incorporated into the August 2004 Offering Memorandum. *See* Opp. to Defs MTD at p. 29, n.15 [DI 139], citing *In re WorldCom, Inc. Secs. Litig.*, 294 F. Supp. 2d 392, 419-20 (S.D.N.Y. 2003) ("The very fact that a director is required to sign these critical documents charges the director with power over the documents and represents to the corporation, its shareholders, and the public that the corporation's director has performed her role with sufficient diligence that she is willing and able to stand behind the information contained in those documents.").

2.      *Thabault v. Chait*, 541 F.3d 512 (3d Cir. 2008) (attached hereto as Exhibit B).

   (a)     **Deepening Insolvency**

In their motions to dismiss, various Defendants, relying on the Third Circuit's holding in *In re CitX Corp.*, 448 F.3d 672 (3d Cir. 2006), asserted that Plaintiff cannot plead damages based on a theory of deepening insolvency. *See, e.g.,* Stockman Mem. at 11 [DI 116]; Stepp Mem. at 24 [DI 105]; Cosgrove Mem. 21 [DI 98]; Barnaba Mem. at 8 [DI 129]; KPMG Mem. at 22 [DI 121]; PwC Mem. at 21-22 [DI 114].

In response, Plaintiff argued that the *CitX* decision did not overrule the Third Circuit's prior ruling in *Official Comm. of Unsecured Creditors v. R. F. Lafferty & Co.*, 267 F.3d 340, 354 (3d Cir. 2001), which held that deepening insolvency is a valid theory of damages for federal law claims. *See* Opp. to Defs MTD at 34-35. [DI 139]. Moreover, Plaintiff distinguished *CitX*, noting that the complaint in the present case does not allege a claim for deepening insolvency, but rather, independent causes of action that provide a remedy for Plaintiff's injuries of "lost profits" and decrease "in fair asset value." Opp. to Aud MTD at 42. [DI 140].

In *Thabault*, the Third Circuit limited the scope of its holding in *CitX*. There, the Court stated that "*CitX* does not support [the] proposition" that "whenever a plaintiff makes

---

[2]      Plaintiff's opposition brief explains why the Amended Complaint sufficiently alleges all of the elements of a §10(b) claim against Defendants Stockman, Stepp, Cosgrove, and McCallum. Opp. to Defs MTD at 21-35 [DI 139]. That same analysis applies equally to the §10(b) claim against Barnaba. *See, e.g., S.E.C. v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 495 (S.D.N.Y. 2007) ("Barnaba initially served as liaison between Cosgrove and C&A's Purchasing Department, knowingly conveying Cosgrove's directions on how the rebates should be structured to implement the fraud and ensuring that Cosgrove's instructions were carried out . . . knowingly supervising employees who are carrying out a fraudulent scheme is itself the employment of a deceptive device. These allegations, together with the supporting facts alleged, are sufficient to state a claim.").

reference to 'deepening insolvency' or 'an injury to the Debtor's corporate property from the fraudulent expansion of corporate debt and prolongation of its corporate life,' as part of its explanation of damages in a negligence action, recovery is not permissible." *Thabault*, 541 F.3d at 520. Rather, "[w]hen a plaintiff brings an action for professional negligence and proves that the defendant's negligent conduct was the proximate cause of a corporation's increased liabilities, decreased fair market value, or lost profits, the plaintiff may recover damages in accordance with state law." *Id.* Thus, after examining New Jersey law, the Court concluded that "traditional damages, stemming from actual harm of a defendant's negligence, do not become invalid merely because they have the effect of increasing a corporation's insolvency." *Id.* at 523.

### (b)  In Pari Delicto

Similarly, various Defendants contended that this action should be dismissed because their allegedly fraudulent conduct should be imputed to Collins & Aikman under the *in pari delicto* doctrine. Stockman Mem. at 13 [DI 116]; PwC Mem. at 10-20 [DI 114]; KPMG Mem. at 10-14 [DI 121]. Plaintiff responded that this Court should not consider the *in pari delicto* doctrine at the motion to dismiss stage, but, even if it does, the doctrine does not apply because: (i) the fraudulent conduct of these Defendants were adverse to, and not for the benefit of, Collins & Aikman and (ii) Defendants are not innocent third parties and, therefore, application of the *in pari delicto* defense would lead to an inequitable result. Opp. to Defs MTD at 30-32 [DI 139]; Opp. to Aud MTD at 44-52. [DI 140].

In *Thabault*, the Third Circuit considered whether the district court erred in refusing to instruct the jury on the *in pari delicto* defense. *Thabault*, 541 F.3d at 527-28. In concluding that the defense did not apply, the Court stated that, "[g]iven that Chait's conduct allowed Ambassador to continue past the point of insolvency, his actions cannot be deemed

to have benefitted the corporation. . . . Chait's fraudulent conduct cannot be imputed to Ambassador under the adverse interest exception." *Id.* at 529. Moreover, the Court rejected PriceWaterhouseCooper's ("PwC") effort to apply the defense, holding that "PwC was not a victim of Chait's fraud and allowing it to avoid liability by invoking the *in pari delicto* doctrine would not serve the purpose of the doctrine – to protect the innocent." *Id.*

Accordingly, the Third Circuit's reasoning in *Thabault* applies equally to Defendants' efforts to raise the *in pari delicto* defense in this action.

DATED: November 10, 2008

                         */s/ Carmella P. Keener*
Joseph A. Rosenthal (Bar ID No. 234)
Carmella P. Keener (Bar ID No. 2810)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
jrosenthal@rmgglaw.com
ckeener@rmgglaw.com
*Attorneys for Plaintiffs*

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
Samuel H. Rudman
David A. Rosenfeld
58 South Service Road, Suite 200
Melville, NY 11747
(631) 367-7100
*Special Counsel for Collins & Aikman Corporation, et al.*