## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

Collins & Aikman Corporation and    :
Collins & Aikman Products Co., as    :
Debtors in Possession,       :
              :
     Plaintiffs,     :
   v.          :  Civ. No. 07-265-SLR-LPS
              :
David A. Stockman, et al.,     :
              :
     Defendants.    :
              :

### REPORT AND RECOMMENDATION

Plaintiff Collins & Aikman Litigation Trust (the "Trust"), as successor to Collins &

Aikman Corporation ("Collins & Aikman" or the "Company") and its subsidiary debtors, brings

this action against various defendants, including PricewaterhouseCoopers LLP ("PwC")[1] and

KPMG LLP ("KPMG,"[2] and with PwC, the "Auditor Defendants"), alleging, *inter alia*, claims

for negligence/malpractice (Counts VIII and IX) and breach of contract (Counts X and XI).

Presently pending before the Court are motions to dismiss the First Amended Complaint

("Complaint" or "FAC," D.I. 90) for failure to state a claim filed by PwC (D.I. 107) and KPMG

(D.I. 120). As explained below, I recommend that the Auditor Defendants' motions be granted

---

[1] PwC was engaged by Collins & Aikman to provide independent auditing, accounting and/or consulting services, including the exam and review of consolidated financial statements for FY 2001 and 2002. (D.I. 90 ¶33) PwC issued unqualified audit opinions on Collins & Aikman's 2001 and 2002 financial statements. (*Id.*)

[2] KPMG was engaged by Collins & Aikman to provide independent auditing, accounting and/or consulting services, including the exam and review of its consolidated financial statements for FY 2003 and 2004 (the latter never having been completed). (D.I. 90 ¶34) KPMG issued unqualified audit reports on Collins & Aikman's 2003 financial statements. (*Id.*)

1

based on application of the doctrine of *in pari delicto*, which is also known as the "wrongful

conduct" rule.

## **BACKGROUND**[3]

Detailed background relevant to this action will not be repeated here as it has been

previously set forth in: (i) Judge Robinson's September 30, 2009 Memorandum Order

("Memorandum Order") (D.I. 199); (ii) my May 20, 2009 Report and Recommendation ("R&R")

(D.I. 176); and (iii) the transcript of the hearing conducted in this matter on February 12, 2009

(D.I. 173) (hereinafter "Tr.").

In her Memorandum Order, Judge Robinson dismissed Counts VII (fraud) and XII (aiding

and abetting) as to the Auditor Defendants. (D.I. 199 at 10) In addition, she wrote:

> f. Counts VIII through XI. Judge Stark recommended the dismissal of
> plaintiff's professional negligence/malpractice and breach of contract claims in
> counts VIII through XI because he deemed the allegations as to the auditor
> defendants' knowledge of the wrongdoing to be "conclusory" or otherwise
> inadequate. He did so based on his analysis of the aiding and abetting count
> against these same defendants (count XII), wherein he concluded that plaintiff
> "failed adequately to allege the auditor defendants' 'knowing participation' in any
> breach." (D.I. 176 at 50) More specifically, the FAC was held to have "merely
> conclusory allegations that the auditor defendants actually knew of [the] alleged
> fraudulent schemes" because of the "extensive allegations that other defendants
> undertook extensive efforts to mislead the auditors." *(Id.)* In footnote 16 of the
> Report and Recommendation, Judge Stark concluded that there was an analogous
> requirement for "knowing participation" vis a vis the financial statements, i.e.,
> that the FAC did not contain adequately specific allegations that the auditor
> defendants "knew or should have known" the financial statements were false. *(Id.
> at 52, n.16)*

---

[3]For purposes of the instant motions, the Court accepts all well-pleaded factual
allegations set forth in the Complaint as true and views them, as it must, in the light most
favorable to Plaintiff. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000).

> g. I find the FAC to be replete with allegations that there were risk factors ("red flags") which should have alerted the auditor defendants to (i.e., they should have known about) accounting irregularities not necessarily dependent on the "artificial inflation of the Company's earnings resulting" from the fraudulent schemes asserted against the director and officer defendants (D.I. 90 at 48-49), e.g., the overstatement of the Company's deferred tax assets, the Company's improper reporting of related party transactions, and the Company's failure to provide appropriate disclosure about its liquidity issues and ability to continue as a going concern. At this stage of the case, I conclude that the FAC contains facts that "raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact)." *Victaulic Co. v. Tieman,* 499 F.3d 227, 234 (3d Cir. 2007). I will return the matter to Judge Stark, however, to address the remainder of the arguments raised by the auditor defendants, including that of Michigan's wrongful conduct rule *(in pari delicto).*

(D.I. 199 at 8-9)

On October 15, 2009, I held a status teleconference with Plaintiff and the Auditor

Defendants. (D.I. 203) Thereafter, the parties filed a joint letter describing the issues remaining

in contention with respect to the Auditor Defendants' motions to dismiss. (D.I. 205)

Before turning to an analysis of the issues presented on remand, it will be useful to

summarize the Plaintiff's remaining allegations against the Auditor Defendants. Plaintiff alleges

that the Auditor Defendants were responsible for properly reviewing Collins & Aikman's

financial results, properly auditing and providing an opinion on the Company's financial

statements, and reporting weaknesses and failures in the Company's controls to its Audit

Committee. (FAC ¶103) Plaintiff contends that the Auditor Defendants had a duty to act with

reasonable care and perform their services pursuant to professional standards. The Auditor

Defendants allegedly breached these duties – committing negligence/malpractice – by, *inter alia*:

(1) issuing unqualified and false audit opinions on Collins & Aikman's financial statements; (2)

failing to properly audit and review Collins & Aikman's financial statements in accordance with

3

Generally Accepted Accounting Principles ("GAAP") and Generally Accepted Auditing

Standards ("GAAS"); (3) failing to obtain sufficient evidence to afford a reasonable basis for

their audit opinions; (4) failing to report accounting irregularities, fraud, and lack of internal

controls; and (5) ignoring numerous red flags. (FAC ¶¶104-06, 115, 124, 150-52, 160-61, 167,

179)

Plaintiff has alleged breach of contract, asserting that the Auditor Defendants neglected

their contractual obligations by failing to properly perform their audits and other services

according to their service agreements and failing to report fraud and deficiencies in Collins &

Aikman's internal controls to the Company's Audit Committee or Board. (*See generally* FAC

¶¶230-41.) Collins & Aikman submits that the auditors were contractually obligated to report

any internal control deficiencies or fraud by the management to the Audit Committee. (FAC

¶¶103, 232, 238) According to Plaintiff, the Auditor Defendants breached their contractual

obligations, causing damages, by failing to, *inter alia*: (1) perform their audits according to

certain accounting standards; (2) plan and perform their audits to obtain reasonable assurance

that the financial statements were free from material misstatements; (3) examine evidence to

support the disclosures in the financial documents; and (4) report fraud, deficiencies in internal

controls, and other conditions causing material misstatements. (FAC ¶¶128, 148, 156, 164-65,

233-35, 239-41)

## LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires

the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372

4

F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)). While heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged. *Twombly*, 127 S. Ct. at 1974. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 127 S. Ct. at 1966 (internal quotation marks omitted). Nor is the Court obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*,

5

113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

In reviewing a motion to dismiss, "[c]ourts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Certain additional materials may also be considered without converting a motion to dismiss into a motion for summary judgment (which generally cannot be ruled upon without providing a plaintiff a reasonable opportunity for discovery). For instance, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. . . ." *Pension Benefit,* 998 F.2d at 1196 (internal citations omitted); *see also* 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357 (2009) ("The court is not limited to the four corners of the complaint, however. Numerous cases . . . have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment.").

## DISCUSSION

**I.** **Issues**

### A. **Choice of Law**

The parties disagree as to which state's law is applicable.[4] The Auditor Defendants

submit that Michigan law applies to Plaintiff's claims because, under the Second Restatement of

Conflicts, Michigan has the most significant relationship with the Complaint's allegations

against PwC and KPMG. (D.I. 205 at 2) Plaintiff, however, asserts that a choice of law analysis

is unnecessary absent a conflict between Michigan and Delaware on a relevant point of law, and

that there is no such conflict here. (*Id.*) I have concluded that a choice-of-law analysis is

necessary and that Michigan law applies.[5]

As the basis for the Court's jurisdiction over the claims against the Auditor Defendants is

---

[4]In my earlier R&R, I addressed many claims under Delaware law. However, as KPMG points out, choice-of-law determinations should be made as to each claim in a case – not to the case as a whole. *See* Restatement (Second) of Conflicts §§ 145, 188; *Whitwell v. Archmere Acad., Inc.*, 463 F. Supp. 2d 482, 485 (D. Del. 2006) ("Because choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case . . . .") (internal quotation marks omitted).

[5]Such analysis is necessary because it appears that Michigan and Delaware law differ with respect to the doctrine of *in pari delicto*. As I explain below, Michigan law holds that even innocent successors to a corporate plaintiff may be barred from recovery against a third-party professional that was employed by the corporation where former insiders of the corporation contributed to the fraud for which the innocent successors later seek to recover. *See MCA Fin. Corp. v. Grant Thornton, L.L.P.*, 687 N.W.2d 850, 855-56 (Mich. Ct. App. 2004). Plaintiff contends that Delaware would not bar such a claim. *See* D.I. 140 at 48-51 & n.40; *see also Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 212 n.132 (Del. Ch. 2006). Likewise, Michigan permits *in pari delicto* to be the basis for dismissing a complaint at the pleadings stage, *see MCA*, 687 N.W.2d at 854, 857; *Glazier v. Lee*, 429 N.W.2d 857, 858-60 (Mich. Ct. App. 1988) (summary disposition for "failure to state a claim" under Mich. Ct. Rule 2.116(C)(8)), while, according to Plaintiff, Delaware does not, *see* D.I. 140 at 50-52 (citing cases).

diversity, the choice-of-law provisions of the forum state, Delaware, apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007). Delaware follows the Second Restatement of Conflicts, which uses different choice-of-law tests based on the underlying claim. *See Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991).

The choice of law for negligence/professional malpractice claims depends on: (1) the location where plaintiff's injury occurred, (2) the state where the conduct giving rise to the injury occurred, (3) the domiciles and residence of the parties, and (4) the place where the relationship between the parties is centered. *See* Restatement (Second) of Conflicts § 145; *see also Travelers*, 594 A.2d at 46-47. For a breach of contract claim, the Court looks to the law of the state with the greatest connection to the contract; "if the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied." Restatement (Second) of Conflicts § 188; *see also Travelers*, 594 A.2d at 41, 46-47.

Here, all factors point to the application of Michigan law with respect to all remaining claims against both of the Auditor Defendants. As to PwC, on the negligence and professional malpractice claims, the location of the alleged injury to Collins & Aikman is Michigan, as Michigan is Collins & Aikman's principal place of business.[6] (D.I. 114 Ex. 1 at cover page (2001 Form 10-K); Ex. 2 at cover page (2002 Form 10-K); Ex. 4 at cover page (2003 Form 10-K)) PwC primarily performed its audit of Collins & Aikman's financial statements in Michigan,

---

[6]Although Collins & Aikman is incorporated in Delaware, with respect to the choice-of-law analysis here, "'a corporation's principal place of business is a more important contact than the place of incorporation.'" *UbiquiTel Inc. v. Sprint Corp.*, 2005 WL 3533697, at *4 (Del. Ch. Dec. 14, 2005) (quoting Restatement (Second) of Conflicts § 145(2) cmt. e (1971)).

8

at either Collins & Aikman's Troy, Michigan office or PwC's Detroit, Michigan office. (D.I. 114 at 9) As the FAC alleges, PwC spent time at Collins & Aikman's corporate headquarters in Michigan, participating in face-to-face meetings with Collins & Aikman employees. (FAC ¶¶33, 106) Moreover, PwC's Detroit, Michigan office issued the allegedly false audit reports. (D.I. 114 Ex. 1 at F-1 (2001 Form 10-K); Ex. 2 at F-1 (2002 Form 10-K)) Also, many of the PwC auditors who worked on the Collins & Aikman audit, including the audit engagement partner, came from the Detroit, Michigan office. (D.I. 114 at 9; *see* FAC ¶180 (alleging "negligence by PwC's . . . Detroit office personnel.") As to the contract claims, the contracts governing PwC's audits of Collins & Aikman's financial statements were entered into, negotiated, and performed in Michigan. (*See* FAC ¶231; D.I. 114 at 9; D.I. 114 Ex. 5 at 1 (2001 engagement letter); Ex. 6 at 1 (2002 engagement letter).)

Turning to KPMG, with respect to the tort claims, the location of the alleged injury to Collins & Aikman is, again, Michigan, the Company's principal place of business. (D.I. 120 Ex. 5 at cover page (2003 Form 10-K)) The allegedly injurious conduct – KPMG's audit work – took place in Michigan: the KPMG audit team was located in Michigan, was "frequently present" at Collins & Aikman's headquarters and financial offices in Michigan, conducted its reviews and performed its audit in Michigan, and issued the audit opinion letter there. (FAC ¶¶34, 106, 180; D.I. 120 Ex. 5 at Independent Auditor's Report (2003 Form 10-K)) As to the contract claims, the engagement contracts were negotiated and executed in Michigan, and sent from KPMG's office in Detroit, Michigan to Collins & Aikman's headquarters in Troy, Michigan; the audit (the subject matter of the contract) was performed in Michigan; the interactions between the parties (and their representatives) occurred in Michigan; and the ostensible injury occurred in Michigan.

(*See* FAC ¶237; D.I. 120 Ex. 1 at 1 (2003 agreement); Ex. 2 at 1 (2004 agreement); D.I. 121 at 10.)

Accordingly, I will apply the law of Michigan to the parties' disputes.

### B.    *In Pari Delicto*

The Auditor Defendants argue that the doctrine of *in pari delicto*, known in Michigan as the "wrongful conduct rule," bars Plaintiff's claims against them. I agree.

Under Michigan law, "[w]hen a plaintiff's action is based, in whole or in part, on his own illegal conduct, a fundamental common-law maxim [known as the wrongful conduct rule] generally applies to bar the plaintiff's claim." *MCA*, 687 N.W.2d at 853. In general, Michigan's wrongful conduct rule holds that "[a]s between parties in pari delicto, that is equally in the wrong, the law will not lend itself to afford relief to one as against the other, but will leave them as it finds them." *Orzel v. Scott Drug Co.,* 537 N.W.2d 208, 212-13 (Mich. 1995). The *in pari delicto* defense provides that "a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party." *Id.* at 212-13.

In *Orzel*, Michigan's Supreme Court set out the three factors that must be present to trigger application of the wrongful conduct rule: (1) the plaintiff and defendant stand at least in equal fault, (2) the plaintiff's illegal conduct is a proximate cause of the injury, and (3) the nature of plaintiff's wrongful conduct is prohibited under a criminal or penal statute. *Id.* at 214-17. If these factors are present, Michigan courts will grant the equivalent of a motion to dismiss. *See Scalici v. Bank One, NA*, 2005 WL 2291732, at *2, 7 (Mich. Ct. App. Sept. 20, 2005); *MCA*, 687

N.W.2d at 852-53; *Glazier v. Lee*, 429 N.W.2d 857, 860 (Mich. Ct. App. 1988).[7]

---

[7]Plaintiff argues that, as an affirmative defense, *in pari delicto* is not a basis for dismissing claims on a Rule 12(b)(6) motion, given that application of the doctrine requires a fact-intensive analysis inappropriate to this stage of the litigation. (D.I. 205 at 2) Plaintiff distinguishes the Michigan cases that grant "summary disposition" on wrongful conduct grounds by asserting that such disposition is more akin to a motion for summary judgment than to a motion to dismiss for failure to state a claim. (D.I. 140 at 51 n.40) For several reasons, I disagree with Plaintiff. First, as I will explain, no fact-intensive analysis is required in this case; the elements of Michigan's wrongful conduct rule are satisfied on the face of the Complaint, taking the allegations in the light most favorable to Plaintiff. Second, at least several Michigan cases granting "summary disposition" on wrongful conduct grounds have done so pursuant to subsection (C)(8) of Michigan Court Rule 2.116, permitting dismissal of or judgment on all or part of a claim when "[t]he opposing party has failed to state a claim on which relief can be granted." *See Scalici,* 2005 WL 2291732, at *1 ("A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the basis of the pleadings alone."). For instance, in *Glazier*, 429 N.W.2d at 858-60, Michigan's Court of Appeals stated:

> Defendant moved for summary disposition under MCR 2.116(C)(8) on the basis that plaintiff had failed to state a claim for which relief could be granted. . . . Whether a defendant's conduct in a particular case falls below the general standard of care imposed by the parties' relationship is normally a factual determination for the jury. However, the matter may be decided by the court where there is an overriding legislative or judicially declared policy. . . . In this case, we find an overriding public policy [i.e., the wrongful conduct rule] which bars plaintiff's claims and requires dismissal of his complaint. . . . We therefore hold that the trial court erred in denying defendant's motion for summary disposition.

*See also ABB Paint Finishing, Inc.* v. *Nat'l Union Fire Ins. Co.,* 567 N.W.2d 456, 458 n.2 (Mich. Ct. App. 1997) (stating that "[w]hile Michigan courts have not specifically held that the grant of a motion for summary disposition under C(8) is a ruling on the merits, this conclusion is supported by the federal courts' interpretation of the identical federal rule, F.R. Civ. P. 12(b)(6). MCR 2.116(C)(8) was modeled after the federal rule."); 2 Maura Corrigan et al., *Michigan Practice Guide: Civil Procedure Before Trial* § 7:579 (2006), *available at Westlaw*, MIPG-CIVPRO § 7:579 ("A motion under MCR 2.116(C)(8) tests the legal sufficiency of a pleading."). Plaintiff's citation (D.I. 140 at 51 n.40) to *Fewless v. Board of Educ. of Wayland Union Schools*, 208 F. Supp. 2d 806, 807 n.1 (W.D. Mich. 2002), in which the Court stated "'summary disposition' is the name of the procedure by which summary judgment is sought in Michigan state court," does not help Plaintiff. While "summary disposition" is sometimes used in Michigan to refer to "summary judgment,' "summary disposition" under MCR 2.116(C)(8) is

In applying these factors to the case at hand, the allegedly fraudulent conduct of Collins & Aikman's management, as set out in detail in the Complaint, is attributed to Plaintiff. This is because, under Michigan law, "the fraudulent acts of a corporate officer may be imputed to a corporation where those acts (1) are in the course of employment and (2) are for the benefit of the corporation." *MCA*, 687 N.W.2d at 857. This imputation rule has an "adverse interest" exception: imputation does not apply where the corporate officer's actions are undertaken solely for the officer's benefit. *See id.* Michigan law is clear that this "adverse interest" exception is inapplicable if the officer's actions benefit or are motivated to benefit, at least in part, the corporation. *Id.* at 857 ("[T]he adverse interest exception does not apply where an agent is acting even in part on behalf of the principal; for the exception to apply, the agent must be acting solely in his own interest and against the interest of his principal."); *id.* at 858 (stating adverse interest exception to wrongful conduct rule will not apply "if the wrongdoers' motivation was not entirely for personal gain at the expense of the corporations, but was, even in part, a misguided belief that their wrongdoing would benefit the corporations."); *Transnation Title Ins. Co. v. Livingston*, 2004 WL 203075, at *4 (Mich. Ct. App. Feb. 3, 2004) (holding where agent is acting "at least in part on behalf of the principal's interest," agent's actions are imputed to principal). Thus, Michigan law is clear that where a corporate insider acts with "mixed motives," to benefit himself as well as his corporate employer, the wrongful conduct rule may still apply.

As the Auditor Defendants emphasize, the instant case is quite similar to a case decided by the Michigan Court of Appeals in 2004. In *MCA*, the Michigan Court held that the wrongful conduct rule bars a debtor or its trustee from bringing any claims against its auditor relating to

---

akin to a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss.

the debtor's fraud. *See MCA*, 687 N.W.2d at 853. There a mortgage bank had sold and marketed

fraudulent investment products to customers in violation of state and federal law. *See id.*

Management attempted to conceal the fraud but failed; the company entered bankruptcy soon

after the fraud came to light, and securities fraud enforcement actions were brought against

management. *See id.* The liquidating agent of the bankrupt company sued the company's

auditors for failing to detect accounting irregularities in the company's financial statements and

for failing to notify the company's board of directors that officers of the company had

fraudulently misrepresented its financial statements. *See id.* The liquidating agent further

alleged that the auditors knew, or should have known, of the fraud, and, if they had exposed the

fraud earlier, "[the company's] insolvency would have been detected [earlier] . . . which would

have reduced the magnitude of the financial losses suffered by [the company's] collapse." *Id.*

The officers in *MCA* were "acting, at least in part, out of a motivation of keeping the corporation

afloat, and thus provid[ing] a benefit to the corporation[]". *Id.* at 858.

The court held that, under Michigan law, management's conduct was imputed to the

company and then to its liquidating agent, noting that actions of management to inflate the

company's financial statements in order to keep it solvent are not adverse to the company's

interest and, thus, do not trigger the "adverse interest" exception to common-law principles of

agency. *See id.* The court further held that the wrongful conduct rule barred plaintiffs' claims

against the auditor – both those alleging an omission (failing to detect management's fraud) and

those alleging an affirmative act (certifying the company's financial statements as proper). *See*

*id.* at 854-55. The Michigan Court wrote: "Because plaintiffs cannot show that the wrongdoing

occurred at defendants' urging or affirmative advice, plaintiffs stand *in pari delicto* with

13

defendants. In short, to prevail, plaintiffs would have to show more than that defendants turned a blind eye to plaintiffs' wrongdoing, but that . . . the scheme originated with defendants rather than with plaintiffs." *Id.* at 855. Because the plaintiffs could not do so, the Michigan Court of Appeals affirmed the trial court's dismissal of the case.[8] *See also Ameriwood Industries Int'l. Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1085 (W.D. Mich. 1997) (applying Michigan law and denying plaintiff's request to strike *in pari delicto* doctrine in accounting malpractice case).

Applying Michigan law to the instant Complaint, both elements required for imputation of the Collins & Aikman managers' conduct to Plaintiff are met: the Complaint alleges that management's fraudulent conduct occurred in the course of the managers' employment and that it benefitted Collins & Aikman. For example, from 2002 to 2004, management, in the course of negotiating contracts with Collins & Aikman's partners and suppliers, allegedly participated in a "rebate scheme" that served to increase Collins & Aikman's reported earnings. (FAC ¶¶63-69) Later, in early 2005, members of management, while performing their duties in acquiring financing for Collins & Aikman, allegedly included additional receivables in the Company's "borrowing base" to reduce the amount of money owed to G.E. Capital (FAC ¶75), and made

---

[8]In *MCA*, 687 N.W.2d at 157-59, the Michigan Court also discussed an earlier Michigan "wrongful conduct" case, stating: "In *Orzel*, the defendant acted negligently in filling otherwise valid prescriptions. . . [Here, at] most, the complaint alleges that defendants failed to detect the defects in the financial statements and, therefore, erroneously put their seal of approval on the financial statements as being acceptable. We fail to see a meaningful distinction between this set of facts and that of a pharmacist filling a prescription . . . after failing to detect that there was something wrong with the customer's use of a prescribed drug. . . . [Moreover,] defendants' misconduct is, at most, on par with plaintiffs, and therefore the *in pari delicto* rule applies to preclude recovery." *See also Ameriwood*, 961 F. Supp. at 1085 (applying Michigan law and denying plaintiff's request to strike *in pari delicto* doctrine in accounting malpractice case).

14

false statements to Credit Suisse to allow the Company to obtain $75 million in financing (FAC ¶87). Taking these allegations as true, Collins & Aikman's managers acted in the course of their employment to benefit the Company by increasing the Company's available capital and reducing its expenditures. Under Michigan law, this alleged conduct – which it must be presumed at this point will be proven – is imputed to Plaintiff, as the successor to Collins & Aikman. *See MCA Fin. Corp.*, 687 N.W.2d at 858 (imputing wrongful conduct of management to company where management acted "at least in part, out of a motivation of keeping the corporations afloat, and thus provide a benefit to the corporations"); *see also Baena v. KPMG LLP*, 453 F.3d 1, 7 (1st Cir. 2006) ("A fraud by top management to overstate earnings, and so facilitate stock sales or acquisitions, is not in the long-term interest of the company; but, like price-fixing, it profits the company in the first instance and the company is still civilly and criminally liable."); *Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449, 451 (7th Cir. 1982) (stating management's "inflating of inventories," which permit corporation "to borrow money at lower rates" and "greatly increased the market price of its stock" – benefitted corporation).

Although the Complaint alleges that the Company's management were "solely motivated by their own self interests" (FAC ¶¶39, 94, 197), it also contains numerous contradictory allegations that management acted to benefit Collins & Aikman (*see, e.g.*, FAC ¶¶37, 39, 53, 116, 125, 177). Essentially, then, the Complaint alleges that the Collins & Aikman officers acted with "mixed motives." Under Michigan law, it follows that the actions of the officers are imputed to Plaintiff for purposes of the wrongful conduct analysis.

When the allegations against Collins & Aikman's officers are imputed to Plaintiff, all three elements of Michigan's wrongful conduct rule are satisfied. First, the Complaint alleges

15

that Plaintiff's officers intentionally perpetrated the fraud that is the center of the Complaint. Plaintiff's officers perpetrated a fraud and then endeavored to conceal that fraud from the Auditor Defendants; the Auditor Defendants failed to detect Plaintiff's fraud. (*See* FAC ¶154.)  In these circumstances, Plaintiff is at least equally in fault with the Auditor Defendants.

Second, Plaintiff's fraud was a proximate cause of the Company's injury.  The alleged injury is economic damage resulting from financial statements.  While the statements were ultimately issued by the Auditor Defendants, the statements are alleged to have been fraudulent because of Plaintiffs' officers' (and directors') efforts to undertake the fraudulent rebate transactions (FAC ¶¶63-69) and to prepare fraudulent financial statements (FAC ¶¶80-84).

Finally, the alleged fraudulent conduct undertaken by Collins & Aikman's officers, and imputed to Plaintiff, appears to violate federal criminal law.  Indeed, a federal grand jury found probable cause sufficient to indict several of these individuals for their alleged conduct.[9] Furthermore, the alleged fraudulent conduct of the Company's officers appears to violate civil laws, which, under Michigan law, also satisfies the final element for application of *in pari delicto*. *See, e.g., Healthplus of Mich., Inc. v. Saginaw Coop. Hosps., Inc.,* 2007 WL 2962805, at

---

[9]Defendants Stockman, Stepp, Barnaba, and Cosgrove were charged with conspiracy, securities fraud, bank fraud, wire fraud, and obstruction of justice arising from allegations they orchestrated a fraudulent scheme to hide Collins & Aikman's true operating performance and financial results, fraudulently manipulated the financial results Collins & Aikman reported to the SEC and the investing public, made false statements in the sale of securities, and defrauded Collins & Aikman's lenders. (R&R at 20)  The subsequent dismissal of the indictment does not alter the fact that, if proven, the conduct alleged in the Complaint would violate criminal laws. Also, as I stated previously: "The grand jury's finding of probable cause to believe that certain of the defendants here engaged in securities fraud remains the finding of the grand jury.  Nothing about the U.S. Attorney's statement disturbs the grand jury's finding." (*Id.* at 21)

*3 (Mich. Ct. App. Oct 11, 2007) (violation of federal Medicaid regulation).[10]

Also instructive is a recent decision by Vice Chancellor Strine of the Delaware Court of Chancery. In *American Int'l Group, Inc., Consol. Derivative Litig.*, 965 A.2d 763 (Del. Ch. 2009) ("*AIG*"), the Vice Chancellor, applying New York law, dismissed claims brought by AIG against its former auditor, PwC. Just as in the instant case, the corporate entity alleged that its former insiders (directors and officers) engaged in financial fraud, but also sought to recover from PwC for failing to detect and remedy the fraud. In dismissing the claims against PwC, Vice Chancellor Strine made several rulings that are directly pertinent to the issues now before this Court. First, he concluded that the "adverse interest" exception did not apply because the company's insiders, "by engaging in the various accounting frauds . . . were acting to make AIG more attractive to investors," which meant the company "itself can be thought to have benefited from the fraudulent schemes, even if those benefits turned out to be short-lived once the fraud was discovered." *Id.* at 827. As I have explained, the adverse interest exception is also inapplicable here, for the same reasons. Second, Vice Chancellor Strine held that *in pari delicto* could apply "even if PwC knowingly broke the law too" or if "PwC committed malpractice and broke a contract." *Id.* at 827 n.245. Similarly, I have noted that, under Michigan law, the issue is whether Collins & Aikman is at least equally culpable as the Auditor Defendants. Taking the Complaint as true, it is – barring recovery, even assuming the Auditor Defendants are not "innocent." Finally, consistent with the procedural posture presented here, Vice Chancellor Strine applied *in pari delicto* on a motion to dismiss for failure to state a claim. *See id.* at 826-

_____

[10]The SEC initiated a civil fraud case against various former Collins & Aikman directors and officers. *See S.E.C. v. Collins & Aikman Corp.,* Civil Action No. 1:07-cv-2419 (LAP) (S.D.N.Y.). It appears that this case is ongoing.

17

30.[11] I have concluded that the same procedural result is available, and here appropriate, under Michigan law.[12]

In arguing against application of the *in pari delicto*/wrongful conduct rule, Plaintiff makes several arguments, including that portions of the Court's earlier rulings logically preclude the conclusion I have reached here.[13] Specifically, Plaintiff notes that in my earlier R&R I rejected the reasoning of some of the Director and Officer Defendants who sought to impute the conduct of Collins & Aikman's management to Collins & Aikman. (D.I. 205 at 2-3 (citing R&R at 25-31)) In recommending that federal securities fraud claims against certain individuals not be dismissed, I was unpersuaded that "at this stage of the proceedings . . . the knowledge of the fraud of certain of C&A's directors and officers can be imputed to C&A such that the Company cannot possibly be proven to have relied on its false financial statements." (R&R at 31) This conclusion, however, was limited to my analysis of the federal securities law claims; it was

---

[11]Vice Chancellor Strine dismissed the claims without prejudice, because "the New York Court of Appeals has not addressed the applicable issues with certainty," and "the absence of a New York Court of Appeals ruling on point means that this question of law remains, to some extent unsettled, and thus to the extent that the New York Court of Appeals clarifies this matter, the Stockholder Plaintiffs should be able to bring their claims." *AIG*, 965 A.2d at 831 & n.247. Given particularly the *MCA* decision, as well as other cases cited above, Michigan law is not similarly unsettled. Nor has either party suggested that dismissal without prejudice would be appropriate here.

[12]While the Auditor Defendants rely on *MCA* and *AIG*, Plaintiff identifies no binding nor persuasive authority for not applying Michigan's wrongful conduct rule in the instant case.

[13]Plaintiff also argues: (i) the conduct of Collins & Aikman's management cannot be imputed to Collins & Aikman because management's acts were adverse to, and not for the benefit of, Collins & Aikman; (ii) the Auditor Defendants may not use *in pari delicto* to shield themselves from liability because they are not innocent third parties; and (iii) as an affirmative defense, *in pari delicto* is not applicable at this stage because it requires a fact-intensive analysis that is not appropriate in the context of a Rule 12(b)(6) motion to dismiss. (D.I. 205 at 2) I have addressed each of these arguments above.

derived from analysis of the applicable federal securities law authorities. (*See* R&R at 25-31.) In another portion of the same R&R, when considering Plaintiff's common-law fraud claims, I held that Plaintiff "failed to plead the element of reliance because, under Delaware law, Collins & Aikman cannot have relied to its detriment on financial statements that Collins & Aikman's own directors knew to be inaccurate." (R&R at 59)  The result was that while Plaintiff's common law-fraud claims were dismissed, its § 10(b) federal securities fraud claims as against defendants Stockman, Stepp, Cosgrove, and McCallum survived, "due to differences between Delaware law and federal securities law." (R&R at 58; *see also id.* at 63-64.)  Both of these determinations were adopted by Judge Robinson. (*See* Memorandum Order at 9-10.)  Nothing about my recommendation regarding the federal securities fraud claims contradicts the conclusion I have reached here with respect to the application of Michigan law.

Plaintiff also repeatedly asserts that it would be inequitable to apply *in pari delicto* because that defense is intended to prevent wrongdoers from profiting from their own misconduct, yet here "there is no concern that Collins & Aikman will somehow profit from this lawsuit," since all benefit will redound to the Litigation Trust and, ultimately, Collins & Aikman's creditors. (*See, e.g.*, D.I. 140 at 51 n.40.)  I disagree.  Plaintiff, the Litigation Trust, by its own acknowledgment, "stands in the shoes" of Collins & Aikman. (Tr. at 17)  It follows that Plaintiff cannot have any greater rights than Collins & Aikman. *See Buckley v. O'Hanlon*, 2007 WL 956947, at *8 (D. Del. Mar. 28, 2007).  Just as the establishment of the Litigation Trust does not reduce Collins & Aikman's rights (*see infra* discussion of standing), neither does it enhance Collins & Aikman's rights by eliminating a defense that the Auditor Defendants would otherwise be permitted to assert against Collins & Aikman.

Plaintiff contends the Auditor Defendants cannot benefit from the *in pari delicto* defense because they are not innocent third parties. However, Plaintiff cites no Michigan decisions to support this proposition. Under Michigan law, the inquiry is whether the Plaintiff is at least equally culpable as the Auditor Defendants, not whether the Auditor Defendants are "innocent." Hence, in *MCA*, the Michigan Court held: "while innocent investors may have been harmed, that would not change the fact that the corporation is treated as having engaged in wrongdoing and, therefore, its investors should not profit from that wrongdoing." 687 N.W.2d at 855-56. *MCA* continues: "[T]he wrongful-conduct rule is not limited to situations where the defendant is innocent of wrongdoing, either intentional or negligent. Rather, its premise is that, while the defendant engaged in negligence or intentionally wrongful conduct, because the plaintiff also engaged in wrongful conduct, recovery is precluded." *Id.* at 856.

It is true that the *MCA* Court observed that: "[P]erhaps, plaintiffs could potentially prevail if they could show that the wrongdoers within their organizations believed, based on [the auditors'] affirmative advice, that the manner in which the transactions were structured and reported on the financial statements were proper. But plaintiffs make no such showing, nor even such an allegation." 687 N.W.2d at 854-55. Likewise, here, the Complaint is bereft of such an allegation. To the contrary, the Complaint is clear that the allegedly fraudulent schemes originated with Collins & Aikman's senior management and that these individuals were cognizant that what they were doing was improper. (*See, e.g.,* FAC ¶¶22, 53-56.) Permitting recovery here would "in effect condone the wrongdoing" by "sending the message that companies can safely ignore their employees' behavior as [courts] will allow them to shift the burden to the auditors for not detecting it." *MCA,* 687 N.W.2d at 855.

In sum, I conclude that, taking the allegations of the Complaint as true and applying Michigan law, the *in pari delicto* doctrine is applicable and is satisfied. The wrongful conduct of Collins & Aikman's former officers is imputed to Plaintiff, barring recovery on the claims Plaintiff asserts against the Auditor Defendants. Reading the allegations of the Complaint in the light most favorable to Plaintiff, it is undisputed that the Company's officers acted in their capacity as employees of Collins & Aikman, that they took the alleged wrongful actions in part out of a motivation to help Collins & Aikman, and that their alleged wrongful conduct violated criminal and civil laws. Accordingly, I recommend that the negligence/malpractice and breach of contract claims be dismissed against both Auditor Defendants based on application of Michigan's *in pari delicto*/wrongful conduct rule.

### C.   Remaining Issues

If the Court agrees that *in pari delicto* applies and bars Plaintiff's efforts to recover on their remaining tort and contract claims against the Auditor Defendants, there is no need to reach the remaining issues in dispute. However, if the Court disagrees with my analysis above, additional issues will need to be resolved. Given the scope of the order remanding the case to me, *see* Memorandum Order, D.I. 199 at 9 ("return[ing] the matter to Judge Stark to address the remainder of the arguments raised by the auditor defendants") (emphasis added), and further given the fact that now approximately two years have passed since the Complaint was filed and over a year and a half has elapsed since the motions to dismiss were filed, I believe it would foster the efficient resolution of the pending motions to provide the Court the benefit of my views on the remaining issues. Hence, I turn, briefly, to these issues below.

### 1.    Causation

The Auditor Defendants contend that the Complaint should be dismissed because it fails adequately to allege that their conduct caused any damage to Collins & Aikman.  In the view of the Auditor Defendants, the Complaint alleges numerous preceding and intervening causes – including the wrongdoing of Collins & Aikman's own management – that defeat any causal nexus between the alleged injury and any breach or malpractice committed by the Auditor Defendants.  (D.I. 205 at 3)  Plaintiff responds that, at this stage of the litigation, it is not required to prove proximate cause, and further that the Complaint alleges causation sufficient to survive a motion to dismiss.  (*Id.*)

I agree with Plaintiff.  Notwithstanding my conclusion in connection with *in pari delicto* that Plaintiff's own wrongful conduct was a proximate cause of Collins & Aikman's injury, the Complaint also adequately alleges that the Auditor Defendants' conduct was a proximate cause of these injuries as well.  (*See, e.g.*, FAC ¶¶90, 107, 124, 160, 170.)  Thus, I do not recommend that the Auditor Defendants' motions be granted on the basis of a purported failure to allege causation.

### 2.    Statute of Limitations

PwC contends that Plaintiff's claims against it are barred by the statute of limitations. Specifically, PwC asserts that Plaintiff's malpractice claim is time-barred under Michigan's two-year statute of limitations, which PwC asserts would apply under Delaware's borrowing statute because Collins & Aikman was a Michigan resident and the cause of action accrued in Michigan.  (D.I. 205 at 3-4)  PwC further contends that the breach of contract claim must be dismissed on statute of limitations grounds because it is improper to attempt to use a contract

claim to circumvent a statute of limitations that bars a tort claim of which the contract claim is duplicative. (*Id.* at 4)  In the alternative, PwC asserts that Plaintiff's claims as to the 2001 audit are time-barred under Delaware's three-year statute of limitations. (*Id.*)

Plaintiff responds that Collins & Aikman, which was incorporated in Delaware, and was a Delaware resident at the time of accrual, is subject – under Delaware's borrowing statute – to Delaware's three-year statute of limitations. (*Id.*)  Plaintiff further asserts that none of the claims are time-barred under Delaware law because the statute of limitations did not begin to run until the termination of PwC's services in June 2003. (*Id.*)  Finally, Plaintiff contends that the limitations period was tolled by the discovery rule because Collins & Aikman could not have known about the accounting scheme until it was revealed by the Audit Committee investigation in 2005. (*Id.*)

Regardless of whether Michigan's or Delaware's statute of limitations is applied, I agree with Plaintiff that disputed facts preclude dismissal of the tort and contract claims against PwC on statute of limitations grounds.  There is a dispute as to whether the contract claim is actually duplicative of the tort claims; resolution of this issue turns on whether the malpractice claim is limited to PwC's "auditing services" (*see* FAC ¶223) or whether it more broadly includes all services PwC provided to Collins & Aikman from 2001-2003, including reviews of quarterly financial statements (*see id.* ¶¶33, 102-04, 107, 224). (D.I. 114 at 27-28 & n.8; D.I. 140 at 55 n.47)  There is also a dispute as to the date PwC stopped providing "auditing services" to Collins & Aikman. *Compare* D.I. 140 at 55 n.48 (Plaintiff asserting "PwC continued to provide services to Collins & Aikman until at least June 2003" (citing FAC ¶104)) *with* D.I. 107 at 27 & n.8 (PwC insisting "'matters out of which the claim for malpractice arose' ended with PwC's

23

issuance of its final audit report . . . dated February 18, 2003"). These disputes are not amenable to resolution in connection with the pending motions to dismiss. *See Ameriwood*, 961 F. Supp. at 1091-94 (reserving statute of limitations question for trial); *In re Kmart Corp.*, 307 B.R. 586, 594 (Bankr. E.D. Mich. 2004) ("[A]ny of the arguments raised concerning the appropriate statute of limitations is most appropriately raised as a defense during the trial of the underlying lawsuit . . . .").

Thus, I recommend that PwC's motion to dismiss not be granted on the basis of statute of limitations.

### 3. **Standing**

PwC also contends that the Collins & Aikman Litigation Trust has no standing to sue PwC because the assignment of claims from Collins & Aikman to the Litigation Trust was barred by anti-assignment provisions in the contracts between Collins & Aikman and PwC, and the Bankruptcy Code does not preempt state law here. (D.I. 205 at 4) Plaintiff responds that the Litigation Trust is not a third party, but rather stands in the place of the debtors' estate in order to bring causes of action on behalf of Collins & Aikman's creditors, as such, the Litigation Trust is permitted to bring causes of action under the Bankruptcy Code, which preempts state law and contractual prohibitions. (*Id.*)

I agree with Plaintiff that it has standing. (*See generally* D.I. 140 at 57-60.) A confirmed reorganization plan established a litigation trust to maintain all claims and causes of action Collins & Aikman possessed, for the benefit of the creditors of Collins & Aikman's estate. (FAC ¶6) The proceeds of the claims, as proceeds of the estate, are to be distributed to the creditors according to the plan. (*Id.*) The Litigation Trust "stands in the shoes of Collins &

24

Aikman and is proceeding on claims that the corporation would have." (Tr. at 17)  All of this is expressly permitted under Section 1123 of the Bankruptcy Code, which allows a plan of reorganization to provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose," of any claim or interest belonging to the debtor or to the estate. 11 U.S.C. § 1123(b)(3)(B).  Hence, Plaintiff has standing to bring the instant action.  I therefore recommend that PwC's motion to dismiss not be granted on the grounds of lack of standing.

## **RECOMMENDED DISPOSITION**

For the foregoing reasons, I recommend:

1.      PwC's motion to dismiss (D.I. 107) Count VIII, alleging negligence/malpractice, and Count X, alleging breach of contract, be GRANTED.

2.      KPMG's motion to dismiss (D.I. 120) Count IX, alleging negligence/malpractice, and Count XI, alleging breach of contract, be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections **of no longer than ten (10) pages within fourteen (14) days after being served with a copy of this Report and Recommendation**.  Fed. R. Civ. P. 72(b).  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 Fed. Appx. 924, 925 n.1 (3d Cir. 2006).  **A party responding to objections may do so within fourteen (14) days after being served with a copy of objections; such response shall not**

exceed ten (10) pages.  **No further briefing shall be permitted with respect to objections without leave of the Court.**

The parties are directed to the Court's Standing Order In Non-*Pro Se* Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the Court's website, www.ded.uscourts.gov/StandingOrdersMain.htm.


Dated: January 19, 2010                         The Honorable Leonard P.  Stark
Wilmington, Delaware                           UNITED STATES MAGISTRATE JUDGE